# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH      )
FUND LIMITED                   )
                               )      Civil Action No. 06-1109 (PLF)
            *Plaintiff,*        )
                               )
v.                             )
                               )
DILIGENCE LLC, et al.          )
                               )
            *Defendants.*       )
_____ )

## MEMORANDUM IN SUPPORT OF DILIGENCE INC.'S MOTION FOR EMERGENCY CONSIDERATION OF MOTION TO STAY DISCOVERY AND FOR ORDER PROHIBITING DISCLOSURE OF SEALED COURT MATERIALS

Defendant Diligence, Inc. ("Diligence"), by and through undersigned counsel,

respectfully moves this Court for emergency consideration of Diligence's pending motion to stay

discovery (filed July 20, 2006) and for an order prohibiting Plaintiffs in KPMG FAS v. Diligence

LLC, Civ. #05-2204 (PLF) (the "KPMG FAS Litigation") from disseminating to the Plaintiff in

this action—IPOC International Growth Fund Ltd.—materials placed under seal by the Court in

the KPMG FAS Litigation.

Immediate relief is required to avoid imminent violations of this Court's orders

and irreparable harm to Diligence. Counsel for KPMG FAS—who also was counsel of record in

the KPMG FAS Litigation—indicated over the past weekend (Saturday, July 29) that his law

firm is prepared to voluntarily turn over to IPOC "early this week," and "without further notice"

to Diligence, materials ordered sealed by this Court in the KPMG FAS Litigation. See Exhibit

A. Moreover, there is simply no reason why third-party discovery needs to commence now

during the pendency of two dispositive motions, either of which, if granted, would dismiss the

Complaint in its entirety. Indeed, it is precisely to avoid discovery disputes of this kind that

Local Rule Civil Rule 16.3(c) expressly contemplates a stay of discovery where, as here, a

dispositive motion is pending that could resolve the case in its entirety. See LCvR 16.3(c)(1)

(where a dispositive motion is pending, the parties are to "recommend to the court [whether]

discovery or other matters should await a decision on the motion").

## BACKGROUND

### A.    Status of This Recently-Filed Action

This action was filed just six weeks ago—on June 16, 2006. After service of the

complaint and summons, undersigned counsel requested from Plaintiff a 14-day extension of the

deadline to respond to the Complaint (i.e., July 20, 2006). Plaintiff indicated that it would

consent to the extension only if all parties agreed to hold the Rule 26(f) conference on July 14,

2006. Rather than burden the Court with motions practice over an extension request, Diligence,

–along with Defendant Barbour Griffith & Rogers LLP ("BGR"), agreed to hold the Rule 26(f)

conference on July 14, 2006, while reserving Diligence's right to move to dismiss the complaint

and stay discovery pending a ruling on that motion.

2

Just hours after conclusion of the Rule 26(f) conference, Plaintiff served a non-party subpoena on Hughes, Hubbard & Reed LLP ("Hughes Hubbard")—counsel for Plaintiffs in the KPMG FAS Litigation—purporting to require Hughes Hubbard to produce all unredacted pleadings from the KPMG FAS Litigation notwithstanding this Court's Order placing such documents under seal, as well as all discovery materials produced by Diligence in the KPMG FAS Litigation notwithstanding an existing Protective Order entered by this Court.

Since the Rule 26(f) conference, each Defendant has filed a motion to dismiss this case in its entirety. On July 19, 2006, BGR filed a Motion to Dismiss for Failure to Plead Fraud With Particularity. The following day, Diligence filed a separate Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Concurrently with filing its motion to dismiss, Diligence filed a motion to stay all discovery pending resolution of its motion to dismiss. On July 25, 2006, BGR filed its own (amended) motion for a protective order staying all discovery until the Court has ruled on the two pending motions to dismiss and the motion for judgment on the pleadings that BGR indicated it will file shortly.

3

### B.     <u>This Court's Orders Entered in the KPMG FAS Litigation</u>

At the outset of the KPMG FAS Litigation—which was dismissed earlier this year

pursuant to a confidential settlement agreement—the plaintiffs moved the Court to maintain the

entire case under seal.  Following the Court indicating that the seal would be lifted upon service

of the Complaint, Diligence filed a Motion to Maintain Case Under Seal.  Shortly thereafter,

KPMG FAS filed its own motion for reconsideration of the Court's decision to lift the seal on the

case.  On January 4, 2006, the Court granted in large part the relief requested in *both* motions,

and expressly ordered that the parties seek joint agreement on the documents to be maintained

under seal "in view of the defendant's pending *motion* to maintain the case under seal and *its*

expressed interest in the potentially confidential nature of some of the documents currently filed

under seal."  January 4, 2006 Memorandum Opinion and Order (the "Seal Order") (emphasis

added).  In addition, the parties were permitted to file additional sealed materials with the Court

with the designation "FILED UNDER SEAL."  The parties subsequently agreed on a joint

stipulation of material to be sealed, and on January 25th, 2006, this Court ordered filing of all of

the parties' jointly-proposed redacted documents, with the unredacted copies remaining under

seal.

Additionally, following motions by the parties, the Court entered a Protective

Order Governing Confidentiality on May 19, 2006 (the "Protective Order").  Paragraph 21 of

that Protective Order requires "best efforts to give the Producing Party a reasonable opportunity to seek to quash or otherwise seek relief from the subpoena or other legal process" before disclosure. Protective Order Governing Confidentiality, <u>KPMG FAS, et al. v. Diligence LLC</u>, D.D.C. Civil No. 05-2204 (PLF) ¶ 21 (copy attached as Exhibit B). All discovery taken in the KPMG FAS Litigation was designated "Confidential" under the terms of the Protective Order, and therefore was (and continues to be) subject to the Protective Order.

### C.     IPOC's Subpoena to Hughes Hubbard In this Action

As noted, just hours after the Rule 26(f) conference on July 14, 2006—and even though Plaintiff IPOC was fully aware that both Defendants would shortly file dispositive motions and seek to stay discovery (as contemplated by LCvR 16.3(c))—IPOC served Hughes Hubbard with a subpoena (the "Subpoena"). The Subpoena purports to require Hughes Hubbard (notably, not KPMG FAS) to produce all of its client files from the KPMG FAS Litigation, including unredacted copies of pleadings kept under seal pursuant to this Court's Seal Order, as well as all discovery produced in the KPMG FAS Litigation, notwithstanding the Protective Order. A copy of the subpoena is attached hereto as Exhibit C.

On July 21, 2006, Hughes Hubbard objected in writing (with a copy to Diligence) to the Subpoena for numerous reasons, including among other grounds, that the Subpoena (i) was improperly directed to Hughes Hubbard, rather than KPMG FAS, which owns its client

files; and (ii) that Diligence's pending motion to stay discovery "moots the Subpoena until such [stay] motion has been addressed." Exhibit D.

