UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 1:06CV01109 (PLF) |
| DILIGENCE, LLC, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

PLAINTIFF IPOC'S OPPOSITION TO
DEFENDANT BARBOUR GRIFFITH & ROGERS LLC'S MOTION TO DISMISS

Plaintiff IPOC International Growth Fund Limited ("IPOC") hereby opposes the Motion

of Defendant Barbour Griffith & Rogers LLC ("BGR") to Dismiss for Failure to Plead Fraud

with Particularity.

I.    **Introduction.**

The Defendants in this case, Diligence LLC ("Diligence") and BGR engaged in nefarious

conduct intended, among other things, to corrupt an investigation by the Government of

Bermuda and an international arbitration.  Specifically, Diligence and BGR used improper

means, including impersonation of United States and/or British intelligence agents and bribery,

to misappropriate confidential information provided by IPOC to KPMG FAS (which was

retained by the Bermuda Government to conduct an investigation).  (Complaint ¶ 20).  Diligence

and BGR then provided the purloined information to IPOC's litigation adversaries, who then

attempted to improperly influence the Bermuda investigation and to corrupt an international

arbitration. (Complaint ¶ 21).

KPMG FAS initially sued Diligence.  Discovery in that case, some of which has been

obtained by IPOC, shows that BGR was intimately involved in the wrongdoing.  We know from

this discovery that BGR hired Diligence to perpetrate the impersonation and theft, BGR managed the subsequent dissemination of the stolen information, and then conspired with Diligence to cover up the crime. In an e-mail dated January 24, 2006, for example, BGR executive Keith Schuette advises BGR name-partner Ed Rogers (the "R" in BGR) that the "Judge has unsealed the complaint against Diligence from KPMG ... Current strategy if it comes alive in the press is for Diligence to *stonewall*. Will Keep you posted. K." (Exhibit 1, emphasis added). Rogers then inquired about the contents of the unsealed KPMG FAS Complaint, and Schuette responded "[b]asically that KPMG was harmed by Diligence stealing materials under false pretenses, etc ... and that they must cease and desist." *Id.*

BGR's Schuette then summed up the situation: "If judge accepts jurisdiction and agrees to expedited discovery, things will deteriorate in very short order. If he goes against both, then it should die a fairly quiet death." *Id.*

BGR's Motion To Dismiss reflects further stonewalling in the false hope that it will not be held accountable for its wrongdoing and that the matter will die a quiet death. Moreover, BGR's feigned ignorance of the facts demonstrates only that BGR has not been candid with its lawyers or that its lawyers have not been candid with the Court. BGR's Motion is utterly devoid of any merit and should be denied for several reasons.

First, BGR's reliance on Fed. R. Civ. P. 9(b) is entirely misplaced because fraud is not an essential element of any count of IPOC's Complaint. Second, BGR's feigned ignorance of facts sufficient to formulate a defense is complete nonsense. And third, the remedy sought (dismissal with prejudice) is an inappropriate request for a "get out of jail free" card. Contrary to BGR's misplaced arguments, IPOC's Complaint pleads facts that, if proven at trial, would constitute

valid causes of action against BGR.  No more is required under Fed. R. Civ. P. 8 (a claim "shall contain … a short and plain statement showing that the pleader is entitled to relief.").

## II.      Factual Background.

On November 10, 2005, KPMG FAS filed a Complaint against Diligence in this Court. *See KPMG Financial Advisory Services v. Diligence LLC,* Civil Action No. 05-2204 (PLF) ("KPMG Case").  KPMG FAS filed the case under seal because its subject included confidential information about an investigation of IPOC that KPMG FAS was conducting under a Bermuda statute that requires strict confidentiality.  Neither IPOC nor BGR was a party to the KPMG Case.  This action is based on facts nearly identical to those underlying the KPMG Case.  In this action, however, IPOC alleges that BGR hired Diligence to perform the wrongful activities. Exhibit 2 (BGR 00049) (invoice from Diligence to BGR "for Bermuda Report and Germany work- ATelecom").

Access to many of the specific facts underlying the KPMG Case is unavailable to IPOC and to the public because, based upon the agreement of KPMG FAS and Diligence, nearly every document in the Court files is redacted to exclude those facts.  *See* Joint Stipulation Regarding Proposed Redactions to Case File ("Joint Stipulation").  Additionally, to hide its wrongdoing from disclosure, Diligence apparently designated as "confidential" every document it produced in the KPMG Case and redacted from the Court record references to those documents and the facts contained in them, including documents that contain the facts underlying Diligence's theft of confidential information from KPMG FAS.

