# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH FUND LIMITED,

                   **Plaintiff,**

v.

DILIGENCE, LLC, *et al.*,

                   **Defendants.**

         )
         )
         )
         )
         )     C.A. No. 1:06CV01109 (PLF)
         )
         )
         )
         )
         )

## PLAINTIFF IPOC'S OPPOSITION TO DILIGENCE INC.'S MOTION TO DISMISS

Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tele:  (312) 558-5858
Fax:   (312) 558-5700
kanderson@winston.com

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tele:  (202) 282-5988
Fax:   (202) 282-5100
cjoffe@winston.com

*Attorneys for IPOC International Growth Fund Limited*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................ 1

PROCEDURAL BACKGROUND.................................................................................... 2

ARGUMENT.................................................................................................................... 3

I.    The Court Should Disregard and Strike Diligence's References to
      Irrelevant Facts Outside of the Complaint. ...........................................................3

II.   IPOC Has Adequately Stated A Claim Under the Computer Fraud
      and Abuse Act (Count II).......................................................................................4

      A.    IPOC Has Adequately Alleged Loss under the CFAA. ...........................5

      B.    Rule 9(b) Does Not Apply to IPOC's CFAA Claim...............................12

III.  The D.C. Uniform Trade Secrets Act Does Not Preempt IPOC's
      Common-Law Tort Claims. ..................................................................................13

      A.    IPOC's Tort Claims Are Not Preempted Under the Plain
            Terms of the Statute. .............................................................................13

      B.    Other Courts Have Rejected Diligence's Expansive View
            of UTSA Preemption. .............................................................................17

      C.    None of IPOC's Tort Claims Depends Upon the Existence
            of a Trade Secret and None is Otherwise Preempted by the
            UTSA. .....................................................................................................20

IV.   All of IPOC's Common-Law Tort Claims Are Cognizable. ...............................24

      A.    IPOC Has Adequately Stated a Claim of Tortious
            Interference With Business Expectancies (Count I). ..............................24

      B.    IPOC Has Adequately Stated A Claim of Procuring
            Information by Improper Means (Count III). .........................................27

      C.    IPOC Has Adequately Stated A Claim of Tortious
            Interference With Contractual Relations (Count IV).............................30

      D.    IPOC Has Adequately Stated A Claim of Unfair
            Competition (Count V). ..........................................................................31

      E.    IPOC Has Adequately Stated A Claim of Civil Conspiracy
            (Count VI)...............................................................................................34

F.    IPOC Has Adequately Stated A Claim of Unjust
      Enrichment (Count VII). ........................................................................35

CONCLUSION...............................................................................................................37

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.L.A. Schechter Poultry Corp. v. U.S.*, 295 U.S. 495 (1935)......................................31

*America Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444 (E.D. Va. 1998)....................................8

*American Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*,
    390 F. Supp. 2d 1170 (M.D. Fla. 2005)...................................22

*BCCI Holdings (Luxembourg) Societe Anonyme v. Khalil*, 56 F. Supp. 2d 14
    (D.D.C. 1999) ...................................36

*Blank v. Pollack*, 916 F. Supp. 165 (N.D.N.Y. 1996)...................................31

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ...................................24

*Business Equip. Ctr. v. DeJur-Amsco Corp.*, 465 F. Supp. 775 (D.D.C. 1978) ...................................33

*C&F Packing Co. v. IBP*, 1998 WL. 1147139 (N.D. Ill. Mar. 16, 1998)...................................1, 18

*Cardiac Pacemakers, Inc. v. Aspen II Holding Co., Inc.*, 413 F. Supp. 2d 1016
    (D. Minn. 2006) ...................................1, 22

*Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1
    (D.D.C. 2004) ...................................14, 15

*Chevron, U.S.A., Inc. v. F.E.R.C.*, 193 F. Supp. 2d 54 (D.D.C. 2002),
    *aff'd* 345 F. 3d 910 (D.C. Cir. 2003) ...................................28

*Civic Center Motors, Ltd. v. Mason Street Import Cars*,
    387 F. Supp. 2d 378 (S.D.N.Y. 2005) ...................................10, 11

*Composite Marine Propellers, Inc. v. Van der Woude*, 962 F.2d 1263 (7th Cir. 1992)...................................18

*Computer Mgmt. Assistance, Inc. v. Robert F. DeCastro, Inc.*, 220 F.3d 396
    (5th Cir. 2000)...................................8, 22

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................17

*Continental Data Sys., Inc. v. Exxon Corp.*, 1986 WL. 20432 (E.D. Pa. 1986)...................................29

*Cooper v. First Gov't Mortgage and Investors Corp.*, 206 F. Supp. 2d 33
    (D.D.C. 2002) ...................................4

*Coulter Corp. v. Leinert*, 869 F. Supp. 732 (E.D. Mo. 1994)....................................................14, 16

*Crocan Corp. v. Sheller-Globe Corp.*, 385 F. Supp. 251 (N.D. Ill. 1974) ..............................21, 28

*Custom Teleconnect, Inc. v. International Tele-Servs., Inc.*,
    254 F. Supp. 2d 1173 (D. Nev. 2003)......................................................................20, 21, 22, 23

*Dade Int'l, Inc. v. Iverson*, 9 F. Supp. 2d 858 (M.D. Tenn. 1998)..................................................33

*DAG Enters., Inc. v. Exxon Mobil Corp.*, 2001 WL 34778782 (D.D.C. 2001)............................34

*Dominion Nutrition, Inc. v. Cesca*, 2006 WL 560580 (N.D. Ill. Mar. 2, 2006) ....................21, 22

*In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001)......................................11

*EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001) .................8, 9, 10, 11, 24

*Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2006 WL 1460461
    (N.D. Ill. Apr. 6, 2006) .........................................................................................................23

*FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988)....................................................................28

*Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d
    1268 (S.D. Fla. 2003), *aff'd in part, rev'd in part*, 138 Fed. Appx. 297
    (11th Cir. 2005).........................................................................................................................9

*Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48 (D.D.C. 2001) ................................22, 33, 34

*Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021 (D. Minn. 2003) ............................33

*HUD v. Rucker*, 535 U.S. 125 (2002)............................................................................................7

*Harris v. Ladner*, 127 F.3d 1121 (D.C. Cir. 1997).........................................................................30

*Harvard Apparatus, Inc. v. Cowen*, 130 F. Supp. 2d 161 (D. Mass. 2001)............................21, 28

*Hauck Manufacturing Co. v. Astec Industries, Inc.*, 375 F. Supp. 2d 649
    (E.D. Tenn. 2004) ............................................................................................................16, 17

*Hecny Transportation, Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005) ..............................17, 18, 19, 24

*Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales*, 223 F. Supp. 2d 953
    (N.D. Ill. 2002)........................................................................................................................18

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
      307 F. Supp. 2d 521 (S.D.N.Y. 2004) ...................................................................4

*Labor Ready, Inc. v. Williams Staffing*, 149 F. Supp. 2d 398 (N.D. Ill. 2001).............................18

*Learning Curve Toys, L.P. v. Playwood Toys*, 1999 WL. 529572
      (N.D. Ill. July 20, 1999)......................................................................................18

*In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30
      (D.D.C. 2003) ...........................................................................................23, 35, 36

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir. 1996).................................3

*McKesson Med.-Surgical, Inc. v. Micro Bio-Medics, Inc.*, 266 F. Supp. 2d 590
      (E.D. Mich. 2003) ............................................................................................19, 22

*Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202
      (D. Minn. 1988) .............................................................................15, 16, 19, 22, 23

*Miller v. International Bus. Machines Corp.*, No. 03-16675, 2005 WL. 1253909
      (9th Cir. May 27, 2005) ......................................................................................13

*Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67 (D.D.C. 2001).........................14

*Nat'l Cmty. Reinv. Coalition v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124
      (D.D.C. 2003) ........................................................................................................3

*Nexans Wires, S.A. v. Sark-USA*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004),
      *aff'd*, 2006 WL 328292 (2d Cir. Feb. 13, 2006) .................................................9

*PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995)...............................................18

*Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319
      (E.D.N.Y. 2003).............................................................................................. 32, ii

*Postx Corp. v. Secure Data in Motion, Inc.*, 2004 WL. 2663518
      (N.D. Cal. Nov. 20, 2004)....................................................................................22

*Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469 (D. Colo. 1996).......................15, 19, 20, 21, 23

*Rapaport v. U.S. Dept. of Treasury, Office of Thrift Supervision*, 59 F.3d 212
      (D.C. Cir. 1995) ...................................................................................................35

*Register.com, Inc. v. Verio*, 126 F. Supp. 2d 238 (S.D.N.Y. 2000)................................10

*Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006) ...................................................31

*Roy Export Co. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095 (2d Cir. 1982)..............................31

*Sage v. Broadcasting Pubs., Inc.*, 997 F. Supp. 49 (D.D.C. 1998)..................................................24

*See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) .......................3

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*,
     119 F. Supp. 2d 1121 (W.D. Wash. 2000)....................................................................4, 5, 7, 8, 9

*Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*,
     191 F. Supp. 2d 652 (E.D. Va. 2002) ................................................16, 18, 19, 21, 22, 23

*TDS Healthcare Sys. Corp. v. Humana Hosp. Ill., Inc.*, 880 F. Supp. 1572
     (N.D. Ga. 1995) .......................................................................................................................21, 28

*Taylor v. F.D.I.C.*, 132 F.3d 753 (D.C. Cir. 1997) .........................................................................3

*Theofel v. Farey-Jones*, 341 F.3d 978 (9th Cir. 2003), *amended
     by* 359 F.3d 1066, (9th Cir.), *cert. denied*, 543 U.S. 813 (2004)............................................4, 7

*Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968 (N.D. Ill. 2000) ............................18

*Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 2005 WL. 724117
     (E.D. Pa. 2005)...................................................................................................................29

*In re Toys Are Us, Inc., Privacy Litigation*, 2001 WL. 34517252
     (N.D. Calif. 2001) .............................................................................................................6, 7

*Tyco Int'l Inc. v. John Does 1-3*, 2003 WL. 21638205
     (S.D.N.Y. July 11, 2003) ...................................................................................................10

*United States v. Bouchey*, 860 F. Supp. 890 (D.D.C. 1994)..........................................................36

*United States v. Gonzales*, 520 U.S. 1 (1997)..................................................................................7

*United States v. Middleton*, 231 F.3d 1207 (9th Cir. 2000)...........................................................10

*Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F. Supp. 1204
     (E.D.N.Y. 1981), *aff'd*, 697 F.2d 301 (2d Cir. 1982).....................................................32

*Westech Gear Corp. v. Department of Navy*, 1988 WL. 170558 (D.D.C. 1988) .........................29

## STATE CASES

*Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284
(D.C. 1977) ...................................................................................................1, 30

*Allen v. Hall*, 974 P.2d 199 (Or. 1999) ......................................................................25

*B&W Mgt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879 (D.C. 1982).............................1, 32, 33

*Carr v. Brown*, 395 A.2d 79 (D.C. 1978) ........................................................25, 26, 27

*Casco Marina Dev., LLC v. District of Columbia Redev. Land Agency*,
834 A.2d 77 (D.C. 2003) ..................................................................21, 22, 25

*Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47 (D.C. 1991) ....................30

*Crawford v. District of Columbia*, 891 A.2d 216 (D.C. 2006) .......................................13

*Fox v. Country Mut. Ins. Co.*, 7 P.3d 677 (Or. Ct. App. 2000)...............................25, 26

*Weishapl v. Sowers*, 771 A.2d 1014 (D.C. 2001) ...................................................23, 34

## FEDERAL STATUTES

18 U.S.C. § 1030.................................................................4, 5, 6, 7, 9, 11, 12, 13

## LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 103-711 (1994)..............................................................................4

S. Rep. No. 104-357 (1996)..............................................................................5, 6, 11

## FEDERAL RULES

Federal Rule of Civil Procedure 9(b)......................................................1, 5, 12, 13, 37

Federal Rule of Civil Procedure 12(b)(6) ...........................................1, 2, 3, 9, 30, 31

## STATE STATUTES

District of Columbia's Uniform Trade Secrets Act, D.C. Code § 36-407 .................13, 15, 21, 23

**TREATISES**

DOBBS, LAW OF REMEDIES § 4.1(2) ...............................................................................................35

RESTATEMENT (FIRST) OF TORTS ...................................................................................27, 28, 29

ROGER M. MILGRIM, MILGRIM ON TRADE SECRETS § 1.01[4] (1996)...........................................16

W. PROSSER, HANDBOOK OF THE LAW OF TORTS  (4th ed. 1971)..................................................32

## INTRODUCTION

Plaintiff IPOC International Growth Fund Limited ("IPOC") hereby opposes Defendant Diligence's Rule 12(b)(6) motion to dismiss.[1]  The Court should deny Diligence's motion on all grounds because it is untimely.  In addition, the motion fails for the reasons stated below.

This case involves the wrongful actions of Diligence and its co-defendant and handler, Barbour, Griffith and Rogers LLC ("BGR").  At the behest of BGR and IPOC's litigation and business adversaries, Diligence carried out an illegal scheme calculated to influence an investigation of IPOC that was being conducted by Bermuda's Minister of Finance.  Diligence penetrated the investigation, procured information about IPOC, and disclosed that information to IPOC's litigation and business adversaries for use against IPOC's interests.  Complaint ¶¶ 11-23.  To get the information, Diligence used deception and bribery, and even impersonated intelligence agents of the United States and/or Britain.  Complaint ¶¶ 18-23.

Attempting to deflect attention from its own illegal actions, Diligence begins its Motion to Dismiss with accusations about IPOC that are nothing short of scandalous.  As discussed below, the Court should disregard these accusations, as they are far afield from the pleadings in this case, have no relevance to this action, and certainly have no place in the Court's consideration of a Rule 12(b)(6) motion.

After deriding IPOC with a barrage of charges, Diligence finally comes around to challenging the sufficiency of IPOC's Complaint.  Yet none of Diligence's legal arguments has merit.  Diligence first argues that IPOC fails to state a claim under the Computer Fraud and Abuse Act ("CFAA") because IPOC did not own the computers that Diligence infiltrated, and

---

[1]     Although Diligence is named in the Complaint as "Diligence LLC," Diligence filed its motion to dismiss in the name of "Diligence, Inc."  Diligence does not allege in its motion that IPOC named the wrong party.

IPOC purportedly suffered no cognizable "loss" under the statute.  But the CFAA is written broadly to give a remedy to any person who is damaged under the Act, regardless of who owns the computers that housed the information.

Diligence next asserts that all of IPOC's remaining claims are preempted by the District of Columbia Uniform Trade Secrets Act ("UTSA").  In making this argument, Diligence overlooks the obvious:  IPOC's Complaint contains no claim for misappropriation of trade secrets.  Indeed, the words "trade secret" do not appear in the Complaint.  Diligence's argument that the UTSA preempts tort claims that bear no relation to misappropriation of trade secrets is, in the words of one court referenced below, "unimaginable."

Diligence next attacks every common-law tort claim in the Complaint, asserting various reasons that each of these counts is inadequately pleaded, ranging from failure to plead individual elements to the non-existence of the torts under District of Columbia law.  None of these arguments succeeds, however, as IPOC has adequately stated claims upon which relief may be granted in every count of its Complaint.

## PROCEDURAL BACKGROUND

On June 15, 2006, IPOC filed its Complaint against Diligence and BGR in this case.  Defendants were served with the Summons and Complaint on June 16, 2006.  On June 30, 2006, the Court entered a Consent Order that afforded Defendants an extension of time to July 20, 2006 to file an "Answer," "provided that this extension does not postpone any other obligations or waive any discovery in the case."  Diligence filed its motion to dismiss on July 20, 2006 but did not file an Answer.[2]

---

[2]    The Court should deny Diligence's motion to dismiss as untimely.  Diligence's motion to dismiss is untimely and its Answer is late because, by the terms of the Consent Order, the only extension granted was the time to file an Answer, and "no other obligation" was extended.  The

## ARGUMENT

**I.    The Court Should Disregard and Strike Diligence's References to Irrelevant Facts Outside of the Complaint.**

Diligence begins its brief with blatant disregard for the well-settled rule that matters outside the Complaint are not to be cited or asserted in moving to dismiss under Rule 12(b)(6). *See, e.g., Taylor v. F.D.I.C.*, 132 F.3d 753, 762 (D.C. Cir. 1997) ("We may not draw upon facts from outside the pleadings."); *see also Nat'l Cmty. Reinv. Coalition v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124, 131 (D.D.C. 2003) ("In evaluating a Rule 12(b)(6) motion to dismiss, the court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.") (citation omitted). Flouting this proscription, Diligence expends more than a page of its Motion throwing stones at IPOC—including wide-ranging accusations about media, regulatory, and prosecutorial attention to IPOC and the ownership of IPOC—all matters that have no relevance to this case or Diligence's motion. Diligence asks the Court to consider a list of media articles about IPOC and Leonid Reiman. *See id.* at 2-3 & nn.1-2. The Court should disregard and strike all of these accusations from Diligence's Motion because they are not relevant to any allegation of the Complaint or to the substantive issues raised in the Motion.

Diligence's references to media articles and matters outside the complaint are an attempt to discredit IPOC before the Court. The law of this Circuit (and other Circuits) forbids such tactics. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (adopting Fifth Circuit's discussion of judicial notice in *Lovelace v. Software Spectrum Inc.*, 78

---

Consent Order did not extend the time to file a motion under Rule 12(b). As detailed below, however, even if this Court decides to consider Diligence's Motion to Dismiss on the merits, the motion should be denied in full.

F.3d 1015, 1017 (5th Cir. 1996) (holding that judicial notice many not be taken of media articles to prove the truth of the matters asserted in such articles)).

As this Court concluded in *Cooper v. First Gov't Mortgage and Investors Corp.*, 206 F. Supp. 2d 33, 35-36 (D.D.C. 2002), when a defendant "refers to many facts outside the pleadings . . . without giving any record citation, . . . the court disregards all unsupported factual statements presented by the defendant and, thus, limits its analysis to the relevant law and the facts alleged in the complaint." (citations omitted). The same conclusion should apply to Diligence here. The Court should strike all scandalous references in Diligence's brief to matters outside the Complaint and admonish Diligence and its counsel for employing such improper tactics.

## II.    IPOC Has Adequately Stated A Claim Under the Computer Fraud and Abuse Act (Count II).

IPOC has adequately pleaded a claim under the CFAA. The CFAA creates a civil cause of action (18 U.S.C. § 1030(g))[3] against defendants who improperly access and use a protected computer to obtain confidential business information, provided that the claim "involves" one of the five enumerated results in § 1030(a)(5)(B)(i)-(v). Specifically, the CFAA makes liable anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer if the conduct involved an interstate or foreign communication." 18 U.S.C. § 1030(a)(2)(C). "The crux of the offense

---

[3]   The 1994 amendments to the CFAA added this private cause of action. *See* H.R. Conf. Rep. No. 103-711, at Section 290001 (1994). Numerous courts have subsequently recognized that a civil cause of action is apparent from the text of § 1030(g). *See, e.g., Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2003) ("The civil remedy extends to *'any person* who suffers damage or loss by reason of a violation of this section.'") (emphasis in original), *amended by* 359 F.3d 1066 (9th Cir.), *cert. denied*, 543 U.S. 813 (2004); *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 526 (S.D.N.Y. 2004) (stating that § 1030(g) affords civil action for any violation of CFAA); *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1124 & n.3 (W.D. Wash. 2000) (explicitly recognizing that Congress' 1994 amendment to the CFAA added a private cause of action under § 1030(g)).

