UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> DILIGENCE, LLC, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) C.A. No. 1:06CV01109 (PLF) ) ) ) ) ) ) |

**PLAINTIFF IPOC'S OPPOSITION TO DEFENDANT DILIGENCE'S MOTION FOR EMERGENCY CONSIDERATION OF MOTION TO STAY DISCOVERY AND FOR <u>ORDER PROHIBITING DISCLOSURE OF SEALED COURT MATERIALS</u>**

Plaintiff, IPOC International Growth Fund Limited ("IPOC"), by counsel, hereby opposes the Motion for Emergency Consideration of Motion to Stay Discovery and for Order Prohibiting Disclosure of Sealed Court Materials filed by Defendant Diligence, Inc. ("Diligence").

## INTRODUCTION

Diligence's Motion for Emergency Consideration of Motion to Stay Discovery and for Order Prohibiting Disclosure of Sealed Court Materials ("Motion") is an ill-disguised, and untimely, motion to quash a subpoena (the "HHR Subpoena") served on the Hughes, Hubbard & Reed ("HHR") law firm that represented KPMG Financial Advisory Services ("KPMG FAS") in the *KPMG FAS v. Diligence* lawsuit, Civil Action No. 05-2204 (PLF) (the "KPMG FAS Case"). The HHR Subpoena was served on July 14, 2006 and required compliance on July 24, 2006. Diligence did not timely move to quash the subpoena under Fed. R. Civ. P. 45. Instead, it waited more than two weeks and, only after HHR has advised IPOC and Diligence that HHR is ready to comply with the subpoena, filed its so-called "Motion For Emergency Consideration of Motion

to Stay Discovery" and for an order "prohibiting" HHR from complying with the HHR Subpoena. Significantly, HHR did not file a motion to quash.

There is no emergency, except for Diligence's panic that its wrongdoing will become public. Diligence's Motion has nothing to do with trade secrets, attorney-client privileged information, or other matters that district courts, in their discretion, can protect from public view. Rather, Diligence's Motion has to do with covering up heinous conduct. Diligence's agents impersonated government officials, bribed KPMG FAS personnel, and stole information provided by IPOC to KPMG FAS under a confidentiality regime. Diligence then leaked that information in an attempt to corruptly influence an international arbitration involving IPOC and a Bermuda government investigation of IPOC. The extent that this corruption achieved its purpose remains to be seen.

No legal basis exists for Diligence's request that this Court conceal further the evidence of Diligence's wrongdoing. Diligence's stonewalling and cover up must cease.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 14, 2006, IPOC issued a document subpoena to HHR, the law firm that represented KPMG FAS in the related KPMG FAS Case. The HHR Subpoena seeks production of, *inter alia*, unredacted copies of the pleadings in the KPMG FAS Case, as well as copies of all discovery material in that case. Because the KPMG FAS Case was based upon the same facts that underlie this lawsuit, production of the pleadings and discovery from the KPMG FAS case will achieve efficiencies by avoiding duplication of the same discovery in this case. IPOC served counsel for Diligence and Defendant Barbour Griffith & Rogers ("BGR") with a copy of the HHR Subpoena on July 14, 2006, even before serving HHR. *See* Exhibit 1.

HHR's production under the Subpoena was due on July 24, 2006. After negotiations between HHR and IPOC's counsel, HHR was prepared to comply with the Subpoena by Saturday, July 29, 2006. *See* Exhibit E to Diligence's Motion (e-mail from Derek Adler to Paul Rauser dated July 29, 2006).

Diligence had a copy of the HHR Subpoena since July 14, 2006, but upon receiving a copy of the HHR Subpoena, Diligence did nothing. Diligence did not, for instance, move the Court for an order quashing the Subpoena before the date specified in the Subpoena for compliance. Instead, after more than two weeks passed and HHR was prepared to comply immediately with the Subpoena, Diligence rushed into Court with its so-called "emergency" motion to block HHR's production and to request expedited consideration of Diligence's Motion to Stay Discovery.

Within hours of Diligence's filing its "emergency" motion, and without waiting for a response from IPOC, the Court entered the following Minute Order:

> this Court sua sponte orders that all discovery is STAYED pending the Court's decision on defendants' motions to stay discovery pending resolution of defendants' motions to dismiss. The parties will not conduct any discovery, including third-party discovery, until such time as the Court has decided these motions to stay discovery. (The Court notes that defendants' opposed motions to stay discovery have not yet been fully briefed, and therefore are not ripe for determination at this time.)

