UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DILIGENCE, LLC )<br>)<br>and )<br>)<br>BARBOUR GRIFFITH & ROGERS, LLC )<br>)<br>Defendants. )<br>) | Civil No. 06-1109<br>(PLF) |

# REPLY TO OPPOSITION TO MOTION OF DEFENDANT BARBOUR GRIFFITH & ROGERS LLC TO DISMISS FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY

IPOC's primary defense is that Rule 9(b) does not apply because the complaint does not contain a count alleging a cause of action for fraud. As we demonstrated in our opening brief, however, the key factual predicate for IPOC's various causes of action is its allegation that defendants "impersonat[ed] . . . United States and/or British intelligence agents . . . to misappropriate confidential information provided by IPOC to KPMG FAS (which was retained by the Bermuda Government to conduct an investigation)." P. IPOC's Opp'n to D. Barbour Griffith & Rogers LLC's Mot. to Dismiss ("IPOC 9(b) Br.") at 1. Nevertheless, IPOC hypothesizes that Rule 9(b) can be avoided simply by packaging its factual allegations of fraud as different causes of action. The case law squarely forecloses such an anemic interpretation of Rule 9(b). And under the well-settled principles governing Rule 9(b), IPOC's counts that depend upon fraud allegations must be dismissed.

       1.       IPOC begins and ends its brief in opposition to the motion to dismiss with an extended discussion of an e-mail exchange produced in discovery by BGR to KPMG in KPMG's suit against Diligence.  On their face, these materials are irrelevant to the disposition of the Rule 9(b) motion because they simply represent one individual's understanding of Diligence's press strategy in another matter.  Although IPOC makes much of the e-mail's use of the term "stonewall," litigants are perfectly entitled to stonewall the press and are not required to try their case in the media.  Moreover, the e-mail says nothing about Diligence's legal strategy, let alone BGR's given that BGR was not even a party to that action.

       2.       The centerpiece of IPOC's opposition brief is its unremarkable observation that fraud is not a necessary element of its claims.  IPOC 9(b) Br. at 7-10.  BGR expressly conceded this in its opening brief.  Mem. in Supp. of the Mot. of D. Barbour Griffith & Rogers LLC to Dismiss for Failure to Plead Fraud with Particularity ("BGR 9(b) Br.") at 2 ("even though IPOC does not expressly assert a count for fraud").  As BGR explained in its opening brief, the absence of a count for fraud does not obviate the need to scrutinize IPOC's fraud allegation for particularity, nor does it immunize IPOC's complaint against dismissal.  *See* BGR 9(b) Br. at 2.  The correct framework for assessing IPOC's fraud allegation in this case under Rule 9(b)—a framework that BGR applied faithfully in its opening brief but that IPOC has completely ignored in its response—is the following:  " 'Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated.  **The proper route is to *disregard* averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.**' "  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,

238 F.3d 363, 368 (5th Cir. 2001)) (bold emphasis added), *quoted in* IPOC 9(b) Br. at 6-7; *see also* BGR 9(b) Br. at 2, 6.

IPOC has shown that fraud is not necessarily an element of its claims, but it has overlooked that its counts require proof of some kind of underlying wrongful conduct.  As BGR explained in its opening brief, the fraud allegation is the primary allegation of wrongful conduct underlying its claims **as pleaded**.  *See* BGR 9(b) Br. at 6-8.

a. *Count I: Tortious Interference with Business Expectancies* – "A general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability.  A competitor's conduct must be more egregious, for example, it must involve libel, slander, physical coercion, fraud, misrepresentation, or disparagement."  *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 423 (D.D.C. 1988); *see also, e.g.*, *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 45 (D.D.C. 2005) (same).  IPOC alleges: "Diligence and BGR engaged in improper, fraudulent, deceptive and illegal conduct calculated to interfere with IPOC's existing business relationships and expectancies . . . ."  Compl. ¶ 27.

b. *Count II: Violation of the Computer Fraud and Abuse Act ("CFAA")* – IPOC's CFAA count is not a model of clarity.  Because IPOC alleges that Diligence or BGR acted "knowingly and with intent to defraud," Compl. ¶ 32; *see also* Compl. ¶ 31 ("intentionally and with intent to defraud"), it appeared that IPOC intended to rest its CFAA claim on 18 U.S.C. § 1030(a)(4), which requires that the defendant have acted "knowingly and with intent to defraud" and that "by means of such conduct [i.e., accessing a protected computer without authorization,] furthers the intended fraud."  If so, IPOC's CFAA count is plainly subject to

