UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil No. 06-1109 |
| ) | (PLF) |
| DILIGENCE, LLC, ) | |
| ) | |
| and ) | |
| ) | |
| BARBOUR GRIFFITH & ROGERS, LLC, ) | |
| ) | |
| Defendants. ) | |

## MOTION OF DEFENDANT BARBOUR GRIFFITH & ROGERS LLC TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

For the reasons stated in the accompanying Memorandum, Defendant Barbour Griffith & Rogers LLC respectfully moves the Court under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) to dismiss the entire complaint of Plaintiff, IPOC International Growth Fund Ltd., for lack of jurisdiction over the subject matter because Plaintiff lacks standing, and respectfully requests oral argument on this matter pursuant to Local Rule 7(f).

August 16, 2006                 Respectfully submitted,

/s/ Charles J. Cooper

_____
Charles J. Cooper (D.C. Bar No. 248070)
David H. Thompson (D.C. Bar No. 450503)
Derek L. Shaffer (D.C. Bar No. 478775)
COOPER & KIRK, PLLC
Suite 750
555 Eleventh Street NW
Washington, DC 20004
202-220-9600
202-220-9601 (Fax)

*Attorneys for Barbour Griffith & Rogers LLC*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 06-1109 |
| | ) | (PLF) |
| DILIGENCE, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BARBOUR GRIFFITH & ROGERS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF THE MOTION OF DEFENDANT BARBOUR GRIFFITH & ROGERS LLC TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Charles J. Cooper (D.C. Bar No. 248070)
David H. Thompson (D.C. Bar No. 450503)
Derek L. Shaffer (D.C. Bar No. 478775)
COOPER & KIRK, PLLC
Suite 750
555 Eleventh Street NW
Washington, DC 20004
202-220-9600
202-220-9601 (Fax)

August 16, 2006                    *Attorneys for Barbour Griffith & Rogers LLC*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 3

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Alaska Legislative Council v. Babbitt*, 181 F.3d 1333 (D.C. Cir. 1999) ............................. 4, 11

*Allen v. Wright*, 468 U.S. 737 (1984) ................................................................. 4, 7, 8

*ASARCO, Inc. v. Kadish*, 490 U.S. 605 (1989) ................................................. 8, 9, 10

*Bennett v. Spear*, 520 U.S. 154 (1997) .......................................................... 4, 7, 11

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ............................................... 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................... 3, 7, 11

*National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) .............................. 11

*Oguaju v. United States*, 378 F.3d 1115 (D.C. Cir. 2004) ...................................... 11

*Papasan v. Allain*, 478 U.S. 265 (1986) ............................................................ 4

*Rector v. City and County of Denver*, 348 F.3d 935 (10th Cir. 2003) ............................ 8

*Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976) .......................... 4, 7, 8, 9

*Spencer v. Kemna*, 523 U.S. 1 (1998) ........................................................ 3, 10, 11

*Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316 (8th Cir. 1994) .................. 5

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .................................... 3

*Von Aulock v. Smith*, 720 F.2d 176 (D.C. Cir. 1983) ........................................... 8, 9

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................ 3, 4

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ................................................. 3, 4, 10

## <u>Rule</u>

Fed. R. Civ. P. 12(b)(1) ........................................................................ 3, 5

## <u>Other</u>

5A Wright & Miller, Federal Practice and Procedure § 1350 ................................. 5

Gregory L. White & Glenn R. Simpson, *Swiss Tribunal Finds Putin Ally Misused Position*, Wall Street Journal, May 23, 2006, at A3 ................................................ 4

