UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>DILIGENCE, LLC, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  C.A. No. 1:06CV01109 (PLF)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY**

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED,<br><br>        Plaintiff,<br>v.<br><br>DILIGENCE, LLC, *et al.*,<br><br>        Defendants. | C.A. No. 1:06CV01109 (PLF) |

### IPOC'S SUR-REPLY TO DILIGENCE'S REPLY MEMORANDUM IN SUPPORT OF DILIGENCE'S MOTION TO DISMISS

IPOC International Growth Fund Limited ("IPOC") hereby submits this Sur-Reply to Diligence's Reply Memorandum in Support of Diligence's Rule 12(b)(6) Motion to Dismiss ("Reply"). In its Reply, Diligence makes new arguments in support of its motion to dismiss IPOC's Complaint. We reply to these new arguments below.

### ARGUMENT

**I.  IPOC Has Adequately Pleaded a Claim Under the Computer Fraud and Abuse Act (Count II).**

    **A.  IPOC Properly Pleaded Damage or Loss Under the CFAA.**

Conspicuously absent from Diligence's Reply is any mention of what formed the basis of its original argument—that IPOC's failure to allege "injury to the computer system *itself*" was fatal to its claim (Mem. at 5-6, emphasis in original). When IPOC refuted this argument (Opp'n at 4-12), Diligence formed a new, but equally incorrect, argument that IPOC's CFAA claim should be dismissed because it does not specify the "cost of investigating or remedying damage to a computer, or a cost incurred because the computer's system was interrupted." Reply at 3-4. Diligence's argument ignores federal pleading requirements and the CFAA.

1

All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The allegations must give the defendant fair notice of the claim. *Adams v. Hitt Contracting, Inc.*, 2005 WL 1903547, *2 (D.D.C. 2005). A motion to dismiss "tests not whether the plaintiff will prevail on the merits, but whether the plaintiff has properly stated a claim." *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 76 (D.D.C. 2003). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim. The notice pleading requirements of Rule 8 apply to other aspects of the plaintiff's Complaint, such as damages. *See Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1264 (N.D. Cal. 2006); *Indiana Bell Telephone Co. v. Ward*, 2002 WL 32067296, *3 (S.D. Ind. 2002); *Raytheon Co. v. Continental Cas. Co.*, 123 F. Supp. 2d 22, 27-28 (D. Mass. 2000) (allegations about "the type and extent of property damage" because such allegations "are clearly not necessary to put [defendants] on notice about the claims being asserted."); 5A FEDERAL PRACTICE AND PROCEDURE § 1298 (1990).

Contrary to Diligence's argument, a CFAA claimant need not plead that the damage or loss arose from the "cost of investigating or remedying damage to a computer, or a cost incurred because the computer's system was interrupted." Reply at 3-4; *see Theofel v. Farey-Jones*, 341 F.3d 978, 986 (9th Cir. 2003) *amended by* 359 F.3d 1066, 2004 WL 292101 (9th Cir. 2004) (as long as statutory damage is alleged "it would be premature to consider the [defendant's] argument."); *H&R Block Eastern Enterprises, Inc. v. J&M Securities, LLC*, 2006 WL 1128744, at *4 (W.D. Mo. 2006) (allegation that "unlawful and unauthorized access and use of its confidential customer information," caused "damages and a loss of no less than $5,000.00, including but not limited to its costs to respond to this offense" sufficient); *I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc.*, 307 F. Supp. 2d 521, 525-26

2

(S.D.N.Y. 2004) (allegation that plaintiff had to "incur costs of more than $5,000 in damage assessment and remedial measures" sufficient to state a loss under the CFAA).

