UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 1:06CV01109 (PLF) |
| | ) | |
| DILIGENCE, LLC, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF IPOC'S OPPOSITION TO BARBOUR GRIFFITH AND ROGERS LLC'S RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tele:   (312) 558-5858
Fax:    (312) 558-5700
kanderson@winston.com
*Of Counsel*

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tele:   (202) 282-5000
Fax:    (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com

*Attorneys for IPOC International Growth Fund Limited*

September 5, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .................................................................................................... 1

ARGUMENT............................................................................................................. 2

I.      The Court Should Disregard and Strike BGR's References to
        Irrelevant Facts Outside of the Complaint. ........................................................2

II.     IPOC's Complaint Adequately Alleges Causation and Damages. .......................5

III.    IPOC's Complaint Adequately Alleges Underlying Wrongful
        Conduct.................................................................................................................8

IV.     BGR's Arguments Regarding the Computer Fraud and Abuse Act
        (Count II) are Redundant and Meritless................................................................9

        A.      BGR's Argument About IPOC's Failure to Plead the
                Requirements of § 1030(a)(2)(C) is Irrelevant Because
                IPOC's Claim Arises Under § 1030(a)(5)(A)(iii). ...................................10

        B.      IPOC Has Adequately Alleged "Damage" Under The
                CFAA. ......................................................................................................10

        C.      IPOC Has Adequately Alleged "Loss" under the CFAA. .......................12

        D.      IPOC Has Adequately Alleged "Access" under the CFAA.....................14

V.      BGR's Arguments Regarding Preemption of Counts I, III-VII
        Under the D.C. Uniform Trade Secrets Act Defy the Statute and
        the Case Law.......................................................................................................16

VI.     All of IPOC's Common-Law Tort Claims Are Cognizable. ..............................20

        A.      IPOC Has Adequately Stated a Claim of Tortious
                Interference With Business Expectancies (Count I). ...............................20

        B.      IPOC Has Adequately Stated A Claim of Procuring
                Information by Improper Means (Count III). ...........................................28

        C.      IPOC Has Adequately Stated A Claim of Tortious
                Interference With Contractual Relations (Count IV)................................30

        D.      IPOC Has Adequately Stated A Claim of Unfair
                Competition (Count V). ...........................................................................33

E.    IPOC Has Adequately Stated A Claim of Civil Conspiracy
(Count VI). ...........................................................................................................37

F.    IPOC Has Adequately Stated A Claim of Unjust
Enrichment (Count VII). .....................................................................................38

CONCLUSION........................................................................................................................... 41

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37
(D.D.C. 1999) ...................................................................................................40

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) ...................................................3

*Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784
(W.D. Ky. 2001) ...............................................................................................19

*Avco Corp. v. Precision Air Parts, Inc.*, 1980 U.S. Dist. LEXIS 16413
(M.D. Ala. Sept. 4, 1980), 1980 WL 1173 ..........................................................29, 30

*BCCI Holdings (Luxembourg) Societe Anonyme v. Khalil*, 56 F. Supp. 2d 14
(D.D.C. 1999) ...................................................................................................39

*Banks v. District of Columbia*, 377 F. Supp. 2d 85 (D.D.C. 2005) ...............................14

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ......................................................................3

*Bennett v. Schmidt*, 153 F.3d 516 (7th Cir. 1998)............................................................5

*Biocore, Inc. v. Khosrowshashi*, 96 F. Supp. 2d 1221 (D. Kan. 2000).........................19

*Blank v. Pollack*, 916 F. Supp. 165 (N.D.N.Y. 1996)...................................................34

*Blinded Veterans Assoc. v. Blinded American Veterans Foundation*,
872 F.2d 1035 (D.C. Cir. 1989) .........................................................................35

*Bouchet v. National Urban League*, 730 F.2d 799 (D.C. Cir. 1984)............................28

*Branzburg v. Hayes*, 408 U.S. 665 (1972).....................................................................24

*Business Equip. Ctr., Ltd. v. DeJur-Amsco Corp.*, 465 F. Supp. 775
(D.D.C. 1978) .....................................................................................................7

*C.H. Robinson Worldwide, Inc. v. Command Transportation, LLC.*,
2005 WL 3077998 (N.D. Ill. 2005) ...................................................................13

*Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619 (9th Cir. 1999) ...........................35

*California Transp. v. Trucking Unlimited*, 404 U.S. 508 (1972).................................26

*Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless P.L.C.,*
    148 F.3d 1080 (D.C. Cir. 1998) ..................................................................5, 7

*Charles Schwab & Co., Inc.,* 2005 WL 351929 (N.D. Ill. 2005) ................................13

*Civic Center Motors, Ltd. v. Mason Street Import Cars,* 387 F. Supp. 2d 378
    (S.D.N.Y. 2005) ....................................................................................11, 13

*Conley v. Gibson,* 355 U.S. 41 (1957) .........................................................................5

*Custom Teleconnect, Inc. v. International Tele-Services, Inc.,* 254
    F. Supp. 2d 1173 (D. Nev. 2003) ........................................................................18

*Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.,*
    344 F. Supp. 2d 936 (M.D. Pa. 2004) ..................................................................9

*Doe v. U.S. Dep't of Justice,* 753 F.2d 1092 (D.C. Cir. 1985) .........................................6

*Dolphin Tours, Inc. v. Pacifico Creative Svcs., Inc.,* 773 F.2d 1506
    (9th Cir. 1985) .....................................................................................................37

*In re DoubleClick Privacy Litig.,* 154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......................12

*E.E.O.C. v. Astra USA, Inc.,* 94 F.3d 738 (1st Cir. 1996) .............................................23

*EF Cultural Travel BV v. Explorica, Inc.,* 274 F.3d 577 (1st Cir. 2001) ......................10

*Ellsworth Associates, Inc. v. United States,* 917 F. Supp. 841 (D.D.C. 1996) ..............40

*Fedway Assocs., Inc. v. United States Treasury, Bureau of Alcohol,*
    *Tobacco & Firearms,* 976 F.2d 1416 (D.C. Cir. 1992) .........................................36

*Fomby-Denson v. Dep't of the Army,* 247 F.3d 1366 (Fed. Cir. 2001) ....................23, 24

*Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.,*
    267 F. Supp. 2d 1268 (S.D. Fla. 2003), *aff'd in part, rev'd*
    *in part,* 138 Fed. Appx. 297 (11th Cir. 2005) .....................................................13

*Furash & Company, Inc. v. McClave,* 130 F. Supp. 2d 48 (D.D.C. 2001) ................7, 34

*G-I Holdings, Inc. v. Baron & Budd,* 238 F. Supp. 2d 521 (S.D.N.Y. 2002) .............1, 23

*General Elec. Co. v. Lyon,* 894 F. Supp. 544 (D. Mass. 1995) ...............................36, 37

*George S. May Int'l Co. v. Hostetler,* No. 04 C 1606, 2004 WL 1197395
    (N.D. Ill. 2004) ...................................................................................................13

*Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407 (D.D.C. 1988)...........................................35

*In re Greater Southeast Community Hospital Corp.*,
333 B.R. 506 (Bkrtcy. D.D.C. 2005) ...................................................................4

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ....................................................7

*Harris v. Ladner*, 127 F.3d 1121 (D.C. Cir. 1997).........................................................14

*Hauck Mfg. Co. v. Astec Industries, Inc.*, 375 F. Supp. 2d 649
(E.D. Tenn. 2004) .........................................................................................19

*Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987)................................................2

*Hecny Transp., Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005) .......................................18, 20

*Henthorn v. Dep't of Navy*, 29 F.3d 682 (D.C. Cir. 1994) ............................................3

*IHS Acquisition XV, Inc. v. Kings Harbor Care Ctr.*, 1999 WL.
223152 (S.D.N.Y. April 16, 1999)....................................................................30

*Int'l News Serv. v. Associated Press*, 248 U.S. 215 (1918).............................................34

*JSG Trading Corp. v. Dep't of Agriculture*, 235 F.3d 608 (D.C. Cir. 2001) ................................36

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) .......................................3, 5

*Krieger v. Fadely*, 211 F.3d 134 (D.C. Cir. 2000)...........................................................5

*Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850 (10th Cir. 1972)................................24

*Littlepage v. Neale Pub. Co.*, 34 App. D.C. 257, 1910 WL. 20750
(D.C. Cir. 1910) ............................................................................................31

*In re Lorazepam & Clorazepate Antitrust Litigation*, 295 F. Supp. 2d 30
(D.D.C. 2003) ...............................................................................................39

*McKesson Med.-Surgical, Inc. v. Micro Bio-Medics, Inc.*, 266 F. Supp. 2d 590
(E.D. Mich. 2003)..........................................................................................18

*Mehle v. American Management Systems, Inc.*, 2002 WL.
31778773 (D.C. Cir. 2002) ..............................................................................4

*Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202 (D. Minn. 1988) ...................................18

*National Educ. Assoc.-R.I. v. Retirement Bd. of R.I. Employees' Retirement Sys.*,
    890 F. Supp. 1143 (D.R.I. 1995)......................................................................33

*Nexans Wires S.A. v. Sark-USA*, 166 Fed. Appx. 559 (2d Cir. 2006)............................13

*O'Brien v. Westinghouse Elec. Corp.*, 293 F.2d 1 (3d Cir. 1961)...................................35

*Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F. Supp. 2d 1188
    (E.D. Wash. 2003) ......................................................................................13

*PM Services Co. v. Odoi Associates, Inc.*,
    2006 WL. 20382 (D.D.C. Jan. 4, 2006)..........................................................17

*Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469 (D. Colo. 1996).................................18

*Primedical, Inc. v. Allied Investment Corp.*, No. 90-1802, 1994 U.S. Dist.
    LEXIS 4517 (D.D.C. Mar. 30, 1994) ................................................................21

*Register.com, Inc. v. Verio*, 126 F. Supp. 2d 238 (S.D.N.Y. 2000)...............................11

*Resdev, LLC v. Lot Builders Ass'n, Inc.*, 2005 WL. 1924743 (M.D. Fla. 2005) ...........12

*Ridge Runner Forestry v. Veneman*, 287 F.3d 1058 (D.C. Cir. 2002) ...........................32

*Robinson v. District of Columbia*, 403 F. Supp. 2d 39 (D.D.C. 2005)..................2, 3, 6, 20, 22, 23

*Role Models Am., Inc. v. Jones*, 305 F. Supp. 2d 564 (D. Md. 2004)......................15, 16

*Roy Export Co. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095 (2d Cir. 1982)..............34

*Russo v. Ballard Medical Products*, 2006 WL. 2345868
    (D. Utah Aug. 10, 2006) .................................................................................17

*S.E.C. v. Banner Fund Int'l*, 211 F.3d 602 (D.C. Cir. 2000) ..........................................7

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ......................................................................14

*Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d
    1121 (W.D. Wash. 2000) .....................................................................10, 11, 15

*Simpson v. Ha-Lo Indus., Inc.*, 74 F. Supp. 2d 861 (E.D. Wis. 1999)............................6

*Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316 (8th Cir. 1994)..............4

*Stanford v. Kraft Foods, Inc.*, 88 F. Supp. 2d 854 (N.D. Ill. 1999)..............................33

*Stokes v. Cross*, 327 F.3d 1210 (D.C. Cir. 2003)...........................................................5, 7

*Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d
   652 (E.D. Va. 2002)...................................................................................18

*Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002)...............................31

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).........................................................5

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) .................................................................8

*Tavoulareas v. Washington Post Co.*, 724 F.2d 1010 (D.C. Cir.)
   *on reh'g*, 737 F.2d 1170 (D.C. Cir. 1984) ...........................................................29

*Tuff-N-Rumble Mgt., Inc. v. Sugarhill Music Pub. Inc.*, 8 F. Supp. 2d
   357 (S.D.N.Y. 1998)..................................................................................33

*Tull v. United States*, 481 U.S. 412 (1987) ....................................................................40

*Tyco Int'l (US) Inc. v. Does, No. 1-3*, 2003 WL. 21638205 (S.D.N.Y. 2003)................13

*U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 717 F. Supp. 1565 (N.D. Ga. 1989)....28

