UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil No. 06-1109 |
| ) | (PLF) |
| DILIGENCE, LLC, ) | |
| ) | |
| and ) | |
| ) | |
| BARBOUR GRIFFITH & ROGERS, LLC, ) | |
| ) | |
| Defendants. ) | |

**REPLY TO PLAINTIFF IPOC'S OPPOSITION
TO MOTION OF DEFENDANT BARBOUR GRIFFITH & ROGERS LLC
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Charles J. Cooper (D.C. Bar No. 248070)
David H. Thompson (D.C. Bar No. 450503)
Derek L. Shaffer (D.C. Bar No. 478775)
COOPER & KIRK, PLLC
Suite 750
555 Eleventh Street NW
Washington, DC 20004
202-220-9600
202-220-9601 (Fax)

September 20, 2006                         *Attorneys for Barbour Griffith & Rogers LLC*

**TABLE OF CONTENTS**

i

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii
INTRODUCTION ........................................................................................................................1
ARGUMENT................................................................................................................................1
    CONCLUSION........................................................................................................................14

i

# **TABLE OF AUTHORITIES**

**Cases** **Page**

*Alaska Legislative Council v. Babbitt*, 181 F.3d 1333 (D.C. Cir. 1999) ............................6

*American Canoe Ass'n v. EPA*, 289 F.3d 509 (8th Cir. 2002) ...........................................6

*Bennett v. Spears*, 520 U.S. 154 (1990) ..............................................................................2

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) .........................................................6

*Chevron U.S.A., Inc. v. FERC*, 193 F. Supp. 2d 54 (D.D.C. 2002) ...............................9, 10

*FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988)........................................................11

*Freedom Calls Found. v. Bukstel*, No. 05 CV 5460, 2006 U.S. Dist. LEXIS 19685
    (E.D.N.Y Mar. 3, 2006) ...............................................................................................7

*Hirshfield v. Winer*, Nos. 87 CIV 8079, 8640, 1989 U.S. Dist. LEXIS 11605
    (S.D.N.Y. Oct. 3,1989) ................................................................................................7

*Loftin v. KPMG, LLP*, 16 Fla. L. Weekly Fed. D. 712, 2002 U.S. Dist. LEXIS 26909
    (S.D. Fla. Dec. 10, 2002) .............................................................................................7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .....................................................1, 2

*Newton v. Tyson Foods*, 207 F.3d 444 (8th Cir. 2000)......................................................8

*Sanner v. Board of Trade*, 62 F.3d 918 (7th Cir. 1995)......................................................7

*Spencer v. Kemna*, 523 U.S. 1 (1998).................................................................................4

*Truckers United for Safety v. Mead*, 251 F.3d 183 (D.C. Cir. 2001)................................11

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State*,
    454 U.S. 464 (1982) .....................................................................................................7

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765
    (2000)......................................................................................................................5, 13

*Warth v. Seidlin*, 422 U.S. 490 (1975)................................................................................7

## INTRODUCTION

IPOC's Opposition to our motion to dismiss is long on bluster but short on substance. Despite our challenge, IPOC has yet to offer a coherent account of a concrete injury. IPOC concedes that a court faced with a Rule 12(b)(1) motion must " 'undertake an independent investigation to assure itself of its own subject matter jurisdiction' " and in doing so "may . . . refer to matters outside the complaint." Plaintiff IPOC International Growth Fund Limited's Memorandum of Law in Opposition to Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss for Lack of Subject Matter Jurisdiction ("IPOC Opp.") at 3 (citing *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005), and *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)) (internal quotation marks omitted). Yet IPOC refuses to offer anything beyond the conclusory allegations of its Complaint. As IPOC's own authorities reveal, that is not sufficient.

IPOC submits that a plaintiff has Article III standing whenever it files a complaint that rotely alleges (i) the commission of a tort as to which the plaintiff seeks money damages, or (ii) the misappropriation of information that the plaintiff characterizes as confidential – irrespective of any particulars about the nature, value, or import of the information in question. These propositions are unsustainable, as is IPOC's claim to standing.

