UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, )<br><br>Plaintiff,  )<br><br>v.    )<br><br>DILIGENCE, LLC,    )<br><br>and    )<br><br>BARBOUR GRIFFITH & ROGERS, LLC,    )<br><br>Defendants.    ) | Civil No. 06-1109<br>(PLF) |

**REPLY TO PLAINTIFF IPOC'S OPPOSITION TO MOTION OF DEFENDANT
BARBOUR GRIFFITH & ROGERS LLC FOR JUDGMENT ON THE PLEADINGS**

Charles J. Cooper (D.C. Bar No. 248070)
David H. Thompson (D.C. Bar No. 450503)
COOPER & KIRK, PLLC
Suite 750
555 Eleventh Street NW
Washington, DC 20004
202-220-9600
202-220-9601 (Fax)

September 20, 2006                        *Attorneys for Barbour Griffith & Rogers LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...........................................................................................................1

ARGUMENT ..................................................................................................................1

I.  All of IPOC's Claims Fail as a Matter of Law Because IPOC Has Not Adequately Alleged Causation and Damages. ................................................................1

II.  IPOC's Claim Under the Computer Fraud and Abuse Act Fails As a Matter of Law. ..........................................................................................................4

    A.  IPOC Has Not Alleged Cognizable "Damage." ................................................4

    B.  IPOC Has Not Alleged Cognizable "Loss." ....................................................7

    C.  IPOC Has Not Alleged Cognizable "Access." .................................................9

III.  Counts I, III-V, and VII Fail Because IPOC Has Not Alleged Underlying Wrongs. ..................................................................................................10

IV.  Counts I and III-VII Fail as a Matter of Law Because They Are Preempted by the District of Columbia's Adoption of the Uniform Trade Secrets Act. ..........................11

V.  Counts I and III-VII Fail as a Matter of Law for Additional Reasons. ......................13

    A.  Count I: Tortious Interference with Business Expectancies ............................13

    B.  Count IV: Tortious Interference with Contractual Relations ...........................17

    C.  Count III: Procuring Information by Improper Means ....................................19

    D.  Count V: Common Law Unfair Competition .................................................20

    E.  Count VI: Common Law Conspiracy ..........................................................22

    F.  Count VII: Unjust Enrichment ..................................................................23

CONCLUSION ...............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37
    (D.D.C. 1999) ......................................................................................................................24

*Allen v. Hall*, 974 P.2d 199 (Or. 1999) ..................................................................................14

*Avco Corp. v. Precision Air Parts, Inc.*, No. 79-275-N, 1980 U.S. Dist. LEXIS 16413
    (M.D. Ala. Sept. 4, 1980) ..................................................................................................19

*B &W Mmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879 (D.C. 1982) ...................................................21

*Berni v. International Gourmet Restaurants of America, Inc.*, 838 F.2d 642 (2d Cir. 1988)........20

*Biro v. Hirsch*, 771 A.2d 129 (Conn. App. Ct. 2001) ..................................................................14

*Blank v. Kirwan*, 703 P.2d 58 (Cal. 1985) .................................................................................14

*Blank v. Pollack*, 916 F. Supp. 165 (N.D.N.Y 1996)....................................................................21

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216
    (D. Del. 2004) ....................................................................................................................13

*Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080
    (D.C. Cir. 1998) ....................................................................................................................2

*Carr v. Brown*, 395 A.2d 79 (D.C. 1978) ...................................................................................15

*Casco Marina Development, LLC v. District of Columbia Redevelopment Land Agency*,
    834 A.2d 77 (D.C. 2003) ...................................................................................................15

*Charles Schwab & Co. v. Carter*, No. 04-7071, 2005 U.S. Dist. LEXIS 5611
    (N.D. Ill. Feb. 11, 2005).......................................................................................................9

*C.H. Robinson Worldwide, Inc. v. Command Transp., LLC*, No. 05-3401, 2005 U.S. Dist.
    LEXIS 28063 (N.D. Ill. Nov. 16, 2005) ................................................................................9

*Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars*, 387 F. Supp. 2d 378 (S.D.N.Y. 2005) .........5, 7, 8

*Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263 (7th Cir. 1992).........12, 13

*Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47 (D.C. 1991) ...................................18

*Democratic State Committee v. Bebchick*, 706 A.2d 569 (D.C. 1998)........................................15

*Doe v. United States Dep't of Justice*, 753 F.2d 1092 (D.C. Cir. 1985).........................................3

*EF Cultural Travel BV v. Explorica*, 274 F.3d 577 (1st Cir. 2001).........................................4, 5, 8

*Ellett v. Giant Food, Inc.*, 505 A.2d 888 (Md. Ct. Spec. App. 1986)...........................................15

*Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841 (D.D.C. 1996) .......................23, 24

*Emerine v. Yancey*, 680 A.2d 1380 (D.C. 1996)..................................................................25

*Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268
    (S.D. Fla. 2003).......................................................................................................8

*Fox v. Country Mut. Ins. Co.*, 7 P.3d 677 (Or. Ct. App. 2000).........................................14

*Furash & Co. v. McClave*, 130 F. Supp. 2d 48 (D.D.C. 2001) ........................................21

*George S. May International Co. v. Hostetler*, No. 04-1606, 2004 U.S. Dist. LEXIS 9740
    (N.D. Ill. May 28, 2004) ..........................................................................................9

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002)...................14

*Hauck Manufacturing Co. v. Astec Industries, Inc.*, 375 F. Supp. 2d 649 (E.D. Tenn. 2004) ......13

*Hecny Transportation, Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005) ..................................12

*IHS Acquisition XV, Inc. v. Kings Harbor Care Ctr.*, No. 98-7621, 1999 U.S. Dist.
    LEXIS 5448 (S.D.N.Y. Apr. 16, 1999) ..................................................................17

*In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618 (E.D. Mich. 2000) .........25

*In re DoubleClick Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............5, 6

*In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517 (D.N.J. 2004) ...........................25

*In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30 (D.D.C. 2003) .............24, 25

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) .................................2, 18

*Krieger v. Fadely*, 211 F.3d 134 (D.C. Cir. 2000)...........................................................3

*Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850 (10th Cir. 1972)................16

*Lufthansa Cargo A.G. v. County of Wayne*, No. 01-74579, 2002 U.S. Dist. LEXIS 16493
    (E.D. Mich. Aug. 16, 2002) ....................................................................................18

*Matossian v. Fahmie*, 161 Cal. Rptr. 532 (Cal. Ct. App. 1980) ......................................15

*Mazloum v. District of Columbia*, No. 06-0002, 2006 U.S. Dist. LEXIS 43427
    (D.D.C. Jun. 27, 2006)............................................................................................22

*Mortgage Specialists, Inc. v. Davey*, No. 2005-067, 2006 N.H. LEXIS 106
    (N.H. July 26, 2006) ................................................................................................12

*National Education Association-Rhode Island v. Retirement Board of the Rhode Island
    Employees' Retirement System*, 890 F. Supp. 1143 (D.R.I. 1995) ..........................18

*Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004) ................7

*Niemeyer v. United States Fidelity & Guar. Co.*, 789 P.2d 1318 (Okla. 1990).................3

*Pacific Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188 (E.D. Wash. 2003) .................8

*Penalty Kick Management Ltd. v. Coca Cola Co.*, 318 F.3d 1284 (11th Cir. 2003) ....................13

*PM Services Co. v. Odoi Associates, Inc.*, No. 03-1810, 2006 U.S. Dist. LEXIS 655
    (D.D.C. Jan. 4, 2006) ....................................................................................................13, 14

*Rapaport v. United States*, 59 F.3d 212 (D.C. Cir. 1995) .............................................................24

*Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238 (S.D.N.Y. 2000)........................................5

*Resdev, LLC v. Lot Builders Ass'n* No. 04-1374, 2005 U.S. Dist. LEXIS 19099
    (M.D. Fla. Aug. 10, 2005) .........................................................................................6, 7, 8, 9

*Role Models Am., Inc. v. Jones*, 305 F. Supp. 2d 564 (D. Md. 2004)...........................................10

*Roy Export Co. v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095 (2d Cir. 1982) ..............21

*Russo v. Ballard Medical Products*, No. 05-59, 2006 U.S. Dist. LEXIS 57130
    (D. Utah Aug. 10, 2006) ..........................................................................................................13

*Schwartz v. Franklin National Bank*, 718 A.2d 553 (D.C. 1998)..................................................19

*Service Employee's International Union Health & Welfare Fund v. Phillip Morris Inc.*,
    83 F. Supp. 2d 70 (D.D.C. 1999) ...........................................................................................24

