## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IPOC INTERNATIONAL GROWTH FUND LIMITED,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **C.A. No. 1:06CV01109 (PLF)** |
| **DILIGENCE, LLC,** *et al.***,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

## PLAINTIFF IPOC'S SUR-REPLY IN FURTHER OPPOSITION TO BARBOUR GRIFFITH AND ROGERS LLC'S RULE 12(c) MOTION

IPOC International Growth Fund Limited ("IPOC") hereby submits this Sur-Reply to Barbour Griffith and Rogers LLC's ("BGR's") Reply Memorandum in Support of BGR's Rule 12(c) Motion for Judgment on the Pleadings. In its Reply, BGR makes new arguments and repeats erroneous arguments in an effort to have the Court dismiss IPOC's Complaint. As we demonstrate below, BGR's Reply fails to establish a basis to dismiss IPOC's claims.

## ARGUMENT

### I.    IPOC's Complaint Adequately Alleges Causation and Damages.

BGR's contention in its Reply that IPOC has not refuted BGR's claim that the Complaint fails to plead injury attributable to Defendants is pure fiction. As IPOC's Opposition establishes, IPOC has met the requirements of Rule 8 in pleading injury and causation. *See* Opp'n at 6. Moreover, as IPOC's opposition to BGR's Rule 12(b)(1) motion establishes, misappropriation and disclosure of confidential information both constitute injury-in-fact. *See* IPOC's Opp'n to BGR's Rule 12(b)(1) Mot. at 10-12.

BGR implicitly concedes this point, but now contends that the Complaint provides only a "naked recitation" of the injury element. For support, BGR cites *Kowal v. MCI Comms. Corp.*,

16 F.3d 1271 (D.C. Cir. 1994).  *See* Reply at 2-3.  *Kowal's* general discussion of Rule 8 is

consistent with other courts' application of that Rule specifically to allegations of injury and

causation.  Those decisions hold, contrary to BGR's position, that "'general factual allegations of

injury resulting from the defendant's conduct may suffice.'"  *NOW v. Scheidler*, 510 U.S. 249,

256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Robbins v.*

*Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002); *South Austin Coalition Cmty. Council v. SBC*

*Comms Inc.*, 274 F.3d 1168, 1171 (7th Cir. 2001); *Proctor & Gamble Co. v. Haugen*, 222 F.3d

1262, 1279 (10th Cir. 2000).

More importantly, after two rounds of briefing, BGR has yet to cite a single case

dismissing a similarly-worded complaint because the plaintiff failed to allege sufficiently injury

or causation.[1]  In contrast, IPOC cites decisions from courts in this and other jurisdictions that

have upheld such allegations.  For example, in *NOW v. Scheidler*, the Supreme Court held that

the plaintiff met Rule 8's minimum pleading standards in a private civil RICO suit alleging

damage to its business or property simply by alleging that the defendants' conduct "'has injured

the business and/or property interests of the [petitioner].'"  510 U.S. at 256 (quoting complaint).

Similarly, in *U.S. ex rel. Mossey v. Pal-Tech, Inc.*, this Court was "not persuaded" that a

counterclaim failed adequately to allege "how or in what way [it] was harmed by plaintiff."  231

F. Supp. 2d 94, 99 (D.D.C. 2002) (Friedman, J.) (upholding counterclaim alleging trade secrets

---

[1]    BGR's claim that IPOC's authorities do not establish a more lenient rule for pleading
causation and damages, *see* Reply at 3, misses the point entirely.  BGR only cites cases
discussing Rule 8 in general terms and has not cited a single case that has held that allegations of
causation and damages fail to meet its requirements.  Similarly, BGR ignores the significant
differences between a challenge to the sufficiency of the allegations and a challenge to the
weight of the evidence in support of those allegations. *See, e.g., Sharrow v. State Farm Mutual*
*Auto. Ins. Co.*, 511 A.2d 492, 500 (Md. 1986) ("There is, of course, a big difference between that
which is necessary to prove the commission of the tort and that which is necessary merely to
allege its commission.").

violations and breach of contract resulting from disclosure and retention of confidential information).  Finally, appellate courts have reversed district courts that dismissed claims for failure to allege injury or causation because they required more than Rule 8 demands.  *Robbins*, 300 F.3d at 1211 (reversing district court's dismissal of RICO claim on the ground that plaintiff had failed to allege any tangible harm to business or property); *Proctor & Gamble Co.*, 222 F.3d at 1279 (holding that district court erred in dismissing tortious interference claim for failure to allege sufficient injury).

