UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>DILIGENCE, LLC, et. al<br><br>Defendants. | Civil Action No.<br>1:06CV01109 (PLF) (AK) |

## PLAINTIFF IPOC'S OPPOSITION TO DILIGENCE'S MOTION FOR AN ORDER COMPELLING PLAINTIFF TO ANSWER INTERROGATORIES

Plaintiff IPOC International Growth Fund Limited ("IPOC") hereby requests that Defendant Diligence, Inc.'s ("Diligence") Motion for an Order Compelling Plaintiff to Answer Interrogatories be denied for the reasons set forth in this Memorandum.

## INTRODUCTION

Diligence's motion is a sham. After engaging in criminal wrongdoing to obtain the very information that it seeks in this motion, it baldly seeks to obtain the same information through the judicial process. However, its brazen abuse of discovery cannot be permitted.

IPOC's Complaint seeks redress for the tortious conduct of Diligence and Barbour Griffith and Rogers LLC ("BGR"). Rather than serve discovery seeking information that is, or is likely to lead to evidence that is, relevant to a claim or defense in this case, Diligence's discovery seeks information concerning the beneficial ownership of IPOC and/or its affiliates and subsidiaries, and the identity of the officers and directors of IPOC's affiliates and subsidiaries. See Interrogatories 2, 5, 6, 8 and 3, respectively. IPOC has objected to these interrogatories.[1]

---

[1] IPOC served detailed objections to the Interrogatories on grounds *inter alia* of irrelevance, overbreadth, vagueness and undue burden. In its Motion, Diligence challenges only

Diligence—without having answered the Complaint and having failed to produce one document—nevertheless moves to compel IPOC to answer these questions, arguing that the issue of beneficial ownership of IPOC is critical to its claim that IPOC and its affiliates are a criminal enterprise. If this is true, Diligence argues, IPOC may not recover for Defendants' tortious conduct.[2] While a party's illegal conduct may in some situations undercut its right to relief or form the basis for another party's defense to a claim, the assertions made by Diligence neither undercut nor form a viable defense to the allegations of the Complaint because there is no nexus between Defendants' tortious misdeeds for which IPOC seeks redress and the illegal acts of which Diligence accuses IPOC.[3] Simply put, IPOC makes no claim in this case that would require this Court to preside over the wide-ranging money-laundering inquiry that Diligence desperately urges here.

## FACTUAL AND PROCEDURAL BACKGROUND

Diligence, a firm run by former CIA and MI5 agents, penetrated a confidential investigation of IPOC that was being conducted on behalf of the Minister of Finance of Bermuda (the "Investigation") by convincing a targeted KPMG FAS employee that he had been retained to assist the British security service on official business. Diligence then used the deceived KPMG FAS employee repeatedly to steal information about IPOC that KPMG FAS held in confidence.

---

IPOC's relevance objection. With this brief, IPOC does not waive any of its objections to Diligence's Interrogatories.

[2] Diligence has not asserted any defenses in this action because it has not yet answered IPOC's Complaint.

[3] Diligence's argument that it is entitled to discover the identities of the officers and directors of all IPOC's affiliates and subsidiaries so that it can determine if those entities are engaged in illegal conduct is equally wrong. Whether a plaintiff's subsidiaries or affiliates are engaged in illegal conduct is not relevant unless it has a nexus to a claim or defense. *See* Part A, B and C *infra*.

Diligence's plot to interfere with the Investigation would have continued had KPMG FAS not discovered the thefts and tracked down Diligence. KPMG FAS filed suit against Diligence to determine the full extent of the fraud perpetrated against it and to stop the interference with the Investigation.[4] KPMG FAS and Diligence settled the case, but not before it was revealed that Diligence and BGR had been hired by Alfa Group and LVFG, IPOC's business and litigation adversaries, to harm IPOC.

Diligence's objectionable Interrogatories are calculated to deflect attention away from its own tortious and illegal conduct as alleged in the Complaint and to use the discovery process to obtain information that is sought by its clients for use elsewhere as a part of a continuing scheme to harm IPOC. The information concerning the ownership of IPOC, its subsidiaries and affiliates, and the identities of the officers and directors of IPOC's subsidiaries and affiliates are totally irrelevant to the claims and defenses in this case. Diligence seeks this information for use by Diligence's clients in separate proceedings outside the United States.[5] *See* Exhibits E & G attached to IPOC's Emergency Motion filed under seal (Docket No. 60).

