## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH )
FUND LIMITED )
 )
   *Plaintiff,* )
 )
v. ) Civil Action No. 06-1109 (PLF)(AK)
 )
DILIGENCE LLC, et al. )
 )
   *Defendants.* )
_____)

## DEFENDANTS' JOINT MOTION FOR
## ENTRY OF A PROTECTIVE ORDER

   Defendants Diligence, Inc. ("Diligence") and Barbour, Griffith & Rogers ("BGR")

through undersigned counsel, respectfully request, for the reasons set forth below, that the Court:

(i) deny Plaintiff IPOC International Growth Fund Limited's ("IPOC's") Motion for entry of its

proposed Protective Order, and (ii) enter, pursuant to Federal Rule of Civil Procedure 26(c)(7), the

form of Protective Order attached hereto in lieu of the form of Protective Order requested by

IPOC.

   In addition, Defendants respectfully request that the Court require IPOC, prior to

entry of a Protective Order in this case, to disclose fully the facts and circumstances surrounding:

(i) recent findings by a Zurich arbitration panel that IPOC had violated the protective order entered

in that arbitration; and (ii) IPOC's receipt and public filing in a foreign court of unredacted, under-

seal transcripts in KPMG Financial Advisory Services, Limited v. Diligence LLC, No. 05-CV-

02204 (PLF)(AK) ("KPMG FAS v. Diligence"), an earlier, related case in this Court.

Counsel for the parties have held several meet-and confer conferences pursuant to LCvR 7(m) in an effort to arrive at a stipulated form of Protective Order, but have been unable to reach complete agreement.

The grounds for this Motion are set out in the attached Memorandum in Support.

Respectfully submitted,


_____ /s/ Edward B. MacMahon, Jr._

Edward B. MacMahon, Jr.
D.C. Bar No. 411165
P.O. Box 903
107 East Washington Street
Middleburg, VA 20118
540-687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net

*Attorney for Defendant Barbour*
*Griffith & Rogers, LLC.*


AEGIS LAW GROUP LLP

By:        _/s/ Paul C. Rauser_____

Paul C. Rauser (D.C. Bar No. 461722)
Oliver Garcia (D.C. Bar No. 456600)
Michael K. Ross (D.C. Bar No. 458573)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500/ F: 202-737-3330

Dated:  December 6, 2006        *Attorneys for Defendant Diligence Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 06-1109 (PLF)(AK) |
| DILIGENCE LLC, et al. | ) ) | |
| *Defendants.* | ) ) | |
| _____ | ) | |

### DEFENDANTS' JOINT MEMORANDUM
### IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND
### IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR
### ENTRY OF A PROTECTIVE ORDER

Defendants Diligence, Inc. ("Diligence") and Barbour, Griffith & Rogers ("BGR"), through undersigned counsel, respectfully request, for the reasons set forth below, that the Court (i) deny Plaintiff IPOC International Growth Fund Limited's ("IPOC's") Motion for entry of its proposed Protective Order, and (ii) enter, pursuant to Federal Rule of Civil Procedure 26(c)(7), the form of Protective Order attached hereto as Exhibit 1 in lieu of the form of Protective Order requested by IPOC.

In addition, Defendants respectfully request that the Court require IPOC, prior to entry of a Protective Order in this case, to disclose fully the facts and circumstances surrounding (i) recent findings by a Zurich arbitration panel that IPOC had violated the protective order entered in that arbitration; and (ii) IPOC's receipt and public filing in a foreign court of unredacted, under-seal transcripts in KPMG Financial Advisory Services, Limited v. Diligence LLC, No. 05-CV-

02204 (PLF)(AK) ("KPMG FAS v. Diligence"), an earlier, related case in this Court. Defendants

respectfully suggest that such an inquiry would be useful, if not essential, in determining whether

the proposed Protective Order in this case will adequately ensure that confidential discovery

materials are, in fact, kept confidential.

## INTRODUCTION

Both Plaintiff and Defendants believe that a Protective Order should issue in this

case.[1]  Plaintiff IPOC, however, has objected to six provisions contained in Defendants' proposed

Protective Order, including – most notably – three separate provisions that are substantially

identical to language already approved by this Court in its May 19, 2006 Protective Order in

KPMG FAS v. Diligence (the "KPMG FAS Protective Order").  Defendants believe that the

Protective Order applied to this case should certainly not be weaker than the Order in KPMG FAS

v. Diligence.  Indeed, in light of IPOC's past protective order violations, and its dissemination of

transcript material placed under seal by this Court – described below – the Protective Order in this

case should, if anything, be even stronger than the KPMG FAS Protective Order to ensure that the

documents and information produced in this case are used for proper purposes, and to guarantee

that this Court maintains meaningful, effective control over protected materials.

---

[1]    Rule 26(c)(7) provides that a protective order is appropriately entered to ensure that "a trade
secret or other confidential research, development, or commercial information not be revealed
or be revealed only in a designated way."  Fed. R. Civ. P. 26(c)(7); see also AMFAC Resorts v.
U.S. Department of the Interior, 143 F. Supp. 2d 7, 14 (D.D.C. 2001) (noting same).  As this
Court has noted, blanket protective orders—such as the one agreed to between the parties here
(with the exception of the disputed paragraphs discussed below)—"serve, in great measure, to
foster efficiency and fairness in the discovery process," and are becoming "standard practice in
complex [commercial] cases."  Diabetes Treatment Ctrs. of America, 2004 WL 2009414, at *3
(D.D.C. May 17, 2004); see also Gillard v. Boulder Valley School Dist., 196 F.R.D 382, 386
(D. Colo. 2000) ("blanket protective orders are essential to the functioning of civil discovery.
Absent such orders, discovery would come to a virtual standstill") (alterations omitted).

