## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED | ) ) ) | |
| *Plaintiff,* | ) ) | Civil Action No. 06-1109 (PLF) (AK) |
| v. | ) ) | |
| DILIGENCE LLC, et al. | ) ) | |
| *Defendants.* | ) ) | |
| _____ | ) | |

### OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR ORDER AUTHORIZING DISCLOSURE OF INFORMATION AND DIRECTING THE IMMEDIATE DELIVERY OF SUBPOENAED MATERIALS TO IPOC

IPOC's motion should be denied for numerous reasons.[1] *First*, IPOC's request for de-designation of documents marked "Confidential" under a Protective Order in the KPMG FAS Action is not properly before this Court because the KPMG FAS Action currently is on appeal to the D.C. Circuit—*an appeal filed by IPOC*. Having chosen to appeal Judge Friedman's August 23, 2006 denial of IPOC's self-described attempt "to unseal the record and obtain [the very same] 'confidential' documents" from Hughes Hubbard & Reed LLP ("Hughes Hubbard") that it seeks in the instant Motion, IPOC is barred under well-settled caselaw from now seeking the same relief in this Court. Mem. in Support of IPOC's Emergency Motion for Order Authorizing Disclosure of Information and Directing the Immediate Delivery of Subpoenaed Materials to IPOC (hereafter, "Mem.") at 5.

---

[1] For the Court's convenience, rather than file a separate Opposition, counsel for Defendant Barbour Griffith & Rogers, LLC ("BGR") has indicated that BGR joins in this Opposition brief.

*Second*, IPOC's motion is premature. All parties (and, importantly, non-party Hughes Hubbard) have agreed that a protective order must be in place prior to any additional production of documents in this case. To that end, the parties are in the midst of briefing the handful of remaining disagreements over the terms of the protective order. IPOC's attempt to preempt the orderly briefing of these remaining issues should be rejected.

*Third*, even if a protective order were in place and IPOC were not barred from seeking the relief it requests by its appeal in the KPMG FAS Action, IPOC's demand for de-designation of the documents marked "Confidential" under the Protective Order entered in the KPMG FAS Action (the "KPMG FAS Protective Order") would still lack merit. By IPOC's own admission, it seeks to de-designate such documents so that it may disseminate them *outside the United States*—and, therefore, outside this Court's jurisdiction. IPOC's request that the Court allow it to disseminate Diligence's internal documents produced in the KPMG FAS Action—documents designated "Confidential" under the KPMG FAS Protective Order—to whomever it wants, whenever it wants, wherever it wants, should be denied as an improper use of pre-trial discovery materials from another case.

*Fourth*, the component of IPOC's requested relief that would require Diligence (and BGR) to "immediately" produce documents to IPOC is not properly before the Court. Put simply, *IPOC is complaining about the sufficiency of a document production that, by agreement of the parties, has yet to occur*. Moreover, in its haste to file an "emergency" motion the day before Thanksgiving, IPOC has flouted this Court's well-established rules and procedures governing the filing of motions to compel discovery.

For all of these reasons, IPOC's Motion should be denied.

## BACKGROUND

This case arises out of IPOC's allegation that Diligence and BGR improperly obtained information about IPOC and gave that information to IPOC's "litigation adversaries," who in turn allegedly used that information in an arbitration proceeding filed by IPOC and held in Zurich. Complaint ¶ 21. The dispute before the Zurich arbitral tribunal was whether IPOC could enforce an agreement that purported to give it the option to purchase a large percentage of the outstanding shares of a Russian telecom company (the "April Option Agreement"). See Second Partial Award in the Ad-Hoc Arbitration in the Matter of IPOC Int'l Growth Fund Ltd. v. LV Finance Group Ltd. (May 16, 2006) (hereafter, the "Zurich Arbitration Ruling") ¶ ¶ 5, 282.[2]

After more than two years of taking evidence, the tribunal ruled that the April Option Agreement was void because enforcing it would violate English law. The lynchpin of the tribunal's ruling was its factual finding that the "beneficial owner" of IPOC is "a high-ranking officer of the Russian Federation with the function of coordination and regulation of activity in the sphere of communication of Russia." Zurich Arbitration Ruling ¶ 390. During the arbitration proceedings, the parties and the tribunal referred to this "high-ranking officer of the Russian Federation" as "Proposed Witness No. 7." Id.; see also id. at ¶¶ 231-239. The identity of "Proposed Witness No. 7" is widely understood and acknowledged to be Leonid Reiman, the Minister of Telecommunications for the Russian Federation. See, e.g., Gregory L. White, David Crawford & Glenn R. Simpson, Why Putin's Telecom Minister Is in Investigators' Sights Abroad, THE WALL STREET JOURNAL, October 17, 2006, at A1 (copy attached as Tab A to Diligence Inc.'s Motion for Order Compelling IPOC to Answer Interrogatories, filed November 17, 2006).

