## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH )
FUND LIMITED )
)       Civil Action No. 06-1109 (PLF)(AK)
      *Plaintiff,* )
)
v. )
)
DILIGENCE LLC, et al. )
)
      *Defendants.* )
_____ )

### REPLY TO PLAINTIFF IPOC'S OPPOSITION TO DILIGENCE'S MOTION FOR AN ORDER COMPELLING PLAINTIFF TO ANSWER INTERROGATORIES

      IPOC cannot be allowed to run away from its own Complaint.  Although IPOC now seeks to avoid uncomfortable discovery concerning the Zurich arbitration proceeding by proclaiming "the findings and outcome of [the Zurich arbitration] irrelevant" to this case, Opposition Memorandum ("Opp."), at 9, IPOC's Complaint and its briefs before Judge Friedman are, in fact, larded with allegations that the Defendants interfered with the Zurich arbitration, thereby causing harm to IPOC.

      IPOC simply cannot have it both ways, varying its position from Judge to Judge and according to its tactical needs of the moment.  Having taken the position in its Complaint and in previously-filed briefs that the Defendants interfered with IPOC's "business expectancy" "that the Zurich arbitration . . . would be conducted in an evenhanded and impartial manner . . . ." Complaint ¶ 27, thereby causing damage, IPOC has placed squarely at issue both the integrity of the Zurich arbitration proceeding and the validity of its outcome.  As a result, Defendants must be allowed to prove that their conduct did not taint – indeed, could not have tainted – the arbitral

tribunal's detailed findings concluding that "Proposed Witness No. 7" (i.e., Russian Telecommunications Minister Leonid Reiman) is the real owner of IPOC, nor could they have tainted the panel's conclusion that, because IPOC's proceeds were illegally derived by Mr. Reiman, IPOC's attempts to enforce the stock option agreement at issue "constitutes the laundering of monies stemming from a predicate criminal offence." Zurich Arbitration Ruling ¶¶ 557, 561.

The correctness of the Zurich arbitration findings thus relates directly to the issue of causation in this case: did Defendants' alleged misconduct influence the outcome of the Zurich arbitration? It also bears directly on the issue of damages: if so, how and to what extent was IPOC harmed?[1] Still further, it is highly relevant to IPOC's request for an injunction "restrain[ing]" Defendants because IPOC "has no remedy at law for the continued harm to IPOC caused by the improper and deceitful actions of Diligence and [BGR] to corruptly influence . . . the Zurich arbitration . . ." Complaint ¶ 28.

Desperate to avoid discovery into who (or what) owns it, IPOC attempts to amend its Complaint *sub silencio* by announcing that "the [only] subject of this lawsuit" is "Defendants tortious interference with the Investigation conducted in Bermuda." Opp. 5. This attempt is not only procedurally improper, it is wholly unavailing. As noted above, IPOC's own allegations and representations to this Court place squarely at issue both the integrity of the Zurich arbitration proceedings and the validity of its outcome – an outcome which turned directly on Leonid Reiman's beneficial ownership of IPOC. Defendants are entitled to demonstrate in this Court that they did not (and obviously could not) taint the basic, dispositive facts found by the Zurich panel: Leonid Reiman owns IPOC, and uses IPOC to launder his ill-gotten funds.

---

[1]    Put differently, Defendants are entitled to demonstrate that they did not tortiously interfere with the Zurich arbitration, as alleged by IPOC, because the panel's findings were correct, and would not have been different "but for" the Defendants' alleged misconduct.

2

In any event, even if IPOC's Zurich-related allegations did not put IPOC's ownership directly at issue in this case (and they do), discovery of such basic matters as who actually owns IPOC is also equally relevant to IPOC's allegation that the Defendants tainted an investigation into IPOC's affairs being conducted by KPMG FAS for the Bermuda Minister of Finance (the "Bermuda Investigation"). As has been noted, "[t]he terms of reference [of the Bermuda Investigation] include identifying the source of IPOC's funds . . . ." Ex. A, p. 1. Consequently, the issue of who (or what) actually owns IPOC – and whether it is, in fact, merely a money-laundering front – bears directly on the issue of whether the Defendants somehow manipulated the Bermuda Investigation to IPOC's detriment.

Finally, IPOC's unsupported accusation that Diligence "is attempting to abuse the discovery process in an ongoing effort" to obtain information about IPOC for IPOC's adversaries is a hollow excuse for IPOC for producing plainly relevant discovery. Opp. at 4, n.6. There is little doubt, of course, that in the event the Court orders IPOC to fully answer the Interrogatories at issue, IPOC will designate its answers as "Confidential" or "Attorneys' Eyes Only" under the protective order that, as IPOC acknowledges, all "parties to this case agree . . . is necessary in this case." IPOC's Mem. in Support of Mot. for Entry of Protective Order, at 2. Such a designation, under both IPOC's proposed protective order and Defendants' alternative proposed version, will expressly forbid any use of such information for any purpose other than for this litigation.

