UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
IPOC INTERNATIONAL GROWTH FUND LIMITED,)
                                                                        )
                                            Plaintiff,                  )
                                                                        )
            v.                                                          )      Civil Action No. 06-1109 (PLF/AK)
                                                                        )
DILIGENCE, LLC, *et al.*,                                               )
                                                                        )
                                            Defendants.                 )
_____)

## MEMORANDUM ORDER

Pending before the Court is Defendant Diligence's Motion for an Order Compelling

Plaintiff to Answer Interrogatories  ("Motion") [55], Plaintiff IPOC's opposition to the Motion

("Opposition") [68], Defendant's reply to the Opposition ("Reply") [74], and Plaintiff's sur-reply

to the Reply ("Sur-Reply") [79].  Defendant moves this Court for an Order compelling Plaintiff

IPOC to respond to Interrogatories Nos. 2, 3, 5, 6 and 8, on grounds that the information

requested therein "bears directly on the viability of IPOC's claims and Diligence's anticipated

affirmative defenses to those claims."  Memorandum in support of Motion ("Memorandum") at

1.[1] Plaintiff disputes that the information requested by means of these contested Interrogatories

"is, or is likely to lead to evidence that is, relevant to a claim or defense in this case. . . . "

Opposition at 1.[2]

_____

[1]On July 20, 2006, Diligence moved to dismiss IPOC's Complaint in its entirety pursuant to
Fed. R. Civ. P. 12(b)(6).  That motion to dismiss is under consideration by the trial court.
Accordingly, Diligence has not filed an Answer to the Complaint.

[2]IPOC notes that it "served detailed objections to the Interrogatories on grounds *inter alia*
of irrelevance, overbreadth, vagueness and undue burden" but in this Motion, "Diligence challenges
only IPOC's relevance objection."  Opposition at 1-2, n.1.  This Memorandum Order is thus
confined to a determination of relevance.

I. Legal Standard

Fed. R. Civ. P. 26(b)(1) authorizes discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." "A showing of relevance can be viewed as a showing of need; for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not 'relevant to the subject matter involved in the pending action.'" *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984) (citing Fed. R. Civ. P. 26(b)(1)). Once a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is discoverable. *See Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 316, 325 (D.D.C. 2000).

Pursuant to Fed. R. Civ. P. 26(b)(2)(iii), the court may limit discovery on its own initiative, if it determines that the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving those issues." *See Hammerman v. Peacock*, 108 F.R.D. 66, 67 (D.D.C. 1985) (Rule 26(b)(1) was amended to give the court the power, *sua sponte*, to limit discovery.) *See also United States v. Krizek*, 192 F.3d 1024, 1029 (D.C. Cir. 1999) ( A trial court has considerable discretion over discovery matters); *Food Lion, Inc. v. United Food and Commercial Workers Int'l. Union,* 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("[A] district court's decision to permit or deny discovery is reviewable only for an abuse of discretion.")

II. Analysis of Contested Interrogatories

_____As a preliminary matter, the Court notes that IPOC has provided no substantive

information in response to Diligence's Interrogatories Nos. 2, 5, 6 and 8, and a partial response to

Interrogatory No. 3. Diligence's Interrogatory No. 2 requests that IPOC "identify the name,

address and telephone number of each and every person or entity who possesses, directly or

indirectly, a beneficial or ownership interest in IPOC." Interrogatory No. 5 requests specific

information about Mr. [Leonid] Reiman regarding any "beneficial or ownership interest" he

possesses in "IPOC or any subsidiary, affiliate or entity related to IPOC," and a description of

such interest. Interrogatory No. 6 asks for identification, by name, address and telephone number

of all entities in which IPOC Capital Partners Ltd. have a "beneficial or ownership interest."

Interrogatory No. 8 requests the same information as Interrogatory No. 5, but for Mr. Jeffrey

Galmond.[3] In response to contested Interrogatory No. 3, requesting identification of each officer

and director of IPOC and each affiliate, subsidiary or related entity, IPOC identified three

directors of IPOC but declined to provide similar information for its affiliates, subsidiaries or

related entities.

