IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DILIGENCE, LLC,  et al. )<br>)<br>Defendants. )<br>) | Civil No. 06-1109<br>(PLF)/(AK) |

**MEMORANDUM IN SUPPORT OF BARBOUR GRIFFITH & ROGERS, LLC's MOTION FOR AN ORDER COMPELLING PLAINTIFF TO ANSWER INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

In discovery, Barbour Griffith and Rogers, LLC, ("BGR") has properly requested information and documents that bear directly on the viability of plaintiff IPOC's claims and BGR's anticipated affirmative defenses to those claims.[1] IPOC, however, pretends that it has been awarded Summary Judgment and seeks to be shielded from producing to the defendants or this Court any relevant discovery. IPOC has even failed to identify any person affiliated with IPOC who possesses any information relevant to this case. As is set forth below, this effort to avoid the discovery obligations associated with the status of plaintiff in the United States  must be rejected by this Court. Though there are numerous failings in IPOC's responses, BGR will, in this Motion, only focus on a few particular requests. For the reasons set forth below, BGR respectfully requests that the Court enter an order requiring IPOC to fully and completely answer

---

[1] On July 20, 2006, BGR filed its Answer to the Complaint. In that Answer, BGR denied that it engaged in any improper or illegal conduct and denied all of the allegations set forth in each of the claims for damages.

Interrogatory Nos. 1, 3, 7 and 11 under oath within five (5) days and produce documents requested in Request for Production of Documents Nos. 5, 6, 13, 14, 15, 18, 19, 20, 21 and 24.

## BACKGROUND

As this Court is well aware, the Complaint sets forth seven distinct causes of action. One claim, Count II, alleges a private right of action under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). The remaining counts all sound in tort and it is axiomatic that a party seeking to recover in tort must bear the burden of proving its own damages and causation.[2] Stated otherwise, in order to recover damages, IPOC must show that some action taken by some defendant actually influenced the outcome of either the Bermuda Investigation or the Zurich Arbitration in a manner that caused IPOC to sustain a compensable injury. BGR is aware that IPOC insists that it will not seek to show that anything BGR or Diligence allegedly did actually influenced the outcome of either of these investigations. BGR is unaware of any authority that supports the notion that a party may recover in tort for a failed attempt.[3]

As a result, the findings of the Zurich Arbitration and the Bermuda investigation are critical to a defense of this case as BGR is entitled to show that nothing that IPOC can attribute to BGR or Diligence caused any compensable damages to IPOC. Therefore, a summary of those investigations is the appropriate starting point for determining what information is

---

[2] The elements of each of the plaintiff's claims are set forth in detail in BGR's Motion for Judgment on the Pleadings, p. 4-5. (Docket No. 34-1) Those arguments are incorporated by reference as though fully set forth herein.

[3] As a result, the allegations that any of IPOC's business interests were actually interfered with as alleged in the Complaint are entirely baseless. Complaint ¶¶ 28, 39, 48, 49 and 53.

discoverable by BGR from IPOC in the defense of this case.[4]

According to the allegations in the Complaint, this case arises out of IPOC's allegation that BGR and Defendant Diligence improperly obtained information about IPOC and distributed that information to IPOC's "litigation adversaries" who in turn allegedly used that information in an arbitration proceeding against IPOC held in Zurich, Complaint ¶ 21. The dispute before the Zurich arbitral tribunal was whether IPOC could enforce an agreement that purported to give it the option to purchase a large percentage of the outstanding shares of a Russian telecom company (the "April Option Agreement"). See Second Partial Award in the Ad-Hoc Arbitration in the Matter of IPOC Int's Growth Fund c. LV Finance Group Ltd. (May 16, 2006) (hereafter, the "Zurich Arbitration Ruling") ¶¶ 5, 282.[5]

After more than two years of taking evidence, the tribunal ruled that the April Option Agreement was void because enforcing it would violate English law. The lynchpin of the tribunal's ruling was its factual finding that the "beneficial owner" of IPOC is "a high-ranking office of the Russian Federation with the function of coordination and regulation of activity in the sphere of communication of Russia." Zurich Arbitration Ruling ¶¶ 390. During the arbitration proceedings, the parties and the tribunal referred to this "high-ranking officer of the Russian Federation," as proposed Witness No. 7. Id.; see also id. At ¶¶231-239. The identity of

