IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED<br><br>*Plaintiff,*<br><br>v.<br><br>DILIGENCE LLC, et al.<br><br>*Defendants.* | Civil Action No. 06-1109 (PLF) |

**AMENDED
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR AN
ORDER TO SHOW CAUSE WHY A STAY SHOULD NOT ISSUE PENDING
RESOLUTION OF THE INVOLUNTARY WINDING-UP PETITION
FILED AGAINST PLAINTIFF BY THE GOVERNMENT OF BERMUDA**

After months of revelations that it is a money-laundering front, the Government of Bermuda is shutting down Plaintiff IPOC International Growth Fund Limited ("IPOC").

On January 12, 2007, at the direction of the Minister of Finance, the Bermuda Registrar of Companies filed in the Supreme Court of Bermuda a petition for involuntary dissolution of IPOC and eight affiliates (the "Winding-up Petition") based on an investigation of IPOC that revealed "breaches of [Bermuda] law and apparent regulatory infractions." See Exhibit A (attached hereto).[1]  Defendants respectfully suggest that a stay of this case is warranted to avoid

---

[1] The Winding-up Petition has not yet been made public, but was described in a written statement released by the Minister of Finance. See Ex. A (newspaper reports in the *Financial Times* and Bermuda *Royal Gazette*). That statement alluded to recent findings by a commercial arbitral tribunal—findings thereafter enforced by the Bermuda Supreme Court—that a contract IPOC sought to enforce was void for illegality because: (i) the "beneficial owner" of IPOC is "a high-ranking officer of the Russian Federation"; and (ii) that IPOC is a key tool by which this Russian official has laundered assets misappropriated from the Russian Federation. Zurich Arbitration Ruling ¶¶ 231-39, 390 (Docket #33). The tribunal thus held that, "[s]ince the performance of the [contract] . . . constitutes the laundering of monies stemming from a predicate criminal offence . . ., [IPOC] cannot enforce its rights thereunder." Id. at ¶¶ 557, 561.

unnecessary expenditure of the Court's resources where IPOC may well cease to exist in just a matter of weeks, and where the government and regulatory agencies of IPOC's home jurisdiction are actively seeking to terminate its corporate status for "breaches of law" and "regulatory infractions." Ex. A.

A stay is also appropriate for a second, independent reason. In the event that the Bermuda Supreme Court orders the winding-up of IPOC and appoints a liquidator or provisional liquidator[2] for the company – and the Winding-up Petition is set for hearing on April 27, 2007 – that order will become retroactive to January 12, 2007 and "the authority of the directors and officers of the IPOC companies will have ceased on 12 January 2007." See Second Declaration of D. Justin Williams (attached as Exhibit B hereto) ¶ 4. Thus, there is a very real risk that Defendants will be put to the financial burden of defending this action over the next two months (and asserting counterclaims, if necessary[3]) against a company whose directors and officers were not empowered to pursue this litigation. Under such circumstances, a stay is appropriate.

Defendants respectfully suggest that these dramatic, rapidly-unfolding developments in Bermuda warrant an order for IPOC to show cause why this action—which is at a critical juncture in terms of use of judicial resources and time and expense to the parties—should not be stayed pending resolution of the Winding-up Petition. At a minimum, the Court should require IPOC to inform the Court and the parties whether a liquidator or provisional liquidator has been appointed to take control of IPOC, and to provide to the Court – *in camera* if necessary –

---

[2] Under Bermuda law, appointment of a provisional liquidator "gives interim control of the company to the liquidator." Andrew R. Keay, *McPherson's Law of Company Liquidation* 250 (2001). "The reason for the petition tends to be, on most occasions, that there is a perception that the assets and affairs of the company are in jeopardy, primarily because the directors and/or shareholders may dissipate the assets while the petition is pending." Id.

[3] Defendant Diligence has moved to dismiss the claims against it and has, accordingly, not filed an Answer and/or Counterclaims.

details on the status, timetable, and basis for the petitions, including a copy of the Winding-up Petition (and all attachments thereto and supporting documents) and any Petition for appointment of a provisional liquidator (and all attachments thereto and supporting documents).

