## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH )
FUND LIMITED )
)
        *Plaintiff,* )      Civil Action No. 06-1109 (PLF)
)
v. )
)
DILIGENCE LLC, et al. )
)
        *Defendants.* )
_____ )

### DEFENDANTS' JOINT OPPOSITION TO IPOC'S MOTION
### FOR RECONSIDERATION OF THE MAGISTRATE JUDGE'S
### RULINGS ON MOTIONS FOR PROTECTIVE ORDER

After considering seven separate briefs—including two briefs filed by IPOC *after*

the Court's 90-minute oral argument on January 11—Judge Kay issued a detailed, carefully

reasoned Memorandum Order dated January 23, 2007 granting in part and denying in part the

parties' cross-motions for entry of a protective order.  Evidently upset that Judge Kay did not

simply adopt wholesale its requested form of protective order, IPOC now criticizes the January 23

Memorandum Order as "clearly erroneous" and "egregious[]," and even goes so far as to

characterize as "irrational" Judge Kay's refusal to allow IPOC the unfettered ability to ship

protected materials overseas—and therefore outside this Court's jurisdiction—to virtually anyone

it wants.  Mem. at 9.

Contrary to IPOC's overheated charges, the Protective Order entered by Judge Kay

is eminently reasonable given (i) IPOC's past protective order violations, (ii) IPOC's public

dissemination of transcript material under seal by Order of this Court in the <u>KPMG FAS v.</u>

- 1 -

<u>Diligence</u> case, and (iii) recent determinations by the Government of Bermuda—IPOC's jurisdiction of organization—that IPOC should be involuntarily dissolved because of the Company's serious violations of Bermuda law and regulatory procedures.

As detailed below, contrary to IPOC's protestations, Judge Kay's January 23 Memorandum Order appropriately sets in place procedures to ensure that the documents and information produced in this case are used for proper purposes, and to guarantee that this Court maintains meaningful, effective control over protected materials.

## I.    IPOC'S PAST PROTECTIVE ORDER VIOLATIONS AND PUBLIC DISSEMINATION OF UNDER-SEAL MATERIAL REQUIRE CONSTRAINTS ON DISTRIBUTION OF PROTECTIVE ORDER MATERIALS IN THIS CASE.

Judge Kay's Memorandum Order is neither "egregious" nor "irrational" because IPOC is no ordinary civil litigant.  Not only has IPOC been adjudged to be a money laundering front,[1] but its home jurisdiction of Bermuda has moved to involuntarily dissolve IPOC for "breaches of [Bermuda] law and regulatory infractions."  <u>See</u> Ex. A to Amended Mem. in Support of Motion for an Order to Show Cause Why a Stay Should Not Issue Pending Resolution of the Involuntarily Winding-Up Petition Filed Against IPOC By the Government of Bermuda (Docket #95).  Consistent with its pedigree, IPOC has flouted protective orders in other proceedings and has even gone so far as to attach to a public filing in a foreign jurisdiction an unredacted copy of a hearing transcript placed under seal by this Court in the <u>KPMG FAS v. Diligence</u> case—a transcript that IPOC somehow obtained and disclosed even though, by the transcript's own text, it

---

[1]    Last May, following a two-year proceeding, a commercial arbitral tribunal issued detailed findings—findings thereafter enforced by the Bermuda Supreme Court—that a contract IPOC sought to enforce was void for illegality because: (i) the "beneficial owner" of IPOC is "a high-ranking officer of the Russian Federation"; and (ii) that IPOC is a key tool by which this Russian official has laundered assets misappropriated from the Russian Federation.  Zurich Arbitration Ruling ¶ ¶ 231-39, 390 (attached to Docket #33).  The tribunal thus held that, "[s]ince the performance of the [contract] . . . constitutes the laundering of monies stemming from a predicate criminal offence . . ., [IPOC] cannot enforce its rights thereunder."  <u>Id.</u> at ¶ ¶ 557, 561.

plainly should not have been. In light of these incidents, Judge Kay's ruling was a reasoned, rational approach to ensuring that this Court retains meaningful control over the Protective Order materials in this case. There is simply no reason to second-guess that determination.

### A.    The Zurich Arbitration Panel Recently Ruled that IPOC Violated the Protective Order Entered in that Proceeding.

