UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 1:06CV01109 (PLF) |
| DILIGENCE, LLC, et. al | ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR AN ORDER TO SHOW CAUSE WHY A STAY SHOULD NOT ISSUE PENDING RESOLUTION OF THE INVOLUNTARY WINDING-UP PETITION FILED AGAINST PLAINTIFF BY THE GOVERNMENT OF BERMUDA**

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH )
)
FUND LIMITED )        Civil Action No.061-1109 (PLF)
                Plaintiff )
)
v. )
)
DILIGENCE LLC, et al. )
)
                Defendants )
_____)

## DECLARATION OF STEPHEN NICHOLAS ATHERTON Q.C.

I, STEPHEN NICHOLAS ATHERTON, Barrister–at–Law and one of Her Majesty's Counsel, of 3-4 South Square, Gray's Inn, London, WC1R 5HP England do declare as follows:-

**INTRODUCTION**

1.      I was awarded an Honours Degree in Law (Upper Second Class) by the University of Lancaster in June 1987. I went on to study law at the University of Cambridge where I was awarded a Master of Law Degree (First Class) in June 1988. I was called to the Bar of England and Wales on 27 July 1989 and commenced practice as a Barrister-at-Law, upon completion of my pupillage, in October 1990 and have continued to do so ever since. I was appointed as Queen's Counsel on 16 October 2006. As a member of the Bar of England and Wales and one of Her Majesty's Counsel I am qualified to express opinions on matters of English law.

2.      I specialise in corporate insolvency law, restructuring and civil and commercial fraud. I have been involved in many of the major corporate insolvencies that have

1

occurred since I entered into practice. Attached to this Declaration as Exhibit A is a true and correct copy of my *Curriculum Vitae* which sets out my professional qualifications and experience in greater detail. I have not previously provided expert evidence as to English law for the purposes of proceedings outside England and Wales.

3.  Although I am not a member of the Bermudian Bar, because the law of Bermuda in relation to corporate insolvency is derived from English law I am (and would be so regarded in Bermuda as being) qualified to express views as to the nature and effect of the law of Bermuda in this particular area; just as I would be in relation to the laws of other parts of the Commonwealth. Indeed it is quite usual for members of the Bar of England and Wales (particularly Queen's Counsel) to be asked to give advice relating to the laws of Bermuda and the laws of other Commonwealth States. For example I was instructed in relation to the liquidation and litigation arising out of the liquidation of Mentor Insurance Company (in Liquidation), a relatively well known Bermuda insolvency. By way of further example, I have been instructed on a number of occasions to give advice in relation to the laws of Hong Kong, Brunei Darussalam, the Cayman Islands and the Isle of Man.

**MATERIALS CONSIDERED**

4.  I have been provided with the following documents:-

    a.  The Defendants' Motion for an order to show cause why a stay should not issue pending resolution of the involuntary winding-up petition filed against the Plaintiff by the Government of Bermuda (*the Defendants' Motion*), the Memorandum in Support of the Defendants' Motion (*the Defendants' Memorandum*) and a draft order dated 9 February 2007;

2

    b.    The Exhibits to the Defendants' Memorandum, in particular a copy of the Declaration of Mr D. Justin Williams executed on 8 February 2007 in support of the Defendants' Motion (***Mr Williams' First Declaration***);

    c.    The Amended Memorandum in Support of the Defendants' Motion dated 16 February 2007 (***the Amended Memorandum***);

    d.    The Exhibits to the Amended Memorandum, in particular a copy of the Second Declaration of Mr D. Justin Williams executed on 16 February 2007 in support of the Defendants' Motion (***Mr Williams' Second Declaration***).

5.    In preparing this Declaration, I have reviewed and considered the documents referred to above together with the relevant English and Bermudian statutory materials and the case authorities referred to further below.

## RELEVANT FACTUAL CONTEXT

6.    I understand that on 12 January 2007, the Registrar of Companies in the Supreme Court of Bermuda (at the direction of the Bermuda Minister of Finance) presented a petition for the winding up of IPOC (adopting the definition contained in the Defendants' Memorandum) and eight of its affiliates. The return date for the first hearing of this winding up petition is said to be 27 April 2007. As I understand the position there is no application before the Supreme Court of Bermuda for the appointment of a provisional liquidator prior to the making of any winding up order in relation to IPOC (or any of its affiliates)[1].

---

[1] Pursuant to Section 170(2) and (3) of the Companies Act 1981. The equivalent English law provisions are contained in Section 135 of the Insolvency Act 1986.

**A WINDING UP ORDER OR AN ORDER FOR THE APPOINTMENT OF A PROVISIONAL LIQUIDATOR ONLY STAYS ACTIONS AGAINST A COMPANY NOT ACTIONS BROUGHT BY A COMPANY**

7.  There is no statutory provision under the law of Bermuda (or indeed under English law) which causes actions or proceedings _by_ a company to be automatically stayed upon the making of a winding up order or upon the making of an order for the appointment of a provisional liquidator. Section 167(4) of the Companies Act 1981 provides that only actions or proceedings _against_ a company are stayed in such circumstances[2]:-

> "_When a winding up order has been made or a provisional liquidator has been appointed, no action or proceeding shall be proceeded with or commenced against the company without the leave of the Court and subject to such terms as the Court may impose._" (Emphasis added).

8.  In Mr Williams' First Declaration[3] he gives incorrect evidence that the effect of this provision is that:-

> "_...no action can be continued (or filed) by or against a company upon the appointment of a provisional liquidator..._" (Emphasis added).

