IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED | ) ) ) |
| *Plaintiff,* | ) ) Civil Action No. 06-1109 (PLF) |
| v. | ) ) ) |
| DILIGENCE LLC, et al. | ) ) ) |
| *Defendants.* | ) ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR AN ORDER TO SHOW CAUSE WHY A STAY SHOULD NOT ISSUE PENDING RESOLUTION OF THE INVOLUNTARY WINDING-UP PETITION FILED AGAINST PLAINTIFF BY THE GOVERNMENT OF BERMUDA**

Nowhere in IPOC's opposition brief ("Opposition") does it deny the central pillar of the instant Motion: that after months of revelations that it is a money-laundering front, the Government of Bermuda is shutting down IPOC and eight of its affiliates for "breaches of [Bermuda] law and apparent regulatory infractions." See Opening Mem., Ex. A. This fact is uncontested by IPOC.

To be sure, IPOC's opposition papers repeatedly imply (but are careful not to state, because it is false) that the involuntary winding-up petition filed against IPOC by the Government of Bermuda relates to IPOC's solvency, and thus is analogous to an involuntary bankruptcy petition under U.S. law. See Opp. at 3-4; Opp. Ex. 1 (Atherton Decl.) ¶¶ 3, 12-15. Tellingly, however, IPOC does not dispute—indeed, cannot dispute—that the Government of Bermuda has stated publicly that the reason it moved to shut down IPOC is that it has amassed substantial

evidence that IPOC has engaged in illegal conduct. See Opening Mem. Ex. A. Contrary to IPOC's carefully-worded suggestions, the winding-up proceedings in Bermuda have absolutely nothing to do with IPOC's financial solvency, but rather arise out of the Government of Bermuda's determination that IPOC has committed numerous "breaches of [Bermuda] law and apparent regulatory infractions." See Opening Mem., Ex. A.[1]

Notwithstanding IPOC's over-the-top verbiage,[2] a close reading of IPOC's opposition papers reveals that numerous key facts are not in dispute. They include the following:

- That on January 12, 2007, the Government of Bermuda filed a petition requesting that the Supreme Court of Bermuda wind up the affairs of IPOC and eight of its affiliates (the "Winding-up Petition"), see Opp. at 4;

- That the Winding-up Petition was filed by the Bermuda Registrar of Companies "at the direction of the Bermuda Minister of Finance," Opp. Ex. 1 (Atherton Decl.) at ¶ 6;

- That the Winding-up Petition was filed "on public interest grounds," id. at ¶ 32 fn. 23;

- That the Winding-up Petition is scheduled to be heard by the Supreme Court of Bermuda on April 27, 2007, see id. at ¶ 6; and

- That Bermuda law allows for the appointment of a provisional liquidator to take control of a company *during the pendency* of a winding-up petition "[t]o the extent that there are concerns that during the period between the date of the

---

[1] Far from being insolvent, IPOC is widely believed have over a billion dollars worth of illicit assets looted from the Russian Federation through various public corruption and bribery schemes. See Opening Mem., Ex. A at 2 (noting that IPOC is "effectively a holding company for around $1 billion in telecommunications assets transferred through a network of shell companies").

[2] As has regrettably come to be expected in this case, the Opposition brief is littered with allegations directed at defense counsel. IPOC even goes so far to accuse defense counsel of "endeavor[ing] to mislead this Court . . . ." Opp. at 1. More surprising, however, is that IPOC's invective is not reserved just for opposing counsel. In a recent pleading, IPOC repeatedly describes a Memorandum Order entered by Judge Kay as "irrational" and "egregious[]." Plaintiff's Motion for Reconsideration (Docket #91). IPOC's proven inability to refrain from such scurrilous charges is yet another consideration militating in favor of staying this case until it is determined whether IPOC's current officers and directors will retain control of the company and, if not, whether the provisional liquidator will elect to continue with this legally unsound and expensive lawsuit. Needless to say, IPOC's request for an award of its attorneys' fees and costs—a request for which IPOC cites no authority whatsoever—has no merit and should be denied.

> presentation of a winding up petition against a company and the making of a winding up order pursuant to that [winding up] petition the directors of the company in question may mishandle the affairs and assets of the company . . .", id. at ¶ 26.

Although IPOC rails against Defendants for not knowing the particulars of the Winding-up Petition and the proceedings concerning it, IPOC wholly ignores the fact that those proceedings and the Winding-up Petition are non-public matters. In short, because neither Defendant is a party to those Bermuda proceedings, neither Defendant has seen the Winding-up Petition, the documents supporting it, or the pleadings filed in the Bermuda proceeding. Indeed, it was precisely for this reason that Defendants' opening memorandum requested that IPOC be ordered to disclose to Defendants and the Court (*in camera*, if necessary) copies of (i) the Winding-up Petition and all attachments thereto and supporting documents, and (ii) the Petition for appointment of a provisional liquidator (if any) and all attachments thereto and supporting documents. Having not contested this requested relief in its forty pages of opposition papers, IPOC has conceded its propriety. Accordingly, IPOC should be ordered to provide copies of all such materials to the Court and to the Defendants forthwith, under any confidentiality restrictions the Court deems appropriate.

