**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DILIGENCE, LLC, )<br>)<br>and )<br>)<br>BARBOUR GRIFFITH & ROGERS, LLC, )<br>)<br>Defendants. )<br>) | Civil No. 06-1109<br>(PLF)/(AK) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY W. GORDON DOBIE, ESQUIRE SHOULD NOT BE HELD IN CONTEMPT

COMES NOW Barbour Griffith & Rogers, LLC, by counsel, for its Memorandum of Points and Authorities in Support of its Motion for Order to Show Cause Why W. Gordon Dobie, Esquire Should Not be Held in Contempt, states as follows:

1.    Introduction.

This matter comes before the Court following several public disclosures of information protected from disclosure by at least three orders entered by this Honorable Court.[1]  This Motion does not address an inadvertent or mistaken disclosure of protected information which the parties could have resolved themselves without this Court's intervention. Rather, clear and convincing evidence leads to the unfortunate conclusion that these improper disclosures were made

---

[1]  The facts set forth in several of these stories are misleading and in some instances, false.

intentionally by W. Gordon Dobie, Esquire, one of the attorneys of record in this action representing plaintiff IPOC.  BGR and its counsel, who all  have tremendous professional respect for the Winston & Strawn firm, do not make this motion lightly.  Rather, this motion is filed to seek to compel and coerce compliance with this Court's orders so that  this contentious litigation can  proceed to trial fairly and properly and in accordance with the terms and conditions of orders entered by this Court.

   2.  Events Leading to this Motion.

   On March 14, 2007, *Roll Call*, a Washington newspaper that covers events before the United States Congress, published a story titled "Eye on Corporate Espionage: Waxman Letter Seeks More Info on Case Involving Barbour Griffith Firm."  A true copy of that article is attached hereto as Exhibit A.  That article disclosed  that a Member of Congress  had sent a letter directly  to Mr. Dobie seeking records and documents relating to an article that appeared in *BusinessWeek* on or about February 26, 2007.[2]  In the *Roll Call* article, Mr. Dobie indicates that he is "pleased" to have received the letter and falsely states that the Committee will learn "Alfa Group, its lobbyists and their agents broke U.S. laws and undermined national security by impersonating federal agents."  In that same article, there are numerous references to documents that are under seal or subject to the protective order entered in this case.  A review of that article, with specific references to factual allegations, shows, beyond question, that Mr. Dobie either provided protected or sealed documents to the reporter or otherwise disclosed the contents of same.  For example, the article states that  "[t]he currently sealed documents also will show that Diligence employees and at least one KPMG employee were tape-recorded, and that the tape was

_____

  [2] A copy of the *BusinessWeek* story is attached hereto as Exhibit B.

played for at least one Barbour Griffith employee, said two sources familiar with the content of the documents." Additional examples of improper disclosures of protected information abound from a simple review of the article.

On March 14, 2007, an additional article concerning the Congressional letter was posted on the Politico.com website. Politico.com is a website concentrating on political matters in Washington, D.C. That article, "Did Lobbyists Break the Law?" was written by Mr. Jeff Patch. A copy of that article is attached hereto as Exhibit C. This Court has already received an affidavit from Mr. Day which states that Mr. Patch has told him that Winston & Strawn was the source for the information contained in his story. Mr. Dobie is referenced in the Politico.com article and is either the person that gave Mr. Patch "sealed court records that were copied and made available to Politico" or can tell the Court who did. Additionally, on the evening before the article was published, Mr. Patch called the undersigned and told me that Winston & Strawn planned to make an immediate production to Congress of all of the protected records so that the records, which, as Mr. Dobie indicated in the article, could be produced to Congress without regards to any privileges or applicable protective orders, would be publicly available. Indeed, Mr. Patch said, Winston & Strawn intended to make immediate production to avoid any litigation with Diligence or BGR over the terms of the protective order entered in this case.

3.     Mr. Dobie's Actions Violated the Protective Order Issued in this Case.

The procedural events leading to these events is set forth below. On November 22, 2006, IPOC filed its Motion for Protective Order. (Docket No. 57) On that same date, IPOC filed an Emergency Motion for Order Authorizing Disclosure of Information and Directing the

Immediate Release of Subpoenaed Materials.[3] (Docket No. 60) On November 27, 2007, BGR

filed its Opposition to the Emergency Motion and on December 6, 2006, the defendants filed

their own Motion for a Protective Order.[4] (Docket No. 69) On December 18, 2006, Judge Kay

denied IPOC's "emergency" motion and set a motions for hearing for January 11, 2007. (Docket

No. 75) That hearing was set for argument on the various motions for protective orders that the

parties had filed. On January 4, 2007, Mr. Dobie, an attorney with Winston & Strawn from

Chicago, Illinois, was admitted pro hac vice. On February 8, 2007, Judge Kay entered a

Protective Order Governing Confidentiality and Inadvertent Disclosure of Documents. (Docket

