# EXHIBIT A

Ocnus.Net

# DARK SIDE

### Eye on Corporate Espionage
By Kate Ackley, Roll Call 14/3/07
Mar 15, 2007, 09:10

Rep. Henry Waxman (D-Calif.), chairman of the House Oversight and Government Reform Committee, this week sent a letter to a lawyer whose client is suing the lobby firm Barbour Griffith & Rogers and Diligence, a corporate intelligence boutique also based in Washington, D.C.

The letter was sent to Gordon Dobie, a partner with Winston & Strawn, which represents IPOC, a Bermuda-based hedge fund. In its lawsuit, IPOC alleges that Diligence employees, working for Barbour Griffith & Rogers and its client Alfa Bank, impersonated U.S. and British intelligence agents to covertly obtain proprietary information through IPOC's auditor.

"I request that you provide the Committee with any information and documents in your possession or control relating to these allegations," Waxman wrote to Dobie. Waxman's letter cited a BusinessWeek magazine story from Feb. 26 that detailed how a Diligence employee, impersonating a British MI5 agent, coaxed a KPMG employee to turn over private IPOC data.

"The article alleges that Diligence engaged in corporate espionage against IPOC and its auditor, KPMG ... through an operation it referred to as 'Project Yucca,' " the Waxman letter adds.

Diligence settled a lawsuit already with KPMG, but many of those records about Diligence's work for Barbour Griffith and its client, Alfa, remain sealed.

The Waxman inquiry, sources familiar with the litigation say, could result in making those documents public and possibly exposing more details about a matter already filled with plenty of intrigue and putting a lobbying firm in the unenviable situation of going under the Congressional microscope.

"We are pleased that the Committee is looking into the Diligence-Alfa Group fraud," Dobie wrote in a statement provided to Roll Call. "We will comply fully with Chairman Waxman's request for more information." (Waxman's letter asserts the chairman's power to subpoena the documents.)

A committee spokeswoman said it was "too early to know" what the committee might do with the information.

IPOC, which court documents filed by Barbour Griffith attorneys called "a money laundering front," and Alfa both were trying to buy a Russian company called MegaFon in 2005 when court documents say Diligence orchestrated "Project Yucca."

"The Committee will further learn how Alfa Group, its lobbyists and their agents broke U.S. laws and undermined national security by impersonating federal agents, and is alleged in litigation to have harmed a business rival by committing a billion dollar fraud," Dobie added in his statement.

Edward MacMahon Jr., a lawyer representing Barbour Griffith, said he was not aware of the request from Waxman.

"I don't know that anybody at the firm has been contacted," he said. Lawyers for Diligence did not return calls seeking comment. Barbour Griffith also did not return a call seeking comment.

According to sources familiar with the documents that are to be turned over to Waxman's committee, the documents will include a sworn affidavit that details how Diligence employees pretended to be CIA agents to get secret IPOC information and information on other companies. The currently sealed documents also will show that Diligence employees and at least one KPMG employee were tape-recorded, and that the tape was played for at least one Barbour Griffith employee, said two sources familiar with the content of the documents.

"Some of these documents are protected by legal privilege, but Congress is not bound by that," said one source familiar with the matter.

There are two big federal cases pending related to this, including a racketeering case in New York that IPOC filed against Alfa Group in which IPOC's lawyers allege that Diligence "employees Nick Day, Gretchen King and others traveled to Bermuda as part of the operation" saying that King impersonated a CIA agent as "Liz from Langley." Documents in that case also say the "misappropriated information was used by Alfa's ally in litigation against IPOC concerning MegaFon stock and also leaked to the press." In that case, IPOC is asking for $150 million, plus return of "property stolen by Defendants." (Neither Barbour Griffith nor Diligence is named as a defendant in that case.)

IPOC is suing Barbour Griffith and Diligence in U.S. District Court for the District of Columbia and is asking the court to say that Diligence and Barbour Griffith have violated such laws as the Computer Fraud and Abuse Act. IPOC also has asked the court to prevent Diligence and Barbour Griffith from using any of the information it obtained from KPMG and for damages of an unnamed amount but exceeding $75,000.

One of the many documents filed in the case includes an e-mail between Barbour Griffith employees in which the firm's Keith Schuette writes to name partner Ed Rogers about the Diligence-KPMG lawsuit in early 2006. "It has attracted no attention thus far, but I cannot imagine that it will remain quiet forever."

Source: Ocnus.net 2007

# EXHIBIT B



Xerox Color. It makes business sense.
Business color that's innovative, reliable and affordable.
Now that's brilliant!
Technology | Document Management

▶ Close Window

FEBRUARY 26, 2007

INVESTIGATIONS

## Spies, Lies & KPMG
**An inside look at how the accounting giant was infiltrated by private intelligence firm Diligence**

In the spring of 2005, Guy Enright, an accountant at KPMG Financial Advisory Services Ltd. in Bermuda, got a call from a man identifying himself in a crisp British accent as Nick Hamilton. Hamilton said he needed to see Enright about matters of utmost importance.

