# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH FUND LIMITED, )
)
)
Plaintiff, )
v. )
)
DILIGENCE, LLC, and BARBOUR GRIFFITH & ROGERS, LLC, )
)
Defendants. )
)

Civil Action No.
1:06CV01109 (PLF) (AK)

## IPOC AND WINSTON & STRAWN LLP'S OPPOSITION TO DILIGENCE'S EMERGENCY MOTION FOR AN ORDER BARRING IPOC'S COUNSEL FROM FURTHER DISSEMINATION OF INFORMATION IN VIOLATION OF THIS COURT'S ORDERS

Plaintiff IPOC International Growth Fund Limited ("IPOC") and its counsel, Winston & Strawn LLP, hereby oppose Diligence Inc.'s ("Diligence") Emergency Motion for an Order Barring IPOC's Counsel from Further Dissemination of Information in Violation of this Court's Orders (the "Motion").

## INTRODUCTION

This is a case about intentional torts and crimes committed by Diligence and co-defendant Barbour, Griffith & Rogers LLC ("BGR") in furtherance of an international conspiracy calculated to attack and destroy IPOC. In spite of Defendants' efforts to hide behind court seals and confidential designations, alarming but undeniable facts have surfaced concerning Defendants' misdeeds. Indeed, Defendants' fiendish plans included a scheme (among other devious schemes) calculated to interfere in the official affairs of Bermuda.

Diligence agents pretended to be agents of British and United States intelligence services who purportedly were investigating matters of importance to the governments of the United States and Britain. The Chief Executive Officer of Diligence, Nicholas Day (capitalizing on his

experience as a former British Security agent) and his assistant, Gretchen King, played these roles, even on U.S. soil.  Of course, Diligence's CEO and his assistant were not government agents and were not involved in any plan or project under the auspices of the governments of the United States or United Kingdom.  Neither the United States nor the United Kingdom knew or approved of Diligence's plan.

The real purpose of Defendants' wanton schemes was to plant a mole within KPMG Financial Advisory Services ("KPMG FAS"), which was conducting a confidential investigation of IPOC on behalf of the Government of Bermuda.  Diligence planned to steal statutorily confidential information about IPOC from KPMG FAS, influence the outcome of the official investigation and provide secret information to IPOC's business rivals.  Diligence's employees used fake names and various other devices to cover their tracks and avoid getting caught.

Defendants were caught, however.  And in November 2005, KPMG FAS sued Diligence in *KPMG FAS v. Diligence LLC* (D.D.C. Civil Action No. 05-2204 (PLF)).  Diligence endeavored to keep the *KPMG FAS* case, and all of the discovery material therein, under wraps. In fact, in the early stages of the case, the court files were subject to a seal so tight that the very existence of the case could not be detected by search of public court records on PACER or available in this courthouse.  Diligence also negotiated and obtained a sweeping, stipulated protective order in the *KPMG FAS* case that has kept many of the facts hidden from public view. Ultimately Diligence settled the case by paying KPMG FAS a large sum of money.

Diligence's attempts to hide the evidence of Defendants' wrongdoing continues unabated in the present case.  In fact, although neither Diligence nor BGR have complied with their duty to produce documents responsive to IPOC's document requests, Diligence has attempted to classify 99% of documents produced by nonparty Hughes, Hubbard & Reed LLP (KPMG FAS's

counsel) as "Confidential" under the Protective Order entered in this case. Diligence has not explained how its frantic and furtive desires to hide Defendants' illegal and outrageous conduct constitutes "good cause" under the standards of Fed. R. Civ. P. 26.

To deflect attention away from its own misconduct, Diligence brazenly brings this "Emergency Motion" accusing IPOC's counsel of violating orders of this Court and disclosing information from "sealed court records" to members of the media. Winston & Strawn LLP has done no such thing. Indeed, prior to filing this motion, undersigned counsel informed counsel for Diligence that no protective orders had been breached. Diligence's counsel replied that on the basis of IPOC's counsel's assurances, there was no need to file a motion with the Court. Yet the very next morning, Diligence filed its so-called "Emergency" motion accusing IPOC's counsel of things they have not done.

