UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED,<br><br>        **Plaintiff,**<br>v.<br><br>DILIGENCE, LLC, and BARBOUR, GRIFFITH AND ROGERS, LLC,<br><br>        **Defendants.** | Civil Action No.<br>1:06CV01109 (PLF) (AK) |

**PLAINTIFF IPOC INTERNATIONAL GROWTH FUND LIMITED'S OPPOSITION TO BARBOUR GRIFFITH & ROGERS, LLC'S MOTION FOR ORDER TO SHOW CAUSE WHY W. GORDON DOBIE SHOULD NOT BE HELD IN CONTEMPT**

Plaintiff IPOC International Growth Fund Ltd. ("IPOC"), by counsel, files this Opposition to Defendant Barbour, Griffith and Rogers LLC's ("BGR's") Motion For Order To Show Cause Why W. Gordon Dobie, Esquire Should Not Be Held In Contempt ("Contempt Motion").

## INTRODUCTION

BGR's Motion is entirely baseless and should be denied. The Motion is based on mere conjecture, is defamatory and scandalous, and should be stricken from the record. BGR has not designated any document or information produced in this case as "confidential." Moreover, Mr. Dobie has provided no factual information, confidential or not, to the publications cited by BGR (*Business Week, Roll Call or The Politico*). His only contact with any of those publications was the provision of the quotation that appeared in *Roll Call* on March 14, 2007 and which contains no confidential information.

Likewise, BGR's Motion fails to identify any fact indicating that Mr. Dobie disclosed information protected by order in this case to anyone or otherwise acted in violation of an order in this case. Indeed, the few facts cited in BGR's Motion, even assuming they are true, are

insufficient to permit even an inference that Mr. Dobie violated any court order, let alone prove the allegation by the clear and convincing evidence required to prevail on a motion for civil contempt.

A *prima facie* case of contempt sufficient to warrant issuance of an order to show cause must be based upon factual allegations that link the alleged contemnor to the alleged violation and cannot be based upon mere speculation and insinuation. The Motion is based on nothing but BGR's own distorted inferences and was evidently interposed to consume the Court's time with collateral matters and to deflect the Court's attention from the Defendants' wrongful conduct. It should be denied and stricken from the record.

## FACTUAL BACKGROUND

On March 21, 2007, six days after Diligence filed its Emergency Motion for an Order Barring IPOC's Counsel From Further Dissemination of Information in Violation of This Court's Orders (Docket No. 103), BGR filed its Contempt Motion. The two motions are similar, focusing on the alleged disclosure of confidential information in several recent articles discussing aspects of this case. BGR's Motion groundlessly accuses IPOC counsel, W. Gordon Dobie, of furnishing reporters with confidential information.

Mr. Dobie is a partner at Winston & Strawn LLP. He is a 1986 graduate of Washington University School of Law, where he was Managing Editor of the Law Review and a member of the Order of the Coif. He has been a member of the Illinois Bar since 1986 and has never previously been the subject of any disciplinary proceeding or motion such as this one. Mr. Dobie has had no communications with *Business Week* magazine whatsoever. He had never heard of *The Politico* until after the relevant story appeared and had no communications with them. He did provide a quote for *Roll Call* magazine. Mr. Dobie has not sent, showed or discussed any

matters concerning this case, confidential or not, with any of these publications, other than the quote for *Roll Call*, and that quote did not concern confidential information.

The series of articles at issue began with a February 26, 2007, *Business Week* story entitled "Spies, Lies & KPMG." *See* Exh. B to BGR's Contempt Motion. The story provided a detailed description of how Diligence conducted its operation to infiltrate the audit of IPOC being conducted by KPMG on behalf of the Government of Bermuda. The article describes how Diligence's President, Nick Day, impersonated a British intelligence officer, contacted KPMG employee Guy Enright and convinced Mr. Enright to provide confidential documents to Mr. Day. The article references "documents filed in a court proceeding involving IPOC and Alfa in the British Virgin Islands," and on one occasion a document "produced in a federal court proceeding in Washington involving IPOC and Diligence[.]" No basis whatsoever exists to conclude the source is Mr. Dobie. Rather, it appears that the primary source for the *BusinessWeek* article is almost certainly someone affiliated with Diligence, likely its Chief Executive Officer Nick Day.

