**REDACTED VERSION FOR PUBLIC FILING**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED,<br><br>  Plaintiff,<br>v.<br><br>DILIGENCE, LLC, et. al<br><br>  Defendants. | Civil Action No.<br>1:06CV01109 (PLF) (AK) |

## IPOC INTERNATIONAL GROWTH FUND LIMITED'S MOTION PURSUANT TO PROTECTIVE ORDER TO REMOVE CONFIDENTIALITY DESIGNATIONS

Plaintiff IPOC International Growth Fund Limited ("IPOC") respectfully moves the Court to order removal of confidentiality designations placed by Defendant, Diligence, LLC ("Diligence") and non-party Hughes Hubbard & Reed, LLC ("HHR"). The grounds for this motion are set forth in the accompanying memorandum of law.

IPOC and HHR have resolved a substantial portion, but not all, of their differences regarding the matters raised by this Motion. IPOC's several attempts to meet and confer with Diligence to resolve the disputed issues have been unsuccessful.

April 13, 2007

OF COUNSEL:
W. Gordon Dobie
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:  (312) 558-5600
Fax:  (312) 558-5700
wdobie@winston.com
kanderson@winston.com

IPOC INTERNATIONAL GROWTH FUND LIMITED
/s/ Carol A. Joffe
Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:  (202) 282-5000
Fax:  (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IPOC INTERNATIONAL GROWTH FUND LIMITED,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:06CV01109 (PLF) (AK) |
| **DILIGENCE, LLC, et. al** | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF IPOC'S MOTION PURSUANT TO PROTECTIVE ORDER TO REMOVE CONFIDENTIALITY DESIGNATIONS

Plaintiff IPOC International Growth Fund Limited ("IPOC") submits this memorandum in support of its Motion Pursuant to Protective Order to Remove Confidentiality Designations ("Designations"). The Designations must be removed because (1) the right to contest removal of the Designations has been waived and (2) "good cause" for the Designations has not been shown.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.  The Protective Order Permits Restrictive Designations to Be Placed on Documents Produced but, Once Challenged, Requires Removal Unless a Valid Basis Under Rule 26(c) is Demonstrated.**

The blanket Protective Order ("Order") entered in this case is designed to allow parties and non-parties to designate documents as "Confidential" or "Attorney's Eyes Only," but it balances the designation process with two critical checks on the party making such Designations (the "Designating Party"). First, the Order commands that any Designation made constitutes a representation that the matter has been reviewed by an attorney and there is good cause under Rule 26(c) for the Designation. Order ¶ 11.[1] Second, once a Designation is made, the Order

---

[1] This paragraph reads:

affords any other party the opportunity to request that the Designating Party remove it within five days of receiving the request. P.O. ¶ 17. The Protective Order also requires that if the Designating Party refuses to remove a designation as requested, the Designating Party must, in writing, "state the reasons" for the refusal. *Id.*

    **B.**    **Placement of Restrictive Designations by Non-Party Hughes Hubbard & Reed LLP and Diligence.**

Last July, IPOC served on Hughes Hubbard & Reed LLP ("HHR") a subpoena for documents related to the lawsuit filed by KPMG Financial Advisory Services, Limited ("KPMG FAS") against Diligence.[2] IPOC's subpoena to HHR remained outstanding initially because there was a stay of discovery and, later, because HHR refused to produce certain documents until a protective order was entered in this case.

IPOC provided to HHR a copy of the Protective Order in this case, which permits a "non-party responding to a subpoena issued in this action who agrees in writing to be bound by this Protective Order []" to produce documents in accord with the terms of the Protective Order, including the designation of documents as "Confidential" or "AEO." Thereafter, HHR produced documents, including one deposition transcript ("Documents"). HHR elected to proceed under

---

    The designation of information as "Confidential" or "Attorneys' Eyes Only" by any party to this case or by KPMG Financial Advisory Services (or its counsel at the law firm of Hughes, Hubbard & Reed LLP) constitutes a representation by the Supplying Party that the discovery material has been reviewed by attorney and that there is a valid basis for such designation pursuant to Federal Rule of Civil Procedure 26(c).

Protective Order ¶ 11.

[2] HHR obtained the documents in discovery while serving as counsel for KPMG FAS. In that lawsuit, Diligence designated nearly all documents produced as either "Confidential" or "AEO." Although HHR moved to remove many of Diligence's designations, the court did not determine there to be "good cause" for the designations, as is required by Rule 26(c), because HHR withdrew its motion and the case settled.

2

the terms of the Protective Order (P.O. ¶ 8) and placed HHR's "Confidential" and "AEO" designations on more than 90% of the Documents.[3]

On February 28, 2007, Diligence designated as "Confidential" all the Documents designated by HHR as either "Confidential" or "AEO."