Following a letter dated July 24, 2006 (copy attached at Exhibit E[1]) from IPOC's counsel to Hughes Hubbard, several conversations between IPOC and Hughes Hubbard apparently occurred. These conversations culminated with an email from Hughes Hubbard to IPOC on July 27, 2006 (with a copy to Diligence), offering to produce to IPOC "complete copies" of various specific sealed and/or redacted filings in the KPMG FAS v. Diligence matter, as well as to make "any other unredacted pleadings from KPMG v. Diligence available for inspection." Exhibit F. The July 27 email stated Hughes Hubbard's intention to produce those materials to IPOC "early next week." The July 27 email further indicated that Hughes Hubbard is "prepared to provide copies of the discovery [KPMG FAS] obtained in the KPMG v. Diligence action." Id.

In response to the July 27 email from Hughes Hubbard, the following day Diligence sent Hughes Hubbard a letter objecting to any production to IPOC and detailing, among other things, the parties' continuing obligations under the Seal Order and Protective Order entered in the KPMG FAS Litigation. Diligence's letter closed by requesting that Hughes Hubbard contact Diligence at its "early convenience so that we may discuss Hughes, Hubbard's

---

[1] Although the copy to Diligence, sent only by mail, was dated Monday July 24, Diligence did not receive it until Thursday, July 27. It appears, therefore, that it was not placed in the United States mail by IPOC until late Tuesday or Wednesday.

position on the matters set out above and, if necessary, seek emergency relief from the Court

prior to any production by your firm."

The following day (Saturday, July 29), Hughes Hubbard sent an email to

undersigned counsel noting its disagreement with each of Diligence's positions.  The email

concluded by informing Diligence that "it seems to us that we are at liberty to comply with the

subpoena without further notice to you."  Exhibit A.  Following an unsuccessful meet-and-confer

with IPOC's counsel and Hughes Hubbard, this motion followed.[2]

## ARGUMENT

**I.    EXPEDITED CONSIDERATION OF THE PENDING MOTION TO STAY
       DISCOVERY IS NECESSARY GIVEN HUGHES HUBBARD'S STATED INTENT
       TO PRODUCE EARLY THIS WEEK DOCUMENTS UNDER SEAL PURSUANT
       TO THIS COURT'S ORDER.**

Hughes Hubbard's recent statements indicate that it is on the verge of producing

to Plaintiff documents filed under seal in the KPMG FAS Litigation.  Last Thursday (July 27),

Hughes Hubbard informed Plaintiff via email (with a copy to Diligence) that it intended to

produce unredacted copies of pleadings from the KPMG FAS Litigation—which were filed

under seal pursuant to this Court's orders—to IPOC "early [this] week."  Ex. F.  Over the

weekend, Hughes Hubbard confirmed to undersigned counsel its view that "it seems to us that

---

[2] Counsel for Defendant BGR indicated no objection to the relief requested herein.

7

we are at liberty" to produce unredacted copies of those sealed pleadings to Plaintiff "without further notice to you." Ex. A.

To avoid the imminent production by Hughes Hubbard of the unredacted pleadings at issue mooting the relief requested by Diligence, expedited consideration of the pending motion to stay discovery filed by Diligence on July 20, 2006 is necessary. Accelerating consideration of this motion will not unduly burden Plaintiff; to the contrary, its opposition brief to Diligence's stay motion is currently due in just three days (August 3).

For the reasons set forth in greater detail in Diligence's motion to stay, and BGR's motion for a protective order—both of which are hereby incorporated by reference—discovery in this matter should not commence until both pending motions to dismiss have been ruled upon by the Court. To be sure, it is precisely to avoid discovery disputes of this kind that Local Rule Civil Rule 16.3(c) expressly contemplates a stay of discovery where, as here, a dispositive motion is pending that could resolve the case in its entirety. See LCvR 16.3(c)(1) (where a dispositive motion is pending, the parties are to "recommend to the court [whether] discovery or other matters should await a decision on the motion").[3]

---

[3] As this Court has noted, "[i]t is settled that entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of the court's discretion." Chavous v. District of Columbia Fin. Responsibility & Mgmt. Assistance Auth., 201 F.R.D. 1, 2 (D.D.C. 2001) (citing multiple federal cases in which discovery stayed pending resolution of a dispositive motion); Anderson v. United States Attorneys Office, No. 91-2262, 1992 WL 159186, at *1 (D.D.C. June 19, 1992) ("[d]iscovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending") citing Brennan v. Local Union No. 639, Int'l

The interests of justice tilt sharply in favor of a stay. Plainly, a stay would promote efficiency by avoiding unnecessary expenditures of resources by the Court, the parties, and non-party witnesses such as KPMG FAS, on discovery disputes such as the ones presented by Plaintiff's Subpoena to KPMG FAS. In sharp contrast, Plaintiff will not suffer any appreciable prejudice from a stay. In its separate Rule 16.3 statement filed just last Friday (July 28), Plaintiff proposes a one year discovery period (ending July 14, 2007), with a dispositive motions deadline of September 14, 2007. Plaintiff further proposes that Initial Disclosures be delayed until August 30, 2006 – almost two and one-half months after filing on this Complaint. As highlighted by Plaintiff's own proposals to the Court, there is nothing to suggest that non-party discovery in this case must proceed on an urgent timetable.

## II.    TO PREVENT AN IRREPRABLE VIOLATION OF THIS COURT'S ORDERS IN THE KPMG FAS LITIGATION, AN ORDER SHOULD ISSUE PROHIBITING HUGHES HUBBARD FROM PRODUCING ANY DOCUMENTS TO PLAINTIFF PENDING FURTHER ORDER OF THE COURT.

As detailed above, KPMG FAS's counsel is now on the cusp of producing unredacted versions of pleadings that KPMG FAS itself filed under seal and urgently argued to the Court should be maintained under seal. This *volte face* is not only dramatic, but unilateral disclosure of the unredacted pleadings plainly would violate this Court's Order of January 4, 2006. After granting in large part the relief requested by *both* parties, the Court expressly

Brotherhood of Teamsters, 494 F.2d 1092, 1100 (D.C. Cir. 1974).

ordered that the parties seek joint agreement on the documents to be maintained under seal "in view of the defendant's pending *motion* to maintain the case under seal and *its* expressed interest in the potentially confidential nature of some of the documents currently filed under seal." January 4, 2006 Memorandum Opinion and Order (the "Seal Order") (emphasis added). The imminent production by Hughes Hubbard threatens that interest with an irreparable disclosure of materials ordered sealed by this Court at the parties' request.

In addition, Paragraph 21 of the Protective Order requires "best efforts to give the Producing Party a reasonable opportunity to seek to quash or otherwise seek relief from the subpoena or other legal process" before disclosure.   Protective Order ¶ 21.  The parties designated all discovery in the KPMG FAS as "Confidential" pursuant to the Protective Order which, by its terms, continues in effect notwithstanding dismissal of the KPMG FAS Litigation.