These redactions and designations have kept many facts underlying the wrongful conduct out of the eye of the public and out of IPOC's view.  IPOC, however, has been able to properly obtain a few BGR documents revealing that Diligence and BGR shared information and worked

together to develop strategies, including a strategy to avoid disclosure of their own wrongdoing. Indeed, BGR's documents demonstrate that (1) BGR is fully apprised of the facts underlying IPOC's Complaint, (2) Diligence kept BGR apprised of *KPMG Financial Advisory Services v. Diligence LLC,* and (3) BGR participated in the formulation of Diligence's strategy, including the decision to "stonewall." Exhibit 1 (BGR 00041). Specifically, the BGR documents reveal:

- On January 24, 2006, two BGR executives, Keith Schuette and Ed Rogers, exchanged e-mails related to the KPMG Case (in which BGR was not a party). *Id.*

- Mr. Schuette advised Mr. Rogers that the "Judge has unsealed the complaint against Diligence from KPMG. . . . . Current strategy if it comes alive in the press is for Diligence to stonewall. Will keep you posted. K" *Id.*

- In response to Mr. Rogers' inquiry about the contents of the unsealed Complaint, Mr. Schuette answered "[b]asically that KPMG was harmed by Diligence stealing materials under false pretenses, etc. . . and that they must cease and desist." *Id.*

- Mr. Schuette summed up the situation: "***If judge accepts jurisdiction and agrees to expedited discovery, things will deteriorate in very short order***. If he goes against both, then it should die a fairly quiet death." *Id.* (emphasis added).

This e-mail exchange between Mr. Schuette and Mr. Rogers is notable because, although BGR was not a party to the case, Mr. Schuette was able to provide Mr. Rogers with a description of the contents of the sealed Complaint on January 24, 2005, the day *before* the entry of the Order directing the Clerk to place the redacted Complaint in the public record, and two (2) days before the redacted Complaint was actually filed in the public record. It appears that Mr.

4

Schuette had access to the unredacted KPMG FAS Complaint, which to this day remains redacted in the public record. IPOC has never been afforded access to the unredacted Complaint.

The BGR documents also reveal that even though BGR was not a party to the KPMG Case, BGR was very much aware of the facts and continued to receive inside information from Diligence. Diligence even consulted BGR regarding legal strategy, including seeking BGR's input into the drafting of Diligence's requests for production of documents to KPMG FAS. Exhibit 3 (BGR 00019-00023) (March 11, 2006 e-mail from Nick Day: "This is what we are proposing. Any thoughts?"). The text of the proposed document requests, sent by Diligence to BGR in advance of service upon KPMG FAS, further demonstrates the extent of BGR's knowledge of the particular facts underlying the litigation. Items seeking information about KPMG FAS personnel "Guy Enright" and "Lee Griffin" are included in the proposed requests for production of documents. *Id.* BGR obviously knows the role of these two individuals in the transactions that are the subject of this and the related case.

In addition to producing documents in the KPMG Case, BGR produced a witness, Keith Schuette, for deposition. Although the transcript was designated confidential and has not been made available to IPOC, we believe that Mr. Schuette testified about the facts of the case. Moreover, BGR undoubtedly has access to and has reviewed the deposition of its own agent.

In June 2006, the KPMG Case was dismissed by stipulation of KPMG FAS and Diligence. The Joint Stipulation and Order that authorizes redactions of the pleadings in the public record remains in effect, shielding from public view most of the facts of Diligence's and BGR's wrongdoing.

On June 15, 2006, IPOC filed its Complaint against Diligence and BGR in this case. IPOC's Complaint contains seven counts:    (1) intentional interference with business

expectancies; (2) violation of the Computer Fraud Act; (3) intentional interference with contractual relations; (4) procuring information by improper means; (5) conspiracy; (6) unfair competition; and (7) unjust enrichment. BGR and Diligence were served with the Summons and Complaint on June 16, 2006.

On June 30, 2006, the Court entered a Consent Order that afforded BGR an extension of time to July 20, 2006 to file an answer "provided that this extension does not postpone any other obligations or waive any discovery in the case." BGR filed its Rule 9(b) motion to dismiss on July 19, 2006 and filed an answer on July 20, 2006.