. . . is abuse of a computer to obtain . . . information." S. Rep. No. 104-357, at 7 (1996). The broad purpose of the CFAA is to prohibit the unauthorized access to computers for commercial advantage. *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1128-29 (W.D. Wash. 2000) (citing S. Rep. No. 104-357, at 7-8 (1996)).

As pleaded in IPOC's Complaint, Defendants' conduct here falls squarely within the language and purpose of the CFAA. Diligence does not contest that IPOC has properly alleged that: (1) Diligence's actions were intentional; (2) Diligence's actions were without authorization; (3) KPMG FAS' network constitutes a "protected computer" within the meaning of the statute; and (4) Diligence's conduct involved an interstate or foreign communication.

Instead, Diligence invites this Court to adopt an overly cramped reading of the key provisions of the CFAA that defies the "broad meaning and intended scope" of this statute. *Shurgard Storage*, 119 F. Supp. at 1129. First, Diligence argues that IPOC has failed to allege that it suffered "loss" within the meaning of § 1030. Mem. at 4-7. Second, Diligence argues that IPOC has failed to plead the level of "factual detail required by Federal Rule of Civil Procedure 9(b)." *Id.* at 7-8. Neither of these arguments has merit.

## A.    IPOC Has Adequately Alleged Loss under the CFAA.

Diligence's contention that "IPOC does not allege any facts that would give rise to a compensable 'loss'" (Mem. at 4) ignores the plain language of both the CFAA and the allegations of IPOC's Complaint. Section 1030(g) of the CFAA provides:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought on if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B).

5

18 U.S.C. § 1030(g).[4]  The statutory subsection relevant to IPOC's Complaint is subsection (a)(5)(B) (i), which states "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."

IPOC has pleaded that it suffered a loss in excess of $5,000 as a result of Defendants' illegal procurement of IPOC's confidential business information from KPMG FAS' computers: "[t]he actions taken by Diligence and/or BGR to illegally access one or more of the KPMG FAS Computers, without authorization or in excess of authorization, in contravention of 18 U.S.C. § 1030, caused damage and loss to IPOC in excess of $5,000." Complaint ¶ 33.[5]  This allegation

---

[4]    The word "loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

The word "damage" means "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). The term "damage" also was addressed in the Senate Report regarding the 1996 amendments to the CFAA as follows:

> The 1994 amendment required both "damage" and "loss," but it is not always clear what constitutes "damage." For example, intruders often alter existing log-on programs so that user passwords are copied to a file which the hackers can retrieve later. After retrieving the newly created password file, the intruder restores the altered log-on file to its original condition. Arguably, in such a situation, neither the computer nor its information is damaged. Nonetheless, this conduct allows the intruder to accumulate valid user passwords to the system, requires all system users to change their passwords, and requires the system administrator to devote resources to resecuring the system. Thus, although there is arguably no "damage," the victim does suffer "loss." If the loss to the victim meets the required monetary threshold, the conduct should be criminal, and the victim should be entitled to relief. The bill therefore defines "damage" in new subsection 1030(c)(8), with a focus on the harm that the law seeks to prevent.

S. Rep. No. 104-357, at 11 (1996).

[5]    So broad is the term "loss" under the CFAA that the $5,000 threshold to establish a private right of action (*see* 18 U.S.C. § 1030(a)(5)(B)(i)) need not be satisfied by any one single act. The court in *In re Toys Are Us, Inc., Privacy Litigation*, 2001 WL 34517252, *11 (N.D. Calif. 2001), ruled that plaintiffs satisfied the statutory damage minimum by alleging that the defendants implanted in each of the plaintiffs' computers a "cookie" (a specially formatted text file) which caused damages in the aggregate exceeding $5,000 during any one-year period. *Toys*

6

alone is more than sufficient to overcome Diligence's contention that IPOC's Complaint fails to allege "compensable loss" under the CFAA.

Nevertheless, with no reference to supporting authority, Diligence insists that IPOC fails to state a CFAA claim because "the computer systems at issue belong to KPMG FAS, not IPOC." Mem. at 4; *see also id.* at 6 ("IPOC's own computer systems were [not] hacked"). Under the law, it makes no difference who owned the computers. The CFAA's civil remedy extends to " *[a]ny person* who suffers damage or loss by reason of a violation of this section." 18 U.S.C. § 1030(g) (emphasis added). "'[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *HUD v. Rucker*, 535 U.S. 125, 131 (2002) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). As the Ninth Circuit held when it examined the "ownership or control requirement" in the CFAA, "[i]ndividuals other than the computer's owner may be proximately harmed by unauthorized access, particularly if they have rights to data stored on it." *Theofel v. Farey-Jones*, 341 F.3d 978, 986 (9th Cir. 2003), *amended by* 359 F.3d 1066, (9th Cir.), *cert. denied*, 543 U.S. 813 (2004).

Diligence next incorrectly argues that IPOC has failed to allege that any protected computers were themselves harmed. Mem. at 5-6. But IPOC is under no obligation to make any such allegation to state a claim under the statute. *Shurgard,* 119 F. Supp. 2d at 1127 (physical damage to the computer or data not required).

Based on the plain language of the CFAA, and supported by the legislative history, courts have broadly construed the terms "damage" and "loss" to reach a wide range of harm to victims resulting from unauthorized access to protected computers. The *Shurgard* court, for example, held that: "The damage to the 'integrity' in the context of data necessarily contemplates

---

*Are Us* also held that no single extraction of information need satisfy the $5,000 damage threshold, if two or more such incidents meet the requirement in combination. *Id.*

7

maintaining the data in a protected state." *Id.* at 1126. Moreover, in *America Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 450 (E.D. Va. 1998), the court held that an improperly accessed computer need not sustain physical damage for the plaintiff to suffer a loss under the statute. Rather, a financial loss is sufficient for purposes of the CFAA. *Id.* (defendant's sending of bulk unauthorized e-mails did not damage the function of the plaintiff's system or data but caused plaintiff to incur technical costs to remedy the unauthorized access, damaged plaintiff's business goodwill and caused plaintiff to lose customers and revenue); *see also EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 580 (1st Cir. 2001) (plaintiff suffered loss consisting of reduced business, harm to its goodwill and the cost of diagnostic measures it incurred, even though it did not sustain physical damage to its computers).

IPOC alleges that Defendants' misappropriation of IPOC's business information has damaged IPOC in several specific respects, including the unfair advantaging of IPOC's litigation adversaries by giving them insight into a confidential Investigation about IPOC. *Id.* ¶¶ 28, 31-32. IPOC alleges that it has been injured because "IPOC's litigation adversaries retained BGR, which in turn retained Diligence, to improperly obtain information received or generated by KPMG FAS in the Investigation and to improperly influence the Investigation on behalf of IPOC's litigation adversaries," *Id.* ¶ 18. IPOC also has alleged impairment in the sense that the security of its data was breached and its contents published to the world. *Id.* ¶¶ 20-21. In light of these allegations, which must be deemed true for purposes of any 12(b)(6) motion, it is perplexing that Diligence would represent to this Court that "IPOC does not allege any facts that would give rise to a compensable 'loss' under the CFAA." Mem. at 4.

Contrary to Diligence's argument, the value of the confidential information obtained as a result of unauthorized access to a computer system is included for purposes of meeting the

$5,000 threshold for "loss" in § 1030(a)(5)(B)(i) and may constitute the basis for an award of damages to compensate the victim for the value of information to which the defendant was not entitled to have access. *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268, 1324 (S.D. Fla. 2003) (awarding plaintiff $2,090,000 as the value of information unlawfully obtained by unauthorized access to computer), *aff'd in part, rev'd in part*, 138 Fed. Appx. 297 (11th Cir. 2005). Remedial and investigative expenses incurred by the plaintiff in responding to the unauthorized access are also included in a damage assessment. *Four Seasons*, 257 F. Supp. 2d at 1322-24 (S.D. Fla., 2003) (awarding plaintiff $28,000 in "remedial and investigative expenses" incurred in investigating and responding to the unauthorized access); *accord Explorica*, 274 F.3d at 585; *Shurgard*, 119 F. Supp. 2d at 1126-27.

In *Shurgard*, the court rejected the same argument that Diligence makes here, namely, that the plaintiff had failed to plead "damage" because "the alleged loss of information by the plaintiff is not 'damage' under the statute." *Shurgard*, 119 F. Supp. 2d at 1126. "The unambiguous meaning of 'any' [in the definition of damage] clearly demonstrates that the statute is meant to apply to 'any' impairment to the integrity of data." *Id.* "The word 'integrity' in the context of data necessarily contemplates maintaining the data in a protected state." *Id.* Because the defendant, like Diligence here, had allegedly "infiltrated the plaintiff's computer network . . . and collected and disseminated the confidential information," the court held that although "no data was physically changed or erased . . . an impairment of its integrity occurred." *Id.* at 1127.

The cases that Diligence cites are inapposite both factually and legally. Two of the cases cited by Diligence were decided on the ground that a plaintiff had failed to put forward *evidence* of a $5,000 loss; thus the cases do not bear upon sufficiency of pleading under Rule 12(b)(6). *See* Mem. at 5-7, citing *Nexans Wires, S.A. v. Sark-USA*, 319 F. Supp. 2d 468, 475 (S.D.N.Y.