Minute Order (July 31, 2006). The Court's Minute Order temporarily stays discovery until the Court has the opportunity to consider and decide the separate motions to stay discovery filed by Diligence and BGR. IPOC filed its Opposition to Diligence's Motion to Stay Discovery on July 31, 2006. IPOC's Opposition to BGR's Motion to Stay Discovery (filed July 26, 2006) is not due until August 7, 2006.

## ARGUMENT

**A.   The Court Should Deny the Motions to Stay Discovery.**

Diligence has not demonstrated any entitlement to a stay of discovery or an order quashing the HHR Subpoena.  "[A] pending motion to dismiss is not ordinarily a situation that in and of itself would warrant a stay of discovery." *People with AIDS Health Group, v. Burroughs Wellcome Co.*, 1991 WL 221179, at *1 (D.D.C. Oct. 11, 1991) (quoting *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989)).  "[M]ere allegations that resources will be conserved by granting the stay," combined with "a bald assertion that [a pending] motion to dismiss will be granted" are not enough to justify a stay of discovery.  *Id.*; *see also Niederhoffer Intermarket Fund, L.P. v. Chicago Mercantile Exch.*, 1999 WL 731773, at *1 (N.D. Ill. Aug. 31, 1999) ("[w]e see no reason to shut down discovery for three weeks, only to start it back up again should defendant's motion [to dismiss] fail"); *id.* ("the grounds for staying or limiting discovery listed in Rule 26 do not include the legal insufficiency of a complaint").  In short, "bare assertions that discovery . . . should be stayed pending dispositive motions that will probably be sustained, are insufficient to justify the entry of an order staying discovery generally." *Continental Illinois Bank & Trust Co. v. Caton,* 130 F.R.D. 145, 148 (D. Kan. 1990).  Diligence's request to stay discovery is yet another tactic in its confessed strategy of stonewalling, and it should be denied.

**B.   Diligence Has Not Demonstrated Good Cause to Quash the HHR Subpoena.**

In addition to requesting emergency consideration of its Motion to Stay Discovery, Diligence also asks the Court to enter an order "prohibiting Hughes Hubbard (and KPMG FAS) from disclosing to IPOC or any else (i) any unredacted copies of pleadings from the KPMG FAS Litigation, and (ii) any discovery designated 'Confidential' pursuant to the Protective Order

entered in the KPMG FAS Litigation." Mem. at 10. In effect, Diligence is asking the Court to quash the HHR Subpoena, with which HHR is prepared to comply.

Not surprisingly, Diligence does not style its motion a motion to quash, because it cannot carry the heavy burden to justify such a drastic remedy. Rule 45 authorizes a district court to quash a subpoena only "[o]n timely motion" and only if the subpoena (1) fails to allow reasonable time for compliance, (2) requires a non-party or the officer of a party to travel more than 100 miles from his residence or place of business, (3) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A). This Court should deny Diligence's request to quash the subpoena because (1) Diligence did not make a timely request for such relief, and (2) Diligence has not shown adequate grounds to warrant such an extraordinary measure.

   1.   **Diligence's Request to Quash the HHR Subpoena is Untimely.**

Diligence's request to quash the HHR Subpoena should be rejected because that request is untimely. Rule 45 permits a court to quash a subpoena "[o]n timely motion," and "courts have read 'timely' to mean within the time set in the subpoena for compliance." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002); *see also Allender v. Raytheon Aircraft Co.*, 220 F.R.D. 661, 665 (D. Kan. 2004) (denying a motion to quash as untimely where the motion was filed after the deadline for production); *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) ("Although Rule 45(c)(3)(A)(iv) requires that the motion to quash be timely without defining what 'timely' is, it is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled deposition"); *Nova Biomed. Corp. v. i-Stat Corp.*, 182 F.R.D. 419, 422 (S.D.N.Y. 1998) ("service anytime before the subpoenas' return date should be considered timely"); *see generally*

5

9 James Wm. Moore, *Moore's Federal Practice* § 45.50[1], at 45-72 (3d ed. 2006) ("courts have required that the motion be made before the date specified by the subpoena for compliance").

Diligence received a service copy of the HHR Subpoena on July 14, 2006. The date specified in the subpoena for compliance was July 24, 2006. Yet Diligence did not make any attempt to quash the subpoena until it filed this motion on July 31, 2006. Because Diligence's request to quash the subpoena was made after the date specified for compliance, it is untimely under Rule 45(c) and should be denied for that reason alone.