9(b).[1]  But in both its 9(b) brief and its 12(b)(6) brief, IPOC expressly disclaims any reliance on § 1030(a)(4), and asserts instead that its CFAA claim rests on either § 1030(a)(2)(C) or § 1030(a)(5)(A)(iii), neither of which requires an allegation of fraud or other underlying wrongdoing.  *See* IPOC 9(b) Br. at 8; P. IPOC's Opp'n to Diligence Inc.'s Mot. to Dismiss ("IPOC 12(b)(6) Br.") at 4-5, 11-12.[2]  Thus, insofar as IPOC no longer purports to base its CFAA claim on a provision of the CFAA that requires an allegation of fraud, BGR concedes that Count II is not subject to Rule 9(b).

    c.    *Count III: Procuring Information by Improper Means* – As the name of this tort indicates, the means by which the information is procured must be improper.  In jurisdictions in which this tort has been recognized (and not preempted by the Uniform Trade Secrets Act), fraud is one type of "improper" means.  *See, e.g.*, *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1231 (Pa. Super. Ct. 1989) ("prohibits obtaining confidential business information by improper means such as misrepresentation"); RESTATEMENT (FIRST) OF TORTS § 759 cmt. c ("Among the means which are improper are theft, trespass, bribing or otherwise inducing employees or others to reveal the information in breach of duty, fraudulent misrepresentations, threats of harm by unlawful conduct, wire tapping, procuring one's own employees or agents to become employees of the other for purposes of espionage, and so forth.").  Here, IPOC alleges

---

[1] Not only has IPOC not pleaded with particularity the fraudulent means by which the access was gained, but also IPOC has not pleaded at all what fraud was **furthered** by Diligence's or BGR's alleged access.  Surely, Rule 9(b) is not satisfied by the complete absence of a necessary allegation.

[2] IPOC's 9(b) brief and 12(b)(6) brief themselves are, again, not models of clarity.  IPOC seems confused as to whether it means to invoke § 1030(a)(2)(C) or § 1030(a)(5)(A)(iii).  *Compare* IPOC 12(b)(6) Br. at 4-5, 11-12 *with* IPOC 12(b)(6) Br. at 12 and IPOC 9(b) Br. at 8.  Although a CFAA claim based on either of these provisions will not fail for lack of particularity, both fail as a matter of law for other reasons, which Diligence has explained in its 12(b)(6) brief and which BGR will explain further in its impending 12(c) brief.

that "Diligence and BGR procured by improper and illegal means information about IPOC's business that was held by KPMG FAS."  Compl. ¶ 37.

      d.    *Count IV: Tortious Interference with Contractual Relations* – This tort lies only if one " 'intentionally and *improperly* interferes with the performance of a contract.' "  *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 290 (D.C. 1989) (quoting RESTATEMENT (SECOND) OF TORTS § 766 (1979)) (emphasis supplied).  Although courts consider a number of factors in determining whether the interference was improper, *see id.*, common examples of improper interference include "violence, fraud or defamation."  RESTATEMENT (SECOND) OF TORTS § 766 cmt. c; *see also* RESTATEMENT (SECOND) OF TORTS § 767 cmt. c.  IPOC alleges: "BGR and Diligence intentionally and maliciously induced and/or procured a breach of the Agreement between IPOC and KPMG FAS" to "hold strictly confidential all information" that IPOC provided to KPMG for the Investigation.  Compl. ¶¶ 41, 43.[3]

      e.    *Count V: Common Law Unfair Competition* – "Unfair competition is not defined in terms of specific elements, but by the description of various acts that would constitute the tort if they resulted in damage."  *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001).  In *B & W Management, Inc. v. Tasea Inv. Co.*, which IPOC cites, IPOC 9(b) Br. at 9, the court explained that instances of wrongful conduct that may constitute "unfair competition" are "defamation, disparagement of a competitor's goods or business methods, intimidation of