## INTRODUCTION

At the heart of IPOC's claims against defendant BGR is its allegation that defendants, as IPOC puts it, "used improper means . . . to misappropriate confidential information provided by IPOC to KPMG FAS (which was retained by the Bermuda Government to conduct an investigation) . . . and then provided the purloined information to IPOC's litigation adversaries, who then attempted to improperly influence the Bermuda investigation and to corrupt an international arbitration." IPOC's Opp'n to D. BGR's Mot. to Dismiss at 1. IPOC thus claims to have been damaged by the decisions reached by the Bermuda Government and the Zurich arbitration panel – yet nowhere does IPOC describe what those decisions were. This is hardly surprising, for the Bermuda Government's investigation is still underway, and the Zurich arbitration tribunal found that IPOC is nothing more than the money-laundering front for the criminal activities of its beneficial owner, a high-ranking Russian telecommunications official. Indeed, with respect to the Zurich arbitration, IPOC neither denies the validity of the Zurich tribunal's ruling nor disputes the facts on which it was based. It is clear from the face of IPOC's complaint, therefore, that this Court lacks Article III jurisdiction to consider IPOC's claims, for those claims are untethered to any cognizable injury that might give rise to standing, as we shall explain.

First, the Zurich arbitration tribunal's exercise of its sound discretion, on the basis of *truthful* information about the matters at issue before it, cannot give rise to an injury of which an Article III court might take cognizance. The tribunal's decision was indisputedly attributable to evidence of IPOC's *own* involvement in criminal conduct and is not even alleged to rest upon information furnished by defendants. In no event are the relevant facts or the tribunal's adjudicative decision resulting therefrom fairly traced to defendants' alleged actions in simply

serving as conduits for true and accurate information. Nor has IPOC alleged cognizable injury in its claims about adverse actions that might be taken against it by the Government of Bermuda; no such action has occurred yet and the prospect of it is purely speculative. Even setting that fundamental defect aside, IPOC has failed to specify in its complaint how or to what extent defendants allegedly influenced the Bermuda investigation in a manner adverse to IPOC; and it cannot be believed, let alone presumed, that defendants might have steered investigators to conclusions traceable to anything apart from evidence revealing the facts of IPOC's misconduct. Thus, the central theories advanced in IPOC's complaint do not withstand a rigorous analysis of standing. Nothing else in IPOC's complaint alleges concrete facts demonstrating injury in fact, traceable to the allegations against defendants and redressable by this Court.

Simply put, IPOC's effort to launch this Court into an inquiry about information that defendants allegedly elicited from an investigation of IPOC in Bermuda is foreclosed at the threshold. These alleged actions by defendants have nothing to do with, and cannot bear the blame for, the considered judgment of an independent arbitration tribunal in Zurich that took issue with IPOC's actual and here undisputed misconduct. Neither do defendants' alleged actions have anything to do with any future decision (still purely speculative) by the government of Bermuda to act in accordance with its own best judgment and information in the context of its own ongoing, lawful investigation into IPOC's misconduct. At the end of the day, IPOC is not the proper party to bring suit to right the wrongs alleged in the complaint. Rather, the actual victim of the scheme alleged in the complaint, KPMG, is the party that has standing to sue, and it has already done precisely that and settled its grievances. This suit, in contrast, should be dismissed under Article III, as we further explain below.

# ARGUMENT

IPOC's claims are due to be dismissed pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) because IPOC has failed to allege facts establishing that it has standing to invoke this Court's subject matter jurisdiction. As the Supreme Court has explained, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). At its "irreducible constitutional minimum," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), standing requires three things:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id*. at 560-61 (citations omitted) (alterations and ellipses supplied); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

The plaintiff "must clearly and specifically set forth facts sufficient to establish these Art. III standing requirements," *Whitmore*, 495 U.S. at 155, for " 'it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute,' " *Spencer v. Kemna*, 523 U.S. 1, 11 (1998) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (quotation marks omitted), *overruled on other grounds,* 541 U.S. 774 (2004)); *accord Warth*, 422 U.S. at 508. And although, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," *Warth*, 422 U.S. at 501, a "federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of

standing," *Whitmore*, 495 U.S. at 155-56.  Accordingly, this Court should not accept

"conclusory" allegations, *Alaska Legislative Council v. Babbitt*, 181 F.3d 1333, 1340 (D.C. Cir.