IPOC's damage or loss allegations give Diligence sufficient notice of the CFAA claim. IPOC alleges that Diligence and/or BGR illegally "accessed one or more computers" (Compl. ¶ 33), "without authorization or in excess of authorization" (*id.*), to obtain "confidential documents and information" about IPOC (*id.* ¶ 20), from "computers used in interstate or foreign commerce or communication" (*id.* ¶ 30). IPOC also alleges that such wrongfully obtained information (*id.* ¶ 21), caused "damage and loss to IPOC in excess of $5,000" (*id.* ¶ 33). Diligence may seek more specific information in discovery. *Moore v. Fidelity Fin. Servs. Inc.*, 869 F. Supp. 557, 560-61 (N.D. Ill. 1994) (Rule 8's "very basic 'notice pleading'" requirements are "offset by wide and liberal discovery rights").

### B. Diligence's "Flip-Flopping" Undermines Its Motion To Dismiss.

Diligence's "flip-flopping" undermines its credibility. Diligence accuses IPOC of mischaracterizing its attack on IPOC's CFAA claim as one that "turns on the fact that the allegedly hacked computers belong to KPMG FAS, not IPOC." Reply at 4. But that is *exactly* what Diligence originally argued in its opening brief. Mem. at 4 ("the computer systems at issue belong to KPMG FAS, not IPOC, and any damage to, or loss from, the inoperability of KPMG FAS's computer system would have been suffered by KPMG FAS, not IPOC"); *see also id.* at 6 ("IPOC's own computer systems were [not] hacked"). IPOC has demonstrated the irrelevance of the fact that the "computer systems at issue belong to KPMG FAS, not IPOC." *See* Opp'n at 7.

Diligence also claims that it did not assert that "only physical damage to a computer system is compensable under the CFAA." Reply at 4. Yet Diligence's initial memorandum *emphasized* this precise point. *See* Mem. at 5-6 ("the only cognizable claim under the statute

3

stems from injury to the computer system <u>itself</u>.") (emphasis in original). In response, IPOC demonstrated that "injury to the computer system itself" is not the only cognizable damage under the CFAA. Opp'n at 7-8, 10-11 (discussing legislative history and cases).

Diligence discards its original losing arguments and argues instead that IPOC's CFAA claim "ultimately rests" on losses from subsequent use of improperly obtained information. Reply at 6. But IPOC's Complaint pleads damages caused by Diligence's actual theft of its confidential information by deception and impersonation (*id.* ¶ 19), the data's impairment in the sense that its security was breached and its contents published to the world (*id.* ¶¶ 20-21), and other "damage and loss to IPOC in excess of $5,000" (*id.* ¶ 33). The value of such injuries is a recognized damage or loss under the CFAA. *See* Opp'n at 18-19.

Diligence's reliance on *Civic Center Motors, Ltd. v. Mason Street Import Cars*, 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005) is misplaced. *See* Reply at 5-6. *Civic Center Motors* did not even rule upon whether costs "related to computer impairment or computer damages" "losses resulting from data corruption," "responding to and repairing the computer problems," and "exposure to liability" due to impairment of information systems are compensable under the CFAA. Moreover, IPOC does not solely plead injury from the "alleged unfair uses of [its] confidential information," as was alleged in *Civic Center Motors. Id.* at 382.

Diligence's heavy reliance on *Nexans Wires S.A. v. Sark-USA, Inc*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004) is also misplaced. In *Nexans*, the court held that the travel expenses and revenue lost as a result of lost business opportunities do not constitute damage or loss under the CFAA. *Id.* at 476-77. IPOC's Complaint does not plead any such ancillary harms in an effort to establish damage or loss under the Act. Furthermore, the statement in *Nexans* that "[n]o court has construed the CFAA's loss definition to extend that far," referring to "business loss

associated with the misappropriation," *id.*, is incorrect. *See, e.g., HUB Group, Inc. v. Clancy*, 2006 WL 208684, *3-*4 (E.D. Pa. 2006) (allegation that the integrity of computer database was damaged through defendant's unauthorized access to confidential information adequately stated a claim under the CFAA); *Four Seasons Hotels and Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268 (S.D. Fla. 2003) ("The value of the information obtained from these acts. . . clearly in excess of the statutory threshold."), *aff'd in part, rev'd in part*, 138 Fed. Appx. 297 (11th Cir. 2005); *Pacific Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1196-97 (E.D. Wash. 2003) (CFAA applied to prevent a former employee from using wrongfully acquired trade secret information to compete with former employer); *In re America Online, Inc.*, 168 F. Supp. 2d 1359, 1380 (S.D. Fla. 2001) (loss of customer information satisfies damage requirement of the CFAA); *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1126-27 (W.D. Wash. 2000) (copying information from a protected computer, infiltrating a computer network, and collecting and disseminating confidential information stated a claim under the CFAA).