*United States v. Bouchey*, 860 F. Supp. 890 (D.D.C. 1994), *aff'd* 1997
   WL 404714 (D.C. Cir. June 05, 1997).....................................................39, 40, 41

*United States v. Farrell*, 606 F.2d 1341 (D.C. Cir. 1979) .............................................24

*Varela v. Flintlock Const., Inc.*, 2002 WL. 342657 (S.D.N.Y. 2002) ...........................38

*Walker v. Jones*, 733 F.2d 923 (D.C. Cir. 1984)...........................................................14

*Washington Metropolitan Area Transit Authority v. Quik Serve Foods, Inc.*,
   2006 U.S. Dist. LEXIS 24510 (D.D.C. Apr. 28, 2006) .........................................21

*Westlake Plastic Co. v. O'Donnell*, 182 F.R.D. 165 (E.D. Pa. 1998) .............................9

*Williams v. Fed. Nat'l Mortgage Assoc.*, 2006 WL. 1774252 (D.D.C. June 26, 2006)...6

## STATE CASES

*Alfred A. Altimont, Inc. v. Chatelain*, 374 A.2d 284 (D.C. 1977) ...............................1, 7

*Allen v. Hall*, 974 P.2d 199 (Or. 1999) .........................................................................21

*B&W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879 (D.C. 1982) ...................................34

*Belfiore v. B. J. Crivella, Inc.*, 60 A.2d 542 (D.C. 1948) ........................................1, 32

*Biro v. Hirsch*, 771 A.2d 129 (Conn. App. Ct. 2001) ...................................................23

*Carr v. Brown*, 395 A.2d 79 (D.C. 1978) .........................................................21, 25, 26

*Casco Marina Dev., L.L.C. v. Dist. of Columbia Redev. Land Agency*,
    834 A.2d 77 (D.C. 2003) .................................................................21, 25, 26, 27

*Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47 (D.C. 1991) ................7, 33

*Democratic State Comm. of the Dist. of Columbia v. Bebchick*,
    706 A.2d 569 (D.C. 1998) ...........................................................................27

*Dornan v. Royal Motors, Inc.*, 271 A.2d 402 (D.C. 1970) .......................................1, 32

*EDM & Assocs., Inc. v. GEM Cellular*, 597 A.2d 384 (D.C. 1991) ..............................31

*Emerine v. Yancey*, 680 A.2d 1380 (D.C. 1996) ..........................................................39

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724 (D.C. 2000) ...................38

*Fox v. Country Mutual Insurance Co.*, 7 P.3d 677 (Or. Ct. App. 2000) .................................21, 27

*GLM P'ship v. Hartford Cas. Ins. Co.*, 753 A.2d 995 (D.C. 2000) ................................32

*Gordon v. Noel*, 356 N.W.2d 559 (Iowa 1984) ............................................................26

*Hopkins v. Atkins*, 637 A.2d 424 (D.C. 1993) .............................................................31

*King v. Industrial Bank of Washington*, 474 A.2d 151 (D.C. 1984)................................32

*Matossian v. Fahmie*, 101 Cal. App. 3d 128 (Cal. Ct. App. 1980)................................26

*Niemeyer v. U.S. Fidelity & Guaranty Co.*, 789 P.2d 1318 (Okla. 1990) ........................6

*Norris v. Green*, 656 A.2d 282 (D.C. 1995) .................................................................31

*Paul v. Howard Univ.*, 754 A.2d 297 (D.C. 2000) ........................................................21

*Ruder & Finn Inc. v. Seaboard Surety Co.*, 422 N.E.2d 518 (N.Y. 1981) .....................35

*Schwartz v. Franklin National Bank*, 718 A.2d 553 (D.C. 1998)..................................29

*Sharrow v. State Farm Mutual Auto. Ins. Co.*, 511 A.2d 492 (Md. 1986) ...................................5, 7

*Van Housen v. Monico*, 378 A.2d 609 (Conn. Super. Ct. 1976)....................................................23

*Willig v. Gold*, 171 P.2d 754 (Cal. Ct. App. 1946)........................................................................24

## FEDERAL STATUTES

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").........2, 9, 10, 11, 12, 13, 14, 15, 16

41 U.S.C. §§ 601-13 ......................................................................................................................33

## LEGISLATIVE HISTORY

S. Rep. No. 99-432.........................................................................................................................15

S. Rep. No. 104-357 .......................................................................................................10, 11, 12, 15

## STATE STATUTES

District of Columbia's Uniform Trade Secrets Act,
    D.C. Code § 36-407 ("UTSA")..................................................2, 16, 17, 18, 19, 28, 29, 30

## FEDERAL RULES

Fed. R. Civ. P. 8.................................................................................................................5, 6, 7, 30

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 2

Fed. R. Civ. P. 12(c) ...........................................................................................................1, 2, 20, 41

## TREATISES

17A Am.Jur.2d, *Contracts* § 151 ...................................................................................................32

Restatement (1st) of Torts § 759....................................................................................................28, 29

W. Page Keeton et al., Prosser and Keeton
    on the Law of Torts (5th ed. 1984)................................................................................29

## INTRODUCTION

Plaintiff IPOC International Growth Fund Limited ("IPOC") hereby opposes the motion of Defendant Barbour Griffith and Rogers LLC ("BGR") for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The Court should deny BGR's motion on all grounds.

BGR's motion is the latest in a successive flurry of motions that BGR and Diligence have filed, often simply regurgitating entire arguments from prior motions, all in apparent hope of achieving an extended stay of discovery. BGR's present motion does little more than parrot arguments raised in Diligence's Rule 12(b)(6) motion filed more than six weeks ago. And not surprisingly, BGR's motion shares the same flaws as Diligence's prior motion, including a penchant for asking the Court to consider evidence and innuendo outside of the pleadings.

BGR begins its brief with accusations that are far afield from the facts of the Complaint. BGR relies on a decision from a Zurich arbitral tribunal and claims that IPOC is a criminal concern. Mem. in Support of Mot. of Def. BGR for J. on the Pleadings ("BGR Br.") at 1-2. BGR's mudslinging is a transparent attempt to divert the Court from the real inquiry at hand— whether IPOC's allegations of *BGR and Diligence's illegal activities* adequately state claims for relief. Those allegations are that BGR and Diligence were hired by IPOC's litigation and business adversaries to carry out an illegal scheme to instigate and influence an investigation of IPOC by Bermuda's Minister of Finance; and that BGR hired Diligence to penetrate the investigation and procure information about IPOC, which Defendants disclosed to IPOC's litigation and business adversaries for use against IPOC's interests. Compl. ¶¶ 11-23.

BGR repeatedly takes aim at claims that are nowhere to be found in IPOC's Complaint. For example, BGR asks the Court to dismiss the Complaint under Rule 9(b), although there is no fraud count in the Complaint, and BGR suggests that "truth" is somehow a defense to its tortious conduct, although IPOC makes no defamation claim.

BGR also challenges the entire Complaint on the ground that IPOC has not adequately pleaded that the Defendants' wrongful conduct was the proximate cause of any damages to IPOC. But this argument ignores the numerous allegations in the Complaint of harm caused by Defendants' wrongful conduct in stealing IPOC's confidential information and then disseminating it to IPOC's litigation and commercial rivals. Next, BGR asserts that IPOC fails to state a claim under the Computer Fraud and Abuse Act ("CFAA") because IPOC does not adequately allege damage or access under the statute. As IPOC explains below, however, the allegations in the Complaint more than adequately meet the broad standards under the CFAA.

BGR's argument also fails regarding preemption under the District of Columbia Uniform Trade Secrets Act ("UTSA"). The assertion that UTSA preempts tort claims that bear no relation to misappropriation of trade secrets is "unimaginable." Likewise, BGR's argument that IPOC has inadequately alleged underlying wrongful conduct inexplicably ignores the wealth of allegations of wrongdoing in the Complaint. Lastly, BGR attacks each common-law tort claim, asserting mostly rehashed arguments from Diligence's Rule 12(b)(6) motion, each of which fails for the reasons that Diligence's arguments failed.

IPOC has adequately stated claims upon which relief may be granted in every count of its Complaint. The Court should deny BGR's motion.

## ARGUMENT

### I. The Court Should Disregard and Strike BGR's References to Irrelevant Facts Outside of the Complaint.

As the Court is aware, the standard for motions for judgment on the pleadings under Rule 12(c) is essentially the same as that for motions to dismiss under Rule 12(b)(6). *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C. Cir. 1987); *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 46-47 (D.D.C. 2005). In either case, the Court may not rely on facts outside of the pleadings

2

and may consider only facts alleged in the complaint, any documents attached to or incorporated in the complaint, and matters of public record or of which the court may take judicial notice. *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Robinson*, 403 F. Supp. 2d at 47. Factual allegations in briefs may not be considered, particularly when such so-called facts contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

Flouting these standards, BGR claims that the Court should "take judicial notice" of a lengthy ruling—now on appeal—of a Zurich arbitral tribunal in a dispute to which neither BGR nor Diligence is a party. BGR Br. at 1 & n.1. As alleged in the Complaint, BGR and Diligence acted as henchmen for IPOC's opponents in the arbitration in order to unlawfully obtain information for use against IPOC from a confidential Bermuda investigation. The details of the Bermuda investigation and the Zurich arbitration are not relevant here. While acknowledging that these matters are outside the pleadings, BGR nonetheless argues that the Court should "take judicial notice" of BGR's allegations that IPOC is a "tool" for carrying out "criminal schemes" and that the Court should dismiss IPOC's Complaint because the "law . . . does not protect the desire to conceal evidence of criminal activities." BGR Br. at 2.

BGR's sole support for its claim that the Court may take judicial notice of the Zurich arbitration is an inapplicable Eighth Circuit case that is based on the proposition that, in the unique context of labor disputes, where an employee is allowed to pursue both a grievance-arbitration remedy and a cause of action in court under Title VII, the "arbitral decision may be admitted as evidence" in the Title VII case. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60 (1974). Even the Eighth Circuit case that BGR cites, however, states that while the court may

3

take notice of an arbitral decision in that unique context, "we do not defer to it, nor give it any weight." *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1326 n.3 (8th Cir. 1994).

Even if the foreign arbitral decision were a United States court document, this Court could not assume the truth of the facts asserted in the arbitral decision. *See Mehle v. American Management Systems, Inc.*, 2002 WL 31778773, *1 (D.C. Cir. 2002) ("The court takes judicial notice of the existence of the documents, not the accuracy of any legal or factual arguments made therein.") (citing *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981), and *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1388-89 (2d Cir. 1992)). The Court cannot assume the truth of the facts contained in the ruling, much less BGR's "spin" on the facts. *See, e.g., In re Greater Southeast Community Hospital Corp.*, 333 B.R. 506, 523 (Bkrtcy. D.D.C. 2005) ("court may take judicial notice of its own records, but may not infer the truth of facts contained in documents[ ] simply because such documents were filed with the court"). Here, the Zurich arbitral ruling cited by BGR is the subject of disputed foreign proceedings, the substance of which has nothing to do with this case.[1]

The Court should thus strike all references in BGR's brief to matters outside the Complaint and admonish BGR and its counsel for employing such improper tactics.

---

[1]    Without foundation BGR proclaims that "IPOC does not contest here the validity of the tribunal's ruling or deny the truth of the materials that Diligence and BGR allegedly obtained from KPMG . . . ." BGR Br. at 1. BGR ignores, of course, that the validity of the on-appeal arbitral ruling and the truth or falsehood of the materials that Diligence and BGR stole are *irrelevant to this case*. Even though it is irrelevant to the issues before the Court, IPOC does indeed contest the Zurich ruling and is pursuing its appeal rights in the Swiss Supreme Court.

But this case is about the Defendants' illegal conduct in stealing IPOC's materials, not about the content of the materials or foreign arbitrations. Nothing can be inferred from IPOC's decision not to use this case as a forum to debate matters that are not before this Court. BGR and Diligence's attempt to get into these matters falls far outside the bounds of what is appropriate for the Court to consider in a motion to dismiss on the pleadings.