## ARGUMENT

1.     It is important to note IPOC's concession that neither the Zurich arbitration nor the Bermuda government investigation provides a basis for standing in this case. As we explained in our Motion, the adverse decision of the Zurich arbitration tribunal based upon evidence of IPOC's criminality does not amount to a "legally

1

protected" or "judicially cognizable" injury-in-fact, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 575 (1992); *Bennett v. Spears*, 520 U.S. 154, 167 (1990). Even if it did, such injury would not be "fairly . . . trace[able]" to the allegations against the defendants here. *Lujan*, 504 U.S. at 560 (quotation marks omitted) (alteration in original).[1] We likewise explained why the Bermuda investigation allegedly imperiling IPOC's corporate charter does not give rise to an "actual or imminent" injury-in-fact, *id.* at 560 (quotation marks omitted); and why, again, even if it did, it too would not be traceable to the alleged misconduct of the defendants. In doing so, we gave IPOC every benefit of the doubt,

---

[1] IPOC purports to be indignant at our inclusion of the Zurich arbitration decision with our Motion and urges this Court to disregard it. IPOC Opp. at 2. But IPOC itself specifically pointed to the Zurich arbitration proceeding in its own Complaint, alleging that defendants had "corrupt[ed] the Zurich arbitration." Complaint ¶¶25-28; *see also* Complaint ¶11 (referencing IPOC's "arbitration proceedings"); Complaint ¶21 ("a portion of the unlawfully obtained materials appeared . . . in submissions made . . . to a Zurich arbitration tribunal in the proceedings referenced above."). We quoted the relevant decision of the Zurich arbitration tribunal – conspicuously elided by IPOC – in order to alert this Court that the decision, by its terms, is not traceable to the allegations against defendants, and that any grievance emanating from Zurich could not confer subject-matter jurisdiction here. *See* Memorandum in Support of the Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss for Lack of Subject Matter Jurisdiction ("Motion") at 5-9. Given that this Court is independently obliged to inquire into its own jurisdiction and that this inquiry appropriately proceeds in reference to materials outside the complaint, we frankly cannot understand why IPOC thinks that the relevant arbitration decision should be excluded from the Court's consideration. Likewise, we have separately explained why the decision is a proper subject of judicial notice; certainly the terms of it, addressing IPOC's criminality, indicate (if nothing else) the presumptive nature and content of the alleged submissions defendants made for purposes of informing that decision. Defendants' submissions were not relied upon in the decision, but there is every reason to think they were of a piece with it. For similar reasons, we are submitting herewith the recent ruling of the Bermuda Supreme Court, publicly addressing the Zurich tribunal's conclusion that IPOC is involved in a criminal money-laundering scheme and holding that to be valid and enforceable. *See* Exhibit 1. Furthermore, although IPOC does not even point to any prospective injury that might ground its claim to standing, these public decisions altogether foreclose it from doing so. The cat is out of the bag at this point; any prospective injury that IPOC might claim from revelation of the relevant information cannot be "redressed" by a favorable decision from this Court. *Lujan*, 504 U.S. at 561 (quotation marks omitted).

2

addressing what appeared to be at least colorable injuries specified in its complaint: loss of "a unique and very valuable 25.1% stake in the Russian mobile telephone operator, MegaFon," by virtue of the Zurich arbitration decision, Complaint ¶11; payment pursuant to the Bermuda investigation of "over $8 million" to KPMG, Complaint ¶15; and the "attack" upon "IPOC's corporate charter" by way of the Bermuda investigation. Complaint ¶¶25-28.

But the problem with those alleged injuries is that they do not flow from IPOC's allegations against these defendants and IPOC lacks standing to complain of them here. *See* Motion at 5-11. This is now undisputed. IPOC repeatedly concedes that those injuries have nothing to do with its theory of standing and do not present a case or controversy under Article III. *See* IPOC Opp. at 11 ("neither the substance of the Zurich arbitral proceedings nor the outcome of the Bermuda investigation is relevant to this case"); IPOC Opp. at 4 ("this case is not about foreign arbitrations nor the substance of the Bermuda investigation"); IPOC Opp. at 9 ("BGR's discussion of the outcome of the Zurich arbitration or the Bermuda investigation is beside the point"); IPOC Opp. at 10 ("BGR's claim[] that IPOC's injuries are traceable to the Zurich arbitrators or the Bermuda government[] is simply wrong"); IPOC Opp. at 3 ("the underlying issues involved in the Zurich arbitration and the Bermuda investigation have no relevance to this case, nor to the question of whether the Court has subject-matter jurisdiction"); IPOC Opp. at 2 ("the merits of the arbitration are wholly irrelevant to this case").[2]

---

[2] This concession renders incoherent IPOC's continued pursuit of its theory that defendants violated its business expectancies of fair proceedings in Zurich and Bermuda, for we know of no procedural grievance (nor does IPOC cite any) that might be of consequence except to the extent that it matters to an *adverse outcome*.