*Sharrow v. State Farm Mut. Auto. Ins. Co.*, 511 A.2d 492 (Md. 1986) ..........................................3

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121
    (W.D. Wash. 2000) .......................................................................................................6, 8, 9, 10

*Simpson v. Ha-Lo Indus.*, 74 F. Supp. 2d 861 (E.D. Wis. 1999) .....................................................3

*Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989)..........17

*Stanford v. Kraft Foods, Inc.*, 88 F. Supp. 2d 854 (N.D. Ill. 1999).........................................18, 19

*Stokes v. Cross*, 327 F.3d 1210 (D.C. Cir. 2003)............................................................................3

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)................................................................................3

*Tavoulareas v. Washington Post Co.*, 724 F.2d 1010 (D.C. Cir. 1984) .......................................20

*Tavoulareas v. Washington Post Co.*, 737 F.2d 1170 (D.C. Cir. 1984) .......................................20

*Tuff-N-Rumble Management Inc. v. Sugarhill Music Publishing Inc.*, 8 F. Supp. 2d 357
    (S.D.N.Y. 1998) .......................................................................................................................18

*Tull v. United States*, 481 U.S. 412 (1987) ...................................................................................23

*Tyco Int'l (US) Inc. v. John Does*, No. 01-3856, 2003 U.S. Dist. LEXIS 11800
    (S.D.N.Y. July 11, 2003) ...........................................................................................................7

*United States Anchor Manufacturing v. Rule Industries*, 717 F. Supp. 1565
    (N.D. Ga. 1989) ......................................................................................................................19

*United States v. Bouchey*, 860 F. Supp. 890 (D.D.C. 1994) ......................................24, 25

*United States v. Di Girolamo*, 808 F. Supp. 1445 (N.D. Cal. 1992) ...........................22

*Varela v. Flintlock Construction, Inc.*, 2002 U.S. Dist. LEXIS 4327
    (S.D.N.Y. Mar. 18, 2002) .................................................................22, 23

*Varela v. Flintlock Constr., Inc.*, No. 01-2736, 2002 U.S. Dist. LEXIS 3521
    (S.D.N.Y. Mar. 5, 2002) ...................................................................23

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ..................................11

*Williams v. Federal Nat'l Mortgage Ass'n*, No. 05-1483, 2006 U.S. Dist. LEXIS 42911
    (D.D.C. June 26, 2006) .....................................................................3, 14

*Willig v. Gold*, 171 P.2d 754 (Cal. Ct. App. 1946) .......................................................16

*Worldspan L.P. v. Orbitz, LLC*, No. 05-5386, 2006 U.S. Dist. LEXIS 26
    (N.D. Ill. Apr. 19, 2006) ...................................................................6, 7

## <u>Other</u>

18 U.S.C. § 1030 ...........................................................................................................4

D.C. Code § 36-408 .....................................................................................................13

O.C.G.A. § 10-1-760 (effective July 1, 1990) ............................................................19

S. Rep. No. 104-357 (1996) .....................................................................................5, 9

Restatement (Second) of Torts div. 9, Introd. Note..................................................20

Companies Act § 132(8)-(10) (rev. 1989) (Bm.), *available at* http://www.bermudalaws.bm/. ....16

## INTRODUCTION

In its opening brief, BGR pointed out the fundamental flaws in IPOC's complaint and demonstrated that each of its claims is due for dismissal on multiple grounds. A common theme running through IPOC's response is that this court must credit boilerplate and conclusory allegations and indulge improbable inferences unsupported by any factual allegations to sustain its claims because this is a motion for judgment on the pleadings. That is not the law. Although the federal pleading requirements are forgiving, they are not meaningless. And to allow IPOC to proceed beyond this stage despite its fundamentally flawed allegations would render Federal Rule of Civil Procedure 12(c) a dead letter. As demonstrated below, IPOC's responses fall far short of salvaging its claims and accordingly its complaint should be dismissed in its entirety.

## ARGUMENT

**I.    All of IPOC's Claims Fail as a Matter of Law Because IPOC Has Not Adequately Alleged Causation and Damages.**

BGR has already shown that each of IPOC's claims fails as a matter of law because IPOC has not made any factual allegations of damages caused by defendants or even allegations of facts from which such damages could reasonably be inferred. Memorandum in Support of the Motion of Defendant Barbour Griffith & Rogers LLC for Judgment on the Pleadings ("BGR Rule 12(c) Br.") 4-6; Reply to Plaintiff IPOC's Opposition to Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss for Lack of Subject Matter Jurisdiction ("BGR Rule 12(b)(1) Reply Br."). IPOC does not contest that causation and damages are required elements of each of its claims nor attempt to refute BGR's analysis showing that the facts alleged in IPOC's complaint do not support any reasonable inference that IPOC has suffered damages attributable to BGR's actions.[1] Rather, IPOC attempts to distinguish the cases setting forth the elements of

---

[1] There is no merit, or sense, in IPOC's suggestion that "BGR cannot sincerely argue that the allegations in the Complaint fail to sufficiently allege damages, as in its own motion, BGR

its claims on the ground that these cases were decided after the pleadings stage and asserts that the naked recitation of those elements suffices to withstand a motion for judgment on the pleadings.  Plaintiff IPOC's Opposition to Barbour Griffith & Rogers LLC's Rule 12(c) Motion for Judgment on the Pleadings ("IPOC Rule 12(c) Br.") 5-7 & n.2.[2]

The procedural posture of the cases establishing that causation and damages are required elements of each of IPOC's claims is irrelevant: although the showing that a plaintiff must make increases at each stage of the proceedings, the elements themselves do not change.  And well-settled precedent establishes that neither "inferences . . . unsupported by the facts set out in the complaint" nor "legal conclusions cast in the form of factual allegations" offered in support of a required element are sufficient to survive a motion for judgment on the pleadings.  *E.g.*, *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see* BGR Rule 12(c) Br. 3 & n.2.

IPOC's precedents do not hold otherwise.  Indeed, in *Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, the court affirmed dismissal of one of the plaintiff's claims for failure to allege facts supporting an essential element of that claim.  148 F.3d 1080, 1083, 1088-89 (D.C. Cir. 1998).  And the court in *Krieger v. Fadely* rejected dismissal of the plaintiff's

---

asserts that IPOC 'hints at several possible harms' and then proceeds to describe at least three separate theories of harm alleged in IPOC's complaint," Plaintiff IPOC's Opposition to Barbour Griffith & Rogers LLC's Rule 12(c) Motion for Judgment on the Pleadings ("IPOC Rule 12(c) Br.") 7-8.  The analysis to which IPOC refers demonstrated that IPOC had failed to allege facts supporting an inference of damages caused by BGR on any of the bases hinted at in its complaint.

[2] In response to BGR's Rule 12(b)(1) motion, IPOC asserts that the misappropriation and disclosure of confidential information constitutes per se injury-in-fact for purposes of Article III of the Constitution.  *See* Plaintiff IPOC International Growth Fund Limited's Memorandum of Law in Opposition to Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss for Lack of Subject Matter Jurisdiction "(IPOC Rule 12(b)(1) Br.") 9.  Even were this true (and BGR's Rule 12(b)(1) Reply demonstrates that it is not), IPOC has failed to allege facts supporting any inference that it suffered *damages* as a result of such misappropriation and disclosure.

claim only after finding that the plaintiff had alleged facts, as opposed to "legal conclusions," in support of "the essential elements of his claim." 211 F.3d 134, 136 (D.C. Cir. 2000).[3]

Nor do IPOC's authorities establish that a more lenient rule applies to causation or damages. The court in *Williams v. Federal National Mortgage Ass'n* merely observed that "[t]he elements of termination and resultant damages" were "easily met" by the plaintiff in that case who had alleged the termination of a brokerage relationship and the loss of attendant commissions. No. 05-1483, 2006 U.S. Dist. LEXIS 42911, at *29-*30 (D.D.C. June 26, 2006).[4] Far from suggesting that causation and damages are subject to relaxed pleading requirements, *Williams* dismissed another claim for failure to "allege facts sufficient to show a causal connection between [plaintiff's] statutorily-protected activity" and defendant's actions. 2006 U.S. Dist. LEXIS 42911, at *21. And although the state-court decision in *Niemeyer v. United States Fidelity & Guaranty Co.* stated that a "plaintiff may plead causation in general terms," the "general" allegations to which it apparently referred were statements that a plaintiff lost specific customers because of defendant's actions. 789 P.2d 1318, 1321 (Okla. 1990) (discussing *Crystal Gas Co. v. Oklahoma Natural Gas*, 529 P.2d 987, 990 (Okla. 1974)).[5]

---

[3] *See also Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003) (plaintiff's "complaint contains sufficient factual allegations to warrant discovery on the question of scope of employment"); *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1103 (D.C. Cir. 1985) (plaintiff "alleged facts sufficient to entitle her to" relief); *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 511 A.2d 492, 500 (Md. 1986) (factual allegations adequate "by a thin hair" to survive dismissal); *Swierkiewicz v. Sorema*, 534 U.S. 506, 511-12 (2002) (employment-discrimination plaintiff need not "plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered").