In sum, IPOC has sufficiently alleged in each of its claims that Defendants' conduct has caused injury to IPOC, and BGR fails to cite any authority that holds such allegations are deficient under Rule 8.

## II.    IPOC's Complaint Adequately Alleges Underlying Wrongful Conduct.

BGR argued in its memorandum in support of its Rule 12(c) motion that IPOC had alleged only two types of wrongful conduct—fraud and bribery—and that the allegations with respect to both were deficient.[2]  BGR now concedes that IPOC's allegations of wrongful conduct extend beyond fraud and bribery to include intimidation, interference with KPMG FAS's investigation, dissemination of confidential information to IPOC's litigation and commercial rivals, disclosure of that information to the press, accessing information without authorization, theft, and trespass.  *See* Reply at 10.  In a scramble to resuscitate its argument, BGR claims that

---

[2]    BGR has retreated from its argument that "IPOC has alleged no facts whatsoever to support its conclusory allegations that Diligence bribed KPMG." Rule 12(c) Mem. at 19.  BGR now claims in a footnote that IPOC has "not alleged a fact to establish a basic element of bribery, namely, the thing of value that Diligence gave or offered to KPMG." Reply at 10 n.13.  For support, BGR cites two decisions from IPOC's opposition brief, *Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 344 F. Supp. 2d 936 (M.D. Pa. 2004), and *Westlake Plastic Co. v. O'Donnell*, 182 F.R.D. 165 (E.D. Pa. 1998).  Yet nowhere in those two cases is it suggested that a plaintiff must identify in its pleading the specific things of value given or offered as a bribe.

3

IPOC's allegations of these additional wrongful acts are either wholly conclusory or mere restatements of the fraud and bribery allegations—though it cannot decide which.

BGR provides no support for its argument that IPOC's allegations of additional wrongful conduct are wholly conclusory. Its claim that IPOC's failure to explain precisely how Diligence engaged in that conduct ignores the command that, at the pleading stage, "[f]actual detail is unnecessary." *E.g.*, *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000); *c.f. Mossey*, 231 F. Supp. 2d at 99 (holding that under Rule 8 notice pleading, plaintiff need not allege at pleading stage exactly how or in what way it was harmed by defendant). As for its claim that IPOC's allegations of additional wrongful conduct are derivative of the fraud or bribery allegations, BGR cites *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). *Vess* did not address whether allegations of any wrongful conduct were derivative of bribery allegations. It did address whether those allegations necessarily constituted fraud requiring particularity under Rule 9. The *Vess* court held, however, that because the allegations did not necessarily meet each of the elements of fraud under California law, those allegations did not have to meet Rule 9's requirements. *Id.* at 1105-06. Here, IPOC's allegations of intimidation, interference, dissemination and disclosure of confidential information, unlawful access, theft, and trespass are independent of IPOC's allegations of fraud.

**III.    BGR's Arguments Regarding the Computer Fraud and Abuse Act (Count II) are Redundant and Meritless.**

BGR's request that the Court rewrite the Computer Fraud and Abuse Act (the "CFAA") and impose a heightened pleading standard upon IPOC should be rejected. Congress amended the CFAA in 1994 to add § 1030(g), which provides a private cause of action for certain violations. Subsection (g) states that "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory

4

damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). BGR does not dispute that IPOC is "any person" and that the Complaint alleges that IPOC suffered damage as a result of Defendants' violation of the statute. *See* Compl. ¶¶ 20, 30-34. Instead, BGR seeks to read the statutory language of "damage or loss" as requiring "damage and loss." It is ironic then that BGR argues in its Reply that IPOC has blurred the line between "damage" and "loss" and takes great pains to explain the difference between those two words. *See* Reply at 4-5.