## ARGUMENT

Diligence's Motion to Compel should be denied because the Interrogatories seek information concerning the beneficial ownership of IPOC and its affiliates or subsidiaries, information that simply is not, and will not lead to, evidence relevant to any claim or defense in this case. Fed. Rule Civ. P. 26(b)(1). Diligence claims that the beneficial ownership of IPOC is

---

[4] IPOC was not a party to that lawsuit.

[5] The Wall Street Journal article attached to Diligence's papers demonstrates that Diligence's discovery efforts are in pursuit of goals unrelated to this lawsuit. According to the article, the strategy of Alfa in its fight with IPOC is to argue that IPOC is a money-laundering group for Mr. Reiman, and to prove this, Alfa "paid millions of dollars to witnesses who

3

relevant to allow Diligence to establish: 1) that IPOC can have no legitimate business expectancies because it is a "criminal" enterprise; 2) the affirmative defense that one who has unclean hands cannot recover in equity; and 3) that IPOC suffered no damages because the Zurich tribunal's findings (that IPOC is not entitled to the stock it sought in the arbitration) were correct. These specious arguments will be examined and refuted in turn.

### A.   Beneficial Ownership of IPOC is Irrelevant to the Claims and Defenses in this Suit.

According to Diligence, discovery of the ownership of IPOC and its affiliates will prove that the true owner of IPOC is a foreign governmental official, which in turn will lead this Court to the allegedly inevitable conclusion that IPOC is a "money laundering enterprise."[6] Diligence argues that if it establishes that IPOC is a "money laundering enterprise," such a finding would preclude IPOC from recovering on any of its business-tort and equitable claims. Diligence Br. at 6-7. Putting aside the gaping holes in Diligence's logic that a finding of who owns IPOC is equivalent to a finding that IPOC is a "money laundering enterprise," Diligence is wrong on the applicable law.

There is no allegation that IPOC engaged in illegal transactions relating to the claims in this case. Quite simply, this defeats Diligence's motion. The three cases that Diligence cites

---

testified." Diligence is just another of Alfa's paid minions and is attempting to abuse the discovery process in an ongoing effort to serve its client's interests.

[6] Diligence alleges that IPOC has engaged in illegal activities "committed against the Russian Federation." Diligence Br. at 1. The Russian Prosecutor General, the only party competent to adjudicate whether crimes were committed against the Russian Federation, has concluded that neither IPOC nor Mr. Reiman have committed any crime. *See* Diligence Br. at Tab A ("Russian prosecutors, when asked by legislators to respond to the Zurich tribunal's ruling, said they saw no evidence that IPOC had engaged in suspicious financial operations."). To the contrary, the Russian prosecutors have ordered the arrest of Leonid Rozhetskin, the individual who sold the IPOC's stake in Megafon to Alfa, the party for whom Defendants work. *See* Exhibit A attached hereto.

4

stand for the proposition that "parties to an illegal or immoral transaction may not seek redress in a court for wrongs suffered <u>as a result of the transaction</u>." *Wager v. Pro*, 603 F.2d 1005, 1008 (D.C. Cir. 1979) (emphasis added); *United States v. Kim,* 738 F. Supp. 1002, 1003-04 (E.D. Va. 1990); *Carruthers v. Flaum,* 365 F.Supp.2d 448, 462 (S.D.N.Y. 2005). In *United States v. Kim*, 738 F. Supp. 1002 (E.D. Va. 1990), where the plaintiff sought the return of money it had paid to government officials as an illegal gratuity, the court held as a matter of public policy that it would "refuse to aid those whose cause of action is based on an illegal act." *Id.* at 1003-04. Similarly, in *Carruthers v. Flaum*, 365 F.Supp.2d 448 (S.D.N.Y. 2005), the court stated that if "the contract <u>upon which recovery is sought</u> is premised on an illegal purpose, than [sic] the contract is void, and it cannot be the subject of a claim for tortious interference." *Id.* at 462 (emphasis added).

Diligence's cases are inapplicable here. IPOC's claim against Diligence is not predicated on an illegal or immoral transaction, contract or agreement. This lawsuit does not involve any claim based upon the validity or enforcement of the April Option Agreement that Diligence argues is illegal, which was at the issue in the Zurich arbitration (to which neither Diligence nor BGR are parties).[7] The April Option Agreement is irrelevant to IPOC's rights vis-à-vis the Defendants' tortious interference with the Investigation conducted in Bermuda, which is the subject of this lawsuit. Thus the rule against recovery on the basis of an illegal contract or transaction simply does not apply to the claims and defenses in this case.