I.   **IPOC'S PAST PROTECTIVE ORDER VIOLATIONS AND PUBLIC
     DISSEMINATION OF UNDER-SEAL MATERIAL REQUIRE CAREFUL
     CONSTRAINTS ON DISTRIBUTION OF PROTECTIVE ORDER MATERIALS IN
     THIS CASE.**

The parties' principal disagreements with respect to the proposed Protective Order

in this case concern (i) who may receive copies of the Confidential and Attorneys' Eyes Only

materials, and (ii) whether the parties should be required to keep protected materials within the

United States (except for overseas attorneys for the firms of record, who would have access to

protected materials).

Defendants propose provisions substantively identical to those entered by the Court

in KPMG FAS v. Diligence for determining what persons may have access to Confidential and

Attorneys' Eyes Only material, respectively.  Compare KPMG FAS Protective Order ¶¶ 18-19

with Defendants' Proposed Protective Order at ¶¶ 18-19.  Defendants have also requested one

additional provision to protect this Court's ability to enforce the Protective Order: language which

provides that materials and information will not be communicated outside of the United States

except to overseas attorneys for the firms of record, who would, in turn, agree to be bound by the

Protective Order.  See Defendants' Proposed Protective Order at ¶ 30.

IPOC disagreed with Defendants' proposal, and sought to expand the categories of

persons who could receive protected material – including Attorneys' Eyes Only material – to a

virtually limitless group, including but not limited to any "independent consultant," "vendor,"

"jury consultant," or "mock juror."[2]  IPOC Proposed Protective Order at ¶¶ 20-21.  In addition,

---

[2]   IPOC's Memorandum in Support of its proposed Protective Order suggests that Defendants'
requests for robust confidentiality protections reflect a "stated concern . . . that the protective
order would allow too many persons access to the discovery material in this case."  Mem. at 5.
IPOC misunderstands Defendants' concern.  Defendants are not concerned that "too many"
people will have access to protected information; rather, Defendants want to make sure that
those people who do receive protected information use it for appropriate, permissible purposes.
See, e.g., Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) (pretrial discovery

IPOC rejected any geographic limit on the dissemination of protected materials.

IPOC's proposal is inadequate – particularly so in light of two recent developments. *First*, a Zurich arbitration panel recently found that IPOC violated the protective order entered in that arbitration by disseminating protected documents in violation of the arbitrators' protective order. *Second*, British Virgin Islands court documents establish that IPOC somehow obtained, and then publicly filed in a foreign court, unredacted, under-seal transcripts in KPMG Financial Advisory Services, Limited v. Diligence LLC, No. 05-CV-02204 (PLF)(AK) ("KPMG FAS v. Diligence"), an earlier, related case before this Court. Both of these developments strongly counsel in favor of entering Defendants' proposed Protective Order in this case.

A. **A Zurich Arbitration Panel Recently Ruled that IPOC Violated the Protective Order Entered in that Arbitration.**

As the Defendants have noted in prior filings in this matter, IPOC was (and apparently is) a party to a lengthy commercial arbitration in Zurich concerning the disposition of stock in a Russian telecommunications company – a matter that has resulted, most recently, in a Second Partial Award by the arbitral tribunal in favor of IPOC's adversary. During the course of that arbitral proceeding, the panel entered a "confidentiality order" governing the distribution of

---

mechanisms "are not public components of a civil trial . . . . [rather] they are conducted in private as a matter of modern practice"); In re Reporters Committee for Freedom of the Press, 773 F.2d 1325, 1331 (D.C. Cir. 1985) (noting that in Seattle Times Co., the Court "upheld the trial court's imposition of a protective order" rejecting "a claim by one of the parties of the right to *disseminate* information acquired in the course of pretrial discovery") (emphasis in original); see also In re Baycol Prod. Litig., 2003 WL 23145587, at *1 (D. Minn. Dec. 12, 2003) ("while there is a right of public access to judicial proceedings, this right does not necessarily extend to pretrial discovery that has not become a public component of a civil case").

materials. This order resulted in charges by both IPOC and its adversary of violations of the confidentiality order. See Exhibit 2 (Selections from Second Partial Award) at ¶ 127.

Yet despite the charge and counter-charge, it is noteworthy that the arbitrators reached one clear, unambiguous conclusion when they issued their Second Partial Award on May 16, 2006: IPOC violated the confidentiality order. Exhibit 2 at ¶ 156. Indeed, the Zurich panel noted both IPOC's violation – sending protected materials to KPMG Inspectors in Bermuda – and the panel's limited options for remedying that violation:

> Claimant disregarded the Confidentiality Order by disclosing
> Protected Evidence to the Inspectors without requesting leave to do
> so from the Arbitral Tribunal as provided for under the
> Confidentiality Orders even for the event that a statutory obligation to
> disclose documents from this arbitration exists. Therefore, the
> Arbitral Tribunal endeavored to protect this Protected Evidence by
> sending a letter to the Inspectors on April 26, 2006 drawing their
> attention to the confidentiality of such evidence.

Exhibit 2 at ¶ 156 (footnotes omitted). The findings of the Zurich panel strongly militate in favor of Defendants' proposed Protective Order here, which seeks to narrow the group of persons with access to protected material, as well as to preserve the Court's meaningful, effective control over protected documents and information by keeping them in the United States or, at the very least, in the overseas custody of the reputable firms of record in this case.

**B.     IPOC Obtained and Filed in a Foreign Court an Unredacted, Under-Seal Transcript of Proceedings in KPMG FAS v. Diligence, a Related Case in this Court.**

In addition to the Zurich arbitrators' findings that IPOC violated their confidentiality order by distributing protected materials to KPMG FAS Inspectors in Bermuda, Defendants have become aware of another troubling incident which counsels in favor of sharply limiting the number and type of persons who may receive Protective Order materials, and limiting their dissemination outside the United States to attorneys from the firms of record only.