---

[2] A complete copy of the Zurich Arbitration Ruling was filed in this action on August 16, 2006 as Attachment 1 (Parts 1-10) to the Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss for Lack of Subject Matter Jurisdiction (Docket #33).

The tribunal found that IPOC is a key tool through which Proposed Witness No. 7 has laundered assets misappropriated from the Russian Federation.  With respect to the April Option Agreement in particular, the tribunal found that Proposed Witness No. 7 "misappropriated for his personal enrichment assets majority owned by the Russian Federation" by causing a state-owned telecom company to "abandon[]" its shares in "an asset of considerable value . . . in favour of [IPOC] for no value," with the "inten[t] to achieve this result through the April Option Agreement."  Zurich Arbitration Ruling ¶¶ 405, 429; see also id. at ¶¶ 231-239.

The Zurich arbitral tribunal further concluded that IPOC received money from a company called "Augmentation" (also under Proposed Witness No. 7's control) derived from "commission by Proposed Witness No. 7 of criminal offences" — namely, "abus[ing]" his official powers over licensing to "force" a company to purchase telecom licenses from Augmentation.  The tribunal thus held that, "[s]ince the performance of the April Option Agreement . . . constitutes the laundering of monies stemming from a predicate criminal offence . . . , [IPOC] cannot enforce its rights thereunder."  Zurich Arbitration Ruling ¶¶ 557, 561.

In seeking to enforce the April Options Agreement, IPOC adamantly contended to the Zurich tribunal that Jeffrey Galmond, a Danish attorney who has performed legal work for Mr. Reiman, was the true beneficial owner of IPOC, not Proposed Witness No. 7 (i.e., Mr. Reiman).  See Zurich Arbitration Ruling ¶¶ 216-230.  Based on its review of voluminous documents and after presiding over extensive testimony from numerous witnesses, the Zurich tribunal rejected IPOC's contention that Mr. Galmond owns IPOC.  Id. at ¶¶ 231-239.  It concluded instead that "Proposed Witness No. 7 was in June 2002 and in April 2001 the sole beneficial owner of IPOC," and that "the repeated testimony and allegation of [Mr. Galmond] that he is the beneficial owner of IPOC are proven to be clearly incorrect."  Id. at ¶ 232.

4

Since the filing of IPOC's Complaint in this action, the Supreme Court of Bermuda —IPOC's jurisdiction of incorporation—has issued a ruling confirming the Zurich Arbitration Ruling, holding as valid and binding the Zurich tribunal's conclusion that IPOC is a money-laundering enterprise used to further criminal conduct. See Attachment 1 to Reply to Plaintiff IPOC's Opposition to Motion of Defendant Barbour Griffith & Rogers LLC to Dismiss for Lack of Subject Matter Jurisdiction (Docket #42).

In the wake of the Zurich tribunal's findings in May that IPOC is a money laundering operation, IPOC has filed various lawsuits, including this one, throughout the United States and around the world in an attempt to obtain evidence that might help it to undermine the Zurich Arbitration Ruling. In this action, IPOC alleges that Defendants "corrupt[ed] the Zurich arbitration." Complaint ¶ 25. Specifically, the Complaint alleges that Diligence wrongfully obtained confidential information about IPOC from KPMG FAS, and gave that information to IPOC's adversaries in the Zurich arbitration. See Complaint ¶ 21. According to the Complaint, this allegedly wrongfully-obtained material appeared "almost verbatim" in a paragraph of one of the hundreds of legal briefs filed in the Zurich arbitral proceeding. Id.

Notably, nowhere in its Complaint or elsewhere has IPOC challenged the accuracy of the information it claims Diligence improperly obtained. Moreover, the Zurich tribunal itself, after IPOC complained during the proceeding that this allegedly confidential material had appeared in one of its opponent's briefs, specifically noted that the subject matter of the (allegedly) wrongfully-obtained material was not relevant to its findings. See Zurich Arbitration Ruling ¶ 157. Nevertheless, within a month of its overwhelming loss in the Zurich arbitration, IPOC commenced this lawsuit and others around the world in a last-gasp effort to attack the integrity of the Zurich arbitral tribunal's ruling against it.