In sum, having made the decision to seek money damages and injunctive relief for alleged interference by Defendants in the Zurich arbitration proceeding and the Bermuda Investigation, IPOC cannot now be heard to complain about having to produce discovery relating to these claims—including discovery on such basic matters as who (or what owns it), and the identities of the officers and directors of its subsidiaries and affiliates. Because such information

3

plainly is "relevant to the claims and defenses" in this case, Federal Rules of Civil Procedure 26(b)(1) requires that IPOC be required to provide it.  Fed. R. Civ. P. 26(b)(1).

## ARGUMENT

**I.    IPOC'S OWN PLEADING AVERMENTS ESTABLISH THE RELEVANCY OF THE INTEGRITY OF THE ZURICH ARBITRATION PROCEEDINGS AND ITS FINDINGS.**

IPOC argues that it should not be required to answer interrogatories relevant to the determinations made by the Zurich arbitration tribunal.  According to IPOC:

> Diligence's argument is premised on its inaccurate claim that IPOC's Complaint alleges that the Defendants' tortious actions "corrupt[ed] the Zurich arbitration.  But Diligence has misquoted the Complaint, which states that the Defendants' actions were "calculated to corrupt the Zurich arbitration," not that they did corrupt the arbitration. IPOC does not in this lawsuit claim damages resulting from the findings of the Zurich arbitration. . . . Despite Defendants' repeated attempt to interject the merits of the Zurich arbitration into this case, the findings and outcome of that proceeding are irrelevant here.

Opp. at 9.  This is simply not true.  Although IPOC now seeks to run away from its own Complaint, its attempt to do so is defeated by numerous allegations in its Complaint that place directly at issue the integrity of, and the findings made in, the Zurich arbitration.  Moreover, IPOC's own statements to this Court in its various briefs filed in opposition to the dispositive motions pending before Judge Friedman further prove the relevance of the Zurich arbitration to IPOC's claims, as does IPOC's response to one of the few interrogatories it has bothered to answer.

**A.    IPOC's Complaint Repeatedly References, and Asserts Claims Based Upon, the Zurich Arbitration.**

IPOC's most recent, tactically-opportune recharacterization of the Complaint is clearly incompatible with the Complaint itself, which <u>directly</u> alleges harm – indeed, seeks an injunction to prevent "continued harm," Compl. ¶ 28 – due to Defendants' alleged actions to taint

4

or corrupt the Zurich arbitration.  A review of the following portions of IPOC's Complaint demonstrates that the alleged corruption of the Zurich arbitration proceedings is not only relevant to IPOC's case, it is a principal pillar of it:

- **Complaint ¶ 11**—IPOC opens the Factual Background section with a discussion of the Zurich dispute.

- **Complaint ¶ 21**—Alleges that Diligence, "acting on behalf of Defendant BGR, which was acting on behalf of litigation adversaries of IPOC . . . provided the misappropriated business information to such litigation adversaries of IPOC. Indeed, a portion of the unlawfully obtained materials appeared almost verbatim in submissions made by LVFG to a Zurich arbitral tribunal in the proceedings referenced above."

- **Complaint ¶ 25**—Alleges that Defendants interfered with IPOC's expectation that "the Zurich arbitration in which it sought to enforce its rights would be conducted without malicious interference and would not be tainted by improper or illegal activities calculated to corrupt the Zurich arbitration for the benefit of IPOC's litigation adversaries . . . ." Complaint ¶ 25.

- **Complaint ¶ 27**—Alleges as an element of Count I (tortious interference with business expectancies) that IPOC had a "reasonable business expectanc[y]," interfered with by Defendants, "that the Zurich arbitration [and an investigation into IPOC's affairs by the Government of Bermuda] would be conducted in an evenhanded and impartial manner . . . ."

- **Complaint ¶ 28**—Alleges that the Court should issue an injunction "restrain[ing]" Defendants because it "has no remedy at law for the continued harm to IPOC caused by the improper and deceitful actions of Diligence and [BGR] to corruptly influence . . . the Zurich arbitration . . ."

- **Complaint ¶ ¶ 47, 51**—In stating elements of its common law claims for unfair competition (¶ 47) and conspiracy (¶ 51), claims that IPOC suffered damages by the disclosure of its allegedly confidential information to its "litigation adversaries" in the Zurich arbitration.

- **Complaint ¶ 55**—Asserts common law claim for unjust enrichment for benefits received by Defendants in connection with "their attempts to wrongfully influence . . . the Zurich arbitration."

In sum, IPOC cannot now disavow, for purposes of discovery against it, the litany of allegations in its own Complaint relating to wrongdoing and damages in connection with the

5

Zurich arbitration.  Until IPOC's Complaint is dismissed, Defendants are entitled to discovery on *all* matters "relevant to the claims and defenses of any party," not just a sub-set of issues on which IPOC is willing to produce discovery.  Fed. R. Civ. P. 26(b)(1).