In its Complaint, IPOC alleges that Diligence infiltrated an investigation of IPOC (the

"Investigation"), which was being conducted by KPMG-Financial Services Limited ("KPMG")

at the behest of the Minister of Finance of Bermuda. (Complaint, ¶¶1, 15, 17.) Diligence

allegedly "obtained by unlawful means confidential materials generated in the course of the

Investigation" and further, Diligence "improperly attempted to influence the outcome of the

Investigation." (Complaint, ¶1.) IPOC seeks to hold "Defendants Diligence and BGR liable for

---

[3]Neither Mr. Reiman nor Mr. Galmond is identified in IPOC's Complaint. Attached to Diligence's Motion, at Tab A, is an October 17, 2006 Wall Street Journal article, in which Mr. Reiman is identified as a Russian minister and executive of a formerly state-controlled telephone company, and Mr. Galmond is identified as a Danish lawyer.

tortious interference with business relationships and expectancies, violation of the Computer

Fraud and Abuse Act, . . ., procuring information by improper means, tortious interference with

contractual relations, unfair competition, civil conspiracy, and unjust enrichment." (Complaint,

¶2.)[4]

Diligence relies on three major arguments in support of its position that the information

requested in the contested Interrogatories is relevant to the claims and defenses in this case.

Diligence first focuses on IPOC's claim that Diligence [and Defendant BGR] tortiously

interfered with IPOC's business relationships and expectancies, arguing that IPOC will not be

able to recover on this claim because it has no "legitimate 'business.'" (Memorandum at 6.)[5]

Diligence seeks to confirm the findings of the Zurich arbitration tribunal; i.e., that "Mr. Reiman

is in fact the beneficial owner of IPOC" and further, that "IPOC's assets have been unlawfully

derived . . . ." Memorandum at 6.  Diligence surmises that "[i]f the Zurich arbitral tribunal's

findings are correct, IPOC as a matter of law cannot prevail on its claims in this action for

tortious interference with business expectancies, unfair competition, and other business-tort and

equitable claims[,]" because one cannot tortiously interfere with the business expectancies of an

---

[4]IPOC's Complaint also contains general allegations relating to an arbitration held in Zurich [Complaint, ¶¶21, 25, 27, 28] where the disputed issue was "whether  IPOC could enforce an agreement that purported to give it the option to purchase a large percentage of the outstanding shares of a Russian telecom company (the "April Option Agreement")." (Memorandum at 2.)  The arbitration tribunal "ruled that the April Option Agreement was void because enforcing it would violate English law."  (*Id.*)   The arbitration tribunal further concluded that Mr. Reiman is the beneficial owner of IPOC and that IPOC's asserts have been unlawfully derived from the Russian Federation and certain illegal activities. (Memorandum at 6, citing Zurich Arbitration Ruling ¶¶390-91; 501-20, 530, 545.)

[5]The term "expectancy" includes "IPOC's expectancies that the Zurich arbitration and the Investigation would be conducted in an evenhanded and impartial manner . . . ." (*See* Complaint, ¶¶24-28.)

illegal enterprise. (Memorandum at 7.) Diligence thus asserts that the relevance of the Interrogatories regarding ownership of IPOC and the identity of the persons responsible for IPOC's subsidiaries and affiliates is obvious as the responses to these Interrogatories may be used by Diligence to bar certain of IPOC's claims. Dilgence concludes that "[i]f IPOC - together with, and through - its subsidiaries and affiliates is engaged in illegal conduct, there simply is no legitimate 'business expectanc[y]' of IPOC with which Defendants could have tortiously interfered." (Memorandum at 9, referencing Complaint ¶25.)[6]

Diligence contends that these arbitration findings also give rise to the affirmative defense that IPOC has "unclean hands." (Memorandum at 7.) Diligence concludes that the identities of the owners of IPOC and its affiliates and subsidiaries [Interrogatories Nos. 2, 5, 6 and 8] are "relevant to the claim or defense of a [ ] party to this action [because] they relate directly to IPOC's criminality." (*Id.*) Finally, Diligence argues that the correctness of the arbitration findings also bears relevance to the issues of "damages on IPOC's claims arising out of its allegation that Defendants 'corrupt[ed] the Zurich arbitration.'" (Memorandum at 8, citing Complaint ¶25.) Diligence argues that [i]f Mr. Reiman is the beneficial owner of IPOC - as the Zurich tribunal concluded- then the alleged use of information allegedly wrongfully obtained by Defendants did not 'corrupt' the Zurich arbitration, . . . . " Memorandum at 8.