---

[4] Fed. R. Civ. Pro. 26 (d) (1) provides that parties "may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense of any party, including...the identity and location of persons having any knowledge of any discoverable matter...Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

[5] A complete copy of the Zurich Arbitration Ruling was filed in this action on August 16, 2006, as Attachment 1 (Parts I-10) to the Motion of Defendant Barbour Griffith & Rogers to Dismiss for Lack of Subject Matter Jurisdiction (Docket # 33).

"Proposed Witness No. 7" is widely understood and acknowledged to be Leonid Reiman, the Minister of Telecommunications for the Russian Federation. See, e.g.. Gregory L. White, David Crawford & Glenn R Simpson, *Why Putin's Telecom Minister Is In Investigators' Sights Abroad*, THE WALL STREET JOURNAL, October 17, 2006.

The tribunal found that IPOC is a key tool by which Proposed Witness No. 7 has laundered assets misappropriated from the Russian Federation. With respect to the April Option Agreement in particular, the tribunal found that Proposed Witness No. 7 "misappropriated for his personal enrichment assets majority owned by the Russian Federation" by causing a state-owned telecom company to "abandon[]" its shares in "as asset of considerable value ... in favour of [IPOC] for no value," wit the "inten[t] to achieve this result through the April Option Agreement." Zurich Arbitration Ruling ¶¶ 405, 429; see also id. At ¶¶ 231-239.

The Zurich arbitral further concluded that IPOC's receipt of money from a company called "Augmentation," also under Proposed Witness No. 7's control, and IPOC's subsequent use of that money arose directly out of "commission by Proposed Witness No. 7 of criminal offences" - namely, "abus[ing] " his official powers over to licensing to "force" a company to purchase telecom licenses from Augmentation.  The tribunal thus held that, "[s]ince the performance of the April Option Agreement ... constitutes the laundering of monies stemming from a predicate criminal offence .., [IPOC] cannot enforce its rights thereunder." Zurich Arbitration Ruling ¶¶ 557, 561.

In seeking to enforce the April Options Agreement, IPOC once adamantly contended to the Zurich tribunal that Jeffrey Galmond, a Danish attorney who has performed legal work for M. Reiman, was the true beneficial owner of IPOC, not Proposed Witness No. 7 (i.e., Mr. Reiman).

See Zurich Arbitration Ruling ¶¶ 216-230.  Based on its review of voluminous documents and after presiding over testimony over more than two years, the Zurich tribunal flatly rejected IPOC's contention that Mr. Galmond owns IPOC.  Id. At ¶¶ 231-239.  It concluded instead that "Proposed Witness No. 7 was in June 2002 and in April 2001 the sole beneficial owner of IPOC," and that "the repeated testimony and allegation of [Mr. Galmond] that he is the beneficial owner of IPOC are proven to be clearly incorrect." Id. at 232.  BGR is entitled to know the real owners or owners of IPOC in order to learn the truth and thus defend this case.

      The subject of the Bermuda Investigation is, predictably, not disclosed in the Complaint but the Court can certainly infer that the investigation involves the same general criminal matters described above.  Certainly the financial authorities in Bermuda, as they would in the United States, would investigate whether a public "mutual fund" was actually a criminal money laundering enterprise run by a corrupt government official.  ¶ 1 of the Complaint alleges that IPOC's litigation adversaries instigated the Bermuda investigation.  ¶ 13 of the Complaint repeats this allegation with more particularity and ¶ 21 of the Complaint alleges that some portion of the materials allegedly misappropriated from Bermuda by Diligence "appeared almost verbatim in submissions made by LVFG to a Zurich arbitral tribunal."  This is the same Zurich arbitral tribunal that determined that IPOC was a criminal enterprise.  That same paragraph concludes with the allegation that "IPOC's litigation adversaries LVFG and Alfa leaked portions of the misappropriated Draft Report to the press, which published, as recently as January 31, 2005, articles revealing the contents of the unlawfully obtained materials (which KPMG FAS has not shared with IPOC or its affiliates."  BGR has denied all of these allegations and is entitled to conduct discovery that would allow it to determine the truth or falsity of these allegations.