## ARGUMENT

A district court "has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." IBT/HERE Employee Representatives Council v. Gate Gourmet Division Americas, 402 F. Supp. 2d 289, 292 (D.D.C. 2005). This broad "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Id. (*quoting* Air Line Pilots Association v. Miller, 523 U.S. 866, 879 (1998)).

For the reasons set forth below, this case, like IBT/HERE, should be stayed pending resolution of independent proceedings that "may affect the future scope and necessity of litigation in this Court." IBT/HERE, 402 F. Supp. 2d at 292.

### I. JUDICIAL AND PARTY RESOURCES SHOULD NOT BE EXPENDED ON A CASE INVOLVING A PLAINTIFF THAT IS ON THE CUSP OF INVOLUNTARY DISSOLUTION.

It is longstanding, "settled law . . . that dissolution of a corporation terminates [the] right of litigation unless preserved by law of the incorporating [jurisdiction], just as death of a person ends all right of action against him." Beasley v. Fox, 173 F.2d 920, 921 (D.C. Cir. 1949) (*citing* Sedgwick v. Beasley, 173 F.2d 918, 920 (D.C. Cir. 1949) (dissolution of corporate plaintiff renders pending action "null and void")); see also Catalyst & Chemical Services, Inc. v. Global Ground Support, 350 F. Supp. 2d 1, 21 (D.D.C. 2004) (noting that, under Maryland law, "a corporation whose charter is forfeited no longer has legal existence, and its power to sue and be

sued is extinguished") (internal quotation and alteration omitted). In the event IPOC is dissolved, it will not be able to continue this action.

Moreover, there is simply no reason to expend substantial judicial, party, and non-party resources continuing to litigate this case before the matter of IPOC's dissolution is settled by the Bermuda courts. As set forth in the accompanying Second Declaration of D. Justin Williams, an experienced Bermuda attorney, upon *either* (1) a winding-up order appointing a liquidator, or (2) the appointment of a provisional liquidator to take control of IPOC's affairs, IPOC's current directors and officers will – retroactive to January 12, 2007 – lose the authority to take decisions on behalf of the company. See Ex. B ¶ 4. Under such circumstances, conservation of judicial resources and avoidance of unnecessary burdens on parties and non-parties militates in favor of a stay.

### A. This Case Should Be Stayed Pending Resolution of the Involuntary Winding-up Petition Filed Against IPOC by the Government of Bermuda.

This case is at a critical juncture in terms of use of judicial resources. Not including the instant Motion, there are no fewer than <u>seven</u> other motions currently pending before the Court: three motions to dismiss the Complaint in its entirety, a motion for judgment on the pleadings, a motion for reconsideration of the Court's October 13, 2006 Order allowing written discovery to proceed (but staying deposition discovery), a motion to compel discovery from IPOC, and a motion for reconsideration (filed by IPOC) of the Court's January 23, 2007 Order on the parties' cross motions for entry of a protective order.

This case is at a similar inflection point in terms of time and expense to the parties and non-party witnesses. Not only will the parties expend considerable resources continuing to brief the motions currently before the Court (and any additional motions filed over the next several weeks), but IPOC is continuing to aggressively pursue third-party discovery, thereby subjecting

non-parties (such as Hughes Hubbard & Reed LLP, Yahoo, and Microsoft) to attorneys' fees and costs in responding to subpoenas issued by IPOC. Currently, the parties are preparing extensive document and written discovery. Indeed, on January 30, 2007 (more than two weeks *after* issuance of the Winding-up Petition), IPOC served Diligence with its initial Interrogatories and Requests for Admissions.