As the Defendants have noted in prior filings in this matter, IPOC was party to a lengthy commercial arbitration in Zurich concerning the disposition of stock in a Russian telecommunications company – a matter that has resulted, most recently, in a Second Partial Award by the arbitral tribunal in favor of IPOC's adversary. During the course of that arbitral proceeding, the panel entered a confidentiality order governing the distribution of materials. This order resulted in charges by both IPOC and its adversary of violations of the confidentiality order. See Exhibit A (Selections from Second Partial Award) at ¶ 127.

Yet despite the charge and counter-charge, it is noteworthy that the arbitrators reached one clear, unambiguous conclusion when they issued their Second Partial Award on May 16, 2006:  IPOC violated the confidentiality order. See Exhibit A at ¶ 156. Indeed, the Zurich panel noted both IPOC's violation – sending protected materials to KPMG Inspectors in Bermuda – and the panel's limited options for remedying that violation:

> Claimant disregarded the Confidentiality Order by disclosing Protected Evidence to the Inspectors without requesting leave to do so from the Arbitral Tribunal as provided for under the Confidentiality Orders even for the event that a statutory obligation to disclose documents from this arbitration exists. Therefore, the Arbitral Tribunal endeavored to protect this Protected Evidence by sending a letter to the Inspectors on April 26, 2006 drawing their attention to the confidentiality of such evidence.

Exhibit A at ¶ 156 (footnotes omitted). The findings of the Zurich panel highlight the difficulty in maintaining effective control over confidential materials where a party, such as IPOC, operates

- 3 -

and litigates in multiple international fora. They provide ample justification for Judge Kay's rejection of IPOC's request for unfettered ability to ship protected materials overseas—and therefore outside this Court's jurisdiction—to virtually anyone it wants.

**B.    IPOC Obtained and Filed in a Foreign Court an Unredacted, Under-Seal Transcript of Proceedings in <u>KPMG FAS v. Diligence</u>.**

In addition to the Zurich arbitrators' findings that IPOC violated their confidentiality order by distributing protected materials to KPMG FAS Inspectors in Bermuda, Judge Kay was aware of another troubling incident involving IPOC when he issued his Memorandum Order – one which highlights the reasonableness of that Order.

IPOC has admitted attaching to a public filing in proceedings in the British Virgin Islands a copy of a January 25, 2006 unredacted, under-seal hearing transcript from <u>KPMG FAS v. Diligence</u>,[2] a document that, by its own text, should not have been released to the public. The details of how IPOC obtained the unredacted transcript are unknown.[3] The incident further underscores the need for a strong protective order in this case – an order that both restricts the class of persons who may receive protected materials, and also requires a party to obtain leave before shipping protected materials and information to non-lawyers overseas so that the Court can maintain practical control over their dissemination.

**1.    Background: The January 25, 2006 Hearing in <u>KPMG FAS v. Diligence</u>.**

On January 25, 2006, this Court held a motions hearing in <u>KPMG FAS v. Diligence</u>. During that hearing, counsel for the parties discussed documents that the Court had

---

[2]  IPOC was not a party in <u>KPMG v. Diligence</u>, and thus would not have (and should not have) been given access to sealed versions of documents in that case.

[3]  IPOC has, however, acknowledged that it received the transcript from "an employee of KPMG-London." <u>See</u> Plaintiff IPOC's Opp. to Defendants' Joint Motion for Entry of a Protective Order, at 3.

earlier placed under seal in a Memorandum Opinion and Order dated January 4, 2006 (the "Seal Order"). See Declaration of Paul C. Rauser ("Rauser Decl.") (Docket #69 at Exhibit A) at ¶ 2.

In light of the Seal Order, at the conclusion of the January 25th hearing, counsel for all parties in KPMG FAS v. Diligence requested on the record – and the Court ordered – that the hearing transcript not be filed in the public record until the parties had an opportunity to file a stipulation with the Court as to how the transcript should be redacted. See Rauser Decl. at ¶ 3. The parties submitted proposed redactions of materials covered by the Seal Order, and the Court subsequently filed in the public record a redacted version of the transcript at Docket # 63. See id. The original, unredacted document containing sealed material was not made publicly available. See id. at ¶¶ 3, 6.