9.  Notwithstanding that in Mr Williams' Second Declaration he would appear to resile from this statement to the extent of the inclusion of the word "_by_" in the passage quoted above[4], I have been specifically requested to comment on whether or not this statement (as originally made by him) represents a fair and accurate description of the law of Bermuda. It does not; it represents a serious misdescription of the relevant law, which fundamentally undermines the statements as to the effect of the winding up petition contained in the Defendants' Motion and the Defendants' Memorandum. Moreover, this serious misdescription of the relevant law permeates the Defendants' Memorandum and renders of no force the submissions which are predicated upon it.

---

[2] The equivalent provision in England is Section 130(2) of the Insolvency Act 1986.
[3] See paragraph 3 of Mr Williams' First Declaration.
[4] _Ibid._

4

10.     There is no statutory basis or legal principal, which provides that upon the making of a winding up order a company is barred from commencing or continuing proceedings.  From the clear wording of Section 167(4) of the Companies Act 1981 it can be seen that the statement contained in paragraph 3 of Mr Williams' First Declaration cannot be correct.  What is more, there is no judicial precedent (whether Bermudian or English) which has interpreted Section 167(4) of the Companies Act 1981 (or its English equivalent) in the way the section was apparently interpreted in Mr Williams' First Declaration, and I note that Mr Williams does not refer to any.

11.     As is clear from the wording of Section 167(4) of the Companies Act 1981, the statutory stay provided for by the section comes into effect automatically, but only on the making of a winding up order or the appointment of a provisional liquidator and only in respect of actions or proceedings against the company[5]; actions or proceedings by the company against other parties remain wholly unaffected.

12.     The rationale for imposing a statutory stay on proceedings against a company once a winding up order has been made was explained by the Court of Appeal of England and Wales in *Re David Lloyd & Co*[6]:-

> *"These sections in the Companies Act [ie. Section 87 of the Companies Act 1862], and the corresponding legislation with regard to bankrupts, enabling the Court to interfere with actions, were intended, not for the purpose of harassing, or impeding, or injuring third persons, but for the purpose of preserving the limited assets of the company or bankrupt in the best way for distribution among all the persons who have claims upon them. There being only a small fund or a limited fund to be divided among a great number of persons, it would be monstrous that one or more of them should be harassing the company with actions and incurring costs*

---

[5] Section 167(4) of the Companies Act 1981 (as in the case of Section 130(2) of the Insolvency Act 1986 in England) does not have extraterritorial effect and therefore does not serve to automatically stay foreign proceedings against a company in winding up, see: *Re Vocalian (Foreign) Limited* [1932] 2 Ch 196; *Re Oriental Inland Steam Company, ex parte Scinde Railway Company* (1874) 9 Ch App 557 (Court of Appeal of England and Wales) and *Hughes v. Hannover Ruckversicherungs-Aktiengesellschaft* [1997] 1 BCLC 497.
[6] (1877) 6 Ch D 339, per James LJ at 344.

*which would increase the claims against the company and diminish the assets which ought to be divided among all the creditors."*

13. It may also be relevant to note that provision is made under Section 165 of the Companies Act 1981 allowing for an application to be made for the imposition of a stay during the period between the presentation of a winding up petition and the making of a winding up order. The section only provides for an application to be made for a stay of actions against a company and not for a stay of actions by a company. Section 165 of the Companies Act 1981 (not referred to in Mr Williams' First Declaration or Mr Williams' Second Declaration) provides that[7]:-

> *"(1)    At any time after the presentation of a winding-up petition, and before a winding-up order has been made, the company or any creditor or contributory may, where an action or proceeding against the company is pending, apply to the Court for a stay of proceedings.*
>
> *(2)    On an application being made under subsection (1) the Court may stay the proceedings accordingly on such terms as it thinks fit."*

(Emphasis added).

Therefore the Court, on the application of the company, a creditor or a contributory, may - in the exercise of its discretion - order a stay in respect of any action or proceedings against a company where a winding up petition has been presented against that company[8]. As in the case of the statutory stay under Section 167(4) of the Companies Act 1981 any stay imposed by the Court can only relate to actions or proceedings against the Company and cannot effect actions or proceedings pending by the Company.

14. The policy behind Section 165 of the Companies Act 1981 (and its English equivalent) is identical to that which underlies Section 167(4) (and its English equivalent) as is borne out by the following statement made by Bankes LJ, also in

---

[7] The equivalent English statutory provision is contained in Section 126 of the Insolvency Act 1986.
[8] For the avoidance of doubt such an application would be issued before the Court that had carriage of the winding up petition.

the Court of Appeal of England and Wales, in *Bowkett v. Fullers United Electric Works Limited* [9]:-

> "The general policy of the Court in exercising this jurisdiction, when a petition has been presented which may result in a winding-up order or a scheme, is to secure that no creditor shall thenceforward gain priority over others of his class, and when an application is made to stay proceedings under s. 140 very exceptional circumstances must exist to justify the Court in refusing to accede to the application, because if the plaintiff's action is not stayed he will get payment in full while if his action is stayed he will take his place properly among other creditors of his class. I cannot see any exceptional circumstances in the present case. To allow the plaintiff to proceed would be in effect, during the interval between the presentation of a petition and the working out of a scheme of arrangement, to allow certain creditors to help themselves out of the assets of the company in priority to some others in a less fortunate position. No doubt the Court has a discretion whether it will stay a plaintiff's action, but it is against the policy of the Court to exercise that discretion by allowing the plaintiff to proceed except in very special circumstances."