Finally, in an attempt to convince this Court to allow this action to proceed notwithstanding the pendency of the Winding-up Petition, IPOC improperly attaches to its opposition papers two selected pages of a transcript of a non-public proceeding in the Supreme Court of Bermuda. The rule of completeness—indeed, basic fairness—requires that IPOC, having provided the Court with selected excerpts from a non-public document, immediately provide the Defendants and the Court with full copies of that transcript so that the context of IPOC's excerpts may be evaluated.

**ARGUMENT**

I. **IPOC HAS FAILED TO IDENTIFY ANY PREJUDICE IT WOULD SUFFER FROM A STAY OF THIS CASE PENDING FURTHER DEVELOPMENTS IN THE WINDING-UP PROCEEDING IN BERMUDA.**

As an initial matter, IPOC does not dispute that this Court "has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." IBT/HERE Employee Representatives Council v. Gate Gourmet Division Americas, 402 F. Supp. 2d 289, 292 (D.D.C. 2005); see also Air Line Pilots Association v. Miller, 523 U.S. 866, 879 (1998) (the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). Nor does IPOC dispute that the Supreme Court of Bermuda has set a hearing date of April 27, 2007, on the Winding-up Petition. In fact, IPOC's opposition papers confirm it. See Opp. Ex. 1 (Atherton Decl.) at ¶ 6.

Because it is undisputed that a hearing on the Winding-up Petition is set for April 27, 2007—little more than six weeks from now—Defendants respectfully suggest that the interests of judicial economy and conservation of party and non-party resources weigh decidedly in favor of staying this action, at least until IPOC informs the Court (and Defendants) as to the results of the April 27, 2007 hearing (because that hearing is non-public, only IPOC will be in a position to know the results thereof). As even IPOC's proffered expert acknowledges, Bermuda law permits the Government of Bermuda to request that the Bermuda Supreme Court appoint a provisional liquidator to take control of IPOC pending resolution of the winding-up proceedings—a request that, if granted, would immediately divest IPOC's current officers and directors of any control over the company, including their ability to continue spending corporate assets pursuing this litigation. See Opp. Ex. 1 (Atherton Decl.) at ¶ 6 (conceding that Bermuda law allows for the appointment of

a provisional liquidator to take control of a company *during the pendency* of a winding-up petition "[t]o the extent that there are concerns that during the period between the date of the presentation of a winding up petition against a company and the making of a winding up order pursuant to that [winding up] petition the directors of the company in question may mishandle the affairs and assets of the company . . .").

In its Opposition, IPOC asserts that the Government of Bermuda has yet to file "a petition for appointment of liquidator." Opp. at 5. But nowhere does IPOC suggest that such a petition is not forthcoming, either before or at, the April 27 hearing. In fact, the need for such an appointment would appear particularly strong here given that the Winding-up Petition filed against IPOC is founded upon illegal activity by IPOC, not solvency. See Opening Mem., Ex. 1 at 1 (quoting the Bermuda Minister of Finance's public announcement explaining the filing of the Winding-up Petition filed against IPOC: "Bermuda is a premier jurisdiction of choice with a highly sophisticated financial infrastructure. However notwithstanding this, on occasion there are issues that result in legal action having to be taken to address seeming breaches of our laws and apparent regulatory infractions"). In short, although IPOC claims that no such petition for appointment of a provisional liquidator has yet been filed against it, neither IPOC nor its expert have any way of knowing whether the Government of Bermuda will make such a request before or at the April 27 hearing.

Notably, IPOC's Opposition is wholly silent as to any prejudice it would suffer from staying this case until the conclusion of the April 27 hearing in the Supreme Court of Bermuda. There simply is none. As Defendants have noted, no Scheduling Order has been entered in this case; accordingly, there is no discovery deadline and no trial date. Moreover, a stay of *all* deposition discovery already is in place. As such, the principal beneficiary of a stay would

be this Court, which currently faces *eight* pending motions in this case, including several extensive and complex motions seeking dismissal of IPOC's Complaint in its entirety. IPOC has provided no explanation whatsoever as to why this Court should expend its valuable time and energy adjudicating these eight motions before the results of the April 27 hearing on the Winding-up Petition are known.

In sum, for the reasons set forth above, a stay should be entered—even if only until the results of the April 27 hearing are known—because the Bermuda winding-up proceedings "may affect the future scope and necessity of litigation in this Court." IBT/HERE, 402 F. Supp. 2d at 292.