No. 92) Though IPOC immediately appealed that Order, labeling it "irrational," that Order was

in full force and effect as of the date of the violations attributed to Mr. Dobie. (Appeal at Docket

No. 91)

The Protective Order entered by this Court is clear on its terms and plainly binding upon

Mr. Dobie. In Section I, paragraph 1 of the Protective Order, this Court found that a Protective

Order under Fed. R. Civ. Pro. 26 (c) was legally necessary as "disclosure and discovery actions in

these proceedings are likely to involve production of confidential, proprietary, or private

information for which special protection from public disclosure and from use for any purpose

other than prosecuting this litigation would be warranted." In Section I, paragraph 3, the Court

---

[3] The documents that were the subject of that motion had been obtained by FPMG-FAS' attorneys at Hughes, Hubbard & Reed. Those records had been designated as "attorneys-eyes only" or "confidential" in that litigation and remained protected by the terms of that Protective Order which, by its own terms, survived dismissal. Mr. Dobie was aware of the terms of that protective order and has apparently violated that order as well. see infra Section 4.

[4] That Opposition detailed the two previously known violations by IPOC and its attorneys of two protective orders including the one in the KPMG-FAS v. Diligence matter.

found that the "Protective Order shall govern all documents, the information contained therein, and all other information produced or disclosed during or in connection with this proceeding, including all copies, excerpts, summaries, or compilations thereof, whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any party to this proceeding to any other party or parties." In Section I, paragraph 4, the Court finds that the Protective Order is binding upon all of the attorneys in this case. Significantly, this provision, like virtually every provision cited above, was proposed by IPOC in its proposed Protective Order.

The parties in this action have not yet exchanged any documents. The documents that were apparently shown to these two reporters had been obtained by IPOC by subpoena to KPMG-FAS' counsel. The overwhelming majority of those documents were produced to Hughes, Hubbard & Reed by Diligence in the KPMG FAS litigation. Those documents and their contents were, in part, the subject of of IPOC's "emergency" motion. In the KPMG FAS litigation, the majority if not all of these documents were marked as "Confidential" or "Attorneys Eyes Only." Diligence adopted and restated most, if not all, of these designations after Hughes, Hubbard & Reed complied with the subpoena served by IPOC in this action after the Protective Order was entered. In Section II, paragraphs 19 and 20, the Protective Order lists the persons who may receive information so designated. Needless to say, reporters are not included in the list. Paragraph 21 specifically provides that attorneys who receive information so designated shall not "reveal or discuss such documents, materials, things or information, except as expressly set forth herein." This Order was plainly binding upon Mr. Dobie and Winston & Strawn and the disclosed information was subject to the clear terms of the Protective Order.

4.      Mr. Dobie's Actions Violated the Sealing Order in a Related Action.

As this Court is well aware, KPMG-FAS had previously filed and later settled a related civil action against co-defendant Diligence.  That case is styled <u>KPMG Financial Advisory Services, et. al. v. Diligence, LLC</u>, Civil Action No. 05-2204 (PLF) (AK).  In that action, as was stated above, KPMG FAS was represented by Hughes, Hubbard & Reed.  Diligence was represented by the same counsel that represent it in this case.  Discovery in that matter was conducted pursuant to the terms of a protective order and the entire action was sealed by order entered by the Honorable Thomas Hogan on November 10, 2005.  Many of the pleadings in that case were eventually released but only in a redacted form.    Several of the matters disclosed in the *Roll Call* and Politico.com story were subject to this Court's sealing order and the Protective Order issued in the KPMG-FAS matter as well as the protective order issued in this action.  Mr. Dobie and his firm had actual notice of the existence of these orders as it entered an appearance in that case on August 23, 2006.  (Docket No. 68) Shortly thereafter,  IPOC  moved to intervene in that action, which motion was denied and later appealed that denial to the District of Columbia Court of Appeals.  (D.C. Court of Appeals Case No. 06-7162)

Moreover, in this case, this Court, as it considered the opposing motions for protective orders, was presented with evidence that IPOC and its attorneys breached a different sealing order entered in the KPMG-FAS case by providing a sealed hearing transcript from this Court as part of a public proceeding in a related case then pending in the British Virgin Islands.  This episode was described in detail in the defendants' Joint Motion for a Protective Order.  (Docket No. 69) Ironically, it was Mr. Dobie who argued to this Honorable Court that the release of that transcript was the result of an oversight, not that Winston & Strawn was not on actual notice of

the terms of the sealing orders and/or protective order entered in the KPMG-FAS action.  Finally, the "Confidential" and "Attorneys Eyes Only" designations affixed to discovery produced by counsel to KPMG-FAS and Diligence in that case remain in effect.  The release, by Mr. Dobie, of discovery produced in that case or redacted portions of  pleadings and affidavits filed in that case to persons not entitled to see same, was a deliberate violation of that order as well.