Over the course of two meetings, Hamilton led Enright to believe he was a British intelligence officer, according to a person familiar with the encounters. He told Enright he wanted information about a KPMG project that Hamilton said had national security implications for Britain. Soon, Enright, who was born in Britain, was depositing confidential audit documents in plastic containers at drop-off points designated by Hamilton.

But Nick Hamilton was not an agent of Her Majesty's secret service, and the documents never found their way to the British government.

Nick Hamilton was in fact Nick Day, now 38, a onetime British agent and co-founder of Diligence Inc., a Washington private intelligence firm that counts William Webster, former director of the CIA and FBI, among its advisory board members. Diligence's client was not Britain's Queen, but Barbour Griffith & Rogers, one of the most formidable lobbying firms in Washington. Barbour Griffith represented a Russian conglomerate whose archrival, IPOC International Growth Fund Ltd., was being audited by KPMG's Bermuda office.

A 2006 scandal involving Hewlett-Packard Co. (**HPQ** ) put the issue of corporate espionage in the headlines. Diligence's methods, revealed in court documents and interviews by *BusinessWeek*, show how far some in the corporate investigation business will go.

**"PLAUSIBLE DENIABILITY"**
Without denying this account of events in Bermuda, Diligence's Day says: "We've always respected the laws of the jurisdictions in which we operate." He adds that corporate intelligence firms like his provide an invaluable service. "We essentially help businesses deal with the risks of operating in challenging markets," Day says. "It's a role which government agencies don't necessarily have the resources or understanding to be able to fulfill."

From the start, Diligence's goal was clear, if far from simple: Infiltrate KPMG to obtain advance information about the audit of IPOC, an investment fund based in Bermuda. Russian conglomerate Alfa Group Consortium hired Barbour Griffith & Rogers through a subsidiary, and the lobbying firm in turn hired Diligence. Alfa is dueling with IPOC for a large stake in the Russian telecom company MegaFon. "We have a good chance of success on this project," Day wrote in an internal Diligence memo, referring to the

Bermuda espionage effort. The memo, which *BusinessWeek* reviewed, added: "We are doing it in a way which gives plausible deniability, and therefore virtually no chance of discovery." Similar Diligence operations, the memo noted, had been successful before.

Within Diligence the KPMG campaign was dubbed Project Yucca, and it unfolded in stages, according to people familiar with the operation and documents filed in a court proceeding involving IPOC and Alfa in the British Virgin Islands. First, two Diligence employees contacted KPMG's Bermuda offices pretending to be organizers of a legal conference on the island, according to a person familiar with the operation. The Diligence staff members called KPMG secretaries and asked about how the office worked. Soon, Diligence had the names of a handful of KPMG employees who might have access to the IPOC data. But Diligence wanted to narrow the list.

The intelligence firm was originally looking for people who fit one of two profiles for sources likely to leak the audit information, according to a Project Yucca planning memo. One personality type was a "male in his mid-20s who is somewhat bored...has a propensity to party hard, needs cash, enjoys risk, likes sports, likes women, is disrespectful of his managers, fiddles his expenses, but is patriotic." The memo described the second personality type as "a young female who is insecure, overweight, bitchy, not honest. Someone who spends money on her looks, clothes, gadgets. Has no boyfriend, and only superficial friends. Has a strong relationship with her mother." Apparently, no one on Diligence's list quite fit either profile, but the firm settled on Enright, the British-born accountant.

Enright soon got a call from Diligence's Nick Day, posing as Nick Hamilton, according to a person familiar with the situation. The two agreed to meet for lunch near the KPMG offices in Hamilton, Bermuda. At lunch, Day, who is dark-haired and has a warm smile, said the assignment he had in mind for Enright was top secret and involved Britain's national security. Day kept the conversation vague, never mentioning IPOC or the audit, according to the person familiar with the situation. Day told the accountant he would have to undergo a British government background check to ensure that he was up to the task. Day produced an official-looking--but fake--questionnaire with a British government seal at the top and asked for information about Enright's parents, his professional background, any criminal history, and political activities, according to a copy of the questionnaire reviewed by *BusinessWeek*. Enright provided the information.

Several weeks later the two men met again, this time in a local bar, says the person familiar with the events. Day, still calling himself Nick Hamilton, told war stories from what he said were his days in the Royal Navy's Special Boat Service, Britain's equivalent of the U.S. Navy SEALS. He then steered the conversation toward his real interest: What did Enright know about the KPMG audit of IPOC?