Diligence's motion seeks to convince the Court to use its auspices in a cover up of Defendants' abhorrent and illegal conduct designed to destroy IPOC, and the motion should be denied for that reason alone. In addition, the motion should be denied because Diligence has filed its motion in the wrong case and against the wrong party.

Worse still, Diligence seeks to protect information that has long been in the public domain. While Diligence's papers contain nebulous accusations, they do make clear that the information about which Diligence expresses concern is a court transcript in the *KPMG FAS* case, to which neither IPOC nor Winston & Strawn LLP were party or counsel. That transcript has long been in the public domain. IPOC's counsel has not disseminated any information in violation of the protective order and there is no "emergency." Diligence's Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Without any evidence that Winston & Strawn LLP has violated the Protective Order entered in this case on February 8, 2007 (the "Protective Order"), Diligence filed its so-called Emergency Motion.  Diligence complains about the dissemination of (a) unspecified documents protected by the Protective Order entered in this case; and (2) documents allegedly protected by Court orders entered in *KPMG FAS v. Diligence*.  The Motion seeks an order granting Diligence both an injunction and affirmative relief against Winston & Strawn, and asks the Court to enter this extraordinary equitable relief without any demonstration that Winston and Strawn LLP has violated a protective order applicable to IPOC or its counsel.  Memo at 3.

Diligence states that the basis for the "Emergency" Motion is an article in *The Politico* concerning an investigation recently opened by Congressman Henry Waxman, Chair of the United States House of Representatives Committee on Oversight and Government Reform (the "Committee") regarding Diligence's and BGR's conduct underlying this case.  *The Politico* article, however, is not the first mention of such conduct to appear in the press.

On February 26, 2007, *BusinessWeek* published an article "Spies, Lies & KPMG, An Inside Look at How the Accounting Giant was Infiltrated by Private Intelligence Firm Diligence."  ("BW Article") Ex. 1.  The article indicates that Diligence CEO Nicholas Day was interviewed "at his Washington office." [1]  Indeed, Nicholas Day and Edward MacMahon, Jr., BGR's counsel, are both quoted in the BW Article.  The BW Article attributes the facts set forth in the article to "court documents and interviews" and specifically references, in addition to Mr. Day and Mr. MacMahon, unnamed people "familiar" with "the events" or "the encounters," or "the operation," or "the gift" (according to the article, a Rolex watch given to a KPMG FAS

---

[1] The interview lasted several hours.

employee by Diligence, purportedly as a present from the British government), and to documents filed in a court proceeding in the British Virgin Islands. Diligence's "Emergency Motion" does not mention the BW Article.

Another article, "Eye on Corporate Espionage," that appeared in *Roll Call* on March 14, 2007 ("RC Article"), also asserts that a letter was sent by the Committee to Gordon Dobie, a Winston & Strawn LLP partner ("Mr. Dobie"), requesting information concerning the allegations that "Diligence employees, working for Barbour Griffith & Rogers and its client Alfa Bank, impersonated U.S. and British intelligence agents to covertly obtain proprietary information" from KPMG. Ex. 2. Mr. Dobie is quoted twice in the RC Article, stating first that Winston & Strawn will comply with the request; and secondly, that "the Committee will further learn how Alfa Group, its lobbyists and their agents broke U.S. laws and undermined national security by impersonating federal agents, and is alleged in litigation to have harmed a business rival by committing a billion dollar fraud." RC Article at 1.

The RC Article quotes Mr. MacMahon as stating that that he was unaware of Congressman Waxman's request. The RC Article also quotes from a publicly available complaint in a racketeering case against Defendants' client, the Alfa Group, that has been pending in United States District Court for the Southern District of New York since June 8, 2006. (*IPOC International Growth Fund, Ltd. v. Leonid Rozhetskin, Mikhail Fridman, Pyotr Aven, Alfa Group Consortium, Alfa Telecom (n/k/a Altimo), and Hans Bodmer*, Case No. 06 Civ. 4338 (VJM) (S.D.N.Y.). The complaint alleges that the defendants defrauded IPOC and the United States Treasury of millions and billions of dollars, respectively, and contains factual allegations very similar to the facts reported in the *Roll Call* article. Indeed, both the *Roll Call* article and the complaint filed in New York refer to Diligence falsely telling KPMG FAS that

5

Gretchen King, a Diligence employee, was "Liz from Langley" in order to procure confidential IPOC information. *See* Amended Complaint, ¶ 78 (docket # 36 in *IPOC v. Rozhetskin et al.*, No. 06 Civ. 4338 (S.D.N.Y.)).