*BusinessWeek* attributes the facts in the article to an individual, or individuals, variously described as a "source" who is "familiar" with the Diligence operation. This source is described in the article as "a person familiar with the operation," "a person familiar with the situation," "the person familiar with the events," "people familiar with the events," etc. Numerous individuals affiliated with Diligence are "familiar with the events" and have disseminated information about the events widely, outside of this lawsuit, as Diligence is well aware. Indeed, when Diligence's former Chief Financial Officer, Igor Alexeev, sued Diligence, Diligence counterclaimed alleging that Mr. Alexeev had stolen documents from Diligence and that he had asserted that he intended

to use the documents to harm Diligence.[1] As Diligence and BGR are also aware, during the course of this lawsuit someone anonymously transmitted to undersigned counsel a document that appears to be an internal Diligence financial record. Exhibit 1. Beyond these disclosures of information, Diligence's CEO, Mr. Day, has spoken extensively with the press in recent days.

The *BusinessWeek* author states that he conducted an interview with Mr. Day in his Washington office and even describes Mr. Day as someone "who is dark-haired and has a warm smile[.]" The author further states that Mr. Day did not deny the account of events contained in the article. Numerous examples from the article indicate that only Mr. Day, or other Diligence employees, could be the source. For instance, the article contains the following passage:

> Day and Diligence took elaborate precautions to make sure Enright wasn't himself a plant or a corporate spy, ***people familiar with the events say***. Diligence employees followed Enright from his office to every meeting with Day. A Diligence employee was at each meeting spot before the men arrived to determine

---

[1] *Alexeev v. Diligence,* Superior Court of the District of Columbia, Civil Action No. 05-8589, Defendant's Answer and Counterclaims at ¶ 57 states:

> In or about late September 2005, Mr. Alexeev, without authorization, removed confidential internal documents and/or electronic data from the offices of Diligence, and has failed to return these documents to Diligence.
>
> In or about the second week of October 2005, Mr. Alexeev contacted one or more subordinate Diligence employees to request that internal and confidential Company emails be sent to Mr. Alexeev's personal e-mail account.
>
> In approximately mid-October 2005, Mr. Alexeev contacted a subordinate Diligence employee by telephone [and] indicated that, as Chief Financial Officer, he had access to a wide array of Company documents, and that he intended to use the documents against the Company. During the telephone call, Mr. Alexeev made various statements that constituted threats of retaliation against Diligence. Mr. Alexeev urged the employee to end his employment at Diligence, claiming that the employee could make twice or three times as much money at another company.
>
> Upon information and belief, Mr. Alexeev continues to wrongfully possess documents and/or electronic data that is the sole and exclusive property of Diligence.

> whether Enright was using associates for surveillance. Enright was followed to his destinations when meetings ended. When Day left the meetings with Enright, *the source says*, the Diligence executive followed a process spies call dry cleaning, which was designed to detect whether Day was being followed. He walked a prescribed route through several narrow "choke points" that made it possible for Diligence employees to identify anyone who might have been tailing him.

Exh. B to BGR's Contempt Motion, Page 6 of 11 (emphasis added). Nick Day and other Diligence employees who participated in the events certainly could be described as "people familiar" with the events described in the paragraph above. Likewise, who better than Nick Day himself could personally describe the procedures he used to ensure he was not being followed?

Similarly, the article states:

> As Project Yucca wound down in 2005, Day, still in the guise of Nick Hamilton, gave Enright a Rolex watch worth thousands of dollars, *according to two people familiar with the present*. Enright was led to believe it was a thank-you gift from the British government, but it, too, came from Diligence.