### C. HHR and Diligence Fail to Provide Reasons for their Refusal To Remove Designations as Required by the Protective Order.

IPOC reviewed the designations and, in accord with the dictates of the Protective Order, served on HHR and on Diligence written requests to remove the Designations from Documents that do not warrant protection under Rule 26(c) or the Protective Order.[4] HHR initially refused to remove any Designations but, after IPOC's second written request and discussion by counsel, HHR provided a list of documents from which it agreed to remove its Designations. HHR, nevertheless, failed to provide IPOC with a written statement of the reasons for the refusal to remove the Designations from the remaining Documents, as is required by the Protective Order. P.O. ¶ 17. The Documents from which HHR refuses to remove the Designations are identified on Exhibit A.[5]

Diligence, on the other hand, asserted that it could not identify the documents from which IPOC sought to remove the Designations and demanded that IPOC first provide reasons for the

---

[3] Although HHR did not return the signature page of the Protective Order signed by HHR until April 10, 2007, both IPOC and HHR have acted in good faith belief that HHR was bound by the Protective Order. By letters dated March 12, and April 10, 2007, HHR indicated that it had made its designations under the Protective Order in this case.

[4] IPOC did not request that either HHR or Diligence remove the designations from the Documents that contain or reflect information gathered or generated by KPMG FAS in the course of its work for the Bermuda Minister of Finance and that is required by Bermuda law to be kept confidential.

[5] HHR and IPOC have continued to discuss the issues related to the designations by phone and letter. At IPOC's request HHR did on April 10, 2007 return the signature page of the Protective Order signed by HHR.

request to remove the Designations. Exhibit B. IPOC responded by identifying the precise Bates ranges of the documents, reminded Diligence that the Protective Order specifically requires Diligence to provide the reasons for its Designations, offered Diligence another opportunity to remove the Designations or provide reasons for its refusal, and proposed a conference on March 21, 2007 to resolve any dispute. Ex. C.

Diligence did not respond to IPOC's second letter. When IPOC asked if Diligence intended to respond, counsel promised to get back to IPOC but has not done so. IPOC has been unable to obtain Diligence's agreement to meet and confer despite repeated attempts.

**D.    The Documents Do Not Reveal A Basis for Restrictive Designations.**

The Designations were placed on documents that range from commonplace ones, such as cash register receipts, web pages, blank forms and a business card, to documents that specify Diligence's plots to ███████████████████████████████ ███. Exhibits D and E. Many are emails or other materials that were sent or shown to one or more third parties. See Exhibits F (identifying sample documents designated "Confidential" whose face reflect dissemination outside of Diligence.)

None of the Documents contain confidential competitive commercial information, such as trade secrets, or personal information, such as social security numbers or information of an "intimate, personal nature," that is entitled to protection under the Protective Order or Rule 26(c). Rather, the documents detail Diligence's tortious plans and actions against IPOC, including:

a. ███████████████████████████████████:



i. "████████████████████████████████████████████████████" HHR 02338. Exhibit E, Tab 1

4

      ii. "███████████████████████████████████" HHR02340-02341 at 02340. Exhibit E, Tab 2.

      iii. "███████████████████████████████████" HHR02357-02361 at HHR 02359. Exhibit E, Tab 3.

      iv. "███████████████████████████████████." *Id.*

      v. "███████████████████" *Id.*

      vi. "███████████████████████████████████" *Id.*

      vii. "███████████████████████████████████" *Id.*

b. ███████████████████████████████████ HHR02357, *Id.* ("███████"); HHR 00351-HHR00352 (KPMG BM's "███████" "█████████"). Exhibit E, Tab 4.

c. ███████████████████████ HHR02357 ("███████████") HHR02358 ("███████"); HHR02339 ("███████"); HHR02340-02340 ("███████████████") *See* Exhibit E, Tab 2 and 3.

d. ███████████████████████████████████:

      i. "███████████████████") HHR02339 Exhibit E, Tab 1.

      ii. "███████████████████████████████████" HHR02338 at 02339. *Id.*

e. ███████████████████

      i. "█████████." HHR0558. Exhibit E, Tab 3.

      ii. "█████████████." *Id.*

      iii. "█████████████" *Id.*

    f. ██████████████████████████ (HHR00089); █████ (HHR00106). Exhibit E, Tab 6.