To maintain the *status quo,* and thus prevent imminent disclosure of Diligence's confidential information, Diligence respectfully requests that the Court enter an order prohibiting Hughes Hubbard (and KPMG FAS) from disclosing to IPOC or anyone else (i) any unredacted copies of pleadings from the KPMG FAS Litigation, and (ii) any discovery designated "Confidential" pursuant to the Protective Order entered in the KPMG FAS Litigation, pending further order of this Court.

## CONCLUSION

For the foregoing reasons, Diligence respectfully requests that its Motion for

Emergency Consideration of Motion to Stay Discovery and For Order Prohibiting Disclosure of

Sealed Court Materials be granted.

Respectfully submitted,

July 31, 2006                                      AEGIS LAW GROUP LLP


By:        /s/ Paul C. Rauser
           Paul C. Rauser (D.C. Bar No. 461722)
           Michael K. Ross (D.C. Bar No. 458573)
           Oliver Garcia (D.C. Bar No. 456600)
           901 F Street, N.W., Suite 500
           Washington, D.C. 20004
           T: 202-737-3500
           F: 202-737-3330

           *Attorneys for Defendant Diligence Inc.*

# EXHIBIT A

-------- Forwarded Message --------
**From:** Adler, Derek J.T. <adler@hugheshubbard.com>
**To:** prauser@aegislawgroup.com
**Cc:** Anderson, Kimball <KAnderso@winston.com>
**Subject:** IPOC v. Diligence, Subpoena to Hughes Hubbard
**Date:** Sat, 29 Jul 2006 17:13:38 -0400

Dear Paul,

I am in receipt of your letter of July 28, 2006, asserting that for Hughes Hubbard to disclose the materials enumerated in my July 27, 2006 email to Kimball Anderson would breach the confidential settlement agreement between KPMG Financial Advisory Services Ltd et al. and Diligence, would violate various court orders, and would be unlawful.

It does not appear to us that any of the agreements or orders you cite excuses, or could excuse, Hughes Hubbard from complying with a duly-served federal court subpoena after having given advance notice to all affected parties. Indeed, several of the provisions you refer to expressly indicate that in the event of a subpoena our clients' obligation is limited to giving your client reasonable advance notice so that you have an opportunity to challenge the subpoena on any grounds you deem appropriate. In this case, you have had the subpoena to Hughes Hubbard for at least two weeks and have not brought any such challenge. Although you have made a motion to stay discovery, that motion does not raise any substantive challenge to the disclosure sought in the subpoena to Hughes Hubbard, and no stay has in fact been entered.

As we are obligated to do, we have been conferring in good faith with IPOC's attorneys in an effort to resolve our, and our clients', objections to the subpoena. Assuming that we resolve those objections, it seems to us that we are at liberty to comply with the subpoena without further notice to you.

Best regards,

Derek

Derek J.T. Adler

Hughes Hubbard & Reed LLP

One Battery Park Plaza

New York, New York 10004

Tel. 212-837-6086

Fax  212-422-4726

adler@hugheshubbard.com

********************************************************************************

This email and any files transmitted with it may contain privileged or confidential

information. Use, disclosure, copying or distribution of this message by anyone

other than the intended recipient is strictly prohibited. If you have received

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KPMG FINANCIAL ADVISORY          )
SERVICES LIMITED,                )
MALCOLM BUTTERFIELD, and         )          Civil Action No. 05-2204 (PLF)(AK)
MICHAEL MORRISON,                )
                                 )
        *Plaintiffs,*            )
                                 )
v.                               )
                                 )
DILIGENCE LLC                    )
                                 )
        *Defendant.*             )
_____  )

## PROTECTIVE ORDER GOVERNING CONFIDENTIALITY
## AND INADVERTENT DISCLOSURE OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 26(c), the Court hereby enters the

following Protective Order governing confidentiality and inadvertent disclosure of documents.

### I.    Scope of Order

1.    The Court finds that disclosure and discovery activities in these proceedings are

likely to involve production of confidential, proprietary, or private information for which special

protection from public disclosure and from use for any purpose other than prosecuting or

defending this litigation would be warranted, and that the parties have therefore shown good

cause for the entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c).

- 1 -

2.      This Order shall govern the remaining proceedings in this matter and any related

actions that have been or may be originally filed in, transferred to, or removed to this Court and

assigned hereto.

3.      This Protective Order shall govern all documents, the information

contained therein, and all other information produced or disclosed during this action proceeding,

including all copies, excerpts, summaries, or compilations thereof, whether revealed in a

document, deposition, other testimony, discovery response or otherwise, by any party to this

proceeding to any other party or parties.

4.      This Protective Order is binding upon the parties to this proceeding and their

respective attorneys, employees, agents and others who act on their behalf and who may obtain

documents or information disclosed in this proceeding.  Each party undertakes to ensure that its

attorneys, employees, agents and other who act on the party's behalf and who obtain documents

or information disclosed in this proceeding are made aware of this Protective Order and that they

act in conformity herewith. This Order is also binding on any party or non party who obtains any

documents or other information produced or disclosed in this proceeding and who has actual

notice of this Protective Order.

5.      The entry of this Protective Order does not prevent any party from seeking a

further order of this Court or to modify this Protective Order pursuant to Federal Rule of Civil

Procedure 26(c), nor do the parties waive any rights that they may otherwise have under the

Federal Rules of Civil Procedure.

     6.      Nothing herein shall be construed to affect in any manner the admissibility at trial

or any other court proceeding of any document, testimony, or other evidence.

## II.    Designation of "Confidential" and "Attorneys' Eyes Only" Information

     7.      Any party or non party who produces documents, records or other information in

response to a discovery request in this proceeding (a "Producing Party") and who believes in

good faith that such documents, records or information should be protected from disclosure may

designate such documents, records or other information as "Confidential" or "Attorneys' Eyes

Only" in accordance with the terms of this Protective Order.  For purposes of this Protective

Order, the information subject to designation as "Confidential" or "Attorneys' Eyes Only" may

include oral or written testimony; declarations; records; documents; pleadings; information

contained within testimony; records, documents, and pleadings; and other information and

materials, which have been or will be filed with the Court or produced to a party during the

course of this litigation.