## III.    ARGUMENT.

### A.    BGR's Reliance On Fed. R. Civ. P. 9(b) Is Misplaced.

To be sure, Rule 9(b) states that averments of fraud or mistake shall be stated with particularity and that "malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Nothing in this Rule, however, requires dismissal of IPOC's Complaint, which alleges no cause of action for common law fraud or mistake. Rule 9(b) simply does not require that the plaintiff state detailed evidentiary facts with particularity when the plaintiff is not alleging fraud or mistake. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *Carlon v. Thaman (In re NationsMart Corp. Sec. Litig)*, 130 F.3d 309, 315 (8th Cir. 1997). "Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated." *Vess,* 317 F.3d at 1105 (quoting *Lone Star Ladies Inv. Club,* 238 F.3d at 368). Instead, where a complaint contains averments of fraud that do not meet the requirements of Rule 9(b), "[t]he proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has

been stated." *Id.*; *see also Carlon v. Thaman*, 130 F.3d at 315. (Rule 9(b) inapplicable where proof of fraud unnecessary to the claim stated).

In determining whether a claim has been stated by IPOC, Rule 8(a) is controlling. Rule 8(a) directs that a claim "shall contain . . . a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "[T]he simplicity and flexibility contemplated by the rules must be taken into account when reviewing a complaint for 9(b) particularity." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Amer., Inc.*, 238 F. Supp. 2d 258, 267 (D.C. Cir. 2002). This Circuit takes a "generous approach to pleadings" and has held "that a complaint is not deficient even if it fails to set out a prima facie case as an initial matter." *Id.* at 269. While Rule 9(b) requires more particularity than does Rule 8, "Rule 9(b) does not completely vitiate the liberality of Rule 8. *Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp. 2d 8, 18 (D.D.C. 2003).

Moreover, in considering a motion to dismiss for failure to plead fraud with particularity under Rule 9(b), "'all the allegations of material fact are taken as true and construed in the light most favorable to the non-moving party...[and] it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved.'" *Kowal v. MCI Communications Corp,* 16 F.3d 1271, 1278 (D.C. Cir. 1994) (citing *Wool v. Tandem,* 818 F.2d 1433, 1439 (9th Cir. 1987)).

With these correct pleading rules in mind, we review briefly IPOC's claims as set forth in its Complaint.

*Count I, Tortious Interference with Business Expectancies.* The elements of this tort do not include fraud. Instead, the elements are: "1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or

7

expectancy, and (4) resultant damage." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Bennett Enters. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995)). Here, IPOC has alleged facts that, if proven at trial, would meet each of these elements. Because IPOC has complied with Rule 8(a), no basis exists for BGR's Motion To Dismiss as it pertains to Count I.

 *Count II, Violation of the Computer Fraud and Abuse Act ("CFAA")*. IPOC's claim alleges a violation of CFAA § 1030(a)(5)(A), which does not require an allegation or showing of an "intent to defraud." *See, e.g.,* 18 U.S.C. § 1030(a)(5)(A)(iii) ("intentionally accesses a protected computer . . ."). Because the section of the CFAA under which IPOC's claim is brought does not require a showing of intent to defraud, Rule 9(b) does not apply to this count. *See Miller v. International Business Machines Corp.*, No. 03-16675, 2005 WL 1253909, *3 (9th Cir. 2005) (Rule 9(b) does not apply to CFAA claims that "are not fraud claims"). Again, IPOC has complied with Rule 8(a), and no basis exists for BGR's Motion To Dismiss as it pertains to Count II.

 *Count III, Procuring Information by Improper Means*. Count III is not dependent on an allegation of fraud. *See* RESTATEMENT (1ST) OF TORTS § 759 ("one who, for purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information"); *see also Den-Tal Ex, Inc. v. Siemens Capital Corp.* 566 A.2d 1214, 1231 (Pa. Super. 1989). Again, IPOC has complied with Rule 8(a), and no basis exists for BGR's Motion To Dismiss as it pertains to Count III.

 *Count IV, Tortious Interference with Contractual Relations*. The elements of this tort do not include fraud. *See King & King, Chartered v. Harbert Int'l, Inc.*, Civil Action No. 06-324

(JDB), 2006 U.S. Dist. LEXIS 42615, *37 (D.D.C. 2006) (elements of tortious interference with contractual relations are "(1) existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach."). Again, IPOC has complied with Rule 8(a), and no basis exists for BGR's Motion To Dismiss as it pertains to Count IV.

*Count V, Unfair Competition*. Fraud is not an element of the tort of unfair competition. "[D]efamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, false advertising or deceptive packaging . . ." may all constitute unfair competition. *B&W Mgt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 (D.C. 1982) (citing W. PROSSER, HANDBOOK OF THE LAW OF TORTS 956-57 (4th Ed. 1971)). IPOC's Complaint meets the requirements of Rule 8(a) on this count, and that is all that is required.