9

2004), *aff'd*, 2006 WL 328292 (2d Cir. Feb. 13, 2006) (granting summary judgment); *Tyco Int'l Inc. v. John Does 1-3*, No. 01-CV-3856, 2003 WL 21638205 (S.D.N.Y. July 11, 2003) (referral to a magistrate following a default judgment).

Two other cases that Diligence cites, *United States v. Middleton*, 231 F.3d 1207, 1213-14 (9th Cir. 2000) (Mem. at 5), and *Register.com, Inc. v. Verio*, 126 F. Supp. 2d 238, 252 n.12 (S.D.N.Y. 2000) (Mem. at 7 n.5), also do not concern plaintiff's burden at the pleading stage. *Middleton* addresses the propriety of a trial court's jury instruction, and *Verio* ruled on whether a plaintiff's preliminary injunction motion demonstrated the requisite likelihood of success on the merits. Ironically, *Middleton* approved the jury instruction that emphasized aspects of loss under the CFAA other than injury to a computer itself: "[Y]ou may consider what measures were reasonably necessary to restore the data, program, system, or information that you find was damaged or what measures were reasonably necessary to resecure the data, program, system, or information from further damage." 231 F.3d at 1213. Moreover, *Verio* granted a preliminary injunction against the defendant after holding that plaintiff "demonstrate[d] $5000 in economic damages resulting from the violation, both because of costs relating to repair and lost data and also because of lost good will based on adverse customer reactions." 126 F. Supp. 2d 252 (footnote omitted).

Moreover, none of Diligence's cases stand for the proposition that the only type of cognizable damage under the CFAA is damage to "the computer system itself." Mem. at 5-6 (emphasis in original). Indeed, the court in *Explorica* observed that "Congress's use of the disjunctive, 'damage or loss,' confirms that it anticipated recovery in cases involving other than purely physical damage." *Explorica*, 274 F.3d at 585. The court in *Civic Center Motors, Ltd. v. Mason Street Import Cars*, 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005), held that costs "*related* to

10

computer impairment or computer damages" are also compensable under the CFAA. *Id.* at 382 (emphasis added). The *Civic Center* court even suggested that a plaintiff could recover for the cost of "losses resulting from data corruption," "responding to and repairing the computer problems," and "exposure to liability" due to impairment of information systems. *Id.*

Finally, *In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) is simply irrelevant. *DoubleClick* denied plaintiff damages for lost attention to advertising and the value of collecting improperly obtained demographic information. Such harm, however, is far different than Diligence's theft of "confidential documents and information . . . financial and other business records . . . [and] . . . damage and loss" caused by Diligence's "illegally accessing one or more of the KPMG FAS Computers." Complaint ¶¶ 20, 33.

Contrary to Diligence's urging of a "narrow scope of losses" or "harm" under the statute, Mem. at 4 and 5, the CFAA's legislative history strongly supports a broad reading of what constitutes "damage" or "loss." Congress specifically adopted a definition of damage that would reach a situation in which an intruder gains protected information even though "neither the computer nor its information is damaged." S. Rep. No. 104-357, at 11. Precisely because it recognized that conduct like Diligence's "should be criminal, and the victim should be entitled to relief," Congress adopted a broad definition of "damage" and "loss" that Diligence's argument ignores.

Oddly, if Diligence were right that the "only cognizable claim under the statute stems from injury to the computer system <u>itself</u>" (Mem. at 5-6; emphasis in original), there would essentially be no private right of action for the typical violation of § 1030, no matter how grave the harm suffered by the victim. Section 1030 applies to situations where an intruder "obtains information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). It is not a prerequisite

11

under the CFAA that the intruder cause any direct damage to the victim's computers or that the intruder corrupt or damage the information stored on the computers. The statute prohibits *obtaining the information*, not just conduct that causes direct damage to the "computer system itself."

Accordingly, the only reasonable construction of the CFAA is one that recognizes that all harm caused by the unlawful acquisition of such information is cognizable under the statute. Because the plain language of § 1030 and all of the case law construing that language compel the same conclusion, Diligence's argument must fail.

**B.    Rule 9(b) Does Not Apply to IPOC's CFAA Claim.**

Diligence's contention that IPOC's claim under the CFAA should be dismissed "for failure to meet the pleading requirements of Federal Rule of Civil Procedure 9(b)" (Mem. at 7-8) is mistaken because, in apparently assuming that IPOC's claim proceeds under § 1030(a)(4), it misunderstands under which subsection of § 1030 IPOC seeks relief. Mem. at 7-8. IPOC's CFAA claim proceeds under § 1030(a)(5)(A), which does not require any allegation or showing of an "intent to defraud." *See, e.g.,* 18 U.S.C. § 1030(a)(A)(5)(iii) ("intentionally accesses a protected computer . . ."). By contrast, § 1030(a)(4) concerns a different claim that does require a showing of defendant's intent to defraud. *Id.* § 1030(a)(4) ("knowingly and with intent to defraud, accesses a protected computer. . . ."). Thus, since the section of the CFAA under which IPOC's claim is brought does not require a showing of "intent to defraud," Rule 9(b) is inapposite.

Diligence's own cited authority makes this point. The only case Diligence cites in support of its application of Rule 9(b) to § 1030 itself explains that, although it examined "a number of subclaims under 18 U.S.C. § 1030[,] [o]nly one of those subclaims, brought under

12

§ 1030(a)(4), is a fraud claim . . . not [pleaded] with sufficient particularity to satisfy Rule 9(b)." *Miller v. International Bus. Machines Corp.*, No. 03-16675, 2005 WL 1253909, at *17 (9th Cir. May 27, 2005). Because the other subclaims that were also filed under § 1030 "are not fraud claims," the *Miller* court reversed the district court's dismissal of those subclaims for failure to satisfy Rule 9(b) pleading requirements. *Id.* Diligence would have this Court make the same mistake that the lower court in *Miller* made, and this Court should decline that invitation.

### III. The D.C. Uniform Trade Secrets Act Does Not Preempt IPOC's Common-Law Tort Claims.

Nowhere in its complaint does IPOC allege that the information that Diligence stole was "trade secret" information. Yet Diligence contends that IPOC's claims for tortious interference with business expectancies (Count I), procuring information by improper means (Count III), tortious interference with contractual relations (Count IV), unfair competition (Count V), conspiracy (Count VI), and unjust enrichment (Count VII) are all preempted by the District of Columbia's Uniform Trade Secrets Act, D.C. Code § 36-407 ("DC UTSA"). *See* Mem. at 8-18. This argument is meritless. Diligence urges an interpretation of the statute that is far broader than its plain terms permit, and that other federal courts have flatly rejected. This Court should reject that interpretation as well.

### A. IPOC's Tort Claims Are Not Preempted Under the Plain Terms of the Statute.

The District of Columbia courts have not yet interpreted the preemption provision in the DC UTSA. In predicting how the Court of Appeals would interpret this provision, this Court should "first look to its plain language." *Crawford v. District of Columbia*, 891 A.2d 216, 219 n.6 (D.C. 2006). Section 36-407 of the DC UTSA provides as follows:

(a) Except as provided in subsection (b) of this section, this chapter supersedes *conflicting* tort, restitution and other law of the District of Columbia providing civil remedies *for misappropriation of a trade secret.*

(b) This chapter does not affect:
  (1) Contractual remedies, whether or not based upon misappropriation of a trade secret;
  (2) Other civil remedies that are not based upon a misappropriation of a trade secret; or
  (3) Criminal remedies, whether or not based upon misappropriation of a trade secret.

(Emphases added).

By its plain terms, the DC UTSA supersedes "conflicting" tort law that provides a civil remedy "for misappropriation of a trade secret," but it does not affect—let alone abolish—civil remedies that are "not based upon a misappropriation of a trade secret." Put simply, the UTSA preempts common-law claims for trade-secret misappropriation. *See, e.g., Coulter Corp. v. Leinert*, 869 F. Supp. 732, 734 (E.D. Mo. 1994) ("The plain language clearly precludes common law claims based on a theory of misappropriation of trade secrets").[6]

IPOC has not asserted a claim for trade-secret misappropriation—indeed, IPOC has not even suggested that the stolen information would qualify as "trade secret" information—so preemption is not an issue in this case. Diligence argues, however, that IPOC's various tort claims are preempted because the factual allegations that support those claims *might also* support

---

[6]    The DC UTSA has been interpreted only twice in reported decisions in this Circuit, and neither of those decisions involved the preemption provision at issue here. *See Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1 (D.D.C. 2004) (denying the defendant's motion for summary judgment on the plaintiff's claim for trade secret misappropriation); *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67 (D.D.C. 2001) (holding that customer lists qualify as trade secrets). Because the Act is based on the Uniform Trade Secrets Act, the Court should consider authorities from other jurisdictions that have adopted the UTSA. *See Catalyst & Chem. Servs.*, 350 F. Supp. 2d at 7 n.3.

14

a *hypothetical* trade-secret misappropriation claim.[7] Nothing in the text of DC UTSA § 36-407 suggests that the scope of preemption under the Act is so broad as to foreclose ordinary tort claims that do not in any way require the existence of a "trade secret." Contrary to Diligence's argument, "[t]he Uniform Trade Secrets Act is not a catch-all for industrial torts." *Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202, 204 (D. Minn. 1988) (applying Minnesota law) (quotations omitted).

The UTSA preempts *only* those tort claims that *conflict* with a trade-secret misappropriation claim under the Act. *See Computer Mgmt. Assistance, Inc. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 405 (5th Cir. 2000) (applying Louisiana law) ("In order to be preempted . . . a remedy must 'conflict' with the provisions of the trade secret act"); *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996) (applying Colorado law) ("the UTSA only preempts common law claims that 'conflict' with its provisions"); *Micro Display Sys.*, 699 F. Supp. at 205 ("Only that law which conflicts with the []UTSA is displaced").