### 2. Diligence Has Not Shown The "Extraordinary Circumstances" Necessary To Quash A Subpoena.

Even if Diligence's request to "prohibit Hughes Hubbard from producing any documents to plaintiff" were properly before the Court, the request should be denied on its merits because Diligence has not offered sufficient justification for quashing the HHR Subpoena. "The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005). As the D.C. Circuit has explained, "the party seeking to quash a subpoena bears a heavy burden of proof." *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1996).

Diligence has not carried its burden here. Diligence objects to the HHR Subpoena on the sole ground that the documents it seeks—and that HHR is willing and ready to produce—are covered by protective and seal orders entered in the KPMG FAS Case. But the mere existence of a protective order is not sufficient to justify quashing IPOC's Subpoena to HHR. *First*, the language of the stipulated Protective Order in the KPMG Case authorizes HHR's production in response to a valid subpoena. *Second*, the stipulated, blanket orders at issue here were entered without Diligence ever having to demonstrate the necessity of secrecy as to each document in the

6

first instance.  *Third*, a protective order cannot be based on a party's desire to hide relevant information from other potential litigants, seemingly Diligence's only motivation here.

Diligence's argument assumes that the mere existence of a stipulated orders in the KPMG FAS Case prohibits HHR's compliance with the Subpoena.  But nothing in the language of the Protective Order itself forbids HHR's compliance with the Subpoena.  To the contrary, Paragraph 21 of the Protective Order contemplates just this situation, and all it says is that HHR must give *notice* before making the required production and use its *best efforts* to give Diligence adequate time to challenge the subpoena.  *See* Exhibit B to Diligence's Motion (Protective Order at 11, ¶ 21).  For reasons unknown to IPOC, Diligence did not challenge the HHR Subpoena in a timely fashion, despite that Diligence had notice of the Subpoena since July 14, 2006.  Indeed, as HHR explained to Diligence's counsel,

> It does not appear to us that any of the agreements or orders you cite excuses, or could excuse, Hughes Hubbard from complying with a duly-served federal court subpoena after having given advance notice to all affected parties.  Indeed, several of the provisions you refer to expressly indicate that in the event of a subpoena our clients' obligation is limited to giving your client reasonable advance notice so that you have an opportunity to challenge the subpoena on any grounds you deem appropriate.  In this case, you have had the subpoena to Hughes Hubbard for at least two weeks and have not brought any such challenge.  Although you have made a motion to stay discovery, that motion does not raise any substantive challenge to the disclosure sought in the subpoena to Hughes Hubbard . . . .

*See* Exhibit E to Diligence's Motion (e-mail from Derek Adler to Paul Rauser dated July 29, 2006).

Furthermore, as the Court is aware, the parties to the KPMG FAS Case stipulated to blanket protective and seal orders.  "Stipulated protective orders place the district court in an unusual position.  Normally, the court is quick to ratify (and rightly so) any area of agreement

7

between opposing parties. However, under Fed. R. Civ. P. 26(c), the district court has the power to issue a protective order only upon a showing of 'good cause.' Even if the parties agree that a protective order should be issued, they still have the burden of showing that good cause exists for issuance of that order." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (quotations omitted).

Other federal courts have recognized that stipulated blanket protective orders (such as the orders at issue here) are especially susceptible to modification precisely because the parties were not required to make particularized showings of "good cause" before documents were made confidential. For example, the First Circuit in *Public Citizen v. Liggett Group, Inc.* observed that "[a]lthough such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification." 858 F.2d 775, 790 (1st Cir. 1988). Moreover, the purpose of the protective order in *Public Citizen*, like the Protective Order in this case, "was to promote a fair trial, not to guarantee [the defendant] perpetual secrecy." *Id.* Similarly, the Ninth Circuit in *Beckman Industries, Inc. v. International Insurance Co.* explained that since the defendant was never required to make a showing of "good cause" to keep secret each particular document in the first place, the existence of a stipulated blanket protective order would not stand in the way of the "reasonable needs of other parties in other litigation." 966 F.2d 470, 476 (9th Cir. 1992) (quotations omitted).

Given the nature of stipulated protective orders generally, and their special susceptibility to modification, Diligence cannot seek to quash the HHR Subpoena based solely on the existence of the stipulated orders in the earlier case. HHR, who was counsel to KPMG FAS in the KPMG FAS Case, is ready and willing to produce the material from that litigation, acknowledging that

no good cause exists for continued secrecy. Only Diligence now contends otherwise. But Diligence, who, as a party to the KPMG FAS Case, already has all of the discovery that IPOC now seeks from HHR, has never even attempted to make a particularized showing of "good cause" for any document to be treated as confidential. Absent such a showing, Diligence has failed to carry its burden of showing why the stipulated, blanket orders in the KPMG FAS case should not yield to the reasonable discovery needs of IPOC in this case. Diligence has not attempted, much less established, the "extraordinary circumstances" necessary to justify quashing a subpoena. *Flanagan*, 231 F.R.D. at 102.