---

[3] Occasionally, courts suggest that the presence of "malice" can render the interference improper.  IPOC does allege that BGR's and Diligence's interference was "malicious[]."  Compl. ¶ 43.  But "what is meant is not malice in the sense of ill will but merely 'intentional interference without justification.' "  RESTATEMENT (SECOND) OF TORTS § 766 cmt. s.  District of Columbia courts have recognized that ill will can rise to the level of malice and therefore vitiate the defendant's interference only in the context of a supervisor's firing a subordinate solely out of spite.  But in those cases, it was not the ill will alone that rendered the interference improper; it was also that the supervisor was acting against the company's interests.  *See Curaflex Health Servs. v. Larry M. Bruni, M.D., P.C.*, 899 F. Supp. 689, 696 & n.8 (D.D.C. 1995).  Therefore, IPOC's allegation of malice does not avoid its dependence on its allegation of fraud for this tort.

5

customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inciting employees to sabotage, false advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor." 451 A.2d 879, 881 (D.C. 1982). In practice, the tort of unfair competition often merges with the tort of tortious interference with a business expectancy. *See, e.g.*, *Genetic Systems Corp. v. Abbott Labs.*, 691 F. Supp. 407, 423 (D.D.C. 1988) ("Unfair competition is essentially an unprivileged interference with prospective advantage."). IPOC alleges that "Diligence and BGR . . . breached the duty to compete fairly by using bribery, deceit and other misconduct to misappropriate IPOC's business information." Compl. ¶ 46.

  f. *Count VI: Common Law Conspiracy* – IPOC recognizes that in order for a civil conspiracy to exist, IPOC must allege that it was injured by an **unlawful** act by a conspirator in furtherance of the conspiracy. IPOC 9(b) Br. at 9. IPOC alleges that the unlawful acts by which it was injured are simply its first five counts: tortious interference with business expectancies, tortious interference with contractual relations, procurement of information by improper means, violation of the CFAA, and unfair competition. As just demonstrated, each of those counts except the CFAA claim (as clarified in IPOC's 9(b) and 12(b)(6) briefs) depends in turn on IPOC's proof of underlying wrongful conduct.

  g. *Count VII: Unjust Enrichment* – "[T]o make out [a] case [for unjust enrichment], it is not enough for the plaintiff to prove merely that he has conferred an advantage upon the defendant, but he must demonstrate that retention of the benefit without compensating the one who conferred it is unjustified." *Bloomgarden v. Coyer*, 479 F.2d 201, 211 (D.C. Cir. 1973); *see also Services Employees Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*, 83 F. Supp. 2d 70, 93 (D.D.C. 1999) ("Plaintiffs must establish that . . . Defendants accepted or retained the

benefit under inequitable circumstances."). IPOC alleges that Diligence and BGR "received substantial sums of money in exchange for their tortious interference with IPOC's business relationships, expectancies and contracts, and violation of the Computer Fraud [and Abuse] Act, for the information wrongfully obtained and for their attempts to wrongfully influence KPMG FAS' Investigation and the Zurich arbitration." Compl. ¶ 55. That is, the alleged wrongful actions underlying IPOC's unjust enrichment count are simply IPOC's first five counts, which, as just shown, in turn require proof of underlying wrongful conduct.

  3. Attempting to jettison the standards for assessing an allegation of fraud under Rule 9(b) that numerous courts, including the D.C. Circuit, have enunciated clearly, IPOC asserts: "In determining whether a claim has been stated by IPOC, Rule 8(a) is controlling." IPOC 9(b) Br. at 7; *see also* IPOC 9(b) Br. at 10-11. If this were true, Rule 9(b) would be a nullity. Moreover, it is well-established that the general rule—here, Rule 8(a)—must yield to the specific rule—here, Rule 9(b). Indeed, the decisions enforcing Rule 9(b)'s particularity requirement take account of Rule 8(a). *See, e.g., Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) ("*Reading [Rule 8(a) and Rule 9(b)] in conjunction* normally . . . means that the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud.") (emphasis added) (quotation marks omitted) (ellipsis supplied). Thus, IPOC's retreat into Rule 8(a) affords it no sanctuary against Rule 9(b)'s requirements.