1999), let alone "legal conclusions cast in the form of factual allegations," *Browning v. Clinton*,

292 F.3d 235, 242 (D.C. Cir. 2002) (quotation marks omitted); *accord Papasan v. Allain*, 478

U.S. 265, 286 (1986).  Furthermore, although "at the pleading stage, general *factual* allegations

of injury resulting from the defendant's conduct *may* suffice" where "it is easy to presume

specific facts" supporting these allegations, *Bennett v. Spear*, 520 U.S. 154, 168 (1997)

(quotation marks omitted) (emphases added), it "is not enough" that specific supporting facts are,

"on the face of the complaint, perhaps conceivable," because jurisdictional "[p]leadings must be

more than an ingenious academic exercise in the conceivable," *Alaska Legislative Council*, 181

F.3d at 1339 (quotation marks omitted); *see also Simon v. Eastern Ky. Welfare Rights Org.*, 426

U.S. 26, 44-45 (1976) (refusing to find standing based on "[s]peculative inferences" for

"unadorned speculation will not suffice to invoke the federal judicial power"); *Warth*, 422 U.S.

at 504 (plaintiffs "must allege facts from which [standing] *reasonably* could be inferred")

(emphasis added).

> In short, even at the pleading stage,
>
> the standing inquiry requires careful judicial examination of the complaint's
> allegations to ascertain whether the particular plaintiff is entitled to an
> adjudication of the particular claims asserted.  Is the injury too abstract, or
> otherwise not appropriate, to be considered judicially cognizable?  Is the line of
> causation between the illegal conduct and injury too attenuated?  Is the prospect
> of obtaining relief from the injury as a result of a favorable ruling too speculative?
> These questions and any others relevant to the standing inquiry must be answered
> by reference to the Art. III notion that federal courts may exercise power only in
> the last resort, and as a necessity.

*Allen v. Wright*, 468 U.S. 737, 752 (1984) (quotation marks omitted).  Furthermore, the Court

may supplement this inquiry by considering "affidavits and other matter" submitted by the

defendant in support of its motion to dismiss under FED. R. CIV. P. 12(b)(1) for want of standing. 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350.

It is plain from IPOC's complaint that it has failed to allege facts sufficient to establish standing. Apart from conclusory legal allegations of harm or injury that do nothing to establish standing, *see, e.g.*, Compl. ¶¶ 28, 39, 44, 49, 53, 56, IPOC's complaint alleges the submission of improperly obtained information to the Zurich arbitral tribunal, interference with the ongoing Bermuda investigation, illegal access to computers belonging to KPMG, and disclosure of improperly obtained information to the press. But the complaint conspicuously fails to establish that any of these actions resulted in injury in fact that is fairly traceable to the defendants.

1.     First, IPOC alleges that Diligence and BGR submitted improperly obtained information to LVFG and Alfa, IPOC's "litigation adversaries," who in turn submitted that information to the Zurich arbitral tribunal. *See, e.g.*, Compl. ¶ 21. The Zurich arbitral tribunal confronted the question whether IPOC could enforce an agreement according to which IPOC had an option to purchase shares of a Russian telecom company from LVFG (the "April Option Agreement"). *See* Second Partial Award in the Ad-Hoc Arbitration in the Matter of IPOC Int'l Growth Fund Ltd. v. LV Finance Group Ltd. (May 16, 2006) ("Zurich Arbitration Ruling") ¶¶ 5, 282.[1] The tribunal refused to enforce the April Option Agreement because to do so would be to further a complex criminal enterprise in which IPOC played an integral role. The tribunal first determined that the "beneficial owner" of IPOC is "a high-ranking officer of the Russian Federation with the function of coordination and regulation of activity in the sphere of

---

[1] This Court can take judicial notice of the ruling issued by the Zurich arbitral tribunal. *See, e.g.*, *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1326 n.3 (8th Cir. 1994). A copy of the Zurich arbitral tribunal's ruling is attached hereto as Exhibit 1.

communication of Russia." Zurich Arbitration Ruling ¶¶ 390-91.[2] The tribunal then found that

IPOC was a key tool by which this official sought to carry out several criminal schemes,

including misappropriation of state assets and money laundering. Specifically, the tribunal found

that the official attempted to "misappropriate for his personal enrichment assets majority owned

by the Russian Federation" by causing a state-owned telecom company to "abandon[]" its shares

in "an asset of considerable value . . . in favour of [IPOC] for no value," with the "inten[t] to

achieve this result through the April Option Agreement." Zurich Arbitration Ruling ¶¶ 405, 429.