### C.    The Heightened Pleading Requirements of Rule 9(b) Do Not Apply.

As IPOC stated in its Opposition:  "IPOC's CFAA claim proceeds under § 1030(a)(5)(A)." Opp'n at 12. It is undisputed that § 1030(a)(5)(A) of the CFAA does not require an allegation or showing of an "intent to defraud." *See, e.g.*, 18 U.S.C. § 1030(a)(A)(5)(iii). It is, thus, also undisputed that claims brought under § 1030(a)(5)(A) of the CFAA need not satisfy the heightened pleading requirements of Rule 9(b).

Confronted with this reality, Diligence's Reply invents a new argument, namely that IPOC's fraud claims must be brought under § 1030(a)(4) rather than § 1030(a)(5). Reply at 9. Given that IPOC's claim proceeds under § 1030(a)(5)(A), which indisputably is not a fraud

provision subject to Rule 9 pleading requirements, Diligence's new argument is specious.

## II. Each of IPOC's Common Law Claims is Cognizable.

### A. D.C. Law Does Not Support Diligence's New Arguments About IPOC's Claim for Tortious Interference With Business Expectancies (Count I).

Diligence argues that D.C. law precludes a claim of tortious interference with "business expectancies" that are "wholly contingent upon the decisions of . . . governmental bodies."[1] This argument is incorrect. To the extent that *Carr v. Brown*, 95 A.2d 79 (D.C. 1978), cited by Diligence, suggests that a claim for tortious interference with business expectancy cannot be contingent upon decisions of governmental bodies, it has been overruled *sub silento* by *Casco Marina Development v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77 (D.C. 2003).

In *Casco*, the D.C. Court of Appeals reversed the trial court's dismissal of plaintiff's claim for tortious interference with business expectancy, where it was alleged that improper actions of an individual and a governmental agency resulted in the agency's disapproval of an assignment of a tenancy. The agency's approval was required before the assignment could be effected. *Casco Marina Dev.*, 834 A.2d at 80. The Court held that these allegations would constitute intentional interference with contract or business expectancy. *Id.* at 83-84.

Diligence also argues that IPOC's allegations concerning its relationship with KPMG FAS are "fanciful." This jury argument about whether IPOC's factual allegations are true (fact) or false (fanciful), has no proper place in a motion to dismiss under Rule 12(b)(6) which assumes all well-pleaded facts to be true and "draw[s] all reasonable inferences in the nonmovant's favor." *E.g., Glymph v. District of Columbia*, 180 F. Supp. 2d 111, 113 (D.D.C. 2001).

---

[1] IPOC's tortious interference claim does not claim interference that is "wholly contingent upon the decisions of . . . governmental bodies" as is asserted by Diligence in its Reply.

6

Diligence is also just wrong about the types of expectancies that may form the basis for this tort in this jurisdiction. First, *Casco Marina Development* is the law in this jurisdiction, not *Fox v. Country Mut. Ins. Co.*, 7 P.3d 677 (Or. App. 2000) or *Nicor International Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357 (S.D. Fla. 2003).[2] Second, Diligence misleadingly suggests that *Fox* narrows the scope of *Allen v. Hall*, 974 P.2d 199 (Or. 1999), a case IPOC cited to rebut *Fox*. Diligence does not disclose that *Allen* was decided by the Supreme Court of Oregon, while *Fox*, relied upon so heavily by Diligence, was decided by an intermediate appellate court.[3]