II.    **IPOC's Complaint Adequately Alleges Causation and Damages.**

BGR argues that IPOC does not adequately allege that it suffered an injury or "adduce facts to show" that it would have suffered that injury but for Defendants' wrongful conduct. Yet IPOC's Complaint is replete with allegations of its injuries, all of which were directly caused by the wrongful acts of BGR and Diligence when they stole and disseminated IPOC's confidential information. BGR's argument that IPOC has "failed to adduce facts," mistakes a facial challenge to the Complaint for a challenge to the sufficiency of the evidence supporting the Complaint's allegations. *See, e.g., Sharrow v. State Farm Mutual Auto. Ins. Co.*, 511 A.2d 492, 500 (Md. 1986) ("There is, of course, a big difference between that which is necessary to prove the commission of the tort and that which is necessary merely to allege its commission.").

The standard for BGR's motion is whether the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Kowal v. MCI Comms. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Rule 8 requires that a pleading provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and that requirement has been interpreted to demand only that a complaint provide fair notice of the plaintiff's claims and the grounds upon which those claims rest. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Thus, "a plaintiff need not allege all the facts necessary to prove its claim so long as it provides enough factual information to make clear the substance of that claim." *Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1086 (D.C. Cir. 1998); *see also Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003) ("The Rules 'do not require a claimant to set out in detail the facts upon which he bases his claim.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Nor must a plaintiff "'plead law or match facts to every element of a legal theory.'" *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). In addition, when assessing whether a complaint states a claim, the court assumes

5

the truth of the factual allegations contained therein and gives the non-moving party—here IPOC—the benefit of all inferences that can be derived from those allegations. *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985); *Robinson*, 403 F. Supp. 2d at 47.

Given the liberality of the pleading requirements in Rule 8, it is not surprising that courts have noted that the hurdle for sufficiently pleading the damages element of the claims brought in IPOC's Complaint is low. *See Williams v. Fed. Nat'l Mortgage Assoc.*, 2006 WL 1774252, *9 (D.D.C. June 26, 2006) (noting that in tortious interference with prospective business advantage claims, "[t]he elements of termination and resultant damages are easily met"); *see also Simpson v. Ha-Lo Indus., Inc.*, 74 F. Supp. 2d 861, 862 (E.D. Wis. 1999) (denying motion to dismiss tortious interference claim even though allegations regarding concreteness and certainty of prospective relationship were "minimal"); *see generally Niemeyer v. U.S. Fidelity & Guaranty Co.*, 789 P.2d 1318, 1321 (Okla. 1990) (recognizing that, under notice pleading, while plaintiff *must prove* that defendant's wrongful acts were proximately caused by plaintiff's injury, plaintiff *may plead* causation in general terms).

The Complaint's detailed allegations that Defendants' wrongful conduct caused IPOC harm easily clear this low hurdle. Specifically, IPOC alleges that Defendants were hired to obtain through improper means confidential information that IPOC had provided to KPMG FAS and documents generated by KPMG FAS based upon IPOC's confidential information, (Compl. ¶¶ 16, 18, 19), then Defendants disclosed that information to IPOC's litigation adversaries and commercial rivals for the purpose of advancing rival litigation and business interests, *id.* ¶¶ 21, 38, 47, 48. IPOC alleges that it has suffered harm and continues to suffer harm from Defendants' conduct. *Id.* ¶¶ 28, 33, 38-39, 44, 47-49, 53, 56. Thus, the Complaint sufficiently alleges that IPOC has been damaged as a result of Defendants' wrongful conduct.

6

The cases BGR cites do not address the sufficiency of IPOC's Complaint. BGR Br. at 4-5. Rather, in each of BGR's cases, the court was asked to decide, at summary judgment or following a trial, whether the plaintiff had adduced sufficient *evidence* to prove that it had suffered damages that were proximately caused by the defendant's conduct.[2] But the sufficiency of IPOC's proof is not now at issue.

BGR complains that IPOC has not alleged facts necessary at this stage to *prove* proximate cause. *See* BGR Br. at 4 (claiming that IPOC has not "adduced facts to show how defendants' alleged conduct cause a injury [sic]"); *id.* at 5 (IPOC has not alleged "any facts to show" that but for defendants' conduct the Zurich tribunal would have ruled in IPOC's favor). Yet, Rule 8 does not require a detailed statement of the facts that would be sufficient to *prove* the elements of a claim. *Caribbean Broadcasting Sys.*, 148 F.3d at 1086; *Stokes*, 327 F.3d at 1215; *cf. Sharrow*, 511 A.2d at 500 (noting "big difference" between what must be alleged and what must be proved in tort claim). Moreover, BGR cannot sincerely argue that the allegations in the Complaint fail to sufficiently allege damages, as in its own motion, BGR asserts that IPOC

---

[2]    *See Alfred A. Altimont, Inc. v. Chatelain*, 374 A.2d 284 (D.C. 1977) (holding that trial court had not erred in directing verdict against plaintiff on tortious interference with contractual and business relations because evidence at trial was insufficient to establish that defendants' conduct caused damage to plaintiff); *Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47 (D.C. 1991) (affirming, following a bench trial, judge's findings in tortious interference suit that defendant's conduct had not caused damages); *Furash & Company, Inc. v. McClave*, 130 F. Supp. 2d 48 (D.D.C. 2001) (granting summary judgment for defendant on unfair competition claim because of lack of evidence of defendant's involvement in alleged wrongful conduct); *Business Equip. Ctr., Ltd. v. DeJur-Amsco Corp.*, 465 F. Supp. 775 (D.D.C. 1978) (granting summary judgment for defendant on tortious interference and unfair competition claims); *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) (affirming district court finding that defendant was jointly and severable liable under civil conspiracy theory for wrongful death); *S.E.C. v. Banner Fund Int'l*, 211 F.3d 602 (D.C. Cir. 2000) (affirming district court's grant of summary judgment to S.E.C. and order requiring defendants to disgorge amount by which they had been unjustly enriched through securities fraud).

"hints at several possible harms" and then proceeds to describe at least three separate theories of harm alleged in IPOC's Complaint. BGR Br. at 5-7.

## III.    IPOC's Complaint Adequately Alleges Underlying Wrongful Conduct.

BGR argues that all of IPOC's claims should be dismissed because the Complaint fails to allege sufficiently that Defendants engaged in wrongful conduct. BGR Br. at 19. It is baffling how BGR can assert that IPOC has identified only two types of wrongful conduct when the Complaint alleges so many wrongful acts, including intimidation, improper interference with KPMG FAS's investigation, dissemination of confidential information to IPOC's litigation and commercial rivals, disclosure of that information to the press, accessing that information without authorization, theft, and trespass. *See* Compl. ¶¶ 1-2, 19, 21, 31-32, 36, 48. Moreover, BGR's arguments actually acknowledge that the Complaint alleges this very same wrongful conduct. *See, e.g.*, BGR Br. at 41-42 (arguing that IPOC has not sufficiently alleged unfair competition based upon intimidation).

With respect to the bribery and fraud allegations, BGR simply cross-references its previous Rule 9(b) motion. As stated in IPOC's opposition to that motion, BGR's reliance on Rule 9(b) is misplaced, and BGR has adequate notice of the claims lodged against it. *See* IPOC's Opp'n to BGR's Rule 9(b) Mot. to Dismiss ("IPOC's Opp'n to Rule 9(b) Mot.").

BGR also argues that IPOC has offered insufficient facts to support its allegation that Diligence bribed KPMG.[3] BGR Br. at 19. Yet, at the pleading stage, IPOC only has to allege— not prove—that defendants engaged in wrongful conduct, and IPOC has done so. IPOC alleges that Diligence, acting at the direction of BGR, obtained information by wrongful means,

---

[3]    The only support BGR appears to have for its argument is *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006), which BGR cited in its reply in support of its Rule 9(b) motion. *Tal* is inapposite. There, the court simply concluded that the plaintiff's claim failed because the particular federal bribery statute prohibited bribery only of a federal official. *See id.* at 1267.

including through bribery of an agent or servant of KPMG FAS. *Id.* at ¶¶ 19-20. And it clearly can be inferred from the allegations that IPOC neither authorized the disclosure nor had knowledge that it had occurred. *Id.* at ¶¶ 16-17, 23, 31-32, 37; *see also* IPOC's Opp'n to Rule 9(b) Mot. at 1-2. Courts have found similar allegations sufficient. *Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 344 F. Supp. 2d 936, 945 (M.D. Pa. 2004) (finding that allegations that defendant intentionally provided financial benefits to insurance agents in exchange for recommending defendant to insureds and did so without insureds' knowledge adequately pleaded commercial bribery); *Westlake Plastic Co. v. O'Donnell*, 182 F.R.D. 165, 170-171 (E.D. Pa. 1998) (finding sufficient allegations that defendant was an employee, who without consent of employer, accepted interest in entity to which he directed business, and secretly disclosed confidential information as quid pro quo for interest in another entity). Accordingly, contrary to BGR's assertions, IPOC has sufficiently pleaded numerous wrongful acts underlying its various common law claims.

**IV.    BGR's Arguments Regarding the Computer Fraud and Abuse Act (Count II) are Redundant and Meritless.**

Because BGR raises many of the same points against IPOC's CFAA claim that Diligence did, IPOC hereby incorporates as though fully stated herein pages 4-12 of its Opposition to Diligence Inc.'s Motion to Dismiss (the "12(b)(6) Opp'n") and pages 1-3 of its Sur-Reply ("12(b)(6) Sur-Reply"). IPOC will only address BGR's arguments that go beyond what has already been briefed in this matter.

Like Diligence, BGR does not contest that IPOC has properly alleged that: (1) BGR's actions were intentional; (2) BGR's actions were without authorization; and (3) KPMG FAS' network constitutes a "protected computer" within the meaning of the statute. Instead, BGR opens its attack on IPOC's CFAA claim with some misdirection about IPOC's not pleading a

9

statutory element that is irrelevant to IPOC's claim.  BGR Br. at 8-9.  Then, like Diligence, BGR

invites this Court to adopt an overly cramped reading of the key provisions of the CFAA that

defies the statute's "broad meaning and intended scope."  *Shurgard Storage Ctrs., Inc. v.*

*Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1129 (W.D. Wash. 2000) (citing S. Rep. No.

104-357, at 7-8 (1996)).  BGR argues that IPOC has failed to allege "damage," "loss," and

"access" within the meaning of § 1030.  BGR Br. at 9-18.  None of these arguments has merit.

A.      **BGR's Argument About IPOC's Failure to Plead the Requirements of**
        **§ 1030(a)(2)(C) is Irrelevant Because IPOC's Claim Arises Under**
        **§ 1030(a)(5)(A)(iii).**

As IPOC stated in its 12(b)(6) Opposition, IPOC's claim proceeds under 18 U.S.C.

§ 1030(a)(5)(A)(iii) of the CFAA.  *See* 12(b)(6) Opp'n at 12.  Thus, BGR's argument against

IPOC's satisfaction of § 1030(a)(2)(C) is irrelevant.  *See* BGR Br. at 8-9.

B.      **IPOC Has Adequately Alleged "Damage" Under The CFAA.**

BGR argues that "'damage' [under the CFAA] encompasses only physical harm to the

accessed computer or its content."  BGR Br. at 9.  This assertion echoes Diligence's argument

that the CFAA only recognizes damage to "the computer system itself" (*see* Memorandum in

Support of Diligence Inc.'s Motion to Dismiss at 5-6 (emphasis in original).  BGR concludes

that, because IPOC's damage supposedly "pertain[s] exclusively to the *use* of the information

allegedly obtained from KPMG's computer" that was "leaked to the press," IPOC has not

alleged "damage" under the CFAA.  *Id.* at 11 (emphasis in original).  Like Diligence, BGR is

wrong.

IPOC has already demonstrated why "damage" under the CFAA encompasses more than

"physical harm to the accessed computer."  *See* 12(b)(6) Opp'n at 7-11, discussing *EF Cultural*

*Travel BV v. Explorica, Inc.*, 274 F.3d 577, 585 (1st Cir. 2001) ("Congress's use of the

disjunctive, 'damage or loss,' confirms that it anticipated recovery in cases involving other than

10

purely physical damage"); *Civic Center Motors, Ltd. v. Mason Street Import Cars*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (costs "related to computer impairment or computer damages" are compensable under the CFAA); *Shurgard*, 119 F. Supp. 2d at 1127 (physical damage to the computer or data not required); *Register.com, Inc. v. Verio*, 126 F. Supp. 2d 238, 252 (S.D.N.Y. 2000) (granting a preliminary injunction against the defendant after holding that plaintiff demonstrated damages resulting from costs relating to "repair and lost data and also because of lost good will based on adverse customer reactions"); and S. Rep. No. 104-357, at 11 (defining damage to reach a situation in which an intruder gains protected information even though "neither the computer nor its information is damaged").