3

The question, then, is what actual injury, fairly traceable to the actions of the defendants, might remain? IPOC, which bears the burden of establishing standing, *see, e.g., Spencer v. Kemna*, 523 U.S. 1, 11 (1998), has no meaningful answer.

2.     IPOC responds to our jurisdictional challenge by simply reiterating the barebone allegations of its Complaint. That is plainly insufficient; the conclusory allegations of the Complaint plead injuries flowing from the actions not of the defendants but of the Zurich tribunal and the Bermuda Government. *See* IPOC Opp. at 6-9. Again, IPOC initially acknowledges as much, *see* IPOC Opp. at 3, dismissing our analysis of the substance of its allegations as simply "irrelevant." IPOC Opp. at 3. Yet when it comes time to specify any real injury IPOC might trace to actions *by defendants*, as opposed to independent actors in Zurich and Bermuda, IPOC has nothing of substance to say.

Thus, IPOC's claimed business expectancies in Count I expressly relate to what happened in Zurich and Bermuda, *see* Complaint ¶¶24-28;[3] the violations of the Computer Fraud and Abuse Act alleged in Count II appear to focus on nothing more than the Zurich arbitration decision and Bermuda investigation as connected with the information extraction that allegedly caused it money damages, Complaint ¶¶29-34; IPOC's claim for the procurement of information by improper means in Count III adds only that the information was obtained "for the purpose of advancing rival interests" without suggesting that those "rival business" interests were advanced anywhere other than the Zurich arbitration and perhaps the Bermuda investigation, via anything other than truthful information about IPOC's criminality, Complaint ¶¶35-39; IPOC's claim in

---

[3] IPOC's references throughout its complaint to actions taken by its "litigation adversaries" ostensibly relates to what they did with the information obtained by defendants for use *in litigation*, specifically in Zurich.

4

Count IV for interference with its contractual relations with KPMG likewise suggests no separate or additional theory about how it was actually injured, nor do any of its Counts V-VII for common law unfair competition, common law conspiracy, and unjust enrichment, respectively.[4] *See* Complaint ¶¶40-57. Tellingly, IPOC makes no attempt to specify *what* information defendants obtained from the KPMG investigation or *how* it was used to its detriment. IPOC thus leaves wholly uncontradicted the crucial proposition that truthful evidence of IPOC's criminality, as viewed by the Zurich tribunal and the Bermuda Government in accordance with their own best judgment, is the source of IPOC's woes.

Nowhere in its opposition does IPOC deny that the information it alleges defendants to have misappropriated and disclosed was truthful evidence of IPOC's criminality. Neither does it deny that such evidence was overtaken by the Zurich tribunal's independent decision and thereby disseminated for public consumption, and has now been acted upon by the Bermuda Government. Therefore, there is no distinct injury traceable specifically to the allegations against these defendants that would give rise to a case or controversy under Article III.

Perhaps to elide this failing, IPOC claims that we have created "some kind of heightened pleading standard." IPOC Opp. at 5. Not so. We rely upon the venerable principles that a plaintiff cannot substitute bald legal conclusions for factual allegations, and plead its way into federal court and stay there simply by alleging standing; instead,

---

[4] To the extent that IPOC's unjust enrichment claim seeks disgorgement of monies earned by defendants, untethered to any corresponding injury suffered by IPOC, that cannot give rise to standing under Article III. *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772-73 (2000) ("[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes.").

the Court must assure itself that a valid basis for standing in fact exists. IPOC has also accused us, falsely, of "alter[ing]" our quotation of *Bennett v. Spears*, 520 U.S. 154, 168 (1990). IPOC Opp. at 5 n.1.[5] Consistent with BGR's interpretation of *Bennett*, the D.C. Circuit in its subsequent decisions refused to credit mere legal conclusions as though they were specific factual allegations. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Alaska Legislative Council v. Babbitt*, 181 F.3d 1333, 1340 (D.C. Cir. 1999). *See also American Canoe Ass'n v. EPA*, 289 F.3d 509, 512 (8th Cir. 2002) (quoting *Bennett* in dismissing for lack of standing where general allegations did not suggest specific facts of concrete injury).