[4] Indeed, the defendant there did not challenge the sufficiency of plaintiff's allegations of causation and damages. *See* 2006 U.S. Dist. LEXIS 42911, at *26-*27.

[5] Causation was not at issue in *Niemeyer* itself. Nor were causation or damages at issue in *Simpson v. Ha-Lo Indus.*, 74 F. Supp. 2d 861 (E.D. Wis. 1999), on which IPOC also relies.

IPOC's authorities thus confirm, rather than refute, the well-settled rule that a plaintiff may not survive a motion for judgment on the pleadings by relying on legal conclusions rather than factual allegations to support the required elements of its claims.  Because it has failed to offer factual allegations of damages caused by BGR or even to plead facts from which such damages can reasonably be inferred, and because causation and damages are required elements of each of its claims, IPOC's complaint must be dismissed in its entirety.

## II.  IPOC's Claim Under the Computer Fraud and Abuse Act Fails As a Matter of Law.

As BGR demonstrated, the CFAA's text, legislative history, and jurisprudence establish that "damage" encompasses only physical harm to the accessed computer or its content, that "loss" reaches only harm that results from actual or potential "damage," and that "access" requires entering, using, or otherwise being present on the computer.  IPOC has not alleged facts establishing any of these elements.  *See* BGR Rule 12(c) Br. 9-18.[6]

### A.  IPOC Has Not Alleged Cognizable "Damage."

As BGR demonstrated, IPOC's CFAA claim requires proof of *both* "damage" and "loss." *See* 18 U.S.C. § 1030(a)(5)(A)(iii), (B)(i).  Contrary to cardinal principles of statutory construction, IPOC asserts an apparently unbounded reading of "damage" under the CFAA that would render that statute's definition of "loss"—which patently complements "damage"— superfluous.  Indeed, IPOC actively blurs the line between "damage" and "loss" by adverting to discussions of "loss" to expand the scope of "damage."  For example, *EF Cultural Travel BV v. Explorica* considered whether "diagnostic measures that EF took after it learned of Explorica's access to its website"— which clearly did not constitute "damage"—could constitute "loss."  274

---

[6] Although IPOC has changed its position many times, BGR will hold IPOC to its most recent statement that its CFAA claim proceeds *not* under Section 1030(a)(4) or Section 1030(a)(2)(C), but rather *only* under Section 1030(a)(5)(A)(iii).  *See* IPOC Rule 12(c) Br. 9-10; BGR Rule 12(c) Br. 7-8.

F.3d 577, 584 (1st Cir. 2001).  The court reviewed the same legislative history that IPOC cites, which explained that when an "intruder" obtains passwords and then alters the computer's files to conceal its access, thereby requiring system users to change their passwords and the system administrator to re-secure the system, "although there is arguably no 'damage,' the victim does suffer 'loss.' "  S. REP. NO. 104-357, at 11 (1996).  The court agreed with *In re DoubleClick Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), "that this legislative history makes 'clear that Congress intended the term "loss" to target remedial expenses borne by victims that could not properly be considered direct damage caused by a computer hacker.' "  *EF Cultural Travel*, 274 F.3d at 585 (quoting *DoubleClick*, 154 F. Supp. 2d at 521).  Thus concluding that "Congress's use of the disjunctive, 'damage or loss,' confirms that it anticipated recovery in cases involving other than purely physical damage," 274 F.3d at 585, the court was saying that even though the plaintiff's injury did not constitute "damage"—because it was not direct damage to "the computer []or its information," S. REP. NO. 104-357, at 11, *quoted in EF Cultural Travel*, 274 F.3d at 584—it could constitute "loss."[7]  Contrary to IPOC's suggestion, IPOC Rule 12(c) Br. 10-11, the court was not saying that "damage" need not involve physical damage.[8]  IPOC's other citations suffer the same defect—the courts viewed injury that goes beyond the physical harm to the computer or its content as "loss," not as "damage."  *See Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars*, 387 F. Supp. 2d 378, 381-82 (S.D.N.Y. 2005) ("damage" means "inoperability of[] the accessed computer system"; "loss" must be "related to" "damage"); *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 251-52 & n.12 (S.D.N.Y. 2000) (computer

---

[7] Some provisions of the CFAA—but not the provisions relied on by IPOC here—allow recovery on a showing of "loss" even absent a showing of "damage."

[8] BGR did not "misquote[] *DoubleClick*" when it argue[d] that [*DoubleClick*] held that ' "damage" is "direct damage caused by a computer hacker." ' "  IPOC Rule 12(c) Br. 12. *DoubleClick* was explaining that "loss" complements the narrowly defined "damage," which is limited to direct harm to the computer.  *See* 154 F. Supp. 2d at 520-21.

system's "malfunction or crash" could constitute "damage"; costs resulting from that crash, including "costs relating to repair and lost data and . . . lost good will," could constitute "loss"; lost revenue from "exploitation" of information obtained through access constituted neither "damage" nor "loss").[9]

IPOC dismisses *Resdev, LLC v. Lot Builders Ass'n*, No. 04-1374, 2005 U.S. Dist. LEXIS 19099 (M.D. Fla. Aug. 10, 2005), as irrelevant because "it does not even use the phrase 'physical harm' " and because it concerned the misappropriation of a "trade secret." IPOC Rule 12(c) Br. 12. But the status of the appropriated information made no difference—*Resdev* shows that injury resulting from the appropriation of information is not "damage" unless it involves "some diminution in the completeness or useability of data or information on a computer." *Resdev*, 2005 U.S. Dist. LEXIS 19099, at *13 n.3. IPOC has not alleged such diminution. IPOC contends that *DoubleClick* is "useless" because the court there "*merely* denied plaintiff damages for lost attention to advertising and the value of collecting improperly obtained demographic information." IPOC Rule 12(c) Br. 12 (emphasis added). But IPOC offers no explanation why the appropriation and disclosure of its information comes within the scope of "damage" but the injury alleged in *DoubleClick* does not, particularly when *DoubleClick* makes clear that not even the cost of "securing or remedying [the computer] systems in the wake of" the access constitutes "damage." 154 F. Supp. 2d at 524.

Therefore, IPOC's allegations regarding "BGR's [alleged] malicious leak of IPOC's confidential information to the public," IPOC Rule 12(c) Br. 11, does not constitute "damage" under the CFAA. *See also Worldspan L.P. v. Orbitz, LLC*, No. 05-5386, 2006 U.S. Dist. LEXIS

---

[9] As explained previously, the view of "damage" taken in *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121 (W.D. Wash. 2000), lacks statutory and precedential basis, *see* BGR Rule 12(c) Br. 10 n.10, and IPOC has offered no reason to conclude otherwise.

26153, at *15 (N.D. Ill. Apr. 19, 2006) ("[W]e reject Worldspan's argument that the mere

'taking of information' constitutes 'damage' under the CFAA.").  Further, IPOC's naked

allegation that the allegedly misappropriated information benefited its litigation adversaries and

"caus[ed] 'damage and loss to IPOC in excess of $5,000,' " *see* IPOC Rule 12(c) Br. 11, "merely

parrots the 'causing damage' text of the CFAA in conclusory fashion and fails to allege any facts

indicating that the completeness, useability, or availability of [its] data was impaired," and is

therefore insufficient to survive BGR's motion for judgment on the pleadings.  *Worldspan*, 2006

U.S. Dist. LEXIS 26153, at *15.

### B.    IPOC Has Not Alleged Cognizable "Loss."

As with "damage," IPOC accords "loss" a boundless scope, rendering much of the

statutory definition of "loss" surplusage.  Indeed, IPOC wholly ignores BGR's textual analysis of

this definition.  *See* BGR Rule 12(c) Br. 12-13.  Instead, IPOC attempts to distinguish several

decisions on the ground that IPOC "does not seek to recover 'lost profits' resulting from BGR's

and/or Diligence's misconduct, travel costs unrelated to computer investigation or repair, or the

cost of tracking down Diligence or BGR."  IPOC Rule 12(c) Br. 13.  IPOC does not explain,

however, how its allegations constitute "loss" when the injuries alleged in those cases did not.