BGR asserts that IPOC has championed "an apparently unbounded reading" of "damage" and "loss" under the CFAA. Yet, IPOC's reading of "damage" has been embraced by courts on at least seven separate occasions in holding that the CFAA covers damages nearly identical to those alleged in the Complaint. *See HUB Group, Inc. v. Clancy*, 2006 WL 208684 (E.D. Pa. 2006) (allegation that integrity of computer database was damaged through defendant's unauthorized access to confidential information adequately stated a claim under the CFAA); *accord C.H. Robinson Worldwide, Inc. v. Command Transp., LLC*, 2005 WL 3077998 (N.D. Ill. Nov. 16, 2005); *Charles Schwab & Co., Inc. v. Carter*, 2005 WL 351929 (N.D. Ill. Feb. 11, 2005); *George S. May Int'l Co. v. Hostetler*, 2004 WL 1197395 (N.D. Ill. May 28, 2004); *Pacific Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188 (E.D. Wash. 2003); *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268 (S.D. Fla. 2003), *aff'd in part, rev'd in part*, 138 Fed. Appx. 297 (11th Cir. 2005); *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121 (W.D. Wash. 2000).

BGR attempts to brush aside this extensive authority by arguing that the early decisions in this line of cases were erroneously based on a prior version of the CFAA, and that all subsequent district courts perpetuated the error by blindly following the prior cases. *See* Reply at 8-9 & n.12. According to BGR, the culprit for this unlikely comedy of errors is *Four Seasons*,

which BGR claims "erroneously applied a superseded version of the CFAA, which did not define 'loss' at all." Reply at 8. BGR is simply wrong.[3] *Four Seasons* methodically and carefully applied the correct, amended version of the CFAA and, in fact, quoted in its entirety the new definition of "loss" that had just been appended to the statute. *Four Seasons*, 267 F. Supp. 2d at 1322. Likewise, all subsequent decisions in the line of cases carefully considered the statute and prior precedent in reaching their conclusion that the CFAA provides a cause of action for conduct of the type alleged in the Complaint. Thus, BGR's entire argument for dismissing this weight of authority is based on a faulty premise and fails.

BGR also suggests that IPOC has improperly relied on cases discussing the "loss" element to expand the scope of the "damage" element under the CFAA. *See* Reply at 4. Most of the above cases, however, were brought under the same provision of the CFAA as here, and that provision prohibits unauthorized access that causes "damage." To hold that the plaintiff had stated a claim or to find liability, those courts necessarily had to conclude that the plaintiff's allegations or evidence met the "damage" element of the claim.

Finally, BGR now claims that the allegations in the Complaint are insufficiently detailed to satisfy the pleading requirements of Rule 8. *See* Reply at 6-7. As IPOC explained in its Sur-Reply in opposition to Diligence's Rule 12(b)(6) motion, IPOC's allegations of "damage" and "loss" provide Defendants sufficient notice of the CFAA claim and, thus, meet the Rule 8 standard. *See* IPOC's Sur-Reply to Diligence's Rule 12(b)(6) Mot. at 2-3. IPOC has also demonstrated that its Complaint more than adequately alleges "access" under the CFAA. *See*

---

[3]     BGR is also wrong in claiming that *In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), one of the decisions on which it relies most heavily, "makes clear that not even the cost of 'securing or remedying [the computer] systems in the wake of' the access constitutes 'damage.'" Reply at 6. *DoubleClick* actually held that those types of injuries do constitute "damage" under the statute. *See DoubleClick*, 154 F. Supp. 2d at 524.