Diligence seeks to contort the law to mean that a party who is allegedly guilty of some illegal conduct in one contract or transaction can never recover for tortious conduct or fraud

---

[7] Diligence apparently seeks to retry the allegations made by its client, LV Finance Group, against IPOC in the lengthy Zurich arbitration. The allegations in that arbitration have no

committed by a different party in a different transaction.[8] There is no support for this absurd principle, which would mean that no individual or entity guilty of any illegal conduct may succeed on an unrelated tort claim. The law is flatly to the contrary—a plaintiff is not barred from asserting a claim when it is wronged under one transaction, even where it has engaged in improper conduct with respect to a different transaction. *See, e.g., Kaiser Trading Co. v. Associated Metals & Minerals Corp.*, 321 F. Supp. 923, 930 (N.D. Cal. 1970) ("Although the courts will not enforce a contract that is an illegal restraint on trade, it is the contract being sued upon which must give rise to the illegal or anticompetitive effect; it is not enough that the plaintiff's general activities are anticompetitive."); *see also Kelly v. Kosuga*, 358 U.S. 516, 521 (1959) (holding that, even assuming one agreement between two parties constituted an illegal enterprise, that would not prevent the enforcement of a separate contract that was itself valid).

As the cases cited by Diligence itself make clear, it is only the illegality of the transaction, contract or agreement for which recovery is sought that can provide an affirmative defense. Diligence simply ignores the fact that even assuming *arguendo* that Diligence's assertions about IPOC are accurate, the "illegal" conduct that Diligence attributes to IPOC is not the same conduct or part of the same transaction as the actions of Diligence upon which IPOC's claims for relief are based. Diligence does not assert, nor could it assert, that the confidentiality

---

bearing to the matters in dispute here, and Diligence's discovery that seeks information to allow it to show that the Zurich Tribunal's findings were "correct" is abusive and inappropriate.

[8] Diligence asserts that the identity of the beneficial owners of IPOC is relevant to this case because information about the owners will reveal IPOC to be an illegal enterprise and that as an illegal enterprise it cannot recover in tort. Yet Diligence's statement of purported "hornbook" law that "[j]ust as one cannot tortiously interfere with an illegal sale of drugs, it is hornbook law that one cannot tortiously interfere with the 'business expectations' of an illegal money laundering enterprise" is inaccurate. Not surprisingly, Diligence's statement of supposed "hornbook" law goes well beyond the cases it cites for support and, indeed, Diligence cites no case supporting the proposition that a business entity that has been adjudged guilty of some illegal conduct can <u>never</u> be the victim of tortious conduct by a separate entity.

agreement between IPOC and KPMG FAS is in any way illegal or improper or that IPOC played any role in Diligence's infiltration of the Investigation and theft and disclosure of the stolen confidential information.

Diligence's discovery requests focus solely on its attempt to prove that IPOC engaged in illegal conduct in the Russian Federation, a transparent attempt to further serve the interests of Diligence's clients and IPOC's adversaries. Whether IPOC engaged in illegal activities in the Russian Federation with respect to different transactions and affecting different parties has absolutely no relevance to the issues in the present case—Diligence's criminal conduct in Bermuda.

### B. Diligence's Claim of Illegal Conduct by IPOC Does Not Support Diligence's Proposed "Unclean Hands" Defense.

These same legal principles categorically preclude Diligence from asserting a defense of unclean hands. The unclean hands doctrine "is not to be used as a loose cannon, depriving a plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct." *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 601 (7th Cir. 1986) (emphasis added). In *American Hospital*, the defendant, a supplier of hospital equipment, terminated a distribution contract with the plaintiff, who brought a breach of contract claim and sought injunctive relief. *Id.* at 592. In opposition to the request for injunctive relief, the defendant asserted the defense of unclean hands, based on its allegation that the plaintiff had falsely advertised the defendant's products. The court rejected this defense because it was based on alleged conduct by the plaintiff that was unrelated to the conduct underlying its claim: "To deny the preliminary injunction because American Hospital Supply was using false advertising to supplant Hospital Products as a maker of surgical stapling systems, as Hospital Products urges, would be to deny it for a reason unrelated to Hospital Products' alleged breach of

7

contract in terminating American Hospital Supply as a distributor after the contract was renewed." *Id.* at 601 (emphasis added). Thus, even assuming that the plaintiff had improperly engaged in false advertising of the defendant's products, such conduct could not be the basis for an unclean hands defense in plaintiff's breach of contract action.