- 5 -

Based on court filings in proceedings in the British Virgin Islands, it appears that IPOC has, through unknown means, obtained a copy of a January 25, 2006 unredacted, under-seal hearing transcript from <u>KPMG FAS v. Diligence</u>[3] and filed that transcript in court proceedings (not involving either Defendant in this case) in the British Virgin Islands. The details of how IPOC obtained the unredacted transcript are unknown, as are its reasons for filing in a foreign court a document that, by its very terms, should not have been released to the public. The incident nevertheless highlights the need for a strong Protective Order in this case – an Order that both restricts the class of persons who may receive protected materials, and also ensures that protected materials and information do not leave the United States (except with counsel from firms of record) so that the Court can maintain practical control over their dissemination.

**1.      Background: The January 25, 2006 Hearing in <u>KPMG FAS v. Diligence</u>.**

On January 25, 2006, this Court held a motions hearing in <u>KPMG FAS v. Diligence</u>. During that hearing, counsel for the parties discussed documents that the Court had earlier placed under seal in a Memorandum Opinion and Order dated January 4, 2006 (the "Seal Order"). <u>See</u> Declaration of Paul C. Rauser ("Rauser Decl.") at ¶ 2.

In light of the Seal Order, at the conclusion of the January 25th hearing, counsel for all parties in <u>KPMG FAS v. Diligence</u> requested on the record – and the Court ordered – that the hearing transcript not be filed in the public record until the parties had an opportunity to file a stipulation with the Court as to how the transcript should be redacted. <u>See</u> Rauser Decl. at ¶ 3. The parties submitted proposed redactions of materials covered by the Seal Order, and the Court subsequently filed in the public record a redacted version of the transcript at Docket # 63. <u>See</u> <u>id</u>.

---

[3]    IPOC was not a party in <u>KPMG v. Diligence,</u> and thus would not have been given access to the unredacted, sealed versions of documents in that case.

The original, unredacted document containing sealed material was not made publicly available. See id. at ¶¶ 3, 6.

### 2.    IPOC Files the Unredacted, Sealed January 25, 2006 Hearing Transcript in a British Virgin Islands Case.

On or about June 14, 2006, counsel for Diligence learned that Barry S. Vitou, a London-based attorney who represents IPOC, filed an affidavit on June 12, 2006 in connection with a costs application in the Eastern Caribbean Supreme Court, Court of Appeal (Claim No. 140 of 2003 and Civil Appeals No. BVI HAP 2003/20 & 2004/01). Mr. Vitou's affidavit attached a complete, unredacted copy of the under-seal January 25, 2006 hearing transcript in KPMG FAS v. Diligence.

Diligence counsel subsequently contacted Bryan A. Wayne, the Official Court Reporter who prepared both the unredacted and redacted hearing transcripts, and Derek J.T. Adler, counsel for KPMG FAS. See Rauser Decl. at ¶ 5. Mr. Wayne confirmed he had not made the January 25 hearing transcript public, and had provided copies of the unredacted, under-seal transcript only to counsel for the parties: Hughes Hubbard & Reed (counsel for KPMG FAS and two of its principals) and Aegis Law Group LLP (counsel for Diligence). See id. at ¶ 7. Mr. Adler in turn informed Diligence's counsel that neither KPMG FAS nor its counsel were responsible for disclosure of the transcript, and indicated that an initial inquiry by KPMG FAS had been unable to determine the source of the disclosed transcript. See id. at ¶ 8.

Defendants take Mr. Adler at his word. To date, Defendants have been unable to determine how IPOC came to possess a copy of the unredacted January 25, 2006 KPMG FAS v. Diligence hearing transcript.

\* \* \*

- 7 -

Defendants and this Court presently know very little concerning IPOC's disclosure of protected material from the Zurich arbitration, nor do we know the circumstances under which IPOC representatives obtained, and then filed in a foreign court, copies of unredacted, under-seal materials from this Court. These issues nevertheless have a direct bearing on the adequacy of any Protective Order entered in this case. Defendants accordingly request that the Court require IPOC, *prior* to entry of a Protective Order in this case, to disclose fully the facts and circumstances surrounding these incidents, in order that the Court and parties may assess the adequacy of any Protective Order to be entered in this case.

## II.     THE REMAINING DISPUTED PROVISIONS.

With the exception of the parties' substantial disagreement over who appropriately may receive material that is designated "Confidential" or "Attorneys' Eyes Only," and whether those materials and information may be conveyed to individuals (other than counsel from firms of record) outside the United States, the parties have only three substantive disagreements concerning the proposed Protective Order.

### A.     IPOC's Proposed Paragraph 17 (Revisions to Defendants' Proposed Paragraph 15).

As with several other provisions in Defendants' proposed Protective Order, discussed above, IPOC objects to proposed language from Defendants that is substantially identical to that contained in the Court's <u>KPMG FAS</u> Protective Order. Defendants' proposed Paragraph 15 reads in relevant part as follows:

> a party may designate as "Confidential" or "Attorneys' Eyes Only" Documents and other materials produced by another party or by a non-party by providing written notice to the parties of the relevant document Bates numbers or other identifying features within ten (10) business days after receiving such Documents or discovery materials. The time for designating Documents will not begin to run against a party until such party receives any non-party Documents.

- 8 -

This language is substantively identical to Paragraph 15 of the Court's KPMG FAS Protective Order.  See id. at ¶ 15.  The text is not, however, acceptable to IPOC, which contends that the process for parties seeking a confidentiality designation for materials produced by *others* should be different from the process they must undertake to designate documents produced by themselves.  In particular, IPOC believes that it is the party seeking a confidentiality designation for materials in the possession of others who should be required to seek relief from the Court in the event of a dispute; this is a reversal of the process that would occur when a party designates its own documents, which would require a motion by the party seeking de-designation.  Compare IPOC Proposed Protective Order ¶ 17 ("the party who seeks to designate non-party materials may file a motion with the Court") with IPOC Proposed Protective Order ¶ 18 ("the objecting party may file a motion with the Court").

Defendants, on the other hand, believe that the procedure should be uniform for all confidentiality designations, regardless of the party producing the documents.  Defendants would, accordingly, propose that the Court adopt the shorter formulation from the KPMG FAS Protective Order, which is contained in stand-alone Paragraph 15 of Defendants' proposal.