5

## ARGUMENT

**I.    IPOC IS BARRED FROM SEEKING RELIEF FROM THE KPMG FAS PROTECTIVE ORDER BECAUSE THAT VERY RELIEF IS THE SUBJECT OF IPOC'S PENDING APPEAL TO THE D.C. CIRCUIT.**

At the outset, it is important to note that the parties are in complete agreement that the "documents subpoenaed from Hughes Hubbard [by IPOC in this case]" are subject to, and governed by, "[t]he protective order entered in the [KPMG FAS Action]." Mem. at 7.

This is a crucial point. In its motion papers, IPOC acknowledges that it recently filed a motion in the KPMG FAS Action, even though that case had been settled and dismissed, "to unseal the record and obtain [the very same] 'confidential' documents" from Hughes Hubbard that it seeks in the instant Motion. Mem. at 5. That motion was styled "IPOC International Growth Fund Limited's Motion to Intervene, For Access to Court Files, To Modify Protective Orders and to Alter Confidentiality Designations." As IPOC notes, Judge Friedman denied that motion. See Mem. at 5; see also KPMG FAS Action (Minute Order entered August 23, 2006). IPOC also acknowledges, as it must, that it has appealed Judge Friedman's denial of that motion to the U.S. Court of Appeals for the D.C. Circuit. See Mem. at 5.

It is hornbook law, however, that "[t]he filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'" United States v. DeFries, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam)). Following the filing of a notice of appeal, "[t]he district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." DeFries, 129 F.3d at 1302.

Here, it cannot reasonably be disputed that IPOC's request in the instant Motion to de-designate documents marked "Confidential" pursuant to the KPMG FAS Protective Order is the very same relief requested in the motion filed by IPOC in the KPMG FAS Action and denied by Judge Friedman on August 23, 2006. The title of IPOC's motion in the KPMG FAS Action alone proves the point. That motion was styled "IPOC International Growth Fund Limited's Motion to Intervene, For Access to Court Files, To Modify Protective Orders and to Alter Confidentiality Designations." Moreover, in its Memorandum in support of that failed motion, IPOC urged the Court to:

> lift the "Confidential" designation from all discovery material [produced by Diligence in the KPMG FAS Action] except for the Confidential Materials that Diligence [allegedly] stole from KPMG FAS, which are required by Bermuda law to remain confidential. All other discovery materials [including the documents in Hughes Hubbard's possession] including responses to interrogatories and requests for admissions, deposition transcripts and all documents produced by parties and third parties in discovery should no longer be designated "Confidential."

IPOC International Growth Fund Limited's Motion to Intervene, For Access to Court Files, To Modify Protective Orders and to Alter Confidentiality Designations, KPMG FAS et al. v. Diligence, No. 05-2204 (PLK) (AK) (Docket #67), at 19. This is, of course, the very same relief that IPOC seeks in the instant Motion.

Indeed, any doubt as to whether the de-designation issues raised by IPOC in the instant Motion are among the very same issues currently on appeal by IPOC is conclusively resolved by IPOC's own Statement of Issues Presented filed just three weeks ago in the Court of Appeals (copy attached hereto as Exhibit A). In that filing, IPOC represented to the Court of Appeals that the issues presented in the appeal are "[w]hether the district court erred in denying IPOC International Growth Fund Limited's Motion to Intervene, for Access to Court Files, to Modify Protective Order, and to Alter Confidentiality Designations." Ex. A. That filing by IPOC

7

precludes as a matter of law any contention by IPOC in this case that the only issue before the D.C.

Circuit is whether Judge Friedman should have allowed IPOC to *intervene* in that closed case. If

that were true, then IPOC's Statement of Issues Presented would have listed just that one issue. It

did not; instead, it listed three additional issues. Having represented to the D.C. Circuit just three

weeks ago that the "Issu<u>es</u> Presented" (emphasis added) in its appeal are whether this Court should

have granted not only its motion to intervene, but also its request "for [a]ccess to Court [f]iles, to

[m]odify Protective Order, and to [a]lter [c]onfidentiality [d]esignations," Ex. A, IPOC is judicially

estopped from now contending for purposes of the instant Motion that the only issue on appeal is

Judge Friedman's denial of IPOC's request to intervene.  See, e.g., Konstantinidis v. Chen, 626

F.2d 933, 938-39 (D.C. Cir. 1980) ("Judicial estoppel operates to prevent a party from insulting a

court through improper use of judicial machinery.  Thus the concept's underlying rationale is that a

party should not be allowed to convince unconscionably one judicial body to adopt factual

contentions, only to tell another judicial body that those contentions are false").