**B.    Numerous Representations in IPOC's Briefs Filed in This Action Confirm the Relevance of the Zurich Arbitration Proceedings.**

Any doubt as to whether the Zurich arbitration proceeding is a central issue in this case is extinguished by a review of IPOC's *own* briefs filed with Judge Friedman over the last five months in opposition to the pending motions challenging the legal sufficiency of its Complaint. Those IPOC briefs include the following statements:

*1.   From its Opposition to BGR's Motion to Dismiss (Docket #19):*

- **Page 1**—Asserting that Defendants "purloined information to IPOC's litigation adversaries, who then attempted . . . to corrupt an international arbitration."  The paragraph refers back to the Complaint's charges concerning the Zurich arbitration.

- **Page 11**—Arguing that its Complaint states ripe legal claims because it "more than adequately provides BGR with sufficient information to apprise it of the charges against it and to allow BGR to prepare some defense." IPOC adds with respect to the place of the alleged acts: "Place: The Complaint specifies Bermuda and Zurich. . . . A document submitted to an arbitration in Zurich contained a verbatim recitation from a portion of the stolen materials."

*2.   From its Opposition to Diligence's Motion to Dismiss (Docket #20):*

- **Page 1**—Asserting that Diligence disclosed confidential information "to IPOC's litigation and business adversaries for use against IPOC's interests."

- **Page 8**—Alleging "that Defendants' misappropriation of IPOC's business information has damaged IPOC in several specific respects, including the unfair advantaging of IPOC's litigation adversaries by giving them insight into a confidential Investigation about IPOC."

- **Page 23**—In support of its common law conspiracy claim, asserting that Diligence conspired "with IPOC's litigation adversaries."

- **Page 24**, n. 10, p. 25—Citing to its Complaint's discussion of the alleged corruption of the Zurich arbitration as an interference with an IPOC business expectancy.

6

3. *From its Surreply to Diligence's Motion to Dismiss (Docket #37)*:

- **Page 7, n. 4**—In defending the legal sufficiency of its tortious interference claim, IPOC argues that "whether the Zurich arbitration is a 'legal proceeding,' part of a business transaction, or a combination of both, is a question of fact."

4. *In its Opposition to BGR's Motion for Judgment on the Pleadings (Docket #40)*:

- **Pages 1-2, 6, 11, 22, 35 n.15**—IPOC reiterates as a basis for its claims that Defendants disclosed its confidential information to "litigation adversaries," plainly referring to the Zurich arbitration proceedings.

- **Pages 21-22**—Alleging that "IPOC's litigation adversaries and commercial rivals" used information provided by Defendants by "including it in submissions to the Zurich arbitral tribunal."

As demonstrated by IPOC's own statements to this Court, the Zurich arbitration proceedings are very much at issue in this case. IPOC's suggestion that Diligence has "misquoted" the Complaint as to whether it alleges that Defendants interfered with the Zurich arbitration—a suggestion IPOC makes solely for the purpose of resisting discovery—should be rejected. Under well-settled caselaw – not to mention simple common sense – a party is not allowed to take contrary positions on the same issue in the same case.[2] Nor is a party permitted to disavow large sections of its Complaint in an attempt to avoid discovery into subject matters it finds disagreeable.[3]

---

[2] See, e.g., Pegram v. Herdrich, 530 U.S. 211, 228 n. 8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase"); In re Greater Southeast Community Hosp. Corp., 333 B.R. 506 (Bankr. D.D.C. 2005) ("The purpose of the [judicial estoppel] rule is 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment'") (quoting New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)) (internal alteration omitted); see also Federal Trade Commission v. Cleverlink Trading Ltd., No. 05-C-2889, 2006 WL 3106448 (N.D. Ill. Oct. 26, 2006) (a "litigant cannot advance simultaneously inconsistent positions in the same case").

[3] See, e.g., Pulliam v. Continental Casualty Co., No. 02-0370 (RWR)(AK), 2003 WL 1085939 (D.D.C. Feb. 27, 2003) (Rule 26(b)(1) permits discovery into all matters relevant to "the claim or defense of a party").

**C.    IPOC's Recent Interrogatory Answer Highlight the Relevance of the Zurich Arbitral Proceedings.**

Finally, just four weeks ago, in response to Diligence's Interrogatory No. 1 requesting that IPOC identify all persons with knowledge of the allegations in its Complaint, IPOC listed itself[4] as having knowledge of its business "expectanc[y] that . . . the Zurich arbitration in which it sought to enforce its rights would be conducted without malicious interference and would not be tainted by improper activities calculated to corrupt the Zurich arbitration for the benefit of IPOC's litigation adversaries." Ex. B at 5.  IPOC's own characterization of the allegations in its Complaint put directly at issue the correctness of the Zurich tribunal's conclusions regarding IPOC's money laundering activities.