In response to the first aforementioned argument advanced by Diligence, IPOC

---

[6]Diligence notes without further explanation that, with regard to Interrogatory No. 3, it is "entitled to know the identities of all officers and directors of each IPOC subsidiary and affiliate so that [it] may efficiently target its discovery." (Memorandum at 10.) IPOC's Complaint does refer to unnamed "affiliated Bermuda companies" [Complaint ¶1] who were part of the subject of the Investigation and who "have been charged with the costs of KPMG FAS's investigation" [Complaint ¶15]; however, such affiliates are not co-Plaintiffs nor are damage claims asserted on their behalf.

acknowledges that a party's illegal conduct "may in some situations undercut its right to relief or form the basis for another party's defense to a claim" but asserts that, in this case, "there is no nexus between Defendants' tortious misdeeds for which IPOC seeks redress and the illegal acts of which Diligence accuses IPOC." (Opposition at 2.)[7]  A review of the allegations of IPOC's Complaint validates this assertion insofar as Diligence fails to show a connection between any alleged illegal acts committed by IPOC, relating to money laundering,  and the accusations leveled at Diligence, relating to its infiltration of the KPMG Investigation, its acquisition and disclosure of confidential information, and interference with the Investigation and arbitration. Diligence's request for information relating to the beneficial ownership of IPOC, its affiliates and subsidiaries is therefore grounded upon the faulty premise that there is a connection between IPOC's alleged criminal actions and the claims it is pursuing against Diligence [and BGR], and such request should be denied.

Similarly, Diligence's proposed affirmative defense of "unclean hands" [argument two] relies upon the premise that IPOC's conduct constitutes criminal conduct which prevents IPOC from recovering on its claims against Diligence.[8]  There is however a missing link between the alleged criminal conduct by IPOC and the conduct by Diligence, which underlies the claims in

---

[7]IPOC distinguishes the cases cited by Diligence, noting that "parties to an illegal or immoral transaction may not seek redress in a court for wrongs suffered as a result of the transaction." (Opposition at 5, citing *Wager v. Pro*, 603 F.2d 1005, 1008 (D.C. Cir. 1979) (emphasis added); *United States v. Kim*, 738 F. Supp. 1002, 1003-04 (E.D. Va. 1990) (where the court considered public policy grounds and determined that it "would refuse to aid those whose cause of action is based on an illegal act") ; *Carruthers v. Flaum*, 365 F. Supp.2d 448, 462 (S.D.N.Y. 2005) (stating that if "the contract upon which recovery is sought is premised on an illegal purpose, than [sic] the contract is void, and it cannot be the subject of a claim for tortious interference.")

[8]Because Defendant has not yet filed an Answer in this case, Defendant's argument relies on its  "proposed" affirmative defense of "unclean hands."

this lawsuit.  "[I]n order to bar recovery, the plaintiff must be an active, voluntary participant in the unlawful activity that is the *subject of the suit*."  (Opposition at 8, citing *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 757 (3rd Cir. 1990) (italics in original.))  IPOC notes that the *McAdam* court found that "[i]n determining whether the plaintiff was a participant in the unlawful activity, a court may look only to the conduct associated with the transaction before it, and may not forbid recovery on account of a plaintiff's activities in a separate setting."  896 F.2d 757 (internal citations and quotation marks omitted.)  Because Diligence is unable to demonstrate a connection between its allegations that IPOC is a "money laundering enterprise," (Opposition at 9), and allegations against Diligence, which underlie the instant case, Diligence's request for information about beneficial ownership of IPOC and its affiliates and subsidiaries should be denied.

IPOC responds to Diligence's third argument by noting that Diligence misquotes the Complaint, which states that "Defendants' actions were 'calculated to corrupt the Zurich arbitration,' not that they did corrupt the arbitration."  (Opposition at 9.)  IPOC affirmatively states that it does not in this lawsuit "claim damages resulting from the findings of the Zurich arbitration [but] [i]nstead, IPOC's damages include the amount it paid to KPMG FAS for the Investigation that Defendants penetrated, and disgorgement of the monies paid to Diligence and BGR to interfere with the Investigation."  (*Id.*)  These damages are unrelated to the illegal acts attributed to IPOC by Diligence, and accordingly, the information requested by Defendant Diligence regarding beneficial ownership of IPOC and its subsidiaries and affiliates should be denied.