## ARGUMENT

BRG's First Set of Interrogatories and Request for Production of Documents was served on November 13, 2006. On December 18, 2006, the plaintiff files its Responses and Objections to BRG's First Set of Interrogatories and Request for Production of Documents. The parties have met and conferred regarding the outstanding discovery issues and have been unable to resolve these issues without the intervention of the Court. The areas of dispute are set forth below.

**INTERROGATORY NO. 1:**
Identify in accordance with the instructions all persons who answered these Interrogatories as well as anyone who assisted in answering these interrogatories.

**RESPONSE TO INTERROGATORY NO. 1:**
IPOC objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome and seeks information protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving any objections, IPOC states that Plaintiffs's Responses And Objections to BGR's First Set of Interrogatories And First Request for Production of Documents were prepared by counsel.

Argument: This Interrogatory response raises a recurring theme in this case. Though an IPOC "director" named Mads Braemer-Jensen has verified the responses, the plaintiff is still responsible for answering the Interrogatories. No address for Mads Braemer-Jensen is provided in the Interrogatory responses, he is not listed as a person with any knowledge or information about this matter and no discoverable information is attributed to that person in any Interrogatory response. Fed. R. Civ. Pro. 33 (a) specifically requires that Interrogatories be answered by an officer or agent of the plaintiff. Unless the attorneys representing IPOC are prepared to testify in this case, the applicable rule requires that a party answer the Interrogatories and IPOC should be required to name a person who answers the discovery. Fed. R. Civ. Pro. 33 (b)(2).

**INTERROGATORY NO. 3:**
Please identify the name, address, and telephone number of each and every person or entity who possesses, directly or indirectly, a beneficial or ownership interest in IPOC and specifically identify the officer or director or other person with authority who authorized the filing of this action.

**RESPONSE TO INTERROGATORY NO. 3:**
IPOC objects to this interrogatory on the ground that it seeks information that is not relevant to the claim of defense of any party and is not reasonably calculated to lead to the discovery of admissible evidence, and is overly broad, vague and unduly burdensome. IPOC's Complaint seeks injunctive relief and monetary damages to compensate IPOC for harm resulting from the Defendant's intentional and unlawful actions, including, but not limited to the theft of confidential documents and intentional interference with an ongoing confidential investigation of IPOC being cared out by KPMG FAS for the Government of Bermuda. The identity of the persons and/or entities who possess, directly or indirectly, a beneficial or ownership interest in IPOC is not relevant to the allegations of the Complaint or to any defense.

Argument: This Interrogatory goes to the heart of one of the key defenses in this case. As BGR has argued, this plaintiff seeks to recover damages in tort pursuant to claims that plainly implicate the criminal actions of the plaintiff. Given the findings of the Zurich Arbitration, the ownership of IPOC is an issue that cannot be avoided as this Court could find, or the jury could find, that IPOC is a criminal organization that cannot legally enforce any rights in this Court. Given the findings of the Zurich Arbitration, and likely the filings in Bermuda, discovery of the identity of the ownership of IPOC is elementary to that task. And, the plaintiff itself has raised this issue in at least four additional ways. First, ¶ 15 of the Complaint alleges that "IPOC and its affiliates paid KPMG FAS over $8 million." The defense is entitled to know who those affiliates are, if for no other reason, just to test that allegation. Second, the defendant is entitled to seek information that would lead it to learn who, if at all, has information regarding the business expectancies that are alleged to be at issue in this case and whether the allegations of criminality

set forth in the Zurich Arbitration are in fact true. Similarly, the defendant has the right to depose any of the IPOC officers, directors or agents to determine whether those persons received or otherwise distributed any of the information that is described in ¶ 21 of the Complaint. BGR has denied these allegations and cannot test them without knowing the identity of those persons and their addresses.

Finally, as the plaintiff has alleged diversity jurisdiction under 28 U.S.C. 1332 (a)(1), Complaint ¶ 9, BGR is entitled to test the allegation that IPOC is actually a citizen or subject of another state.[6] IPOC alleges that it is a Bermuda Limited Liability Company. As such, for purposes of diversity jurisdiction, its "citizenship" can only be determined by disclosure of the identity and citizenship of its members. General Tech. Applications, Inc. v. Exro Ltd, 388 F. 3d 114, 120-121 (4th Cir. 2004); GMAC Commercial Credit LLC v. Dillard Department Store, Inc., 357 F. 3d 827, 828-829 (8th Cir. 2004) This Court cannot make this determination, and BGR cannot litigate same, without the requested information.

> **INTERROGATORY NO. 7:**
> Please identify all facts upon which you relied to make the allegations set forth in paragraphs 31 and 32 of your Complaint. In answering this Interrogatory, please identify the location of the computer that you allege was accessed by BGR and/or Diligence, the date and time that the computer was allegedly accessed by BGR and/or Diligence and the means by which such access was obtained.[7]

---

[6] As is set forth below, the federal question jurisdiction in this case is resting upon an exceptionally weak foundation as the plaintiff makes not effort to support its claim under the CFAA 18 U.S.C. § 1030.

[7] ¶¶ 31 & 32 of the Complaint contain the following allegations:

31.   Upon information and belief, one or more agents of Diligence and/or BGR, intentionally and with intent to defraud, accessed, without authorization or in excess of authorized access, one or more KPMG FAS Computers and thereby obtained information and documents related to the Investigation, which have

**RESPONSE TO INTERROGATORY NO. 7:**
IPOC objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome, and seeks information not in IPOC's possession or equally accessible to BGR. Subject to and without waiting these objections, IPOC states that one or more individuals working at the request and instructions of Diligence, which had been hired by BGR and Alfa, accessed one or more of KPMG FAS computers located in Bermuda on at least three occasions, including on or before June 16, 2005, on or before July 10, 2005 and on or before October 1, 2005.

Argument: This response is entirely inadequate. IPOC fails to state how, if at all, the computer or computers located in Bermuda were allegedly accessed and in response to Interrogatory No. 11 below, fails to state any facts that would support a claim for damages under the CFAA. Instead, IPOC's response is essentially to parrot the allegations in the Complaint without providing any facts responsive to a plainly appropriate discovery request. IPOC similarly fails to identify the documents that were allegedly obtained that relate to the "Investigation." This response must be supplemented or the claim should simply be dismissed by IPOC.

A review of the elements of a claim under 18 U.S.C. § 1030 ("CFAA") is appropriate. The CFAA is principally a criminal statute that penalizes computer "hacking," and, consistent with this general purpose, created a civil remedy for a narrow range of harm to computer systems caused by such hacking activities. Under the CFAA, a plaintiff may maintain a private cause of

---

considerable value to IPOC's adversaries.
32. The KPMG FAS Computers that were accessed by Diligence and/BGR, knowingly and with intent to defraud, without authorization and/or by exceeding authorized access, are used in foreign commerce and communication in such a manner that affects foreign commerce.

action if it suffers "damage or loss"[8] exceeding "$5,000 in value during any 1-year period." 18 U.S.C. § 1030(e)(8). Courts interpreting the CFAA have held that compensable "damage or loss" under the statute is limited to the "cost of investigating or remedying damage to a computer, or a cost incurred because the computer's system was interrupted." Nexans Wires, S.A. v. Sark-USA, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004), aff'd, 2006 WL 328292 (2d Cir. 2006); Civic Center Motors, Ltd. v. Mason Street Import Cars, 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005) ("'losses' under the CFAA are compensable only when they result from damage to, or the inoperability of, the accessed computer system"); Tyco Int'l Inc. v. John Does, No. 01CV3856, 2003 WL 21638205 (S.D.N.Y. July 11, 2003) (the "types of damages awarded by courts under the [CFAA] have generally been limited to those costs necessary to assess the damage caused to the plaintiff's computer system or to resecure the system in the wake of a hacking attack") (citing EF Cultural Travel BV v. Explorica, 274 F.3d 577, 584-85 (1st Cir. 2001) (awarding costs of assessing damage [to plaintiff's computer system]); United States v. Middleton, 231 F.3d 1207, 1213-14 (9th Cir. 2000) (awarding costs of investigating and repairing the damage [to plaintiff's computer system]); In re DoubleClick Inc. Privacy Litig., 154 F. Supp. 2d 497, 524-525 (S.D.N.Y. 2001) (only the costs of remedying damage [to plaintiff's computer systems] recoverable under the CFAA). In sum, the caselaw is clear: the only cognizable claim under the statute stems from injury to the computer system itself. IPOC cannot

---

[8] The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, or information." Id. Initially, "loss" was not defined in the statute. In 2001, the CFAA was amended to define "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

recover under the CFAA if an employee of KPMG FAS accessed his own computer and printed a document. This Interrogatory response fails to disclose even that alleged event.

Similarly, IPOC does not disclose any information that would support any claim that it suffered damages from the "cost of investigating or remedying damage to a computer, or a cost incurred because the computer's system was interrupted." Nexans Wires, 319 F. Supp. 2d at 475. Of course, there is no allegation whatsoever in the Complaint that IPOC's *own* computer systems were hacked by Defendants (or anyone else). Compl. ¶¶ 29-34. Rather, IPOC's CFAA is founded upon an allegedly unauthorized access into KPMG FAS's computer systems by "one or more agents of Diligence and/or BGR." Compl.¶ 31. But nowhere in IPOC's 15-page Complaint is there any suggestion—much less an express allegation—that KPMG FAS's computer systems were damaged or rendered in any way inoperative in connection with the allegedly unauthorized access, or in any event that IPOC had to pay for any such damage to, or costs to repair, KPMG FAS's computer systems. Lacking this essential predicate, it is thus not surprising that IPOC wholly fails to respond to a proper discovery request seeking facts indicating any loss compensable under the CFAA – specifically, that IPOC incurred the "cost of investigating or remedying damage to [any KPMG FAS Computer] a computer, or a cost incurred because [KPMG FAS's] computer's system was interrupted." Nexans Wires, 319 F. Supp. 2d at 475.

Given these infirmities in the Complaint, this Interrogatory was filed in an attempt to learn the factual basis upon which IPOC was alleging that any computer was illegally accessed by BGR and/or Diligence and what information was allegedly obtained. IPOC must have some factual basis upon which it would have filed this Count which provides the sole means by which

IPOC asserts the federal question jurisdiction of the Court pursuant to 18 U.S.C. § 1331. Compelling this response will flush out the facts related to subject matter jurisdiction as well as the facts required to make a claim under the CFAA. Accordingly, a complete response should be ordered.

**INTERROGATORY NO. 11:**
Please itemize all damages you claim in this case.

**Response to Interrogatory No. 11:**
IPOC objects to this interrogatory on the grounds that it is vague, overbroad, cumulative, duplicative and unduly burdensome. Subject to and without waiving these objections, see Response to Interrogatory No. 6.

For the convenience of the Court, BGR's Interrogatory No. 6 and the Plaintiff's Response thereto is set forth below:

**INTERROGATORY NO. 6:**

Please identify the damages that you have sustained as alleged in paragraph 28 of the Complaint.

**Response to Interrogatory No. 6:**
IPOC objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome, and seeks information already in the possession of BGR or equally accessible to BGR. Subject to and without waiving these objections, IPOC's damages claim includes (1) the amount paid to KPMG FAS by IPOC for the investigation. IPOC will produce documents sufficient to identify the amount of these payments; and (2) disgorgement of the amounts paid to Defendants Diligence and/or BGR to conduct the tortious activities alleged in the Complaint. IPOC is at this time unaware of the total amounts earned by Defendants for committing torts against IPOC. Discovery is continuing and IPOC will supplement this response as additional information becomes available through discovery to BGR, Diligence and third parties.

Argument: Without waiving the argument that these damages are not recoverable in tort by IPOC, this response is inadequate as to the Claims set forth in Count II of the Complaint. The response to Interrogatory No. 6 makes no reference to any damages recoverable for a civil

violation of the CFAA.

IPOC's lone factual reference to the nature of its alleged damages in the Complaint is a tangential one, and underscores the inadequacy of this response. IPOC alleges that, by wrongfully accessing the KPMG FAS Computers, the Defendants "thereby obtained information and documents related to the Investigation [of IPOC by the Bermudian government], which have considerable value to IPOC's adversaries." Compl. ¶ 31. No facts in support of this allegation are provided and no mention of these damages is set forth in response to a simple and predictable discovery request. And though Courts routinely dismiss CFAA claims where, as here, the plaintiff alleges damages to its *business interests* rather than damage to computer systems or the costs of re-securing a system following a hacking incident, this plaintiff does not disclose that it sustained even those damages. See Civic Center Motors, Ltd., 387 F. Supp. 2d at 381 ("lost profits resulting from Defendant's unfair competitive edge and for their now wasted investment in the development and compilation of the database information . . . . neither of these kinds of losses are the result of computer impairment or computer damage. Therefore, the damages referenced in Interrogatory No. 6 are not compensable 'losses' under the CFAA"); Nexans Wires, S.A., 319 F. Supp. 2d at 477 (plaintiffs failed to state a CFAA claim because "plaintiffs are not claiming to have lost money because the computers [at issue] were inoperable, but rather because of the way the information was later used by defendants."); In re DoubleClick Inc. Privacy Litig., 154 F. Supp. 2d 497, 524-525 (S.D.N.Y. 2001) (complaint failed to state a CFAA claim where plaintiffs "have not pled that [defendant] caused any damage whatsoever to plaintiffs' computers, systems, or data that could require economic remedy").[9] The Court should

---

[9] Accord Register.com, Inc. v. Verio, 126 F. Supp. 2d 238, 252 n.12 (S.D.N.Y. 2000), *aff'd* 356 F.3d 393 (2d Cir. 2004) (damages alleged from defendant's "end use" of

compel a response to this Interrogatory specifically seeking disclosure of facts that would show that IPOC sustained any of the damages recoverable under the CFAA.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

The following Requests for Production of Documents are also at issue in this Motion.

**REQUEST NO. 5**
All documents received from KPMG FAS related to or referring to either defendant.

**Response to Request No. 5**
IPOC objects to this request on the grounds that it is vague, overbroad, unduly, burdensome, and seeks documents prohibited from disclosure by Bermuda law. Subject to and without waiving these objections, IPOC has already provided to BGR and Diligence the documents if obtained pursuant to subpoena to Hughes, Hubbard & Reed LLP ("HHR"), and, as BGR is aware, IPOC has agreed to make available to Defendants any forthcoming production from HHR.

Argument: BGR is entitled to a response to this request. IPOC cannot use Bermuda law as a shield and a sword in this matter. If no such documents exist as to BGR, that would be a sufficient response. Any documents in the possession of IPOC, from any source whatsoever, that refers or relates to BGR or Diligence would plainly be discoverable. Finally, IPOC knows precisely which documents were received by IPOC from KPMG FAS and can easily determine which of those documents are responsive to this Request. Limiting the production to records obtained from HHR is not an adequate or complete response.

---

information retrieved from its website which allegedly allowed defendant to compete unfairly with plaintiff and harmed plaintiff's goodwill not compensable under CFAA because "[h]ow [defendant] uses the [data at issue], once extracted, has no bearing on whether [defendant] has impaired the availability or integrity of [plaintiff's] data or computer systems in extracting it").

**REQUEST NO. 6**
The Final Report from the Bermuda Investigation and any drafts of that Report obtained by IPOC or its attorneys.

**Response to Request No. 6.**
IPOC objects to this document request on the grounds that it is overly broad, vague and unduly burdensome; seeks documents that are not relevant to the claim or defense of any party, and is not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are prohibited from disclosure by Bermuda law, and seeks documents not in the possession of IPOC, and on the grounds that this request is calculated to obtain material of the same type the Defendants were hired to obtain from KPMG FAS by use of bribery, fraud and deception. This request is interposed in bad fath and for purposes of harassment, and IPOC therefore objects to this request, particularly as Defendants have illegally stolen from KPMG FAS a draft report that they knew to be confidential under Bermuda law and disclosed its contents. Further, in the Answer of Defendant BGR, BGR admits that the report is required to be kept confidential pursuant to Bermuda law.

Argument: IPOC's claims plainly revolve around the allegation that BGR and Diligence interfered with the investigation that lead to and culminated in some report from the Bermuda Monetary Authority. This case cannot be tried without production of the documents at issue no matter what the law of Bermuda might provide as to confidentiality. Significantly, IPOC mentions these Reports in its Complaint and must be estopped from denying their discoverablity. It is specifically alleged, in paragraph 21 of the Complaint, that portions of the "misappropriated Draft Report" were leaked to the press. BGR is entitled to test these allegations by obtaining the reports and the drafts in IPOC's possession. Moreover, these documents may possess evidence that would support the claims that IPOC is a criminal enterprise engaged in money laundering and that the "business interests" involved in this case were never interfered with in any regard. Comparing a "draft report" prepared at one point in time to show that the "Final Report" was not the result of any corruption or interference by BGR or Diligence is critical to the defense in this

case.

**REQUEST NO. 13**
All documents relating to each and every Communication between IPOC and Mr. Reiman relating to the IPOC Investigation, this action, Diligence and/or BGR.

**Response to Request No. 13.**
IPOC objects to this document request on the grounds that it is overly broad, vague (including the words "IPOC Investigation" used in the request are vague undefined) and unduly burdensome; seeks documents that are not relevant to the claim or defense of any party, and is not reasonably calculated to lead to the discovery of admissible evidence. IPOC's Complaint seeks injunctive relief and monetary damages to compensate IPOC for harm resulting from the Defendant's intentional and unlawful actions, including, but not limited to the theft of confidential documents and intentional interference with an ongoing confidential investigation of IPOC being carrried out by KPMG FAS for the Government of Bermuda. Mr. Reiman is not relevant to the allegations of the Complaint or to any defense.

Argument: Mr. Reiman's role as the head of IPOC, and as the Russian Minister charged in the Zurich Arbitration with stealing state assets, is critical to this case. The communications between IPOC and Mr. Reiman that relate to IPOC Investigation, this action, Diligence and/or BGR, are critical to show both who is involved in IPOC as well as to show that nothing BGR did caused any damages to IPOC.

**REQUEST NO. 14**
All documents that refer, relate to or constitute evidence of any criminal investigation in any jurisdiction naming Jeffrey Galmond, Mr.Reiman, IPOC and/or any officer, director, agent or employee of IPOC.

**Response to Request No. 14.**
IPOC objects to this document request on the grounds that it is overly broad, vague and unduly burdensome; seeks documents that are not relevant to the claim or defense of any party, and is not reasonably calculated to lead to the discovery of admissible evidence, seeks documents protected by the attorney-client privilege and/or work-product doctrine and may seek documents not within the custody or control of IPOC.

Argument:  Documents responsive to this Request will show that the findings of the Zurich Arbitration are well founded and can be used to undermine the credibility of any of these witnesses should they be called.

**REQUEST NO. 15**
All documents relating to each and every Communication between IPOC and the Government of Bermuda relating to the IPOC Investigation, this action, Diligence and/or BGR.

**Response to Request No. 15.**
IPOC objects to this document request on the grounds that it is overly broad, vague and unduly burdensome; seeks documents that are not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence; seeks documents that are prohibited from disclosure by Bermuda law, and seeks documents protected by the attorney-client privilege and work-product doctrine.  Subject to any and without waiving any objections  and to the extent their disclosure is neither prohibited by law nor protected by law nor protected by the attorney-client privilege or work product doctrine, IPOC will produce documents related to both (1)(a) this action, (b) Diligence or (c) BGR and (2) communications between IPOC and the Government of Bermuda, if any such document exist.

Argument:  See Argument in support of Request for Production No. 6.  In addition, BGR is entitled to test the allegation that IPOC's litigation adversaries instigated this investigation. These documents will also show that IPOC informed the Bermuda authorities of their suspicions that Diligence was seeking to influence the Investigation and will show what steps were taken to insure that did not occur.  These documents therefore are relevant to the issue of causation as well.

**REQUEST NO. 18**
All documents that refer or relate to or constitute the damages you seek in this matter including any legal bills that you seek as damages.

**Response to Request No. 18.**
IPOC objects to this document request on the grounds that it is overly broad and

unduly burdensome. Subject to and without waiving any objections, IPOC will produce (a) documents sufficient to identify the amount of fees paid by IPOC to KPMG FAS in connection with the IPOC Investigation; (b) will produce all documents obtained in discovery or otherwise regarding the amounts paid to BGR and/or Diligence by their clients in regard to their illegal conduct designed to injure IPOC and (c) as discovery proceeds IPOC will produce any documents obtained that relate to the damages IPOC seeks in its lawsuit.

Argument: At this time, and without prejudice to the right to bring a later motion, BGR only seeks documents that would show the damages sought under the FCAA as described above in detail.

**REQUEST NO. 19**
All documents relating to the computer or computer that you allege BGR and/or Diligence illegally accessed as alleged in the Complaint.

**Response to Request No. 19.**
IPOC objects to this request on the grounds that it is vague, overbroad ,unduly burdensome and seeks documents not in the possession of IPOC.

Argument: IPOC can reasonably be expected to have performed some tests or possess some written information that refers or relates to the computer or computers at issue in this case. It is reasonably expected that some document must exist to show when and if any of these computers were illegally accessed as alleged in the Complaint. If IPOC does not possess the computer or computers it should say so. Similarly, if IPOC has no information about the computers or how, if at all, they were illegally accessed, it should say so as well.

**REQUEST NO. 20**
Any forensic reports that refer or relate to BGR and/or Diligence illegally accessing any KMPG FAS computer.

**Response to Request No. 20.**
IPOC objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents that are not in the possession of IPOC.

-18-

Argument: Same argument as to Request No. 19 above.

**REQUEST NO. 21**
The actual computer or computers which you allege that BGR and/or Diligence illegally accessed.

**Response to Request No. 21.**
IPOC objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks things not in the possession of IPOC.

Argument: Same argument as to Request No. 19 above.

**REQUEST NO. 24**
Any and all Agreements or Contracts between IPOC and KPMG FAS.

**Response to Request No. 24.**
IPOC objects to this document request on the grounds that it is overly broad, vague and unduly burdensome; seeks documents that are not relevant to the claim or defense of any party, and is not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are prohibited from disclosure by Bermuda law. Subject to and without waiving any objections, IPOC will produce documents sufficient to identify the agreement alleged in the Complaint, if any exist.

Argument: IPOC must produce the agreements between it and KPMG FAS. It is simply incredible to assert that KPMG FAS has performed over Eight Million Dollars of work for IPOC, Complaint ¶15, without a written agreement. Also, all other contracts or agreements between KPMG and IPOC or any of its affiliates must be produced as they may relate to the credibility of any KPGM or IPOC official who testifies in this case. It can be anticipated that KPMG FAS' business relationship with IPOC would give it a financial reason to support IPOC in all of its endeavors. That information is clearly discoverable.

WHEREFORE, the defendant requests that the instant motion be granted.

**BARBOUR GRIFFITH & ROGERS, LLC**
By Counsel

_____/s/_____
Edward B. MacMahon, Jr.
D.C. Bar No. 411165
P.O. Box 903
107 East Washington Street
Middleburg, VA 20118
(540) 687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net
*Counsel for Defendant Barbour
   Griffith & Rogers, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of February, 2007, a true and correct copy of the foregoing to be served electronically, via the Court's electronic filing system, on:

>Timothy M. Broas
>Carol A. Joffe
>Winston & Strawn
>1700 K Street, N.W.
>Washington, D.C.   20006
>(202) 282-5000
>(202) 282-5100 (Fax)
>*Counsel for IPOC International Growth Fund Limited*
>
>Paul C. Rauser
>AEGIS Law Group LLP
>Suite 500
>901 F Street, N.W., Suite 500
>Washington, D.C.   20004
>(202) 737-3500
>(202) 737-3330 (Fax)
>*Counsel for Diligence LLC*

/s/
_____
Edward B. MacMahon, Jr.