Given the rapidly-evolving dissolution proceeding against IPOC by the Government of Bermuda—IPOC's jurisdiction of incorporation—neither the Court, nor the parties, nor non-party witnesses should expend their valuable time and resources litigating this case until the Winding-up Petition has been ruled upon. Simply put, IPOC may well not exist ten weeks from now. And of even more immediacy, appointment of a liquidator or provisional liquidator to take control of IPOC would strip IPOC's officers and directors of any authority they would have to pursue this suit – indeed, would do so as of January 12, 2007. In such circumstances, there is simply no reason to proceed.

In stark contrast to the benefits to the Court, the parties, and non-party witnesses from a stay, there will be no prejudice to IPOC from a temporary stay until the Winding-up Petition is resolved. *First*, no scheduling order has been entered in this case; there is thus no discovery deadline nor a trial date. *Second*, Judge Kay already has imposed a stay of all depositions until the four pending dispositive motions are resolved. *Third*, IPOC has yet to produce a single document as part of discovery in this case—indeed, IPOC has failed to provide *any* Initial Disclosure materials required under Federal Rule of Civil Procedure 26(a), and has

refused to identify *any* IPOC witness who has knowledge of the facts alleged in IPOC's Complaint. This case, therefore, is very much in its early stages.[4]

### B. At a Minimum, IPOC Should Be Ordered to Disclose to the Court the Status, Timetable, and Copies of the Winding-up Petition and the Petition for Appointment of a Provisional Liquidator.

Because the dissolution proceedings thus far are non-public, see Ex. A, IPOC is the only party before the Court with full and complete knowledge as to the status of, and the timetable for, those proceedings. For the same reason, only IPOC knows the factual predicate offered by the Government of Bermuda for IPOC's dissolution. Such information bears directly on the question of whether the Court should allow this case to proceed during the pendency of the Winding-up Petition. Thus, Defendants respectfully request that the Court order IPOC to disclose (*in camera*, if necessary) the status, timetable, and basis for the petitions – at a minimum, copies of (i) the Winding-up Petition and all attachments thereto and supporting documents, and (ii) the Petition for appointment of a provisional liquidator and all attachments thereto and supporting documents.

## CONCLUSION

---

[4] IPOC cannot be heard to argue that this action must be allowed to proceed because it challenges the integrity of the very investigation by the Government of Bermuda upon which the Winding-up Petition is based. IPOC's own, recent representations to this Court, and this Court's reliance on those representations in denying Diligence Inc. ("Diligence") discovery it sought from IPOC on relevance grounds, preclude any such argument by IPOC. In the January 31, 2007 Memorandum Order (Docket #89) denying Diligence's Motion for an Order Compelling Answers to Interrogatories, Judge Kay relied upon IPOC's representation in its briefs that the Complaint "contains no allegation concerning the 'correctness' or 'incorrectness' of the findings in the Bermuda Investigation and as such, those findings will not be the focus of the trial in this case, because they are not relevant to any claim or defense." Mem. Order at 9 (*quoting* IPOC's Sur-Reply to Motion to Compel, at 7) (alterations omitted). Based on this representation, Judge Kay concluded that "the Bermuda Investigation findings" "are not a subject of this litigation." Mem. Order at 9. Indeed, in summarizing his ruling, Judge Kay noted that he was denying Diligence's motion to compel because "neither [the Bermuda Investigation nor the Zurich Arbitration] is substantively at issue in this case." Id.

For the foregoing reasons, Defendants respectfully request that the Court issue an Order to Show Cause Why a Stay Should Not Issue Pending Resolution of the Involuntary Winding-up Petition Filed By the Government of Bermuda, and further order IPOC to disclose (*in camera*, if necessary) the status, timetable, and the basis for the petitions, including copies of (i) the Winding-up Petition and all attachments thereto and supporting documents, and (ii) the Petition for appointment of a provisional liquidator and all attachments thereto and supporting documents.

Respectfully submitted,

/s/ Edward B. MacMahon, Jr.
Edward B. MacMahon, Jr.
D.C. Bar No. 411165
P.O. Box 903
107 East Washington Street
Middleburg, VA 20118
540-687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net
*Attorney for Defendant Barbour Griffith & Rogers, LLC*
AEGIS LAW GROUP LLP

By: /s/ Paul C. Rauser
Paul C. Rauser (D.C. Bar No. 461722)
Michael K. Ross (D.C. Bar No. 458573)
Oliver Garcia (D.C. Bar No. 456600)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
*T: 202-737-3500/ F: 202-737-3330*
*Attorneys for Defendant Diligence Inc.*

Dated: February 16, 2007

# **EXHIBIT A**




FT Home > Companies > By region > Americas

# Bermuda seeks to liquidate Russian-linked companies

By Stephen Fidler in London
Published: February 13 2007 02:00 | Last updated: February 13 2007 02:00

Bermuda is seeking to liquidate nine companies owning billions of dollars of Russian telecommunications assets as part of an effort aimed at protecting the island's reputation as a leading financial centre.

The legal assault on the companies - which have been linked to an ally of Vladimir Putin - could offer more insight into the opaque business dealings that surrounded Russia's Yeltsin-era privatisation wave that left many former state businesses in the hands of offshore entities.

The government of Bermuda said last week it would apply for the winding up of Ipoc International Growth Fund and eight affiliated companies, which together own a big stake in Megafon, the Russian mobile phone company, and other assets.

Ipoc, incorporated in 2000, has been locked in a long-running dispute with the Alfa Group, a conglomerate owned by oligarch Mikhail Fridman, over the 25 per cent that Alfa holds in Megafon.

A Zurich arbitration tribunal found last May that a high-ranking Russian official with responsibility for communications was the sole beneficial owner of the fund, which gained its assets after 1990s privatisations. The owner was not, it concluded, Jeffrey Galmond, a Danish lawyer, as Ipoc had claimed.

The official has been named in a number of legal actions against Ipoc as Leonid Reiman, Russia's telecoms minister and an ally of President Vladimir Putin. Mr Reiman has denied the claims. Ipoc's usual spokesman in London did not respond to enquiries.

The government application will be heard at a hearing expected on April 27 in Bermuda's supreme court. In a statement, the ministry of finance said the action was being taken "to address seeming breaches of our law and regulatory infractions". It said the government was liaising with other jurisdictions and that some issues had been referred to the Bermuda police service for investigation.

The action follows the production of a still-confidential report from two KPMG partners into Ipoc that took two years to complete.

The financial centre in Bermuda has come under scrutiny from US authorities as the home of many US hedge funds and reinsurance companies. The ministry said it was unwavering in its determination to protect the island's reputation.

The action is unlikely to be resolved quickly, given the likelihood of appeals. But, if the winding up application is successful, there are questions about what would then happen to Ipoc's assets. Normally, the assets would be divided among shareholders, once creditors had been satisfied. However, in this case, their ownership is in dispute.

Copyright The Financial Times Limited 2007

▸Print article   ▸Email article   ▸Order reprints

**LATEST COMPANIES NEWS**
- Uranium miners join forces
- Telefónica looks to take control at Vivo
- Broker between extremes
- Group looks to farther fields for expansion
- Brazil venture takes textile fight to China
- Second blow in two months for CSN
- Tata Steel wins Corus with £6.2bn offer
- Rinker lifts pressure on Cemex to raise bid
- Bolivia to return Entel to state control
- Battle for Corus set to go right to the finish line

## ▾TRACK THIS STORY

**News alerts**
Email - create a keyword alert on the subject of this topic   [Go]
Desktop - download our application to receive instant alerts on this topic   [Go]

**Email summaries**
Email - start your day with daily email briefing on this topic   [Go]

Last modified: February 06, 2007 9:07AM

# Cox moves to wind up IPOC



Leonid Reiman

By Jonathan Kent

Finance Minister Paula Cox has asked for the Supreme Court to wind up the controversial IPOC International Growth Fund and eight related companies.
In a written statement yesterday confirming the move, Ms Cox said that it was sometimes necessary to take legal action "to address seeming breaches of our laws and apparent regulatory infractions".
Some matters relating to the case have been passed on to the Bermuda Police Service for investigation.
A writ was filed last month by the Registrar of Companies against IPOC and related entities. The petition for a winding-up will be held in a closed hearing on April 27.
The legal action is the latest twist in the IPOC saga, which has sparked litigation in several countries amid claims that the Fund was a money-laundering vehicle.
In January last year, the Wall Street Journal revealed that the Fund had been set up on the Island in 2000 by a convicted fraudster.
It was alleged that it was effectively a holding company for around $1 billion in telecommunications assets transferred through a network of shell companies. The WSJ claimed the scandal went all the way up to the Russian IT and Communications Minister Leonid Reiman.
A Swiss tribunal in May last year, found that Mr. Reiman was the "sole beneficial owner" of the Fund. The tribunal stated that the close ally of President Vladimir Putin had amassed great personal wealth in the IPOC Fund by taking advantage of his role in public office.
Puisne Judge Ian Kawaley later upheld the ruling in a related case in the Bermuda Supreme Court.
It was alleged in Zurich that money skimmed during the privatisation of the Russian telecommunications industry during the early 1990s was laundered through the Bermuda-based fund.
IPOC has consistently claimed that Danish lawyer Jeffrey Galmond is the Fund's owner. Mr. Galmond did not respond to our call yesterday.
The scandal has dealt blows to Bermuda's reputation as an offshore jurisdiction with its repeated appearances in the international press.
KPMG Advisory Services was commissioned by the Ministry of Finance in 2004 to carry out an investigation of IPOC. The findings were passed on to Government in June last year.
Ms Cox said yesterday: "Bermuda is a premier jurisdiction of choice with a highly sophisticated financial infrastructure. However notwithstanding this, on occasion there are issues that result in legal action having to be taken to address seeming breaches of our laws and apparent regulatory infractions.

"We can confirm that a writ has been filed in the matter of IPOC Capital Partners Limited and in the matter of IPOC International Growth Fund. This is a matter that will be heard before the court and has been in the local and international press for some time.

"The issues are highly complex and a simplistic approach does a disservice to the complexity of the issues at stake.

"However, what is clear is the unwavering determination by the Ministry of Finance on behalf of the Government of Bermuda to take action to protect the Island's reputation as a leading financial centre."

The KPMG report was the basis for the legal action, Ms Cox added.

"Following the examination of the inspector's report, the Minister directed the Registrar of Companies to petition the court for a winding up of the company and the Ministry can confirm that a winding-up petition was filed on Friday, January 12, 2007.

"We are liasing on a number of cross-border cooperation issues and there are matters that the Ministry has referred to the Bermuda Police Service for investigation, in compliance with various international protocols for cooperation in such matters.

"Given the issues that there are before the courts in a number of other jurisdictions and the number of regulatory and other agencies involved, no further comment will be made at this time."

The writ has been filed against IPOC Capital Partners Ltd and in the matter of IPOC International Growth Fund Ltd., Gamma Capital Fund Ltd., Convergence Capital Ltd., Com Tel Eastern Ltd., First National Telecommunication Fund Ltd., Convergence Capital Management Ltd., Augmentation Investments Ltd. and Telco Overseas Ltd.

Most of the previous litigation surrounding the Bermuda fund was sparked by a dispute between IPOC and and LV Finance Group. The three-year legal battle has been fought over a 25 per cent stake in Megafon, Russia's third largest mobile operator.

Alfa Group bought LV's stake in Megafon in 2003, but IPOC claims it signed option agreements to obtain those same stocks back in 2001.

The dispute has sparked lawsuits in the Bahamas, the British Virgin Islands, Russia and Switzerland.

The BMA declassified the fund as a Bermuda-registered mutual fund in December last year, just one day after IPOC paid for a half-page advertisement in *The Royal Gazette* that declared restated an announcement by the Office of the Russian Federation's Prosecutor General that IPOC has no case to answer in connection with fraud allegations made against it.

# **EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, ) ) ) *Plaintiff,* ) ) v. ) ) DILIGENCE LLC, et al. ) ) *Defendants.* ) ) | Civil Action No. 06-1109 (PLF)(AK) |

### SECOND DECLARATION OF D. JUSTIN WILLIAMS IN SUPPORT OF DEFENDANTS' MOTION FOR ORDER TO SHOW CAUSE

I, D. JUSTIN WILLIAMS, being over 18 years of age, depose, swear, and affirm under the penalty of perjury under the laws of the United States that the following is true and correct:

1.  I am the founding partner of Williams, Barristers & Attorney, a Bermuda law firm located in Bermuda. I am an attorney and am duly qualified to practice law in the Islands of Bermuda. I was called to the Bar of England and Wales on 28 July 1988 and I was called to the Bar of Bermuda on 15 March 1989. I have practiced in the area of commercial litigation for my entire career. I have taken the oath of a Magistrate and of a Supreme Court Justice in Bermuda, where I occasionally sit as either a Magistrate or a Justice of the Supreme Court. In light of my legal experience and training, I have considerable experience with, and am well versed in, Bermuda commercial and corporate law. I therefore consider myself well qualified to opine on the matters of Bermuda law set forth in this Declaration.

2. It was reported in the *Royal Gazette* on February 6, 2007 that the Bermuda Registrar of Companies has filed a petition to wind-up IPOC International Growth Fund Ltd., IPOC Capital Partners Ltd., Gamma Capital Fund Ltd., Convergence Capital Ltd., Com Tel Eastern Ltd., First National Telecommunication Fund Ltd., Convergence Capital Management Ltd., Augmentation Investments Ltd. and Telco Overseas Ltd. (collectively, the "IPOC Companies"). That fact has been confirmed by an inspection on February 6, 2007, of the Cause Book maintained by the Registrar of the Supreme Court of Bermuda. The petition was filed on 12 January 2007 by the Registrar of Companies in respect of all nine IPOC Companies. The matter was before the Court on 8 February, 2007. A hearing date of 27 April, 2007 has now been scheduled for the Court to give Directions on the hearing of the Registrar's petition to wind-up the IPOC Companies.

3. In my declaration made 8 February 2007 I stated in paragraph 3 that section 167(4) of the (Bermuda) <u>Companies Act 1981</u> (as amended) (the "<u>Companies Act</u>") provided that "no action or proceeding can be continued (or filed) by or against a company upon the appointment of a provisional liquidator to take control of the company". I then went on to set out the relevant section of the <u>Companies Act</u> verbatim. Unfortunately, the words "by or" were inadvertently included in paragraph 3 of my declaration, but no confusion ought to have been caused as I then set out section 167(4) of the <u>Companies Act</u> where it is clear that the stay is in respect of actions against the relevant company only.

4. I should also elaborate that on the making of an order appointing a liquidator or provisional liquidator, the order takes effect from the date of the

presentation of the petition, in this case 12 January 2007. The effect of this "reversion back" date is that once a liquidator or provisional liquidator is appointed, that person (or those people) will be appointed with effect from 12 January 2007 and the authority of the directors and officers of the IPOC companies will have ceased on 12 January 2007 (though they will remain directors and/or officers of those companies). Consequently, it may well be that the directors and officers of the IPOC companies will have been stripped of their power to make decisions on behalf of the IPOC companies with effect from 12 January 2007 and that any directions they purport to give on behalf of those companies now will afterward prove to have been without authority.

5. In the circumstances it is possible and not at all unusual in Bermuda (or England) to apply for an order staying proceedings brought by the company in question on the basis that the people purporting to direct the company may not have the authority to do so. This is especially so where, as here, the petition is presented by the Registrar of Companies on the ground that the companies have engaged in a prohibited or restricted business activity or that it is otherwise just and equitable that the companies be wound up.

Executed on this 16th day of February, 2007.

*/s/ D. Justin Williams*
D. Justin Williams