### 2. IPOC Files the Unredacted, Sealed January 25, 2006 Hearing Transcript in a British Virgin Islands Case.

On or about June 14, 2006, counsel for Diligence learned that Barry S. Vitou, a London-based Winston & Strawn partner who represents IPOC, filed an affidavit on June 12, 2006 in connection with a costs application in the Eastern Caribbean Supreme Court, Court of Appeal (Claim No. 140 of 2003 and Civil Appeals No. BVI HAP 2003/20 & 2004/01). Mr. Vitou's publicly-available affidavit attached a complete, unredacted copy of the under-seal January 25, 2006 hearing transcript in KPMG FAS v. Diligence.

Diligence counsel subsequently contacted Bryan A. Wayne, the Official Court Reporter who prepared both the unredacted and redacted hearing transcripts, and Derek J.T. Adler, counsel for KPMG FAS. See Rauser Decl. at ¶ 5. Mr. Wayne confirmed he had not made the January 25 hearing transcript public, and had provided copies of the unredacted, under-seal transcript only to counsel for the parties: Hughes Hubbard & Reed (counsel for KPMG FAS and two of its principals) and Aegis Law Group LLP (counsel for Diligence). See id. at ¶ 7. Mr. Adler

in turn informed Diligence's counsel that neither KPMG FAS nor its counsel were responsible for disclosure of the transcript, and indicated that an initial inquiry by KPMG FAS had been unable to determine the source of the disclosed transcript. See id. at ¶ 8.

In its opposition papers, IPOC claimed that it obtained the unredacted transcript from an "employee of KPMG-London." Plaintiff IPOC's Opp. to Defendants' Joint Motion for Entry of a Protective Order (Docket #77) at 3. Yet IPOC refused to provide any other information about the incident. Defendants and this Court thus presently know very little concerning IPOC's disclosure of protected material from the Zurich arbitration, nor do we know the circumstances under which IPOC representatives obtained, and then filed in a foreign court, copies of materials placed under seal by this Court. These issues nevertheless have a direct bearing on the propriety of the form of protective order entered in this case. In light of these incidents, Judge Kay's entry of a protective order that requires a party to meet-and-confer with opposing counsel before shipping protected material overseas (to non-lawyers) was a proper exercise of judicial discretion.

## II. IPOC'S ARGUMENTS IN SUPPORT OF ITS CLAIM THAT THE PROTECTIVE ORDER IS "IRRATIONAL" ARE WITHOUT MERIT AND SHOULD BE REJECTED.

In urging this Court to reverse Judge Kay's decision and re-write the Protective Order entered by Judge Kay on February 8, 2007, IPOC asserts three principal arguments: (i) that Defendants "have not proved" that documents marked "Confidential" in the KPMG FAS v. Diligence action are in fact entitled to confidentiality protection under Rule 26(c); (ii) that the "restriction on access to documents for persons outside the Continental United States is irrational and unduly burdensome"; and (iii) that the meet-and-confer prerequisite to sending documents outside the United States would violate the attorney-client privilege and the attorney-work-product doctrine. Each of these arguments is a red herring; each should be rejected.

**A.** **All Parties Agreed That a Master Protective Order Was Necessary In This Case.**

As an initial matter, IPOC misleadingly suggests that Judge Kay erred in entering the Protective Order because Defendants failed to meet the standard for entry of a Protective Order under Federal Rule of Civil Procedure 26(c). Yet it is beyond dispute that as of the date of the Memorandum Order, no party in this case had sought to designate *any* document as confidential under Rule 26(c). Rather, as noted in IPOC's own pleadings before Judge Kay, *all parties* – including IPOC – agreed that a master protective order must be entered by the Court prior to commencement of document discovery. See IPOC's Mem. in Support of Mot. for Entry of Protective Order, at 2 ("The parties to this case agree that a protective order is necessary in this case"). Despite IPOC's efforts to convince the Court to the contrary, the issue before Judge Kay was not whether a protective order was warranted with respect to a particular document or documents under Federal Rule of Civil Procedure 26(c). Rather, the question before Judge Kay was what a master protective order should look like in this case. Although IPOC attempts to obscure the point, that issue (and no other) was the subject of Judge Kay's Memorandum Order and this Motion for Reconsideration.

IPOC's efforts to convince the Court that its motion is really about specific confidentially designations is not merely irrelevant to its Motion for Reconsideration, it is improper, for IPOC is now seeking to litigate for the *third time* before this Court confidentiality designations made in another case—specifically, the KPMG v. Diligence case[4]—an issue which IPOC has already raised with this Court, lost, and appealed to the U.S. Court of Appeals for the

---

[4] IPOC previously filed an "Emergency Motion for an Order Authorizing Disclosure of Information and Directing the Immediate Delivery of Subpoenaed Materials to IPOC (Docket #60) before Judge Kay in this case. In IPOC's motion papers in *this* action, IPOC admitted that, as part of its motion in *that* action, it sought "to unseal the record and obtain [the very same] 'confidential' documents." Emergency Motion at 5. IPOC acknowledges that "Magistrate Judge Kay has not yet issued a ruling on IPOC's Emergency Motion." Mem. at 5.

D.C. Circuit.[5] Judge Kay's Memorandum Order did not concern any confidentiality designation or designations, but the contours of a master protective order. IPOC should not be allowed to pretend otherwise.

### B.    Restricting IPOC's Ability to Ship Protected Materials to Non-Lawyers Outside the United States Is Eminently Appropriate and Reasonable.

IPOC next complains that the Protective Order entered by Judge Kay in this case is "irrational" insofar as it restricts "the ability of persons outside the United States to access [protected material], while no such restriction is imposed for persons located within the continental United States." Mem. at 9. Contrary to IPOC's suggestion that this distinction is arbitrary, this geographic distinction is sensible and appropriate for numerous reasons.

*First*, IPOC has a demonstrable history of obtaining protected information in one jurisdiction and using it without permission in another country. As detailed above, the Zurich arbitration panel recently found that IPOC violated the protective order entered in that arbitration by disseminating in Bermuda protected documents in violation of the arbitrators' protective order. As also detailed above, British Virgin Islands court documents establish that IPOC obtained (mysteriously) from KPMG, and then publicly filed in a foreign court, unredacted, under-seal transcripts in the KMPG v. Diligence case—a document that by its terms was under seal by Order of this Court. See Transcript, p. 36. Under these circumstances, the geographic restrictions placed upon the dissemination of protected materials by Judge Kay plainly are warranted.

---

[5]    On August 21, 2006, even though the KPMG FAS v. Diligence case had been settled and dismissed, IPOC filed a so-called "Motion to Intervene, For Access to Court Files, To Modify Protective Orders and to Alter Confidentiality Designations." This Court summarily denied that request. See KPMG FAS Action (Minute Order entered August 23, 2006). On September 21, 2006, IPOC appealed this Court's denial of that motion – an appeal which is currently scheduled for briefing this Spring. Yet in the guise of appealing Judge Kay's ruling on the parties cross-motions for a master protective order, IPOC now asks this Court, for the third time, to revisit the issue. It is, moreover, fundamental that "[t]he filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'" United States v. DeFries, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (*quoting* Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam)).

*Second*, as noted above, IPOC is in the process of being shut down by the Government of Bermuda for having engaged in widespread illegal conduct, including money laundering. It is obviously reasonable—indeed, prudent—to be chary that the personnel of such a company, all of whom IPOC admits are overseas, will adhere to a protective order entered by a foreign court. Quite sensibly, the geographic restrictions set forth in the Protective Order are designed to ensure that the documents and information produced in this case are used for proper purposes, and to guarantee that this Court maintains meaningful, effective control over protected materials.

*Third*, the Protective Order is not nearly as onerous as IPOC portrays. If IPOC's lawyers overseas need to access such materials, the Protective Order specifically allows them to do so, as IPOC acknowledges. See Mem. at 9. These geographic restrictions thus apply only to overseas individuals who are not counsel with firms of record. And should Winston & Strawn seek to ship protected material to IPOC personnel located overseas, the Protective Order merely requires that Winston & Strawn so inform Defendants and meet-and-confer if necessary. To the extent Defendants continue to object following a meet-and-confer, the burden is on the objecting party, not IPOC, to file a motion for a protective order from the Court.

**C.    The Protective Order Entered by Judge Kay Does Not Impinge Upon the Attorney-Client Privilege or the Attorney-Work-Product Doctrine.**

Lastly, IPOC conjures a parade of horribles that will ensue should it be required to meet-and-confer with Defendants before it ships to IPOC personnel overseas materials designated confidential by the Defendants pursuant to the Protective Order. IPOC alleges, with no support, that "[a]s part of the required meet-and-confer, Defendants will insist upon learning which documents will be disclosed to which specific persons." Mem. at 12.

First and foremost, IPOC's argument ignores the fact that IPOC can avoid entirely any such meet-and-confer by simply having IPOC personnel review protected materials *in the United States*. Presumably, in choosing to invoke this Court's jurisdiction by filing this action in this Court, IPOC anticipated that its personnel would have to travel to the United States in connection with this case. Indeed, having sued in this Court, IPOC will be required to have its personnel deposed in the District of Columbia, and IPOC of course will need to bring IPOC personnel here to testify at trial. Having chosen to sue in a United States court, it is hardly an undue burden to require IPOC personnel to review protected discovery in the United States.

Moreover, contrary to IPOC's mischaracterizations, nothing in the Protective Order would require IPOC to identify for Defendants which documents it seeks to show to certain specified IPOC personnel. Although, to be sure, the Protective Order contemplates that IPOC must show some need to send protected materials overseas to IPOC personnel, IPOC has vastly overstated the restrictions set forth in Paragraph 31. Nothing in such a process would impinge upon the attorney-client privilege or the attorney-work-product doctrine. To read the plain language of Judge Kay's Memorandum Order is to reject IPOC's parade of horribles.[6]

---

[6]     In attempting to persuade this Court to re-write the Protective Order to allow it to ship protected materials overseas with no restrictions, IPOC re-hashes failed arguments rejected by Judge Kay last year in an Order which IPOC never sought to bring before this Court on a Motion for Reconsideration. On November 23—the day before Thanksgiving—IPOC filed an "emergency" motion to de-designate the Hughes Hubbard documents. In support of that motion, IPOC claimed—as it now claims to this Court—that its "board members and its executives" urgently "need to be warned of Diligence's misconduct" alleged in this case. Emergency Mot. at 3. By order dated December 18, 2006, Judge Kay specifically held that IPOC had failed to show any exigent circumstances to warrant expedited consideration of its motion. See Memorandum Order denying in part and deferring in part, Emergency Motion by Plaintiff IPOC International Growth Fund Limited for Order Authorizing Disclosure of Information and Directing the Immediate Delivery of Subpoenaed Materials to IPOC (Docket #75). Moreover, it is telling that all of the documents attached to IPOC's motion papers are *documents almost two years old*. IPOC's attempt to concoct an "emergency" scenario that would justify it sending protected materials overseas is both fanciful and transparent.

## CONCLUSION

For the foregoing reasons, IPOC's Motion for Reconsideration should be summarily denied.

Respectfully submitted,


_____/s/ Edward B. MacMahon, Jr._
Edward B. MacMahon, Jr.
D.C. Bar No. 411165
P.O. Box 903
107 East Washington Street
Middleburg, VA 20118
T: 540-687-3902/F: 540-687-6366
ebmjr@verizon.net
*Attorney for Defendant Barbour*
*Griffith & Rogers, LLC*
AEGIS LAW GROUP LLP


By:      _____/s/ Paul C. Rauser_____
Paul C. Rauser (D.C. Bar No. 461722)
Oliver Garcia (D.C. Bar No. 456600)
Michael K. Ross (D.C. Bar No. 458573)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500/ F: 202-737-3330
prauser@aegislawgroup.com
*Attorneys for Defendant Diligence Inc.*


Dated: February 20, 2007

# **<u>EXHIBIT A</u>**

contained in the IP7-Documents in other proceedings[128], were also de-clared confidential.

### dd) Incidents of Alleged Confidentiality Violations

127. In the course of the BID-Phase, there were complaints by both Parties that the other Party had violated the confidentiality regimes applicable to confi-dential documents and the witness testimonies. These alleged violations do not need to be further elaborated in this Second Partial Award except as they are dealt with hereinafter[129].

### f) Hearing of Witnesses at Second Witness Hearing and later Witness Hearings

### aa) Witnesses Who Filed a Witness Statement and/or Testified in the BID-Phase

128. The witnesses who testified in the BID-Phase were heard at the Second Witness Hearing, the Seventh Hearing, the Eighth Hearing and the Ninth Hearing.

129. Overall Witnesses Nos. S1 to S35 testified in the BID-Phase, i.e:

(i) 15 factual witnesses for Claimant (Witnesses Nos. S9, S10 [= Wit-ness No. 4][130], S14, S15, S16, S18 [= Witness No. 1], S21, S22 [= Witness No. 3], S24 to S27, S34 and S38);

---

[128] See item 5 of the Twentieth Order and the last paragraph of the Arbitral Tribunal's telefaxes dated April 3 and 10, 2006.

[129] See e.g. para. 155 hereinafter referring to the disclosure of Protected Evidence by Claimant to the Inspectors in the BMA Investigation.

[130] This witness testified by videoconference at the place where the principal office of his firm is domiciled.

spondent's ML-Defence in this *Ad-Hoc* Arbitration[169]. Further, following the rendering of the Arbitral Tribunal's Partial Award and new evidence filed in the BVI Proceedings, CTM filed an application to suspend the proceedings in the Stockholm Arbitration on December 10, 2004 (C-620).

153.    According to the Arbitral Tribunal's information, the status of the Stockholm Arbitration is ongoing, with the exchange of briefs having been completed and an evidentiary hearing having taken place in February 2006, in which some of the same witnesses as in this *Ad-Hoc* Arbitration were to be heard.

dd)   **BMA Investigation**

154.    In 2004, a statutory investigation was ordered by the Bermuda Monetary Authority (the "BMA") into the affairs of IPOC and its Bermuda affiliated companies concerning suspicions of money laundering (the "BMA Investigation"), in which investigation two individuals of KPMG Bermuda were appointed as Inspectors under Section 32 of the Bermuda Companies Act 1981 (the "Inspectors").

155.    Little information is available on the status of this investigation except that the Inspectors and Claimant have complained of an alleged breach of confidentiality resulting in a leak to Alfa-Eco and/or Respondent of materials compiled by the Inspectors in the context of their investigation and Claimant informed that a lawsuit for damages filed by KPMG against Diligence LLC *"an intelligence gathering firm located in Washington D.C."* relating to this leak is pending in Washington[170].

156.    On the other hand, Claimant disregarded the Confidentiality Order by disclosing Protected Evidence to the Inspectors without requesting leave to do

---

[169]   See p. 16 lines 16 et seq. T5H, pp. 289/290 T8H and p. 2 of Claimant's submission of July 15, 2005.
[170]   See the Inspectors' counsel's letter to Respondent dated August 2, 2005 (C-878) and Claimant's telefaxes dated February 7 and 20, 2006, May 1 and 4, 2006 and Respondent's comments dated February 20, 2006.

so from the Arbitral Tribunal[171] as provided for under the Confidentiality Order even for the event that a statutory obligation to disclose documents from this arbitration exists[172]. Therefore, the Arbitral Tribunal endeavored to protect this Protected Evidence by sending a letter to the Inspectors on April 26, 2006 drawing their attention to the confidentiality of such evidence[173].

157.   Claimant's request dated May 1, 2006 for *"leave to submit significant evidence that has just surfaced in the lawsuit filed by KPMG against Diligence"* has been dismissed by the Arbitral Tribunal's telefax dated May 5, 2006 without prejudice to a renewed request in the event proceedings continue after this Second Partial Award has been served on the Parties. The reason for this decision was that (i) Claimant has not alleged that Respondent filed in the Zurich *Ad-Hoc* Arbitration illegally received documents and (ii) neither the Riversand Payment[174] nor the Onward Sales[175] will be analysed in detail in the Second Partial Award, so that the *"credibility of Respondent"*[176] is not at the centre of the issues to be decided in this Second Partial Award[177].

158.   The Arbitral Tribunal understands that no report has yet been issued in this investigation, which is therefore ongoing[178].

ee)   **The Russian Action**

159.   On pp. 2/3 of its submission dated May 3, 2006, Respondent informed that *"[o]n or around 30 March 2006, IPOC issued new civil proceedings against*

---

[171]   See Claimant's statements and the Chairman's remark at p. 286 lines 15 to 28 T8H and the Arbitral Tribunal's letter to the Inspectors dated April 26, 2006.
[172]   See also the Arbitral Tribunal's telefaxes dated February 12, 2006 an May 12, 2006.
[173]   In this context, see also the Arbitral Tribunal's telefax dated January 26, 2006, C-778, Claimant's comments dated February 7 and 20, 2006 and Respondent's comments dated February 20, 2006.
[174]   See paras. 562 et seq. hereinafter.
[175]   See paras. 14 hereinabove.
[176]   See p. 2 of Claimant's telefax dated May 1, 2006.
[177]   In this context, see paras. 656, 708, 711 and 715 hereinafter.
[178]   See p. 279 lines 27/28 T8H.