15.    Clearly therefore, the policy behind each of the relevant sections is to preserve the assets of a company's estate for the benefit of those interested.  As a matter of policy it would make little sense for a stay to be imposed on actions or proceedings by a company (whether imposed automatically by statute or in the exercise of a judicial discretion) since this would serve to hinder the ability of any liquidator to fulfil one of his or her principal functions namely to get in the assets of the company which might include (for example) existing proceedings by the company to recover its property or obtain a money judgment and would hinder the exercise of the liquidator's discretion as to the manner in which he or she chose to administer the estate by (for example) choosing whether or not to commence or continue proceedings by the company.  As observed by Professor Andrew Keay, commenting on the effect of a winding up on pending proceedings commenced by a company, which observation serves to expose the clear

---

[9] [1923] 1 KB 160, at 161 in relation to Section 140 of the Companies (Consolidation) Act 1908, the equivalent at the time in England to what is Section 165 of the Companies Act 1981 in Bermuda.

difference between the effect of a winding up on proceedings <u>against</u> a company in comparison with proceedings <u>by</u> a company[10]:-

> "*If the company has commenced proceedings prior to the beginning of the winding up the liquidator will seek advice concerning the likely success of such proceedings and he or she will have to make a decision as to whether it is worthwhile carrying on with any actions. This decision is often influenced substantially by the state of the company's assets and funds.*"

## THE GENERAL AUTHORITY OF A COMPANY'S DIRECTORS IS NOT TERMINATED RETROACTIVELY UPON THE MAKING OF A WINDING UP ORDER OR THE APPOINTMENT OF A PROVISIONAL LIQUIDATOR

16.    In the Amended Memorandum a second reason is put forward as to why a stay of the proceedings might be appropriate, it is submitted by the Defendants that:-

> "*In the event that the Bermuda Supreme Court orders the winding up of IPOC and appoints a liquidator or provisional liquidator – and the Winding-up petition is set for hearing on April 27, 2007 – that order will become retroactive to January 12, 2007 and "the authority of the directors and officers of the IPOC companies will have ceased on 12 January 2007".*"

17.    The submission set out above is premised on paragraph 4 of Mr Williams' Second Declaration, which is quoted in part in the text of the submission. Paragraph 4 of Mr Williams' Second Declaration is set out more fully below and states:-

> "*...on the making of an order appointing a liquidator or provisional liquidator, the order takes effect from the date of the petition, in this case 12 January 2007. The effect of this "reversion back" date is that once the liquidator or provisional liquidator is appointed, that person (or those people) will be appointed with effect from 12 January 2007 and the authority of the directors and officers of the IPOC companies will have ceased on 12 January 2007 (though they remain directors and/or officers of those companies). Consequently, it may well be that the directors and officers of the IPOC companies will have been stripped of their power to*

---

[10] See "*McPherson's Law of Company Liquidation*" (2001) at paragraph 7.63. See also the observations of Hirst J (in the High Court of England and Wales) in *British & Commonwealth Holdings Plc v. Quadrex Holdings Inc*, "*The Times*", 8 December 1988 (Lexis transcript).

*make decisions on behalf of the IPOC companies with effect from 12 January 2007 and that any directions they purport to give on behalf of those companies now will afterward prove to have been without authority."*

18. For the reasons set out below, this statement contained in Mr Williams' Second Declaration (and upon which the submissions contained in the Amended Memorandum are predicated) does not represent a fair or accurate description of the relevant aspect of the law of Bermuda which I have been asked to consider. Nor does it represent an accurate reflection of the clear wording of the relevant provision of the Companies Act 1981, which Mr Williams has neglected to refer to expressly or reproduce in the body of his Second Declaration.

19. Insofar as material to the issue under consideration, Section 167 of the Companies Act 1981 is the relevant statutory provision and is in the following terms[11]:-

> *"(1)    Where, before the presentation of a petition for the winding up of a company by the Court, a resolution has been passed by the company for voluntary winding up, the winding up of the company shall be <u>deemed</u> to have commenced at the time of the passing of the resolution...*
>
> *(2)    In any other case, the winding up of a company by the Court shall be <u>deemed</u> to commence at the time of the presentation of the petition for the winding up."* (Emphasis added).

20. A number of preliminary observations can be made in relation to the above provision:-

> a.    The relevant section does not state what consequences are to follow from its terms; these consequences are to be gathered from the other provisions of the Companies Act 1981[12], including (for example) those referred to in sub-paragraph f. below.  The policy that underlies the operation of the

---

[11] The equivalent provision in England is contained in Section 129 of the Insolvency Act 1986.
[12] *Re Oriental Bank Corporation, ex parte Guillemin* (1884) 28 Ch D 634 (High Court of England and Wales), per Chitty J at 638. This *dictum* was expressed in relation to Section 84 of the Companies Act 1882, the then equivalent to what in Bermuda is Section 167 of the Companies Act 1981.

section in conjunction with other provisions of the Companies Act 1981 (such as those referred to in sub-paragraph f. below) is to preserve the assets of the company for the benefit of those interested - in the event that a winding up order is made - during the period between the presentation of the winding up petition and the making of a winding up order.

b.   As is clear from sub-section (1) a company which is already subject to a voluntary liquidation may nevertheless be compulsorily wound up by the Court based upon a winding up petition presented to the Court. In which case the winding up will be <u>deemed</u> to have commenced at the time that the resolution for voluntary liquidation was passed;

c.   In any other case (i.e. compulsory winding up) the winding up will be <u>deemed</u> to have commenced at the time of the presentation of the petition for winding up;

d.   The effect of Section 167(1) and (2) of the Companies Act 1981 is such that the winding up does not actually begin from the time of presentation of the winding up petition, it is only <u>deemed</u> to have commenced at that time;

e.   The commencement of the winding up is only deemed to have occurred at the date of the presentation of the winding up petition once a winding up order has been made. A winding up is not deemed to commence on the appointment of a provisional liquidator, nor is it deemed to have commenced simply because a winding up petition has been presented[13] - there is no winding up until such time as a winding up order is made;

---

[13] See *Equitas Limited v. Jacob* [2005] BPIR 1311 (High Court of England and Wales), per Lindsay J at 1314.

f.   The time of the deemed commencement of the winding up is important in a number of areas in the process of the winding up of a company, for example: it crystallises the status and liability of contributories in the liquidation (see Section 158 of the Companies Act 1981); it terminates the power of the company to dispose of its property or shares (see Section 166(1) of the Companies Act 1981); it dictates the time by which creditors may effectively obtain attachment or levy execution against the company and its assets and the extent to which they may retain the proceeds of such attachment or execution (Sections 166(2) and 241 of the Companies Act 1981); it dictates the relevant time for determining whether or not a transaction may constitute a fraudulent preference (Section 237 of the Companies Act 1981) and the relevant time for determining the validity of any floating charges that might have been granted by the company (Section 239 of the Companies Act 1981).

21.   Turning to the purported statement of the law of Bermuda as regards the effect of the commencement of a winding up on the powers of the directors of a company as contained in Mr Williams' Second Declaration, a number of specific comments may be made.

22.   First, Mr Williams expresses the view that on the making of an order appointing a liquidator or a provisional liquidator the winding up will *"take effect"* from the date of the presentation of the winding up petition.  This represents a severe mischaracterisation of the terms and effect of the relevant section as a matter of the law of Bermuda.  As can be seen from the wording of Section 167(1) and (2) of the Companies Act 1981 (set out in paragraph 19 above) and the observation made in paragraph 20d. above, the winding up does not *"take effect"* at the time of the presentation of the winding up petition; the winding up is merely *"deemed to commence"* at the time when the winding up petition is presented.

11

23.    Secondly, contrary to the statement of law made by Mr Williams, the appointment of a provisional liquidator prior to the making of a winding up order is wholly irrelevant to the time at which the winding up is deemed to have commenced; there is no winding up until a winding up order is made and only the making of a winding up order can trigger the deemed commencement of the winding up as from the time of presentation of the winding up petition for the purposes of the Companies Act 1981.

24.    Thirdly, Mr Williams asserts in relation to the directors of a company that the effect of Section 167(1) and (2) of the Companies Act 1981 is that, "*it may well be that the directors and officers of IPOC companies will have been stripped of their power to make decisions...with effect from 12 January 2007 [i.e. the date on which the winding up petition was presented] and that any directions they purport to give on behalf of those companies bow will afterward prove to have been without authority.*" This statement misunderstands and misrepresents the nature and effect of Section 167(1) and (2) of the Companies Act 1981 and the effect of a winding up order and the deemed commencement of a winding up on the powers of company directors. It is notable that Mr Williams puts his view of the law of Bermuda in this respect no higher than that the deemed commencement of a winding up "*may well*" have the effect on the authority of the directors for which he contends. Mr Williams refers to no other provision in the Companies Act 1981 as supporting his assertion; there is no such provision. Nor does Mr Williams refer to any case law in support of his contention. There is, however, relevant case law which shows the statement of law proffered by Mr Williams to be plainly incorrect.

25.    *Coutts & Co v. Stock* (in the Chancery Division of the High Court of England and Wales)[14], which although concerned with the equivalent provision to Section 166(1) of the Companies Act 1981[15], serves to illustrate the nature and effect of

---

[14] [2000] 1 WLR 906.
[15] I.e. Section 127(1) of the Insolvency Act 1986.

the deemed commencement of a winding up i.e. that it does not have the retroactive affect on the general authority of directors asserted by Mr Williams (which assertion is relied upon by the Defendants). The case also serves to illustrate how the relevant section manifests its effect through other sections of the relevant statute. As referred to in paragraph 20f. above, Section 166(1) of the Companies Act 1981 provides that any disposition of the property of a company made after the deemed commencement of the winding up (i.e. by virtue of Section 167 of the Companies Act 1981, once a winding up order has been made, the time at which the winding up petition was presented) shall be void unless otherwise ordered by the Court. In this context Lightman J stated (insofar as material)[16]:-

> "*The following are the principles which would be expected to operate in a case where s 127 applies [i.e. the equivalent in England of Section 166(1) of the Companies Act 1981]. (1) The invalidation of dispositions of a company's assets after the date of presentation of a winding-up petition is part of the statutory scheme designed to prevent the directors of a company, when liquidation is imminent, from disposing of the company's assets to the prejudice of its creditors and to preserve those assets for the benefit of the general body of creditors. It does not accordingly bite when the disposition can have no impact on the creditors, eg in case of dispositions by receivers appointed under charges of the company's property or by the company where it holds legal title to property as bare trustee or subject to a specifically enforceable obligation to convey the property to a third party. (2) The retrospective invalidation effected by s 127 does not change what happened between the date of the petition and the date of the winding-up order: it merely denudes any disposition of the company's property during that period of legal effect. (3) The invalidation is limited to dispositions of property: (a) the section does not invalidate a company's assumption of liabilities. The section in no way precludes a company incurring or continuing to incur liabilities (eg for rates, electricity or the services of employees) nor does it invalidate liabilities so incurred. An increase in a company's overdraft over the period between presentation of the petition and the making of the order for winding up is accordingly outside the ambit of s 127; (b) nor does s 127 have any impact on the company's use, consumption or exhaustion of its assets. Thus though an agreed overdraft limit has been held to be 'property' which can be the subject of theft by presentation of forged cheques (see R v Kohn (1979) 69 Cr App R 395), it must be clear that (notwithstanding the contrary view expressed by Professor Goode in Principles of Corporate*

---
[16] [2000] 1 WLR 906, at 909 to 910.

> *Insolvency Law (2nd edn, 1997) p 432) the use and indeed partial or total exhaustion of that overdraft limit by the company cannot constitute a disposition within s 127. (4) <u>Presentation of the winding-up petition has no impact on the powers of the directors of the company, the authority of the company's agents or the powers of disposition of the company. In particular the presentation does not invalidate the mandate of the company's bank to honour the cheques of the company. The subsequent winding-up order accordingly does not invalidate the loan made by the bank to the company constituted by honouring cheques drawn on the company's overdrawn account....</u>*" (Emphasis added).

26. Having misstated the relevant law, Mr Williams then makes the following assertion based upon that misstatement of the law[17]:-

> "*In the circumstances it is possible and not at all unusual in Bermuda (or England) to apply for an order staying proceedings by the company in question on the basis that the people purporting to direct the company may not have authority to do so.*"

Given that the premise upon which this assertion is based is erroneous, the assertion lacks any foundation in law. To the extent that the Courts of either Bermuda or England were to accede to such an application (and I am not aware that they ever have) they would be wrong to do so as a matter of both law and procedure. It is to be noted that Mr Williams cites no examples of such applications or orders ever having been made. To the extent that there are concerns that during the period between the date of the presentation of a winding up petition against a company and the making of a winding up order pursuant to that petition the directors of the company in question may mishandle the affairs and assets of the company the appropriate course is for the petitioner to apply to the Court for the appointment of a provisional liquidator to manage the affairs of the company pending determination of the winding up petition.

---

[17] See paragraph 5 of Mr Williams' Second Declaration.

14

## THE DEFENDANTS' CONFUSE THE NATURE AND EFFECT OF DISSOLUTION WITH THE NATURE AND EFFECT OF WINDING UP

27.   The Defendants confuse the concepts of dissolution of a company with the winding up of a company. The Defendants' Motion states that:-

> "...pending resolution of the involuntary dissolution petition recently filed against IPOC by the Government of Bermuda – a petition which if granted, would result in cessation of IPOC as a corporate entity and would require under Bermuda law that IPOC immediately discontinue proceeding with any and all litigation matters, including this action."

28.   This description of the winding up petition is carried through into the Defendants' Memorandum where the winding up petition is again described as being "*a petition for involuntary dissolution*". The petition that has been presented against IPOC is no such thing. It is a petition for the winding up of IPOC. Furthermore this description displays a fundamental misunderstanding as to the nature of the proceedings that have been instituted against IPOC and the effect of any order that might be made. This misdescription appears to be an error on the part of author of the Defendants' Motion and the Defendants' Memorandum as neither of Mr Williams' First Declaration nor Mr Williams' Second Declaration address the nature and effect of the dissolution of a company as a matter of the law of Bermuda or contrasts its nature and effect with the winding up of a company.

29.   Dissolution and winding up are two very different and very distinct concepts. As a matter of both English law and the law of Bermuda the presentation of a winding up petition has no effect on the corporate personality of the company[18]:-

> "*It appears to me that both in a compulsory and voluntary winding up the personality of the company continues until it is dissolved. A different person is managing the affairs of the company; in the case of a compulsory winding up he is appointed by the Court; in the case of a*

---

[18] *Reigate v. Union Manufacturing Company Limited* [1918] 1 KB 592 (Court of Appeal of England and Wales), per Scrutton LJ at 606.

*voluntary winding up he is appointed by the company. The company, however, remains in existence until it is dissolved."*

A company's corporate state obtains until such time as the company is dissolved; it is upon dissolution that the legal personality of the company is extinguished.

30.    In the present context (i.e. the winding up of companies) dissolution will usually only occur at the very end of the winding up process, when the liquidator has completed the administration of the company's estate. As provided for by Section 200(1) of the Companies Act 1981[19]:-

> *"When the affairs of the a company have been completely wound up, the Court, if the liquidator makes an application in that behalf, shall make an order that the company be dissolved from the date of the order, and the company shall be dissolved accordingly."*

Dissolution may therefore occur months or even many years after the company has been made the subject of a winding up order. The duration of the winding up will depend upon the nature and complexity of the company's affairs with which the liquidator has to deal. For example in relation to Mentor Insurance Limited (in Liquidation), the company went into liquidation in 1985 and the liquidation continued for nearly 20 years during which time the liquidators were engaged in long running litigation against the company's auditors and its United States parent company, which litigation was eventually compromised in 1992 / 1993[20].

31.    It is also important to note that (as apparent from the terms of Section 200(1) of the Companies Act 1981 referred to above) the dissolution of a company is not

---

[19] The statutory provisions relevant to dissolution of companies in winding up are contained in Sections 199A to 200 of the Companies Act 1981. See Sections 201 to 205 of the Insolvency Act 1986 form the equivalent English provisions. Section 199A of the Companies Act 1981 allows for the early dissolution of a company by the Official Receiver (once an order for winding up has been made and he has been appointed as liquidator) in circumstances where the realisable assets of the company are insufficient to discharge the expenses of the winding up and where the affairs of the company do not require any further investigation. The equivalent provision in England is Section 202 of the Insolvency Act 1986.
[20] Numerous other examples could be referred to including the long-running liquidations of (and attendant litigation involving) Bank of Credit and Commerce International and the various companies controlled by Robert Maxwell in relation to both of which I had a heavy involvement.

commenced by the presentation of a petition, but by the making of an application to the Court by the company's liquidator.

32.    Finally, in this regard it is also worth pointing out that the simple presentation of a winding up petition does not of itself establish that there will be a winding up of the company concerned[21]. This is equally the case where the petitioner is a government department and the petition has been presented on public interest grounds[22]. Winding up petitions (whether a creditor's winding up petition or one presented on public interest grounds) may be, and often are, contested. Even if the presentation of a winding up petition results in the making of a winding up order, there is often a considerable delay between the presentation of the petition and the making of a winding up order[23].

**SUMMARY**

33.    On the basis of my analysis of the Defendants' Motion, the Defendants' Memorandum, the Amended Memorandum, Mr Williams' First Declaration and Mr Williams' Second Declaration and the relevant statutes and case law, the correct position as a matter of the law of Bermuda as to: (i) the deemed commencement of a winding up; (ii) its affect on the general authority of the board of directors; and (iii) its potential to constitute a "springboard" for an application to stay proceedings by a company against which a winding up petition has been presented is as follows:-

a.    The winding up petition presented in respect of IPOC and its affiliates has no effect on proceedings commenced by IPOC and its affiliates;

---

[21] See for example the powers of the Court when hearing a winding up petition: Section 164(1) of the Companies Act 1981 (the equivalent provision in England is Section 125 of the Insolvency Act 1986).
[22] *Re Walter L Jacob and Company Limited* [1989] BCLC 345 (Court of Appeal of England and Wales), per Nicholls LJ at 353.
[23] This may be so even though the winding up petition has been presented on public interest grounds as was the case in relation to the liquidation of Bank of Credit and Commerce International in England.

b.   Proceedings <u>against</u> IPOC and its affiliates that are pending or are commenced between the date upon which the winding up petition was presented and the date on which any winding up order might be made could be stayed by order of the Court on application by the company, one of its creditors, or by one of its contributories;

c.   In the event that a winding up order is made or a provisional liquidator appointed all (domestic) actions or proceedings <u>against</u> IPOC and its affiliates will become subject to an automatic statutory stay;

d.   All actions or proceedings commenced <u>by</u> IPOC and its affiliates will remain unaffected and will continue as normal notwithstanding the appointment of a provisional liquidator or the making of a winding up order (subject to any decision a provisional liquidator / liquidator may take to the contrary in the exercise of their discretion as to how to manage the company's affairs whilst they are in office);

e.   Pursuant to Section 167 of the Companies Act 1981, the winding up of a company does not commence at the time when a winding up petition is presented; it is only deemed to commence once a winding up order has been made.  The winding up does not *"take effect"* on the presentation of the winding up petition (even if a winding order is actually made);

f.   Section 167 of the Companies Act 1981 does not state what consequences are to follow from the deemed commencement of the winding up, these consequences are to be gathered from the other provisions of the Companies Act 1981, including (for example) those provisions referred to in paragraph 20f. above;

g.   The deemed commencement of the winding up has no relevance to the termination of the general authority of a company's directors (except to

18

the extent provided for by statute e.g. as regards the validity of property dispositions after the deemed commencement of the winding up);

h.    Section 167 of the Companies Act 1981 does not have the effect of causing the authority of a company's directors to be removed retroactively from the date of the deemed commencement of the winding up.  As such (and subject to the statement of law expressed above) any directions given by the directors of a company will not afterward prove to have been without authority[24];

i.    It would be contrary to law for any Bermudian or English Court to grant a stay of proceedings on the basis suggested by Mr Williams in his Second Declaration.  If there are concerns as to the management of the company by its directors pending the determination of a winding up petition the appropriate course is for the petitioner to apply for the appointment of a provisional liquidator.

STEPHEN NICHOLAS ATHERTON Q.C.

---

[24] *Cf* paragraph 4 of Mr Williams' Second Declaration.

19

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that I am Stephen Nicholas Atherton Q.C. and that the facts contained in the foregoing are true and correct to the best of my knowledge and belief

Executed this 1st day of March 2007.

STEPHEN NICHOLAS ATHERTON Q.C.

# Stephen Atherton QC

**Contact details:**

    3/4 South Square, Gray's Inn, London WC1R 5HP.
    Telephone +44 (0)20 7696 9900.  Fax +44 (0)20 7696 9911.  LDE 338 (Chancery Lane).
    Email clerks@southsquare.com.  Web www.southsquare.com.

**Education:**

    LLB (Hons) (Lancaster), LLM (Cantab) (First Class).

**Scholarships and awards:**

    Magdalene College Cambridge: Bundy Law Scholar; Norah Dias Prize for Law.
    Middle Temple: Harmsworth Entrance Exhibitioner; Astbury Scholar.

**Professional career:**

| | |
|---|---|
| October 2006 | Appointed Queen's Counsel |
| July 1989 | Called to the Bar (Middle Temple); |
| July - Oct 1989 | The Fraud Investigation Group, Crown Prosecution Service. |

**Areas of practice:**

    Civil aspects of commercial fraud, corporate insolvency and restructuring, personal insolvency, company law, banking and general commercial domestic and international litigation.

    Rights of audience in Brunei Darussalam for specific cases and admitted to the Bar of the Isle of Man for specific cases.

**Reported and major cases:**

    Re Oval 1742 Limited (in Creditors' Voluntary Liquidation) [2006] All ER (D) 57 (Nov)
    "Taking possession" of property subject to a floating charge and the proper construction of Section 196 of the Companies Act 1985.

    State of Brunei Darussalam v. Prince Jefri Bolkiah [2005] All ER (D) 354 (Jun)
    Basis upon which a committal application may be amended.

    State of Brunei Darussalam v. Prince Jefri Bolkiah [2005] All ER (D) 250 (Mar)
    Enforcement of order for disclosure made pursuant to Section 25 of the Civil Jurisdiction and Judgments Act 1982.

    Re Mytravel Group Plc [2005] 2 BCLC 123 (CA)
    Guidance given as to the proper application of the Practice Statement applicable to schemes of arrangement under Section 425 of the Companies Act 1985.

    Re Mytravel Group Plc [2005] 1 WLR 2365
    The nature of a "reconstruction" under Section 427 of the Companies Act 1985.

    Re Brightview Limited [2004] BCC 542

# Stephen Atherton QC

Interests of nominee and beneficial shareholders under Section 459 of the Companies Act 1985 and the inter-action between the remedies available under that section and the principle of "reflective loss".

Re Railtrack plc (in railway administration) [2003] All ER (D) 300
Approval of the remuneration of special railway administrators by the Court.

Winsor (as Rail Regulator) v. Bloom and Ors [2002] 1 WLR 3002 (CA)
Application of Section 11 of the Insolvency Act 1986 (as modified by the Railways Act 1993) to the exercise of specific powers of the Rail Regulator.

Winsor (as Rail Regulator) v. Bloom and Ors (unreported) Morritt V-C, 5 May 2002
Jurisdiction of the Court to deal with questions of a hypothetical nature.

Humberclyde Finance Group Limited v. Hicks (unreported) Neuberger J 14 November 2001
Application of the principles laid down in Johnson v. Gore-Wood & Co [2001] 2 WLR 72 (HL).

Re Continental Assurance Company of London Plc [2001] BPIR 733
Wrongful trading and misfeasance in relation to an insurance company.

State of Brunei Darrussalam v. Bolkiah The Times, 5 September 2000
Nature of the Court's approach when exercising its jurisdiction under Section 25 of the Civil Jurisdiction and Judgment Act 1982.

Holder v. Supperstone [2000] 1 All ER 473
Status of a charging order as an equitable charge and the ability of a person in whose favour a charging order has been granted to add the costs of enforcing such an order to the value of his security.

Re Brabon [2001] 1 BCLC 11
What constitutes a transaction by a bankrupt for the purposes of Section 339 (transactions at an undervalue) and Section 423 (transactions defrauding creditors) of the Insolvency Act 1986.

Lee v. Lee [2000] 1 FLR 92 (CA)
Ability of the Court to vest the surplus of the proceeds of sale of a lease in a trustee in bankruptcy, notwithstanding that the trustee in bankruptcy had previously disclaimed his interest in that lease.

Re: Richbell Strategic Holdings Plc [2000] 2 BCLC 794
Nature of the Court's powers to give directions as to the conduct of a public examination prior to that examination taking place.

Re Continental Assurance Company of London Plc (In Liquidation) (No. 3) [1999] 1 BCLC 751
Valuation of insurance policies in the insolvent voluntary liquidation of an insurance company.

# Stephen Atherton QC

Re Hinckley Island Hotel Limited [1999] 1 WLR 129 (CA)
Procedure to be adopted on the hearing of an application for directions by a liquidator where that application is disputed by a creditor which is also a party to litigation brought by the company in liquidation.

Trustee of the Property of Vickery v. Modern Security Alarms Limited [1998] 2 BCLC 428 (CA)
Circumstances in which a trustee in bankruptcy will be made personally liable for the costs of proceedings in existence prior to the bankruptcy which are subsequently adopted by him, although he was not formerly joined as a party to the proceedings.

Facia Footwear Limited (In Administration) v. Hinchliffe [1998] 1 BCLC 218
Duties owed by the directors of a company when a company is insolvent or of doubtful solvency.

Re Continental Assurance Company of London Plc (In Liquidation) (No. 2) [1998] 1 BCLC 583
Procedure to be adopted in making claims against directors under the Insolvency Act 1986.

Green v. Satsangi [1998] BPIR 55
Responsibility for discharging the burden of income tax on money received by a trustee in bankruptcy and the application of the rule in Ex parte James.

Hardy v. Pallen [1997] BCC 815
Whether a loan made to a bankrupt can constitute after acquired property of a bankrupt.

MGN Pension Trustees Limited v. Bank of America National Trust and Savings Association (Serious Fraud Office Intervening) [1995] 2 All ER 355
Principles to be applied in making an Order under Section 4(2) of the Contempt of Court Act 1981.

Re SN Group plc [1993] 1 BCLC 319
Respective jurisdictions of a Judge and a Registrar of the Companies Court.

Re William Makin & Sons Limited [1993] 1 BCLC 319
Ability of a liquidator of a company to exercise a power to distribute a surplus in the company's pension scheme.

MGN Pension Trustees Limited v. Invesco Asset Management Ltd and Others (unreported)
Principles to be applied upon a Self Regulatory Organisation asserting public interest immunity in relation to documents in its possession in defence of a subpoena seeking production of such documents.

"Eurotunnel"
Instructed on behalf of bondholders in relation to the group's restructuring.

The State of Brunei Darussalam v. His Royal Highness Prince Jefri Bolkiah
Instructed as counsel for the State of Brunei Darussalam and the Brunei Investment Agency in relation to litigation in Brunei and England for the recovery of assets.

# Stephen Atherton QC

"CV Starr v. AIG"
Instructed by the CV Starr group of companies and Maurice ("Hank") Greenberg in multi-jurisdictional litigation against AIG.

Jarvis Plc
Instructed on behalf of the group's major creditors in relation to the group's restructuring.

MG Rover
Instructed on behalf of the administrators of the company.

Courts Plc
Instructed by the company's administrators.

My Travel Plc
Instructed on behalf of the company's bondholders.

British Energy
Instructed by the major creditors of the company in relation to the group's restructuring.

Leeds United AFC
Instructed by the financers of proposed rescue bid.

Bradford City FC
Instructed by one of the club's major "football creditors".

Meridien Hotels
Instructed by the companies in relation to the group's restructuring.

Claims Direct Plc
Instructed by the Administrative Receivers.

Regus Plc
Instructed by the company in relation to the company's restructuring.

TXU Europe
Instructed on behalf of major creditors of the TXU group.

Tiny Computers
Instructed on behalf of the Administrators.

ntl
Instructed on behalf of the ntl companies in relation to their restructuring.

ITV Digital
Instructed on behalf of the company and the company's Administrators.

Enron
Instructed on behalf of the Administrators of a number of the Enron companies.

# Stephen Atherton QC

Marconi Plc
Instructed on behalf of the group's major bankers in relation to the company's restructuring.

Energis Plc
Instructed on behalf of the company and the company's administrators.

Railtrack Plc
Instructed on behalf of the Special Railway Administrators of the company.

Global Crossing
Instructed on behalf of a number of the group companies in respect of the group's restructuring in the UK and Hong Kong.

Camell Laird
Instructed on behalf of the Administrators of Camell Laird Holdings PLC.

"Barings"
Instructed as counsel to bondholders in relation to litigation and other issues arising in relation to the collapse of Barings Bank and the ensuing liquidation.

Inland Revenue v. Nissan UK Limited
Instructed as counsel for Nissan UK in relation to their appeals against assessments by the Inland Revenue in respect of corporation tax. The assessments to corporation tax were based upon serious allegations of fraud against the company and certain of its directors.

"Maxwell"
Instructed as counsel on behalf of the largest of the Maxwell pension funds in relation to litigation in both England and New York to recover assets from a number of financial institutions and in litigation against employee fidelity insurers.

Bank of Credit and Commerce International ("BCCI")
Instructed as counsel for the Ruler of Abu Dhabi and the Majority Shareholders in relation to the collapse of BCCI.

**Publications:**

"Insider Trading - The Laws of Europe, the United States and Japan": Kluwer (1992).

Responsible for drafting the Practice Statement on insolvency officeholders' remuneration.

**Articles:**

"Charges over chattels: issues in the fixed / floating jurisprudence": The Company Lawyer Vol 26 (No 1) p 10.

**Lectures and seminars:**

"The Good, the Bad and the Ugly" – member of discussion panel considering "pre-pack" administrations hosted by Ernst & Young LLP.

# Stephen Atherton QC

"Why all the fuss? - Approval of Insolvency Officeholders' Remuneration": delivered in London as part of the Hawksmere conference: "Current Issues in Insolvency".

"Getting Paid – Approval of Insolvency Officeholders' Remuneration": delivered to the 11th Annual Conference of the Association of Business Recovery Professionals ("R3") held at Lake Maggiore, Italy.

"Obtaining Approval for Corporate Office Holders Remuneration": delivered to the Insolvency and Litigation Departments of Clifford Chance Limited Liability Partnership.

"Financial Aspects of Corporate Moratoria": delivered to R3.

"Insolvency and Sport – How to Make a Small Fortune…": delivered to the Finance and Insolvency Departments of Latham & Watkins LLP.

"Funding Litigation in an Insolvency Context": delivered to the Insolvency and Litigation Departments of Herbert Smith.

"Legal Issues of Significance and Interest for E-business": delivered in Colombo, Sri Lanka to the Innovation, Security and Accountability in Information Technology seminar hosted by The British High Commission, The British Council and the Council for Information Technology (CINTEC).

"Law and the Internet": delivered to the Corporate and Litigation Departments of Skadden Arps Meagher & Flom LLP.

"Co-operation Between Insolvency Courts – The UK Perspective": delivered in Hong Kong to the Hong Kong Society of Accountants.

"Litigating in the Clients' Interest": delivered to the Litigation Department of Linklaters.

"Instructing Counsel and Interpretation of Pleadings": delivered to the Litigation Department of Travers Smith.

"The Art of War: Litigation Tactics in Large Commercial Disputes": delivered to the Litigation Department of Travers Smith.

"The Resolution of Commercial Disputes": delivered to the Litigation Department of Wragge & Co.

"Limitation: Implications for Insurers": delivered to the Insurance Department of Wragge & Co.