II.  **IPOC HAS NOT OPPOSED DEFENDANTS' REQUEST THAT IPOC BE REQUIRED TO PROVIDE COPIES OF THE WINDING-UP PETITION (AND ALL ATTACHMENTS THERETO AND SUPPORTING DOCUMENTS) TO DEFENDANTS AND TO THIS COURT.**

IPOC's Opposition makes much of a purported distinction under Bermuda law between a "winding-up petition" and a "petition for dissolution." Opp. at 7. According to IPOC, "there is no application before the Supreme Court of Bermuda for the appointment of a provisional liquidator . . . ." Opp. Ex. 1 (Atherton Decl.) ¶ 6. Relying on this representation, IPOC accuses Defendants of "attempt[ing] to confuse this Court by asserting that IPOC faces dissolution." Opp. at 7 (capitalizations modified).[3]

---

[3] Along with its Opposition, IPOC filed a nineteen-page Declaration by Stephen Nicolas Atherton (the "Atherton Declaration"). The Atherton Declaration consists principally of an esoteric discussion of relation-back issues under Bermudian insolvency law. Not only does the Winding-up Petition filed against IPOC have nothing to do with financial solvency, but Mr. Atherton admits that he is not even a member of the Bermuda Bar. See Opp. Ex. 1 (Atheron Decl). at ¶ 3. In any event, Mr. Atherton's relation-back discussion is essentially moot given his acknowledgment elsewhere in his Declaration that Bermuda law allows for the appointment of a provisional liquidator to take control of a company *during the pendency* of a winding-up petition "[t]o the extent that there are concerns that during the period between the date of the presentation of a winding up petition against a company and the making of a winding up order pursuant to that [winding up] petition the directors of the company in question may mishandle the affairs and assets of the company . . . ." Id. at ¶ 26. As noted above, neither IPOC nor Mr.

IPOC' argument ignores a crucial fact: neither the pleadings filed in the winding-up proceeding against IPOC (including the Winding-up Petition) nor the hearings in that case are open to the public. They are closed proceedings. And because neither Defendant is a party to those Bermuda proceedings, Defendants simply have no way of knowing what pleadings have or have not been filed in that case. Indeed, it is precisely for this reason that Defendants' opening memorandum specifically (and repeatedly) requested that IPOC be ordered to provide Defendants and the Court with copies of: (i) the Winding-up Petition and all attachments thereto and supporting documents, and (ii) the Petition for appointment of a provisional liquidator (if any) and all attachments thereto and supporting documents. Importantly, nowhere in its forty pages of opposition papers does IPOC oppose this request. Having elected not to contest it, IPOC has conceded the propriety of this requested relief. Accordingly, IPOC should be ordered to provide copies of all such materials to the Court and to the Defendants forthwith.

Similarly, IPOC should be ordered to immediately provide Defendants with a copy of the entire transcript of the Supreme Court of Bermuda proceeding it references in its Opposition. In an attempt to convince this Court to allow this action to proceed notwithstanding the pendency of the Winding-up Petition, IPOC attaches to its opposition papers (Exhibit 2 thereto) just two pages from an apparently lengthy transcript of a non-public hearing held by the Supreme Court of Bermuda. Having chosen to do so, the rule of completeness and basic fairness require that IPOC be required to immediately provide the Defendants with full copies of that transcript so that the context of IPOC's excerpts may be evaluated.[4]

---

Atherton know whether the Government of Bermuda will seek such an appointment of a provisional liquidator before or at the April 27 hearing.

[4] Defendants have no objection to treating such transcripts as "Confidential"—or even "Attorneys' Eyes Only" if warranted—under the terms of the Protective Order entered by Judge Kay on February 8, 2007.

## CONCLUSION

For the reasons set forth above and in Defendants' opening memorandum, Defendants respectfully request that the Court issue an Order to Show Cause Why a Stay Should Not Issue Pending Resolution of the Involuntary Winding-up Petition Filed By the Government of Bermuda, and further order IPOC to disclose to the Defendants and the Court (*in camera*, if necessary) the status, timetable, and the basis for the petitions, including copies of (i) the Winding-up Petition and all attachments thereto and supporting documents, and (ii) the Petition for appointment of a provisional liquidator and all attachments thereto and supporting documents.

Respectfully submitted,

/s/ Edward B. MacMahon, Jr.
Edward B. MacMahon, Jr.
D.C. Bar No. 411165
P.O. Box 903
107 East Washington Street
Middleburg, VA 20118
540-687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net
*Attorney for Defendant Barbour Griffith & Rogers, LLC*

AEGIS LAW GROUP LLP

By:    /s/ Paul C. Rauser
Paul C. Rauser (D.C. Bar No. 461722)
Michael K. Ross (D.C. Bar No. 458573)
Oliver Garcia (D.C. Bar No. 456600)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
*T: 202-737-3500/ F: 202-737-3330*
*Attorneys for Defendant Diligence Inc.*

Dated: March 14, 2007