5.      An Order to Show Cause Should Issue, a Hearing Set and Discovery Should be Allowed Immediately.

Courts have the inherent authority to enforce their orders.  "[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order."  In re Debs, 158 U.S. 564, 594 (1895); see also In re Lafayette Radio Elec. Corp., 761 F. 2d 84, 93 (2nd Cir. 1985)  One of the court's most effective tools in enforcing compliance with its orders is the power of contempt.  Contempt is shown when the moving party shows the existence of an order that is clear and specific and that the alleged contemnor has violated that order.  Armstrong v. Executive Office of the President, 1 F. 3d 1274, 1298 (D.C. Cir. 1993)   The party seeking the order of contempt bears the burden of proving the elements of contempt by clear and convincing evidence.  NLRB v. Blevins Popcorn Co., 659 F. 2d 1173, 1183-1184 (D.C. Cir. 1981)

Given these standards, BGR respectfully suggests that the Court should issue a rule to show cause why Mr. Dobie should not be held in contempt.  In this case, there is more than sufficient evidence before the Court, evidence that is clear and convincing,  that Mr. Dobie has acted in blatant disregard of at least two Protective Orders issued by this Court in addition to two sealing orders entered by Judge Hogan and Judge Friedman.   Given the declaration of Mr. Day attached to Diligence's Application for an Injunction, the representations of the undersigned

counsel, and the plain evidence set forth in the *Roll Call* and the Politico.com articles, there is convincing evidence that Mr. Dobie has disclosed protected information to persons not entitled to receive same. All of these actions, the evidence suggests, were taken willfully, in disobedience of clear protective and sealing orders and interfere directly with the Court's ability to administer justice.

The parties to this case, as with any contested case in which a Protective Order is requested and granted, need to know that this Court will enforce the terms of a Protective Order when deliberate violations of the Court's order becomes known. This is not a case of an inadvertent or mistaken disclosure - more than sufficient time has passed within which IPOC or its attorneys could have explained how this occurred. Indeed, the terms of Section III, paragraph 30 of the Protective Order[5] require as much. For this reason, the injunction as requested by Diligence, is, unfortunately, an incomplete remedy. The protected information has been released. What is required now is a finding of contempt, not just as punishment for Mr. Dobie or any other Winston & Strawn employee that participated in these actions, but to compel and coerce compliance with this Court's orders. In this way, the Court's ability to administer justice is advanced as these as well as other litigants will be deterred from engaging in similar activities.

The defendant respectfully requests that the Court schedule forthwith a hearing on this motion after granting Winston & Strawn and Mr. Dobie sufficient time to respond to these

---

[5] "If any Receiving Party learns of the unauthorized disclosure of Confidential or Attorney' Eyes Only information, it shall immediately (a) inform the Supplying Party in writing of all pertinent facts relating to such disclosure, (b) make its best efforts to retrieve all copies of the Confidential or Attorney' Eyes Only Information, ( c) inform the person or persons to whom unauthorized were made of all of the terms of this Order, and (d) request such persons or persons execute the Acknowledgment that is attached hereto as Exhibit A."

allegations.   The defendant respectfully requests that the Court order Mr. Dobie and Winston &
Strawn to respond to the allegations in this motion and provide the following discovery:

      A.      Written evidence of Mr. Dobie's  interactions with the  reporters from *Roll Call*
and Politico.com.  This would include any billing records or other correspondence that would
show any contacts between Mr. Dobie and other attorney or agent of Winston & Strawn or IPOC
who contacted these reporters, or any other person or entity regarding the actual or attempted
disclosure of sealed and protected information.

      B.      Any and all packages prepared for reporters by Mr. Dobie or other attorney or
agent of Winston & Strawn or IPOC including the sealed or otherwise  materials that were
disclosed to certain reporters including but limited to Roll Call, Business Week and Politico.com.

      WHEREFORE, BGR requests that the instant motion be granted, that a Rule to Show
Cause why W. Gordon Dobie, Esquire should not be held in Contempt shall issue, and that
discovery be expedited in this regard as requested in this Motion.

                    **BARBOUR GRIFFITH & ROGERS, LLC**
                    **By Counsel**

      /s/
_____
Edward B. MacMahon, Jr.
D.C.  Bar No. 411165
P.O. Box 903
107 East Washington Street
Middleburg, VA 20118
(540) 687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net
*Counsel for Defendant Barbour*
    *Griffith & Rogers, LLC*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on the 21st of March, 2007, a true and correct copy of the foregoing to be served electronically, via the Court's electronic filing system, on:

     Timothy M. Broas
     Carol A. Joffe
     Winston & Strawn
     1700 K Street, N.W.
     Washington, D.C.   20006
     (202) 282-5000
     (202) 282-5100 (Fax)
     *Counsel for IPOC  International Growth Fund Limited*

     Paul C. Rauser
     AEGIS Law Group LLP
     Suite 500
     901 F Street, N.W., Suite 500
     Washington, D.C.   20004
     (202) 737-3500
     (202) 737-3330 (Fax)
     *Counsel for Diligence LLC*

                             /s/
                          _____
                          Edward B. MacMahon, Jr.