Soon, Enright was handing over confidential audit documents, including transcripts of interviews KPMG had conducted in the IPOC investigation, according to court documents on file in the British Virgin Islands and the source familiar with the events. Day picked out a rock in a field along Enright's 20-minute daily commute from his home in Elbow Beach and placed a plastic container under the rock, creating what spies call a dead drop site. At appointed times, Enright slipped new material into the container, which Day later retrieved. On one occasion, Enright left documents in the storage compartment of his moped, which he parked at his home. Enright had told Diligence employees where he hid the keys to the moped. When Enright left for a trip, Day collected the papers, according to the person familiar with the situation.

Day and Diligence took elaborate precautions to make sure Enright wasn't himself a plant or a corporate spy, people familiar with the events say. Diligence employees followed Enright from his office to every meeting with Day. A Diligence employee was at each meeting spot before the men arrived to determine whether Enright was using associates for surveillance. Enright was followed to his destinations when meetings ended. When Day left the meetings with Enright, the source says, the Diligence executive followed a process spies call dry cleaning, which was designed to detect whether Day was being followed. He walked a prescribed route through several narrow "choke points" that made it possible for Diligence employees to identify anyone who might have been tailing him.

**MYSTERY WHISTLEBLOWER**
Diligence was paid handsomely for its work. An invoice produced in a federal court proceeding in Washington involving IPOC and Diligence shows that Barbour Griffith was billed by Diligence "For Bermuda report and Germany work--A Telecom." Diligence was paid $25,000 a month, plus $10,000 a month for expenses, according to documents reviewed by *BusinessWeek* and an interview with a person familiar with the matter. The company was also paid a $60,000 bonus for acquiring the first draft of KPMG's audit of IPOC. Diligence's total take couldn't be determined.

The undercover Project Yucca ended after someone--it remains unclear who--dropped a bundle of papers at the Montvale (N.J.) office of KPMG on Oct. 18, 2005. The papers included Diligence business records and e-mails with details of Project Yucca.

On Nov. 10, 2005, KPMG Financial Advisory Services sued Diligence for fraud and unjust enrichment in U.S. District Court in Washington. On June 20, 2006, the case settled. Diligence paid KPMG $1.7 million, according to a person familiar with the settlement.

On June 15, 2006, IPOC sued both Diligence and Barbour Griffith & Rogers in the same District Court, alleging civil conspiracy, unjust enrichment, and other misdeeds. That case is pending. Gavin Houlgate, a spokesman for KPMG, declined comment, as did attorneys for KPMG at the New York law firm Hughes Hubbard & Reed. Kirill Babaev, a vice-president at Alfa's telecom arm in Moscow, said in a statement when asked about Alfa's involvement in the Diligence operation: "We are...not a party in any litigation with IPOC, and therefore cannot comment on any rumours or speculations in this regard."

Barbour Griffith & Rogers' most famous co-founder is Haley Barbour, who is now governor of Mississippi. Barbour left the lobbying firm in 2003, before the Diligence operation began. Another Barbour Griffith co-founder, Ed Rogers, was an early investor in Diligence. The lobbying firm rented space at its Pennsylvania Avenue offices to Diligence. Edward MacMahon, a lawyer for Barbour Griffith, says the firm has done nothing wrong and that no one affiliated with Barbour Griffith currently has an equity stake in Diligence. A person familiar with Diligence says the firm's shareholders are CEO Day, former U.S. Ambassador to Germany Richard Burt, Edward Mathias of Washington-based private equity firm Carlyle Group, and Buenos Aires private equity firm Exxel Group. Burt confirms he is Diligence's chairman but declines to discuss Project Yucca. Mathias confirms he is an investor in Diligence but says he is unaware of the Bermuda events. Exxel Group lists Diligence among its portfolio companies on its corporate Web site but did not respond to an e-mail seeking comment.

It's unclear whether Diligence broke any British or American laws. In an interview at his Washington office, Day says he and his firm always stay within the law but have learned much since 2005: "As an organization we've changed a lot as a result of everything we've been through in the last year." He says Diligence has "spent a lot of time training our staff as to what they can and cannot do."

In a statement to *BusinessWeek*, IPOC director Mads Braemer-Jensen said: "The fact that Alfa hired Barbour Griffith & Rogers and Diligence to use illegal and dishonest smear tactics against IPOC just shows that Alfa is trying to change the subject away from the fact that they stole from IPOC. We hope the U.S. and Bermuda law enforcement authorities will make note of this and take appropriate action against Alfa."

Guy Enright, who now works for Deloitte & Touche in London, declined repeated requests for comment on his relationship with Nick Day and his work on the IPOC audit. The terms of Enright's departure from KPMG couldn't be determined. But he apparently didn't come away empty-handed from his encounters with Nick Day.

As Project Yucca wound down in 2005, Day, still in the guise of Nick Hamilton, gave Enright a Rolex watch worth thousands of dollars, according to two people familiar with the present. Enright was led to believe it

was a thank-you gift from the British government, but it, too, came from Diligence.

By Eamon Javers

Advertising | Special Sections | MarketPlace | Knowledge Centers

Xerox Color. It makes business sense.

Terms of Use | Privacy Notice | Ethics Code | Contact Us

The McGraw-Hill Companies

Copyright 2000- 2007 by The McGraw-Hill Companies Inc.
All rights reserved.

# EXHIBIT C



## Did Lobbyists Break the Law?
By: Jeff Patch

March 14, 2007 05:52 PM EST

The city's biggest Republican lobbying firm, Barbour Griffith & Rogers, is coming under the scrutiny of one of Capitol Hill's most tenacious Democratic chairmen, California Rep. Henry A. Waxman, head of the House Committee on Oversight and Government Reform.

At issue is whether the lobbying firm broke U.S. laws when two of its representatives allegedly impersonated British and U.S. intelligence operatives to obtain information helpful to a client. The dispute stems from a complicated corporate fight between a firm based in Moscow and a Bermuda hedge fund named IPOC over control of a Russian cell phone company. Barbour Griffith & Rogers was hired to assist the Moscow entity, Alfa Group Consortium.

Lawyers for IPOC argue that BGR colluded with Diligence, a Washington-based private investigation firm, in a plan to get confidential documents and information unearthed during a separate audit of IPOC. BGR's client used the improperly collected audit data against IPOC in the battle for control of the Moscow phone company, the lawyers say.

W. Gordon Dobie, a Winston & Strawn partner representing IPOC, received a letter from Waxman that seeks all the documents the law firm has related to the dispute and a lawsuit filed in U.S. District Court by IPOC against BGR and Diligence. BGR once held stock in Diligence. It sold its shares, held in a trust, in March 2005, and Ed Rogers, BGR's chairman, and Robert Blackwill, the president of BGR International, stepped down from Diligence's advisory board, a company official said. As of Wednesday, though, the two were still listed on Diligence's Web site as board members.

The two supposed Diligence spies, Nick Day, Diligence's CEO, and Gretchen King, a former intern and now a project manager in Diligence's office in New York, allegedly coaxed an employee of KPMG, the accounting firm investigating IPOC, to turn over documents in the investigation.

The probe was nicknamed "Project Yucca," and Day and King targeted KPMG's Guy Enright, now an accountant in London. Day introduced himself to Enright as Nicholas G. Hamilton from British intelligence, and King said she was "Liz from Langley," according to sealed court records that were copied and made available to The Politico. Ultimately, the pair persuaded Enright to divulge private data about IPOC's financial transactions.

Lobbyists at BGR doubted that a KPMG employee was cooperating, according to the court documents. So BGR sent Diligence back to record a conversation with Enright, said a lawyer who is involved in the case.

The project took four months, and invoices reviewed by The Politico indicate that BGR was scheduled to pay Diligence a total of $220,000, including a $60,000 bonus. Diligence also charged BGR $30,000 for expenses.

"We would welcome an opportunity to give our side of the story to Chairman Waxman," Day said by phone from London on Wednesday. "Nobody posed as American intelligence officials," he added, although Day conceded the company has amended its operating rules in light of the dispute.

KPMG sued Diligence for fraud in November 2005 in U.S. District Court in Washington after receiving an anonymous shipment of Diligence business records and e-mails about Project Yucca at its office in New Jersey, according to legal records. That case was settled for $1.7 million in June 2006, and the files were sealed.

Lawyers and officials with BGR and Diligence deny wrongdoing. They say their investigative techniques broke no laws and that their inquiry was prompted by allegations of corporate wrongdoing by rival IPOC.

"Our position is the lawsuit is frivolous and that one day somebody involved in IPOC will actually have to come to testify or make it through customs without being arrested," said Edward MacMahon, a BGR attorney. "We don't think that day is going to happen."

In its lawsuit, IPOC is seeking civil damages and information about whether the corporate espionage efforts continue. KPMG's audit eventually led officials in Bermuda to file an emergency motion to de-register and liquidate IPOC in February. A court there should decide on that motion by April 27.

While confident they can fend off legal charges, BGR still could be embarrassed by the exposure to close congressional scrutiny.

A 2006 e-mail contained in an exhibit filed in federal court in the District of Columbia shows that Keith Schuette, who worked at the firm at the time, consulted with Rogers about the Bermuda operation.

"Judge has unsealed the complaint against Diligence from KPMG," Schuette wrote Rogers on Jan. 24, 2006, in reference to the KPMG case. "It has attracted no attention thus far, but I cannot imagine that it will remain quiet forever. Neither we, nor the client, are mentioned in the complaint. Current strategy if it comes alive in the press if (sic) for Diligence to stonewall. Will keep you posted."

TM & © THE POLITICO & POLITICO.COM, a division of Allbritton Communications Company