On March 14, 2007, *The Politico*, a Capitol Hill paper that began publication in January 2007, published an article titled "Did Lobbyists Break the Law?" The article concerns a Congressional investigation to determine whether any United States laws were broken when Defendants in this case "impersonated British and U.S. intelligence operatives to obtain information helpful to a client." Mr. MacMahon, BGR's counsel and Nicholas Day, Diligence's CEO are both quoted in the article. Neither Mr. Dobie, nor anyone from Winston & Strawn LLP, is quoted at all. In the article, the author writes that Diligence employee Gretchen King "said she was 'Liz from Langley,' according to sealed court records that were copied and made available to *The Politico*." As noted above, that fact is alleged in court records in New York that are not under seal.[2]

Winston & Strawn LLP has neither disseminated documents filed under seal in this case nor provided information protected from disclosure by protective or other order entered in this case.

Diligence concedes, as it must, that "it is unclear whether the 'sealed court records that were copied and made available to Politico' [ ] were under-seal pleadings from the KPMG FAS Litigation or documents produced in the instant action that have been designated 'Confidential' or 'Attorney's Eyes Only.'" Mem. at 2. The most Diligence can allege concerning whether Winston

---

[2] Little information can be found on the Internet about the article's author, except that he apparently was, as recently as last August, a reporter for the *Des Moines Register* and authored an article titled "The Other Red Meat," dated August 12, 2006 concerning the "Cooking With Ostrich Contest." It thus appears that the journalist writes on a wide variety of subjects but does not have any particular qualification to determine whether the information he wrote about in the article for *The Politico* was indeed from " sealed court records."

& Strawn LLP has disseminated any document protected by the Protective Order is that it is "possible." *Id.* Diligence attempts to bolster its baseless accusations by attaching the Declaration of Mr. Day, who reports the hearsay that the author of *The Politico* article was informed of "information set forth in sealed court documents." Declaration of Mr. Day ("Day Decl") at ¶ 2. Diligence did not submit a declaration from the journalist who wrote the article, however. Neither *The Politico* article nor the Day Declaration identifies the "sealed court documents," or indicates name or number of the court case in which the documents are allegedly "sealed."

Diligence does accuse Winston & Strawn LLP of wrongdoing by filing, in a proceeding in the British Virgin Islands, an unredacted version of a January 25, 2006 transcript from the *KPMG FAS* case. Neither IPOC nor Winston & Strawn LLP are, or ever were, party or counsel to the *KPMG FAS* case. Indeed, Diligence opposed IPOC's effort to intervene in that case. *See KPMG FAS v. Diligence,* Docket #65.

Winston & Strawn LLP obtained the transcript when KPMG London voluntarily provided it to Winston & Strawn's London office. Winston & Strawn LLP subsequently filed the transcript on behalf of IPOC in a proceeding in the British Virgin Islands on June 12, 2006. The transcript has remained a public record ever since. Diligence freely admits that both Diligence and KPMG FAS have been aware of the filing of the transcript in the BVI proceeding since June 14, 2006. Declaration of Paul C. Rauser ("Rauser Decl.") ¶ 5. Yet Diligence has never taken any action to have the transcript sealed, redacted or withdrawn from the BVI proceeding.[3]

Instead, Diligence prefers to launch innuendo and accusations against Winston & Strawn LLP about this transcript. Indeed, Diligence previously raised this issue in its briefs concerning

---

[3] Diligence has never so much as informally asked Winston & Strawn LLP to take action to protect the transcript.

the Protective Order in this case. At the hearing on January 11, 2007, this Court told Diligence that if it sought relief for the dissemination of the transcript by KPMG it should seek relief from Judge Friedman in *KPMG FAS v. Diligence.*

Turning a deaf ear to the Court's previous admonition, Diligence continues to harp on the issue and refers to the transcript as "sealed." There is no Court order in *KPMG FAS v. Diligence* sealing the transcript. Court records in *KPMG FAS v. Diligence* reveal that during the entire January 25, 2006 hearing the courtroom was open to the public. Nonetheless, just before the end of the hearing Diligence's counsel asked the Court if a portion of the transcript could be placed under seal. Tr. at 16. The Court then asked the court reporter to produce the transcript, let counsel review it and "not file it in the court record until after they have submitted a stipulation to me as to how it should be redacted." Transcript at 36 (emphasis added). No such stipulation appears on the docket, and there is no order approving stipulated redactions to the transcript. Instead, nearly five (5) months after the hearing, a redacted version of the transcript was filed. *KPMG FAS v. Diligence,* docket entry # 63.

Diligence's counsel attests that the court reporter provided redacted and unredacted versions of the transcript only to Hughes Hubbard and Reed LLP (counsel for KPMG FAS) and Aegis Law Group LLP (counsel for Diligence). Rauser Decl. ¶ 6. But any stipulation by KPMG FAS to redactions had already been waived by the dissemination of the transcript (without redaction) to KPMG London, which in turn disseminated it to Winston & Strawn in London. Diligence's fanciful accusations about Winston & Strawn's alleged breaches of court orders concerning the transcript are simply inaccurate. And Diligence points to no other basis for concluding that Winston & Strawn LLP has violated any court orders. Diligence's Motion is meritless.

8

**ARGUMENT**

A.   **The Court Should Not Exercise its Powers to Cover Up Diligence's Outrageous Wrongdoing.**

Desperation and distraction appear to be the underlying motives for Diligence's motion. Diligence was caught red-handed impersonating U.S. and British government officials in an attempt to infiltrate a foreign government investigation.    As a result, Diligence is drawing negative attention not only from the media, but also from the United States Congress.  Diligence seeks "emergency" assistance from the Court to restrain dissemination of information about Diligence's own illegal activity.

The Court should refuse Diligence's pleas, not only because the accusations it hurls at IPOC's counsel are unfounded, but because the powers of the Court should not be abused in this way.  Information about the planning and commission of crimes and torts does not fall within the protective shield of Rule 26(c).  Diligence may be in a cloak-and-dagger, clandestine business, but that does not make Diligence's illegal conduct a "trade secret."[4]  Diligence has demonstrated no good cause for essentially seeking a "gag order" against IPOC's counsel.[5]  Nor is it conceivable that Diligence could demonstrate any good cause for concealing the facts of its illegal activity, particularly when those facts are in the public domain and spell out an incredible,

---

[4] Rule 26(c)(7) "authorizes the Court to order that a 'trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.'"  *See Does I-IV v. Yogi*, 110 F.R.D. 629, 632 (D.D.C. 1986); *accord In re ULLICO, Inc.*, 237 F.R.D. 314, 316 (D.D.C. 2006).

[5] The party seeking protection for its documents must demonstrate the "good cause," which requires the party to "articulate a real and specific harm," *PHE, Inc. v. Department of Justice*, 139 F.R.D. 249, 252 (D.D.C. 1991), and "articulate specific and particular facts showing good cause." *Avirgan v. Hull*, 118 F.R.D. 257, 261-62 (D.D.C. 1987); *see also United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C. 1981) ("particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements") (quoting 8 CHARLES ALAN WRIGHT & ARTHUR C. MILLER, FEDERAL PRACTICE & PROCEDURES § 2035 (1970)).

but true, tale of corporate espionage and impersonation of U.S. government officials.

**B.      Diligence's Speculation that Winston & Strawn LLP Has Disseminated Documents Filed Under Seal or Protected by Order Entered This Case is Baseless and Wrong.**

Counsel of record represents to the Court that they have done an investigation and determined that no materials that are either sealed in this proceeding or protected by the Protective Order entered in this proceeding have been disseminated by Winston & Strawn.[6] Nor has Winston provided these documents to even its own <u>clients</u>, let alone journalists.

Diligence freely admits that its Motion is based on the mere "possibility" that Winston & Strawn LLP has disseminated documents protected by the Protective Order in this case. Mem. at 2. Diligence bases its speculation on a reference in *The Politico* to "sealed court records that were copied and made available to Politico," (Mem. at 1), and on the Declaration of Nicholas Day, who claims that the *Politico* journalist says that Winston & Strawn LLP disclosed to him "information set forth in sealed court documents." Diligence, of course, supplies no declaration from the journalist, and the Day Declaration provides no indication of what "information" Winston & Strawn LLP allegedly provided, and it does not identify any "sealed court documents" from which the "information" allegedly was derived, nor the court or case in which the documents were allegedly sealed. It is therefore impossible to conclude that these so-called "sealed court documents" are sealed in this case. It may be that the reporter is confused about the transcript from the *KPMG FAS* case (that Diligence argues is sealed) or the amended complaint in the S.D.N.Y case (which is not sealed and states that Diligence employee Gretchen King was introduced to KPMG FAS as "Liz from Langley").

Winston & Strawn LLP has not disseminated any documents filed under seal in this case

---

[6] Counsel of record, including Mr. Dobie, will make themselves available to the Court concerning any further questions it may have about the allegations made against them by Diligence.

or protected from disclosure by protective order.  IPOC's counsel assured counsel for Defendants of this fact even before Diligence brought its accusatory motion.    Nonetheless, Diligence, apparently feeling protected by the immunity of court filings, implies that IPOC counsel Mr. Dobie is guilty of wrongdoing.  Diligence states that Mr. Dobie was "[q]uoted extensively in the [*Politico*] article."  Mem. at 1.  This is patently false.  Mr. Dobie is not quoted in the *Politico* article <u>at all</u>, nor is anyone from Winston & Strawn LLP.  There is no connection between Mr. Dobie and any protected information that Diligence alleges to have been disseminated, and no such connection can be made.    Diligence's CEO Nicholas Day and BGR's counsel Mr. MacMahon, however, are quoted in the *Politico* article.  According to Diligence's flawed logic, the Court should conclude that they showed *The Politico* sealed court records.  Of course, Diligence confines its unfounded speculation to accusations against IPOC and its counsel. Because these accusations have no basis in fact, the portions of the Memorandum that contain this implication should be stricken from the record and Diligence should be ordered to file a retraction.

**C.    Dissemination of the Transcript from *KPMG FAS v. Diligence* Violates No Order in this Case.**

Diligence attempts to make much of the so-called "sealed" transcript of the January 25, 2006 hearing in the *KPMG FAS* case.  IPOC was not a party to the *KPMG FAS* case, and Winston & Strawn LLP was not counsel of record for any party.  Thus, even if any order entered in that case sealed the transcript in question, neither IPOC nor Winston & Strawn LLP was bound by such order.[7]

---

[7] An order or judgment is binding only upon those who are themselves parties to the case and their privies. Fed. R. Civ. P. 65(d) (injunction "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them."); *Taylor v. FAA, 2005 U.S. Dist. LEXIS 4059* (D.D.C. 2005)*; In Re*

In fact, there is no order sealing or redacting the January 25, 2006 transcript, just as there is no order approving the redactions to the transcript. By all appearances, the redactions were done pursuant to an agreement between KPMG FAS, Diligence, and the court reporter. Neither IPOC nor its counsel were a party nor present. But KPMG London voluntarily gave Winston & Strawn LLP a copy of the unredacted transcript before the redacted version of the transcript was filed in the *KPMG FAS* case. Winston & Strawn LLP was therefore in rightful possession of the transcript, and obtained the transcript outside of discovery in this action. And the transcript is now in the public domain, it being a public record in a case in the British Virgin Islands.

Diligence has known the material was in the public domain for more than 9 months and has taken no action. Diligence prefers instead to misdirect accusations at IPOC and its counsel. There is no basis for this Court to sanction IPOC or its counsel for any conduct with respect to possession or filing of the transcript. And, as this Court told Diligence more than 2 months ago, if Diligence wants to request relief related to the dissemination of the transcript, it must go to Judge Friedman in *KPMG FAS v. Diligence*, not this case.

**D.    The First Amendment Prohibits an Order Restraining Winston's Speech Absent a Compelling Governmental Interest that is Not Present Here.**

Diligence also fails to appreciate that protective orders simply do not apply to information obtained outside the discovery process. This basic principle was explained and applied by the Supreme Court in *Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20 (1984). There, the Court stressed that "the party *may* disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's

---

*Subpoena Issued To Commodity Futures Trading Commission*, 2005 U.S. Dist. LEXIS 9074 (D.D.C. 2005) (non-party could not be bound by order as to which it was not a party and had no opportunity to make known its position); *Adams v. Bell*, 711 F.2d 161, 203 (D.C. Cir. 1983) ("Neither collateral estoppel nor comity principles bind nonparties or affect the relief available to them.").

processes." *Id.* at 34 (emphasis added).

The D.C. Circuit applied this holding in *In re Rafferty*, 864 F.2d 151 (D.C. Cir. 1994). There, a plaintiff received several disks of information from his employer's computers. *Id.* at 152. In an emergency motion, the employer sought return of the disks and all the information on them. *Id.* After a hearing, the magistrate judge allowed the plaintiff to keep a copy of the information on the disks, but placed the information under a protective order to which the parties had already agreed. Consequently, the plaintiff could not release the information to third parties, such as the U.S. Department of Justice. *Id.* The D.C. Circuit reversed. "It is clear to us that the magistrate exceeded his jurisdiction," the Court held, "by issuing the orders in this case and that the district court erred in affirming them." 864 F.2d at 155. Relying on *Seattle Times*, the Court explained that the plaintiff could not be prevented from disclosing information obtained outside of the discovery process. The employer, the Court continued, "is free to seek any legal or equitable relief available to them . . . . What [it] may not do, however, is use the happenstance of a discovery proceeding to place under a protective order materials not obtained through discovery." *Id.*

That is exactly what Diligence seeks to do here. As in *In re Rafferty*, Diligence seeks to place under a protective order materials not obtained through discovery, *e.g.*, the transcript of the January 25, 2006 hearing in *KPMG FAS v. Diligence*. Diligence's effort to circumvent *Seattle Times* and *In re Rafferty* must be rejected. *See also Int'l Prod. Corp. v. Koons*, 325 F.2d 403, 408 (2d Cir. 1963) (Friendly, J.) (order that curtailed disclosure of information obtained outside discovery process violates First Amendment).[8]

--------

[8] Prior to the filing of the Complaint in this action, counsel conducted an investigation of the facts alleged in its Complaint, and facts underlying Diligence's illegal conduct were provided to counsel. Of course, any portion of an investigation conducted at the request of the attorney is

Finally, the order sought by Diligence bears a heavy presumption of invalidity. Prior restraints such as Diligence seeks here may not be issued absent a compelling governmental interest. As the Supreme Court held in *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971 (per curiam), the First Amendment prohibits issuing an injunction, absent a compelling interest, restraining the publication of information received from a third party. And this compelling interest can be established only at a full hearing. *In re Providence Journal*, 820 F.2d 1342, 1351 (1st Cir. 1988). Diligence has failed to carry its burden of showing a compelling interest justifying a prior restraint.

## **CONCLUSION**

For the foregoing reasons, IPOC and Winston & Strawn LLP respectfully request that the Court deny the Motion.

Respectfully submitted,

IPOC INTERNATIONAL GROWTH FUND LIMITED

OF COUNSEL:

/s/ Carol A. Joffe

W. Gordon Dobie
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:    (312) 558-5600
Fax:    (312) 558-5700
wdobie@winston.com
kanderson@winston.com

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:    (202) 282-5000
Fax:    (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com

*Attorneys for IPOC International Growth Fund Limited*

---

attorney work product. We assume that Diligence is not seeking to invade Winston & Strawn LLP's work product.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2007, a true copy of the foregoing Opposition brief was served, via the Court's ECF system, on each of the following:

Michael Ross
Paul C. Rauser
Oliver Garcia
Aegis Law Group LLP
901 F. Street, N.W., Suite 500
Washington, DC 20004
*Counsel for Defendant Diligence LLC*

    and

Edward B. MacMahon, Jr.
P.O. Box 903
107 East Washington Street
Middleburg, VA 20118
*Counsel for Defendant Barbour Griffith & Rogers LLC*

/s/
_____
Carol A. Joffe