*Id.* at Page 7 of 11 (emphasis added). People who are "familiar with the present" described in this passage include Nick Day and KPMG's Guy Enright. Yet, the author of the article makes the express claim that Mr. Enright "declined repeated requests for comment on his relationship with Nick Day and his work on the IPOC audit," while stating that Mr. Day did not deny the facts in the article. Obviously, Mr. Enright was not a source for the article. Nick Day, however, likely was a source for this information.[2]

Recognizing that Nick Day and Diligence were the primary sources for the *Business Week* article is significant because the *Business Week* article triggered and explains the subsequent press stories related to this case. Chairman Waxman's letter indicates that the *Business Week* article attracted the House Oversight and Government Reform Committee's

---

[2] Mr. Alexeev and/or other Diligence employees could have been sources, as well.

interest in the facts of this case. Exhibit 2. The *Roll Call* article, published on March 14, 2007, appears to have been prompted by Chairman Waxman's letter. Exhibit 3.[3]

The *Roll Call* article is the first – and, indeed, the only – place Mr. Dobie is quoted in a news story related to this matter. There is absolutely nothing improper about Mr. Dobie's statement in the *Roll Call* article, which was a response to a request for comment on the House Committee letter.[4] The article also quotes Edward MacMahon Jr., counsel for BGR, whose statement regarding the Committee's letter is also quoted in the article. The article also references "two sources familiar with the contents of the documents" to be turned over to the House Committee, but there is no indication that Mr. Dobie was one of those sources. Mr. Day, Mr. MacMahon and numerous others associated with Diligence or BGR are familiar with the documents in question. Nothing in the article indicates that Mr. Dobie, as opposed to Mr. MacMahon, Mr. Day or someone else, was the source "familiar" with the documents.

On the same day the *Roll Call* article was published, March 14th, *The Politico* also published an article discussing the House Committee's interest in the activities of Diligence and BGR. Exh. C to BGR's Contempt Motion. Mr. Dobie is not quoted in the article, which is not surprising, because he did not even know of the existence of *The Politico* until after the article was published. Mr. Dobie is simply referenced as the recipient of the Committee's letter. The article, however, quotes both Mr. Day and Mr. MacMahon.

---

[3] BGR attaches what it purports to be a "true copy" of the *Roll Call* article as Exhibit A to its contempt motion. However, that attachment does not appear to be complete version of the article, nor does it appear to be taken from *Roll Call* directly, but rather from a source called "Oenus.net." A copy of the subject article taken directly from *Roll Call* itself is attached to this pleading.

[4] The letter to Mr. Dobie was posted on the internet by Congressman Waxman's office and is a matter of public record.

*The Politico* article refers to "sealed court records that were copied and made available" and that describe how Nick Day and Gretchen King targeted Guy Enright, including the fact that King identified herself as "Liz from Langley." Again, the article does not indicate that Mr. Dobie provided any such documents or information to the author. Yet, although the only indication from these articles is that Mr. Dobie provided a single, proper statement to the author of the *Roll Call* story, BGR leaps to the flawed conclusion that "improper disclosures were made by" Mr. Dobie.

BGR also argues that:

> [O]n the evening before the [*The Politico*] article was published, Mr. Patch called the undersigned and told me that Winston & Strawn planned to make an immediate production to Congress of all of the protected records so that the records, which as Mr. Dobie indicated in the article, could be produced to Congress without regards to any privileges or applicable protective orders, would be publicly available. Indeed, Mr. Patch said, Winston & Strawn intended to make immediate production to avoid any litigation with Diligence or BGR over the terms of the protective order entered in this case.

This statement, made by BGR's counsel Mr. MacMahon, however, provides only Mr. MacMahon's hearsay comment concerning what Mr. Patch of *The Politico* allegedly told him. BGR has carefully crafted an argument to imply, without saying, that Mr. Dobie talked with Mr. Patch and is, therefore, the source. Yet the truth is that Mr. Patch and Mr. Dobie have never met or spoken to one another.

BGR has neither produced, nor designated as "confidential," any documents in this case. Its Contempt Motion appears to be just a copycat maneuver, following on the heels of Diligence's equally groundless "emergency" motion that leveled similar accusations against IPOC's counsel. (Docket #103). BGR's Motion should be denied.

## **ARGUMENT**

A. **An Order to Show Cause Should Not Issue Where the Moving Party Will Be Unable to Prove the Alleged Contempt by Clear and Convincing Evidence.**

A party or its attorney can be held in civil contempt only after two requirements are met. First, "civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous." *Armstrong v. Executive Office of the President, Office of Administration*, 1 F.3d 1274, 1289 (D.C. Cir. 1993); *Stewart v. O'Neill*, 225 F.Supp.2d. 6, 10 (D.D.C. 2002); *Cobell v. Babbitt*, 37 F.Supp.2d 6, 9 (D.D.C. 1999).

Secondly, "the defendant must have violated that order." *Armstrong* at 1289 (citing *Food Lion v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1016-17 (D.C. Cir. 1997)); *see Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983); *In re Baum*, 606 F.2d 592, 593 (5th Cir. 1979); *Stewart*, 225 F.Supp. 2d at 9. In civil contempt proceedings, the burden of proof is on the moving party. *Food Lion*, 103 F.3d. at 1007; *Stewart*, 225 F.Supp. 2d at 9. BGR is thus required to come forward with a prima facie showing of facts that demonstrate the existence of a clear and unambiguous court order and facts that demonstrate that Mr. Dobie violated the order. *Stewart*, 225 F.Supp. 2d at 9.

"To satisfy these two required elements, the court must find facts meeting these two-elements by clear and convincing evidence." *Food Lion*, 103 F.3d. at 1016; *Stewart*, 225 F.Supp. 2d at 9; *Cobell v. Babbitt*, 37 F.Supp.2d 6, 9 (D. D.C. 1999) (citing *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183-84 (D.C. Cir. 1981)); *Washington-Baltimore Newspaper Guild v. The Washington Post Co*, 626 F.2d 1029, 1031 (D.C. Cir. 1981). BGR thus must show by clear and convincing evidence that there were one or more clear and unambiguous orders that bound Mr. Dobie, and must show by clear and convincing evidence that Mr. Dobie engaged in conduct that violated one or more of those orders.

"[T]he clear-and-convincing standard [is] most akin to the process of evaluating testimony 'in a light most favorable to the defendant;' the fact finder must recognize the evidence with respect to which he or she is uncertain, and put that evidence in the defendant's pile . . . [and] give the benefit of the doubt to the defendant." *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994). Thus, the burden is on BGR to prove "a firm conviction of the truth" that Mr. Dobie violated a court order. Clear and convincing evidence is a higher standard of proof than is the usual preponderance of the evidence, which requires "evidence which as a whole shows that the fact sought to be provided is more probable than not." *Id.* The allegations in BGR's Motion do not even set forth facts that meet the lower preponderance of the evidence standard and fall far short of setting forth facts that if true would prove contempt by clear and convincing evidence. *See Stewart,* 225 F.Supp. 2d at 9-10, 15.

### B. Orders from the *KPMG v. Diligence* Case are Irrelevant to This Motion.

BGR alleges that Mr. Dobie violated three court orders but has at least vague reference to four. The first is the Protective Order entered in this case on February 8, 2007. It is undisputed that all parties and attorneys in this case are subject to that order.

BGR also alleges that Mr. Dobie violated three orders entered in a separate case, *KPMG Financial Advisory Services, et al v. Diligence, LLC,* Civil Action No. 05-2204 (PLF) (AK) (*"KPMG FAS v. Diligence"*). Mem. at 6.[5] The requested order to show cause should not issue

---

[5] It is unclear which orders in *KPMG FAS v. Diligence* BGR alleges that Mr. Dobie violated. First, BGR seems to allege that one is an order entered on November 10, 2005 by the Honorable Thomas Hogan, but court records demonstrate that was a temporary order that has not been in effect since November 11, 2005. BGR also references the protective order entered in that case but, again, neither Mr. Dobie, nor IPOC, nor BGR were parties to the case or any order entered in that case. Finally, BGR references what it calls "a different sealing order entered in the KPMG-FAS case" but fails to identify the alleged sealing order any more specifically.

even assuming, solely for the sake of defending against the Contempt Motion, that Mr. Dobie violated an order in *KPMG FAS v. Diligence*. Mr. Dobie was neither a party nor counsel in that case and BGR cites no legal authority for the apparent claim that Mr. Dobie may be held in contempt for violating an order in a case to which he was neither a party or counsel.

Indeed, BGR's efforts must fail because an order or judgment is binding only upon those who are themselves parties to the case and their privies.

> In general, "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." This rule is merely, as the Supreme Court has noted, a necessary corollary to the oftstated principle that " 'everyone should have his own day in court.' " Thus, unless one is joined as a party to an action, one is generally not bound by the result, no matter whether that result is reached voluntarily by the parties or imposed upon them by the court.

*Cleveland County Assn for Gov't by the People v. Cleveland County Bd. of Comms'rs*, 142 F.3d 468 (D.C. Cir. 1998) (citing *Martin v. Wilks*, 490 U.S. 755, 762, 765, 768 (1989)).[6] Furthermore, IPOC never became a party to *KPMG FAS v. Diligence* because its motion to intervene was denied. And although it should go without saying, BGR obviously has no standing to attempt to enforce orders entered in a case to which BGR was not a party.

Nevertheless, as it has previously done, BGR claims that an unspecified "sealing order" was violated when Winston & Strawn filed a "sealed" *KPMG FAS v. Diligence* transcript in

---

[6] *See* Fed. R. Civ. P. 65(d) (injunction "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them."); *Taylor v. FAA*, 2005 U.S. Dist. LEXIS 4059 (D.D.C. 2005); *In Re Subpoena Issued To Commodity Futures Trading Commission*, 2005 U.S. Dist. LEXIS 9074 (D.D.C. 2005) (non-party could not be bound by order as to which it was not a party and had no opportunity to make known its position); *Adams v. Bell*, 711 F.2d 161, 203 (D.C. Cir. 1983) ("Neither collateral estoppel nor comity principles bind nonparties or affect the relief available to them."); *see also NBA Properties, Inc. v. Gold*, 895 F.2d 30, 33 (3d Cir. 1990) ("[T]he franchisees are not the defendants in this case; and, as Learned Hand pointed out, an injunction does not forbid 'the act described…, but only that act *when the defendant does it.*") (emphasis in original) (citing *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930)).

proceedings in the British Virgin Islands in 2006. The alleged events have nothing to do with Mr. Dobie in any case.[7] Winston & Strawn obtained the transcript when KPMG London voluntarily provided it to Winston & Strawn's London office. Winston & Strawn subsequently filed the transcript on behalf of IPOC in a proceeding in the British Virgin Islands on June 12, 2006. The transcript has remained a public record ever since.[8]

As this Court has already advised Diligence at the hearing on January 11, 2007, if it wishes to seek relief for the dissemination of the transcript by KPMG it should seek relief from Judge Friedman in *KPMG FAS v. Diligence*. Obviously, BGR cannot do so since it was not a party to that case.

No order in *KPMG FAS v. Diligence* can support a contempt finding against Mr. Dobie and, therefore, the Motion should be denied.

### C. The Contempt Motion Fails to Establish a Prima Facie Case that Mr. Dobie Violated An Order.

BGR alleges that Mr. Dobie provided information to reporters and has violated the Protective Order entered in this case. The Protective Order permits a party to designate "information" as "Confidential" or "Attorneys' Eyes Only" by affixing to the document, material or thing "a stamp bearing the words 'Confidential – Subject to Protective Order' or 'Attorneys' Eyes Only – Subject to Protective Order.'" P.O. ¶ 14. Once so designated, disclosure is restricted pursuant to the terms of the Protective Order.

---

[7] BGR claims that on January 11, 2007 Mr. Dobie argued to the Court that release of the transcript "was the result of an oversight" but does not include a transcript citation for the claim.

[8] Of course, BGR fails to identify any Court order in *KPMG FAS v. Diligence* sealing the transcript in the first place. The Courtroom was open to the public during the entire January 25, 2006 hearing and although the Court directed that the reporter not file the transcript until counsel had an opportunity to review it and submit "a stipulation to [Judge Friedman] as to how it should be redacted" (transcript at 36), no such stipulation appears on the docket, and there is no order approving stipulated redactions to the transcript.

BGR presents no facts that, if proven, would demonstrate that Mr. Dobie has violated this Court's protective order. Instead, BGR presents unwarranted inferences and blatant misrepresentations of fact, and then simply concludes, without drawing any connection between inference and conclusion, that Mr. Dobie improperly provided documents to reporters. BGR's actual allegations concerning information that Mr. Dobie allegedly disseminated are sparse. None can form the basis to issue an Order to Show Cause Why Mr. Dobie Should Be Held in Contempt. Each allegation will be taken in turn.

1. BGR asserts that "[i]n the *Roll Call* article, Mr. Dobie indicates that he is 'pleased' to have received the letter [from a Congressional Committee] and [ ] states that the Committee will learn that 'Alfa Group, its lobbyists and their agents broke U.S. laws and undermined national security by impersonation of federal agents.'" Mem. at 2. BGR does not – and cannot – assert that anything attributed to Mr. Dobie here violates the protective order in this case. The information imparted is contained in IPOC's complaint in this case and Mr. Dobie's description of his feelings about a Congressional Investigation certainly cannot violate a Protective Order.

2. In further reference to the *Roll Call* article, BGR states:

> A review of that article, with specific references to factual allegations, shows, beyond question, that Mr. Dobie either provided protected or sealed documents to the reporter or otherwise disclosed the contents of same. For example, the article states that "[t]he currently sealed documents also will show that Diligence employees and at least one KPMG employee were tape-recorded, and that the tape was played for at least one Barbour Griffith employee said two sources familiar with the contents of the documents."

Mem. at 2-3. Although this passage is the heart of BGR's alleged "evidence" that Mr. Dobie improperly provided information to the author of the *Roll Call* article, it actually provides no such evidence. The article does not attribute to Mr. Dobie the statement alleged to be contained in "sealed documents." Indeed, the context indicates otherwise, referring to "two sources."

12

Secondly, because BGR brought this Motion alleging that Mr. Dobie disseminated protected information, the burden is on BGR to identify the document it alleges to contain the protected information. BGR however does not identify any document produced that contains the allegedly "sealed" information.

3. BGR states that "[a]dditional examples of improper disclosures of protected information abound from a simple review of the article." The *Roll Call* article does not suggest that any information was provided by Mr. Dobie. BGR fails to meet its burden to set forth the facts upon which it bases its Contempt Motion.

4. BGR states that "[t]his Court has already received an affidavit from Mr. Day which states that Mr. Patch has told him that Winston & Strawn was the source for the information" in an article in *The Politico* on March 14, 2007. Mem. at 3. Mr. Day's Declaration says nothing about Mr. Dobie, who is the sole subject of BGR's contempt motion. Neither BGR nor Diligence has so much as asserted that Mr. Dobie and Mr. Patch have ever spoken, which they have not.

5. BGR asserts that "Mr. Dobie is referenced in the Politico.com article and is either the person that gave Mr. Patch 'sealed court records that were copied and made available to Politico' or can tell the Court who did." Mem at 3. BGR's conclusion that Mr. Dobie either gave sealed records to Mr. Patch or can tell the Court who did is mere conjecture by BGR. One could more reasonably conclude that the information came from either BGR's counsel, Mr. MacMahon, or Diligence's Chief Executive Officer, Mr. Day, who are both quoted in the article. Mr. Dobie is not quoted in the *Politico* article, and the only reference to him is that he "received a letter from Waxman that seeks all the documents the law firm has related to the dispute and lawsuit filed in U.S. District Court by IPOC against BGR and Diligence." Exhibit C to BGR's

13

Motion. As BGR is undoubtedly aware, the letter to Mr. Dobie was posted on the internet by Congressman Waxman's office.

7. Mr. MacMahon contends that *The Politico*'s Mr. Patch called him and stated that Winston & Strawn intended to make an immediate production to Congress of all the protected materials without regard to any protective orders. Whatever Mr. Patch did or did not tell Mr. MacMahon about what "Winston & Strawn" intended to do is totally irrelevant because BGR makes no claim that Mr. Dobie has produced any documents protected by order in this case to Congressman Waxman. Mem at 3.

7. BGR states that "[t]he documents that were apparently shown to these two reporters had been obtained by IPOC by subpoena to KPMG-FAS' counsel." BGR, however, does not identify anywhere in it its Contempt Motion which documents it alleges were shown to the reporters. Mem at 5. BGR also states that "the disclosed information was subject to the clear terms of the Protective Order," but nowhere does BGR identify the allegedly "disclosed information" much less point to any evidence that any protected information was provided to anyone by Mr. Dobie. Mem. at 5.

8. BGR also states "[s]everal of the matters disclosed in the *Roll Call and Politico.com* story were subject to this Court's sealing order," but fails to identify any such matter. Mem. at 6.

\* \* \*

BGR thus identifies only a single piece of information that it claims to be contained in "sealed" documents– that "Diligence employees and at least one KPMG employee were tape-recorded, and [] the tape was played for at least one Barbour Griffith employee, said two sources familiar with the content of the documents." Mem. at 3. But BGR fails to identify any document (sealed or not) that contains the allegedly protected information. Since BGR identifies no

document protected by order of this court that contains the allegedly protected information, there is no basis for BGR's claim that Mr. Dobie violated the protective order in this case.

Moreover, nothing in any of the articles referenced or attached to BGR's Contempt Motion, not even the quotation from the *Roll Call* article upon which BGR asserts the Motion is based, contains any information that even suggests the source of any allegedly "leaked" information is Mr. Dobie. Indeed, the *Roll Call* article, including the quotation from Mr. Dobie itself, suggests otherwise. Any inference that the source must have been Mr. Dobie because he was otherwise quoted in the article points equally to Mr. MacMahon, who himself is quoted in the *Roll Call* article, as well as each of the other articles attached to BGR's Motion. Moreover, review of all the articles strongly suggests that the most significant source of information for all the articles was Mr. Day, who is quoted repeatedly. There are numerous other potential sources, including Mr. Alexeev and other participants in the events described, who are clearly familiar with the events.

BGR's allegations are insufficient to provide support for an order to show cause, let alone to demonstrate "a firm conviction of the truth" that Mr. Dobie is guilty of action that violates a court order. BGR's contempt motion fails to even establish a *prima facie* case that Mr. Dobie is in contempt. BGR's motion should be denied and stricken.

### D. BGR's Contempt Motion Is Improper Because BGR Has No Standing to Make the Allegations of Contempt Against Mr. Dobie.

While the Motion should be denied because BGR has failed to state even a *prima facie* case requiring Mr. Dobie to defend the allegations of contempt, it should also be denied because BGR has no standing to bring the Motion for contempt based upon the allegation that Mr. Dobie disclosed documents to reporters in violation of a protective order. The only documents that have been produced in this case were from non-party Hughes, Hubbard & Reed ("HHR"),

15

outside counsel to KPMG-FAS in its litigation with Diligence. Thus, it is only these documents that could have been provided to the reporters.

BGR, however, holds no legitimate expectation of confidentiality in these documents or any of the information contained therein. BGR has placed no confidentiality designations on any document in this case. Although the HHR production contains material from the *KPMG v. Diligence* case, BGR was not a party to that litigation and does not have an expectation of confidentiality arising out of the protective order in that case.[9] Nor does BGR identify any other document upon which the Contempt Motion is based in which BGR has an interest.

### E. BGR's Contempt Motion Violates Rule 11 Because It Is Solely Designed To Harass, Cause Delay, And Needlessly Increase Costs.

Rule 11 of the Federal Rules of Civil Procedure prohibits a party from filing any pleading "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." BGR's contempt motion violates each of the prohibitions of this rule. As explained above, BGR's motion fails to even state a *prima facie* case that Mr. Dobie has violated any court order. BGR's supposed "evidence" is nothing but its own speculation, inference, and false statements of fact. BGR's assertion of a contempt motion against Mr. Dobie based on such a lack of evidence can only be designed to harass IPOC, by forcing its outside counsel to defend against serious charges for which there is simply no evidence. Furthermore, the fact that BGR's contempt motion was filed shortly after Diligence filed a similar motion – which similarly lacked any evidentiary support – indicates that BGR is looking to simply "pile on" IPOC and Winston & Strawn. Obviously, such a motive is an improper basis for BGR to file a motion. In short, BGR's motion causes pointless delay by

---

[9] For the same reasons, BGR's assertions regarding the supposed violation of a sealing order in the KPMG-FAS case by IPOC or its attorneys is irrelevant to this matter.

forcing this Court to address this motion rather than other pending motions and forcing IPOC to incur needless costs and attorney's fees by defending the motion.

## **CONCLUSION**

For all of the foregoing reasons, this Court should deny BGR's Motion for Order to Show Cause Why W. Gordon Dobie Should Not Be Held in Contempt and strike BGR's contempt motion from the record.

| | |
|---|---|
| April 5, 2007 | IPOC INTERNATIONAL GROWTH FUND LIMITED |
| | /s/ Carol A. Joffe |
| OF COUNSEL:<br>W. Gordon Dobie<br>Kimball R. Anderson<br>WINSTON & STRAWN LLP<br>35 W. Wacker Drive<br>Chicago, Illinois 60601<br>Tel:   (312) 558-5600<br>Fax:   (312) 558-5700<br>wdobie@winston.com<br>kanderson@winston.com | Timothy M. Broas (D.C. Bar No. 391145)<br>Carol A. Joffe (D.C. Bar No. 351528)<br>Anne W. Stukes (D.C. Bar No. 469446)<br>WINSTON & STRAWN LLP<br>1700 K Street, N.W.<br>Washington, D.C. 20006<br>Tel:   (202) 282-5000<br>Fax:   (202) 282-5100<br>tbroas@winston.com<br>cjoffe@winston.com<br>astukes@winston.com |

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2007, I caused the foregoing Opposition of IPOC to Defendant Barbour, Griffith and Rogers LLC's ("BGR's") Motion For Order To Show Cause Why W. Gordon Dobie, Esquire Should Not Be Held In Contempt to be served electronically, via the Court's electronic filing system, on:

>Michael Ross
>Paul C. Rauser
>Oliver Garcia
>Aegis Law Group LLP
>901 F. Street, N.W., Suite 500
>Washington, DC 20004
>*Counsel for Defendant Diligence LLC*
>
>and
>
>Edward B. MacMahon, Jr.
>P.O. Box 903
>107 East Washington Street
>Middleburg, VA 20118
>*Counsel for Defendant Barbour Griffith & Rogers LLC*

>___/s/_____
>Carol A. Joffe