Further, the documents reveal the particulars of Diligence's scheme, including the ███████████████" HHR 00351 (Exhibit E, Tab 4) and use of "████" to ████ ██████████████████████████████████████. These strategies included:

    a. ██████████████████████████████." HHR02230. Exhibit E, Tab 13.

    b. ██████████████████████████" (HHR02303). Exhibit E, Tab 7.

    c. ██████████████████████████ HHR02294-HHR02302, HHR 00425-00443 (█████████████); HHR00444-00455 (Exhibit E, Tab 8) (█████████) HHR 00495-00506 (█████████).

    d. ██████████████████████████████████" HHR02306 Ex. E, Tab 9.

    e. ██████████████████████ (HHR 1428), ████████ (HHR 1800), ████████. Exhibit E, Tab 10

Indeed, the documents describe Diligence's purpose in █████ IPOC—namely, █████ the company:

  a. "███████████████." HHR02350, HHR02358 Exhibit E, Tab 3.

  b. "███████████████." HHR00353 Exhibit E, Tab 14.

  c. "███████████████." HHR02357 Exhibit E, Tab 3.

The documents also show that Diligence planned ███████████████████████████████████████████████████████████████████████████████████.

  a. "███████████████████████████████████████████." HHR02360-02361 at HHR 02360 Exhibit E, Tab 3.

  b. "███████████████████████████████████████████." HHR02340-02341 at 02340 Exhibit E, Tab 2.

  c. "███████████████████████████████████████████." HHR 02338 at 02339, Exhibit E, Tab 1.

Many of the documents contain information that has already been disclosed far beyond those categories of individuals designated to receive "confidential" or "AEO" materials, respectively, under the Protective Order. P.O. ¶¶ 19-20.[6] Measures were not taken to maintain the confidentiality of the challenged Documents and quite a large number are even addressed, or were long ago shown, to third parties. Exhibit F.

---

[6] In addition to the Court and its personnel, reporters, vendors and mock jurors, "Confidential" material may be shown only to the named parties and their officers and directors and counsel for each party to this action; and "AEO" material is further limited to outside counsel.

Individuals formerly and currently affiliated with Diligence have knowledge of the facts and circumstances described in the documents and many of the documents themselves have been widely disseminated outside of this, or any other, lawsuit, as Diligence is well-aware.

- Diligence states in pleadings, filed in 2005 in the public record in the Superior Court of the District of Columbia, that Diligence's former Chief Financial Officer, Igor Alexeev, had stolen documents from Diligence and that Mr. Alexeev intended to use the documents to harm Diligence. Exhibit G, ¶ 57.

- A package including many of the Documents was delivered by an unknown source to a KPMG International office in Montvale, New Jersey in the fall of 2005 ("Montvale Documents"). Exhibit H.

- The Montvale Documents were delivered to ███████████████████████ ███████████████.[7] *Id.*

- The unknown source of the Montvale Documents has had possession of the Montvale Documents since 2005.

- More recently, Mr. Day, Diligence's Chief Executive Officer, discussed the facts underlying this case and that are contained in the Designated documents with the press. *Spies, Lies & KPMG, BusinessWeek online,* February 26, 2007. Exhibit I

IPOC has made several attempts to meet and confer with Diligence concerning this dispute but has been unable to obtain Diligence's agreement to attend such a conference.

---

[7] Both KPMG International, Montvale, NJ and KPMG London are entities separate from KPMG FAS and are in no way related to Diligence.

IPOC and HHR have conferred and resolved some of the issues between them but have been unable to resolve all disputed issues. IPOC thus has moved the Court to enter an Order directing that the Designations identified on Exhibit A hereto be removed.

## ARGUMENT

The Designations should be lifted from the Documents identified in Exhibit A, first, because the failure of HHR and Diligence to provide IPOC with a timely, written statement of the reasons for their respective refusals to remove the designations waived their right to object to removal of the Designations and, secondly, because no "good cause" for the Designations exists.

### A.  Failure To Provide Reasons For Refusal to Remove the Designations, As Required By The Protective Order, Waived The Right To Oppose Removal.

Under this Court's decisions, the failure to provide a written response within five days of receiving IPOC's written objection waived the Designating Party's right to ask the Court to retain the designations. In *Atherige v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181 (D.D.C. 1998), for example, this Court held that the defendant waived its right to object to a document request because it failed to lodge specific objections. *Id.* This Court explained that the "Federal Rules speak directly to the necessity to state objections with specificity with regard to responses to interrogatories. Rule 33 provides that 'all grounds for an objection to an interrogatory shall be stated with specificity' and that 'any ground not stated in a timely objection is waived.'" *Id.* "Although Rule 34 governing production of documents does not contain identical language," this Court concluded that "no reason exists to distinguish between interrogatories and requests for production as to the requirement for specificity and the risk of waiver." *Id.*

The same principle applies here. This Court's Order requires the Designating Party to provide, within five days after receiving IPOC's objection, a "written response" that "state[s] the reasons" for its refusal to remove the designations. P.O. ¶ 17. Despite the passage of more than

the required time since IPOC's requests for removal of the Designations, Diligence has not responded at all and, while HHR has agreed to remove a large portion of the Designations, it has not provided the reasons for its refusal to remove the remaining Designations. As with a party's failure to specify its objections to interrogatories or document requests, the Designating Party's failure to provide its reasons for refusing to remove the Designations constitutes a waiver. *Atherige*, 184 F.R.D. at 181; accord *Caldwell v. Center for Corr. Health & Policy Studies, Inc.*, 228 F.R.D. 40, 44 (D.D.C. 2005) (holding objection waived for lack of specificity); *Doe v. District of Columbia*, 230 F.R.D. 47, 52 (D.D.C. 2005) (same).

### B. Neither Diligence Nor HHR Have Demonstrated the Required "Good Cause" for the Designations.

Even if the Designating Parties' refusal to follow this Court's order did not constitute a waiver, neither Diligence nor HHR has or can show good cause for the Designations. Under Rule 26(c), a protective order may be granted only "for good cause shown." Fed. R. Civ. P. 26(c); *Univ. of Massachusetts v. Roslin Inst.*, 437 F.Supp. 2d 57, 60 (D.D.C. 2006) ("A district court may not grant a protective order without a showing of good cause.") (citing *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1411).

The party seeking the protective order bears the burden of demonstrating good cause under Rule 26(c). *Univ. of Massachusetts v. Roslin Inst.*, 437 F.Supp. 2d 57, 60 (D.D.C. 2006). Even where, as here, the documents were designated as "Confidential" under a previously entered blanket protective order, the burden remains upon the party who designated the document to demonstrate "good cause" for the confidentiality designation. *Anderson v. Ramsey*, Civ. No. LA-04-56, 2005 WL 475141, at *2 (D.D.C. Mar. 1, 2005). Indeed, this Court's Protective Order in this case mandates that the Designation itself "constitutes a representation . . . that the discovery material has been reviewed by an attorney and that there is a valid basis [for it]

under Rule 26(c)." P.O. ¶ 11. Neither Diligence nor HHR have provided any reason whatsoever for the Designations they have refused to remove, although the Protective Order specifically required them to "state the reasons for the refusal" to remove the Designations. P.O. ¶ 17.

### C.     The Improper Designations Unreasonably Harm IPOC.

IPOC's interest in removal of the Designations is strong because the Designations are far from harmless and create unreasonable obstacles to IPOC's ability to communicate with its counsel and counsel's ability to communicate with witnesses and to prepare its case. The Protective Order contains a provision that prohibits IPOC from removing any document designated as "AEO" or "Confidential" from the continental United States ("Geographic Restriction") until it has met and conferred with the Defendants "regarding specific individuals who reside elsewhere, who request access to the confidential documents."[8]  P.O. ¶31. This provision combined with the Designation of more than 90% of the documents as either "AEO" or "Confidential" prevents counsel from discussing any of those documents with their clients, who reside in Europe, or with any third party witnesses, who are located outside the United States.

Over designation combined with the Geographic Restriction, thus, effectively prevents counsel from interviewing witnesses located outside the United States and from communicating with IPOC. These handcuffs must be removed. The Documents designated by either Diligence or HHR simply do not contain the type of information that warrants restrictive Designations under the Protective Order or Rule 26(c). The Geographical Restriction applied to Diligence's and HHR's over designations unreasonably interfere with the ability of IPOC and its counsel to prepare its case.

---

[8] This provision was entered against IPOC's objection and its motion for reconsideration by Judge Friedman is pending.

11

As a result of articles about the events underlying this case, the Defendants already filed two motions accusing IPOC's counsel of providing to the press information contained in documents designated as "confidential." Where, as here, the contents of the documents are already known to individuals and groups other than those who are allowed access under the protective order, it is also unfair to maintain the guise of "confidentiality" because such a façade subjects those bound by the Protective Order to attacks and wastes the time of the Court and the parties chasing the source of the alleged "leak."

The Documents are not entitled to protection under Rule 26(c). Neither Diligence nor HHR have shown "good cause" to keep them confidential. "Good cause" does not exist for the placement of confidentiality designations on these documents that contain no trade secrets, no competitive commercial information, no "intimate" personal information and no other information that is validly entitled to protection under Rule 26(c). The information contained in the Documents has not been maintained in "confidence" by Diligence. A hereto. *See also THK Am., Inc. v. NSK Co. Limited*, 157 F.R.D. 637 (N.D. Ill. 1993) (defendant's designation of various documents as "Attorneys Eyes Only" was in bad faith and prevented a party from being able to effectively prosecute their claim); *PHE v. Department of Justice*, 139 F.R.D. 249 (D.C. 1991) (petitioners were not entitled to protective order limiting use of documents to instant litigation or prohibiting dissemination of those materials to persons other than attorneys and staff involved in the litigation); *United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.C. 1981) (holding that Exxon had failed to make a "particularized" demonstration of injury that documents contained "information which would in any way harm Exxon's competitive position"). Further, any "claim that public disclosure of information will be harmful to defendant's reputation is not 'good cause' for protective order. Although the information regarding the hazards of products

and the corporation's knowledge of information may be embarrassing and incriminating, this alone is insufficient to bar public disclosure. Furthermore, where trade secrets are not at issue, common sense would indicate that the greater a corporation's motivation for secrecy, the greater the public's need to know." *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill 1993) (citations omitted).

### D. These Designations Should Be Removed To Protect Governmental Integrity In Other Jurisdictions

Finally, substantial justice requires that these improper confidential designations be removed. As described above, the defendants are engaged in tactics which have the possibility of subverting justice in a number of different countries and jurisdictions. IPOC has a substantial need to defend itself in these litigation matters including pending litigation in the BVI and Bermuda which remain ongoing. Thus, any examination of the equities in light of these pending legal matters makes it abundantly clear that IPOC has substantial need for this information and that the designations should be removed forthwith.

### CONCLUSION

For all of the foregoing reasons, and such others as the Court finds just and equitable, IPOC respectfully requests that IPOC's Motion Pursuant to the Protective Order and Rule 26(c) be granted and that the Designation made by Diligence and HHR to the Documents produced by HHR identified on Exhibit A hereto be removed.

| | |
|---|---|
| April 13, 2007 | IPOC INTERNATIONAL GROWTH FUND LIMITED |
| | |
| OF COUNSEL: | /s/ Carol A. Joffe |
| W. Gordon Dobie | Timothy M. Broas (D.C. Bar No. 391145) |
| Kimball R. Anderson | Carol A. Joffe (D.C. Bar No. 351528) |
| WINSTON & STRAWN LLP | Anne W. Stukes (D.C. Bar No. 469446) |
| 35 W. Wacker Drive | WINSTON & STRAWN LLP |
| Chicago, Illinois 60601 | 1700 K Street, N.W. |
| Tel:  (312) 558-5600 | Washington, D.C. 20006 |

**REDACTED VERSION FOR PUBLIC FILING**

| | |
|---|---|
| Fax:   (312) 558-5700<br>wdobie@winston.com<br>kanderson@winston.com | Tel:   (202) 282-5000<br>Fax:   (202) 282-5100<br>tbroas@winston.com<br>cjoffe@winston.com<br>astukes@winston.com |

**REDACTED VERSION FOR PUBLIC FILING**

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **IPOC INTERNATIONAL GROWTH FUND LIMITED,** | ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) |
| v. | ) **Civil Action No. 1:06CV01109** <br> ) **(PLF) (AK)** |
| **DILIGENCE, LLC, et. al** | ) <br> ) |
| **Defendants.** | ) |

## ORDER

Upon consideration of Plaintiff IPOC International Growth Fund Ltd.'s ("IPOC") Motion Pursuant to Protective Order to Remove Confidentiality Designations, and it appearing that good cause under Federal Rule of Civil Procedure 26(c) has not been shown for the designations placed on the documents listed on Exhibit A to IPOC's Motion, it is hereby

ORDERED that the Motion be, and the same hereby is, granted; and it is further

ORDERED that the restrictive designations on documents identified on Exhibits A, D, E and F to IPOC's Motion be, and the same hereby are, removed from the documents.


Dated:_____          _____
                                         ALAN KAY
                                         United States Magistrate Judge

15

Copies to:
Timothy M. Broas
Carol A. Joffe
Anne W. Stukes
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
*Counsel for Plaintiff IPOC International Growth Fund Limited*

W. Gordon Dobie
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
*Counsel for Plaintiff IPOC International Growth Fund Limited*

Paul C. Rauser
Oliver Garcia
Michael Ross
AEGIS LAW GROUP LLP
901 F. Street, N.W., Suite 500
Washington, DC 20004
*Counsel for Defendant Diligence LLC*

Edward B. MacMahon, Jr.
P.O. Box 903
107 East Washington Street
Middleburg, VA 20118
*Counsel for Defendant Barbour Griffith & Rogers LLC*