     8.      When used in this Protective Order, the term "document(s)" shall include, without

limitation, all "originals" and "duplicates" of all "writings," "recordings," and "photographs," as

those terms are defined in Section 1001 of the Federal Rules of Evidence, and shall include

without limitation all written, typed, photostatic, photographed, recorded, telecopied,

photocopied, or graphic materials of any kind, whether comprised of letters, words, numbers,

pictures, sounds, symbols, electronic data/recording, computer data/files/code, or any

combination thereof. Without limiting the foregoing, the term "Document(s)" includes all

writings, papers, agreements, contracts, correspondence, letters, facsimile transmissions,

memoranda, reports, notes, telegrams, telex, envelopes, statements, studies, publications,

records, messages, books, pamphlets, leaflets, inter-office and intra-office communications,

notebooks, instruments, transcripts, minutes, agendas, indexes, cards, diaries, drafts, revisions,

photocopies, calendars, appointment records, disclosures, questionnaires, histories, chronologies,

time-lines, medical records and reports, health care records and reports, mental health records

and reports, notices, investigation reports and materials, declarations, accountings, evaluations,

summaries, valuations, audits, verifications, inventories, appraisals, studies, endorsement,

powers of attorney, account statements, receipts, invoices, financial statements, balance sheets,

ledgers, books, income statements, expense reports, bills, billing records, checks, canceled

checks, check stubs, bank records, bank deposits and withdrawals, wire transfer and receipt

records, accounts receivable, accounts payable, tax records, safe deposit records, telephone bills

and records, microfilm, electronic mail, microfiches, computer indices, computer printouts,

records stored by means of computer or other electronic means, contents of computer hard discs,

contents of computer backup tapes and discs, photographs, videotapes, films, motion pictures, video discs, audio recordings and cassettes, transcriptions, drawings, surveys, plans, blueprints, specifications, charts, graphics, notes or oral or telephone communications, other written transfers or information, and other data compilations. The term "other data compilations" includes information stored in, or accessible through, computer or other information retrieval systems, whether or not in hard copy form, together with instructions and all other materials necessary to use or interpret such data compilations.

9.      Unless and until otherwise ordered by the Court, or agreed to in writing by and between the parties to this case, all material designated as "Confidential" or "Attorneys' Eyes Only" will not be disclosed except in strict accordance with the terms of this Protective Order.

10.      A Producing Party may designate as "Confidential" only documents, information or testimony which contain non-public, confidential, proprietary or commercially sensitive information, or information of an intimate, personal nature that the Producing Party reasonably believes, in good faith, should not be disclosed to any person other than the persons specified in Paragraphs 18 and 19 herein. Absent a specific order of the Court, once designated "Confidential," such information will be used by the parties solely in connection with this lawsuit and not for any business, competitive, or other function, and such information shall not be disclosed to anyone except as provided herein.

11.    A Producing Party may designate as "Attorneys' Eyes Only" only documents, information or testimony which contain trade secrets or methods, client lists, internal proprietary business information that might reasonably be of value to a Producing Party's competitor, information that the Producing Party reasonably believes must be kept confidential under law, or information the disclosure of the Producing Party reasonably believes may interfere with the Producing Party's performance of its business or professional functions or duties. Absent a specific order by the Court, once designated "Attorneys' Eyes Only," such information will be used by the parties solely in connection with this lawsuit and not for any business, competitive, or other function, and such information shall not be disclosed to anyone except as provided herein.

12.    A Producing Party may designate documents, materials, or things as "Confidential" or "Attorneys' Eyes Only" by affixing the Document, material, or thing with a stamp bearing the words "CONFIDENTIAL – Subject to Protective Order" or "ATTORNEYS' EYES ONLY – Subject to Protective Order," as the case may be, in a location that makes the designation readily apparent.

13.    To the extent that matter stored or recorded in the form of electronic or magnetic media (including information, files, databases or programs stored on any digital or analog machine-readable device, computers, Internet sites, discs, networks or tapes)

("Computerized Material") is produced by any party in such form, the Producing Party may

designate such matters as confidential by cover letter referring generally to such matter.

Whenever any party to whom Computerized Material designated as confidential is produced

reduces such material to hardcopy form, that party shall mark the hardcopy form with the

"CONFIDENTIAL – Subject to Protective Order" or "ATTORNEYS' EYES ONLY – Subject

to Protective Order" designation.

14.    Any party wishing to designate deposition testimony or documents submitted as

exhibits to a deposition pursuant to this Protective Order must do so either on the record at the

time of the designated testimony or up to thirty (30) calendar days after receipt of the transcript.

The transcript of testimony shall reasonably delineate the beginning and end of designated and

non-designated testimony, with any page of the transcript that contains designated testimony

bearing a prominent Confidential Designation.  Testimony relating to exhibits designated

"CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" shall be designated the same as such

exhibits.  Separate transcripts of designated and non-designated testimony need not be prepared.

Any party requesting to designate deposition testimony and/or exhibits as "CONFIDENTIAL"

or "ATTORNEYS' EYES ONLY" after the deposition is transcribed shall create a list of the

numbers of pages and lines of the transcript that are to be designated.  Such list shall be set forth

on one or more separate pieces of paper, the first of which shall bear the caption of the action

and a statement identifying: (1) the name of the person deposed; (2) the time, date, and place of

the deposition; and (3) the name of the attorney conducting the deposition. The requesting party

shall insert the list before the cover page of the deposition transcript and shall mail or fax copies

of the list to counsel for all parties so that it may be affixed to the face of the transcript and each

copy thereof.

15.    Any party may designate as "Confidential" or "Attorneys' Eyes Only" documents

or discovery materials produced by another party or by a non-party by providing written notice

to the parties of the relevant document Bates numbers or other identifying features within ten

(10) business days after receiving such Documents or discovery materials. The time for

designating documents will not begin to run against a party until such party receives any non-

party Documents.

16.    If any party objects to the designation of any document, information or testimony

as "Confidential" or "Attorneys' Eyes Only," such party may, in writing, request that the

Producing Party remove or change the designation (the "Written Objection"). The Written

Objection shall specifically identify the information or Documents at issue. The Producing

Party, through its counsel, shall respond in writing within three (3) business days of receipt of

the Written Objection, or within such period of time as may be agreed between the parties. If the

Producing party refuses to remove its challenged designation, its written response to the Written

- 8 -

Objection shall state the reasons for this refusal and the basis for the designation.  Counsel shall

then confer in good faith and an attempt to resolve the dispute concerning the designation within

three (3) business days after receipt of the Producing Party's written response.  If the parties are

unable to resolve such dispute, the objecting party may thereafter file a motion or otherwise seek

resolution by the Court.  In the event of such motion or application the documents, information

or testimony in question may be submitted to the Court for in camera review.

      17.    Subject to the provisions of this Protective Order, Documents designated

"Confidential" and "Attorneys' Eyes Only" may be referred to in discovery, discovery

responses, motions, briefs or other papers filed with the Court and may be used in depositions,

oral arguments or at trial in this action either as exhibits or as the basis for questions.  Any party

that intends to file with the Court or in any publicly available pleading papers containing

documents or information designated "Confidential" and/or "Attorneys' Eyes Only" or derived

from, or derivative of, documents or information designated as such, must submit an original for

placement in the Court's publicly-available case file which redacts all "Attorneys' Eyes Only"

and "Confidential" information or material, and also must provide the chambers of the

Magistrate Judge assigned to this matter with both redacted and unredacted versions of such

filing.

      18.    Any and all material designated as "Confidential" under this Protective Order will

not be disclosed, directly or indirectly, to any person other than:

      (a)    the Court and necessary Court personnel;

      (b)    the named parties in this action, including their officers, directors, and managing directors;

      (c)    the attorneys for each party to this action and, as reasonably necessary, the support staff of such attorneys and outside copying vendors employed by such attorneys;

      (d)    court reporters performing necessary duties in this action; and

      (e)    subject to prior compliance with the terms of Paragraph 20 below, any witness designated to provide deposition and/or trial testimony in this matter.

      19.    Any and all material designated as "Attorneys' Eyes Only" pursuant to this Protective Order will not be disclosed, directly or indirectly, to any person other than:

      (a)    the Court and necessary Court personnel;

      (b)    outside counsel to the parties who are attorneys of record in this action and, as reasonably necessary, the support staff of such attorneys and outside copying vendors employed by such attorneys;

      (c)    court reporters performing necessary duties in this action; and

      (d)    subject to prior compliance with Paragraph 20 below, any author or recipient of a Document for purposes of giving or preparing for deposition or trial testimony in

this matter.

20.    All persons to whom "Confidential" or "Attorneys' Eyes Only" designated

documents, materials, things, or information is disclosed pursuant to Paragraph 18(e) and/or

Paragraph 19(d) of this Protective Order shall not reveal or discuss such documents, materials,

things, or information, except as expressly set forth herein, and shall be required to sign the

Confidentiality Acknowledgment in the form attached hereto as Exhibit A.

21.    If documents, materials, things, or information designated as "Confidential" or

"Attorneys' Eyes Only" pursuant to this Protective Order are called for in a subpoena or other

legal process, the person to whom disclosure of the subpoenaed information is directed shall

promptly give written notice thereof to each party that has designated the information

"Confidential" or "Attorneys' Eyes Only" and shall use best efforts to give the Producing Party a

reasonable opportunity to seek to quash or otherwise seek relief from the subpoena or other legal

process. If reasonably possible, the party receiving such subpoena or process shall not produce

the documents or information until at least thirty (30) days after providing such notice.

22.    At any time after thirty (30) calendar days following the conclusion of this action,

including any appeal, a Producing Party may request in writing to all parties that all documents,

information or testimony designated "Confidential" or "Attorneys' Eyes Only" that it produced

during the course of the action be destroyed or returned to the Supplying Party along with all

- 11 -

hard copies and electronic copies thereof, and all materials derivative thereof other than

materials filed with the Court. Subject to the following paragraph, the parties shall destroy or

return all such documents upon request.

23.    After the conclusion of this action counsel for the parties may retain their notes,

abstractions, or other work product derived from or containing documents, information or

testimony designated as "Confidential" or "Attorneys' Eyes Only", but shall be obligated to

maintain the confidentiality of such work product and keep it secure and shall not disclose or

reveal the contents of said notes, abstractions or other work product. Nothing in this Protective

Order requires the Receiving Party's counsel to disclose protected work product at the

conclusion of this action.

24.    In the event that any additional party is added to this action, that new party will

not have access to "Confidential" or "Attorneys' Eyes Only" Information produced by or

obtained from any party or non-party until the newly added party and its counsel of record

confirms in writing to all other parties that they have read this Protective Order and agree to be

bound by all of its terms.

25.    Nothing in this Protective Order shall prevent Plaintiffs from seeking to recover

physical possession of all documents it asserts Defendant wrongfully obtained from Plaintiffs,

including all copies thereof, and materials incorporating information derived from such

documents, and from seeking to expunge all such documents and information derived therefrom

from all digital and electronic storage media under Defendant's control.

26.     Nothing in this Protective Order shall limit any Producing Party's use or

disclosure of its own documents and information or documents and information obtained from

any source other than a Producing Party, nor shall a Producing Party's designation of documents,

information or testimony as "Confidential" or "Attorneys' Eyes Only" limit such party's rights

to disclose such documents, information or testimony outside this proceeding.

27.     Nothing in this Protective Order shall prevent or otherwise restrict counsel from

rendering advice to their clients and in the course thereof relying generally on knowledge they

have gained based on their review of documents, information or testimony designated as

"Attorneys' Eyes Only", provided that in rendering such advice or communicating with the

client counsel shall not make specific disclosure of any information or materials so designated.

28.     This Protective Order will survive the final determination of this action and will

remain in full force and effect after the conclusion of all proceedings.  The Court shall retain

jurisdiction to enforce the terms of this Protective Order.

III.     **Inadvertent Production and Failure to Designate**

29.     The parties recognize that in the course of discovery, it is possible that a

Producing Party may inadvertently produce documents or information which are entitled to

protection from disclosure under the attorney-client privilege, the attorney work product

doctrine, or other applicable privilege or protection available under District of Columbia or other

applicable law, or may inadvertently fail to designate a document as "Confidential" or

"Attorneys' Eyes Only." The parties agree that the erroneous or inadvertent production of any

material entitled to protection from disclosure under the attorney-client privilege, the attorney

work product doctrine, or any other applicable privilege or protection available under District of

Columbia or other applicable law, will not constitute a waiver of such protection as to either the

subject matter of the material, or as to related documents or communications. Nor will any

inadvertent failure to properly designate a document or information "Confidential" or

"Attorneys' Eyes Only" constitute a waiver of such document or information's eligibility to be

designated as such pursuant to this Order.

    30.    If during document production, a Producing Party inadvertently produces a

document entitled to protection under the attorney-client privilege, the attorney work product

doctrine, or any other applicable privilege or protection under District of Columbia or other

applicable law, the Producing Party may request the return of the inadvertently produced

document at any time before the commencement of trial, whereupon the other party will within

one (1) business day return of the inadvertently produced document along with all copies thereof

and all materials derivative thereof (and will delete any electronic images containing such

information).

31.    If a Producing Party inadvertently fails to properly designate a document "Confidential" or "Attorneys' Eyes Only," the Producing Party may request that such document be accorded all protections under this Order of a "Confidential" or "Attorneys' Eyes Only" Document, provided that the Producing Party informs the party who received such document (the "Receiving Party") of the inadvertent failure to so designate promptly after learning of the inadvertent failure to designate and also provides a copy of the document to the Receiving Party with the appropriate designation.  The Receiving Party shall not be responsible for any disclosure or use of a document inconsistent with the terms of this Protective Order prior to receiving notice that the Producing Party has designated the document as "Confidential" or "Attorney's Eyes Only."

32.    If any Receiving Party learns of any unauthorized disclosure of documents, information or testimony that has been designated as "Confidential" or "Attorneys' Eyes Only", it shall immediately (a) inform the Producing Party in writing of all pertinent facts relating to such disclosure, (b) make its best efforts to retrieve all copies of such documents, information or testimony, (c) inform the person or persons to whom unauthorized disclosures were made of all of the terms of this Protective Order, and (d) request such person or persons execute the Acknowledgment that is attached hereto as Exhibit A.

- 15 -

33.    Exceptions or modifications to this Order may be made only by order of this

Court.

　　　　　　SO ORDERED

DATED: _____        _____

　　　　　　　　　　　　　　　　United States Magistrate Judge

**EXHIBIT A**

**CONFIDENTIALITY ACKNOWLEDGEMENT**

I, _____, hereby acknowledge that: (i) I have read the foregoing Protective Order, dated _____, 2006, which I am informed has been entered by the Court in the lawsuit captioned KPMG Financial Advisory Services Limited, et al. v. Diligence LLC, Civil Action No. 05-2204 (PLF); (ii) I understand the terms of the Protective Order; (iii) I agree, upon the potential penalty of contempt of court and other civil remedies under the laws of the District of Columbia, to be bound by the terms of the Protective Order and will not reveal documents, information or testimony designated as Confidential or Attorneys' Eyes Only to anyone except as expressly directed by order of the Court; (iv) I agree to keep all documents, information and testimony designated as Confidential or Attorneys' Eyes Only, and all copies thereof and all materials derivative thereof, in a secure manner to avoid access by any other person, and will return such documents, information or testimony promptly upon receiving a request to do so from the party or other person who provided such documents, information or testimony to me; and (v) I submit my person to the jurisdiction of the United States District Court for the District of Columbia for the limited purpose of securing compliance with the terms and conditions of the Protective Order.

DATE: _____    _____
                                                    (Signature)


                              Name: _____
                              Business Address: _____
                                                _____
                                                _____

- 17 -

# EXHIBIT C

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| **IPOC INTERNATIONAL GROWTH FUND, Plaintiff,** <br> **v. DILIGENCE LLC AND BARBOUR GRIFFITH &** <br> **ROGERS, LLC, Defendants.** | **SUBPOENA IN A CIVIL CASE** <br><br> **CASE NUMBER[1] 1:06CV01109-PLF** |

**TO:**   Hughes Hubbard & Reed LLP
c/o Derek J. Adler
1775 I Street, N.W.
Washington, D.C. 20006-2401

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the documents and objects described on Exhibit A hereto at the place, date, and time specified below.

| PLACE <br> Winston & Strawn LLP, 1700 K Street, N.W., Washington, D.C. 20006 | DATE AND TIME <br> July 24, 2006    10:00 a.m. |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT <br><br> Attorney for Plaintiff  *Carol A. Joffe* | DATE <br><br> July 14, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Carol A. Joffe, Winston & Strawn, 1700 K Street, N.W., Washington, D.C 20006-3817, (202) 282-5996

### (See Rule 45, Federal Rules of Civil Procedure, Parts C&D on Reverse)

---

[1]  If action is pending in district other than district of issuance, state district under case number.

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1.  "Diligence LLC" shall mean Diligence LLC and any of its affiliates, predecessors, successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons purporting to act on its behalf.

2.  "BGR" or "Barbour Griffith & Rogers " shall mean Barbour Griffith & Rogers, LLC and any of its affiliates, predecessors, successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons purporting to act on its behalf.

3.  LVFG shall mean LV Finance Group Ltd and any of its affiliates, predecessors, successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons purporting to act on its behalf.

4.  "Plaintiff" or "IPOC" shall mean IPOC International Growth Fund Limited and any of its predecessor, successors, subsidiaries, parent companies, agents, representatives, partners, employees, former employees, attorneys or persons purporting to act on its behalf.

5.  "KPMG FAS" or "KPMG Financial Advisory Services" shall mean KPMG Financial Advisory Services Limited and any of its predecessor, successors, subsidiaries, parent companies, agents, representatives, partners, employees, former employees, attorneys or persons purporting to act on its behalf.

6. "Person(s)" refers to all natural persons and all forms of business organizations, including corporations, partnerships, limited partnerships, unincorporated associations, trusts, governmental bodies, and/or all other identifiable entities.

7. "Document(s)" shall include all writings and recordings and shall include, without limitation, any kind of material whatsoever whether it is written, typewritten, printed, graphic, encoded, filmed, or reproduced by any other mechanical or electronic process or stored in computer memory or data bank, including, but not limited to, notes, memoranda, letters, reports, telegrams, publications, contracts, drawings, designs, data sheets, laboratory notebooks, specifications, schematics, blueprints, recordings, transcriptions of recordings, computer tapes, diskettes, or other magnetic media, bank checks, vouchers, charge slips, invoices, expense account reports, receipts, freight bills, agreements, corporate resolutions, minutes, books, binders, accounts, photographs, and business records, whether or not in Defendant's possession or under Defendant's control, related or pertaining in any way to the subject matter to which the Requests refer, and shall include without limitation, all originals, all file copies, all other non-identical copies, no matter how prepared, and all drafts prepared in connection with such documents, whether used or not. This includes email and other documents saved on computers, email in hard-copy form, and any deleted messages which may be retrieved from backup systems or from your Internet service Provider.

8. "Related to" shall mean anything that constitutes, evidences, contains, embodies, reflects, identifies, states, refers to, deals with, or is, in any manner whatsoever, pertinent to that subject.

9. The singular as used herein shall include the plural and the masculine gender shall include the feminine and the neuter.

2

10. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests, the production of any documents that might otherwise be construed to be outside the scope of any Requests.

11. The term "correspondence" shall mean any exchange of communications in tangible form, including but not limited to, memoranda and letters, between individuals and/or entities, including inter-company and intra-company correspondence or memoranda.

12. The term "communication(s)" shall mean and refer to any exchange or transmission of words or ideas to another person or entity, whether accomplished by person to person, by telephone, by writing, by electronic mail or through another medium, and shall include but is not limited to, discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, and statements or questions.

13. If you contend that the contents of a full and complete response would be protected from disclosure by virtue of a privilege, with respect to any such response state:

   a.  Each privilege which you contend protects the response from disclosure;

   b.  Each and every fact upon which you rely to support the claim of privilege;

   c.  The general subject matter of the response.

### DOCUMENTS TO BE PRODUCED

1.  All documents related to the theft of KPMG Financial Advisory Services' materials related to its investigation of IPOC International Growth Fund Ltd at the request of the Minister of Finance of Bermuda;

2.  All documents related to the lawsuit captioned *KPMG Financial Advisory Services v. Diligence LLC*, case no. 05-2204 (PLF), United States District Court for the District of Columbia, including but not limited to:

3

a. documents produced by any party or third-party;

b. all discovery requests and responses served by any party or third-party;

c. electronic and hard-copy of transcripts of each deposition taken in connection with the case;

d. unredacted copies of all pleadings and documents filed in court;

e. copies of all correspondence between or among the parties to the case or third-parties related to the case , including, but not limited to:

    i. Barbour, Griffith & Rogers, LLC or its counsel; and

    ii. LVFG or its counsel;

f. all documents related to Diligence LLC;

g. all documents related to IPOC International Growth Fund Ltd.;

h. all documents related to KPMG Financial Advisory services that were delivered or otherwise left at the Montvale, New Jersey office of a KPMG LLP on or about October 18, 2005.

3. All documents related to the facts alleged in the Complaint filed in *KPMG Financial Advisory Services v. Diligence LLC*, case no. 05-2204 (PLF), United States District Court for the District of Columbia.

4. All documents related to the facts alleged by counsel for KPMG Financial Advisory Services in *KPMG Financial Advisory Services v. Diligence LLC* at any hearing before the United States District Court for the District of Columbia.

4

# EXHIBIT D

# Hughes Hubbard & Reed LLP

One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726

Derek J.T. Adler
Direct Dial: 212-837-6086
E-mail: adler@hugheshubbard.com

July 21, 2006

<u>VIA FAX AND MAIL</u>

Carol A. Joffe, Esq.
Winston & Strawn
1700 K Street, N.W.
Washington, D.C. 20006-3817

Re:   IPOC International Growth Fund v. Diligence LLC,
      No. 06-01109

Dear Ms. Joffe:

I write with reference to the subpoena (the "Subpoena") directed to Hughes Hubbard & Reed LLP ("Hughes Hubbard") in the above-referenced matter.

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure, Hughes Hubbard asserts the following objections to the Subpoena:

1.   Hughes Hubbard objects to the Subpoena to the extent that it calls for the production of documents that are protected by the attorney-client privilege, the work-product doctrine, or other applicable protections from disclosure. We note that all of the responsive materials will have been gathered or created pursuant to Hughes Hubbard's representation of its clients KPMG Financial Advisory Services Ltd., Malcolm Butterfield, and Michael Morrison. Hughes Hubbard's ethical obligations prevent it from disclosing such materials.

2.   Hughes Hubbard objects to the Subpoena on the ground that all responsive documents in its possession, custody and control are in fact the property of its clients and are under their control. It is improper to serve a subpoena seeking such materials on Hughes Hubbard, rather than its clients and principals.

3.   Hughes Hubbard objects to the Subpoena on the ground that it does not permit a reasonable time for compliance.

4.   Hughes Hubbard objects to the Subpoena on the ground that complying with it would be unduly burdensome and oppressive. The unreasonable burdens that the Subpoena purports to impose include, but are not limited to, an obligation to search and catalogue

47, Avenue Georges Mandel
75116 Paris, France
(33) (1) 44.05.80.00

1775 I Street, N.W.
Washington, D.C.
20006-2401
202-721-4600

350 South Grand Avenue
Los Angeles, California
90071-3442
213-613-2800

201 South Biscayne Boulevard
Miami, Florida
33131-4332
305-358-1666

Akasaka Tokyu Building 6F
2-14-3 Nagata-cho, Chiyoda-ku
Tokyo 100-0014 Japan
(81) (3) 3539-2771

101 Hudson Street
Jersey City, New Jersey
07302-3918
201-536-9220

NY 1073121_1.DOC

# Hughes Hubbard & Reed LLP

what are likely to be hundreds of privileged emails between Hughes Hubbard and its clients and among individual Hughes Hubbard attorneys.

5. Hughes Hubbard objects to the Subpoena on the ground that some of the responsive materials have been produced by other parties and designated as confidential in the litigation entitled KPMG Financial Advisory Services, et al. v. Diligence LLC, Civ. No. 05-2204 (D.D.C.), and are subject to the protective order entered in that case.

6. Hughes Hubbard objects to the Subpoena on the ground that it requires the production of documents and information that are required to be kept confidential under the law of Bermuda, i.e. documents and information related to the work performed by Hughes Hubbard's clients as the statutory inspectors for IPOC International Growth Fund Ltd. and related companies.

7. Hughes Hubbard objects to the Subpoena on the ground that some of the materials it calls for are protected by contractual confidentiality obligations.

8. Hughes Hubbard objects to the Subpoena to the extent that it seeks documents that can be obtained with less burden and expense from another source, including but not limited to documents that can be obtained from the Defendants in the above-referenced action.

Based on the foregoing objections, Hughes Hubbard does not intend to produce documents on or before the deadline stated in the Subpoena. If you wish to pursue this further, we will be happy to confer with you in good faith to see if it is possible to resolve our objections. We expect reasonable notice in the advance of any motion to compel.

Counsel for Diligence LLC in the above-referenced case have advised us that they are moving to stay all discovery in this matter pending the resolution of a motion to dismiss. We presume that this moots the Subpoena until such motion has been addressed.

Sincerely,

Derek J.T. Adler

cc:    Paul Rauser, Esq.

# EXHIBIT E

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 | 333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 |
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | (202) 282-5000 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 |
| BUCKLERSBURY HOUSE<br>3 QUEEN VICTORIA STREET<br>LONDON, EC4N 8NH | FACSIMILE (202) 282-5100<br><br>www.winston.com | 21 AVENUE VICTOR HUGO<br>75116 PARIS, FRANCE |
| | | 101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894 |

CAROL A. JOFFE
(202) 282-5996
cjoffe@winston.com

July 24, 2006

**BY E-MAIL AND U.S. REGULAR MAIL**

Derek J.T. Adler
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004

Re:    **IPOC International Growth Fund v. Diligence LLC,**
       **No. 06-011-09**

Dear Mr. Adler:

I write in response to your letter dated July 21, 2006, in which you articulate eight objections to production of the documents sought in IPOC's subpoena dated July 14, 2006 ("Subpoena"). The letter also states that you "presume" that the filing of a motion to stay discovery by Diligence moots the Subpoena until the motion has been addressed.

We do not agree that the Diligence motion moots the Subpoena. You vigorously opposed a similar motion filed by Diligence in *KPMG FAS v. Diligence.* In that opposition, you cited the relevant case-law holding that the pendency of a motion to dismiss does not ordinarily warrant a stay of discovery and that the party seeking to rebut this presumption must demonstrate why the ordinary rule should not apply. While I understand that the Court granted the motion to stay in that case, the circumstances were quite different.

In regard to the objections stated in your letter, please be advised of the following:

1.    First objection. You appear to contend that all documents in your possession responsive to the Subpoena are protected by the attorney-client or work product privileges. If this is indeed your contention, it is puzzling because we cannot imagine any basis upon which KPMG FAS might contend that many of the documents, including the bundle of documents left at the KPMG office in Montvale, New Jersey, are protected by either the attorney-client or work product privileges.

WINSTON & STRAWN LLP

Derek J.T. Adler
July 24, 2006
Page 2

    2.     Second objection.  You previously assured my partner, Kimball Anderson, that it was unnecessary for IPOC to intervene in *KPMG FAS v. Diligence* to obtain these materials because IPOC could obtain them by Subpoena to your firm.  It is therefore astonishing that you interpose this objection.

    3.     Third objection.  The Subpoena was provided to you on July 14, 2006, after you confirmed to Kimball Anderson that you would accept service.  Production was requested ten days later, on July 24, 2006.  The materials are in your firm's possession.  Ten days does not seem an unreasonable amount of time for production.[1]  If additional time is needed, we are happy to discuss a schedule for production.

    4.     Fourth objection.  We are prepared to come to your firm's offices, in either New York or Washington, or other mutually convenient place, to inspect the materials and will arrange for copying at our client's expense.  IPOC does not seek the production of documents protected by the attorney-client or work product privileges.

    5.     Fifth, Sixth and Seventh objections.  Please provide a separate list of the items that fall within each of these objections so that we may respond appropriately.

    6.     Eighth objection.  You have acknowledged that the documents in your possession were derived from a number of sources but state no basis for your contention that it will be less burdensome and expensive for IPOC to obtain them from another source.  As stated previously, we do not seek production of material protected by the attorney-client or work product privileges and will arrange for copying of the responsive, non-privileged materials.

    I look forward to speaking with you.

Sincerely,

Carol A. Joffe

CAJ:tdd

cc:   Paul Rauser, Esq.

---

[1] Your email four days later requiring that we formally serve the Subpoena on your firm (which we accomplished promptly) does not lessen the ten day period available to you for compliance.

DC:476649.1

**From:** Adler, Derek J.T. <adler@hugheshubbard.com>
**To:** prauser@aegislawgroup.com
**Cc:** Anderson, Kimball <KAnderso@winston.com>
**Subject:** IPOC v. Diligence, Subpoena to Hughes Hubbard
**Date:** Sat, 29 Jul 2006 17:13:38 -0400

Dear Paul,

I am in receipt of your letter of July 28, 2006, asserting that for Hughes Hubbard to disclose the materials enumerated in my July 27, 2006 email to Kimball Anderson would breach the confidential settlement agreement between KPMG Financial Advisory Services Ltd et al. and Diligence, would violate various court orders, and would be unlawful.

It does not appear to us that any of the agreements or orders you cite excuses, or could excuse, Hughes Hubbard from complying with a duly-served federal court subpoena after having given advance notice to all affected parties. Indeed, several of the provisions you refer to expressly indicate that in the event of a subpoena our clients' obligation is limited to giving your client reasonable advance notice so that you have an opportunity to challenge the subpoena on any grounds you deem appropriate. In this case, you have had the subpoena to Hughes Hubbard for at least two weeks and have not brought any such challenge. Although you have made a motion to stay discovery, that motion does not raise any substantive challenge to the disclosure sought in the subpoena to Hughes Hubbard, and no stay has in fact been entered.

As we are obligated to do, we have been conferring in good faith with IPOC's attorneys in an effort to resolve our, and our clients', objections to the subpoena. Assuming that we resolve those objections, it seems to us that we are at liberty to comply with the subpoena without further notice to you.

Best regards,

Derek

Derek J.T. Adler

Hughes Hubbard & Reed LLP

One Battery Park Plaza

New York, New York 10004

Tel. 212-837-6086

Fax  212-422-4726

adler@hugheshubbard.com

*********************************************************************************

This email and any files transmitted with it may contain privileged or confidential

information. Use, disclosure, copying or distribution of this message by anyone

other than the intended recipient is strictly prohibited. If you have received

this email in error please notify the sender by reply email and destroy all copies

of this message in your possession, custody or control.

# EXHIBIT F

**From:** Adler, Derek J.T. <adler@hugheshubbard.com>

**To:** Anderson, Kimball <KAnderso@winston.com>

**Cc:** prauser@aegislawgroup.com

**Subject:** IPOC v. Diligence, Subpoena to Hughes Hubbard & Reed

**Date:** Thu, 27 Jul 2006 15:07:00 -0400

Dear Kimball:

Further to our recent discussions and correspondence, we write to set out a proposal for addressing Hughes Hubbard & Reed's ("Hughes Hubbard's") objections to the subpoena directed to us in the IPOC v. Diligence matter. Without prejudice to the objections stated in my letter of July 21, 2006 to Ms. Joffe, Hughes Hubbard is authorized and prepared to satisfy the subpoena by producing the following documents under the following terms and conditions:

1. Subject to the notes below, we are prepared to produce complete copies of the following filings from the KPMG v. Diligence case: i) the Complaint; ii) my Declaration of November 9, 2005, and exhibits; iii) the Declaration of Guy Enright, and exhibits; and iv) Ms Harvey's Declaration, without exhibits (which consist entirely of the Montvale documents referred to below). Subject to the notes below, we are also prepared to make any other unredacted pleadings from KPMG v. Diligence available for inspection. (We believe that all redactions in such other materials were of information derived from the declarations above and that you will therefore not find them useful.)

2. Subject to the notes below, we are prepared to provide copies of the documents that were received at KPMG US's Montvale office.

3. Subject to the notes below, we are prepared to provide copies of the discovery we obtained in the KPMG v. Diligence action, including documents produced by Diligence, the transcript of the deposition of Diligence's corporate representative, the exhibits to that deposition, and also any materials from non-parties.

4. We will withhold from all materials the actual documents that were taken from KPMG, which comprise materials generated in the course of the confidential investigation of IPOC and related companies and are confidential under Bermuda law. We will redact where documents incorporate substantive information taken from the materials that were stolen, or otherwise reflect confidential information about the IPOC investigation.

5. We note that under the provisions of the protective order entered in the KPMG v. Diligence matter we are required, if "reasonably possible", to wait 30 days after giving notice to Diligence's counsel before disclosing materials designated by Diligence as confidential under that order. We gave Diligence's counsel notice of the subpoena on July 20, 2006. We are copying Diligence's counsel on this email to avoid any misunderstanding about our compliance with our obligations. I don't believe that we are holding materials designated as confidential by any non party, but will need to confirm this.

6. The parties will need to enter a standard confidentiality order protecting these materials from use outside of the proceedings, etc (unless one is already in effect in the action).

If this offer is acceptable, I will arrange for production of those materials not subject to the 30 day delay early next week when I am back in the office.

Best regards,

Derek

*******************************************************************************

This email and any files transmitted with it may contain privileged or confidential

information. Use, disclosure, copying or distribution of this message by anyone

other than the intended recipient is strictly prohibited. If you have received