*Count VI, Civil Conspiracy*. Proof of fraud is not required to state a claim for civil conspiracy. "The elements of civil conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994). "There is no heightened pleading requirement for civil conspiracy, nor is civil conspiracy exempt from the operation of Rule 8(a)." *Burnett v. Al Baraka Inv. & Devel. Corp.*, 274 F. Supp. 2d 86, 110 (D.D.C. 2003).

*Count VII, Unjust Enrichment*. IPOC's claim of unjust enrichment does not depend on proof of fraud. The elements of unjust enrichment are: "(1) [plaintiff] conferred a legally

cognizable benefit upon Defendants; (2) Defendants possessed an appreciation or knowledge of the benefit; and (3) Defendants accepted or retained the benefit under inequitable circumstances." *Service Employees Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 83 F. Supp. 2d 70, 93 (D.D.C. 1999), *aff'd in part, rev'd in part on other grounds,* 249 F.3d 1068 (D.C. Cir. 2001). Rule 9(b) does not apply to IPOC's unjust enrichment claim even though "parts of the complaint suggest that defendants deceived . . . or otherwise misrepresented pertinent facts." *King & King, Chartered v. Harbert Int'l, Inc.*, Civil Action No. 06-324 (JDB), 2006 U.S. Dist. LEXIS 42615, at *2, n.1 (D.D.C. 2006).

**B.    BGR Has Adequate Notice Of The Charges Against It.**

The fundamental inquiry, under either Rule 8(a) or Rule 9(b), is whether the defendant has adequate notice of the charges against it so as to allow them to prepare a defense. As stated in *United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 116 (D.D.C. 2003),

> The main purpose of Rule 9(b) is to ensure that defendants have adequate notice of the charges against them to prepare a defense. . . . "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."

(quoting *Harrison, U.S. v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999). Moreover, as noted previously, the requirements of Rule 9(b) are mitigated by Rule 8(a)'s directive that a claim "shall contain . . . a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Amer., Inc.*, 238 F. Supp. 2d 258, 267 (D.C. Cir. 2002). "[T]he simplicity and flexibility contemplated by the rules must be taken into account when reviewing a complaint for 9(b)

particularity." *Pogue*, 238 F. Supp. at 267. "[A] complaint is not deficient even if it fails to set out a prima facie case as an initial matter." *Id.* at 269. "Rule 9(b) does not completely vitiate the liberality of Rule 8." *Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp. 2d 8, 18 (D.D.C. 2003). Even where fraud is an essential element of the cause of action, Rule 9(b) is satisfied where the complaint provides defendant notice of the "time and place of the fraud, . . . the facts misrepresented, . . . and what was given up as a consequence." *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.D.C. 1996). A twelve-year range of time and a geographical description of the place as "nationwide" has been held sufficient under Rule 9(b) because the Complaint "amply allowed defendants to prepare a defense." *Pogue*, 238 F. Supp. 2d at 267 (D.C. Cir. 2002).

Here, IPOC's Complaint more than adequately provides BGR with sufficient information to apprise it of the charges against it and to allow BGR to prepare some defense—other than stonewalling the Court.

*Time*:  IPOC's Complaint makes clear that the events occurred between August 2003 and January 2005.[1]

*Place:*  The Complaint specifies Bermuda and Zurich. The Complaint alleges that Diligence obtained information from or generated by KPMG FAS, a company resident in Bermuda, that was conducting an investigation of IPOC, a Bermuda entity, and that the investigation in question was conducted at the request of the Bermuda Minister of Finance. A

---

[1] BGR's Motion states that "one might divine from allegations made elsewhere in the complaint that the alleged misrepresentation was made sometime between August 2003 and January 31, 2005," an admission that the Complaint sets forth the time of the fraud. Mem. at 4-5.

document submitted to an arbitration in Zurich contained a verbatim recitation from a portion of the stolen materials.[2]

*Wrongdoing:* Diligence impersonated government intelligence agents and bribed KPMG FAS to obtain from KPMG FAS internal IPOC information and transcripts.[3]  Complaint ¶ 19.

*What was given up:* IPOC business records, transcripts of interviews of IPOC personnel and a draft report.  Complaint ¶¶ 17-18.

IPOC's allegations, including averments that portions of the illegally obtained materials appeared in arbitral submissions as well as in the press, show that IPOC had sufficient prediscovery facts to substantiate its claims.  *See Ortega*, 240 F. Supp. 2d at 18 (D.D.C. 2003) (finding that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied . . . that plaintiff has substantial prediscovery evidence of those facts [asserted]").

BGR cannot be serious that IPOC is  required to allege in its Complaint the identity of all the individuals who engaged in the wrongdoing.  Nothing in Rule 8(a) or Rule 9(b) requires such particularly.  Moreover, nothing in the rules allows BGR to escape from the consequences of its wrongdoing merely because it has successfully hidden these names from the public and IPOC thus far.  Unlike *Divittorio v. Equidyne Extraction Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987), cited by BGR, no individuals are named as defendants by IPOC, thus no individual need be given notice of the allegations made against them individually to defend the case.  Moreover, although the court in *Divittorio* dismissed claims against the individual defendants for failure to

---

[2] While BGR suggests in its Motion that the fraud may have occurred in Washington, D.C. rather than Bermuda because the headquarters of Diligence are located in Washington, nothing in the Complaint suggests that the impersonation of government agents occurred outside Bermuda.

[3] This adequately gives notice that IPOC is alleging that Diligence personnel impersonated, i.e., pretended to be, government agents and bribed, i.e., gave something of value to KPMG FAS, to obtain the information.

plead with sufficient particularity, it allowed the complaint to stand against the defendant companies. IPOC's Complaint satisfies Rule 9(b).

BGR also cannot be serious in representing to the Court that:

> IPOC's complaint leaves BGR in the dark as to what was said, when and where it was said, and who said it. Without such information, BGR cannot properly investigate the veracity of IPOC's allegation of fraud or prepare its defense to IPOC's claims effectively.

Mem. at 5. BGR's feigned ignorance is totally transparent and lacking in good faith. The facts of this case are peculiarly within BGR's knowledge. BGR has made it clear that it intends to "stonewall" because otherwise, in BGR's view, "things will deteriorate in very short order." Exhibit 1; *see* Factual Background. BGR has been fully aware of the facts for many months, perhaps years. If BGR truly desires more information, it need only ask its own partners, employees, and agents.

## C.   Dismissal of the Complaint Is Not an Appropriate Remedy.

Finally, even if IPOC's Complaint allegations were governed by Rule 9(b), dismissal is not the appropriate remedy. Rather, leave to amend the Complaint should be granted. *See Firestone*, 76 F.3d at 1209 ("leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud."). In this case, the Complaint has not previously been amended and there is no other reason why leave should not be granted pursuant to Federal Rule of Civil Procedure 15(a).

## IV.     Conclusion.

BGR and Diligence have engaged in some seriously bad conduct for which they should be held accountable. The stonewalling should stop. BGR's Motion To Dismiss should be denied.

Respectfully submitted,

IPOC INTERNATIONAL GROWTH FUND LIMITED

OF COUNSEL:                                     /s/ Carol A. Joffe

Kimball R. Anderson                             Timothy M. Broas (D.C. Bar No. 391145)
WINSTON & STRAWN LLP                            Carol A. Joffe (D.C. Bar No. 351528)
35 W. Wacker Drive                              Anne W. Stukes (D.C. Bar No. 469446)
Chicago, Illinois 60601                         WINSTON & STRAWN LLP
Tel:    (312) 558-5858                          1700 K Street, N.W.
Fax:    (312) 558-5700                          Washington, D.C. 20006
kanderson@winston.com                           Tel:    (202) 282-5996
                                                Fax:    (202) 282-5100
                                                cjoffe@winston.com
                                                *Attorneys for IPOC International Growth Fund Limited*

14

## Certificate of Service

I hereby certify that on this 31st day of July, 2006, I caused a true copy of Plaintiff IPOC's Memorandum in Opposition to Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss for Failure to Plead Fraud with Particularity to be delivered electronically, via the Court's electronic case filing system, to:

> Charles J Cooper
> David H. Thompson
> COOPER & KIRK, PLLC
> Suite 750
> 555 Eleventh Street, NW
> Washington, DC  20004
> 202-220-9600
> 202-220-9601 (FAX)
> *Attorneys for Barbour Griffith & Rogers LLC*
>
> Paul C. Rauser
> AEGIS LAW GROUP LLP
> Suite 500
> 901 F Street, NW
> Washington, D.C.  20004
> 202-737-3500
> 202-737-3330 (FAX)
> *Attorney for Diligence, LLC*

> ___/s/_____
> Carol A. Joffe