A claim under the UTSA requires proof of three elements: (1) the existence of a trade secret; (2) the defendant's acquisition of the trade secret as a result of a confidential relationship; and (3) unauthorized use or disclosure of the trade secret, resulting in loss or damage to the plaintiff. *See Catalyst & Chem. Servs.*, 350 F. Supp. 2d at 7-8. As these elements make clear, the very essence of a claim under the UTSA is the misuse of a *trade secret*. A common-law tort claim cannot be said to *conflict* with a claim under the UTSA if it does not even require the existence of a trade secret. As the court in *Micro Display Systems* explained, "[c]onflicting law

---

[7]    All of the cases cited by Diligence involve parties who asserted common-law tort claims *in addition to* a UTSA claim. As we explain below, Diligence reads those cases too broadly. But it should be clear that those cases have *nothing* to say about a case such as this one, where the plaintiff makes *no claim* for trade-secret misappropriation and *no allegation* that the information at issue constitutes a "trade secret."

15

is that law dealing exclusively with trade secrets. To the extent a cause of action exists in the commercial area not dependent on trade secrets, that cause continues to exist." 699 F. Supp. at 205; *accord Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 659 (E.D. Va. 2002).

As the leading authority on trade secrets has explained, preemption is only appropriate where "other claims are not more than a restatement of the same operative facts which would plainly and exclusively spell out *only trade secret misappropriation*." ROGER M. MILGRIM, MILGRIM ON TRADE SECRETS § 1.01[4], at 1-68.14 (1996) (emphasis added) (*quoted in Powell Prods.*, 948 F. Supp. at 1474); *see also Coulter Corp.*, 869 F. Supp. at 734 ("the issue becomes whether allegations of trade secret misappropriation *alone* comprise the underlying wrong"). IPOC's complaint makes no reference to trade secrets at all, and the "operative facts" it alleges plainly do not "spell out *only* trade secret misappropriation." For this reason, IPOC's claims do not conflict with a trade-secret misappropriation claim under the UTSA, and thus they are not preempted.

Diligence rests its argument on the distinguishable case *Hauck Manufacturing Co. v. Astec Industries, Inc.*, 375 F. Supp. 2d 649 (E.D. Tenn. 2004). There, the court acknowledged the "apparently limiting language displacing only 'conflicting tort, restitutionary, and other law . . . providing civil remedies for *misappropriation of a trade secret.*'" *Id.* at 655 (emphasis in original). Rather than apply this "limiting language" according to its plain meaning, however, the court in *Hauck* fashioned a new standard that finds preemption wherever "proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets." *Id.* at 658. The court then expanded that standard to include claims for misappropriation of "otherwise confidential information" or "otherwise commercially valuable information." *Id.* at

658-59. In short, the court in *Hauck* created a standard for preemption that is wholly unmoored from the "limiting language" of the UTSA, which preempts only *conflicting* tort claims for misappropriation of "*trade secrets*."

Such departure from the plain meaning of the statute should be enough to discredit the decision in *Hauck*. But there is another reason not to follow *Hauck* here. Whereas the plaintiff in *Hauck* asserted a claim under the UTSA and alleged that its information was "trade secret" information (*see* 375 F. Supp. 2d at 653), IPOC has made no such claim in this case. To follow *Hauck* in this case would require the Court to hypothesize a claim that IPOC never asserted, hypothesize a "trade secret" allegation that IPOC never made, and then dismiss IPOC's otherwise properly alleged tort claims based on the *hypothetical* "trade secret" claim. The Court could not follow that approach while following with the rule that dismissal is inappropriate unless there exists no set of facts supporting the plaintiff's claims for relief—the claims actually asserted in the Complaint. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## B.    Other Courts Have Rejected Diligence's Expansive View of UTSA Preemption.

Consistent with the plain meaning of the statute, other courts have rejected the position asserted by Diligence here, holding that claims similar to IPOC's claims are not preempted by the UTSA.

In *Hecny Transportation, Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005), the plaintiff alleged that the defendant "divert[ed] its assets (its physical plant, its employees' time, and its information such as customer lists) to competing businesses, which [the defendant] allowed to operate from [the plaintiff's] premises." *Id.* at 403-04. The plaintiff further alleged that its customer lists, part of the stolen information, were "trade secrets." *Id.* Like Diligence here, the defendant in *Hecny* claimed that all of the plaintiff's tort claims were preempted by the Illinois

17

UTSA. *See id.* The Seventh Circuit found it "unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret." 430 F.3d at 404. The court further observed that "[t]he dominant view is that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets. The Uniform Law Commissioner's comment to the model act supports this approach, stating: 'The [provision] does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal.'" *Id.* at 404-05 (citations omitted). Applying this "dominant view," the court concluded that "[t]his is not a close question. An assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound *even if the customer list were a public record*." *Id.* at 405 (emphasis added). Thus, the UTSA does not preempt common-law tort claims that do not depend upon the existence of "trade secret" information.[8]

Similarly, the Eastern District of Virginia has rejected Diligence's position. In *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652 (E.D. Va. 2002), the court observed that the "distinct thread common to all" of the decisions finding preemption at the motion to dismiss stage was that "they repeatedly establish that the information in issue—as

---

[8] Although Diligence relies on *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995); *Composite Marine Propellers, Inc. v. Van der Woude*, 962 F.2d 1263 (7th Cir. 1992); *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales*, 223 F. Supp. 2d 953 (N.D. Ill. 2002); *Labor Ready, Inc. v. Williams Staffing*, 149 F. Supp. 2d 398 (N.D. Ill. 2001); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968 (N.D. Ill. 2000); *Learning Curve Toys, L.P. v. Playwood Toys*, 1999 WL 529572 (N.D. Ill. July 20, 1999); and *C&F Packing Co. v. IBP*, 1998 WL 1147139 (N.D. Ill. Mar. 16, 1998), to support its expansive interpretation of UTSA preemption, it never even mentions *Hecny*—the most recent statement from the Seventh Circuit on the issue presented here—or the district court decisions following *Hecny*. To the extent that the decisions cited by Diligence are inconsistent with *Hecny*, this Court should give them little (if any) weight.

alleged—constitutes trade secrets before reaching the preemption question." *Id.* at 658-59. "The plain meaning of the statute, coupled with decisions interpreting similar preemption provisions in the context of a motion to dismiss, make it apparent that, unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the [Virginia] UTSA." *Id.* at 659. Like the Seventh Circuit's decision in *Hecny*, this decision from the Eastern District of Virginia makes clear that the UTSA only preempts *trade secret* claims by other names.

Other federal courts have taken a similar view of UTSA preemption. For example, the District Court for the District of Minnesota has held that claims for interference with contractual relations, conversion, misrepresentation, conspiracy, unjust enrichment, and unfair competition were not preempted by Minnesota's UTSA, because those claims were based upon conduct other than "the mere misuse or misappropriation of trade secrets." *Micro Display Sys.*, 699 F. Supp. at 203-05; *see also McKesson Med.-Surgical, Inc. v. Micro Bio-Medics, Inc.*, 266 F. Supp. 2d 590, 600 (E.D. Mich. 2003) (holding that the plaintiff's claim for breach of the duty of loyalty was not preempted by Michigan's UTSA and stating that the statute "only preempts other civil remedies that involve trade secrets").

Likewise, the District Court for the District of Colorado has held that a plaintiff's claims for tortious interference with business relations and civil conspiracy were not preempted by Colorado's UTSA. *See Powell Prods.*, 948 F. Supp. at 1474. As the court there explained, "[i]t is neither necessary nor prudent to preclude all common law claims that are connected with the misappropriation of what a plaintiff claims are trade secrets. Often, a plaintiff will be able to state claims that do not depend upon the information in question qualifying as trade secrets. . . . In addition, a plaintiff may also bring claims that, although involving a trade secret

misappropriation issue, include additional elements not necessary for a misappropriation claim under the UTSA." *Id.* In either case, the tort claim would be sufficiently distinct from a trade-secret misappropriation claim that it would not conflict with a claim under the UTSA. *See id.*

Similarly, the District Court for the District of Nevada rejected the argument that the UTSA preempted claims for wrongful interference with prospective economic advantage, unfair competition, unjust enrichment, and conversion because "[t]he information to be kept confidential in this case was not a 'trade secret' as defined by the UTSA." *Custom Teleconnect, Inc. v. International Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1182-83 (D. Nev. 2003). Because the plaintiff's confidential information was not "trade secret" information, the court concluded that its tort claims "d[id] not rely solely on facts concerning misappropriation of trade secrets" and thus were not preempted. *Id.* at 1183.

These decisions properly focus on the question raised by the plain text of the statute itself—whether the common-law tort claim actually *conflicts* with a *trade-secret misappropriation* claim under the UTSA. A tort claim that does not require proof that the defendant misappropriated a "trade secret," by definition, does not conflict with a claim under the UTSA, which exists to protect "trade secrets" specifically. The decisions cited by Diligence make no attempt to explain how the preempted claims actually *conflict* with a trade-secret misappropriation claim. Those decisions are incorrect under the statute and should not be followed here.

C.    **None of IPOC's Tort Claims Depends Upon the Existence of a Trade Secret and None is Otherwise Preempted by the UTSA.**

IPOC's claims for interference with a business expectancy, procuring information by improper means, tortious interference with contractual relations, unfair competition, conspiracy,

20

and unjust enrichment do not depend in any way upon the existence of a trade secret, and they are not preempted by DC UTSA § 36-407.

1. *Interference With Business Expectancies (Count I).* The existence of a trade secret comprises no part of the elements of this tort, which are: (1) the existence of business expectancies; (2) Diligence's knowledge of the business expectancies; (3) Diligence's intentional procurement of the failure of the business expectancies; and (4) resulting damages. *See, e.g., Casco Marina Dev., LLC v. District of Columbia Redev. Land Agency*, 834 A.2d 77, 83-84 (D.C. 2003). Because this claim exists independently of whether the information stolen by Diligence was "trade secret," this claim is not preempted by the UTSA. *See Dominion Nutrition, Inc. v. Cesca*, 2006 WL 560580 (N.D. Ill. Mar. 2, 2006); *Custom Teleconnect*, 254 F. Supp. 2d at 1182-83; *Stone Castle*, 191 F. Supp. 2d at 656-59; *Powell Prods.*, 948 F. Supp. at 1474.

2. *Procuring Information by Improper Means (Count III).* Count III also places no reliance on trade secret information. This count requires only allegations that Defendants used improper means to obtain confidential information about IPOC's business for the purpose of advancing competing business interests. *See Harvard Apparatus, Inc. v. Cowen*, 130 F. Supp. 2d 161 (D. Mass. 2001); *TDS Healthcare Sys. Corp. v. Humana Hosp. Ill., Inc.*, 880 F. Supp. 1572 (N.D. Ga. 1995); *Crocan Corp. v. Sheller-Globe Corp.*, 385 F. Supp. 251 (N.D. Ill. 1974). Whether the stolen information qualifies as "trade secret" information is immaterial to IPOC's recovery on this claim.

3. *Tortious Interference with Contractual Relations (Count IV).* Likewise, the elements of IPOC's tortious interference claim have no connection with trade secrets. IPOC has alleged facts sufficient to satisfy each element of this tort: (1) the existence of a contract; (2) Diligence's knowledge of the contract; (3) intentional procurement of a breach of the contract; and

21

(4) damages resulting from the breach. *See Casco Marina*, 834 A.2d at 83. IPOC can recover on this claim whether or not the information that Diligence stole was "trade secret" information. Accordingly, this claim is not preempted by the UTSA. *See Cardiac Pacemakers, Inc. v. Aspen II Holding Co., Inc.*, 413 F. Supp. 2d 1016, 1024 (D. Minn. 2006); *Micro Display Sys.*, 699 F. Supp. at 203-05.

  4. *Unfair Competition (Count V).* "Unfair competition is not defined in terms of specific elements, but by the description of various acts that would constitute the tort if they resulted in damage." *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001). IPOC has alleged, *inter alia*, that Diligence employed "bribery, deceit, and other misconduct" to obtain confidential business information and then used that information against IPOC. Complaint ¶ 46. This alleged misconduct constitutes "unfair competition," and it makes no difference whether the information Diligence stole qualifies as "trade secret" information. Accordingly, this claim is not preempted by the UTSA. *See Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396 (5th Cir. 2000) (statutory unfair trade practices claim not preempted); *American Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla. 2005) (unfair trade practices, fraud, and negligent misrepresentation claims not preempted by Florida's UTSA); *Postx Corp. v. Secure Data in Motion, Inc.*, 2004 WL 2663518, at *2-*4 (N.D. Cal. Nov. 20, 2004) (unfair competition claim not preempted); *Custom Teleconnect*, 254 F. Supp. 2d at 1182-83 (same); *Micro Display Sys.*, 699 F. Supp. at 203-05 (same).[9]

---

[9]  Other courts have held claims for fraud, negligent misrepresentation, and breach of fiduciary duty—often the grounds for an unfair competition claim—not preempted by the UTSA. *See Craig Neon, Inc. v. McKenzie*, 25 Fed. Appx. 750, 752 (10th Cir. 2001) (unpublished) (fraud-and-deceit claim not preempted where it could "stand alone even without proving that the sign plans were a trade secret"); *Dominion Nutrition*, 2006 WL 560580, at *4 (breach of fiduciary duty claim not preempted); *McKesson*, 266 F. Supp. 2d at 599-600 (breach of duty of

22

5. *Conspiracy (Count VI).* "The elements of civil conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001) (quotations omitted). IPOC has alleged that Diligence conspired with IPOC's litigation adversaries to interfere with IPOC's business expectancies and contractual relationships, to violate the Computer Fraud and Abuse Act, to procure information by improper means, and to engage in unfair competition. *See* Complaint ¶ 51. Because the existence of a "trade secret" protected under the Act is wholly immaterial to this claim, it is not preempted under the UTSA. *See Stone Castle*, 191 F. Supp. 2d at 656-59; *Powell Prods.*, 948 F. Supp. at 1474; *Micro Display Sys.*, 699 F. Supp. at 203-05.

6. *Unjust Enrichment (Count VII).* To recover for unjust enrichment, IPOC must show that (1) it (or a third party) conferred a benefit upon Diligence; (2) Diligence was aware of the benefit; and (3) Diligence accepted or retained the benefit under inequitable circumstances. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 50 (D.D.C. 2003). IPOC can prove each of these elements without proving that the stolen information was "trade secret" information. Accordingly, this claim is not preempted by the UTSA. *See Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2006 WL 1460461 (N.D. Ill. Apr. 6, 2006) (unjust enrichment claim not preempted by Illinois UTSA); *Custom Teleconnect*, 254 F. Supp. 2d at 1182-83; *Micro Display Sys.*, 699 F. Supp. at 203-05.

In sum, Diligence's expansive reading of § 36-407 is not supported by the plain terms of the statute or the better-reasoned authorities from other jurisdictions. As the Seventh Circuit

---

loyalty claim not preempted); *Stone Castle*, 191 F. Supp. 2d at 656-59 (breach of fiduciary duty and fraud claims not preempted).

explained in *Hecny*, it is "unimaginable" that a defendant who steals confidential information and then uses that information to damage the plaintiff's business "would get a free pass just because none of what he filched is a trade secret." 430 F.3d at 404. IPOC has not asserted any "trade secret" claims in this case, and its tort claims do not depend upon the existence of trade secret information. None of those claims conflicts with the UTSA, and accordingly, none is preempted.

**IV.    All of IPOC's Common-Law Tort Claims Are Cognizable.**

    **A.    IPOC Has Adequately Stated a Claim of Tortious Interference With Business Expectancies (Count I).**

Although there are four elements of a claim for intentional interference with a business expectancy under District of Columbia law, Diligence moves to dismiss IPOC's claim based on a purported deficiency of pleading on only one element, a valid "business expectancy." *See, e.g., Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (elements of the tort are "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage") (quoting *Bennett Enters. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995)); *see also Sage v. Broadcasting Pubs., Inc.*, 997 F. Supp. 49, 54 (D.D.C. 1998).[10]

---

[10]    IPOC has adequately pleaded each element. First, IPOC alleged the existence of four business expectancies. Complaint ¶ 25. Second, IPOC alleged that "Diligence and BGR had knowledge of the business relationships and expectancies possessed by IPOC. Complaint ¶ 26. Third, it was averred by IPOC that "Diligence and BGR engaged in improper, fraudulent, deceptive, and illegal conduct calculated to interfere with IPOC's existing business relationships and expectancies." Complaint ¶ 27. Fourth, IPOC states in its Complaint, "[t]he intentional and malicious actions of BGR and Diligence have interfered with IPOC's business relationships and have damaged … IPOC's business expectancies." Complaint ¶ 28. Thus, IPOC has stated a claim for tortious interference with business expectancies.

Diligence asserts that, to plead a valid business expectancy, IPOC must allege that it and a third party intended to do business together. Mem. at 20. Yet the case law that Diligence cites does not support this assertion. In fact, Diligence's own authorities state that protected expectancies include such expectancies that are prospective in nature, as IPOC alleged in its Complaint. *See Casco Marina Dev., LLC v. District of Columbia Redev. Land Agency*, 834 A.2d 77, 84 (D.C. 2003); *Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978).

IPOC has alleged the existence of several valid business expectancies:

> (a) the Zurich arbitration in which it sought to enforce its rights would be conducted without malicious interference and would not be tainted by improper or illegal activities calculated to corrupt the Zurich arbitration for the benefit of IPOC's litigation adversaries;
>
> (b) the Investigation would be conducted in a evenhanded and impartial manner and in accord with the requirements imposed upon KPMG FAS in its position as investigator;
>
> (c) the materials and information provided by IPOC to KPMG FAS would be held in strict confidence, used solely in connection with the Investigation and would not be utilized to further the interests of IPOC's litigation adversaries; and
>
> (d) IPOC's charter would not be attacked by improper or illegal means, including bribery, fraud and deception.

Complaint ¶ 25. While Diligence argues that IPOC's business expectancies are not valid because the expectations do not involve a prospective business transaction (Mem. at 21), courts have held that the claim of tortious interference with business expectancies may be "made applicable to some noncommercial relationships and prospects." *Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999); *Fox v. Country Mut. Ins. Co.*, 7 P.3d 677, 689 (Or. Ct. App. 2000). In *Allen*, the Oregon Supreme Court recognized that an expectation of an inheritance was a valid business expectancy. Although inheritance is typically a noncommercial expectancy, the court reasoned: "[a]lthough an expectancy of inheritance is, by definition, purely prospective, so are many of the

25

commercial interests that have been associated with and are protected by the tort." *Id.* The court determined that "[t]he fact that economic privilege can form part of the wrongfulness analysis does not mean that it is a necessary element of the tort." *Id.* at 203.

Diligence relies on the *Fox v. Country Mutual Insurance* case to establish that IPOC's legitimate expectancy that the Zurich arbitration and KPMG FAS investigation would be conducted without malicious interference is not a "valid" expectancy. In *Fox*, the court declined to find that the expectancy in the outcome of civil litigation was a valid business expectancy since civil litigation is not a voluntarily created relationship. 7 P.3d at 689. *Fox* is distinguishable from the case at bar, however, for two reasons. First, IPOC's business expectancies (a), (b), and (c) are not rooted in the outcome of the Zurich arbitration but in the fairness of the arbitration and investigatory processes. Second, some aspects of IPOC's relationship with KPMG FAS were voluntarily created and indeed, commercial. IPOC paid KPMG FAS over $8 million to conduct the investigation. Complaint ¶ 15. IPOC thus had a legitimate, vested pecuniary interest that the investigation would be conducted in an evenhanded and impartial manner. Moreover, IPOC agreed to submit to interviews that were outside of the scope of the Bermuda Companies Act of 1981 in exchange for KPMG FAS's promise to hold the information provided in strict confidence. Complaint ¶¶ 16-17. Under these circumstances, it is inconceivable that IPOC's expectancies in the fairness of the Zurich arbitration and KPMG FAS investigation are not valid business expectancies.

Additionally, IPOC's expectancy that its charter would not be attacked by illegal or improper means is also a valid business expectancy. Diligence relies heavily on *Carr v. Brown*, 395 A.2d 79 (D.C. 1978), to support its contention that such an expectancy is invalid because there can be no business expectancy in a governmental license or permit. In *Carr*, the plaintiff's

alleged business expectancy was that a municipal entity would approve his zoning applications within a certain amount of time. *Id.* at 82-83. The plaintiff alleged that the defendant's opposition of the plaintiff's zoning applications caused the delay of the Board's decision. *Carr*, 395 A.2d at 83. The court found that the plaintiff's business expectancies were too remote since they were dependant upon a governmental decision *Id.* at 84. Unlike *Carr*, IPOC here does not await the issuance of a charter by a governmental agency. Rather, IPOC already has a charter which permits it to conduct business. IPOC's charter is essential to its ability to engage in prospective business relationships, which is precisely one of the expectancies that a cause of action for tortious interference with business expectancies is intended to protect. *See id.* at 84. Therefore, this expectancy is also valid. Because IPOC has adequately pleaded valid business relationships and expectancies, and Diligence does not otherwise challenge the sufficiency of IPOC's pleading on this count, the Court should not dismiss Count I.

### B.    IPOC Has Adequately Stated A Claim of Procuring Information by Improper Means (Count III).

Diligence insists that Count III of IPOC's Complaint fails to state a claim because the tort of procuring information by improper means does not exist under District of Columbia law. Mem. at 26-27. Diligence is incorrect.

The tort of procuring information by improper means is grounded in longstanding common law. As the FIRST RESTATEMENT OF TORTS recognized, the tort of procuring information by improper means holds liable "[o]ne who, for the purpose of advancing a rival business interest, procures by improper means information about another's business . . . for the harm caused by his possession, disclosure or use of the information." RESTATEMENT (FIRST) OF TORTS § 759. "Although given information is not a trade secret, one who receives the

27

information in a confidential relationship or discovers it by improper means may be under some duty not to disclose or use that information." *Id.* § 757.

Sections 757 and 759 of the FIRST RESTATEMENT OF TORTS remain the touchstones for the common-law claim of procuring information by improper means. *See, e.g., Harvard Apparatus, Inc. v. Cowen*, 130 F. Supp. 2d 161, 177 (D. Mass. 2001) (Massachusetts law recognizes a claim for procuring confidential and proprietary business information by improper means, as that tort arises from §§ 757 and 759 of the FIRST RESTATEMENT OF TORTS); *TDS Healthcare Systems Corp. v. Humana Hosp. Illinois, Inc.*, 880 F. Supp. 1572, 1584 (N.D. Ga. 1995) (citing § 759 of FIRST RESTATEMENT OF TORTS to conclude that "Georgia law contemplates liability against those who obtain confidential information by improper means for the purpose of advancing a rival business interest, for the harm caused by [the] possession, disclosure, or use of the information" (internal citations omitted)); *Crocan Corp. v. Sheller-Globe Corp.*, 385 F. Supp. 251, 254-55 (N.D. Ill. 1974) (sustaining plaintiff's action for procuring information by improper means, pursuant to §§ 757 and 759 of the FIRST RESTATEMENT OF TORTS).

The District of Columbia's courts have never held that the tort of procuring information by improper means does not exist under D.C. common law. Rather, the District's courts have recognized the existence of the protections uniquely afforded by §§ 757 and 759 of the FIRST RESTATEMENT OF TORTS. *See Chevron, U.S.A., Inc. v. F.E.R.C.*, 193 F. Supp. 2d 54, 61 (D.D.C. 2002) (quoting *FMC Corp. v. Boesky*, 852 F.2d 981, 989-90 (7th Cir. 1988) for the proposition that "misappropriation constitutes a distinct and palpable injury that is legally cognizable under Article III's case or controversy requirement," and that "[c]onfidential business information, even though intangible in nature, is corporate property"), *aff'd* 345 F.3d 910 (D.C. Cir. 2003).

Indeed, in *Westech Gear Corp. v. Department of Navy*, 1988 WL 170558, at *1-2 (D.D.C. 1988) the court cited § 757 of the FIRST RESTATEMENT OF TORTS as the basis for its analysis of plaintiff's action. As decisions from other states demonstrate, such reliance on §§ 757 and 759 confirms the viability of actions for procuring information by improper means and the important public policy goal that this tort still serves. *See Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 2005 WL 724117, at *13 (E.D. Pa. 2005) (relying on § 759 of the FIRST RESTATEMENT OF TORTS to establish the elements of plaintiff's claim for misappropriation of confidential business information); *Continental Data Sys., Inc. v. Exxon Corp.*, 1986 WL 20432, at *3 (E.D. Pa. 1986) (sustaining a jury verdict against defendant for improper procurement of business information because, although not a tort in Pennsylvania, state law and policy aim at discouraging the activities prohibited by § 759 of the FIRST RESTATEMENT OF TORTS).

IPOC has alleged that ""IPOC's litigation adversaries retained BGR, which in turn retained Diligence, to improperly obtain information received or generated by KPMG FAS in the Investigation and to improperly influence the Investigation on behalf of IPOC's litigation adversaries," (Complaint ¶ 18), that Defendants used improper means to procure "information about IPOC's business" (*id.* ¶ 37) that KPMG FAS held "in the strictest confidence" (*id.*) "for the purpose of advancing rival business interests" (*id.* ¶ 38). Diligence does not dispute that these are properly pleaded elements of a claim for procurement of information by improper means, nor could it. Because the tort has longstanding recognition at common law, and in view of the undeniable public policy interest of prohibiting the kind of conduct pleaded in IPOC's Complaint, nothing stops this Court's entertaining IPOC's count for procurement of information by improper means.

29

### C.    IPOC Has Adequately Stated A Claim of Tortious Interference With Contractual Relations (Count IV).

IPOC has sufficiently stated a claim for tortious interference with contractual relations. To establish a claim of tortious interference with contractual relations, IPOC must prove: "(1) existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach." *Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47, 51 n.6 (D.C. 1991) (quoting *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 288 (D.C. 1977)). In its Complaint, IPOC has adequately alleged each of the requisite elements. First, IPOC avers that it entered into an agreement with KPMG FAS. Complaint ¶ 41. Second, IPOC states in its Complaint that "Diligence knew of the Agreement between IPOC and KPMG FAS." Complaint ¶ 42. Third, IPOC alleges that "Diligence intentionally and maliciously induced and/or procured a breach of the Agreement between IPOC and KPMG FAS." Complaint ¶ 43. Fourth, IPOC has stated that it has suffered damages as a result of Diligence's interference with its contractual relations with KPMG FAS. Complaint ¶ 44. Thus, IPOC has pleaded facts to support a showing of each element of its claim of tortious interference with contractual relations against Diligence.

Nevertheless, Diligence contends that the agreement between KPMG FAS and IPOC cannot constitute an enforceable agreement because there was no valid consideration provided by either KPMG FAS or IPOC under the agreement. The question whether a contract did indeed exist is a question of fact and is outside the scope of a motion to dismiss. The facts alleged in IPOC's Complaint must be taken as true for purposes of determining whether IPOC has satisfactorily stated a claim of tortious interference with contractual relations. *See Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997) (finding that to determine whether a plaintiff has stated a claim under Rule 12(b)(6), her factual allegations must be taken as true and all

30

inferences must be drawn in her favor). IPOC has pleaded that it entered into an agreement with KPMG FAS whereby IPOC provided information to KPMG FAS which it promised to hold strictly confidential. Having pleaded that such an agreement exists, IPOC has stated a claim for tortious interference with contractual relations. *See Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006) ("the issue presented by a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").

Although the existence or adequacy of consideration is a factual question and thus is outside the scope of a Rule 12(b)(6) motion, it should be noted that IPOC has alleged valid consideration was provided by both IPOC and KPMG FAS in forming an agreement. *See* Complaint ¶¶ 15-17 (alleging that IPOC paid KPMG FAS over $8 million to conduct the investigation and IPOC agreed to submit to interviews in exchange for KPMG FAS's promise to hold the information provided in strict confidence). For these reasons, the Court should not dismiss Count IV.

### D.    IPOC Has Adequately Stated A Claim of Unfair Competition (Count V).

Far from not having any independent existence, as Diligence contends (Mem. at 27), the tort of unfair competition is one of the broadest recognized in common law. As the Supreme Court has observed, the scope of common law unfair competition "has been extended . . . to apply to misappropriation as well as misrepresentation." *A.L.A. Schechter Poultry Corp. v. U.S.*, 295 U.S. 495, 532 (1935). There are an "'incalculable variety' of illegal practices falling within the unfair competition rubric." *Roy Export Co. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (sustaining plaintiff's unfair competition claim). The tort of unfair competition has been "broadly described as encompassing 'any form of commercial immorality,' . . . or simply as 'endeavoring to reap where [one] has not sown.'" *Blank v. Pollack*, 916 F.

31

Supp. 165, 173 (N.D.N.Y. 1996) (refusing to dismiss plaintiff's unfair competition claim) (quoting *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 239 (1918) (recognizing unfair competition among news reporters)).

Common law unfair competition consists of, *inter alia*, "disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, [and] inciting employees to sabotage." *B&W Mgt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881, n.3 (D.C. 1982) (citing W. Prosser, HANDBOOK OF THE LAW OF TORTS 956-57 (4th ed. 1971)).   When examining acts to determine if unfair competition is at play, the focus is on whether "there has been 'undue advantage through unfair conduct—a breach of confidence [or] reprehensible means of obtaining the valuable property rights of another without compensation.'" *Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F. Supp. 1204, 1216 (E.D.N.Y. 1981), *aff'd*, 697 F.2d 301 (2d Cir. 1982) (internal citations omitted); *see also Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319, 327-28 (E.D.N.Y. 2003) (holding that it is "commercial immorality 'that goes to the crux of unfair competition.'").

Without citation to any authority, Diligence posits that IPOC fails to state a claim because it does not allege that Diligence or BGR are IPOC's business competitors. Mem. at 28. As Diligence's dearth of support for this theory demonstrates, there is no requirement that Defendants be "competitors of IPOC in any recognized market." Mem. at 28. Rather, IPOC adequately pleaded that Defendants committed their tortious acts on behalf of and at the request of IPOC's business competitors with the purpose of advancing rival business interests. Complaint ¶¶ 46-48. These acts fall within the broad scope of common-law unfair competition.

32

The cases that Diligence cites all recognize the propriety of the tort of unfair competition, even if they dismiss the claim for reasons that are legally and factually inapplicable here. IPOC's Complaint alleges that Diligence and BGR—acting at the behest of IPOC's business competitors—engaged in employee intimidation and bribery. Complaint ¶ 48. Yet Diligence cites *B&W Management*, 451 A.2d at 881, n.3 (listing "intimidation . . . of employees" and "bribery" among other circumstances giving rise to unfair competition), to support its argument that IPOC's unfair competition claim does not arise from any recognized "types of unfairly competitive behavior." Mem. at 28. IPOC's Complaint also specifically alleges that IPOC "suffered, and continues to suffer, harm" from Defendants' actions. Complaint ¶ 49. Yet Diligence cites *Business Equip. Ctr. v. DeJur-Amsco Corp.*, 465 F. Supp. 775, 778 (D.D.C. 1978) which recognized an unfair competition claim's existence but dismissed it for failure to allege harm. Mem. at 27. Although none of IPOC's common law claims are federally preempted, Diligence also strangely cites *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1034-35 (D. Minn. 2003) which recognized an unfair competition claim's existence, but disposed of it on summary judgment due to its reliance on federally preempted allegations. Similarly, although IPOC has alleged an agreement with which Diligence and BGR's unfair competition interfered (Complaint ¶¶ 41-45), Diligence cites *Dade Int'l, Inc. v. Iverson*, 9 F. Supp. 2d 858, 862 (M.D. Tenn. 1998), which again recognized an unfair competition claim's existence, but dismissed it for failure to allege the existence of a contract breached by such practices.

Diligence's citation of *Furash & Company, Inc. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001), is especially peculiar. Diligence is correct that the court in *Furash* stated that under District of Columbia law "[u]nfair competition is not defined in terms of specific elements,

33

but by the description of various acts that would constitute the tort if they resulted in damage." Mem. at 27. But rather than extinguish the existence of unfair competition torts in the District of Columbia, the *Furash* court's comment solidifies its broad-based application. *See DAG Enters., Inc. v. Exxon Mobil Corp.*, 2001 WL 34778782 (D.D.C. 2001) (denying motion to dismiss unfair competition claim and citing above quoted statement in *Furash* to support finding that District of Columbia recognizes an even broader application of unfair competition torts than Virginia). Moreover, Diligence's contention that *Furash* dismissed the unfair competition count before it as "'essentially a restatement' of plaintiff's other claims" is misleading. *Furash*, 130 F. Supp. 2d at 57. *Furash* only dismissed plaintiff's unfair competition claim against one of two defendants because of a lack of evidence at the summary judgment stage. *Id.* Plaintiff's unfair competition claim against the remaining defendant survived summary judgment, along with its breach of fiduciary duty and interference with contract claims. *Id.*

As pleaded, Defendants' actions of bribery, intimidation, and the conferral of illicit benefits on IPOC's litigation and commercial rivals are precisely the kinds of "commercial immorality" to which the common law tort of unfair competition is meant to affix liability. Diligence's motion to dismiss IPOC's unfair competition claim should, therefore, be denied.

### E.    IPOC Has Adequately Stated A Claim of Civil Conspiracy (Count VI).

IPOC has sufficiently stated a cause of action for common law conspiracy. In order to prove a claim of common law conspiracy, IPOC must demonstrate: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme. *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001). In its Complaint, IPOC has sufficiently pleaded each of these

elements. IPOC has alleged, "Diligence and BGR combined, with one another and with IPOC's adversaries, to accomplish, by concerted action, unlawful and tortious acts . . . ." Complaint ¶ 51. In addition, IPOC has alleged that it "has been damaged by the overt acts of Diligence and/or BGR that intentionally interfered with IPOC's contractual relationships and business expectancies, violated the Computer Fraud and Abuse Act, procured information by improper means, and engaged in unfair competition, in furtherance of the Defendant's common scheme." Complaint ¶ 53. Thus, IPOC has sufficiently alleged all four elements of civil conspiracy.

Diligence argues that IPOC's civil conspiracy count fails because all other counts in the Complaint purportedly fail to state a claim. Mem. at 28-29. As established above, however, each of IPOC's claims is adequately pleaded. Thus, the requirements to state a claim of civil conspiracy have been met, and this count of the Complaint must not be dismissed.

### F.    IPOC Has Adequately Stated A Claim of Unjust Enrichment (Count VII).

Diligence does not contend that IPOC failed to plead adequately an unjust enrichment claim. Rather, Diligence relies upon its preceding arguments and summarily concludes that Count VII should be dismissed because IPOC's other claims purportedly fail. Diligence's contentions are incorrect.

The fundamental characteristic of unjust enrichment is "that the defendant has been unjustly enriched by receiving something . . . that properly belongs to the plaintiff [thereby] forcing restoration to the plaintiff." *Rapaport v. U.S. Dept. of Treasury, Office of Thrift Supervision*, 59 F.3d 212, 217 (D.C. Cir. 1995) (quoting DOBBS, LAW OF REMEDIES § 4.1(2)). To state a claim for unjust enrichment, a plaintiff must establish that: (1) it conferred a legally cognizable benefit upon defendant; (2) defendant possessed an appreciation or knowledge of the benefit; and (3) defendant accepted or retained the benefit under inequitable circumstances. *In re*

35

*Lorazepam & Clorazepate Antitrust Litigation*, 295 F. Supp. 2d 30, 50 (D.D.C. 2003); *United States v. Bouchey*, 860 F. Supp. 890, 894 (D.D.C. 1994). Because of the doctrine's equitable nature: "[E]very unjust enrichment case is factually unique, for whether there has been unjust enrichment must be determined by the nature of the dealings between the recipient of the benefit and the party seeking restitution, and those dealings will necessarily vary from one case to the next." *In re Lorazepam*, 295 F. Supp. 2d at 51, quoting *BCCI Holdings (Luxembourg) Societe Anonyme v. Khalil,* 56 F. Supp. 2d 14, 66 (D.D.C. 1999).

IPOC properly pleaded an unjust enrichment claim, alleging, *inter alia*, that Defendants "received substantial sums of money" (Complaint ¶ 55) from IPOC's litigation adversaries LVFG and Alfa in exchange for their "wrongful conduct . . . earned at the expense of and to the detriment of IPOC" (*Id.* ¶ 56). Given that these allegation must be taken as true for purposes of Diligence's 12(b)(6) motion, and that for the reasons explained above all of IPOC's claims are properly pleaded, IPOC's count for unjust enrichment should not be dismissed.

36

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny Diligence's motion to dismiss this action under Federal Rule of Civil Procedure 12(b)(6).

July 31, 2006                                    Respectfully submitted,

                                                WINSTON & STRAWN LLP

Of Counsel                                      /s/ Carol A. Joffe

                                                _____
Kimball R. Anderson                             Timothy M. Broas (D.C. Bar No. 391145)
WINSTON & STRAWN LLP                            Carol A. Joffe (D.C. Bar No. 351528)
35 W. Wacker Drive                              Anne W. Stukes (D.C. Bar No. 469446)
Chicago, Illinois 60601                         1700 K Street, N.W.
Tele:   (312) 558-5858                          Washington, D.C. 20006
Fax:    (312) 558-5700                          Tele:   (202) 282-5000
kanderson@winston.com                           Fax:    (202) 282-5100
                                                cjoffe@winston.com

                                                *Attorneys for IPOC International Growth Fund*
                                                *Limited*

37

## Certificate of Service

I hereby certify that I caused the foregoing Opposition to Diligence's Motion to Dismiss to be served electronically, via the Court's electronic case filing system, on the following:

Charles J Cooper
David H. Thompson
COOPER & KIRK, PLLC
Suite 750
555 Eleventh Street, NW
Washington, DC  20004
202-220-9600
202-220-9601 (FAX)
*Attorneys for Barbour Griffith & Rogers LLC*

Paul C. Rauser
AEGIS LAW GROUP LLP
Suite 500
901 F Street, NW
Washington, D.C.  20004
202-737-3500
202-737-3330 (FAX)
*Attorney for Diligence, LLC*

_____/s/_____
Carol A. Joffe