Finally, Diligence's desire to hide relevant information from IPOC cannot justify Diligence's attempt to use the KPMG FAS orders as a shield in discovery in this case. Under Rule 26(c), a general presumption against the secrecy of discovery material "should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process." *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980); *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) ("when a collateral litigant seeks access to discovery produced under a protective order, there is a countervailing efficiency consideration—saving time and effort in the collateral case by avoiding duplicative discovery").

"Using fruits of discovery from one lawsuit in another litigation . . . comes squarely within the purposes of the Federal Rules of Civil Procedure," *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 129 F.R.D. 483, 486 (D.N.J. 1990), which are to "secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1. "Sharing discovery materials may

9

be particularly appropriate where multiple individual plaintiffs assert essentially the same alleged wrongs" against a single defendant. *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 654 (D. Md. 1987).

According to the leading commentators, "the most forceful case can be made for access to use materials as evidence in other litigation so that later litigants do not have to 'reinvent the wheel.' This conclusion flows from the key purpose of discovery—to develop information for use in litigation. It builds on a long line of cases recognizing the propriety of access to the fruits of one litigation to facilitate the preparation of other cases." 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice & Procedure: Civil 2d* § 2044.1, at 581 (1994). *See also* 6 James Wm. Moore, *Moore's Federal Practice* § 26.106[3][c], at 26-286.4 (3d ed. 2006) ("most courts have tipped the balance in favor of avoiding duplicative discovery").

That is exactly the situation here. IPOC seeks access to the pleadings and discovery in the KPMG FAS Case because those materials undoubtedly bear on similar issues—in many respects, *identical* issues—concerning Diligence's misconduct toward IPOC and KPMG FAS. Access to those materials is entirely consistent with the Federal Rules of Civil Procedure, whereas denial of access will only require the parties and the Court to undertake duplicative discovery and discovery-related litigation. Because Diligence has never made a showing of "good cause" why these materials should be kept secret and cannot make that showing now, the mere existence of the protective and seal orders is not an "extraordinary circumstance" that warrants quashing the HHR Subpoena. Diligence has failed to carry its "heavy burden of proof," and its Motion should therefore be denied.

## CONCLUSION

For the foregoing reasons, Diligence's Motion for Emergency Consideration of Motion to Stay Discovery and for Order Prohibiting Disclosure of Sealed Court Materials should be denied.

Respectfully submitted,

IPOC INTERNATIONAL GROWTH FUND LIMITED

| OF COUNSEL: | /s/ Carol A. Joffe |
|---|---|
| Kimball R. Anderson | Timothy M. Broas (D.C. Bar No. 391145) |
| WINSTON & STRAWN LLP | Carol A. Joffe (D.C. Bar No. 351528) |
| 35 W. Wacker Drive | Anne W. Stukes (D.C. Bar No. 469446) |
| Chicago, Illinois 60601 | WINSTON & STRAWN LLP |
| Tel: (312) 558-5858 | 1700 K Street, N.W. |
| Fax: (312) 558-5700 | Washington, D.C. 20006 |
| kanderson@winston.com | Tel: (202) 282-5000 |
|  | Fax: (202) 282-5100 |
|  | tbroas@winston.com |
|  | cjoffe@winston.com |
|  | astukes@winston.com |

*Attorneys for IPOC International Growth Fund Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2006, I caused the foregoing Opposition to Diligence's Motion for Emergency Consideration of Motion to Stay Discovery and for Order Prohibiting Disclosure of Sealed Court Materials to be served electronically, via the Court's electronic filing system, on:

>Charles J Cooper
>David H. Thompson
>COOPER & KIRK, PLLC
>Suite 750
>555 Eleventh Street, NW
>Washington, DC  20004
>202-220-9600
>202-220-9601 (FAX)
>
>*Attorneys for Barbour Griffith & Rogers LLC*
>
>Paul C. Rauser
>AEGIS LAW GROUP LLP
>Suite 500
>901 F Street, NW
>Washington, D.C.  20004
>202-737-3500
>202-737-3330 (FAX)
>
>*Attorney for Diligence, LLC*

___/s/_____
Carol A. Joffe