  4. IPOC then contends that its allegation of fraud satisfies the standards of Rule 9(b). None of its arguments suffices, as BGR explained previously, *see* BGR 9(b) Br. at 3-5:

  a. *Time*: That IPOC alleges that the alleged fraud occurred sometime between August 2003 and January 2005 is self-evidently not particular. IPOC points to *United States ex*

7

*rel. Pogue v. Diabetes Treatment Centers, Inc.*, 238 F. Supp. 2d 258 (D.D.C. 2002), in which the court found that a 12-year period satisfied Rule 9(b).  IPOC 9(b) Br. at 8.  But in that case, the plaintiff had alleged that a fraudulent scheme was carried out throughout the 12-year period, and so the court found that the plaintiff did not need to identify "each and every instance" of fraud during that period.  *Pogue*, 238 F. Supp. 2d at 268.  By contrast, IPOC has not alleged any facts that might suggest that Diligence or BGR carried out their alleged fraud throughout the time period identified in the complaint.

      b.      *Place*: Dismissing D.C. as the place of the fraud, IPOC asserts in a footnote that "nothing in the Complaint suggests that the impersonation of government agents occurred outside Bermuda."  IPOC 9(b) Br. at 12 n.2.  Not much suggests it occurred inside Bermuda, either.  IPOC has still not said where the alleged misrepresentation occurred—whether in Bermuda or Zurich (or elsewhere, for that matter).  *See* IPOC 9(b) Br. at 11-12.  Surely, IPOC should be required to state, at a minimum, the **continent** on which the alleged misrepresentation occurred.

      c.      *Content of the misrepresentation*: IPOC repeats its allegation of fraud to reveal what was misrepresented.  IPOC (b) Br. at 12 (citing Compl. ¶ 19).  The myriad deficiencies with this allegation remain, as explained in BGR's opening brief.  *See* BGR 9(b) Br. at 4-5.

      d.      *Identity of the individuals involved in the fraud*:  IPOC declares dismissively that "BGR cannot be serious that IPOC is required to allege in its Complaint the identity of all the individuals who engaged in the wrongdoing."  IPOC (b) Br. at 12-13.  Presumably, however, the D.C. Circuit was serious indeed when it held that Rule 9(b) requires the plaintiff to "identify individuals allegedly involved in the fraud."  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004), *cited in* BGR 9(b) Br. at 2.  At this point, it

8

is not even a question of identifying "**all**" of the involved individuals; it is a question of identifying **any** of them. In its complaint, IPOC points only to the entity "Diligence," Compl. ¶ 19, which IPOC unhelpfully clarifies now to mean "Diligence personnel." IPOC (b) Br. at 12 n.3. IPOC argues that because the court in *DiVittorio v. Equidyne Extractive Industries*, 822 F.2d 1242, 1247 (2d Cir. 1987), upheld the claim against the entity defendants but not the individual defendants, it must not be necessary to identify the individuals involved in this case. In *DiVittorio*, and many other cases that implicate Rule 9(b), the alleged fraud was made in securities offering memoranda and related documents, which were published in the name of the entity, not in the name of the individual authors. *DiVittorio*, 822 F.2d at 1244-45. Because the plaintiff was not in a position to know the inner workings of the entity defendants, the plaintiff was not required to plead which individual had written the memoranda. *Id*. at 1248 ("[C]omplaining stockholders know little of the ways in which the corporation's internal affairs are conducted."). By contrast, Diligence is not alleged to have made the alleged misrepresentation in its collective, corporate capacity through written public statements, but rather by acting clandestinely through individuals. IPOC must therefore identify those individuals, whether they are named or not as defendants, because IPOC's claims against Diligence and BGR depend on the conduct of those people.

     5.     Finally, presumably in response to BGR's point that IPOC's fraud allegation fails even if otherwise particular because it was made "on information and belief," *see* BGR 9(b) Br. at 2-3, IPOC complains that "[a]ccess to many of the specific facts underlying the KPMG Case is unavailable to IPOC . . . because, based upon the agreement of KPMG FAS and Diligence, nearly every document in the Court files is redacted to exclude those facts." IPOC 9(b) Br. at 3. In addition, IPOC says, Diligence has designated as "confidential" the documents it produced to

9

KPMG and redacted from Court records references to those documents. "These redactions and designations," IPOC then contends, "have kept many facts underlying the wrongful conduct . . . out of IPOC's view." IPOC 9(b) Br. at 3. Even if IPOC cannot now access the information necessary to comply with Rule 9(b), limited discovery into the details of the alleged misrepresentation would be inappropriate here. One of the primary purposes of Rule 9(b) is "to prevent[] the filing of a complaint as a pretext for the discovery of unknown wrongs." *Kowal*, 16 F.3d at 1279 n.3 (alteration supplied). That IPOC's complaint is merely a pretext for discovery is palpable in light of IPOC's assorted failures to state a claim against Diligence or BGR upon which relief can be granted, as described in Diligence's 12(b)(6) Motion and BGR's impending 12(c) Motion.

6.    Given that IPOC's allegation of fraud does not satisfy Rule 9(b) and, therefore, must be ignored (or struck), the question becomes whether IPOC has nonetheless stated a claim. As when a court assesses the sufficiency of a complaint for purposes of a motion to dismiss pursuant to Rule 12(b)(6), on a motion to dismiss pursuant to Rule 9(b), "all the allegations of material fact are taken as true and construed in the light most favorable to the non-moving party . . . [and] it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Kowal*, 16 F.3d at 1278 (quotation marks omitted) (alterations supplied). Without the deficiently pleaded allegation of fraud, each of IPOC's claims that requires proof of underlying wrongful (or egregious, improper, unfair, or unjust) conduct must be dismissed unless IPOC has pleaded adequately a separate underlying wrongful act.

IPOC suggests only one such candidate: that "Diligence . . . bribed KPMG FAS to obtain" the materials. IPOC 9(b) Br. at 12. As set forth in its complaint, IPOC's allegation of bribery appeared to be inextricably intertwined with the fraud allegation, and thus it would rise

or fall under Rule 9(b) with the fraud allegation: "On information and belief, Diligence, at the direction of BGR, used fraudulent means, including impersonation of United States and/or British intelligence agents, . . . *to infiltrate and/or bribe* one or more agents or servants of KPMG FAS . . . ." Compl. ¶ 19 (emphasis added); *see* BGR 9(b) Br. at 6.  IPOC now indicates in its 9(b) brief that the alleged bribery is a separate basis of wrongful conduct, IPOC 9(b) Br. at 12 & n.3, but the counts that require underlying wrongful conduct still fail as a matter of law because IPOC's naked and conclusory allegation of bribery, even if not subject to Rule 9(b), is wholly inadequate.  As IPOC notes, bribery involves giving "something of value" to a public official. IPOC 9(b) Br. at 12 n.3.  IPOC has made no factual allegation whatsoever to show that Diligence gave anything of value to KPMG.  "Although . . . [the court] must take all the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).[4]  Therefore, IPOC's invocation of the word "bribery" does not suffice.  *See Tal v. Hogan*, No. 03-6293, 2006 U.S. App. LEXIS 16437, at *56 (10th Cir. June 29, 2006) (dismissing RICO count predicated on bribery where plaintiff "fail[ed] to adequately allege that the relevant parties are 'public officials' ").

In sum, because IPOC's allegation of fraud does not satisfy Rule 9(b), and its allegation of bribery is not sufficient as a matter of law, all of IPOC's counts that require proof of underlying wrongful conduct fail as a matter of law.  Accordingly, the counts for tortious interference with business expectancies, procuring information by improper means, tortious interference with contractual relations, unfair competition, and unjust enrichment must be

---

[4] *See also Kowal*, 16 F.3d at 1276 ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) ("[W]e accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations.") (quotation marks omitted).

11

dismissed. In addition, if IPOC's CFAA claim arises under § 1030(a)(4) rather than § 1030(a)(2)(C) or § 1030(a)(5)(A)(iii), then that count fails for the same reasons that the other counts fail; and if the CFAA count fails, then the civil conspiracy count fails.

## CONCLUSION

For the foregoing reasons and the reasons stated in its opening brief, the Court should dismiss Counts I, III, IV, V, and VII of IPOC's complaint pursuant to Rule 9(b). In addition, the Court should dismiss Counts II and VI if the CFAA count arises under § 1030(a)(4).

August 10, 2006                     Respectfully submitted,

                                    /s/ Charles J. Cooper
                                    _____
                                    Charles J. Cooper (D.C. Bar No. 248070)
                                    David H. Thompson (D.C. Bar No. 450503)
                                    COOPER & KIRK, PLLC
                                    555 Eleventh Street NW, Suite 750
                                    Washington, DC 20004
                                    202-220-9600
                                    202-220-9601 (Fax)

                                    *Attorneys for Barbour Griffith & Rogers LLC*