The tribunal thus concluded that, because performance of the April Option Agreement "would

necessarily involve an illegality . . . , the April Option Agreement is unenforceable." Zurich

Arbitration Ruling ¶¶ 471, 483-84. The tribunal also found that IPOC's receipt of money from

Augmentation, another company under this Russian official's control, and its subsequent use of

this money to make payments under the April Option Agreement "constitutes money laundering"

because the money was "obtained through a commission by [the Russian official] of criminal

offences" – namely, "abus[ing]" his official powers over licensing to "force" a company to

purchase telecom licenses from Augumentation. Arbitration Ruling ¶¶ 501-20, 530, 545. The

tribunal accordingly concluded that, "[s]ince the performance of the April Option Agreement

. . . constitutes the laundering of monies stemming from a predicate criminal offence . . . ,

[IPOC] cannot enforce its rights thereunder." Arbitration Ruling ¶¶ 557, 561. Tellingly, IPOC

here does not deny the truth of the facts found by the Zurich tribunal or the validity of the

tribunal's concerns about IPOC. And, just as tellingly, IPOC does not allege that information

supplied by defendants in any way influenced the decision of the Zurich tribunal, let alone led to

---

[2] The tribunal refers to this Russian official as "Proposed Witness No. 7." It is widely believed
that Proposed Witness No. 7 is Leonid Reiman. *See, e.g.*, Gregory L. White & Glenn R.
Simpson, *Swiss Tribunal Finds Putin Ally Misused Position*, WALL STREET JOURNAL, May 23,
2006, at A3.

any resulting injury.  Indeed, IPOC's complaint studiously, and understandably, avoids referencing the Zurich tribunal's decision.

As already noted, however, the Zurich tribunal decision did conclude adversely to IPOC because it found IPOC to be a money-laundering tool for its beneficial owner.  IPOC, to be sure, may be aggrieved by the tribunal's decision, but its grievance is not injury that should matter here so as to give rise to an actual case or controversy before this Court.  IPOC has not sued the tribunal; it has sued defendants.  Nor has IPOC contested the truth and import of the relevant facts found by the Tribunal; it has simply complained of the means by which truthful evidence of those facts was allegedly elicited and revealed by defendants from KPMG's investigation in Bermuda.  Simply put, IPOC can claim no "legally protected" or "judicially cognizable" interest the invasion of which could amount to injury in fact, *Lujan*, 504 U.S. at 560, *Bennett*, 520 U.S. at 167, in keeping the fact of its money laundering concealed from a duly charged tribunal.

Even if such injury could be claimed, however, any adverse ruling that IPOC may have suffered as a result of the Zurich arbitration proceeding cannot "fairly . . . be traced to the challenged action of the defendant[s]."  *Simon*, 426 U.S. at 41-42; *accord Allen*, 468 U.S. at 757. As an initial matter, there is no reason to think that the relevant items of information even mattered to the Zurich tribunal's decision.  In its complaint in this case, IPOC conspicuously does not deny that the tribunal's factual findings regarding the Russian official's ownership of IPOC and his criminal operation were supported by ample evidence unrelated to the Bermuda investigation.  Zurich Arbitration Ruling ¶¶ 344-408, 486-510.  The tribunal was well aware of the allegation that Diligence had improperly obtained information or documents from KPMG, but nowhere in its ruling did the tribunal indicate or suggest that its decision rested or relied in any way on any information or documents alleged to have been improperly obtained by

defendants from KPMG.  To the contrary, the tribunal denied IPOC's request for "leave to submit significant evidence that has just surfaced in the lawsuit filed by KPMG against Diligence" because, *inter alia*, IPOC "has not alleged that [LVFG] filed in the Zurich Ad-Hoc Arbitration illegally received documents."  Zurich Arbitration Ruling ¶ 157.  Therefore, not only is IPOC's complaint conspicuously devoid of any allegation that the Zurich tribunal's decision was somehow attributable to defendants' actions, but any such allegation is altogether foreclosed.

Here, the obvious and direct cause of the tribunal's decision was IPOC's own underlying misconduct – misconduct that was in no way misrepresented by defendants, accepting as true all of the complaint's allegations.  The claimed injury thus flows from IPOC's own misconduct, as found by an independent tribunal "acting within [its] broad and legitimate discretion."  *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (plurality).  In this sense, IPOC itself, not the defendants, is responsible for any injury associated with the Zurich decision.  *Cf. Rector v. City and County of Denver*, 348 F.3d 935, 945 (10th Cir. 2003) (dismissing due process challenge to regime governing plaintiff's parking violation for lack of standing where there was no dispute as to the fact of the violation, because plaintiff's "injury, the payment of the [parking] fine, is 'fairly traceable' not to the allegedly defective notice but to her lack of any legal defense to the parking ticket.").

Apart from IPOC's own misconduct, the Zurich arbitration ruling was the "independent action of" the tribunal, a "third party not before the court."  *Simon*, 426 U.S. at 41-42; *accord Allen*, 468 U.S. at 757.   This is precisely the circumstance in which the D.C. Circuit has instructed that the Court "must exercise special care" to ensure that the strictures of standing have been satisfied.  *Von Aulock v. Smith*, 720 F.2d 176, 181 (D.C. Cir. 1983).  Any injury

resulting from the Zurich tribunal's adverse decision simply is not "fairly traceable" to, and cannot give rise to an actual case or controversy about, information defendants' elicited from investigators in Bermuda, for the Zurich tribunal is just the sort of "independent actor[] . . . whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *ASARCO*, 490 U.S. at 615. Thus, the Supreme Court in *Simon v. Eastern Kentucky Welfare Rights Org*., denied standing to challenge government tax rulings that had supposedly encouraged hospitals to establish policies of denying care to needy recipients, explaining that "no hospital [wa]s a defendant" and that it was "purely speculative whether the denials of service specified in the complaint fairly can be traced to [defendants'] 'encouragement' or instead result from decisions made by the hospitals without regard to the tax implications." 426 U.S. at 41-43. Likewise, the D.C. Circuit in *Von Aulock v. Smith* denied standing to challenge EEOC regulations that had allegedly led certain employers to adopt pension plans that discriminated on the basis of age, reasoning that the "appellants' injury is the result of their employers' independent action [in changing the pension plans] and therefore is not fairly traceable to the [preceding EEOC] Bulletin." 720 F.2d at 181. The same holds *a fortiori* for the decision of the Zurich tribunal *vis a vis* true facts about IPOC that may have come to light *via* the Bermuda investigation. IPOC identifies no cognizable injury it has suffered in Zurich that is fairly traceable to actions by these defendants, nor could it.

      **2.**     Second, IPOC alleges that defendants "attempted to influence the outcome of the [Bermuda] Investigation," Compl. ¶ 1, thereby "attacking IPOC's corporate charter" through "bribery, fraud, and deception," Compl. ¶ 25; *see also* Compl. ¶ 19. The flaws in this theory with respect to Article III standing are even more obvious and glaring. As an initial matter, the government of Bermuda has not yet taken any adverse action against IPOC according to IPOC's

complaint, and may never do so. The mere prospect that the investigation may lead in the future to the revocation of plaintiff's corporate charter, which is the only colorable injury IPOC cites, cannot suffice. "[C]ourts are unable to evaluate with any assurance the 'likelihood' that decisions will be made a certain way by policymaking officials acting within their broad and legitimate discretion." *ASARCO*, 490 U.S. at 615. Thus, the potential consequence that plaintiff may suffer if the investigation reaches a conclusion adverse to it must be considered "a possibility rather than a certainty or even a probability." *Spencer*, 523 U.S. at 14. This alone suffices to defeat standing because "[a]llegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore*, 495 U.S. at 158. Rather, a "threatened injury must be certainly impending to constitute injury in fact." *Id*. (quotation marks omitted).

Even accepting, *arguendo*, that the adverse action IPOC fears in Bermuda were certain and impending, that could not give rise to standing here, because it would still have no meaningful connection to the actions by defendants of which IPOC complains. The complaint is devoid of any meaningful allegations as to how or whether defendants influenced the Bermuda investigation in a manner adverse to IPOC. Instead, IPOC alleges that its "litigation adversaries" – as distinct from defendants – caused the investigation to be launched, and that those adversaries then retained defendants in order to influence the investigation. *See* Compl. at ¶¶ 1, 13, 18. But IPOC does not allege that defendants thereby had any impact on the investigation, let alone an impact that visited any actual injury upon IPOC.

Indeed, it is difficult to imagine, and certainly cannot be presumed, that the Bermuda Government and its investigators could be led – at the bidding of defendants or anyone else – to findings and conclusions contrary to the true facts uncovered as a matter of course through their investigation. Any outcome of the investigation would necessarily be attributable as a matter of

law to the independent conclusions of the investigators and of the governmental authorities – not

to the alleged actions of defendants.  *Cf. National Archives & Records Admin. v. Favish*, 541

U.S. 157, 174 (2004) (explaining that government actors are presumed to discharge their duties

properly absent clear evidence to the contrary); *Oguaju v. United States*, 378 F.3d 1115, 1117

(D.C. Cir. 2004) (same).  Thus, no matter when, how, or whether the government of Bermuda

may choose to act against IPOC, this suit will never ripen into one that is justiciable, for any

future action resulting from the Bermuda investigation would in no event be fairly traceable to

actions by these defendants.

    **3.**    Third, IPOC alleges that defendants "illegally access[ed] one or more" computers

belonging to KPMG, which allegedly "caused damage and loss to IPOC in excess of $5,000."

*See* Compl. ¶ 33.  To the extent this is more than a bare legal conclusion intended to satisfy a

necessary element of plaintiff's cause of action under the Computer Fraud and Abuse Act, the

complaint nowhere explains how defendants' alleged access to a computer belonging to a third

party caused IPOC damage, and it is not "easy to presume specific facts" supporting this

conclusory allegation.  *Bennett*, 520 U.S. at 168.  While such damage is "perhaps conceivable[,]

that is not enough" to establish standing.  *Alaska Legislative Council*, 181 F.3d at 1339.

    Similarly, IPOC alleges that improperly obtained information was leaked to the press,

which in turn published this information.  *See* Compl. ¶ 21.  But IPOC does not allege that the

press reports were false or that it suffered any financial injury as a result of this publicity.  Nor

does it allege that these reports damaged its reputation – even assuming, *arguendo*, that any such

damage resulting from truthful reports of criminal wrongdoing could constitute injury to "a

legally protected interest."   *Lujan*, 504 U.S. at 560; *cf. Spencer*, 523 U.S. at 16 n.8 (explaining

that the "interest in vindicating . . . reputation" of an individual convicted of a felony who has

served his sentence is insufficient to support justiciability absent continuing collateral

consequences) (quotation marks omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the case for lack of subject matter

jurisdiction.  Oral argument on this matter is respectfully requested pursuant to Local Rule 7(f).


August 16, 2006                          Respectfully submitted,

                                         /s/ Charles J. Cooper
                                         _____
                                         Charles J. Cooper (D.C. Bar No. 248070)
                                         David H. Thompson (D.C. Bar No. 450503)
                                         Derek L. Shaffer (D.C. Bar No. 478775)
                                         COOPER & KIRK, PLLC
                                         Suite 750
                                         555 Eleventh Street NW
                                         Washington, DC 20004
                                         202-220-9600
                                         202-220-9601 (Fax)

                                         *Attorneys for Barbour Griffith & Rogers LLC*