Diligence quotes the *Fox* court's statement that it found no reported decision where interference with prospective advantage protected civil litigation. But Diligence again fails to acknowledge *Casco Marina Development*, *supra*, (interference with agency proceeding) or *Ellett v. Giant Food, Inc.*, 505 A.2d 888 (Md. App. 1986) (interference with unemployment compensation claim), cases decided by the D.C. and Maryland appellate courts, allowing claims of interference with business expectancy based upon interference with legal proceedings.[4]

### B. This Court Has the Authority to Hear IPOC's Claim of Procuring Information by Improper Means (Count III).

Diligence also argues that IPOC's claim for procuring information by improper means

---

[2] *Nicor*, 292 F. Supp. 2d at 1376-77, is also inapposite because in Count I, IPOC claims neither that a defendant interfered with a contract to which it was a party nor that a defendant interfered with a "judgment," as alleged in *Nicor*. Diligence also cites *Washington Metropolitan Area Transit Authority v. Quik Serve Foods, Inc.*, 2006 WL 1147933, at *6 (D.D.C. 2006). That case holds that "a party cannot interfere with its own contract" and that the allegation that one party "made inquiries into purchasing . . . land that . . . [the other party] did not own demonstrates that the future business relationship was speculative and not probable," and is entirely inapposite here.

[3] Diligence misleadingly cites *Fox* with the notation "Or. 2000." Diligence's mistake is not harmless because the Supreme Court of Oregon has held the cause of action for tortious interference with economic relations applies to an economic expectancy that does not fit Diligence's urged narrow construction of the common law. *Allen v. Hall*, 974 P.2d 199, 202-03 (Or. 1999).

[4] Whether the Zurich Arbitration is a "legal proceeding," part of a business transaction, or a combination of both, is a question of fact. None of the cases cited by Diligence suggests otherwise. Additionally, Diligence's cited cases do not involve either an arbitration nor any proceeding that stems from a contractual business arrangement.

must be dismissed because no D.C. case recognizes the tort. Procuring information by improper means, however, is grounded in long-standing common law set forth in the RESTATEMENT OF TORTS, and it is beyond dispute that the D.C. courts customarily look to the RESTATEMENT.[5]

Moreover, Diligence provides no support for its argument that this Court is prohibited from holding that the D.C. courts would follow the RESTATEMENT here. It is the federal courts' duty "to decide questions of state law whenever necessary to the rendition of judgment." *Meredith v. Winter Haven,* 320 U.S. 228, 234 (1943). "[D]enial of that opportunity . . . merely because the answers to the questions of state law . . . have not yet been given by the highest court of the state, would thwart the purpose of the [diversity] jurisdictional act." *Id.* at 234-35.

The cases cited by Diligence are inapposite. In *Bouchet v. National Urban League,* 730 F.2d 799 (D.C. Cir. 1984), the plaintiff asked the court to adopt a "self-styled" tort, but, unlike IPOC, did not cite any case in any jurisdiction where such a tort had been recognized. Equally inapposite are *Athridge v. Aetna Casualty & Surety Co.,* No. 96-cv-2708, 2001 WL 214212 (D.D.C. 2001), and *Wadley v. Aspillaga,* 163 F. Supp. 2d 1 (D.D.C. 2001). Neither case involved a cause of action set forth in the RESTATEMENT OF TORTS or accepted in any other jurisdiction, as is the tort of procuring information by improper means.

Further, Diligence cites not a single authority, from any jurisdiction, that has rejected the tort of procuring information by improper means. In other jurisdictions, such claims have been

---

[5] *See, e.g., Schwartz v. Franklin National Bank,* 718 A.2d 553, 556-57 (D.C. 1998) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 3, at 17 (5th ed. 1984)):
> We conclude that where there is no existing law in this jurisdiction, reliance on the Restatement, by itself, is sufficient to withstand the imposition of Rule 11 sanctions. The Restatement is a recognized source of causes of action. As Professors Prosser and Keeton have noted:
>> Some of the most eminent legal scholars have taken part in [the] work [of the Restatement of the Law of Torts], with the assistance of numerous judges and lawyers. . . It unquestionably represents the most complete and thorough consideration which tort law has received.

8

upheld where the provisions of the RESTATEMENT § 759 have been stated.[6]

### C. IPOC Has Adequately Pleaded Tortious Interference with Contractual Relations (Count IV).

Diligence argues that no contract existed between IPOC and KPMG FAS because IPOC did not provide adequate consideration to form an "enforceable contract." Reply at 18-21. Diligence conspicuously cites nothing to support its argument that IPOC is required to "plead valid consideration" to state a claim for tortious interference with contractual relations. Reply at 19. IPOC meets its burden of pleading by alleging, *inter alia*, the "existence of a contract." *Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47, 51 n.6 (D.C. 1991).

At the Rule 12(b)(6) stage, questions about *enforceability* of the alleged contract are premature and do not provide the basis to dismiss. As one court has explained:

> At this point, however, this Court offers one clarification: whether or not that contract *exists* is an entirely different question from whether a contract is *enforceable*. Defendants' arguments regarding the adequacy of consideration go to the latter question, though the merits of that question cannot be decided at this point, since all facts on a motion to dismiss must be decided in favor of the plaintiffs.

*National Educ. Assoc.-R.I. v. Retirement Bd. of R.I. Employees' Retirement Sys.*, 890 F. Supp. 1143, 1159 (D.R.I. 1995) (emphasis in original); *accord Stanford v. Kraft Foods, Inc.*, 88 F. Supp. 2d 854, 856 (N.D. Ill. 1999) ("[i]t is not necessary for [plaintiff] to allege all the facts supporting [its] legal theory at this stage in the proceedings. Because it is possible that [plaintiff] will be able to demonstrate the existence of such 'legally enforceable contracts,' we deny the motion to dismiss.") (citations omitted). The Court should not grant a motion to dismiss where it

---

[6] *See Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 2005 WL 724117, at *13 (E.D. Pa. 2005); *Harvard Apparatus, Inc. v. Cowen*, 130 F. Supp. 2d 161 (D. Mass. 2001); *TDS Healthcare Sys. Corp. v. Humana Hosp. Ill., Inc.*, 880 F. Supp. 1572 (N.D. Ga. 1995); *Continental Data Sys., Inc. v. Exxon Corp.*, 1986 WL 20432, at *3 (E.D. Pa. 1986); *Crocan Corp. v. Sheller-Globe Corp.*, 385 F. Supp. 251 (N.D. Ill. 1974).

will take discovery "to determine whether a valid contract exists." *Stanford*, 88 F. Supp. 2d at 856.

Diligence's argument that preexisting statutory duties under the Bermuda Companies Act of 1981 required IPOC to provide information to KPMG FAS oversimplifies an issue that cannot be determined at the pleadings stage. For instance, IPOC may come forward with evidence that it went beyond its statutory obligations or gave up a statutory entitlement in consideration for KPMG FAS's return promise. Such consideration is valid notwithstanding an alleged preexisting duty. *See, e.g., GLM P'ship v. Hartford Cas. Ins. Co.*, 753 A.2d 995, 1000 & n.10 (D.C. 2000) (quoting 2 JOSEPH PERILLO & HELEN BENDER, CORBIN ON CONTRACTS § 7.12, at 393 (rev. ed. 1995) ("If one has an option between two performances, the giving up of this option, or the exercise of it in one way rather than the other, is consideration for a return promise given in exchange.")).

Diligence now relies on *Lufthansa Cargo A.G. v. County of Wayne, Michigan*, 2002 WL 31008373 (E.D. Mich. 2002), in support of its assertion that IPOC's claim should be dismissed for failure to plead valid consideration. *Lufthansa Cargo*, a breach of contract not a tortious interference case, did not acknowledge the well-settled principle that a dismissal under Rule 12(b)(6) cannot be obtained by merely questioning the adequacy of consideration if the plaintiff could prove any set of facts that would entitle it to relief. At this stage, it is sufficient that IPOC has alleged the existence of a contract. *See, e.g.,* Compl. ¶ 17 (alleging "statutory *and contractual* understandings of confidentiality") (emphasis added); *id.* ¶ 41 (alleging existence of contract). The existence or adequacy of IPOC's alleged consideration is beyond the scope of a motion to dismiss. *See, e.g., Tuff-N-Rumble Mgt., Inc. v. Sugarhill Music Pub. Inc.*, 8 F. Supp. 2d 357, 361 (S.D.N.Y. 1998) ("issues of good faith, consideration, and notice . . . are issues of

fact which cannot be decided here on a motion to dismiss."). The Court should deny Diligence's motion with respect to Count IV.

### D. IPOC Has Adequately Pleaded Unfair Competition (Count V).

Diligence's Reply misconstrues the law. *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001) is not, as Diligence claims, a case where "this Court dismissed the plaintiff's unfair competition claim against defendant Towers when it concluded that none of plaintiff's other claims against Towers could survive, thus rejecting the notion that an unfair competition claim can survive as the lone count in a complaint." Reply at 22. Instead, the court disposed of the unfair competition claim *at the summary judgment stage*, for only one reason: "Evidence of Towers' involvement in McClave's actions is conspicuously lacking; therefore, Towers' motion [for summary judgment] is granted on the unfair competition claim." *Furash*, 130 F. Supp. 2d at 57. This holding in *Furash* could not be less applicable at the Rule 12(b)(6) stage, when the well-pleaded facts of IPOC's Complaint are taken as true, and IPOC has had neither the opportunity nor the obligation to adduce evidence.[7]

In addition, in a tacit admission that no such authority exists, Diligence fails to cite any law in support of the assertion that plaintiff and defendant must be business competitors for an unfair competition claim to be cognizable.

### E. Diligence's New Arguments Regarding Civil Conspiracy (Count VI) Lack Merit.

Diligence argues that "IPOC apparently concedes that" its CFAA claim, standing alone, could not support a civil conspiracy claim. Reply at 24. IPOC concedes no such thing. Diligence fails to cite any authority holding that civil conspiracy does not lie for underlying

---

[7] If anything, *Furash* supports IPOC because, with respect to Towers' codefendant, the court denied summary judgment on an unfair competition claim, notwithstanding that it was "essentially a restatement of Furash's other claims," as Diligence says IPOC's claim is. *Id.*

11

statutory torts. *See Varela v. Flintlock Const., Inc.*, 2002 WL 342657, *3 (S.D.N.Y. 2002) ("Flintlock has cited no authority . . . establishing that a cause of action for civil conspiracy may be linked to an underlying common law tort, but may not be linked to an underlying tort having a statutory basis, and independent research has uncovered no case law making a distinction in this regard between torts having a basis in statute as opposed to the common law."). Neither *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 739 (D.C. 2000), nor *Mazloum v. District of Columbia*, 2006 WL 1770500, *8 n.6 (D.D.C. 2006), so held.

### F. IPOC Has Adequately Pleaded Unjust Enrichment By Alleging that Defendants Received Benefits at IPOC's Expense (Count VII).

For the first time in its Reply, Diligence argues that IPOC's unjust enrichment claim should be dismissed because IPOC does not allege that it had any dealings with Diligence, nor that IPOC conferred a benefit directly on Diligence. Reply at 24-25. Diligence, however, misunderstands the pleading requirements for an unjust enrichment claim. As one court held after conducting exhaustive research into common law unjust enrichment:

> Contrary to Defendants' argument, there is no additional requirement that a benefit flow solely from Plaintiffs to Defendants. The courts do not define "benefit" as narrowly as Defendants urge. . . . Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct

*In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000) (reviewing the common law of various states and the District of Columbia), *aff'd*, 332 F.3d 896 (6th Cir. 2003), *cert. denied*, 543 U.S. 939 (2004).

Under D.C. law, alleging that defendants received benefits at plaintiff's expense, as IPOC has alleged here, is sufficient to meet the burden of pleading unjust enrichment. *See Emerine v. Yancey*, 680 A.2d 1380, 1383 (D.C. 1996) ("To recover on a theory of unjust enrichment, . . . the

plaintiff must show that [the defendant] was unjustly enriched at his expense and that the circumstances were such that in good conscience [the defendant] should make restitution") (internal quotes and citations omitted). *See also In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 543-44 (D.N.J. 2004) (rejecting, in case where plaintiffs "asserted claims under the unjust enrichment laws of fifty states, the District of Columbia, and Puerto Rico," the arguments that (a) unjust enrichment claims require that Plaintiffs confer a benefit on Defendants; and (b) unjust enrichment claims require an allegation that Plaintiffs dealt directly with Defendants).

### III. The Uniform Trade Secrets Act ("UTSA") Does Not Preempt IPOC's Common Law Claims (Counts I, III-VII).

Diligence argues that "all common law causes of action for misappropriation of confidential information, regardless of whether that information constitutes a trade secret" are preempted. Reply at 10. But this argument cannot be reconciled with the unambiguous terms of the DC UTSA, which provides that it only "supersedes *conflicting* tort, restitution and other law of the District of Columbia providing civil remedies for misappropriation of a *trade secret.*" D.C. Code § 36-407(a) (emphases added). To state the obvious, a common-law cause of action that does not depend upon the existence of a trade secret is not a "conflicting" law providing a civil remedy for "misappropriation of a trade secret."

As the court in *Mortgage Specialists, Inc. v. Davey*, 2006 WL 2060395 (N.H. July 26, 2006), on which Diligence now relies, noted, "the contribution of the UTSA is substitution of *unitary definitions* of trade secret and trade secret misappropriation." *Id.* at *7 (quotations and alterations omitted). *This is not a trade-secret case.* That IPOC does not even allege the existence of a trade secret sets this case apart from *all* of the decisions on which Diligence relies.

None of the cases cited by Diligence speaks to the issue presented here—whether the UTSA preempts common-law tort claims that do not depend upon the existence of a trade secret

13

*where the plaintiff makes no claim that its confidential information even qualifies as a trade secret.* Diligence seeks to dismiss the non-trade-secret claims that IPOC actually asserted on the grounds that hypothetical claims that IPOC has not asserted would be preempted by the UTSA. Diligence must take the Complaint as IPOC wrote it, not as Diligence wishes it read.

*Mortgage Specialists* also demonstrates the gross unfairness of Diligence's position. After adopting the rule that Diligence proposes here, the *Mortgage Specialists* court noted that "[a]lthough this result may seem harsh, [the statute] continues to permit ... corporate entities to protect their valuable commercial information *contractually*, regardless of whether such information meets the statutory definition of 'trade secret.'" 2006 WL 2060395, at *9. IPOC could not have protected itself contractually from Diligence or BGR. If all remedies other than UTSA were preempted, IPOC would be left with no protection or remedy.

Diligence asks the Court to hold, as a matter of law, that a plaintiff has no claim for relief in tort where the defendant steals confidential information and then uses that information to injure the plaintiff, simply because "none of what he filched is a trade secret." *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005). As Judge Easterbrook put it, such a result is simply "unimaginable." *Id.*

## CONCLUSION

For these reasons, and those stated in IPOC's Opposition, the Court should not dismiss IPOC's Complaint.

Dated: August 22, 2006

Respectfully submitted,

IPOC INTERNATIONAL GROWTH FUND LIMITED

/s/ Carol A. Joffe

---

OF COUNSEL:
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:   (312) 558-5858
Fax:   (312) 558-5700
kanderson@winston.com

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:   (202) 282-5000
Fax:   (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com

*Attorneys for IPOC International Growth Fund Limited*