Moreover, IPOC's damage claim under the CFAA is not limited to BGR's malicious leak of IPOC's confidential information to the public, although such an act does constitute damage under the CFAA. *See Shurgard*, 119 F. Supp. 2d at 1126-27 (defendant who allegedly "infiltrated the plaintiff's computer network . . . and collected and disseminated the confidential information," damaged plaintiff because although "no data was physically changed or erased . . . an impairment of its integrity occurred."). IPOC alleges that Diligence and/or BGR illegally "accessed one or more computers" (Compl. ¶ 33), "without authorization or in excess of authorization" (*id.*), to obtain "confidential documents and information" about IPOC (*id.* ¶ 20), from "computers used in interstate or foreign commerce or communication" (*id.* ¶ 30). IPOC also alleges that such wrongfully obtained information benefited IPOC's litigation and commercial adversaries (*id.* ¶ 21), causing "damage and loss to IPOC in excess of $5,000" (*id.* ¶ 33). Thus, although BGR's own narrow account of IPOC's allegations still satisfies the CFAA's damage requirement, IPOC pleads an even broader array of recognized statutory damages.

11

BGR's misapplication of case law further underscores the futility of BGR's attack on IPOC's assertion of damages under the CFAA. For example, BGR cites *Resdev, LLC v. Lot Builders Ass'n, Inc.*, 2005 WL 1924743 (M.D. Fla. 2005) to support its argument that "damage" under the CFAA "encompasses only physical harm to the accessed computer or its content" and not harm such as the diminished value of publicized trade secrets. BGR Br. at 9 & n.10. But *Resdev* does not even use the phrase "physical harm," much less limit the scope of the CFAA's damages to harm befalling only "the accessed computer or its content." Moreover, because IPOC's damage claim does not concern the misappropriation of trade secrets, *Resdev*'s holding that "ill-gotten revenues from a trade secret" do not constitute damage under the CFAA is irrelevant. *Resdev*, 2005 WL 1924743, *4; *see also* 12(b)(6) Opp'n at 13-24.

The kind of damages alleged by IPOC also render useless BGR's reliance on *In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001). BGR Br. at 9-10. *DoubleClick* merely denied plaintiff damages for lost attention to advertising and the value of collecting improperly obtained demographic information. Moreover, BGR misquotes *DoubleClick* when it argues that it held that "'damage' is 'direct damage caused by a computer hacker.'" BGR Br. at 10. *DoubleClick* actually stated that "S. Rep. No. 104-357 seems to make clear that Congress intended the term 'loss' to target remedial expenses borne by victims that could not properly be considered direct damage caused by a computer hacker." *DoubleClick*, 154 F. Supp. 2d at 521. *DoubleClick* did not limit "damage" under the CFAA only to harm caused by hackers.

## C.    IPOC Has Adequately Alleged "Loss" under the CFAA.

BGR's argument against the adequacy of IPOC's alleged "loss" under the CFAA rests on its mistaken assertion that IPOC only alleges injuries that "pertain exclusively to the *use* of the information allegedly obtained from KPMG's computer." BGR Br. at 15 (emphasis in original).

12

As demonstrated above, IPOC's Complaint alleges harms other than value derived by BGR and/or Diligence from the use of IPOC's confidential information. Moreover, IPOC does not seek to recover "lost profits" resulting from BGR's and/or Diligence's misconduct, travel costs unrelated to computer investigation or repair, or the cost of tracking down Diligence or BGR. Thus, BGR's reliance on *Nexans Wires S.A. v. Sark-USA*, 166 Fed. Appx. 559 (2d Cir. 2006), *Resdev*, *Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars*, 387 F. Supp. 2d 378 (S.D.N.Y. 2005), and *Tyco Int'l (US) Inc. v. Does, No. 1-3*, 2003 WL 21638205 (S.D.N.Y. 2003) to argue that such costs do not constitute loss under the CFAA is misplaced. *See* BGR Br. at 13-15.

What is relevant, however, is IPOC's allegation that its "loss" consists of an impairment to the integrity of its "confidential documents . . . [and] financial and other business records" (Compl. ¶ 20), that harmed IPOC's competitive advantage (*id.* ¶ 21), causing "damage and loss to IPOC in excess of $5,000" (*id.* ¶ 33). Such harms are squarely recognized "losses" under the CFAA. *See Charles Schwab & Co., Inc.,* 2005 WL 351929, *3 (N.D. Ill. 2005) (plaintiff stated a claim when it alleged that the defendant exceeded his authorized access and acquired confidential information that was later used to the plaintiff's detriment) (citing *George S. May Int'l Co. v. Hostetler,* No. 04 C 1606, 2004 WL 1197395, *3 (N.D. Ill. 2004) (same)); *C.H. Robinson Worldwide, Inc. v. Command Transportation, LLC.*, 2005 WL 3077998, *3 (N.D. Ill. 2005) (allegations of "loss in value of . . . proprietary information that was not previously known to the public" and "loss of competitive advantage" properly alleged loss under the CFAA); *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268, 1324 (S.D. Fla. 2003) (awarding plaintiff $2,090,000 as the value of information unlawfully obtained by unauthorized access to computer), *aff'd in part, rev'd in part*, 138 Fed. Appx. 297 (11th Cir. 2005); *Pacific Aerospace & Electronics, Inc. v. Taylor,* 295 F. Supp. 2d 1188, 1195 (E.D. Wash.

13

2003) (the CFAA facilitates claims against those who "seek a competitive edge through wrongful use of information"). Therefore, because it misrepresents the harm alleged by IPOC, BGR's argument against the adequacy of IPOC's allegation of "loss" under the CFAA fails.

**D.    IPOC Has Adequately Alleged "Access" under the CFAA.**

BGR's argument that IPOC has not adequately alleged that BGR and/or Diligence accessed a KPMG computer is truly bizarre. BGR Br. at 16-18. As BGR admits, IPOC's Complaint alleges that "Diligence and/or BGR . . . accessed . . . one or more KPMG FAS computers." BGR Br. at 16, quoting Compl. ¶ 31; *see also* Compl. ¶ 32 ("KPMG Computers . . . were accessed by Diligence and/[or] BGR . . .), ¶ 33 ("[t]he actions taken by Diligence and/or BGR to illegally access one or more of the KPMG Computers . . . ), and ¶ 34 ("IPOC has standing . . . because of the damage and loss it suffered as a result of the . . . illegal access of one or more of the KPMG FAS Computers . . . ). IPOC even pleaded that BGR and/or Diligence tried to "infiltrate" KPMG FAS's computers." (*Id.* ¶ 19). Because all IPOC had to do in its Complaint is allege that BGR and/or Diligence "intentionally accessed" a KPMG FAS computer, IPOC has done more than adequately allege "access" under the CFAA.

BGR resorts to arguing that IPOC's "access" allegations are somehow deficient because BGR infers that "*a KPMG agent* accessed the KPMG computer" rather than BGR and/or Diligence doing so. BGR Br. at 18 (emphasis in original). This argument again seeks to impose a heightened pleading standard that is inapplicable. When considering a motion to dismiss, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (quoted in *Walker v. Jones*, 733 F.2d 923, 925-26 (D.C. Cir. 1984)). Accordingly, the Court "must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997) (denying motion to dismiss); *Banks v. District of Columbia*, 377 F. Supp. 2d 85, 88

14

(D.D.C. 2005) (same). Thus, BGR's self described "inference" (BGR Br. at 18) concerning how KPMG FAS' protected computers were accessed should be ignored. IPOC's Complaint does not need to specify with particularity how Defendants accessed KPMG FAS' protected computers. This is a question of fact to be established on the merits.

But even if, *arguendo*, BGR were correct that IPOC alleges that "*a KPMG agent accessed the KPMG computer,*" IPOC would have still adequately pleaded "access" under the CFAA. BGR Br. at 18 (emphasis in original). A broad understanding of the term "access" that also prohibits improper computer access through third parties is consistent with the concerns of Congress, which enacted the CFAA to cover any circumstance where an outsider, even through "mere observation," improperly obtains information through use of a computer. S. Rep. 104-357, at 7. Congress understood that technology evolves rapidly and that computers are useful precisely because they are interconnected and easily accessible. Precisely *how* wrongdoers may obtain the types of data that computers can provide would have been impossible to enumerate, but Congress recognized the vulnerability and the temptation to the unscrupulous. To restrict the key statutory term "access" to a single class of conduct—*i.e.* the defendant's own direct access to plaintiff's computers—would be as inconsistent with sensible policy as it would be with the statutory language and precedent. *See, e.g., Shurgard Storage*, 119 F. Supp. 2d at 1128 (holding that plaintiff pleaded improper access where defendants obtained access to plaintiff's proprietary information through a third party) (citing S. Rep. No. 99-432, at 14).

Moreover, although BGR relies on it, *Role Models Am., Inc. v. Jones*, 305 F. Supp. 2d 564 (D. Md. 2004) does not support BGR's argument that access to protected computers cannot be established through third parties under the CFAA. BGR Br. at 18. There, unlike IPOC, plaintiff did "not allege[] that [defendant] 'accessed' [plaintiff's] computers at all, much less

15

'intentionally'." *Jones*, 305 F. Supp. 2d at 566. Instead, the plaintiff in *Jones* merely alleged

that the defendant passively "received information" about plaintiff from an employee of plaintiff

at the time. *Id*. at 567 n.4. Therefore, because "the word 'access,' in this [CFAA] context, is an

active verb," defendant's passive receipt of information about plaintiff from plaintiff did not

constitute access under the Act. *Id*. at 567. Here, by contrast, IPOC has alleged that BGR and/or

Diligence actively accessed IPOC's confidential information when they "used wrongful means,

including impersonation of United States and/or British intelligence agents" (Compl. ¶ 19), to

"infiltrate and/or bribe one or more agents or servants of KPMG FAS" (*id*.), so they could

"illegally access one or more of the KPMG FAS computers" (*id*. ¶ 33), and obtain IPOC's

confidential information. And yet, in response, BGR states that "the mere receipt of those

materials by Diligence or BGR" does not constitute "access" under the CFAA. BGR Br. at 18.

Given IPOC's allegations about how BGR and/or Diligence used shockingly bold misconduct to

access KPMG FAS's computers, BGR's retort merely reveals its desperation to underplay the

egregiousness of its conduct.

## V.    BGR's Arguments Regarding Preemption of Counts I, III-VII Under the D.C. Uniform Trade Secrets Act Defy the Statute and the Case Law.

BGR adds little to Diligence's preemption arguments, so IPOC incorporates by reference

here its Opposition and Sur-Reply arguments establishing that none of IPOC's claims are

preempted by the D.C. Uniform Trade Secrets Act ("UTSA"). *See* 12(b)(6) Opp'n at 13-24;

12(b)(6) Sur-Reply at 13-14. As IPOC has already established, the UTSA preempts only those

claims that "conflict" with the UTSA, and, because none of IPOC's claims assert the existence or

misappropriation of a trade secret, none conflict with the statute and are not preempted.

In addition to adopting Diligence's arguments, however, BGR asserts—without

support—that the UTSA not only preempts IPOC's common law claims, but also renders IPOC's

claims non-cognizable because, according to BGR, "the 'owner' of non-trade secret information has no right to enforce in the first place," and thus, IPOC's claims fail because they are both preempted by, and "deficien[t] . . . under the UTSA." BGR Br. at 21. That is not the law. D.C. courts routinely entertain valid common-law tort actions concerning misappropriation of information that is confidential, but not trade secret. *See, e.g., PM Services Co. v. Odoi Associates, Inc.*, No. Civ.A. 03-1810(CKK), 2006 WL 20382, *36 (D.D.C. Jan. 4, 2006) (refusing to dismiss an intentional interference with business expectancy claim based on, *inter alia*, the allegation that defendant "misappropriated [plaintiff's] confidential and/or proprietary information . . . [because] [u]se of this information . . . would be sufficient to establish intentional interference with [plaintiff's] business expectancy").

A decision issued just weeks ago rejected a "Catch-22" argument like the one BGR asserts:

> The great weight of authority runs contrary to Defendants' assertion. Indeed, Defendants' approach is somewhat paradoxical: they deny that [allegedly misappropriated] Drawing No. 4 meets the definition of a trade secret, but claim that [plaintiff]'s claims of conversion and unjust enrichment are preempted by the UTSA, a statute that only provides relief if there is actual or threatened misappropriation of a "trade secret." In other words, Defendants claim that [plaintiff]'s causes of action are preempted by a statute that grants him no cause of action.
>
> The more appropriate approach is to interpret the UTSA as displacing other remedies to the extent that allegedly misappropriated information constitutes a "trade secret," as that term is defined by the UTSA. In fact, this approach is consistent with the plain language of the UTSA, which provides that "other civil remedies that are not based upon misappropriation of a trade secret" are not preempted. If it is established that Drawing No. 4 is not a trade secret, then it follows that [plaintiff]'s claims of conversion and unjust enrichment will not be based on misappropriation of a trade secret.

*Russo v. Ballard Medical Products*, 2006 WL 2345868, *9 (D. Utah Aug. 10, 2006).

UTSA has no effect on IPOC's common law claims because none of those claims assert misappropriation of trade secrets and none would simultaneously establish a claim for misappropriation of trade secrets.[4] *See, e.g., Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005) ("Trade secrets just have nothing to do with Hecny's principal claims. . . . [I]t is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret. . . . The dominant view is that claims are foreclosed [by UTSA] only when they rest on the conduct that is said to misappropriate trade secrets. The Uniform Law Commissioners' comment to the model act supports this approach . . . This is not a close question."); *Custom Teleconnect, Inc. v. International Tele-Services, Inc.*, 254 F. Supp. 2d 1173, 1182-83 (D. Nev. 2003) (finding no UTSA preemption where "[t]he information to be kept confidential in this case was not a 'trade secret' as defined by UTSA. . . . [This is a case] 'where a plaintiff will be able to assert tort claims, including interference with prospective advantage, that do not depend on the information at issue being deemed a trade secret, and thus are not precluded by the UTSA.'") (citations omitted).[5]

---

[4]    Not even BGR or Diligence argue that the counts of IPOC's Complaint are really trade-secret claims.

[5]    *Accord McKesson Med.-Surgical, Inc. v. Micro Bio-Medics, Inc.*, 266 F. Supp. 2d 590, 600 (E.D. Mich. 2003) (holding that the plaintiff's claim for breach of the duty of loyalty was not preempted by Michigan's UTSA and stating that the statute "only preempts other civil remedies that involve trade secrets"); *Custom Teleconnect, Inc. v. International Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1182-83 (D. Nev. 2003) (rejecting the argument that the UTSA preempted common-law claims where "[t]he information to be kept confidential in this case was not a 'trade secret' as defined by the UTSA" because claims "d[id] not rely solely on facts concerning misappropriation of trade secrets" and thus were not preempted); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 659 (E.D. Va. 2002) ("The plain meaning of the statute, coupled with decisions interpreting similar preemption provisions in the context of a motion to dismiss, make it apparent that, unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of

The three cases BGR cites in a footnote hoping to bolster its preemption arguments just do not apply. BGR Br. at 21 n.20. The holding of *Hauck Mfg. Co. v. Astec Industries, Inc.*, 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004) is merely that, "if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." Because proof of IPOC's non-UTSA claims would not simultaneously establish claims for trade-secret misappropriation, IPOC's claims are not preempted under *Hauck*'s holding. *Hauck*, like other cases cited by BGR and Diligence, but unlike IPOC's Complaint in this case, contained an allegation of trade-secret misappropriation. *See also Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001) (cited in BGR Br. at 21, n.20) (finding unfair competition claim preempted because the "claim would arise from the misappropriation of trade secrets"). And even *Auto Channel* recognized that, "[i]mportantly, however, []UTSA does not preempt all causes of action that have to do with trade secrets." *Id.* (citing as an example, if "the plaintiff demonstrates a further factual basis for fraud or deceit that has as an element the use of trade secrets, those causes of action are not necessarily preempted").[6]

---

relief as preempted by the [Virginia] UTSA."); *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996) ("[i]t is neither necessary nor prudent to preclude all common law claims that are connected with the misappropriation of what a plaintiff claims are trade secrets. Often, a plaintiff will be able to state claims that do not depend upon the information in question qualifying as trade secrets. . . . In addition, a plaintiff may also bring claims that, although involving a trade secret misappropriation issue, include additional elements not necessary for a misappropriation claim under the UTSA."); *Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202, 203-05 (D. Minn. 1988) (holding that claims for interference with contractual relations, conversion, misrepresentation, conspiracy, unjust enrichment, and unfair competition were not preempted by Minnesota's UTSA, because those claims were based upon conduct other than "the mere misuse or misappropriation of trade secrets").

[6]     The third case that BGR cites, *Biocore, Inc. v. Khosrowshashi*, 96 F. Supp. 2d 1221, 1238 (D. Kan. 2000), has been reversed. *See Biocore, Inc. v. Khosrowshahi*, 80 Fed.Appx. 619 (10th Cir. 2003). Moreover, the case does not discuss preemption at all, so it is puzzling why BGR even cited it. *See* BGR Br. at 21 n.20.

Here, IPOC's claims do not concern trade secrets.  Thus, as IPOC has previously urged the Court, BGR and Diligence should not "get a free pass just because none of what [t]he[y] filched is a trade secret." *Hecny*, 430 F.3d at 404.

## VI.    All of IPOC's Common-Law Tort Claims Are Cognizable.

### A.    IPOC Has Adequately Stated a Claim of Tortious Interference With Business Expectancies (Count I).

BGR argues that IPOC's tortious interference with business expectancy claim fails because none of the alleged expectancies are cognizable.  BGR Br. at 22-31.  Ignoring the narrow scope of this Court's review on a Rule 12(c) motion, *see Robinson*, 403 F. Supp. 2d at 47 (court's review is limited to the "facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record"), BGR interjects a number of unsupported assertions that are outside the Complaint to support its argument, including assertions about:

- the purpose of the investigation by the Ministry of Finance of Bermuda (BGR Br. at 25 ("there can be no doubt that the government of Bermuda was investigating IPOC for wrongdoing"));

- the nature of the contractual relationship between IPOC and KPMG FAS, *id*. at 24 ("IPOC's relationship with KPMG was not voluntary or commercial at all");

- the scope of the KPMG's authority in the investigation, *id*. at 30 ("nothing forbade KPMG . . . from having contact with persons outside of IPOC");

- the content of the confidential information that Defendants stole, *id*. at 25 ("IPOC contends that it expected that it would be able to conceal the truthful evidence of its wrongdoing from an international arbitral tribunal"); and

- the effect of disclosure of that information to the Zurich arbitration tribunal, *id*. at 25 ("disclosure prevented IPOC from perpetrating yet another crime").

None of these assertions are properly before this Court now.

BGR cites five cases for the proposition that the claim of tortious interference with business expectancies is limited to expectancies that are purely commercial in nature.  But all of

those cases involved strictly commercial interests, and thus, none gave the ruling court occasion to decide whether tortious interference is confined to expectancies that can be characterized as purely commercial.[7] *See Washington Metropolitan Area Transit Authority v. Quik Serve Foods, Inc.*, 2006 U.S. Dist. LEXIS 24510 (D.D.C. Apr. 28, 2006) (alleging expectancy in sale of plot of land); *Casco Marina Dev., L.L.C. v. Dist. of Columbia Redev. Land Agency*, 834 A.2d 77 (D.C. 2003) (alleging expectancy in assignment of lessor's rights under lease agreement); *Paul v. Howard Univ.*, 754 A.2d 297 (D.C. 2000) (alleging expectancies in contracts to secure or manage research grants to Howard University); *Carr v. Brown*, 395 A.2d 79 (D.C. 1978) (alleging expectancy in the development of real estate). To the contrary, as discussed on page 25 of IPOC's Rule 12(b)(6) Opposition, courts have held that claims for tortious interference with business expectancies may be "made applicable to some noncommercial relationships and prospects." *Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999); *see also Fox v. Country Mutual Insurance Co.*, 7 P.3d 677, 690 (Or. Ct. App. 2000) ("[W]hile courts have expanded the tort to protect additional types of relationships, its purpose has been constant: To protect the integrity of voluntary economic relationships, *both commercial and noncommercial* relationships are protected). IPOC incorporates by reference here its 12(b)(6) Sur-Reply at 8-11.

In any event, IPOC's Complaint contains numerous allegations that Defendants' wrongful conduct interfered with IPOC's commercial interests. For example, IPOC alleges:

- that "IPOC has been engaged in worldwide court and arbitration proceedings since August 2003 to recover a unique and very valuable 25.1% stake in the Russian mobile telephone operator, MegaFon," Compl. at ¶ 11;

---

[7]     Indeed, in one of the cases, the court never even reached the issue of the validity of the plaintiff's alleged business expectancy, dismissing plaintiff's claim on statute of limitations grounds. *Primedical, Inc. v. Allied Investment Corp.*, No. 90-1802, 1994 U.S. Dist. LEXIS 4517 (D.D.C. Mar. 30, 1994).

- that "[s]ubsequent to the initiation of these proceedings by IPOC, IPOC's litigation adversaries LVFG and Alfa, on information and belief, embarked on a plan to have IPOC's corporate charter terminated by the government of Bermuda and, in furtherance of that plan, instigated an investigation of IPOC by the Bermuda Minister of Finance," *id.* at ¶ 13;

- that Diligence, acting on behalf of BGR, obtained through wrongful means confidential information about IPOC and the Bermuda investigation and disseminated that information to IPOC's litigation adversaries and commercial rivals, *see id.* at ¶¶ 20-21;

- that the confidential information was obtained for the purpose of advancing rival business interests, *see id.* at ¶¶ 38, 48;

- that IPOC's litigation adversaries and commercial rivals, in fact, used this confidential information by, among other things, including it in submissions to the Zurich arbitral tribunal and leaking it to the press, *see id.* at ¶ 21; and

- that "IPOC's expectancies that the Zurich arbitration and the Investigation would be conducted in an evenhanded and impartial manner, that materials provided by IPOC to KPMG FAS would be used solely to further the Investigation and not to further the interests of IPOC's litigation adversaries, and that IPOC's charter would not be attacked by use of improper and illegal means, including bribery, fraud and deception," *id.* at ¶ 27.

Construing these allegations in the light most favorable to IPOC, as this Court must, *see Robinson*, 403 F. Supp. 2d at 47, they adequately describe expectancies of a commercial nature with which Defendants' wrongful conduct has interfered.

BGR also speculates that IPOC's expectancies could never ripen into an enforceable contractual relationship because, BGR asserts, it hired Diligence to steal information that evidenced misconduct by IPOC, and courts will not enforce contracts to conceal evidence of wrongdoing. BGR Br. at 24-27. This argument, of course, improperly relies on irrelevant, extraneous facts and innuendo that are outside the Complaint. Whether the information BGR hired Diligence to steal evidenced misconduct by IPOC is a factual issue that may not be

considered in deciding BGR's motion. *See Robinson*, 403 F. Supp. 2d at 47. Moreover, this issue is entirely irrelevant to IPOC's claim.[8]

BGR's claim that IPOC's expectation cannot ripen into an enforceable contract is also based upon a faulty premise. *See G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 535-537 (S.D.N.Y. 2002) (noting that in the event tortious interference with contract claim failed because underlying contract was unenforceable, alternate claim of tortious interference with economic advantage would be viable); *Biro v. Hirsch*, 771 A.2d 129, 136 (Conn. App. Ct. 2001) ("'[P]roof of interference with even an unenforceable promise is enough.'") (quoting *Jones v. O'Connell*, 458 A.2d 355 (Conn. 1983)).

BGR also argues that IPOC's expectations could never ripen into an enforceable contract because courts will not enforce contracts to conceal wrongdoing. BGR Br. at 24-27. This is another of BGR's specious and inappropriate factual contentions that have no place in a motion for judgment on the pleadings. Moreover, none of the cases BGR cites can support the absurd proposition that defendants are privileged to engage in wrongful conduct merely because the information it stole is later useful to their clients.

BGR cites three irrelevant cases holding that contracts barring the reporting of crimes or the disclosure of information to enforcement authorities are unenforceable. *Fomby-Denson v. Dep't of the Army*, 247 F.3d 1366 (Fed. Cir. 2001); *E.E.O.C. v. Astra USA, Inc.*, 94 F.3d 738 (1st Cir. 1996); *Van Housen v. Monico*, 378 A.2d 609 (Conn. Super. Ct. 1976). This case, however, is not about protecting information from disclosure to any enforcement authorities, nor did BGR and Diligence steal the information to give it to authorities. On the contrary, the Complaint alleges that Diligence *impersonated* government agents to get the information. IPOC *had*

---

[8]    BGR's effort to interject truth as a defense is particularly misplaced given that IPOC's tortious interference claim is not based on allegations of defamatory conduct.

*already provided* that information to KPMG FAS, which was retained by the Bermuda Minister of Finance to conduct an investigation, and Defendants used improper means to misappropriate information *in the possession of KPMG FAS*. *See* Compl. at ¶¶ 15-16. The information was stolen from the hands of enforcement authorities.[9]

More importantly, unlike any of the cases BGR cites, public policy in this case *clearly favors* enforcement of IPOC's expectancies. The principle that animates the holdings in BGR's cited cases is that "courts may not enforce contracts that are contrary to public policy." *Fomby-Denson*, 247 F.3d at 1374 (citing *McMullen v. Hoffman*, 174 U.S. 639 (1899)); *see also Branzburg v. Hayes*, 408 U.S. 665, 696 (1972); *Lachman*, 457 F.2d at 854. Here, unlike the cases cited by BGR, there are at least two countervailing public policies arguing for safeguarding IPOC's expectancy: (1) Bermuda's strongly expressed public policy favoring the maintenance of the confidentiality of investigations conducted by the Bermuda Ministry of Finance, *see* Compl. at ¶ 14 (quoting sections of the Bermuda Companies Act of 1981); and (2) the public interest in discouraging the use of fraud, deception and bribery, among other things, to infiltrate and influence a government investigation and misappropriate confidential information for commercial and litigation purposes, *see* Compl. at ¶¶ 18-21.

---

[9]     BGR also cites two cases in which courts have barred a claim for breach of confidentiality agreement or confidential relationship against a party who disclosed confidential evidence of wrongdoing by the plaintiff. *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850 (10th Cir. 1972); *Willig v. Gold*, 171 P.2d 754 (Cal. Ct. App. 1946). These cases are distinguishable because, unlike Diligence and BGR, the defendants were parties to the confidentiality agreement or relationship, whereas here, it is a third party that is alleged to have stolen information that may have been useful to its clients. *See, e.g.*, Compl. at ¶¶ 15-18. In any event, it would be a dangerous extension of *Lachman* and *Willig* to hold that a party is entitled to ignore formal, regulated discovery procedures and simply help itself to any useful information in the possession of a litigation adversary.

BGR's reliance on *United States v. Farrell*, 606 F.2d 1341 (D.C. Cir. 1979), is perplexing. *Farrell* is a criminal case which stands for the unremarkable and irrelevant proposition that a court will not return $5,000 paid by a convicted criminal to an undercover agent in an effort to purchase heroin during an undercover sting operation.

Finally, BGR argues that there is no recognized business expectancy in the integrity or outcome of adversarial proceedings or a government investigation, and thus, IPOC's expectancies in the fairness of the arbitration and investigatory processes fail.[10]  BGR Br. at 27-31.  Yet, BGR's cited cases do not articulate such a bright-line rule.  To the contrary, the primary case upon which BGR relies, *Carr v. Brown*, clearly acknowledged that plaintiffs can have reasonable expectancies in governmental actions:

> We emphasize this case is *not* a case involving alleged interference with business due to malicious *official* refusal to issue necessary permits. . . .  Nor are we dealing in this case with a claim by the plaintiff that he has an expectancy of *doing business with* a governmental body and that expectancy is unjustifiably interfered with by the defendant.

395 A.2d at 84 (emphases in original); *see also Casco Marina Dev.*, 834 A.2d at 84 (holding that agency's withholding of consent to an assignment of a lease merely to leverage a better bargain for D.C. would constitute intentional interference).[11]  There, the D.C. Court of Appeals affirmed the lower court's dismissal of a malicious interference claim brought by a real estate developer who asserted that he had been injured by a nine-month delay in approval of his zoning application, which he claimed was caused by defendants' malicious opposition to his application. The *Carr* court's decision did not, as BGR would have this Court believe, focus on the governmental nature of zoning approval, but on the unreasonableness of plaintiff's alleged expectancies:

---

[10]    This argument restates certain arguments already raised by Diligence in its Rule 12(b)(6) motion. Accordingly, IPOC incorporates by reference its responses to those arguments.  12(b)(6) Opp'n. at 26-27; 12(b)(6) Sur-Reply at 6-7.

[11]    As IPOC also argued in its Sur-Reply, to the extent that *Carr* suggests that a claim for tortious interference with business expectancies cannot be contingent upon decisions of governmental bodies, it has been overruled *sub silentio* by the D.C. Court of Appeals' decision in *Casco Marina*. *See* 12(b)(6) Sur-Reply at 6.

> An applicant such as appellant in this case cannot expect upon the basis of any experience that his application will be automatically approved within a specified period of time. Appellant cannot contend that because he encounters opposition to his application, some of which may be malicious, that the opponent is thereby interfering with his "expectancies" so as to constitute a tort. Rather the person who is "interfering" with the applicant's petition for an alley closing and a zoning exception is participating in procedures fixed by statute which specifically invite opposition.

*Id.*

*Carr* and two other cases cited by BGR stand for the proposition that courts are unwilling to find parties liable in tort for accepting an invitation to participate in public comment proceedings before public bodies when those efforts result in harm to another party's commercial interests. *Carr*, 395 A.2d at 84 (defendants alleged to have interfered by "participating in procedures fixed by statute which specifically invite opposition"); *Gordon v. Noel*, 356 N.W.2d 559, 563 (Iowa 1984) (police officers alleged to have interfered by testifying "at the request of the public entity as part of its administrative process"); *Matossian v. Fahmie*, 101 Cal. App. 3d 128, 137 (Cal. Ct. App. 1980) ("[W]here, as here, a statute expressly invites or allows interested persons to protest, or give their views or opinions concerning, proposed or requested governmental administrative action, such persons singly or in combination have a Lawful right to do so. . . ."). Yet, the same concerns about chilling a defendant's First Amendment right to petition the government do not arise here where Defendants are not claiming to have been invited to participate in the Bermuda investigation. *See Matossian*, 101 Cal. App. 3d at 136 ("'[I]t would be destructive of rights of association and of petition to hold that groups with common interests may not . . . use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-à-vis their competitors.'") (quoting *California Transp. v. Trucking Unlimited*, 404 U.S. 508, 510-511 (1972)). Indeed, far from inviting Defendants' participation,

26

KPMG FAS brought suit against Defendants based on their wrongful acts in obtaining the confidential information. *See* Compl. at ¶ 23.

Further, as IPOC argued in response to Diligence's Rule 12(b)(6) motion, *Fox v. Country Mutual Insurance* is factually distinguishable from the instant case and is inconsistent with decisions from this and other jurisdictions. *See* 12(b)(6) Opp'n at 26; 12(b)(6) Sur-Reply at 7. *Democratic State Comm. of the Dist. of Columbia v. Bebchick*, 706 A.2d 569 (D.C. 1998), is likewise distinguishable.[12]  There, the plaintiffs alleged that an attorney had committed tortious interference with prospective economic advantage by obtaining, at plaintiffs' expense, an appointment from the D.C. Circuit to represent a trust company.  Prior to bringing suit in state court, plaintiffs had challenged the appointment in the D.C. Circuit and asserted in the later state court action that the federal court had mischaracterized the course of events.  Declining to entertain plaintiffs' "unacceptable end-run around the D.C. Circuit," the court held that it would take at face value the D.C. Circuit's order, noting that all judicial orders come with a strong presumption of regularity.  *Id.* at 574.  In other words, in *Bebchick*, the state court deferred to the federal court's characterization of whether, as a factual matter, there had been any irregularities in the proceedings.  Here, however, IPOC's expectancies are not limited to irregularities in the proceedings, and to the extent they do rely on such irregularities, there is nothing in the Complaint to suggest that KPMG FAS or the Bermuda Ministry of Finance has denied their existence.  To the contrary, the Complaint specifically refers to a related lawsuit filed by KPMG FAS against Defendants based on the same wrongful conduct. *See* Compl. at ¶¶ 2, 20, 23.

---

[12]    Even if it were not, the proposition for which BGR cites *Bebchick* is contrary to *Casco Marina*, a decision by the same court decided five years after *Bebchick*.

In sum, BGR fails to establish that the expectancies alleged in IPOC's Complaint fall outside the realm of expectancies protected by tort law. Accordingly, BGR's request to dismiss Count I of the Complaint should be denied.

**B.    IPOC Has Adequately Stated A Claim of Procuring Information by Improper Means (Count III).**

Once again echoing Diligence's arguments, BGR asserts that IPOC's claim of procuring information by improper means fails to state a claim because it purportedly is not recognized by D.C. law. IPOC incorporates by reference here its arguments in 12(b)(6) Opp'n at 27-29, and 12(b)(6) Sur-Reply at 7-9.

As Diligence did, BGR cites *Bouchet v. National Urban League,* 730 F.2d 799 (D.C. Cir. 1984) for the proposition that a federal court cannot create a new D.C. common-law cause of action. But that case does not hold that the tort of procuring information by improper means does not exist under D.C. law. Rather, in *Bouchet,* the plaintiff asked the court to adopt a "self-styled" tort, but the plaintiff did not cite any authority from any jurisdiction that recognized the cause of action. By contrast, IPOC here has established that the tort of procuring information by improper means is grounded in longstanding common law, as recognized by the RESTATEMENT OF TORTS and cases from several jurisdictions.[13] *See* 12(b)(6) Opp'n at 27-29, and 12(b)(6) Sur-Reply at 7-9.

---

[13]    Having no answer to the fact that other jurisdictions recognize the tort of procuring information by improper means even after adoption of the UTSA, BGR simply calls the cases an "aberration." Far from an "aberration," however, these cases recognize that "[a] cause of action for misappropriation of confidential business information exists when '[o]ne who, for the purposes of advancing a rival business interest, procures by improper means information about another's business.'" *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.,* 717 F. Supp. 1565, 1576 (N.D. Ga. 1989) (quoting RESTATEMENT OF TORTS § 759).

In Count III of the Complaint, IPOC does not ask the court to recognize a new cause of action. *See* RESTATEMENT (1ST) OF TORTS § 759. BGR suggests that IPOC's reliance on the first RESTATEMENT is invalid because § 759 was not included in the second RESTATEMENT. But BGR has no D.C. authority to back up its suggestion. Rather, D.C. courts recognize causes of action based on both versions of the RESTATEMENT. *See Schwartz v. Franklin National Bank*, 718 A.2d 553, 556-57 (D.C. 1998) ("We conclude that where there is no existing law in this jurisdiction . . . [t]he Restatement is a recognized source of causes of action.") (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 3, at 17 (5th ed. 1984)). Moreover, even after the second RESTATEMENT was published, the D.C. courts continued to rely upon § 759 of the first RESTATEMENT, observing that "[r]espect for sensitive commercial information has also enjoyed a long tradition at common law. The RESTATEMENT ON TORTS recognized that '[o]ne who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information.'" *Tavoulareas v. Washington Post Co.*, 724 F.2d 1010, 1018 (D.C. Cir.) (quoting RESTATEMENT (1ST) OF TORTS § 759), *on reh'g*, 737 F.2d 1170 (D.C. Cir. 1984).

BGR also argues that IPOC's reliance on the first RESTATEMENT is invalid because a court in Alabama stated 26 years ago that causes of action based on §§ 757 and 759 of the first RESTATEMENT are now governed by "legislation." BGR Br. at 36 (citing *Avco Corp. v. Precision Air Parts, Inc.*, 1980 U.S. Dist. LEXIS 16413 (M.D. Ala. Sept. 4, 1980)). BGR suggests that this means the UTSA preempts common-law causes of action based on RESTATEMENT § 759. BGR does not inform the court, however, that the "legislation" that the Alabama decision referred to is the Copyright Revision Act of 1976, a statute that not even BGR

29

or Diligence contends has any bearing on this case. *See Avco*, 1980 WL 1173, at *3. *Avco* is

thus inapposite and does not support BGR's suggestion that the UTSA preempts causes of action

based on § 759 of the RESTATEMENT, even though it is the only authority that BGR cites for this

proposition. As already discussed, the UTSA does not preempt any of IPOC's claims. *See*

discussion *supra* and 12(b)(6) Opp'n at 13-24, 12(b)(6) Sur-Reply at 13-14.

Notably, BGR does *not* contend that anything about IPOC's Count III is inadequately

pleaded. Because IPOC has adequately pleaded Count III, it should not be dismissed for any of

the reasons advanced by BGR.

### C.    IPOC Has Adequately Stated A Claim of Tortious Interference With Contractual Relations (Count IV).

BGR begins its attack on Count IV by rehashing its flawed argument that the contract

between KPMG FAS and IPOC to keep information strictly confidential is void on public policy

grounds. BGR Br. at 31. As IPOC already explained, however, the true public policy in issue

here is the policy against the kinds of tortious actions that BGR and Diligence took by posing as

government intelligence agents in order to infiltrate a confidential investigation and obtain

information that they had no right to possess, acting as lackeys for IPOC's business and litigation

rivals.

In any event, BGR's argument that the contract between KPMG FAS and IPOC was void

on public policy grounds cannot be determined at the pleading stage. "Such a claim is in essence

an affirmative defense of illegality, that, under the Federal Rules of Civil Procedure should be

raised in the answer only." *IHS Acquisition XV, Inc. v. Kings Harbor Care Ctr.*, 1999 WL

223152, *1 (S.D.N.Y. April 16, 1999) (citing Fed. R. Civ. P. 8(c)). And, as discussed above,

another reason its argument must fail is that BGR relies on facts and innuendo that fall outside

the four corners of the Complaint. *See id.* at *2.

The remainder of BGR's argument is just another rehash. Like Diligence, BGR asserts that IPOC's tortious interference with contractual relations claim must fail because "there was no consideration" to support the contract. BGR Br. at 32-35.[14] IPOC incorporates by reference here its arguments in 12(b)(6) Opp'n at 30-31, and 12(b)(6) Sur-Reply at 9-10.

BGR also relies on *EDM & Assocs., Inc. v. GEM Cellular*, 597 A.2d 384, 388 (D.C. 1991), a case that observed, "an action for interference with contractual relations will lie only if the contract allegedly interfered with is a lawful one." *See* BGR Br. at 32. But like most of the cases that BGR cites, *EDM & Assocs.* did not analyze the propriety of dismissing a claim on the pleadings. Rather, the case was decided on its merits after "extensive discovery." 597 A.2d at 386. Likewise, BGR cites *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1306 (D.C. Cir. 2002), but that case expressed no opinion as to a tortious interference claim was adequately pleaded. *See* BGR Br. at 32.

As Diligence did, BGR relies on the Bermuda Companies Act of 1981 to assert that IPOC has "pleaded itself out of court" because it was under a pre-existing obligation to furnish information to KPMG FAS and pay its costs, and KPMG FAS was under an obligation to keep the information confidential, thus no consideration supported a contract between KPMG FAS and IPOC. As IPOC established in its 12(b)(6) Sur-Reply Brief, however, BGR's simplistic arguments overlook that IPOC's Complaint alleges that KPMG FAS and IPOC had *both* "statutory *and contractual* understandings of confidentiality." Compl. ¶ 17 (emphasis added). Accordingly, IPOC may come forward with proof that it went beyond its statutory obligations or

---

[14]     BGR relies on *Littlepage v. Neale Pub. Co.*, 34 App. D.C. 257, 1910 WL 20750 (D.C. Cir. 1910), *Hopkins v. Atkins*, 637 A.2d 424 (D.C. 1993), and *Norris v. Green*, 656 A.2d 282 (D.C. 1995) for the unremarkable proposition that a contract must be supported by adequate consideration. *See* BGR Br. at 32 & n.28. None of these cases concerned a tortious interference with contractual relations claim, nor, obviously, did any case discuss the adequacy of pleading such a claim.

gave up a statutory entitlement in consideration for KPMG FAS's return promise that formed the basis of its contract regarding confidentiality. Such consideration is valid notwithstanding a pre-existing duty. *See, e.g., GLM P'ship v. Hartford Cas. Ins. Co.*, 753 A.2d 995, 1000 & n.10 (D.C. 2000) ("There is sufficient consideration for a promise if the promisee forgoes some advantage or benefit, or parts with a right which he might otherwise assert. A promisee's surrender of a privilege which he has a legal right to exercise or assert is sufficient consideration for a promise, since *it is a legal detriment irrespective of whether it is an actual detriment or loss to him.*") (quoting 17A AM.JUR.2D, *Contracts* § 151) (emphasis added by the D.C. Court of Appeals).

BGR asserts that the adequacy of consideration in a tortious interference with contractual relations claim is an issue that the Court should determine at the pleadings stage. *See* BGR Br. at 35 n.29. But *none* of the cases that BGR cites supports this notion. BGR cites *Dornan v. Royal Motors, Inc.*, 271 A.2d 402, 403 (D.C. 1970), for the proposition that adequacy of consideration is "a mixed question of fact and law." But *Dornan* was a breach of contract case that was decided on its merits after a trial, and says nothing about the adequacy of pleading a tortious interference count. BGR's citation to *King v. Industrial Bank of Washington*, 474 A.2d 151, 156 (D.C. 1984) is even less helpful to BGR's cause. There, the court *rejected* a defendant's argument that consideration was lacking. *Id.* *King* also involved neither a claim of tortious interference nor the issue of adequacy of a complaint—the case was decided after discovery and the presentation of evidence in connection with a summary judgment motion. *Belfiore v. B. J. Crivella, Inc.*, 60 A.2d 542, 544 (D.C. 1948) is equally inapposite, as it involved a motion for judgment notwithstanding the verdict after a jury trial on a claim to enforce a promissory note. Adequacy of a pleading of tortious interference likewise had nothing to do with *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058, 1060 (D.C. Cir. 2002), a case that involved the jurisdiction

of the Department of Agriculture Board of Contract Appeals under the Contract Disputes Act, 41 U.S.C. §§ 601-13.

None of BGR's inapposite cases establish that the adequacy of consideration is an issue that the Court can and should decide on a motion to dismiss a tortious interference claim at the pleadings stage, because the opposite is true. IPOC meets its burden of pleading by alleging the mere "existence of a contract." *Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47, 51 n.6 (D.C. 1991). Issues of consideration "are issues of fact which cannot be decided here on a motion to dismiss." *Tuff-N-Rumble Mgt., Inc. v. Sugarhill Music Pub. Inc.*, 8 F. Supp. 2d 357, 361 (S.D.N.Y. 1998); *see also National Educ. Assoc.-R.I. v. Retirement Bd. of R.I. Employees' Retirement Sys.*, 890 F. Supp. 1143, 1159 (D.R.I. 1995) (at the pleadings stage, "whether or not that contract *exists* is an entirely different question from whether a contract is *enforceable*. . . . adequacy of consideration go[es] to the latter question [and] . . . cannot be decided . . . on a motion to dismiss"); *accord Stanford v. Kraft Foods, Inc.*, 88 F. Supp. 2d 854, 856 (N.D. Ill. 1999) ("[b]ecause it is possible that [plaintiff] will be able to demonstrate the existence of such 'legally enforceable contracts,' we deny the motion to dismiss.") (citations omitted). The Court should thus deny BGR's motion with respect to Count IV.

### D.    IPOC Has Adequately Stated A Claim of Unfair Competition (Count V).

BGR argues a number of grounds for dismissing IPOC's unfair competition claim. The first is a reprise of BGR's familiar refrain that the information Diligence stole evidenced IPOC's involvement in a criminal enterprise, and thus, it cannot have been unfair for Defendants to have prevented IPOC from concealing that information from its litigation adversaries and the Zurich arbitral tribunal. BGR Br. at 38. Like other occasions on which it has sung this tune, however, BGR cites no support for the proposition that so long as information is useful to a party or its clients, all means of obtaining that information are within the bounds of commercial morality. In

33

any event, as noted above, this truth-as-a-defense argument seeks to interject facts and innuendo that are outside of the pleadings and, thus, is not proper.

BGR also asserts that Defendants' conduct is not the type of wrongful conduct that constitutes unfair competition. In doing so, BGR too narrowly defines what may constitute unfair competition. As discussed in IPOC's opposition to Diligence's Rule 12(b)(6) motion, there are an "'incalculable variety' of illegal practices falling within the unfair competition rubric." *Roy Export Co. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982). The tort of unfair competition has been "broadly described as encompassing 'any form of commercial immorality,' . . . or simply as 'endeavoring to reap where [one] has not sown.'" *Blank v. Pollack*, 916 F. Supp. 165, 173 (N.D.N.Y. 1996) (quoting *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 239 (1918)). Under D.C. law, "[u]nfair competition is not defined in terms of specific elements, but by the description of various acts that would constitute the tort if they resulted in damage." *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001).

BGR does not argue—nor can it—that the allegations in the Complaint fail to allege conduct on Defendants' part that was commercially immoral or that Defendants and their clients endeavored to reap what they had not sown. Rather, BGR cites a number of cases that, it claims, limit the categories of wrongful conduct that can constitute unfair competition. For example, BGR quotes a passage by the D.C. Court of Appeals in *B&W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982). BGR Br. at 39. That passage provided a lengthy list of wrongful acts that may constitute unfair competition, including defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, false advertising or deceptive packaging likely to mislead customers into believing

34

goods are those of a competitor. The Complaint contains allegations of conduct by Defendants that fall within several of these proscribed categories.[15] As for the other cases BGR cites, only one could arguably be said to circumscribe the field of acts constituting unfair competition, *O'Brien v. Westinghouse Elec. Corp.*, 293 F.2d 1 (3d Cir. 1961).[16] And even *O'Brien* defined the tort in broad terms, stating that "[i]t has long been held that the doctrine of unfair competition extends to the misappropriation for the commercial advantage of one person of a benefit or a property right belonging to another," and holding that unfair competition does not even require proof of actual competition between the parties. *Id.* at 13-14.

BGR proceeds to assert that IPOC's claims are limited to instances of interference with business expectancies, commercial bribery and intimidation, and argues that the allegations in the Complaint do not sufficiently allege those types of wrongful acts. BGR Br. at 39-40. This argument fails for a number of reasons, including the fact that the alleged wrongful conduct does not just consist of acts of tortious interference, commercial bribery, and intimidation. *See, e.g.,* Compl. ¶ 19 (alleging that Defendants used means such as "impersonation of intelligence agents,

---

[15]    *See, e.g.*, Compl. at ¶ 13 (alleging that Defendants' conduct furthered the "plan to have IPOC's corporate charter terminated by the government of Bermuda"), ¶ 19 (alleging that Defendants used means such as "impersonation of intelligence agents, fraud and deception"), ¶ 21 (alleging that Defendants disclosed the information to clients who "leaked portions of the misappropriated Draft Report to the press"), ¶ 31 (alleging that Defendants accessed without authorization plaintiff's confidential information), ¶¶ 46-47 (alleging that Defendants used "bribery, deceit and other misconduct to misappropriate IPOC's business information" and that the information "benefit[ed] IPOC's litigation adversaries and commercial rivals"), ¶ 48 (alleging that wrongful conduct included interference with the investigation, intimidation of employees and agents of KPMG FAS, impersonation of intelligence agents, and bribery).

[16]    One of the cases cited by BGR is actually a federal Lanham Act case, *Blinded Veterans Assoc. v. Blinded American Veterans Foundation*, 872 F.2d 1035 (D.C. Cir. 1989), and, thus, is irrelevant to IPOC's state common-law unfair competition claim. The other three decisions are silent as to the types of conduct that fall outside of the realm of unfair competition and, at best, merely confirm that the particular wrongful conduct at issue constituted unfair competition. *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619 (9th Cir. 1999); *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407 (D.D.C. 1988); *Ruder & Finn Inc. v. Seaboard Surety Co.*, 422 N.E.2d 518 (N.Y. 1981).

fraud and deception"), ¶ 21 (alleging that Defendants disclosed the information to clients who "leaked portions of the misappropriated Draft Report to the press"), ¶ 23 (alleging that Diligence used improper means to attempt to influence the Bermuda investigation).

Moreover, contrary to BGR's assertion, IPOC's allegations of tortious interference, commercial bribery, and intimidation are sufficiently pleaded. First, for the reasons set forth in Section VI.A. above, BGR's argument that IPOC has failed to allege recognized business expectancies reflects a misunderstanding of both the law and the allegations in the Complaint.

Second, BGR claims that "commercial bribery" requires bribery of one's own employees or agents or the employee or agents of a party with whom plaintiff has a commercial relationship that interferes with one's cognizable commercial interests. Yet, commercial bribery is not so limited and encompasses the very conduct alleged in the Complaint. In support of its argument, BGR cites two cases, *JSG Trading Corp. v. Dep't of Agriculture*, 235 F.3d 608 (D.C. Cir. 2001); and *Fedway Assocs., Inc. v. United States Treasury, Bureau of Alcohol, Tobacco & Firearms*, 976 F.2d 1416 (D.C. Cir. 1992). Those decisions involve interpretations of specific provisions in statutes enforced by the Department of Agriculture and the Bureau of Alcohol, Tobacco and Firearms and have no application to commercial bribery as a predicate to a common-law unfair competition claim.[17]

BGR also cites *General Elec. Co. v. Lyon*, 894 F. Supp. 544 (D. Mass. 1995), in asserting that the commercial bribery theory of unfair competition is limited to acts that interfere with a cognizable commercial interest. BGR Br. at 41. It is clear from *Lyon* that the Massachusetts

---

[17]    The District of Columbia does not have a commercial bribery statute, but it is interesting that BGR neglects to cite the statutes of other states that do. Many of these statutes are not limited to bribery of employees and agents or bribery that interferes with a plaintiff's commercial affairs. *See, e.g.*, Ala. Code § 13A-11-120; La. Rev. Stat. Ann. § 14:73; Minn. Stat. § 609.86; Miss. Code Ann. § 97-9-10; N.H. Rev. Stat. Ann. § 638:7; N.D. Cent. Code § 12.1-12-08; 18 Pa. Cons. Stat. Ann. § 4108; S.D. Codified Laws § 22-43-1; 7 Tex. Penal Code Ann. § 32.43.

unfair competition statute there at issue, like common-law unfair competition in D.C., is not limited to a narrow range of conduct, but proscribes any manner of conduct that strays from established standards of fairness.  894 F. Supp. At 551 ("Even the most jaded denizen of the rough and tumble world of commerce, however, would raise an eyebrow at a company that spread false rumors, hired a consultant to harass former employees after assuring them that there would be no reprisal, and exerted improper influence on a third party to force it to terminate a business relationship with another company.").

Finally, BGR asserts that IPOC's allegations of intimidation are flawed, because the intimidation "must be directed toward the agent of an entity that transacts business with the plaintiff or an agent of the plaintiff itself."  BGR Br. at 41.  BGR cites two decisions in which courts intimated that harassment of a competitor's employees or one's own former employees constitutes unfair competition.  *Dolphin Tours, Inc. v. Pacifico Creative Svcs., Inc.*, 773 F.2d 1506, 1511 (9th Cir. 1985); *General Elec. Co. v. Lyon*, 894 F. Supp. 544, 551 (D. Mass. 1995). Neither decision discussed the types of intimidation that might constitute unfair competition. Indeed, neither case even used the word "intimidation" to describe the defendant's alleged conduct.  More importantly, those two decisions do not hold, as BGR misleadingly suggests, that only intimidation that is directed at the plaintiff or an agent with whom it transacts business may constitute unfair competition.

In sum, IPOC has sufficiently alleged unfair competition, and BGR's arguments for limiting the types of conduct that may constitute unfair competition are unsupported.

### E.    IPOC Has Adequately Stated A Claim of Civil Conspiracy (Count VI).

Like Diligence, BGR argues that IPOC's civil conspiracy count fails because Counts I-V of the Complaint purportedly fail.  BGR Br. at 42-43.  For the reasons explained above and in IPOC's Opposition and Sur-Reply to Diligence's Rule 12(b)(6) motion (incorporated by

reference here), all of IPOC's claims are cognizable and none should be dismissed. Also like Diligence, BGR suggests that IPOC's claim under the CFAA (Count II) alone cannot be the basis for a civil conspiracy claim. BGR Br. at 43 n.38. But the D.C. courts have never held that statutory torts are excluded from the kinds of unlawful activity that can form the basis of civil conspiracy. Indeed, in *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 739 (D.C. 2000), the D.C. Court of Appeals simply observed that a 1988 New York decision had so held, but the D.C. court did not reach the question. And even cases from New York are not consistent in holding statutory torts outside the conduct that can form the basis for civil conspiracy. A subsequent decision from New York refused to hold that "a cause of action for civil conspiracy may be linked to an underlying common law tort, but may not be linked to an underlying tort having a statutory basis." *Varela v. Flintlock Const., Inc.*, 2002 WL 342657, *3 (S.D.N.Y. 2002). Neither BGR nor Diligence has cited any authority from D.C. mandating exclusion of statutory torts as the basis for civil conspiracy.

### F.    IPOC Has Adequately Stated A Claim of Unjust Enrichment (Count VII).

BGR asserts that IPOC's unjust enrichment claim fails because its other claims purportedly fail. BGR Br. at 44. But for the reasons recited above and in IPOC's Opposition and Sur-Reply to Diligence's Rule 12(b)(6) motion, all of IPOC's claims are cognizable and none should be dismissed.

BGR also argues that IPOC's unjust enrichment claim fails because IPOC purportedly does not adequately plead that it conferred a benefit on Diligence and BGR, but rather that IPOC's business and litigation adversaries paid BGR and Diligence to infiltrate the KPMG FAS investigation and steal confidential information about IPOC. BGR Br. at 44. The doctrine of unjust enrichment is equitable, and "every unjust enrichment case is factually unique, for whether there has been unjust enrichment must be determined by the nature of the dealings

38

between the recipient of the benefit and the party seeking restitution, and those dealings will necessarily vary from one case to the next." *In re Lorazepam & Clorazepate Antitrust Litigation*, 295 F. Supp. 2d 30, 51 (D.D.C. 2003) (quoting *BCCI Holdings (Luxembourg) Societe Anonyme v. Khalil*, 56 F. Supp. 2d 14, 66 (D.D.C. 1999)). Alleging that defendants received benefits at plaintiff's expense is sufficient to meet the burden of pleading unjust enrichment. *See Emerine v. Yancey*, 680 A.2d 1380, 1383 (D.C. 1996) ("To recover on a theory of unjust enrichment, . . . the plaintiff must show that [the defendant] was unjustly enriched at his expense and that the circumstances were such that in good conscience [the defendant] should make restitution").

As pleaded in IPOC's Complaint, BGR and Diligence earned fees in exchange for harming IPOC. Based on these allegations, the Court can conclude that IPOC has adequately pleaded that it would be inequitable for BGR and Diligence to retain the fees it earned. Indeed, this Court has rejected an argument similar to the one that BGR alleges. In *United States v. Bouchey*, 860 F. Supp. 890, 894 (D.D.C. 1994), *aff'd* 1997 WL 404714 (D.C. Cir. June 05, 1997), the government sued one of its employees for unjust enrichment because the employee had received "a sum of money" to approve budgets that charged the United States inflated rates for consulting services. Rejecting a Rule 12(b)(6) motion to dismiss this claim, the Court held that "the circumstances surrounding this payment are sufficient for the Court to infer that [defendant's] retention of these funds would result in an outcome that is inequitable to the government. For these reasons, the Court finds that the government has stated sufficient facts to support its claim of unjust enrichment." *Id.* Likewise, here, IPOC alleges that "Diligence and BGR have received substantial sums of money in exchange for" their tortious conduct against IPOC, Compl. ¶ 55, and that "[i]t is unfair and inequitable for Diligence and BGR to retain the

funds wrongfully earned at the expense of and to the detriment of IPOC," *id.* ¶ 57. Under *Bouchey*, these allegations are sufficient to withstand a motion to dismiss.

The cases that BGR cites are inapposite. *Tull v. United States*, 481 U.S. 412, 424 (1987) was not a common-law unjust enrichment case, but rather an action under the Clean Water Act. Its holding has nothing to do with the sufficiency of pleading an unjust enrichment claim, but instead the case briefly mentioned that the aim of "disgorgement of improper profits" is "restoration of the status quo." *Id.* BGR's citation of *Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 848 (D.D.C. 1996) is likewise unhelpful. One of the claims in *Ellsworth* involved the plaintiff's allegation that other government contractors were unjustly enriched because the government excluded plaintiff from competing for follow-on contract. The key reason that the court dismissed this count, however, was that it was clear from the Complaint that "defendants have not yet received any benefit and thus have not been enriched, much less *unjustly* so." *Id.* at 843, 848. IPOC's Complaint, by contrast, alleges that Diligence and BGR have been unjustly enriched. Compl. ¶¶ 54-57.

Another case that BGR cites, *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37, 40 (D.D.C. 1999) actually underscores that an unjust enrichment plaintiff need only plead that defendants should "disgorge a certain sum of money—the unjust enrichment—because it would be 'inequitable' for defendants to keep this sum." *Id.* (finding plaintiff's complaint adequately alleged a claim for unjust enrichment/disgorgement). IPOC has so pleaded. Compl. ¶ 57.

BGR has cited no case in which a court dismissed at the pleading stage an unjust enrichment claim that alleges, as IPOC does, that the defendants are unjustly enriched because they received "sums of money" to harm the plaintiff. Under these circumstances, IPOC has

adequately pleaded unjust enrichment and the Court should not dismiss Count VII. *See Bouchey*,

860 F. Supp. at 894.

## CONCLUSION

For all of the foregoing reasons, the Court should deny BGR's motion for judgment

under Federal Rule of Civil Procedure 12(c).

September 5, 2006                          Respectfully submitted,

                                           WINSTON & STRAWN LLP

Of Counsel                                 /s/ Carol A. Joffe

Kimball R. Anderson                        Timothy M. Broas (D.C. Bar No. 391145)
WINSTON & STRAWN LLP                       Carol A. Joffe (D.C. Bar No. 351528)
35 W. Wacker Drive                         Anne W. Stukes (D.C. Bar No. 469446)
Chicago, Illinois 60601                    1700 K Street, N.W.
Tele:   (312) 558-5858                     Washington, D.C. 20006
Fax:    (312) 558-5700                     Tele:   (202) 282-5000
kanderson@winston.com                      Fax:    (202) 282-5100
                                           tbroas@winston.com
                                           cjoffe@winston.com
                                           astukes@winston.com

                                           *Attorneys for IPOC International Growth Fund
                                           Limited*

41

**Certificate of Service**

I hereby certify that on September 5, 2006, I caused the foregoing Opposition to BGR's Motion for Judgment on the Pleadings to be served electronically, via the Court's electronic case filing system, on the following:

> Charles J Cooper
> David H. Thompson
> COOPER & KIRK, PLLC
> Suite 750
> 555 Eleventh Street, NW
> Washington, DC  20004
> 202-220-9600
> 202-220-9601 (FAX)
> *Attorneys for Barbour Griffith & Rogers LLC*

> Paul C. Rauser
> AEGIS LAW GROUP LLP
> Suite 500
> 901 F Street, NW
> Washington, D.C.  20004
> 202-737-3500
> 202-737-3330 (FAX)
> *Attorney for Diligence, LLC*

___/s/_____
Carol A. Joffe

42