      3.      Rather than specify its injury, IPOC conjures propositions supposedly obviating any need for it to do so. IPOC contends that merely pleading "garden variety statutory and common-law tort injuries" suffices to establish injury-in-fact. IPOC Opp. at 9. Or, if that proposition proves too outsized to swallow, it says that "unlawful acquisition and disclosure of confidential information are *per se* injuries-in-fact for Article III standing purposes," the mere pleading of which will suffice. IPOC Opp. at 9. Neither contention has merit.

---

[5] Our Motion did not misrepresent *Bennett*'s text. IPOC says that our substitution of the word "where" for the word "for," as used by the Supreme Court, to connect the relevant excerpts "creat[es] a pleading requirement not envisioned in *Bennett*" as to when specific facts supporting general factual allegations can or cannot be presumed. IPOC Opp. at 5 n.1. As reflected on page 4 of our Motion, however, we candidly added the word "where" ourselves, placing it *outside* our quotations of *Bennett*, in support of the argument that we submitted then, and continue to submit, follows from that case and subsequent governing precedent. Our point in using the word "where" to connect the two quotes from *Bennett* was, quite simply and quite obviously, to show that the Supreme Court found "general factual allegations . . . may suffice" in *that* case where "it [wa]s easy to presume specific facts." Whatever IPOC might argue against our reading of *Bennett*, it is outrageous for it to suggest – as it pointedly does – that that we have willfully set out to "change[] the meaning of the quotation." IPOC Opp. at 5 n.1.

a. IPOC asserts that merely pleading a common-law tort satisfies Article III. IPOC Opp. at 6-9. Nonsense. "[S]tanding . . . is [a] threshold question in *every* federal case," *Warth v. Seidlin*, 422 U.S. 490, 498 (1975) (emphasis added), and the "requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 471 (1982). Federal courts routinely dismiss claims of fraud and other torts for lack of standing. *See Freedom Calls Found. v. Bukstel*, No. 05 CV 5460, 2006 U.S. Dist. LEXIS 19685, at *81 (E.D.N.Y Mar. 3, 2006) ("The Court finds that Defendant does not have Article III standing to bring the misappropriation, embezzlement, and breach of fiduciary duty claims described herein because he has not sufficiently pled injury."); *Loftin v. KPMG, LLP*, 16 Fla. L. Weekly Fed. D. 712, 2002 U.S. Dist. LEXIS 26909, at *24-*25 (S.D. Fla. Dec. 10, 2002) ("Loftin has failed to allege that he suffered an actual injury from the alleged misconduct and therefore lacks standing to bring his claims for fraud and negligent misrepresentation."); *Hirshfield v. Winer*, Nos. 87 CIV 8079, 8640, & 8641, 1989 U.S. Dist. LEXIS 11605, at *6 (S.D.N.Y. Oct. 3,1989) ("Not only are the alleged potential damages conjectural, but the alleged wrongful conduct committed by [defendants via a tax opinion] is conditioned upon the outcome of the IRS proceeding. At this point, any decree of a conclusive character which could issue from this Court would be premised upon a hypothetical state of facts. Accordingly, the complaint must be dismissed . . . ."); *Sanner v. Board of Trade*, 62 F.3d 918, 923 (7th Cir. 1995) ("We have little difficulty concluding that the

soybean farmers who refrained from selling soybeans due to the depressed price of the cash market [resulting from alleged antitrust violations] lack standing under Article III" for failure to satisfy the "traceability requirement."); *see also Newton v. Tyson Foods*, 207 F.3d 444, 448 (8th Cir. 2000) (affirming district court decision dismissing tort claim for lack of standing, albeit without reviewing the Article III question because no causation could be shown in any event).  IPOC offers nothing more than naked, conclusory allegations that it "suffered" some unspecified "harm" because defendants wrongfully obtained some unspecified "confidential information" produced by IPOC to KPMG and then disclosed it to IPOC's "litigation adversaries."  Plaintiff IPOC's Opposition to Barbour Griffith & Rogers LLC's Rule 12(c) Motion for Judgment on the Pleadings at 6.  That simply does not get the job done in the face of the factual circumstances and concerns present here, no matter how hard IPOC stomps its foot.

        b.     IPOC's second proposition is equally unavailing.  To be sure, plaintiffs typically have standing to complain of misappropriation of trade secrets or other protected information, or of government regulatory action compelling the disclosure of confidential business information.  The common ingredient in such cases is that a plaintiff faces demonstrable injury as a direct result of defendants' actions.  But this case is quite different.  By its own account, "IPOC has not asserted a claim for trade-secret misappropriation – indeed, IPOC has not even suggested that the stolen information would qualify as 'trade secret' information."  Plaintiff IPOC's Opposition to Diligence Inc.'s Motion to Dismiss at 14.  Nor has IPOC denied that the only regulatory burdens and costs it has alleged – namely, those associated with the Bermuda investigation – are

8

wholly unrelated to defendants' alleged use of the information and cannot ground its standing.

Thus, IPOC points to no concrete injury associated with defendants' alleged disclosure of the information, and suggests no legitimate business interest – let alone trade secret or property interest – it could claim in the information at issue. Indeed, IPOC studiously avoids saying anything about the nature or value of the information at issue. And all IPOC says about the "confidentiality" of the information is that it was initially obtained from IPOC pursuant to KPMG's investigation. That says something about the process by which the information was obtained from IPOC, but nothing about why it is (or was) "confidential" or why IPOC has a protectible property interest in it. All we know about the nature of the information at issue is that (1) it is not a trade secret and (2) it was placed before an international arbitral tribunal that found IPOC to be part of a criminal enterprise. The reason for IPOC's silence on this point is obvious: The information is apparently related to *evidence of IPOC's criminal enterprise*. There is no authority for IPOC's proposition that disclosure of such information might give rise to standing. The cases IPOC itself cites only highlight this point.

IPOC cites the decision by Judge Lamberth of this Court in *Chevron U.S.A., Inc. v. FERC*, 193 F. Supp. 2d 54 (D.D.C. 2002), ruling that plaintiffs had standing to challenge a regulatory regime requiring that they report detailed information on a quarterly basis, including "rates they charge each customer" and other "commercially sensitive information." *Id*. at 58-59. Judge Lamberth there "agree[d] with the plaintiffs that mandatory compliance with these regulations is sufficient to satisfy the constitutional requirement of injury-in-fact"; the plaintiffs were harmed, most fundamentally, by the

9

compliance costs attending the "additional regulatory burden imposed upon them," which costs were only compounded given the "commercially sensitive" nature of the information thereby obtained and potentially disclosed to the public. *Id*. at 60-61. Indeed, FERC itself had indicated that the regulations would "result in greater competition" with the plaintiffs' businesses, likewise amounting to injury-in-fact. *Id*. at 62. Thus, the claim to standing in *Chevron* rested upon the affirmative, direct, and, indeed, acknowledged costs imposed by the government defendants.

The only analog here to the injury in *Chevron* might be the costs associated with the Bermuda Government's investigation. But IPOC has not sued Bermuda, nor has it alleged that defendants' alleged conduct has, for instance, increased KPMG's bills pursuant to that investigation; indeed, we have explained without refutation that those are entirely unrelated. *See* Motion at 10. The only other consideration at work in *Chevron*, unnecessary to Judge Lamberth's decision, was the "commercially sensitive" nature of the information at issue, which was specifically established, *see Chevron*, 193 F. Supp. 2d at 58, and would have subjected the plaintiffs to increased business competition. *See id.* at 61-62. Again, IPOC has said nothing about the nature of the information in question other than that it was obtained pursuant to Bermuda's investigation. Unlike the situation in *Chevron*, that is simply an artifact of the investigative *process* by which the information was obtained and has nothing to do with the nature of the information itself, about which IPOC says nothing. There is no suggestion here that the information in question has intrinsic business value such that the disclosure of it would be injurious to legitimate business interests.

The decision of the D.C. Circuit in *Truckers United for Safety v. Mead*, 251 F.3d 183 (D.C. Cir. 2001), is likewise unsupportive of IPOC's claim to standing. It reflects the same commonsense proposition – inapplicable here – that the direct imposition of compliance costs via allegedly illegitimate government action may give rise to standing to sue the government. There, the challenger complained that the government agency had injured its constituent "trucking companies by conducting unlawful investigations and seizing their records." *Id*. at 188-89. Again, that theory might be pertinent in a lawsuit by IPOC against the Government of Bermuda or perhaps its investigatory agent, KPMG. But the D.C. Circuit has never remotely embraced IPOC's proposition that the mere *appropriation* or *disclosure* of *any* unspecified "information" claimed, without explanation, to be "confidential" gives rise to standing.

Finally, the decision of the Seventh Circuit in *FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988), illustrates the spuriousness of IPOC's claim to standing here. *FMC* was a case concerning the misappropriation of the plaintiff's recapitalization plans for disclosure to and use by insider traders, including Ivan Boesky. In analyzing plaintiff's standing to complain of that misappropriation, the Seventh Circuit carefully evaluated both the specifics of the information in question and the injury resulting from its misappropriation and disclosure. What the Seventh Circuit said pursuant to that inquiry contrasts sharply with IPOC's claim to standing here:

> Confidential business information, even though intangible in nature, is corporate property, as the Supreme Court recently reiterated . . . .
>
> . . . FMC had a property right in keeping confidential its consideration of the recapitalization and, later, of the recapitalization's terms. It had the right to make exclusive use of that information prior to its disclosure to the public . . . .
> . . . .

11

> . . . [E]xclusivity is an important aspect of confidential business information . . . As long as a trade secret remains secret, it potentially has value in the hands of its owner. Because of this, laws protecting trade secrets, by protecting the value of confidential information, provide persons and companies with an incentive to develop potentially valuable new information. If someone destroys that secrecy, he or she deprives the owner of the information's potential value. Viewed in this light, the defendants' violation of FMC's right to the exclusive use of its confidential business information injured FMC as distinctly and as palpably as if the defendants stole a potentially valuable new machine from one of FMC's plants.

*Id*. at 991 (footnotes, citations, and internal quotations omitted).

Thus, the standing of the plaintiff in *FMC* derived from the protected nature of its recapitalization plan as a confidential "trade secret" as to which the business had a legitimate right of "exclusive use." This was critical, because it then followed that dissemination and use of the information necessarily amounted to injury "as palpably as if the defendants stole a potentially valuable new machine." Here, as we have explained, IPOC has neither alleged nor suggested anything of the kind. To the contrary, it has adamantly disavowed that the information amounted to any sort of trade secret. It has relied exclusively upon the process by which the information was elicited to prove its confidentiality standing, without offering any hint as to the nature or content of the information, let alone specifying how disclosure of it gave rise to injury. And IPOC has failed to deny the inference that the information at issue is, in fact, truthful evidence of its criminality and only that. Unlike the situation confronted by the Seventh Circuit in *FMC*, there is no basis for viewing this information as "corporate property" automatically protected as such for "exclusive use." In sum, the cases IPOC cites only illustrate the deviance of its claim to standing here.

12

4. Apart from IPOC's contention that merely alleging the elements of a "garden variety" misappropriation or other tort satisfies Article III, it is obvious that IPOC lacks standing to assert each of its specific claims.

a. IPOC offers no facts in support of its assertion that defendants' alleged accessing of *KPMG* computers somehow " 'caused damage and loss to IPOC in excess of $5,000,' " IPOC Opp. at 8 (quoting Complaint ¶33) – which claim at best bootstraps IPOC's other purported injuries, which we have already debunked. *See* Motion at 11.

b. IPOC's request for injunctive relief cannot overcome its standing deficit, for it has specified no prospective injury, financial or otherwise, that it faces from any further dissemination of the information at issue. Indeed, IPOC does not so much as claim that a prospective injury might ground its standing. Moreover, any such injury, even if identified, would be neither cognizable nor traceable under Article III to the extent it results from IPOC's own illegitimate, indeed criminal, conduct. *See* Motion at 5-8, 11. Finally, any such injury would have already been overtaken and subsumed such that it would not be redressable here, particularly given the ultimate findings of the of the Zurich arbitration tribunal as to IPOC's criminality and the subsequent acknowledgment of that finding as valid and enforceable by the Bermuda Supreme Court, which are now a matter of public record and beyond the reach of this proceeding in all events. *See supra* at 2 n.1.

c. Neither can IPOC's request for money damages, pursuant to its unjust enrichment claim and otherwise, overcome its standing deficit. "[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for

13

Article III standing purposes." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772-73 (2000). Therefore, unless IPOC's conclusory allegations of injury-in-fact themselves carry the day, nothing does.

## **CONCLUSION**

For the foregoing reasons, this case should be dismissed for lack of subject matter jurisdiction. Oral argument on this matter is respectfully requested pursuant to Local Rule 7(f).

September 20, 2006                    Respectfully submitted,

/s/ Charles J. Cooper
_____
Charles J. Cooper (D.C. Bar No. 248070)
David H. Thompson (D.C. Bar No. 450503)
Derek L. Shaffer (D.C. Bar No. 478775)
COOPER & KIRK, PLLC
Suite 750
555 Eleventh Street NW
Washington, DC 20004
202-220-9600
202-220-9601 (Fax)

*Attorneys for Barbour Griffith & Rogers LLC*