The courts in those cases provided a clear reason—equally dispositive here—why the allegations

there did not constitute "loss":  because "costs not related to computer impairment or computer

damages are not compensable under the CFAA."  *Civic Ctr. Motors*, 387 F. Supp. 2d at 381-82.[10]

IPOC asserts that the alleged misappropriation of its "confidential documents" "harmed

---

[10] *See also Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) (cost
is not "loss" if it is "unrelated to a computer"); *Resdev*, 2005 U.S. Dist. LEXIS 19099, at *11
("The CFAA's 'loss' definition goes on to list costs that are similar in that they are all directly
associated with, or with addressing, an unauthorized-computer-access event."); *Tyco Int'l (US)
Inc. v. John Does*, No. 01-3856, 2003 U.S. Dist. LEXIS 11800, at *4-*5 (S.D.N.Y. July 11,
2003) ("loss" is "generally . . . limited to those costs necessary to assess the damage caused to
the plaintiff's computer system or to resecure the system in the wake of a hacking attack").

[its] competitive advantage."  IPOC Rule 12(c) Br. 13 (citing Compl. ¶¶ 20-21).  But neither harm to a competitive advantage nor the mere appropriation of confidential information constitutes "loss" if not related to harm to the accessed computer, which, as discussed above, IPOC does not allege.  *See, e.g.*, *Civic Ctr. Motors*, 387 F. Supp. 2d at 382 (because "lost profits resulting from Defendant's unfair competitive edge . . . are [not] the result of computer impairment or computer damage . . . , they are not compensable 'losses' under the CFAA."); *Resdev*, 2005 U.S. Dist. LEXIS 19099, at *11 (lost trade secret value is not "loss").

IPOC's cited decisions do not establish that "loss" need not be related to harm to the accessed computer or its content.  *See* IPOC Rule 12(c) Br. 13-14.  As BGR noted previously, the court in *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268, 1323-24 (S.D. Fla. 2003), erroneously applied a superseded version of the CFAA, which did not define "loss" at all.  *See* BGR Rule 12(c) Br. 15 n.16.  *Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1196-97 (E.D. Wash. 2003), made the same mistake by following *EF Cultural Travel*'s conception of "loss," since the court in *EF Cultural Travel*, 274 F.3d at 584, considered (correctly, at the time) the version of the CFAA that did not expressly define "loss."  *Pacific Aerospace* also went astray by crediting *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121 (W.D. Wash. 2000), for the proposition that the appropriation of confidential information, standing alone, could constitute "damage"; as explained previously, *see* BGR Rule 12(c) Br. 10 n.10, *Shurgard*'s holding rests on "an unusual and extraordinary"—and soundly rejected—"interpretation of the word 'integrity.' "[11]  *Resdev*,

---

[11] IPOC's assertion that its loss "consists of an *impairment to the integrity* of its 'confidential documents,' " IPOC Rule 12(c) Br. 13 (citing Compl. ¶ 20) (emphasis added), is an inaccurate characterization of its complaint.  IPOC alleges only that Diligence "obtained through fraud and bribery" its purportedly confidential information and "provided" that information to IPOC's "litigation adversaries," Compl. ¶¶ 20-21, *not* that the alleged access diminished the

2005 U.S. Dist. LEXIS 19099, at *13 n.3.[12]

### C.    IPOC Has Not Alleged Cognizable "Access."

Using the word "access" is not "all IPOC had to do" to state a valid claim.  IPOC Rule 12(c) Br. 14.  BGR has not sought to hold IPOC to "a heightened pleading standard," IPOC Rule 12(c) Br. 14, but merely shown that it has failed to satisfy the ordinary pleading requirement by alleging *facts* sufficient to permit any inference of "access."  *See* BGR Rule 12(c) Br. 18.

IPOC has not shown that Diligence or BGR "accessed" KPMG's computer even if only KPMG's own agents ever entered, used, or were otherwise present on its computer.  The fact that "technology evolves rapidly," IPOC Rule 12(c) Br. 15, shows only that the ways in which "access" is *obtained* might change over time, not that one could "access" a computer for purposes of the CFAA without ever entering, using, or otherwise being present on the computer. The Senate Report IPOC quotes was not addressing "access," but rather explaining that the separate statutory phrase "obtaining information" was not limited to "physically removing the dat[a] from its original location or transcribing the data" but could include "mere observation." S. Rep. No. 104-357, at 7 (1996) (quoting Senate Judiciary Committee report No. 99-432, 99th Cong., 2d sess., at 6-7 (1986)).  *Shurgard* does not support IPOC's position, either.  Although the defendant there "accessed" the plaintiff's computer through the plaintiff's own employee, that employee was properly deemed the *defendant*'s agent because the defendant had agreed to hire him formally as soon as he gave the plaintiff's information to the defendant.  119 F. Supp. 2d at

---

completeness or useability of data or information on KPMG's computer.  *See Resdev*, 2005 U.S. Dist. LEXIS 19099, at *13 n.3 (explicating meaning of "impairment to the integrity" in context of CFAA).

[12] By following *Four Seasons*, *Pacific Aerospace*, and *Shurgard*, the courts in *C.H. Robinson Worldwide, Inc. v. Command Transportation, LLC*, No. 05-3401, 2005 U.S. Dist. LEXIS 28063, at *7-*10 (N.D. Ill. Nov. 16, 2005), *Charles Schwab & Co. v. Carter*, No. 04-7071, 2005 U.S. Dist. LEXIS 5611, at *8-*10 (N.D. Ill. Feb. 11, 2005), and *George S. May International Co. v. Hostetler*, No. 04-1606, 2004 U.S. Dist. LEXIS 9740, at *9-*10 (N.D. Ill. May 28, 2004), simply perpetuated these errors.

1123. And *Shurgard*'s discussion of Senate Report 99-432 pertained to the "scope of the terms

'protected computer' and 'without authorization,' " not to the meaning of "access." *Id.* at 1129.

Finally, IPOC's attempt to distinguish *Role Models Am., Inc. v. Jones*, 305 F. Supp. 2d 564 (D.

Md. 2004), on the ground that the defendant there "merely . . . passively 'received

information,' " IPOC Rule 12(c) Br. 16, misses the point: however the defendant allegedly

received the information, if it did not do so by entering, using, or otherwise being present on the

computer, then the defendant has not "accessed" the computer, and the claim must fail. Like the

plaintiff in *Role Models*, 305 F. Supp. 2d at 566-67 & n.4, IPOC has not alleged such facts, and

therefore it has not alleged that Diligence or BGR "accessed" KPMG's computer.

### III.    Counts I, III-V, and VII Fail Because IPOC Has Not Alleged Underlying Wrongs.

BGR demonstrated previously that the alleged fraud was not pleaded with requisite

particularity and that the alleged bribery is unsupported by factual allegations. *See*

Memorandum in Support of the Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss

for Failure to Plead Fraud with Particularity ("BGR Rule 9(b) Br.") 3-5; Reply to Plaintiff

IPOC's Opposition to Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss for

Failure to Plead Fraud with Particularity ("BGR Rule 9(b) Reply Br.") 7-11.[13] IPOC now

contends that it has alleged other underlying wrongs: "intimidation, interference with KPMG

FAS's investigation, dissemination of confidential information to IPOC's litigation and

commercial rivals, disclosure of that information to the press, accessing information without

authorization, theft, and trespass." IPOC Rule 12(c) Br. 8. But IPOC never alleges any facts

---

[13] The authorities that IPOC cites relating to bribery, IPOC Rule 12(c) Br. 9, betray the inadequacy of its bribery allegation: unlike the plaintiff in those cases, IPOC has still not alleged a fact to establish a basic element of bribery, namely, the thing of value that Diligence gave or offered to KPMG. *See* BGR Rule 9(b) Reply Br. 11.

explaining how Diligence "intimidated" KPMG or "interfered with" KPMG's investigation other than through the alleged fraudulent "impersonation" of intelligence agents or "bribery." If those allegations are simply a restatement of the allegation of fraud or bribery, they fail for the reasons that the allegations of fraud and bribery fail, *see, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (allegation can be tantamount to fraud "even if the word 'fraud' is not used"); if they are intended to be distinct from the alleged fraud and bribery, they fail because they are wholly conclusory, lacking any supportive factual allegations. The alleged theft (that is, the alleged misappropriation of confidential information), disclosure, and unauthorized access[14] are not inherently wrongful; they are wrongful only if done through wrongful means, and here the only such means identified are the inadequately pleaded fraud and the inadequately pleaded bribery. Thus, the allegations of theft, disclosure, and unauthorized access fail for the same reasons that the allegations of fraud and bribery fail.

IV.    **Counts I and III-VII Fail as a Matter of Law Because They Are Preempted by the District of Columbia's Adoption of the Uniform Trade Secrets Act.**

Diligence and BGR have demonstrated that the Uniform Trade Secrets Act ("UTSA"), which the District of Columbia has adopted, establishes a single, exclusive category of protected confidential commercial information—statutory trade secrets—as well as an exclusive framework for redressing the misappropriation of such information. *See* Memorandum in Support of Diligence, Inc.'s Motion to Dismiss ("Diligence Rule 12(b)(6)") Br. 8-18; Reply Memorandum in Support of Diligence, Inc.'s Motion to Dismiss ("Diligence Rule 12(b)(6) Reply Br.") 10-14; BGR Rule 12(c) Br. 19-21. IPOC acknowledges that the gravamen of "all of IPOC's claims" is "that BGR and Diligence directly injured IPOC by tortiously misappropriating IPOC's information," Plaintiff IPOC International Growth Fund Limited's Memorandum of Law

---

[14] The asserted "trespass," which is not explicitly identified in the complaint, is presumably nothing more than the alleged unauthorized access of KPMG's computer.

in Opposition to Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss for Lack of

Subject Matter Jurisdiction ("IPOC Rule 12(b)(1) Br.") 2, yet it expressly disclaims that any of

its claims "assert the existence or misappropriation of a trade secret," IPOC Rule 12(c) Br. 16.  It

follows that all of IPOC's common-law claims are barred by the UTSA and should be dismissed.

The authorities that IPOC cites to escape this result are not persuasive.  Diligence has

already addressed most of them.  Some, such as the Seventh Circuit's decision in *Hecny*

*Transportation, Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005), are patently distinguishable.[15]  And to

whatever extent other decisions do support IPOC's position, they reflect "the position of a

minority of courts" that has been rejected as unpersuasive and contrary to "the history, purpose,

and interpretation" of the UTSA by "the weight of authority among courts that have considered

the [UTSA] preemption provision."  *Mortgage Specialists, Inc. v. Davey*, No. 05-067, 2006 N.H.

LEXIS 106, at *22-*23 (N.H. July 26, 2006) (collecting decisions).[16]  Especially given the

---

[15] In *Hecny*, the gravamen of plaintiff 's claim was that its manager had misappropriated its assets—including its confidential information, office space, its employee's time, and its physical assets—to assist competing businesses.  430 F.3d at 403-04.  The Seventh Circuit affirmed dismissal of plaintiff's claims relating to the misappropriation of confidential information because that information did not constitute a trade secret.  *Id*. at 404.  The court went on to find that the fact that the misappropriated *information* was not protected did not mean that defendant could misappropriate *other assets*: even if the misappropriated information was unprotected, "that would not have permitted its managers to go into covert competition using [plaintiff's] own depot and staff, or to walk off with computers and fax machines, as [plaintiff] alleges [defendant] did."  *Id*.  *Hecny* is thus fully consistent with the Seventh Circuit's previous holding in *Composite Marine Propellers, Inc. v. Van Der Woude*—decided by a panel that included *Hecny*'s author—that the UTSA "has abolished all common law theories of misuse of [secret] information" and, accordingly, that "[u]nless defendants misappropriated a (statutory) trade secret, they did no legal wrong."  962 F.2d 1263, 1265 (7th Cir. 1992).

[16] The rationale of *Mortgage Specialists* and similar decisions applies even where, as here, there is no allegation that the allegedly misappropriated information qualified as a trade secret.  *See, e.g.*, *Mortgage Specialists*, 2006 N.H. LEXIS 106 at * 25-*26 (concluding that the UTSA "preempts claims that are based upon the unauthorized use of information, regardless of whether that information meets the statutory definition of a trade secret" and "essentially creates a system in which information is classified only as either a protected 'trade secret' or unprotected 'general . . . knowledge' ") (quotation marks omitted) (alteration supplied); *Composite Marine Propellers,*

express statutory directive that the UTSA "shall be applied and construed to make uniform the law with respect to trade secrets among the District of Columbia and those states enacting it," D.C. Code § 36-408, this Court should decline IPOC's invitation to embrace the minority view.

Nor do IPOC's new authorities provide a meaningful basis for departing from the majority view.  In *Russo v. Ballard Medical Products*, No. 05-59, 2006 U.S. Dist. LEXIS 57130 (D. Utah Aug. 10, 2006), the court, in striking contrast to *Mortgage Specialists*, engaged in only a few paragraphs of cursory analysis and appears to have overlooked the extensive body of case law addressing the UTSA's preemptive effect.  Indeed, *Russo*'s preemption discussion cites only two decisions, neither of which supports its narrow view.[17]  And *PM Services Co. v. Odoi Associates, Inc.*, 2006 U.S. Dist. LEXIS 655 (D.D.C. Jan. 4, 2006)—which addressed factual allegations very different from IPOC's—nowhere considered the effect of the UTSA on plaintiff's claims.

## V.    Counts I and III-VII Fail as a Matter of Law for Additional Reasons.

### A.    Count I: Tortious Interference with Business Expectancies

As BGR's opening brief makes clear, IPOC's alleged business expectancies are invalid because they are not prospective and do not involve contractual or other voluntary commercial relationships.  BGR Rule 12(c) Br. 22-31; *see also P.M. Services Co.*, No. 03-1810, 2006 U.S.

---

*Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992), *quoted in supra* note 15; *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004) ("the UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status").

[17] *See Penalty Kick Management Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1297-98 (11th Cir. 2003) (declining to take position on whether UTSA preempts common-law actions for misappropriation of non-trade secret information); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 218, 221-22 (D. Del. 2004) ("because the formulas and processes involving PPDI are not [plaintiff's] trade secrets, [plaintiff] does not have an ownership right in them," and accordingly plaintiff's "common law claims [relating to these formulas and processes] are either preempted by [the UTSA] or precluded as a matter of law").

Dist. LEXIS 655, at *109 ("To survive a motion to dismiss, a plaintiff must allege business expectancies, not grounded in present contractual relationships, but which are commercially reasonable to expect.  For the most part the 'expectancies' thus protected have been those of future contractual relations . . . ."); *Williams*, 2006 U.S. Dist. LEXIS 42911, at *28 ("It is well-established that [a] protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted.").  Furthermore, as BGR has shown, a plaintiff cannot have a valid business expectancy in concealing evidence of criminal wrongdoing or in the integrity or outcome of an adversary proceeding or a government investigation.  *See also Blank v. Kirwan*, 703 P.2d 58 (Cal. 1985) ("The tort has traditionally protected the expectancies involved in ordinary commercial dealings—not the 'expectancies,' whatever they may be, involved in the governmental licensing process.").  Accordingly, Count I fails as a matter of law.

IPOC fails to identify a single decision from any jurisdiction recognizing as a valid business expectancy anything remotely resembling the expectancies alleged here.  Although *Allen v. Hall* held that an inheritance could constitute a valid expectancy given the long recognition and protection of inheritance interests at common law, 974 P.2d 199, 202 (Or. 1999), subsequent Oregon authority has made clear that valid business expectancies are limited to "voluntary economic relationships, both commercial and noncommercial, that would have very likely resulted in a pecuniary benefit to the plaintiff but for the defendant's interference," *Fox v. Country Mut. Ins. Co.*, 7 P.3d 677, 690 (Or. Ct. App. 2000).  Although the interest in an inheritance at issue in *Allen* satisfied this standard, IPOC's alleged expectancies plainly do not, even in Oregon.  *See id.* (interest in outcome of litigation is not protected).[18]

---

[18] Nothing in *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002), or *Biro v. Hirsch*, 771 A.2d 129 (Conn. App. Ct. 2001), which IPOC also cites, suggests that involuntary, noncommercial relationships, such as those alleged by IPOC here, are protected.

Nor can IPOC have a valid expectancy in the outcome of an adversary proceeding or government investigation.  Contrary to IPOC's suggestion, *see* IPOC Rule 12(c) Br. 25-26, the court in *Carr v. Brown* found the plaintiff's alleged expectations unreasonable because they were "simply too remote, depending as they do on governmental approval."  395 A.2d 79, 84 (D.C. 1978).[19]  *Casco Marina Development, LLC v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77 (D.C. 2003), is not to the contrary.  *See* IPOC Rule 12(c) Br. 25 & n.11.  There, a government agency, in its capacity as landlord, refused to approve a sublease despite its contractual obligation to do so.  834 A.2d at 79-80, 82.  The plaintiff thus had been "doing business with a governmental body," *Carr*, 395 A.2d at 84, which was acting not in an investigative or adjudicatory capacity but in a commercial capacity pursuant to a contract imposing obligations that "were ministerial in nature," *Casco Marina*, 834 A.2d at 82, and "neither require[d] nor le[ft] room for discretion," *id*. at 81.[20]  And IPOC offers no response to BGR's demonstration that the proper remedy for a party challenging an adversary proceeding or

---

[19] BGR's numerous other authorities cannot reasonably be understood to be limited to cases implicating First Amendment concerns, or to where the entity conducting the adversary proceeding or investigation expressly vouches for the integrity of its procedures, *see* IPOC Rule 12(c) Br. 26-27.  The First Amendment is mentioned in only one of BGR's authorities, *Matossian v. Fahmie*, 161 Cal. Rptr. 532 (Cal. Ct. App. 1980).  And while *Democratic State Committee v. Bebchick* noted that the D.C. Circuit had stated its authorization and approval of the *determination* challenged by the plaintiff, it did not approve (or even acknowledge) the supposedly improper procedures through which plaintiff alleged that this determination was made.  706 A.2d 569, 571-74 (D.C. 1998).  There is also no reason to think that this factor played a dispositive role in the court's analysis given its reliance on *Carr* and its observation that plaintiff's alleged expectancy "was totally within the discretion of the D.C. Circuit."  *Id*. at 573.

[20] IPOC also relies on *Ellett v. Giant Food, Inc.*, 505 A.2d 888 (Md. Ct. Spec. App. 1986).  *See* IPOC's Sur-reply to Diligence's Reply Memorandum in Support of Diligence's Motion to Dismiss ("IPOC Rule 12(b)(6) Surreply Br.") 7.  The alleged interference there did not pertain to an adversary or investigative proceeding, but rather to an application for unemployment benefits.  And like *Casco* but unlike here, the governmental action in which the plaintiff claimed an expectancy did not permit any exercise of official discretion.  *See* 505 A.2d at 894-95.  Moreover, *Ellett* was decided under Maryland law and cannot control *Carr* and the other D.C. decisions cited by BGR.

a government investigation is an appeal or direct judicial review, not collateral attack in a tort suit. *See* BGR Rule 12(c) Br. 29. Indeed, IPOC acknowledges that it is appealing the decision of the Zurich tribunal, *see* IPOC Rule 12(c) Br. 4 n.1, it has already challenged (unsuccessfully) the enforceability of that ruling in Bermuda, BGR Rule 12(b)(1) Reply Br. 2 n.1, and its license will not be revoked pursuant to the Bermuda investigation without prior judicial review, Companies Act § 132(8)-(10) (rev. 1989) (Bm.), *available at* http://www.bermudalaws.bm/.

Equally meritless is IPOC's response to BGR's demonstration that IPOC can have no valid expectancy in concealing evidence of wrongdoing. IPOC argues that BGR has improperly injected inferences from outside the four corners of the complaint, posits interests that the Government of Bermuda and the public might have in the confidentiality and integrity of the Bermuda investigation, and attempts to distinguish BGR's authorities. *See* IPOC Rule 12(c) Br. 20, 22-24. All of the inferences on which BGR relies, however, follow unavoidably from IPOC's allegations, the statutes governing the Bermuda investigation, and the decision of the Zurich tribunal, of which this Court may take judicial notice. *See* BGR Rule 12(c) Br. 1 n.1, 3. IPOC provides no authority or analysis for how the *Bermuda government's* or the *public's interest* in the confidentiality of the Bermuda investigation could outweigh the well-settled public policy against concealing evidence of criminal wrongdoing or could somehow provide *IPOC* a legally protected expectancy in keeping such evidence from the Zurich tribunal. IPOC's assertion that disclosure of such evidence is privileged only if made to government authorities is plainly wrong, for both *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850 (10th Cir. 1972), and *Willig v. Gold*, 171 P.2d 754, 814 (Cal. Ct. App. 1946), involved disclosures to private parties situated similarly to IPOC's "litigation adversaries."

### B.    Count IV: Tortious Interference with Contractual Relations

BGR has demonstrated that Count IV fails because IPOC has failed to allege a valid

contract.  The agreement it alleges does not constitute a valid contract for two independent

reasons: public policy bars enforcement of any agreement that prevents disclosure of evidence of

IPOC's criminal wrongdoing, and the alleged agreement lacks consideration.  *See* BGR Rule

12(c) Br. 31-35.  IPOC responds first that illegality is an affirmative defense that cannot support

dismissal of its claim on the pleadings.  *See* IPOC Rule 12(c) Br. 30.[21]  IPOC has cited no

authority establishing that illegality is an affirmative defense to a claim for tortious interference

with a contract, as opposed to a claim for breach of contract—indeed, under D.C. law, a plaintiff

claiming tortious interference has the burden of proving the existence of a valid contract.

*Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 289 (D.C. 1989).

But even if illegality were an affirmative defense in this case, it would still be appropriate to

resolve this issue at this stage because, as IPOC's sole authority on this point recognizes, a claim

can be dismissed on the basis of an affirmative defense "if such a defense is raised on the face of

the complaint."  *IHS Acquisition XV, Inc. v. Kings Harbor Care Ctr.*, No. 98-7621, 1999 U.S.

Dist. LEXIS 5448, at *3-*4 (S.D.N.Y. Apr. 16, 1999).  IPOC's allegations, read in conjunction

with matters of which this Court may take judicial notice, establish that public policy would bar

enforcement of IPOC's alleged agreement to conceal evidence of its criminal misconduct.

IPOC next contends that this Court should infer the existence of consideration based on

its bald allegation that KPMG was subject "to statutory and contractual understandings of

confidentiality."  Compl. ¶ 17.  Although IPOC speculates that it "may come forward with proof

that it went beyond its statutory obligations or gave up a statutory entitlement in consideration"

---

[21] IPOC's assertions that BGR has improperly relied on matters outside the complaint and that public policy favors its alleged agreement with KPMG fail for the same reasons discussed above.

for KPMG's alleged undertaking, IPOC Rule 12(c) Br. 31-32, it offers not a single factual allegation that might conceivably support this assertion.[22]  IPOC also argues that the existence of consideration is necessarily an issue of fact that cannot be decided on the pleadings.  IPOC Rule 12(c) Br. 32-33.  BGR's authorities plainly hold, however, that consideration can be decided as a matter of law on undisputed facts.  IPOC's attempt to distinguish these authorities on the ground that they arose in later procedural postures is nonsense.  If consideration can be decided as a matter of law on undisputed facts, it can also be decided as a matter of law where, as here, the facts alleged are patently inconsistent with any inference of consideration.  *See also Lufthansa Cargo A.G. v. County of Wayne*, No. 01-74579, 2002 U.S. Dist. LEXIS 16493 (E.D. Mich. Aug. 16, 2002) (dismissing plaintiff's contract claim because defendant's alleged agreement to perform duties already imposed by statute was not supported by consideration).  Nor do IPOC's authorities establish otherwise.  *See, e.g.*, *National Educ. Ass'n-R.I. v. Retirement Bd. of R.I. Employees' Ret. Sys.*, 890 F. Supp. 1143, 1159-60 (D.R.I. 1995) (distinguishing *existence* of consideration, which can be resolved on pleadings where, as here, plaintiff fails to allege the existence of any consideration whatsoever, from *adequacy* of consideration, which could not).[23]

---

[22] Indeed, IPOC's conclusory use of the word "contractual" and its unadorned speculation are textbook examples of "legal conclusions cast in the form of factual allegations" and "inferences drawn by Plaintiffs if such inferences are unsupported by the facts set out in the complaint" that controlling precedent reject as insufficient to survive dismissal or judgment on the pleadings. *E.g., Kowal*, 16 F.3d at 1276.

[23] Plaintiff's other authorities likewise fail to support its position.  *Connors, Fiscina, Swartz & Zimmerly v. Rees* merely recites the elements of a claim for tortious interference with contractual relations and has nothing to do with consideration or even pleading requirements.  599 A.2d 47, 51 n.6 (D.C. 1991). Although *Tuff-N-Rumble Management Inc. v. Sugarhill Music Publishing Inc.* did state that several issues, including "good faith, consideration, and notice" were "issues of fact which cannot be decided here on a motion to dismiss," in context it is plain that the court meant only that these matters raised issues of fact *in that case*.  8 F. Supp. 2d 357, 361 (S.D.N.Y. 1998).  Nor does *Stanford v. Kraft Foods, Inc.* support IPOC's argument because although the court there did credit plaintiff's allegation of the existence of one legally enforceable contract that was consistent with plaintiff's factual allegations, it dismissed her claim respecting another

### C.    Count III: Procuring Information by Improper Means

BGR's opening brief demonstrated that Count III fails because the District of Columbia has not recognized the tort of procuring information by improper means and that federal courts cannot create a new cause of action on the District's behalf, especially given D.C.'s adoption of the UTSA.  BGR Rule 12(c) Br. 35-38.  IPOC looks to other jurisdictions that have adopted this tort, IPOC Rule 12(c) Br. 28 & n.13, but as BGR has already noted, no court, with one aberrant exception, has recognized this tort in any jurisdiction that has adopted the UTSA.  *See* BGR Rule 12(c) Br. 36-38.  The sole decision IPOC cites to dispute this point actually confirms it: *United States Anchor Manufacturing v. Rule Industries, Inc.*, 717 F. Supp. 1565 (N.D. Ga. 1989), was decided under Georgia law one year *before* the UTSA took effect there.  *See* O.C.G.A. § 10-1-760, *et seq*. (effective July 1, 1990).

Citing *Schwartz v. Franklin National Bank*, 718 A.2d 553 (D.C. 1998), IPOC also argues that this court may recognize this tort because it appears in the *first* Restatement of Torts.  IPOC Rule 12(c) Br. 28-30.  *Schwartz*, however, held merely that reliance on the Restatement was sufficient *to avoid Rule 11 sanctions* in the *D.C. courts*, 718 A.2d at 556; nothing in that decision suggests that a *federal court* may *adopt a new cause of action* based solely on the Restatement.  Furthermore, as BGR has explained, the provisions on which IPOC relies were intentionally omitted from the second Restatement of Torts because they (and other omitted provisions) addressed matters now "governed extensively by legislation and largely divorced from their initial grounding in the principles of tort."  *Avco Corp. v. Precision Air Parts, Inc.*, No. 79-275-N, 1980 U.S. Dist. LEXIS 16413, at *7 n.7 (M.D. Ala. Sept. 4, 1980); *see also* RESTATEMENT

---

contract because, as here, the facts that she alleged "effectively 'plead her out' of this claim."  88 F. Supp. 2d 854, 855-56 (N.D. Ill. 1999).

(SECOND) OF TORTS div. 9, Introd. Note.[24]  And *Tavoulareas v. Washington Post Co.*, 724 F.2d
1010 (D.C. Cir. 1984), involved neither D.C. law nor any sort of tort claim; rather, it addressed
the propriety, under the Federal Rules of Procedure and as a matter of federal law, of lifting a
protective order that had sealed certain discovery materials that had not been used at trial.  And
in all events, that decision has no continuing precedential force because it was vacated.
*Tavoulareas v. Washington Post Co.*, 737 F.2d 1170, 1172 & n.* (D.C. Cir. 1984) (en banc).

### D.    Count V: Common Law Unfair Competition

BGR's opening brief demonstrated that IPOC's claim for common-law unfair
competition fails because IPOC has failed to allege misappropriation of any commercial
advantage or even interference with a protected commercial interest.  *See also Berni v.
International Gourmet Rests. of America, Inc.*, 838 F.2d 642, 648 (2d Cir. 1988) (explaining that
the tort of common law unfair competition "is meant to protect property rights of commercial
value and a plaintiff must establish such rights as a prerequisite to relief" and affirming dismissal
of claim given "the lack of pleaded facts supporting a colorable property or pecuniary interest").
As explained above and in previous briefing, IPOC has failed to allege facts establishing the
misappropriation of protected information, interference with a valid business expectancy or
contractual relationship, or the type of bribery or intimidation that could entail misappropriation
of a commercial advantage or interference with a protected commercial interest.  *See* BGR Rule
12(c) Br. 38-42.  Rather than attempting to identify a commercial advantage that defendants have
misappropriated or a protected commercial interest with which they have interfered, IPOC
responds with decisions noting the wide variety of means through which a defendant can commit

---

[24] Contrary to IPOC's suggestion, the legislation to which *Avco Corp.* and the Second
Restatement refer as having largely displaced the common law principles reflected in the omitted
provisions of the first Restatement is not limited to the federal copyright statute, but undoubtably
includes the UTSA and other state and federal statutes as well.

the tort of unfair competition.  Absent allegations establishing that defendants have in fact

misappropriated or interfered with a protected commercial interest, however, the variety of ways

in which they theoretically could do so is beside the point.

None of IPOC's authorities is to the contrary.  In *Roy Export Co. v. Columbia*

*Broadcasting System, Inc.*, the court explained that by infringing plaintiff's copyright, defendant

had "unquestionably appropriated the skill, expenditures and labor of the plaintiffs to its own

commercial advantage."  672 F.2d 1095, 1104-05 (2d Cir. 1982) (internal quotations omitted).

Similarly, the court in *Blank v. Pollack* refused to dismiss plaintiff's claim only after noting that

plaintiff had alleged "that the defendant misappropriated [plaintiff's] skill and expenditure of

time and resources, in the form of a design idea and drawings, and used them for commercial

advantage."  916 F. Supp. 165, 173 (N.D.N.Y 1996).[25]

In any case, IPOC's attempt to shoehorn its allegations into the categories of recognized

means by which a defendant may commit the tort of unfair competition is unpersuasive.  As

IPOC notes, *see* IPOC Rule 12(c) Br. 34-35, under D.C. law, a defendant may commit this tort

through various means, including "intimidation of customers or employees" and "commercial

bribery."  *B&W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982).  Although

IPOC argues that it has alleged "commercial bribery" and "intimidation," *see* IPOC Rule 12(c)

Br. 36-37, *B&W Management* refers to "intimidation *of customers or employees*," not

---

[25] In *Furash & Co. v. McClave*, the court's denial of summary judgment on plaintiff's unfair
competition against one defendant followed naturally from its conclusion that material issues of
fact regarding whether the defendant had "improperly solicited clients for her personal benefit in
order to interfere with [plaintiff's] business relationships," prevented summary judgment on
plaintiff's claim against that defendant for intentional interference with contracts or prospective
contractual relations.  130 F. Supp. 2d 48, 56-57 (D.D.C. 2001).  By contrast, the court granted
summary judgment for the other defendant on plaintiff's unfair competition claim after granting
summary judgment for that defendant on plaintiff's other claims.  *Id.* Potential liability for unfair
competition thus depended on interference with a protected commercial interest.

intimidation simpliciter, and commercial bribery requires, among other things, "the offer of consideration *to another's employee or agent.*"   *E.g., United States v. Di Girolamo*, 808 F. Supp. 1445, 1448 n.1 (N.D. Cal. 1992) (emphasis added) (quoting 2 CALLMAN, UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 21.01 (2d ed. 1985).  KPMG plainly was not IPOC's customer, employee, or agent, so IPOC's reliance on *B&W Management* fails.[26]

### E.    Count VI: Common Law Conspiracy

It is undisputed that IPOC's claim for civil conspiracy does not state an independent cause of action that can survive dismissal of IPOC's other counts.  *See* BGR Rule 12(c) Br. 42-43.  The only remaining issue is whether, if the court does not dismiss the CFAA count, IPOC may state a claim for conspiracy based solely on an alleged violation of the CFAA.  The D.C. Court of Appeals has "expressed some skepticism as to whether a common law conspiracy claim can be based on a violation of . . . statutory rights [that] did not exist at common law."  *Mazloum v. District of Columbia*, No. 06-0002, 2006 U.S. Dist. LEXIS 43427, *25 n.6 (D.D.C. June 27, 2006) (citing *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 739 (D.C. 2000)).  Given the D.C. Court of Appeals hesitancy, BGR respectfully submits that even if this Court sustains IPOC's CFAA claim, it should not extend the tort of civil conspiracy to a context where it has not been recognized by the D.C. courts.  Indeed, IPOC's own authority counsels for caution on this point: in *Varela v. Flintlock Construction, Inc.*, the court ultimately remanded the plaintiff's civil conspiracy claim to the state courts in part because it "raise[d] a legal issue which does not appear to have been resolved by state courts, to wit, whether the predicate for a state

---

[26] IPOC baldly asserts that its allegations "fall within several" of the categories mentioned in *B&W Management*, IPOC Rule 12(c) Br. 35, but the allegations it recites are inapposite to all of them, *see* IPOC Rule 12(c) Br. 35 n.15.  Nor does IPOC provide any support for this assertion except to argue that it has alleged "commercial bribery" and "intimidation."  *See* IPOC Rule 12(c) Br. 36-37.

law civil conspiracy claim can be a statutory as opposed to a common law cause of action."  No.

01-2736, 2002 U.S. Dist. LEXIS 4327, at *5 (S.D.N.Y. Mar. 18, 2002).[27]

### F.    Count VII: Unjust Enrichment

It also appears undisputed that Count VII cannot survive dismissal of IPOC's other

claims because the claim that Defendants were *unjustly* enriched depends on the allegation that

they were paid by their clients to engage in tortious conduct at the expense of IPOC.  *See* BGR

Rule 12(c) Br. 43-44; IPOC Rule 12(c) Br. 38.  BGR has demonstrated that IPOC's claim for

unjust enrichment should be dismissed for a second, independent reason as well: IPOC has failed

to allege that it provided any sort of benefit to the defendants (for example, it has not claimed

that it directly or through a third party provided the funds with which defendants were paid) or

that it had any prior right to the fees allegedly received by defendants.  *See* BGR Rule 12(c) Br.

44-45.  IPOC argues that its allegations that defendants were paid to harm IPOC are sufficient to

survive a motion for judgment on the pleadings.  *See* IPOC Rule 12(c) Br. 38-41.  As the

authorities cited in BGR's opening brief establish, however, that is not the law.[28]  *See also, e.g.,*

---

[27] The earlier decision cited by IPOC in *Varela* did not hold that a statutory violation could support a claim for civil conspiracy.  Rather, where the defendant had failed to raise this issue in its motion to dismiss, the court merely refused to grant defendant's motion for reconsideration on this ground of its denial of defendant's motion in the absence of controlling authority foreclosing plaintiff's claim.  *See Varela v. Flintlock Constr. Inc.*, No. 01-2736, 2002 U.S. Dist. LEXIS 3521, at *3-*4, *7-*8 (S.D.N.Y. Mar. 5, 2002).

[28] IPOC's attempts to distinguish BGR's authorities are not persuasive.  Although *Tull v. United States* did involve a statutory question, the passage cited by BGR comes from the Supreme Court's discussion of the common law of restitution.  481 U.S. 412, 424 (1987).  *Ellsworth Associates, Inc. v. United States* did not rest solely on the fact that the defendant had not yet received any benefit.  Rather, the court held that plaintiffs had failed to state a claim for unjust enrichment because they had provided "no basis for concluding that [defendant] Naing [I]nternational received *or would receive* a benefit that the plaintiffs are *or would be* entitled to." 917 F. Supp. 841, 849 (D.D.C. 1996) (emphases added).  Indeed, immediately prior to the language quoted by IPOC, *see* IPOC Rule 12(c) Br. 40, the court stated: "First, nowhere do the plaintiffs allege that any benefit has been conferred on the Naing defendants *by the plaintiffs*. Rather, any benefit to the Naing defendants would be conferred by the government."  917 F.

*Rapaport v. United States*, 59 F.3d 212, 217 (D.C. Cir. 1995) ("unjust enrichment simply does

not lie when the plaintiff has not bestowed some sort of benefit upon the defendant").[29]

Nor do IPOC's authorities suggest otherwise. Rather, in each of these cases the plaintiff

had conferred a benefit on the defendant, either directly or through a third party. IPOC places

great emphasis on *United States v. Bouchey*, 860 F. Supp. 890 (D.D.C. 1994), where one of the

three defendants (Mr. Harbour) was a government official who had been bribed to approve

inflated consulting fees. *See* IPOC Rule 12(c) Br. 39. However, the government had conferred a

benefit on Harbour indirectly—the bribe in question was a kickback consisting of *a portion of*

*the excessive fees paid by the government. See* 860 F. Supp. at 893 ("[T]he complaint

contend[ed] that these invoices resulted in overcharges of $120,000 that were paid to Ricche and

divided among the other two defendants").[30] Indeed, far from supporting IPOC's position, the

---

Supp. at 848. Shortly thereafter it observed: "Furthermore, there is no showing that plaintiffs
had any right to the benefit [a government contract], if it were not awarded to Naing
[I]nternational." *Id.* Finally, in *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F.
Supp. 2d 37, 40 (D.D.C. 1999), the court did not hold that an unjust-enrichment plaintiff need
plead only that defendants should "disgorge a certain sum of money—the unjust enrichment—
because it would be 'inequitable' for defendants to keep this sum." IPOC Rule 12(c) Br. 40. On
the contrary, the plaintiff there alleged that it had conferred a benefit directly on one group of
defendants through overpayments on their pharmaceutical product, and indirectly on the other
defendant through payments made to that defendant by the first group of defendants where "[t]he
funds for such payments . . . derived from plaintiff's and the Class' overpayments." *Aetna*, 48 F.
Supp. 2d at 39. IPOC does not attempt to distinguish BGR's other authorities, including *Service
Employee's International Union Health & Welfare Fund v. Phillip Morris Inc.*, which dismissed
an unjust-enrichment claim where plaintiffs alleged that they had enriched defendants by paying
increased costs "attributable to Defendants' fraudulent conduct" but failed to show that
defendants had any legally cognizable duty to pay those costs. 83 F. Supp. 2d 70, 94 (D.D.C.
1999).

[29] Although *Rapaport* involved a statutory dispute, its discussion of unjust enrichment reflects
common law principles. *See* 59 F.3d at 217 (explaining that " '[u]njust enrichment' is a term of
art at common law and we must presume that the Congress used it as such").

[30] Similarly, in *In re Lorazepam & Clorazepate Antitrust Litigation* the plaintiffs (insurance
companies) "allege[d] that Defendants [drug manufacturers] ha[d] been unjustly enriched
through payments made by Plaintiffs to their subscribers for Lorazepam and Clorazepate tablets,
which Plaintiffs contend conferred an economic benefit upon Defendants in the nature of wind-

authorities cited by IPOC plainly recognize that "[a] necessary element of a claim of unjust enrichment is that the plaintiff conferred a benefit on the defendant." *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 51 (D.D.C. 2003); *Bouchey*, 860 F. Supp. at 894 ("To state a claim for unjust enrichment, a plaintiff must establish that: (1) plaintiff conferred a benefit upon the defendant . . . .").[31]

## **CONCLUSION**

For the foregoing reasons, and for the reasons in BGR's opening Rule 12(c) brief, the Court should dismiss this case in its entirety with prejudice. Oral argument on this matter is respectfully requested pursuant to Local Rule 7(f).

---

fall profits," 295 F. Supp. 2d 30, 50 (D.D.C. 2003), and the court concluded that "Plaintiffs have adequately pled that they conferred a benefit of money on Defendants under circumstances in which it would be unjust or inequitable for [Defendants] to retain the benefit," *id*. (internal quotations omitted) (alteration supplied). And *Emerine v. Yancey* involved a claim based on an implied-in-fact contract, not unjust enrichment; the court's brief discussion of unjust enrichment served only to distinguish that legal theory from that relied on by the plaintiff. 680 A.2d 1380, 1383-84 (D.C. 1996). In all events, the plaintiff there plainly conferred a benefit—accounting services—on the defendant. *See id*. at 1381-82.

[31] In its surreply to Diligence's 12(b)(6) motion, IPOC cites *In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618 (E.D. Mich. 2000), and *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517 (D.N.J. 2004), for the unremarkable proposition that an unjust-enrichment plaintiff need not allege that he conferred a benefit on the defendant *directly*. *See* IPOC 12(b)(6) Surreply at 12-13. Neither case establishes that a plaintiff need not allege that he conferred a benefit on the defendant *at all*. *In re Cardizem* addressed allegations essentially identical to those in *Aetna*, *see supra* note 30, that plaintiffs had conferred a benefit directly on one group of defendants and indirectly on the remaining defendant. *See* 105 F. Supp. 2d at 668; *see also id*. at 671 ("Plaintiffs here have alleged that they conferred a benefit, in the form of overpayments and increased profits, on Defendants"). Rejecting defendants "broad claim that Plaintiffs cannot state a common law claim for unjust enrichment unless they allege facts showing that they conferred a benefit directly upon each of the Defendants," the court concluded that "careful examination of the cited authority shows that the courts dismiss such claims only *where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant* that the defendant ought not keep in equity and good conscience." *Id*. at 671 (emphasis added). *In re K-Dur* appears to have involved similar allegations, *see* 338 F. Supp. 2d at 544, and in all events expressly recognized that "individual states may impose additional requirements of privity which may ultimately be fatal to Plaintiffs' unjust enrichment claims," *id*. at 546.

September 20, 2006                    Respectfully submitted,

                                     /s/ Charles J. Cooper
                                     _____
                                     Charles J. Cooper (D.C. Bar No. 248070)
                                     David H. Thompson (D.C. Bar No. 450503)
                                     COOPER & KIRK, PLLC
                                     Suite 750
                                     555 Eleventh Street NW
                                     Washington, DC 20004
                                     202-220-9600
                                     202-220-9601 (Fax)

                                     *Attorneys for Barbour Griffith & Rogers LLC*