IPOC's Opp'n at 14-15; *see also C.H. Robinson Worldwide, Inc.*, 2005 WL 3077998 (holding that Rule 8 requires only that plaintiff plead that defendants inappropriately used its proprietary information, that defendants did not have authorization to access information, and that defendants violated sections of statute through actions). In its Reply, BGR contends that the holdings in *Shurgard Storage* and *Role Models Am., Inc. v. Jones*, 305 F. Supp. 2d 564 (D. Md. 2004), are consistent with its position that "access" requires an allegation that the defendant entered, used, or was present on a protected computer. To the contrary, both decisions establish that if a third-party acts on behalf or at the direction of the defendant in accessing the computer or information, the defendant can be held liable under the CFAA. *See Jones*, 305 F. Supp. 2d at 567-568 (third-party's unauthorized access to computer insulates defendant from liability unless unauthorized access was directed or encouraged by defendant or third-party was agent of defendant); *Shurgard Storage*, 119 F. Supp. 2d at 1123 (third-party acting as agent for defendant).

**IV.     Counts I, III-VII Are Not Preempted Under the D.C. Uniform Trade Secrets Act.**

As IPOC has already established, the contention that the D.C. Uniform Trade Secrets Act ("UTSA") preempts IPOC's non-trade-secret claims is ridiculous. *See* IPOC's 12(b)(6) Opp'n at 13-24; IPOC's Rule 12(b)(6) Sur-Reply at 13-14; IPOC's Rule 12(c) Opp'n at 16-20. BGR incorrectly asserts that IPOC's argument represents only a "minority" view among courts who misunderstand the "history" and "purpose" of the UTSA. Reply at 12. BGR relies solely on an unpublished, New Hampshire state-court decision for the proposition that IPOC's position represents a "minority" view. *Id.* (citing *Mortgage Specialists, Inc. v. Davey*, No. 05-067, 2006 N.H. LEXIS 106, at *22-*23 (N.H. July 26, 2006)). In relying so narrowly on *Mortgage*

*Specialists*, BGR ignores that "[t]he great weight of authority runs contrary to Defendants' assertion." *Russo v. Ballard Medical Products*, 2006 WL 2345868, *9 (D. Utah Aug. 10, 2006).

BGR also cites for the first time in its Reply *Callaway Golf Co. v. Dunlop Slazenger Group of Amers., Inc.*, 318 F.Supp.2d 216 (D. Del. 2004). But that case does not advance BGR's cause. In *Callaway Golf*, as in every other case BGR cites, the plaintiff alleged a claim for misappropriation of trade secrets. The court held that UTSA preempted the trade-secrets claim and other claims in the complaint that "plainly and exclusively spell[ed] out only trade secrets misappropriation." 318 F.Supp.2d at 220 (citations omitted). As the court observed, "if the [misappropriated information] does consist of trade secrets, then the common law claims are preempted," but the court did not go so far as to endorse BGR's conclusion that UTSA preempts common-law claims that have no relation at all to trade-secret misappropriation, such as IPOC's claims in this case.

Moreover, only IPOC's position is consistent with the plain language of the UTSA. By its plain terms, the UTSA supersedes "conflicting" tort law that provides a civil remedy "for misappropriation of a trade secret," but it does not affect civil remedies that are "not based upon a misappropriation of a trade secret." D.C. Code § 36-407. The UTSA preempts *only* those tort claims that *conflict* with a trade-secret misappropriation claim under the Act. Nothing in the text of Section 36-407 suggests that the scope of preemption under the Act is so broad as to foreclose ordinary tort claims such as IPOC's that do not require the existence of a "trade secret."

**V.    All of IPOC's Common-Law Tort Claims Are Cognizable.**

**A.    IPOC Has Adequately Stated a Claim of Tortious Interference With Business Expectancies (Count I).**

IPOC's Opposition demonstrated that tortious interference with business expectancy is not limited to purely commercial relationships and can include reasonable expectancies in

government actions. Moreover, IPOC demonstrated that BGR's effort to introduce allegations and innuendo beyond the pleadings is impermissible. *See* IPOC's Opp'n at 20-28. None of BGR's new arguments in its Reply require a different conclusion.

First, BGR attempts to shore up its argument that only purely contractual or commercial relationships that are prospective are protected. BGR cites *PM Services Co. v. O'Shea*, 2006 U.S. Dist. LEXIS 655, *111 (D.D.C. Jan. 4, 2006), and *Williams v. Fed. Nat'l Mortgage Assoc.*, 2006 U.S. Dist. LEXIS 42911, *28 (D.D.C. June 26, 2006). Neither case supports BGR's contention.[4] Both only involved traditional commercial interests and, thus, turned not, as BGR suggests, on whether the expectancy is purely commercial in nature, but on the commercial reasonableness of the expectancy. *See* Opp'n 20-21. For example, in *PM Services Co.*, the court determined that the alleged expectancies in obtaining operations and maintenance contracts with the General Services Administration (GSA) were reasonable given evidence that the plaintiff had performed similar work for the GSA and have been given assurances that it might be awarded the contract in the future. *See* 2006 U.S. Dist. LEXIS 655, *111. Similarly, in *Williams*,[5] the court held that allegations that the plaintiff intended to work with a firm under a co-brokerage

_____

[4]    BGR did not respond in its Reply to IPOC's recitation of the numerous allegations in IPOC's Complaint that Defendants' conduct interfered with IPOC's commercial and pecuniary interests. *See* Opp'n at 20-22.

[5]    To the extent *Williams* supports BGR's position that a protected relationship exists only if it is contractual, it is inconsistent with cases from this Court, the D.C. Court of Appeals, and other jurisdictions. *Winder v. Erste*, 2005 U.S. Dist. LEXIS 5190, *40 (D.D.C. Mar. 31, 2005) ("[N]ot all business expectancies must be grounded in contract."); *Carr v. Brown*, 395 A.2d 79, (D.C. 1978) (noting that, under D.C. law, tort protects "business expectancies, not grounded on present contractual relationships but which are commercially reasonable to anticipate, [and] are considered to be property."); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 535-537 (S.D.N.Y. 2002) (noting that in the event tortious interference with contract claim failed because underlying contract was unenforceable, alternate claim of tortious interference with economic advantage would be viable); *Biro v. Hirsch*, 771 A.2d 129, 136 (Conn. App. Ct. 2001) ("'[P]roof of interference with even an unenforceable promise is enough.'") (quoting *Jones v. O'Connell*, 458 A.2d 355 (Conn. 1983)).

9

contract and had a prior business history with that firm were sufficient to indicate "that it was reasonably likely that a co-brokerage contract would have resulted." 2006 U.S. Dist. LEXIS 42911, *28.

Also, BGR's claim that IPOC has failed to identify a single case recognizing expectancies resembling those alleged here turns the burden in a Rule 12(c) motion on its head. The burden is on BGR—not IPOC—to establish that allegations in the Complaint fail to state a claim upon which relief can be granted. *Kimberlin v. U.S. Dep't of Justice*, 150 F. Supp. 2d 36, 41 (D.D.C. 2001) ("A party moving for dismissal under Federal Rule of Civil Procedure 12(b)(6) has the burden of proving that the nonmovant has failed to state a claim upon which relief can be granted."). BGR also incorrectly claims that IPOC's alleged expectancies do not meet the standard under *Fox v. Country Mut. Ins. Co.*, 7 P.3d 677, 690 (Or. Ct. App. 2000). The very passage BGR cites from *Fox* makes clear that "both commercial and noncommercial" relationships are protected so long as they are likely to result in a pecuniary benefit absent the defendant's interference—which IPOC has alleged.

Second, BGR's discussion of the relevant cases fails to rebut IPOC's demonstration that those cases provide that a plaintiff can have a valid expectancy in government actions so long as the expectancy is reasonable. *See* IPOC's Opp'n at 25. BGR attempts to distinguish *Casco Marina Dev., LLC v. Dist. of Columbia Redev. Land Agency*, 834 A.2d 77 (D.C. 2003), and *Ellett v. Giant Foods, Inc.*, 505 A. 2d 888 (Md. Ct. Spec. App. 1986), by arguing that those cases did not involve discretionary acts by the government agency. The suggestion by BGR is that KPMG FAS had some discretion in determining whether to disclose IPOC's confidential

information.  As alleged in the Complaint, however, KPMG FAS had no such discretion.[6]  *See* Compl. ¶¶ 14-16.

Finally, BGR's argument that this Court can infer that the information Defendants stole evidenced wrongdoing by IPOC is factually and legally wrong.[7]  First, it is unclear at this point exactly what information Defendants have misappropriated.  Second, as IPOC established in its opposition, this Court may not take "judicial notice" of any facts in the Zurich arbitration decision.  *See* IPOC's Opp'n at 3-4.  Third, BGR's claim that IPOC has provided no authority for how the Bermudan government's public interest outweighs the purported public policy against concealing evidence of wrongdoing again turns the respective parties' burdens on their head.  *Kimberlin*, 150 F. Supp. 2d at 41.  Finally, BGR's allegations of wrongdoing against IPOC are matters outside the pleadings and cannot be considered as established in connection with BGR's motion for judgment on the pleadings.

Accordingly, as established here and in IPOC's Opposition, IPOC's Complaint states a claim for tortious interference with business expectancy.

### B.    IPOC Has Adequately Stated A Claim of Procuring Information by Improper Means (Count III).

In its Opposition, IPOC cited *Tavoulareas v. Washington Post Co.*, 724 F.2d 1010 (D.C. Cir. 1984), a case that recognized that the tort of procuring information by improper means is a common law cause of action that has been long-recognized in this Circuit.  Opp'n at 29.  BGR notes that *Tavoulareas* was subsequently vacated (as IPOC also noted in its Opposition), but that

---

[6]    Because *Blank v. Kirwan*, 703 P.2d 58 (Cal. 1985), also involved a discretionary government licensing process, it is inapposite here.  Moreover, to the extent *Blank* holds that a plaintiff may not have an expectancy in governmental action, it conflicts with *Carr* and *Casco Marina*, two D.C. cases applying D.C. law.

[7]    IPOC has already addressed in its Opposition the flaws in BGR's support for its contention that there can be no protectable interest in the concealment of wrongful conduct.  *See* IPOC's Opp'n at 22-24.

does not negate that the tort of procuring information by improper means is recognized in this jurisdiction.

Moreover, BGR's argument that there is a cause of action for procuring information by improper means as described in the Restatement of Torts § 759 only in jurisdictions that have not adopted the Uniform Trade Secrets Act is illogical. The Uniform Trade Secrets Act governs only trade secret information while Section 759 applies as well to confidential information that is not a trade secret. Restatement of Torts § 759, comment b.

**C.    IPOC Has Adequately Stated A Claim of Tortious Interference With Contractual Relations (Count IV).**

In its Reply, BGR asserts two internally inconsistent positions that serve only to highlight its flawed logic. First, it claims that the agreement between IPOC and KPMG FAS is illegal and cannot be enforced for public policy reasons. Reply at 17. Second, it claims that the terms of that agreement were entirely dictated by the Bermuda Companies Act, thereby creating a preexisting duty. *Id*. If these assertions are true, then the Bermuda Companies Act must have forced IPOC and KPMG FAS to enter into an illegal agreement. BGR's two arguments cannot simultaneously be true, and in fact neither is true. The agreement between IPOC and KPMG FAS was not against public policy, nor was there a lack of consideration.

To survive a judgment on the pleadings, IPOC need only plead the existence of a contract with which BGR knowingly interfered, and the Court must construe all facts in IPOC's favor. *See Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.*, 565 A.2d 285, 289 (D.C. Cir. 1989); *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). IPOC has fulfilled its burden, but BGR seeks to heighten that standard and force IPOC to *prove* a valid contract at the pleading stage. Reply at 17. This is the wrong standard, and BGR's bare accusations of an invalid contract are insufficient to win a judgment on the pleadings.

12

Moreover, illegality of purpose is an affirmative defense that cannot be decided on the pleadings. *See IHS Acquisition XV, Inc. v. Kings Harbor Care Ctr.*, 1999 WL 223152, *1 (S.D.N.Y. April 16, 1999). To succeed in its defense, BGR has the burden to establish facts in discovery that support its contentions, something BGR has attempted to do only through innuendo in its briefs. BGR contends that sufficient facts exist here to prove its affirmative defense, but only if the Court is willing to consider the findings of the Zurich tribunal. Reply at 17. As stated above, however, the Court cannot take judicial notice of the facts or conclusions in the tribunal decision, and it should be stricken from the record. *Mehle v. American Management Systems, Inc.*, 2002 WL 31778773, *1 (D.C. Cir. 2002). BGR can point to nothing in the Complaint to establish its affirmative defense.

BGR's argument that no set of facts can show adequate consideration for this agreement is no more logical. Although the Bermuda Companies Act, for example, required IPOC to forward "such books or documents as the inspector may require" to KPMG FAS, Bermuda Companies Act § 132(3), this by no means precludes the possibility that the parties agreed to exceed or alter the Act's requirements, thereby exchanging valuable consideration to form a valid contract. The Complaint adequately alleges the existence of a contract. Whether the contract was supported by adequate consideration is an issue of fact that cannot be determined at the pleading stage, and IPOC must be given the opportunity to develop the facts of this case.

Moreover, BGR does not point to a single case in which an assertion of lack of consideration doomed a tortious interference claim at the pleading stage. BGR cites cases in which tortious interference cases are dismissed, but it conveniently glosses over the fact that these dismissals were only after discovery had occurred. *See* IPOC Opp'n at 32. Despite BGR's

attempts to argue prematurely this claim on the merits, IPOC has sufficiently pleaded all the elements needed to survive a motion for judgment on the pleadings.

**D.      IPOC Has Adequately Stated A Claim Of Unfair Competition (Count V).**

BGR's initial brief focused on purported flaws in only three of the many acts of unfair competition pleaded in the Complaint (*i.e.* interference with business expectancy, bribery, and intimidation) and ignored completely allegations of other acts of unfair competition. As IPOC's Opposition explains, those additional allegations of conduct by Defendants fall squarely within the categories of recognized acts of unfair competition. *See* Opp'n at 35 & n.15. In its Reply, BGR offers no rebuttal and summarily dismisses those allegations as "unpersuasive" without support or discussion. *See* Reply at 21.

As to the allegations it has chosen to address, BGR's arguments fail. BGR continues to maintain that unfair competition requires a misappropriation of a commercial advantage or interference with a protected commercial interest. For support, BGR cites for the first time *Berni v. Int'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642 (2d Cir. 1988), a decision applying New York law. That case involved an unfair competition claim, among others, based on allegations that the defendants had wrongfully used the plaintiffs' trademark. The Second Circuit affirmed the district court's dismissal of the claim because the plaintiffs had no ownership interest in the mark, were not using the mark, and were not even considering establishing a commercial venture to use the mark. *Id.* at 648. *Berni* thus turned not on the nature of the interest, but on the complete absence of any interest at all.[8]

---

[8]      BGR also cites cases in which courts recognized that the conduct at issue constituted unfair competition, but BGR then makes the illogical leap that all other conduct that was not addressed in those cases cannot constitute unfair competition. Of course, holding that an act constitutes unfair competition is not the same as holding that the universe of other acts do not,

BGR's arguments concerning IPOC's allegations of bribery and intimidation are equally unsupported by the law. *See* Opp'n at 36-37. Although it refers to "intimidation of customers or employees," there is nothing in *B&W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982), that suggests that its catalog of acts constituting unfair competition is exhaustive. Finally, BGR's argument is predicated on its assertion that "KPMG plainly was not IPOC's customer, employee, or agent." Reply at 22. Yet, factual allegations in BGR's brief may not be considered on a motion for judgment on the pleadings. *See Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994).

### E.      IPOC Has Adequately Stated A Claim of Civil Conspiracy (Count VI).

In its Reply, BGR asserts that the Court should not permit IPOC's CFAA claim to serve as the basis for its civil conspiracy claim. BGR has yet to cite a case in this jurisdiction that refuses to recognize civil conspiracy premised on a statutory tort. Both common-law and statutory tort claims may form the basis for a civil conspiracy claim. Accordingly, the Court cannot dismiss IPOC's civil conspiracy claim on the pleadings.

### F.      IPOC Has Adequately Stated A Claim of Unjust Enrichment (Count VII).

BGR's Reply concerning IPOC's unjust enrichment claim continues to misstate the law. That is, BGR contends that to state a claim of unjust enrichment, IPOC must plead that it provided a benefit to Defendants. But a claim of unjust enrichment is cognizable so long as it alleges, as here, that defendants received benefits at plaintiff's expense. *See Emerine v. Yancey*, 680 A.2d 1380, 1383 (D.C. 1996). BGR claims that IPOC has not pleaded that it conferred a benefit on Defendants, either directly or indirectly. Of course, BGR ignores that Defendants wrongfully obtained IPOC's confidential information, at IPOC's expense, and that Defendants

---

and BGR has failed to cite a single case holding that any of the various acts at issue here cannot constitute unfair competition.

earned sums of money for so doing. Possession of IPOC's information certainly was a benefit to Defendants and it would be inequitable for Defendants to retain the fees they earned at IPOC's expense.

BGR's attempt to distinguish *United States v. Bouchey*, 860 F. Supp. 890, 894 (D.D.C. 1994), *aff'd* 1997 WL 404714 (D.C. Cir. June 05, 1997), is unpersuasive. BGR essentially suggests that the Court should throw out IPOC's unjust enrichment claim because IPOC was not the party who paid Defendants to infiltrate the Bermuda investigation. The crux of the court's holding in *Bouchey* was that it would be inequitable to allow defendant to retain fees earned at plaintiff's expense. *Bouchey*, 860 F. Supp. at 894. BGR has no answer for the obvious inequity that would result if Defendants are allowed to walk away from their tortious actions scot-free. Unjust enrichment is a fact-specific, equitable tort. The Court can and should conclude that IPOC has adequately pleaded that it would be inequitable for BGR and Diligence to retain the fees it earned for harming IPOC.

## CONCLUSION

For all of the foregoing reasons, and those contained in IPOC's Opposition Brief, the Court should deny BGR's motion for judgment under Federal Rule of Civil Procedure 12(c).

October 2, 2006                          Respectfully submitted,

                                         WINSTON & STRAWN LLP

Of Counsel                               /s/ Carol A. Joffe

Kimball R. Anderson                      _____
WINSTON & STRAWN LLP                     Timothy M. Broas (D.C. Bar No. 391145)
35 W. Wacker Drive                       Carol A. Joffe (D.C. Bar No. 351528)
Chicago, Illinois 60601                  Anne W. Stukes (D.C. Bar No. 469446)
Tele:   (312) 558-5858                   1700 K Street, N.W.
Fax:    (312) 558-5700                   Washington, D.C. 20006
kanderson@winston.com                    Tele:   (202) 282-5000
                                         Fax:    (202) 282-5100
                                         tbroas@winston.com
                                         cjoffe@winston.com
                                         astukes@winston.com

                                         *Attorneys for IPOC International Growth Fund
                                         Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2006, a copy of the foregoing Sur-Reply in Further Opposition to Barbour Griffith and Rogers LLC's Rule 12(c) Motion was served, electronically via the Court's electronic filing system, on:

> Edward B. MacMahon, Jr.
> P.O. Box 903
> 107 East Washington Street
> Middleburg, VA  20118
> *Counsel for Defendant Barbour Griffith & Rogers LLC*

> Paul C. Rauser
> Oliver Garcia
> Aegis Law Group LLP
> 901 F. Street, N.W., Suite 500
> Washington, DC 20004
> *Counsel for Defendant Diligence LLC*

/s/ Carol A. Joffe