This same rule applies to the defense of *in pari delicto*, which is the legal equivalent of the equitable unclean hands doctrine. *See Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F.Supp. 1122, 1126 (S.D. Tex. 1976) ("There are significant similarities between the defenses in pari delicto and unclean hands, especially since they are premised on the same rationale."). The *in pari delicto* defense only applies when a plaintiff is alleged to have engaged in the same improper conduct underlying its suit against the defendant: "[I]n order to bar recovery, the plaintiff must be an active, voluntary participant in the unlawful activity that is the *subject of the suit*." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 757 (3rd Cir. 1990) (italics in original). Moreover, "[i]n determining whether the plaintiff was a participant in the unlawful activity, a court may look only to conduct associated with the transaction before it, and may not forbid recovery on account of a plaintiff's activities in a separate setting." *Id.* (internal citations and quotation marks omitted).

Diligence's purported affirmative defense of "unclean hands" is not legally applicable here, where IPOC seeks to hold Diligence responsible for its tortious conduct in infiltrating the Investigation, stealing and disclosing confidential information, and interfering with the Investigation. As is clear in its Motion to Compel, Diligence's defense of "unclean hands" is based on alleged IPOC conduct *that is wholly separate from the conduct of Diligence underlying this suit.* Even assuming *arguendo* that Diligence's assertion that IPOC engaged in illegal money laundering in the Russian Federation is true, that conduct is simply unrelated to IPOC's

allegations concerning Diligence's wrongful interference with respect to the Investigation in Bermuda. Diligence does not claim that IPOC possesses unclean hands by virtue of engaging in the same improper conduct with respect to the Investigation that forms the basis for IPOC's action against Diligence. Diligence's focus on the allegation that IPOC is a "money laundering enterprise" provides no support for IPOC having unclean hands with respect to the conduct underlying the present case. Thus, the unclean hands defense is legally inapplicable.

### C.  IPOC Does Not Claim Damages Resulting from the Findings of the Zurich Tribunal.

Similarly, Diligence's argument that IPOC's beneficial ownership and alleged illegal conduct bear on causation and damages is flat wrong. Diligence's argument is premised on its inaccurate claim that IPOC's Complaint alleges that the Defendants' tortious actions "corrupt[ed] the Zurich arbitration." But Diligence has misquoted the Complaint, which states that the Defendants' actions were "calculated to corrupt the Zurich arbitration," not that they did corrupt the arbitration. IPOC does not in this lawsuit claim damages resulting from the findings of the Zurich arbitration. Instead, IPOC's damages include the amount it paid to KPMG FAS for the Investigation that Defendants penetrated, and disgorgement of the monies paid to Diligence and BGR to interfere with the Investigation. Neither has any nexus to the illegal acts Diligence attributes to IPOC. Despite Defendants' repeated attempts to interject the merits of the Zurich arbitration into this case, the findings and outcome of that proceeding are irrelevant here. The beneficial ownership of IPOC, its affiliates or subsidiaries, or the identity of their officers and directors, are not relevant to IPOC's damages.

## CONCLUSION

For all of the foregoing reasons, and such others as the Court finds just and equitable, Diligence's Motion for an Order Compelling Plaintiff to Answer Interrogatories should be denied.

December 6, 2006

IPOC INTERNATIONAL GROWTH FUND LIMITED

/s/ Carol A. Joffe

OF COUNSEL:
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:  (312) 558-5858
Fax:  (312) 558-5700
kanderson@winston.com

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:  (202) 282-5000
Fax:  (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2006, a copy of the foregoing Plaintiff IPOC's Memorandum In Opposition to Diligence, Inc.'s Motion for an Order Compelling Plaintiff to Answer Interrogatories was served, via the Court's ECF system, on:

> Michael Ross
> Paul C. Rauser
> Oliver Garcia
> Aegis Law Group LLP
> 901 F. Street, N.W., Suite 500
> Washington, DC 20004
> *Counsel for Defendant Diligence LLC*

> and

> Edward B. MacMahon, Jr.
> P.O. Box 903
> 107 East Washington Street
> Middleburg, VA 20118
> *Counsel for Defendant Barbour Griffith & Rogers LLC*

/s/ Carol A. Joffe