## B.    IPOC's Proposed New Paragraph 11.

IPOC seeks inclusion of the following language, which is not contained in the Defendants' proposed draft:

> 11.  The designation of information as "Confidential" or "Attorneys' Eyes Only" constitutes a representation by the Supplying Party that the discovery material has been reviewed by an attorney and that there is a valid basis for such designation pursuant to Federal Rule of Civil Procedure 26(c).

Defendants object to this proposed language on two grounds.  *First*, Defendants believe that it is unnecessary, as Supplying Parties already have an obligation under Rule 26 to have a "valid basis"

for their designations.  Indeed, IPOC itself acknowledges that its proposal "does no more than the Rule already requires," and one therefore wonders why IPOC's proposed language is necessary or advisable.  *Second*, IPOC's proposed language is not merely superfluous – it is also potentially burdensome to third parties that might wish to produce documents without the benefit of counsel, for under IPOC's proposed language, a non-party would be *required* to retain an attorney to avail itself of the Protective Order – otherwise, the Supplying Party could not in good faith make "a representation . . . that the discovery material had been reviewed by an attorney."  Nothing in the Federal Rules requires non-parties to engage counsel merely to respond to discovery.  Defendants thus respectfully suggest that IPOC's proposed Paragraph 11 should not be included in any Protective Order entered by the Court.

> **C.    IPOC's Proposed New Paragraph 14.**

Finally, IPOC seeks insertion of a new Paragraph 14, which is not present in the Defendants' proposed Order:

> 14.  No information shall be designated as "Confidential" or "Attorneys' Eyes Only" that:
>
> a.    Has been or becomes lawfully in the possession of a Receiving Party through communications other than production or disclosure in this action; or
>
> b.    Has been or becomes part of the public domain, for instance by publication, which is not due to any unauthorized act or omission on the part of a Receiving Party or any of its authorized representatives or designees under this Protective Order.

Defendants object to both subsections of IPOC's proposed Paragraph 14.  Subsection (b) is, in Defendants' view, unnecessary, as any material that is truly "in the public domain" is also not, by definition, protectable material under the definitions of "Confidential" and "Attorneys' Eyes

Only" – categories which by their very terms exclude true public-domain materials from those which may be protected.

Paragraph 14, Subsection (a) of IPOC's proposal, on the other hand, fails to afford the parties adequate protection in an important situation – that is, when one party "innocently" comes into possession of materials that nevertheless may, in the first instance, have been improperly or even illegally obtained by someone else.  Under IPOC's proposed Paragraph 14, Subsection (a), such materials would likely be immune from a confidentiality designation because they came "lawfully" into the possession of the receiving party – even if the materials were originally stolen from another party in the first place.

Unfortunately, this scenario is hardly a fanciful concern in this case – in fact, it is just around the corner.  As IPOC notes in its Motion for a Protective Order, IPOC has issued a subpoena to the law firm Hughes Hubbard & Reed, counsel for KPMG FAS in the prior case, to obtain the law firm's copies of discovery materials from that case.  Among the materials sought by that subpoena are documents which, if they are authentic, were indisputably *stolen from Diligence* and delivered anonymously in a bundle to KPMG's offices.  See KPMG FAS Complaint ¶ 15 (describing Diligence's "internal emails and other business records" and "a bundle of papers [that] was delivered anonymously to . . . KPMG LLP").

The parties to this case should certainly have the authority to designate as confidential[4] their own confidential business materials (improperly-disclosed or stolen from them)

---

[4]  Indeed, Rule 26(c) was designed to allow parties in litigation to maintain the confidentiality of precisely the type of documents at issue here.  See generally In re NASDAQ Market-Makers Antitrust Litigation, 164 F.R.D. 346, 355 (S.D.N.Y. 1996) (describing "internal telephone calls" about customers, transactions, and trading strategies as "exactly the sort of confidential information" protected by Rule 26(c)).  Defendants also note that documents not obtained in ordinary discovery (such as the materials purportedly stolen from Diligence and delivered anonymously to KPMG) are precisely the type of materials entitled to heightened protection from the Court.  Cf. Public Citizen Health Research Group v. Food and Drug Administration,

that land in the possession of another party without the need to prove that the party which

ultimately came to possess those materials had a hand in their original, improper disclosure.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court require

IPOC, prior to entry of a Protective Order in this case, to disclose fully the facts and circumstances

surrounding: (i) recent findings by a Zurich arbitration panel that IPOC had violated the protective

order entered in that arbitration; and (ii) IPOC's receipt and public filing in a foreign court of

unredacted, under-seal transcripts in KPMG FAS v. Diligence, an earlier, related case in this

Court.

Defendants also request that the Court (i) deny IPOC's Motion for entry of its

proposed Protective Order, and (ii) enter, pursuant to Federal Rule of Civil Procedure 26(c)(7), the

form of Protective Order attached hereto as Exhibit 1 in lieu of the form of Protective Order

requested by IPOC.

---

953 F. Supp. 400, 405 (D.D.C. 1996) (noting, in a case involving erroneous disclosure, that the
power to seal is especially important where a court considers protecting information or
documents obtained "through means other than discovery").

Respectfully submitted,


_____/s/ Edward B. MacMahon, Jr._____

Edward B. MacMahon, Jr.
D.C. Bar No. 411165
P.O. Box 903
107 East Washington Street
Middleburg, VA 20118
540-687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net

*Attorney for Defendant Barbour*
*Griffith & Rogers, LLC*


AEGIS LAW GROUP LLP

By:        _____/s/ Paul C. Rauser_____

Paul C. Rauser (D.C. Bar No. 461722)
Oliver Garcia (D.C. Bar No. 456600)
Michael K. Ross (D.C. Bar No. 458573)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500/ F: 202-737-3330

Dated:  December 6, 2006                 *Attorneys for Defendant Diligence Inc.*

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH | ) | |
| FUND LIMITED | ) | |
| | ) | Civil Action No. 06-1109 (PLF)(AK) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DILIGENCE LLC, et al. | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

**PROTECTIVE ORDER GOVERNING CONFIDENTIALITY**
**AND INADVERTENT DISCLOSURE OF DOCUMENTS**

Pursuant to Federal Rule of Civil Procedure 26(c), the Court hereby enters the

following Protective Order governing confidentiality and inadvertent disclosure of documents.

**I.    Scope of Order**

1.      The Court finds that disclosure and discovery activities in these proceedings are

likely to involve production of confidential, proprietary, or private information for which special

protection from public disclosure and from use for any purpose other than prosecuting this

litigation would be warranted.

2.      This Order shall govern the remaining proceedings in this matter and all related

actions that have been or will be originally filed in, transferred to, or removed to this Court and

assigned thereto.

3.      This Protective Order shall govern all documents, the information

- 1 -

contained therein, and all other information produced or disclosed during or in connection with this proceeding, including all copies, excerpts, summaries, or compilations thereof, whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any party to this proceeding to any other party or parties.

4.     This Protective Order is binding upon all current and future parties to this proceeding, including their respective corporate parents, subsidiaries and affiliates and their respective attorneys, agents, experts, consultants, representatives, officers and employees and others as set forth in this Order. This Order also is binding on any party who obtains any documents or other Confidential Information produced or disclosed pursuant to this Protective Order, including those parties' respective corporate parents, subsidiaries and affiliates and their respective attorneys, agents, experts, consultants, representatives, officers and employees and others as set forth in this Protective Order.

5.     The entry of this Protective Order does not prevent any party from seeking a further order of this Court pursuant to Federal Rule of Civil Procedure 26(c).

6.     Nothing herein shall be construed to affect in any manner the admissibility at trial or any other court proceeding of any document, testimony, or other evidence

7.     Nothing herein shall impose any restriction on the use or disclosure by a Supplying Party of its own documents, information, or discovery material.

**II.    Designation of "Confidential" and "Attorneys' Eyes Only" Information**

8.     Any party to this litigation, or any non-party responding to a subpoena issued in this action who agrees in writing to be bound by this Protective Order ("Supplying Party") may

supply to one or more other parties to this litigation (each, a "Receiving Party") documents, records, and information containing, referencing, discussing or otherwise including "Confidential" or "Attorneys' Eyes Only" information, as defined in Paragraphs 11 and 12 herein. For purposes of this Protective Order, the information subject to designation as "Confidential" or "Attorneys' Eyes Only" may include oral or written testimony; declarations; records; documents; pleadings; information contained within testimony; records, documents, and pleadings; and other information and materials, which have been or will be filed with the Court or produced to a party during the course of this litigation. The information subject to designation as "Confidential" or "Attorneys' Eyes Only" may also include testimony, records, pleadings and other materials filed with the Court or produced by non-parties to this litigation as part of formal discovery in this action.

9.    When used in this Protective Order, the term "Document(s)" shall include, without limitation, all "originals" and "duplicates" of all "writings," "recordings," and "photographs," as those terms are defined in Section 1001 of the Federal Rules of Evidence, and shall include without limitation all written, typed, photostatic, photographed, recorded, telecopied, photocopied, or graphic materials of any kind, whether comprised of letters, words, numbers, pictures, sounds, symbols, electronic data/recording, computer data/files/code, or any combination thereof. Without limiting the foregoing, the term "Document(s)" includes all writings, papers, agreements, contracts, correspondence, letters, facsimile transmissions, memoranda, reports, notes, telegrams, telex, envelopes, statements, studies, publications, records, messages, books, pamphlets, leaflets, inter-office and intra-office communications, notebooks, instruments, transcripts, minutes, agendas, indexes, cards, diaries, drafts, revisions, photocopies, calendars, appointment records,

disclosures, questionnaires, histories, chronologies, time-lines, medical records and reports, health

care records and reports, mental health records and reports, notices, investigation reports and

materials, declarations, accountings, evaluations, summaries, valuations, audits, verifications,

inventories, appraisals, studies, endorsement, powers of attorney, account statements, receipts,

invoices, financial statements, balance sheets, ledgers, books, income statements, expense reports,

bills, billing records, checks, canceled checks, check stubs, bank records, bank deposits and

withdrawals, wire transfer and receipt records, accounts receivable, accounts payable, tax records,

safe deposit records, telephone bills and records, microfilm, electronic mail, microfiches,

computer indices, computer printouts, records stored by means of computer or other electronic

means, contents of computer hard discs, contents of computer backup tapes and discs,

photographs, videotapes, films, motion pictures, video discs, audio recordings and cassettes,

transcriptions, drawings, surveys, plans, blueprints, specifications, charts, graphics, notes or oral

or telephone communications, other written transfers or information, and other data compilations.

The term "other data compilations" includes information stored in, or accessible through,

computer or other information retrieval systems, whether or not in hard copy form, together with

instructions and all other materials necessary to use or interpret such data compilations.

  10. As part of discovery in this litigation, any Supplying Party may designate

information as "Confidential" or "Attorneys' Eyes Only" under the terms of this Protective Order.

Unless and until otherwise ordered by the Court, or agreed to in writing by and between all parties

to this case, all material designated as "Confidential" or "Attorneys' Eyes Only" will be treated as

such and will not be disclosed except in strict accordance with the terms of this Protective Order.

11.    The designation "Confidential" shall apply only to those Documents which contain non-public, confidential, proprietary or commercially sensitive information, or information of an intimate, personal nature, and the Supplying Party reasonably believes, in good faith, that such Document should not be disclosed to any person other than the persons specified in Paragraphs 18 and 19 herein.  Absent a specific order of the Court, once designated "Confidential," such information will be used by the parties solely in connection with this lawsuit and not for any business, competitive, or other function, and such information shall not be disclosed to anyone except as provided herein.

12.    The designation "Attorneys' Eyes Only" shall only apply to documents or things which contain trade secrets or methods, client lists, or internal proprietary business information that might reasonably be of value to a Supplying Party's competitor, or information that the Supplying Party reasonably believes must be kept confidential under law.  Absent a specific order by the Court, once designated "Attorneys' Eyes Only," such information will be used by the parties solely in connection with this lawsuit and not for any business, competitive, or other function, and such information shall not be disclosed to anyone except as provided herein.

13.    A Supplying Party may designate documents, materials, or things as "Confidential" or "Attorneys' Eyes Only" by affixing the Document, material, or thing with a stamp bearing the words "CONFIDENTIAL – Subject to Protective Order" or "ATTORNEYS' EYES ONLY – Subject to Protective Order," as the case may be, in a location that makes the designation readily apparent.

14.    To the extent that matter stored or recorded in the form of electronic or

magnetic media (including information, files, databases or programs stored on any digital or analog machine-readable device, computers, Internet sites, discs, networks or tapes) ("Computerized Material") is produced by any party in such form, the Supplying Party may designate such matters as confidential by cover letter referring generally to such matter. Whenever any party to whom Computerized Material designated as confidential is produced reduces such material to hardcopy form, that party shall mark the hardcopy form with the "CONFIDENTIAL – Subject to Protective Order" or "ATTORNEYS' EYES ONLY – Subject to Protective Order" designation.

15.    A Supplying Party may designate as "Confidential" or "Attorneys' Eyes Only" any information or data that has not been reduced to documentary form by informing counsel for the opposing party that it is to be designated "Confidential" or "Attorneys' Eyes Only." Except as provided below, the designation "Confidential" or "Attorneys' Eyes Only" will be made at or prior to the time of producing the information or Documents (or, in the case of deposition transcripts, within thirty (30) business days of receiving the deposition transcript), except that a party may designate as "Confidential" or "Attorneys' Eyes Only" Documents or discovery materials produced by another party or by a non-party by providing written notice to the parties of the relevant document Bates numbers or other identifying features within ten (10) business days after receiving such Documents or discovery materials.  The time for designating Documents will not begin to run against a party until such party receives any non-party Documents.

16.    If any party objects to the designation of material as "Confidential" or "Attorneys' Eyes Only," such party may, in writing, request that the designating party remove the designation

- 6 -

(the "Written Objection"). The Written Objection shall specifically identify the information or Documents at issue. The designating party, through its counsel, shall respond in writing within five (5) court days of receipt of the Written Objection, or within such period of time as may be agreed between the parties. If the designating party refuses to remove its challenged designation, its written response to the Written Objection shall state the reasons for this refusal. Within five (5) court days of the receipt of the designating party's written response to the Written Objection, the parties shall meet and confer in an attempt to resolve the dispute concerning the designation. If the parties are unable to resolve such dispute, the objecting party may file a motion with the Court not later than five (5) court days after such conference challenging the propriety of the designation in dispute.

17.     Subject to the provisions of this Protective Order, Documents designated "Confidential" and "Attorneys' Eyes Only" may be referred to in discovery, discovery responses, motions, briefs or other papers filed with the Court and may be used in depositions, oral arguments or at trial in this action either as exhibits or as the basis for questions. Any party that intends to file with the Court or in any publicly available pleading papers containing documents or information designated "Confidential" and/or "Attorneys' Eyes Only" or derived from, or derivative of, documents or information designated as such, must submit an original for placement in the Court's publicly-available case file which redacts all "Attorneys' Eyes Only" and "Confidential" information or material, and also must provide the chambers of the Judge and/or Magistrate Judge assigned to this matter with both redacted and unredacted versions of such filing.

18.     Any and all material designated as "Confidential" under this Protective Order will

not be disclosed, directly or indirectly, to any person other than:

    (a)    the Court and necessary Court personnel;

    (b)    the named parties in this action, and their officers and directors;

    (c)    the attorneys for each party to this action (Winston & Strawn LLP for Plaintiff, Aegis Law Group LLP for Defendant Diligence Inc., and Edward B. MacMahon, Jr., Esq. For Defendant Barbour Griffith & Rogers) and, as reasonably necessary, the employees and outside copying vendors employed by such attorneys;

    (d)    court reporters performing necessary duties in this action; and

    (e)    subject to prior compliance with the terms of Paragraph 12 below, any witness designated to provide deposition and/or trial testimony in this matter.

19.    Any and all material designated as "Attorneys' Eyes Only" pursuant to this Protective Order will not be disclosed, directly or indirectly, to any person other than:

    (a)    the Court and necessary Court personnel;

    (b)    the attorneys for each party to this action (Winston & Strawn LLP for Plaintiff, Aegis Law Group LLP for Defendant Diligence Inc., and Edward B. MacMahon, Jr., Esq. For Defendant Barbour Griffith & Rogers) and, as reasonably necessary, the employees and outside copying vendors employed by such attorneys;

    (c)    court reporters performing necessary duties in this action; and

- 8 -

    (d)    subject to prior compliance with Paragraph 20 below, the author of a Document for purposes of giving or preparing for deposition or trial testimony in this matter.

20.    All persons to whom "Confidential" or "Attorneys' Eyes Only" designated Documents, materials, things, or information is disclosed pursuant to Paragraph 18(e) and/or Paragraph 19(d) of this Protective Order shall not reveal or discuss such Documents, materials, things, or information, except as expressly set forth herein, and shall be required to sign the Confidentiality Acknowledgment in the form attached hereto as Exhibit A.

21.    If Documents, materials, things, or information designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this Protective Order are called for in a subpoena or other legal process, the person to whom disclosure of the subpoenaed information is directed shall immediately give written notice thereof to each party that has designated the information "Confidential" or "Attorneys' Eyes Only" and shall not produce the Documents until thirty (30) days after providing such notice.

22.    Within thirty (30) days following the conclusion of this action, including any appeals, a Supplying Party may request in writing to all parties that the Documents designated "Confidential" or "Attorneys' Eyes Only" that it produced during the course of the action be destroyed or returned to the Supplying Party along with all hard copies and electronic copies thereof, and all materials derivative thereof. Subject to the following paragraph, the parties shall destroy or return all such documents upon request.

23.    All counsel shall at all times keep secure all notes, abstractions, or other

work product derived from or containing Confidential Information or Attorneys' Eyes Only

Information; shall be obligated to maintain the confidentiality of such work product; and shall not

disclose or reveal the contents of said notes, abstractions or other work product after the

documents, materials, or other things, or portions thereof (and the information contained therein)

and information are returned or destroyed. Nothing in this agreement requires the Receiving

Party's counsel to disclose protected work product at the conclusion of this action.

24.    In the event that any additional party is added to this action, that new party will not

have access to "Confidential" or "Attorneys' Eyes Only" Information produced by or obtained

from any party or non-party until the newly added party and its counsel of record confirms in

writing to all other parties that they have read this Protective Order and agree to be bound by all of

its terms.

25.    This Protective Order will survive the final determination of this action and will

remain in full force and effect after the conclusion of all proceedings in order to provide the Court

with jurisdiction to enforce its terms.

III.    **Inadvertent Production and Failure to Designate**

26.    The parties recognize that in the course of document production, it is possible that

the Supplying Party may inadvertently produce Documents or information which are entitled to

protection from disclosure under the attorney-client privilege, the attorney work product doctrine,

or other applicable privilege or under District of Columbia law, or may inadvertently fail to

designate a Document as "Confidential" or "Attorneys' Eyes Only."   The parties agree that the

- 10 -

erroneous or inadvertent production of any material entitled to protection from disclosure under the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or under District of Columbia law, will not constitute a waiver of such protection as to either the subject matter of the material, or as to related Documents or communications.  Nor will any inadvertent failure to properly designate a Document or information "Confidential" or "Attorneys' Eyes Only" constitute a waiver of such Document or information's eligibility to be designated as such pursuant to this Order.

27.     If during document production, the Supplying Party inadvertently produces a Document entitled to protection under the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or under District of Columbia law, the Supplying Party may request the return of the inadvertently produced Document at any time before the commencement of trial, whereupon the other party will within one (1) business day return the inadvertently produced document along with all copies thereof and all materials derivative thereof (and will delete any electronic images containing such information).

28.     If a Supplying Party inadvertently fails to properly designate a Document "Confidential" or "Attorneys' Eyes Only," the Supplying Party may request that such Document be accorded all protections under this Order of  "Confidential" or "Attorneys' Eyes Only" Document, provided that the Supplying Party informs the Receiving Party of the inadvertent failure to so designate as soon as reasonably possible after learning of the inadvertent failure to designate and produces a copy of the Document to the Receiving Party with the appropriate designation.

- 11 -

29.     If any Receiving Party learns of any unauthorized disclosure of Confidential or Attorneys' Eyes Only information, it shall immediately (a) inform the Supplying Party in writing of all pertinent facts relating to such disclosure, (b) make its best efforts to retrieve all copies of the Confidential or Attorneys' Eyes Only information, (c) inform the person or persons to whom unauthorized disclosures were made of all of the terms of this Order, and (d) request that such person or persons execute the Acknowledgment that is attached hereto as Exhibit A.

30.     To ensure this Court's jurisdiction to enforce the terms and conditions of this Protective Order, Documents and other materials and information designated "Confidential" or "Attorneys' Eyes Only" (and all copies thereof) must at all times remain in the United States absent prior leave of Court to remove them from the United States, except that counsel outside the United States who belong to firms of record in this case shall be permitted to receive Confidential and Attorneys' Eyes Only material, provided that each such counsel agrees to abide by the terms of this Order and executes the Acknowledgment that is attached hereto as Exhibit A.

31.     Exceptions or modifications to this Order may be made only by order of this Court.


        SO ORDERED


DATED: _____        _____
                                      United States Magistrate Judge


- 12 -

**EXHIBIT A**

**CONFIDENTIALITY ACKNOWLEDGEMENT**

I, _____, hereby acknowledge that: (i) I have read the foregoing Protective Order, dated _____, 2006, which I am informed has been entered by the Court upon motion by the parties in the lawsuit captioned IPOC International Growth Fund Limited. v. Diligence, LLC, et al., Civil Action No. 1:06CV01109 (PLF); (ii) I understand the terms of the Order; (iii) I agree, upon the potential penalty of contempt of Court and other civil remedies under the laws of the District of Columbia, to be bound by the terms of the Order and will not reveal Confidential Information or Attorneys' Eyes Only Information to anyone except as expressly directed by order of the Court; (iv) I agree to keep all Confidential Information and Attorneys' Eyes Only Information, and all copies thereof and all materials derivative thereof, in a secure manner to avoid access by any other person and will be returned no later than thirty (30) days after the termination of this action to the counsel for the party or other person who provided such Confidential Information or Attorneys' Eyes Only Information to me; and (v) I submit my person to the jurisdiction of the United States District Court for the District of Columbia for the limited purpose of securing compliance with the terms and conditions of the Order.

DATE: _____  _____
                                    (Signature)

Name: _____
Business Address: _____
_____
_____

- 13 -

Exhibit 2

contained in the IP7-Documents in other proceedings[128], were also declared confidential.

### dd)    Incidents of Alleged Confidentiality Violations

127.    In the course of the BID-Phase, there were complaints by both Parties that the other Party had violated the confidentiality regimes applicable to confidential documents and the witness testimonies. These alleged violations do not need to be further elaborated in this Second Partial Award except as they are dealt with hereinafter[129].

### f)    Hearing of Witnesses at Second Witness Hearing and later Witness Hearings

### aa)    Witnesses Who Filed a Witness Statement and/or Testified in the BID-Phase

128.    The witnesses who testified in the BID-Phase were heard at the Second Witness Hearing, the Seventh Hearing, the Eighth Hearing and the Ninth Hearing.

129.    Overall Witnesses Nos. S1 to S35 testified in the BID-Phase, i.e:

   (i)    15 factual witnesses for Claimant (Witnesses Nos. S9, S10 [= Witness No. 4][130], S14, S15, S16, S18 [= Witness No. 1], S21, S22 [= Witness No. 3], S24 to S27, S34 and S38];

---

[128]    See item 5 of the Twentieth Order and the last paragraph of the Arbitral Tribunal's telefaxes dated April 3 and 10, 2006.

[129]    See e.g. para. 155 hereinafter referring to the disclosure of Protected Evidence by Claimant to the Inspectors in the BMA Investigation.

[130]    This witness testified by videoconference at the place where the principal office of his firm is domiciled.

spondent's ML-Defence in this *Ad-Hoc* Arbitration[169]. Further, following the rendering of the Arbitral Tribunal's Partial Award and new evidence filed in the BVI Proceedings, CTM filed an application to suspend the proceedings in the Stockholm Arbitration on December 10, 2004 (C-620).

153.    According to the Arbitral Tribunal's information, the status of the Stockholm Arbitration is ongoing, with the exchange of briefs having been completed and an evidentiary hearing having taken place in February 2006, in which some of the same witnesses as in this *Ad-Hoc* Arbitration were to be heard.

### dd)    BMA Investigation

154.    In 2004, a statutory investigation was ordered by the Bermuda Monetary Authority (the "**BMA**") into the affairs of IPOC and its Bermuda affiliated companies concerning suspicions of money laundering (the "**BMA Investigation**"), in which investigation two individuals of KPMG Bermuda were appointed as inspectors under Section 32 of the Bermuda Companies Act 1981 (the "**Inspectors**").

155.    Little information is available on the status of this investigation except that the Inspectors and Claimant have complained of an alleged breach of confidentiality resulting in a leak to Alfa-Eco and/or Respondent of materials compiled by the Inspectors in the context of their investigation and Claimant informed that a lawsuit for damages filed by KPMG against Diligence LLC *"an intelligence gathering firm located in Washington D.C."* relating to this leak is pending in Washington[170].

156.    On the other hand, Claimant disregarded the Confidentiality Order by disclosing Protected Evidence to the Inspectors without requesting leave to do

---

[169]    See p. 16 lines 16 et seq. T5H, pp. 289/290 T8H and p. 2 of Claimant's submission of July 15, 2005.

[170]    See the Inspectors' counsel's letter to Respondent dated August 2, 2005 (C-878) and Claimant's telefaxes dated February 7 and 20, 2006, May 1 and 4, 2006 and Respondent's comments dated February 20, 2006.

so from the Arbitral Tribunal[171] as provided for under the Confidentiality Order even for the event that a statutory obligation to disclose documents from this arbitration exists[172]. Therefore, the Arbitral Tribunal endeavored to protect this Protected Evidence by sending a letter to the Inspectors on April 26, 2006 drawing their attention to the confidentiality of such evidence[173].

157.  Claimant's request dated May 1, 2006 for *"leave to submit significant evidence that has just surfaced in the lawsuit filed by KPMG against Diligence"* has been dismissed by the Arbitral Tribunal's telefax dated May 5, 2006 without prejudice to a renewed request in the event proceedings continue after this Second Partial Award has been served on the Parties. The reason for this decision was that (i) Claimant has not alleged that Respondent filed in the Zurich *Ad-Hoc* Arbitration illegally received documents and (ii) neither the Riversand Payment[174] nor the Onward Sales[175] will be analysed in detail in the Second Partial Award, so that the *"credibility of Respondent"*[176] is not at the centre of the issues to be decided in this Second Partial Award[177].

158.  The Arbitral Tribunal understands that no report has yet been issued in this investigation, which is therefore ongoing[178].

**ee)    The Russian Action**

159.  On pp. 2/3 of its submission dated May 3, 2006, Respondent informed that *"[o]n or around 30 March 2006, IPOC issued new civil proceedings against*

---

[171]  See Claimant's statements and the Chairman's remark at p. 286 lines 15 to 28 T8H and the Arbitral Tribunal's letter to the Inspectors dated April 26, 2006.
[172]  See also the Arbitral Tribunal's telefaxes dated February 12, 2006 an May 12, 2006.
[173]  In this context, see also the Arbitral Tribunal's telefax dated January 26, 2006, C-778, Claimant's comments dated February 7 and 20, 2006 and Respondent's comments dated February 20, 2006.
[174]  See paras. 562 et seq. hereinafter.
[175]  See paras. 14 hereinabove.
[176]  See p. 2 of Claimant's telefax dated May 1, 2006.
[177]  In this context, see paras. 656, 708, 711 and 715 hereinafter.
[178]  See p. 279 lines 27/28 T8H.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH    )
FUND LIMITED    )
    )
    *Plaintiff,*    )
    )
v.    )    Civil Action No. 06-1109 (PLF)(AK)
    )
DILIGENCE LLC, et al.    )
    )
    *Defendants.*    )
_____)

### PROPOSED ORDER

Upon consideration of Defendants' Joint Motion for a Protective Order, it is hereby

ORDERED that the motion is granted, and it is further

ORDERED that Plaintiff shall disclose fully the facts and circumstances surrounding (i) recent findings by a Zurich arbitration panel that IPOC had violated the protective order entered in that arbitration; and (ii) IPOC's receipt and public filing in a foreign court of unredacted, under-seal transcripts in KPMG Financial Advisory Services, Limited v. Diligence LLC, No. 05-CV-02204 (PLF)(AK), and it is further

ORDERED that Plaintiff's's Motion for entry of its proposed Protective Order is DENIED, and it is further

ORDERED that the form of Protective Order attached to Defendants' Joint Motion for Entry of A Protective Order as Exhibit 1 shall be entered  pursuant to Federal Rule of Civil Procedure 26(c)(7).

Dated:                    _____

                          UNITED STATES MAGISTRATE JUDGE