        In sum, because IPOC elected to appeal Judge Friedman's denial of its requested

relief in the KPMG FAS Action[3]—relief that IPOC acknowledges included an attempt "to unseal

the record and obtain [the very same] 'confidential' documents," Mem. at 5, from Hughes Hubbard

that it seeks in the instant Motion—IPOC is barred from seeking the same relief from this Court.

See Defries, 129 F.3d at 1302; Leadership Conference on Civil Rights v. Gonzales, 421 F. Supp.

2d 104, 107 (D.D.C. 2006) ("When defendant filed its notice of appeal on February 6, 2006, this

_____

    [3] In its Opposition to IPOC's motion in the KPMG FAS Action, Diligence pointed out that
there was no reason, *at that time*, why IPOC could not seek from Judge Kay the de-designation
relief it requested in that motion.  See Mem. of Defendant in Opposition (Docket # 66), at 5.  For
reasons that remain obscure, IPOC insisted upon filing its motion in the settled and dismissed
KPMG FAS Action, and upon appealing Judge Friedman's denial of that motion to the D.C.
Circuit.  By making these decisions, IPOC extinguished its ability to seek the same relief in this
action.

Court was divested of jurisdiction over the matters on appeal").[4]  IPOC is barred from seeking

relief such in this Court until the Court of Appeals issues its mandate in IPOC's appeal.  IPOC's

impermissible attempt to take two bites at the apple, simultaneously, fails as a matter of well-

settled law and procedure.

## II.     IPOC'S MOTION IS PREMATURE BECAUSE NO PROTECTIVE ORDER HAS BEEN ENTERED IN THIS CASE.

IPOC misleadingly complains about "[t]he overdesignation of documents in this

case as 'confidential' and 'attorneys' eyes only."  Mem. at 1 (emphasis added).  In fact, by the

agreement of all parties, no party has produced documents thus far in this case (IPOC's document

production was due November 13; Diligence's on November 16, see Ex. B).  Rather, all parties

have agreed that no party will produce documents until entry of a protective order by this Court.

See Ex. B (email confirming agreement between the parties).  Equally important, the target of the

non-party subpoena that is the subject of IPOC's motion—Hughes Hubbard—requested almost

two months ago that a protective order be entered in this case prior to it producing all of the

documents responsive to IPOC's non-party subpoena.  See IPOC's Mem. in Support of Mot. for

Entry of Protective Order, at 1 ("HHR refused to produce the remainder of the subpoenaed

material until a protective order is entered by the Court"); see also Mem. at Ex. I (10/19/06 letter

from IPOC's counsel to Hughes Hubbard confirming its refusal).

The parties are, of course, in the midst of briefing the proper terms and scope of the

protective order that all parties agree should be entered before document production proceeds.

See IPOC's Mem. in Support of Mot. for Entry of Protective Order, at 2 ("The parties to this case

_____

[4] To be sure, courts have recognized "a few narrow exceptions to this rule, such as where the defendant frivolously appeals, or takes an interlocutory appeal from a non-appealable order." DeFries, 129 F.3d at 1302-03 (internal citations omitted).  But neither exception applies here.  To the contrary, this case presents the highly unusual scenario in which the party that filed the notice of appeal is the same party seeking relief from this Court on the same issue.

agree that a protective order is necessary in this case"). On November 20, during the last of three meet-and-confers[5] held between all counsel to discuss the protective order's terms and scope, all parties agreed that IPOC would file a Motion for Protective Order (which it did on November 22 concurrently with its emergency motion), and that Defendants would submit an alternative proposed protective order in opposing that motion. In accordance with that understanding, concurrently with the filing of this Opposition, Diligence and BGR have filed a joint Opposition to IPOC's Motion for Entry of Protective Order as well as their own Motion for Protective Order, attached to which is Defendants' requested form of protective order. IPOC's reply brief on its motion is due December 18, 2006. Under these circumstances, to grant the relief sought by IPOC in its "emergency motion" before the parties even finish briefing the Protective Order motion would be to place the cart before the horse—which, of course, is exactly what IPOC wants. By seeking "emergency" relief, IPOC plainly is trying to render moot the orderly briefing of the handful of remaining disagreements between the parties over the scope of the protective order.

       IPOC's attempt to manufacture an "emergency" scenario requiring immediate disclosure, outside the United States, of documents marked "Confidential" under the KPMG FAS Protective Order is utterly unconvincing. According to IPOC, it must be allowed to immediately disseminate these documents overseas, prior to entry of a protective order in this case, because IPOC's "board members and its executives" urgently "need to be warned of Diligence's

---

[5] IPOC suggests, without support, that Diligence has stalled on the entry of a protective order. See Mem. at 2. This is false. On November 3, a full two week*s before* Diligence's scheduled production on November 16, Diligence's counsel sent IPOC's counsel a draft protective order for review and comment. See Ex. B. But IPOC inexplicably delayed a full calendar week in responding to Diligence's draft, and did so only after counsel for Diligence sent a follow-up email urging IPOC to promptly provide its feedback. Finally, on November 10, IPOC provided its comments on the draft. Over the ensuing ten days, the parties held three separate meet-and-confers to attempt to reach agreement on the protective order. As IPOC itself acknowledges, "[t]he parties have met and conferred and were able to resolve a number of disputes, but have been unable to resolve all issues." Mem. in Support of Plaintiff IPOC's Motion for Entry of Protective Order at 2.

misconduct" alleged in this case. Mem. at 3. This is a red herring. Presumably, such IPOC executives and board members have read IPOC's Complaint in this action, which details all of IPOC's accusations raised in the instant Motion regarding intelligence operatives and alleged plots to obtain information about the Government of Bermuda's pending investigation of IPOC's affairs. Indeed, IPOC's attachment to its motion papers of documents it received from Hughes Hubbard in October highlights perfectly the absence of an exigency justifying the urgent relief requested in IPOC's motion—*IPOC has had those documents since October 20.* See Ex. A. IPOC wholly fails to explain why, having had those documents since October 20, it suddenly needs to "warn[]" IPOC's executives about alleged misconduct by Defendants that IPOC alleges occurred during 2005.

Finally, IPOC's dramatic charge of an ongoing plot to "destroy" it glosses over the fact—of which IPOC is well aware—that Diligence is already under a Consent Order, entered pursuant to a settlement of the KPMG FAS Action, prohibiting Diligence from disseminating to anyone confidential information obtained from KPMG FAS or in any way interfering with KPMG FAS's ongoing investigation of IPOC on behalf of the Government of Bermuda. See KMPG FAS Action (Docket #64) (copy attached hereto as Exhibit C). IPOC's attempt to concoct an "emergency" scenario requiring immediate relief is simply fanciful.

## III.    IPOC'S REQUESTED RELIEF WOULD ALLOW IT UNFETTERED AND IMPROPER USE OF PRE-TRIAL DISCOVERY FROM ANOTHER CASE.

Even if IPOC were not barred by its own pending appeal from pursuing the relief it seeks here (as set forth in Section I above, IPOC plainly is), and even if a protective order already were in place in this case (one is not), the extraordinary relief requested by IPOC would be appropriately denied as inequitable and unjustified. IPOC is simply not entitled to the broad, one-sided relief it requests.

11

A protective-order motion is properly denied where, as here, the relief requested is unduly one-sided and the burdens are asymmetrical. See generally AMFAC Resorts v. United States Department of the Interior, 143 F. Supp. 2d 7, 14 (D.D.C. 2001) (rejecting each party's proposed protective order as one-sided, and instead entering a Protective Order that "seeks a middle ground"); THK America, Inc. v. NSK Co., 157 F.R.D. 637, 640 (N.D. Ill. 1993) (affirming Magistrate Judge's rejection of disputed paragraph in proposed protective order because it "would make the protective order 'one-sided' in defendant's favor"). Here, IPOC has refused to produce *any* documents for almost a full calendar month (its documents were due to be produced on November 13, see Ex. B) on the grounds that it should not be required to do so until the Court enters a protective order.[6] At the same time, however, IPOC is demanding that Hughes Hubbard be ordered to produce documents immediately in response to IPOC's nonparty subpoena, with no protective order protections whatsoever—documents that IPOC has previously told the Court comprise essentially the entire universe of Diligence documents relevant to this case. See IPOC's Opposition to Defendant Diligence's Motion to Stay Discovery Pending Resolution of Motions to Dismiss (Docket #12), at 9 ("Responding to IPOC's discovery requests should require little more than producing documents and information that Diligence already gathered [and produced to Hughes Hubbard in the KPMG FAS Action]").

        In addition to being asymmetrical, IPOC's requested relief is highly unusual and improper. Reduced to its essence, IPOC's motion seeks this Court's permission to divulge to anyone it wants, with no restrictions whatsoever, documents that were produced by Diligence during pretrial discovery in the KPMG FAS Action under the protections of the KPMG FAS

---

[6] Similarly, despite its insistence that this Court lift the stay of discovery entered by Judge Friedman on July 31, IPOC likewise has refused to discharge its Initial Disclosure obligations under Federal Rule of Civil Procedure 26(a), the original deadline for which was July 28, 2006.

Protective Order.  Notably, these documents, by KPMG FAS's own description, include "copies of internal [Diligence] emails and other business records of [Diligence], along with internal working papers and other confidential documents," allegedly delivered anonymously to KPMG without authorization by Diligence.  KPMG FAS Complaint ¶ 15.

It is well established that public dissemination of information and materials produced in pretrial discovery is not a proper use of the discovery process.  See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) (pretrial discovery mechanisms "are not public components of a civil trial . . . . [rather] they are conducted in private as a matter of modern practice"); In re Reporters Committee for Freedom of the Press, 773 F.2d 1325, 1331 (D.C. Cir. 1985) (noting that in Seattle Times Co., the Court "upheld the trial court's imposition of a protective order" rejecting "a claim by one of the parties of the right to *disseminate* information acquired in the course of pretrial discovery") (emphasis in original); see also In re Baycol Prod. Litig., 2003 WL 23145587, at *1 (D. Minn. Dec. 12, 2003) ("while there is a right of public access to judicial proceedings, this right does not necessarily extend to pretrial discovery that has not become a public component of a civil case").  These principles apply with added force where, as here, the materials at issue include documents stolen from a party or copied and disseminated without its authorization.  See KPMG FAS Complaint ¶ 15 (alleging that the internal Diligence documents were "delivered anonymously" to a KPMG office in the U.S.).

Apart from use in this litigation, IPOC has no valid need for—indeed, no right to—the Diligence document production in the KPMG FAS Action—documents marked "Confidential" pursuant to the KPMG FAS Protective Order.  There is no reason why the documents in Hughes Hubbard's possession should be the subject of a wholesale exemption from the protective order that all parties agree should be entered in this case, see IPOC's Mem. in Support of Mot. for Entry

13

of Protective Order at 2 ("[t]he parties to this case agree that a protective order is necessary in this case"), especially given that IPOC readily acknowledges that the company intends to ship the documents overseas, away from meaningful control by the Court. See IPOC's Mem. in Support of Mot. for Entry of Protective Order at 6 (claiming the need "to disclose discovery material to IPOC and its representatives outside the United States"). To allow IPOC to do so free and clear of any restrictions on the use and dissemination of those documents would plainly prejudice Diligence. Without the protections of a protective order entered by this Court, IPOC's "representatives outside the United States," id., will have *carte blanche* to hand out those documents to anyone they wish—documents that KPMG FAS's own Complaint described as "copies of internal [Diligence] emails and other business records of [Diligence], along with internal working papers and other confidential documents." KPMG FAS Complaint ¶ 15. IPOC's extraordinary request for relief should be rejected.

## IV.  IPOC'S REQUEST FOR AN ORDER COMPELLING PRODUCTION OF DOCUMENTS IS PREMATURE AND VIOLATES THIS COURT'S RULES.

As a tag-along to its request for de-designation of the Diligence documents currently in Hughes Hubbard's possession as a remnant of the KPMG FAS Action, IPOC further requests "an order directing Diligence and BGR to immediately produce all documents related to 'Project Yucca' . . . ." Mem. at 6.[7] This request is not only premature—as noted above, all parties have agreed that no party productions will be made until the Court enters a protective order, see

---

[7] In its Responses and Objections to IPOC's First Request for Production, Diligence objected to IPOC's request for all documents related to Project Yucca as unduly burdensome, not relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding those objections, Diligence indicated that it would produce all Project Yucca documents concerning the allegations in IPOC's Complaint—specifically, the allegations that Diligence obtained confidential material from KPMG FAS's investigation of IPOC on behalf of the Government of Bermuda. IPOC has never disputed the sufficiency of Diligence's response.

Ex. B—but it violates this Court's rules. This component of IPOC's "emergency" motion is nothing more than a routine motion for an order compelling discovery. But in its hurried attempt to obtain such an order before completion of the briefing on its Motion for Entry of Protective Order, IPOC has disregarded this Court's well-established rules regarding the filing of discovery motions.

As noted above, under the agreement reached between IPOC and Diligence following this Court's October 13 Order allowing written discovery to proceed, IPOC's document production was due November 13, and Diligence's was due November 16. See Ex. B (email exchange confirming the parties' agreement). Because the parties have agreed that no productions should be made until entry of a protective order, no party, including IPOC, has yet produced documents to any other party. IPOC is thus attempting an end-run around this agreement by seeking an "emergency" order compelling document production by Diligence and BGR. This is improper. Put simply, *IPOC is complaining about the sufficiency of a document production that, by agreement of the parties, has yet to occur.* IPOC's motion is plainly premature.

Lastly, in its rush to the courthouse, IPOC has flouted this Court's Local Rules. Specifically, IPOC has disregarded the following Local Rules governing the filing of motions to compel discovery:

> **LCvR 7(m)**—In direct contravention of LCvR 7(m), IPOC has made no attempt whatsoever to meet and confer regarding production of so-called "Project Yucca" documents. Indeed, until a protective order has been entered, any such request for a meet-and-confer would be nonsensical given the parties' agreement that document productions occur <u>only</u> after entry of a protective order.

> **LCvR 5.2(b)**—IPOC has failed to include with its motion papers copies of the Requests for Production at issue and Diligence's responses and objections thereto, thereby violating the requirement under LCvR 5.2(b) that "[a]ny motion concerning discovery matters shall be accompanied by a copy

15

of, or shall set forth verbatim, the relevant portion of any nonfiled discovery materials to which the motion is addressed."

In sum, until a Protective Order is entered and the parties thereafter proceed with their respective document productions, and unless and until IPOC complies with this Court rules and procedures governing motions to compel discovery, IPOC's request for an Order compelling production of documents is not properly before the Court and must be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny IPOC's Emergency Motion for Order Authorizing Disclosure of Information and Directing the Immediate Delivery of Subpoenaed Materials to IPOC.

Respectfully submitted,

December 6, 2006                                        AEGIS LAW GROUP LLP

By:    /s/Michael K. Ross
Paul C. Rauser (D.C. Bar No. 461722)
Michael K. Ross (D.C. Bar No. 458573)
Oliver Garcia (D.C. Bar No. 456600)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500/ F: 202-737-3330

*Attorneys for Diligence Inc.*

# EXHIBIT A

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

NOV 1 3 2006

RECEIVED

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| *In re*<br>IPOC INTERNATIONAL GROWTH FUND LIMITED | )<br>)<br>) |
| | )<br>) |
| KPMG FINANCIAL ADVISORY<br>     SERVICES LIMITED *et al.*, | )<br>)<br>) |
|        Plaintiffs, | )<br>) |
| v. | )<br>) |
| DILIGENCE LLC, | )<br>) |
|        Defendant. | )<br>)<br>) |

Case No. 06-7162

<u>**ISSUES PRESENTED**</u>

Whether the district court erred in denying IPOC International Growth Fund Limited's

Motion to Intervene, for Access to Court Files, to Modify Protective Orders and to Alter

Confidentiality Designations.

OF COUNSEL:
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:   (312) 558-5858
Fax:   (312) 558-5700
kanderson@winston.com

*Carol A. Joffe* (signature)

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:   (202) 282-5000
Fax:   (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com
*Counsel for IPOC International
Growth Fund Limited*

Dated: November 13, 2006

# CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2006, copies of the foregoing Statement of Issues were mailed, postage prepaid, to:

> Roberta Koss
> Charles Reed
> Hughes, Hubbard & Reed LLP
> 1775 I Street, N.W.
> Washington, DC 20006
> *Counsel for Plaintiffs*
>
> Paul C. Rauser
> Oliver Garcia
> Aegis Law Group LLP
> 901 F. Street, N.W., Suite 500
> Washington, DC 20004
> *Counsel for Defendant*

Carol A. Joffe

# EXHIBIT B

**From:** M Ross <mross@aegislawgroup.com>
**To:** Broas, Timothy <TBroas@winston.com>
**Cc:** Joffe, Carol <CJoffe@winston.com>, P Rauser (E-mail)
     <prauser@aegislawgroup.com>, David Thompson (E-mail)
     <dthompson@cooperkirk.com>, Anderson, Kimball
     <KAnderson@winston.com>, Stukes, Anne <AStukes@winston.com>
**Subject:** RE: IPOC Diligence BGR
**Date:** Fri, 27 Oct 2006 15:16:22 -0400

Tim:

The dates you propose are fine with Diligence. As Paul and Carol have previously discussed, a Protective Order of course needs to be in place prior to the parties' respective productions. To avoid any delays, we will circulate a draft P.O. for your review and comment no later than next Wednesday.

Best regards,

Mike

On Fri, 2006-10-27 at 15:06 -0400, Broas, Timothy wrote:

> Mike: thanks for your response. We don't want to quibble over a day here or a day there, but we would prefer to have the benefit of the weekend of November 11-12 before we serve our responses. Please let us know if you would be willing to modify your proposal--ever so slightly--to require plaintiff's responses to be served on Monday, November 13, and Diligence's responses to be served on November 16, 2006.
>
> David, I know you are withdrawing on BGR's behalf, and we have been trying--unsuccessfully-- to reach Mr. MacMahon, but we will assume from your pre-withdrawal notice proposal that BGR and IPOC will exchange responses on November 13.
>
> Mike, please let us know today if our modification is acceptable to you and your client.
>
> Thanks. Tim
>
>
> -----Original Message-----
> **From:** M Ross [mailto:mross@aegislawgroup.com]
> **Sent:** Friday, October 27, 2006 2:33 PM
> **To:** Broas, Timothy
> **Cc:** Joffe, Carol; P Rauser (E-mail); David Thompson (E-mail); Anderson, Kimball; Stukes, Anne
> **Subject:** RE: IPOC Diligence BGR
>
>
>    Tim,

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KPMG FINANCIAL ADVISORY            )
SERVICES LIMITED,                  )
MALCOLM BUTTERFIELD, and           )
MICHAEL MORRISON,                  )
                                   )
                    Plaintiffs,    )
                                   )   Civil Action No: 05-2204 (PLF)
                                   )
        v.                         )
                                   )
DILIGENCE LLC,                     )
                                   )
                    Defendant.     )
                                   )

## STIPULATION OF DISMISSAL
## AND CONSENT ORDER

Plaintiffs allege in their complaint that Defendant was retained to, inter alia,
obtain certain confidential documents and information from Plaintiffs (the "Confidential
Materials"), including documents and information gathered or prepared by Plaintiffs in
connection with an investigation of IPOC International Growth Fund Ltd. and eleven
related companies pursuant to their appointment by the Bermuda Minister of Finance (the
"IPOC Investigation"). Defendant has filed an Answer denying Plaintiffs' allegations and
setting forth various defenses to Plaintiffs' claims.

Plaintiffs and Defendant have consented and agree to dismissal of this
action with prejudice without any admission or finding or wrongdoing by any party.

As a condition of dismissal, Defendant shall abide by the following
conditions originally set forth in the Court's Order of November 11, 2005:

Defendant, its officers, agents, servants, employees, and attorneys, and all

persons who have been in active concert or participation with them who receive actual

notice of this order, are directed

      (a)  not to have any contact with any employee or agent of KPMG Financial
Services Ltd. or KPMG LLP in furtherance of any effort to obtain
documents or information related to the IPOC Investigation or to interfere
with the IPOC Investigation; and

      (b)  not to disclose or communicate to any person in any manner any of the
Confidential Materials or documents or information that incorporate,
summarize or refer to information contained in the Confidential Materials.

      The case is hereby dismissed with prejudice and without costs to any party.

The Court shall have jurisdiction to enforce the terms of this Order.


IT IS SO ORDERED:


_____    Dated:_____
United States District Judge

STIPULATED AND AGREED:

HUGHES HUBBARD & REED LLP

By: _Charles Rw_

Roberta Koss
  D.C. Bar No. 442813
Charles Reed
  D.C. Bar No. 490833
1775 I Street, N.W.
Washington, D.C.  20006
(202)

Attorneys for Plaintiffs


AEGIS LAW GROUP LLP

By: _Paul C. Rauser (by permission)_

Paul C. Rauser
  D.C. Bar No. 461722
Oliver Garcia
  D.C. Bar No. 456600
901 F Street, N.W., Suite 500
Washington, DC  20004
(202) 737-3500

Attorneys for Defendant