**II.    DILIGENCE'S INTERROGATORIES SEEK INFORMATION DIRECTLY RELEVANT TO THE CLAIMS AND DEFENSES CONCERNING THE ZURICH ARBITRATION PROCEEDINGS.**

As detailed above, IPOC's own Complaint averments and prior briefing to Judge Friedman discredit its newly-minted, tactically-convenient position that its Complaint does *not* allege misconduct or harm in connection with the Zurich arbitration.  See Opp. at 9.  To the contrary, as noted above, this recurring allegation is a principal pillar underlying IPOC's causes of action.  As such, the information sought by Diligence in Interrogatory Nos. 2, 3, 5, 6, and 8 is central both to the viability of IPOC's claims and to Diligence's potential affirmative defenses, and thus is plainly discoverable.  See Fed. R. Civ. P. 26(b)(1) (providing that a party is entitled to take discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party").

---

[4]    Glaringly, IPOC refuses to identify a single individual associated with it (either a director, officer, employee, or agent) who has knowledge of the facts alleged in IPOC's Complaint.  As BGR has emphatically noted, this refusal by IPOC is powerful evidence that IPOC has no intention whatsoever of bringing a witness to the United States to testify about IPOC's activities and the nature of its business.  See BGR's Reply Brief In Support of Its Motion for Leave to File Supplemental Brief (Docket #71).  Consequently, far from being a *bona fide* lawsuit, this action is simply a long, expensive fishing expedition.

**A.    The Interrogatories Seek Information Directly Relevant to the Causation and Damages Components of IPOC's Common Law Claims Alleging Interference With the Zurich Arbitration.**

Having made numerous allegations in its Complaint about alleged harm it has suffered – indeed, will continue to suffer absent injunctive relief – from Defendants' alleged interference with the Zurich arbitration, IPOC's contention that the substance and details of the arbitration, as well as the merits of its outcome, are "irrelevant" is fundamentally flawed and illogical.  It is particularly so given IPOC's repeated reliance on this alleged interference with the Zurich arbitration in trying to convince Judge Friedman not to dismiss its common law claims for failure to state a cognizable claim.  See Section I, *supra*.

IPOC refuses to answer Interrogatory Nos. 2, 5, 6, and 8, each of which addresses the ownership of IPOC.  No matter how one reads IPOC's filings in this case, it is clear that the information sought in these interrogatories bears directly on the merits of IPOC's claims in this action.  For example, in support of Count I – tortious interference with business expectancies – IPOC alleges in its Complaint that IPOC had "reasonable business expectancies" "that the Zurich arbitration [and an investigation into IPOC's affairs by the Government of Bermuda] would be conducted in an evenhanded and impartial manner." Complaint ¶ 27.

Plainly, these allegation puts squarely at issue whether, in fact, "the Zurich arbitration . . . was conducted in an evenhanded and impartial manner." Id.  This, in turn, puts squarely at issue the validity of the Zurich arbitral tribunal conclusions that, contrary to IPOC's strenuous denials, Proposed Witness No. 7 (i.e., Mr. Reiman), is in fact the beneficial owner of IPOC and, therefore, "the performance of the April Option Agreement . . . constitutes the laundering of monies stemming from a predicate criminal offence . . ., [such that IPOC] cannot enforce its rights thereunder." Zurich Arbitration Ruling ¶ ¶ 557, 561.  It cannot reasonably be

disputed that the correctness of the Zurich tribunal's conclusion bears directly on the issue of causation: did Defendants' alleged misconduct influence the outcome of the Zurich arbitration? It also bears directly on the issue of damages: if so, to what extent was IPOC's harmed?

To be sure, it is difficult to conjure information more relevant to the question of whether the Zurich tribunal reached the correct conclusions – notwithstanding the interference by Defendants alleged by IPOC, see Complaint ¶ 25 – than information concerning who (or what entities) in fact own IPOC. This is precisely the information sought in Interrogatories Nos. 2, 5, 6, and 8, and IPOC should be required to answer them forthwith. IPOC likewise should be ordered to fully answer Interrogatory No. 3 by identifying the officers and directors of each of its subsidiary and affiliated companies. As the Zurich arbitral tribunal concluded, IPOC used a network of shell companies (both subsidiaries and affiliates) to attempt to obscure the fact that its funds derived from bribery and corruption schemes committed by Proposed Witness No. 7 (i.e, Mr. Reiman) against the Russian Federation.[5] See, e.g., Zurich Arbitration Ruling ¶ 542. As noted above, IPOC has placed the correctness of this determination by the Zurich tribunal squarely at issue by alleging, *inter alia*, that Defendants tortiously interfered with its "reasonable business expectancies" "that the Zurich arbitration [and an investigation into IPOC's affairs by the Government of Bermuda] would be conducted in an evenhanded and impartial manner." Complaint ¶ 27.

---

[5]   IPOC attempts to counter the Zurich arbitral tribunal's findings that it is a money laundering entity by trumpeting an apparent declination decision by Russian prosecutors. See Opp. at 4 n. 6. Of course, a decision by *Russian* prosecutors not to prosecute the *Russian* Telecommunications Minister—who, incidentally, is a close ally of *Russian* President Vladamir Putin, see Mem. Ex. A—is hardly noteworthy, and has no probative value whatsoever. To the contrary, a panel of three commercial arbitrators (including, notably, the arbitrator selected by IPOC) in the Zurich proceeding concluded in a highly-detailed, 350-page ruling, that Mr. Reiman "misappropriated for his personal enrichment assets majority owned by the Russian Federation" by causing a state-owned telecom company to "abandon[]" its shares in "an asset of considerable value . . . in favour of [IPOC] for no value." Zurich Arbitration Ruling ¶¶ 405, 429; see also id. at ¶¶ 231-239.

Finally, even if IPOC's affiliates and subsidiaries were not directly involved in the conclusions of the Zurich arbitral tribunal (and they plainly are), Defendants would nevertheless be entitled to know the officers and directors of each such affiliate and subsidiary so that they could target their discovery. As noted in the article attached as Exhibit A to Diligence's opening Memorandum ("Mem."), "IPOC records list at least 14 such apparent shell companies that have U.S. addresses and pay money to IPOC." Mem. Ex. A, at p. 6. Defendants are entitled to know the identities of each officer and director of each such company. IPOC should be required to fully answer Interrogatory No. 3 by identifying the officers and directors of each of its subsidiary and affiliated companies.

**B.     The Illicit Nature of IPOC's Business is Fatal to Its Legal Claims in This Case.**

As Diligence noted in its opening Memorandum, to the extent IPOC is indeed a money laundering enterprise (as the Zurich arbitral tribunal concluded), it is precluded as a matter of law from any recovery in this case. See Mem. at 6-8. IPOC's retort—rather tellingly—is that "a plaintiff is not barred from asserting a claim when it is wronged under one transaction, even where it has engaged in improper conduct with respect to a different transaction." Opp. at 6. Therefore, IPOC argues, discovery on the issue of whether it is engaged in money laundering, as the Zurich arbitral tribunal concluded, "is not, and will not lead to, evidence relevant to any claim or defense in this case." Opp. at 3. IPOC's contention confuses the issue and has no merit.

Contrary to IPOC's suggestion, this is not a case in which a *legitimate* company is bringing tort claims for interference with its *legitimate* (i.e., legal) business expectancies and contracts. Of course, IPOC is correct that just because a company is found to have committed isolated illegal acts, it is not barred from pursuing wholly unrelated tort claims for tortious interference with its legitimate business expectancies and contracts. But IPOC is no such

11

company. To the contrary, as the Zurich arbitral tribunal concluded, IPOC's assets derive from "misappropriat[ion] by Mr. Reiman "for his personal enrichment assets majority owned by the Russian Federation" such that IPOC's subsequent use of that money "constitutes the laundering of monies stemming from a predicate criminal offence." Zurich Arbitration Ruling ¶¶ 557, 561. Put simply, the tribunal concluded that the singular and sole purpose for IPOC's existence is to launder assets stolen by Mr. Reiman from the Russian Federation, such that IPOC "cannot enforce its rights [under the April Options Agreement]" because the contract is void for illegality. Zurich Arbitration Ruling ¶¶ 557, 56. Indeed, nowhere in its Complaint or anywhere else has IPOC identified the nature of its business, who its customers are, or how it generates revenue. IPOC simply has none of the indicia of the legitimate company; quite the contrary, it has been revealed and adjudged to be a money launderer.

Moreover, IPOC's argument against discovery ignores the import of the Zurich arbitral tribunal's findings that the April Options Agreement – the contract in dispute in the arbitration – was void for illegality. According to IPOC, "[t]his lawsuit does not involve any claim based upon the validity or enforcement of the April Option Agreement that Diligence argues is illegal, which was the issue in the Zurich arbitration . . . ." Opp. at 5. The argument misses the point. Stated plainly, one cannot tortiously interfere with an attempt to enforce a contract that is void for illegality because the entity seeking to enforce it is a money launderer.[6] But that is exactly what IPOC claims in this lawsuit. See Complaint ¶ 27 (alleging as an element of Count I that

---

[6]    See, e.g., Bennett Enters., Inc. v. Domino's Pizza, Inc., 45 F.3d 493, 499 (D.C. Cir. 1995) (under District of Columbia law, an essential element of a claim for intentional interference with business expectancy is "the existence of a valid business relationship or expectancy); see also PM Services Co. v. Odoi Associates, Inc., No. 03-Civ-1810(CKK), 2006 WL 20382, at *34 (D.D.C. 2006); accord Access Telecom v. MCI Telecommunications Corp., 197 F.3d 694, 705 (5th Cir. 1999) ("the existence of a valid contract (or the potential for one in claims for interference with prospective contracts) is an element of a claim for tortious interference"); Carruthers v. Flaum, 365 F. Supp. 2d 448, 452 (S.D.N.Y. 2005) ("one cannot tortiously interfere with an illegal and unenforceable agreement").

IPOC had a "reasonable business expectanc[y]," interfered with by Defendants, "that the Zurich arbitration . . . would be conducted in an evenhanded and impartial manner . . .").

Distilled to its essence, IPOC seeks damages for alleged tortious interference with what the Zurich arbitral tribunal concluded was an attempt to launder proceeds derived from criminal activity. IPOC's claims thus place front and center the factual question whether the Zurich arbitral tribunal correctly determined that IPOC is a money laundering operation. If so, then the tortious interference with the Zurich proceedings alleged by IPOC in its Complaint did not, and could not have, affected the outcome of the arbitration, thereby defeating IPOC's claims as a matter of law.[7] Because Interrogatories Nos. 2, 5, 6, and 8 seek information directly relevant to this issue of whether the Zurich arbitration tribunal correctly concluded that Proposed Witness No. 7 (i.e., Mr. Reiman) is the beneficial owner of IPOC, the Court should require IPOC to answer these interrogatories without delay.

## III.  THE INFORMATION SOUGHT BY DILIGENCE ALSO IS DIRECTLY RELEVANT TO IPOC'S ALLEGATIONS OF INTEREFERENCE WITH THE BERMUDA INVESTIGATION.

Desperate to avoid discovery into who (or what) owns it and the personnel involved in running its subsidiaries and affiliates, IPOC proclaims in its Opposition that "the [only] subject of this lawsuit" is "Defendants tortious interference with the Investigation conducted in Bermuda." Opp. 5. As noted above, this attempt to recharacterize its Complain is flatly at odds with numerous, recent statements to this Court made by IPOC in an attempt to avoid dismissal of its Complaint. But it also is a pointless exercise, for very a simple reason: the information sought in

---

[7]     Under District of Columbia law, to prevail on a claim for tortious interference with business expectancy, a plaintiff mush establish four elements: 1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference *inducing or causing* a breach or termination of the relationship or expectancy; and (4) *resultant damage*. See Bennett Enters., 45 F.3d 493 at 499; PM Services Co., 2006 WL 20382, at *34.

the Interrogatories at issue is equally relevant to IPOC's allegations concerning the harm

Defendants caused it in the Bermuda Investigation.

In its Opposition, IPOC carefully avoids any description of the subject matter of the

Bermuda Investigation of IPOC, which is being conducted by KPMG FAS on behalf of the

Minister of Finance of Bermuda.  In fact, the Bermuda Investigation is a "wide-ranging inspection

of [IPOC and its affiliated companies] at the centre of money laundering and corruption

allegations . . . ."  Ex. A.  Notably, "[t]he terms of reference [of the Bermuda Investigation]

include identifying the source of IPOC's funds . . . ."  Ex. A, p. 1.

Plainly, who (or what) owns IPOC and the identities of those running IPOC's

affiliates and subsidiaries is highly probative to the question of the source of IPOC's funds, which

is at the heart of the Bermuda Investigation of IPOC.  As such, it bears directly on the question of

whether Defendants, as IPOC alleges in its Complaint, tortiously interfered with IPOC's business

expectancy that "the [Bermuda] Investigation would be conducted in a evenhanded and impartial

manner," Complaint ¶ 25, and its expectancy that its "charter would not be attacked by use of

improper and illegal means . . . ."  Complaint ¶ 27.  To the extent that the Government of Bermuda

revokes IPOC's charter based upon findings in the Bermuda Investigation that IPOC's funds are

derived from criminal activity, the trial in this case will necessarily center of the question whether

that finding was correct notwithstanding the tortious interference with the Bermuda Investigation

alleged by IPOC.  If so, Defendants' alleged interference did not impact the findings of the

Bermuda Investigation, and IPOC was not damaged.

In sum, Interrogatories Nos. 2, 5, 6, and 8 seek information directly relevant to

IPOC's allegation that Defendants tortiously interfered with its business expectancy that "the

14

[Bermuda] Investigation would be conducted in a evenhanded and impartial manner," Complaint ¶ 25, IPOC should be ordered to answer them fully.

## IV.    IPOC'S UNSUPPORTED ALLEGATIONS OF WRONGFUL MOTIVE BY DILIGENCE ARE AN EXCUSE TO AVOID PRODUCING RELEVANT DISCOVERY.

Finally, IPOC claims that this Motion is a "sham" because, according to IPOC, Diligence "is attempting to abuse the discovery process in an ongoing effort" to obtain information about IPOC for IPOC's adversaries. Opp. at 4, n.6. Notably, IPOC makes these charges without *any* factual support. IPOC also ignores the obvious: it was IPOC, not Diligence, which chose to file a lawsuit in U.S. District Court concerning the Zurich arbitration and Bermuda Investigation. Having made that decision, IPOC cannot now be heard to complain about having to produce discovery "relevant to the claims and defenses," as required under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(1).

In any event, IPOC's unsupported charges are a red herring. Obviously, in the event the Court orders IPOC to fully answer the Interrogatories at issue, IPOC will no doubt designate its answers as "Confidential" or "Attorneys' Eyes Only" under a protective order when and if it is issued; as IPOC acknowledges, all "parties to this case agree that a protective order is necessary in this case." IPOC's Mem. in Support of Mot. for Entry of Protective Order, at 2. Such a designation, under both IPOC's proposed protective order and Defendants' alternative proposed version, *will expressly forbid* any use of such information for *any* purpose other than for this litigation. Thus, the parade of horribles envisioned by IPOC should Defendants obtain the discovery they seek is easily averted by IPOC designating the information "Confidential" or, if warranted, "Attorneys' Eyes Only" under the protective order to be entered by the Court.[8]

---

[8]    Indeed, given that Alfa and IPOC's other "litigation adversaries" are located outside the United States, it is ironic that it is *IPOC*, over Defendants' objections, that urges the Court to allow the parties to

## CONCLUSION

For the reasons set forth above and in Diligence's opening Memorandum, Diligence respectfully requests that the Court order IPOC to fully and completely answer Interrogatory Nos. 2, 3, 5, 6, and 8 under oath within five (5) days.

Respectfully submitted,

AEGIS LAW GROUP LLP

By:     /s/Paul C. Rauser_____
        Paul C. Rauser (D.C. Bar No. 461722)
        Michael K. Ross (D.C. Bar No.458573)
        Oliver Garcia (D.C. Bar No. 456600)
        901 F Street, N.W.
        Washington, DC 20004
        Tel: (202) 737-3500
        Fax: (202) 737-3330

        *Attorneys for Defendant Diligence Inc.*

Dated:  December 18, 2006

---

disseminate materials designated "Confidential" or "Attorneys' Eyes Only" to third parties outside the United States.

# EXHIBIT A

# The Royal Gazette

News                                     Sunday, December 17, 2006                              Contact us

Last modified: February 07. 2006 10:31AM

**Today >**

  **Home**

‣ **News**

  **Business**

  **Sport**

  **Opinion**

  **Lifestyle**

  **TV Week**

  **Gazette Video**

**Weekly >**

  **Shipping**

  **Young observer**

  **Mid Ocean News**

  **Religion**

**Community >**

  **Spotted on the rock**

  **Weather**

  **Events**

  **Links**

  **Today's photos**

**Misc >**

  **About us**

  **Contact us**

  **Subscribe**

  **Electronic Edition**

## Cox: No IPOC cover-up

**By Elizabeth Roberts**

Minister of Finance Paula Cox has revealed that a wide-ranging inspection of companies at the centre of money laundering and corruption allegations is set to conclude by the end of the month.

She has promised that there will be no cover up regarding the dealings of the IPOC International Growth Fund and associated companies as it is essential that Bermuda's international reputation is protected.

Last month, the Wall Street Journal revealed that the mutual fund had been set up on the Island five years ago by a convicted fraudster.

It was alleged that it was effectively a holding company for around $1 billion in telecommunications assets transferred through a network of shell companies. The WSJ the scandal went all the way up to the Russian IT and Communications Minister Leonid Reiman.

Former Opposition leader Grant Gibbons said in December that a number of international money laundering probes into the matter were casting doubts over the credibility of Bermuda's entire fund industry.

However, in a statement released yesterday, Ms Cox responded to scrutiny on the issue by promising tough action. She said she had requested inspections into IPOC International Growth Fund Limited and eleven other associated Bermuda companies. In March 2004, she appointed two inspectors from KPMG Financial Advisory Services Ltd to conduct an independent probe.

The terms of reference include identifying the source of IPOC's funds, considering whether it adhered to undertakings given to the Bermuda Monetary Authority and determining whether Bermuda's laws were breached.

"The nature of the investigation and the wide-ranging scope and interlocking network of the companies has required considerable detailed investigation and analysis of the corporate structure and on-site visits to other jurisdictions.

"This has been no simple task. However, I have been periodically briefed as to the status of the investigation. It has comprised many layers," she said.

Ms Cox acknowledged that any time there is a question raised over the conduct of a company with a Bermuda connection, it causes by implication questions to be raised as to the Island's reputation. Accordingly, she said, the IPOC matter has been taken very seriously and that, given the limited powers available to the Bermuda Monetary Authority, it was decided to invoke the stronger powers of the Minister of

**Advertise**

**Classifieds >**

**Classifieds**

**Display ads**

**Search >**

Royal Gazette

Search »







Finance to order an inspection.

"There will be no form of cover up and any necessary follow-up action will be actioned. Any suggestion to the contrary would be flagrantly untrue and palpably wrong," she said.

She explained that the inspectors are adhering to a precedent set in the United Kingdom in similar statutory investigations whereby the individuals to be criticised are given a period to comment on the criticisms before the report is finalised.

The inspectors, she said, anticipate that letters to this effect will be issued to the relevant parties before the end of this month. Once this period has ended, the inspectors will finalise the report and it will be issued to Ms Cox and the companies.

The Minister did not mention in her statement whether the contents of the report will be made public at any point, and could not be reached for comment as *The Royal Gazette* went to press.

The IPOC allegations are not the only ones that have recently cast a cloud over Bermuda's international reputation.

The UK's High Court of Justice found last month that a sham Bermuda company, Sphynx (Bermuda) Ltd, was used by the Republic of Congo to mask the movement of hundreds of millions of dollars in oil revenues with the aim of keeping money out of the hands of creditors.

**Other features:**

» Print this article

» Print this article with picture

**Tip a friend**

Message:

Your name:

Your e-mail address:

To e-mail address:

Send

  

Copyright ©2001-2006 The Royal Gazette Ltd.

For more info or comments please contact webmaster@royalgazette.bm

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:06CV01109 (PLF) |
| DILIGENCE, LLC, et. al | ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S AMENDED AND SUPPLEMENTAL RESPONSES TO DILIGENCE'S FIRST SET OF INTERROGATORIES

Plaintiff IPOC International Growth Fund Limited ("IPOC"), by counsel, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, provides the following amended and supplemental responses ("Responses") to Defendant Diligence LLC's First Set of Interrogatories ("Diligence's Interrogatories"). These amended and supplemental responses and objections are based on the information and documents presently available and the search for further relevant information is continuing. IPOC reserves the right to supplement and/or amend its Responses.

## OBJECTIONS TO ALL INTERROGATORIES

Each of these objections is incorporated into each and every one of IPOC's Responses as though fully set forth therein, and is in addition to any specific objections stated in response to a particular Interrogatory.

1.     IPOC objects to the interrogatories to the extent they seek information or documents protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity, including but not limited to common interest and/or joint defense, and prohibition from disclosure under the law of Bermuda.

Keith Schuette, contact information unknown, has knowledge of the factual allegations related to the actions of Diligence, BGR, Alfa, LVFG, KPMG FAS, the amounts paid to BGR and Diligence in connection with Project Yucca and the facts underlying the lawsuit captioned *KPMG Financial Advisory Services v. Diligence*, filed in the U.S. District Court for the District of Columbia.

Richard Burt, Nada Biore, Ian Caswell, Nick Day, Gretchen King, Snezana Petreska, Brian Smith, Glenn Ware, contact information known by Diligence, can be reached c/o Diligence, have knowledge of the factual allegations of the Complaint concerning the actions of Diligence, BGR, Alfa, LVFG, KPMG FAS, the amounts paid to Diligence in connection with Project Yucca and the facts underlying the lawsuit captioned *KPMG Financial Advisory Services v. Diligence*, filed in the U.S. District Court for the District of Columbia.

Igor Alexeev, address and telephone number unknown, has knowledge of the factual allegations of the Complaint related to the alleged actions of Diligence, BGR, Alfa, LVFG, KPMG and the amounts paid to Diligence in connection with Project Yucca.

Yuri Koshkin, David Marchant and Norton Rose (lawyers for the KPMG Inspectors), contact information known to BGR and/or Diligence, have knowledge related to the stolen information and the disclosure of the stolen information.

Alex Plavsic, KPMG London, has knowledge of the factual allegations of the Complaint related to the actions of Diligence, BGR, Alfa, LVFG and KPMG FAS, and KPMG's investigation of the actions of BGR and Diligence.

IPOC International Growth Fund, Ltd., has knowledge of the agreement with KPMG FAS regarding the confidentiality of interviews and documents provided to KPMG FAS, IPOC's expectancies that (a) the Zurich arbitration in which it sought to enforce its rights would be conducted without malicious interference and would not be tainted by improper or illegal activities calculated to corrupt the Zurich arbitration for the benefit of IPOC's litigation adversaries; (b) the Investigation would be conducted in a evenhanded and impartial manner and in accord with the requirements imposed upon KPMG FAS in its position as investigator; (c) the materials and information provided by IPOC to KPMG FAS would be held in strict confidence, used solely in connection with the Investigation and would not be utilized to further the interests of IPOC's litigation adversaries; and (d) IPOC's charter would not be attacked by improper or illegal means, including bribery, fraud and deception and IPOC's damages.

## INTERROGATORY NO. 2:

Please identify the name, address, and telephone number of each and every person or entity who possesses, directly or indirectly, a beneficial or ownership interest in IPOC.

## CONCLUSION

For the reasons set forth above and in Diligence's opening Memorandum, Diligence respectfully requests that the Court order IPOC to fully and completely answer Interrogatory Nos. 2, 3, 5, 6, and 8 under oath within five (5) days.

Respectfully submitted,

AEGIS LAW GROUP LLP

By:    /s/Paul C. Rauser
Paul C. Rauser (D.C. Bar No. 461722)
Michael K. Ross (D.C. Bar No.458573)
Oliver Garcia (D.C. Bar No. 456600)
901 F Street, N.W.
Washington, DC 20004
Tel: (202) 737-3500
Fax: (202) 737-3330

*Attorneys for Defendant Diligence Inc.*

Dated: December 18, 2006

---

disseminate materials designated "Confidential" or "Attorneys' Eyes Only" to third parties outside the United States.

16