Defendant Diligence argues that the information sought in the Interrogatories is necessary

-7-

so that Diligence can ascertain whether the Zurich tribunal reached the correct conclusions, and subsequently apply those conclusions to defeat certain claims by IPOC; support an affirmative defense; and, negate damages.[9]  Defendant Diligence is obviously privy to the findings of the Zurich arbitration panel and the position taken by IPOC during the arbitration proceedings; i.e., that Mr. Galmond is the beneficial owner of IPOC, as evidenced by the fact that Diligence cites the arbitration findings in their Motion. (*See* Memorandum at 6, 8.)  Defendant fails to demonstrate why it needs to revisit these findings regarding IPOC's ownership [Interrogatories Nos. 2, 5, 8] and further, how information relating to the identification of  officers and directors of IPOC's subsidiaries [Interrogatory No. 3] and identification of entities owned by IPOC Capital Partners Ltd. [Interrogatory No. 6] will validate the arbitration panel's findings.  The Court notes that the findings of the Zurich arbitration panel are not being challenged in this forum.[10] Furthermore, IPOC, through counsel, clearly stipulates that it "has not alleged in this case that Defendants influenced the outcome of the Zurich arbitration, nor does IPOC allege in this lawsuit that the outcome of the Zurich arbitration was either correct or incorrect."  (Sur-Reply at 1-2.) "Rather, IPOC complains that Diligence improperly attempted to influence the Bermuda Investigation, that the Defendants attempted to influence the Zurich Arbitration, and that their actions were unfair."  (Sur-Reply at 3.)

Diligence contends that the information sought in the Interrogatories is "equally relevant

---

[9]This Memorandum Order does not attempt to address whether Diligence can use the arbitration panel's findings to negate IPOC's substantive claims and request for damages , or support its proposed affirmative defenses.

[10]According to IPOC,  the case is on appeal before the Swiss Supreme Court.  (Sur-Reply at 2, n.1.)

to IPOC's allegations concerning the harm Defendants caused it in the Bermuda investigation."
(Reply at 14.)  Diligence states generally that  "who (or what) owns IPOC and the identities of
those running IPOC's affiliates and subsidiaries is highly probative to . . . the source of IPOC's
funds, which is at the heart of the Bermuda Investigation of IPOC . . . [and] bears directly on the
question of whether Defendants, . . ., tortiously interfered with IPOC's business expectancy . . . ."
(Reply at 14, referencing Complaint, ¶¶25, 27.)   IPOC addresses this contention by pointing out
that its Complaint "contains no allegation concerning the 'correctness' or 'incorrectness' of the
findings in the Bermuda Investigation [and as such,] [t]hose findings will not be the focus of the
trial in this case, because they are not relevant to any claim or defense."  (Sur-Reply at 7.)[11]
IPOC concludes therefore that its claims are "not dependent on the accuracy of the findings or
outcome of either the Bermuda Investigation or the Zurich Arbitration."  (*Id*.)   The Court finds
no connection between the Bermuda Investigation findings, which are not a subject of this
litigation, and Defendant's request for information that supposedly fleshes out these findings.

Upon consideration of the allegations contained in IPOC's Complaint, Diligence's
proposed affirmative defense of "unclean hands," and the fact that Defendant bases its relevance
argument on its need to confirm the findings of the Bermuda Investigation and the Zurich
Arbitration, neither of which is substantively at issue in this case, the Court concludes that
Diligence fails to demonstrate the relevance of the information requested in Interrogatories Nos.

---

[11]IPOC notes that in related litigation between KPMG and Diligence, captioned *KPMG FAS v. Diligence*, Civil Action No. 05-2204 (PLF), "Diligence remains under a court order entered [in that case] requiring Diligence to cease any and all attempts to infiltrate or influence the Bermuda Investigation." (Sur-Reply at 6-7.)

2, 5, 6, 8, and the portion of Interrogatory No. 3 that remains outstanding.  It is accordingly this

31st day of January, 2007,

ORDERED that Defendant Diligence's Motion for an Order Compelling Plaintiff to

Answer Interrogatories [55] is denied without prejudice to renew at a later date, based on a

showing of relevance.


_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE