IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED )<br>)<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>DILIGENCE LLC, et al. )<br>)<br>*Defendants.* )<br>_____ ) | Civil Action No. 06-1109 (PLF)(AK) |

### DILIGENCE INC.'S OPPOSITION TO IPOC'S MOTION PURSUANT TO PROTECTIVE ORDER TO REMOVE CONFIDENTIALITY DESIGNATIONS

Under the Protective Order entered on February 8, 2007 by this Court, IPOC's de-designation motion is untimely both as to Diligence's confidentiality designations and non-party Hughes Hubbard & Reed LLP's separate designations. In an attempt to obscure this fact, IPOC misstates the parties' prior communications and falsely suggests to this Court that Diligence has refused "to meet and confer despite repeated attempts." Opposition ("Opp.") at 4. As established by the correspondence between counsel attached to the Declaration of Michael K. Ross filed herewith, this is simply not true.

Moreover, even if IPOC's motion had been timely (it is not), the motion would be appropriately denied for two, independent reasons. *First*, the documents at issue are currently designated "Confidential" in KPMG FAS v. Diligence (the "KPMG FAS Action"), which is currently on appeal (by IPOC) to the U.S. Court of Appeals for the District of Columbia Circuit. Plainly, it would be inappropriate to de-designate these documents while the Court of Appeals reviews IPOC's unsuccessful effort to de-designate those very same documents in the earlier case.

*Second*, the documents constitute "Confidential" information under the express terms of the Protective Order entered in this case. Consequently, IPOC should not be granted unfettered use of them, especially given IPOC's stated desire to use these documents in foreign proceedings pending "in the BVI and Bermuda." Opp. at 13. This is not a proper use of pre-trial discovery.

## ARGUMENT

### I.  IPOC'S MOTION IS UNTIMELY AS TO BOTH DILIGENCE AND NON-PARTY HUGHES, HUBBARD & REED LLP.

The Protective Order entered in this case was the product of extensive negotiations between the parties and, ultimately, cross-motions requesting this Court to resolve a half-dozen or so issues on which the parties did not reach agreement. After considering no fewer than *seven* separate briefs and presiding over a ninety-minute motions hearing, this Court issued a detailed Memorandum Order on January 23, 2007, resolving the remaining disputes. On February 8, 2007, the Court entered the Protective Order.

Despite the unusual attention given to the terms of the Protective Order, IPOC has already ignored it by filing a clearly untimely motion to de-designate documents produced to IPOC over two months ago by non-party Hughes, Hubbard & Reed LLP ("Hughes Hubbard"). As detailed below, not only is IPOC's motion untimely with respect to Diligence's designations of the documents at issue, it also is untimely with respect to Hughes Hubbard's entirely separate designations of those same documents.

#### A.  IPOC's Motion Is Not Even Remotely Timely As To Diligence's Designations.

Paragraph 17 of the Protective Order requires that a motion challenging confidentiality designations be filed "not later than five (5) court days" after an unsuccessful meet-and-confer session. Because IPOC failed to adhere to this deadline, IPOC's motion is untimely and should be denied.

2

On February 13, 2007, IPOC hand-delivered two boxes containing copies of documents produced to it by Hughes Hubbard pursuant to IPOC's third-party subpoena (the "Hughes Hubbard Principal Production").[1] The vast majority of the documents in the Hughes Hubbard Principal Production were designated "Confidential" or "Attorneys' Eyes Only" by Hughes Hubbard pursuant to the Protective Order in this case.

Under the Protective Order, Diligence had ten (10) court days thereafter in which to designate as "Confidential" or "Attorneys' Eyes Only" the documents in the Hughes Hubbard Principal Production. By letter dated dated February 28, 2007, Diligence timely made its designations. See Declaration of Michael K. Ross ("Ross Decl.") Ex. 1. Diligence cross-designated as "Confidential" all documents Hughes Hubbard had designated "Confidential." See id. Additionally, Diligence cross-designated "Confidential" all documents Hughes Hubbard had designated "Attorneys' Eyes Only," although Diligence noted that it had no objection to these AEO designations by Hughes Hubbard. See id.

In a short, two-paragraph letter of March 5, IPOC challenged "virtually all" of Diligence's confidentiality designations. See Ross Decl. Ex. 2. But, in so doing, IPOC failed to comply with Paragraph 17 of the Protective Order, which states that a party's "Written Objection shall specifically identify the information or Documents at issue." Protective Order ¶ 17. In a letter dated March 12, Diligence noted IPOC's failure to comply with the Protective Order in this regard. See Ross Decl. Ex. 3.

By letter the following day, IPOC revised its Written Objection by specifically identifying the documents at issue. See Ross Decl. Ex. 4. In that same letter, IPOC proposed a

---

[1] On March 14, 2007, Hughes Hubbard made a supplemental production of a small number of documents that apparently had been inadvertently omitted from the Hughes Hubbard Principal Production. Virtually all of the documents at issue in the instant Motion are from the Hughes Hubbard Principal Production.

3

meet and confer on March 21, 2007 at 11:00 am to discuss Diligence's confidentiality designations. See id.

Under Paragraph 17 of the Protective Order, Diligence's deadline to respond to IPOC's amended Written Objection was March 20, 2007. See Protective Order ¶ 17. By letter dated March 20, 2007, Diligence timely responded. See Ross Decl. Ex. 5. In its response, Diligence noted that its "designations are proper" for two, independent reasons. Id. *First*, because "the records at issue constitute internal Diligence work papers and invoices relating to a confidential client matter, many of which were stolen or removed from Diligence's offices without authorization and anonymously delivered to KPMG . . . ." Id. *Second*, because "each such document currently is designated "Confidential" under the [KPMG FAS Protective Order]. As you know, the propriety of those confidentiality designations . . . is among the issues on appeal by IPOC to the [D.C. Circuit]." Id. Diligence noted that, until that appeal is resolved, "the 'Confidentiality' designations on those documents must remain in place." Id.

Notably for purposes of the instant motion (and proving the falsity of IPOC's allegation that Diligence refused to meet and confer, see Opp. at 4), Diligence's March 20 response concluded by stating that although Diligence's counsel was unavailable on March 21 to meet and confer as suggested by IPOC, *Diligence's counsel was available on March 23, 26, or 27 to meet and confer about the propriety of Diligence's confidentiality designations.* See Ross Decl. Ex. 5. IPOC never responded to the substance of Diligence's March 20 letter, nor did IPOC ever follow up on Diligence's offer to meet and confer on March 23, 26, or 27.

Instead, at approximately 3:00 pm on March 27, counsel for IPOC suddenly demanded a meet-and-confer *that afternoon* about the sufficiency of Diligence's objections,

4

served on IPOC almost four weeks before, to written discovery propounded by IPOC.[2] The meet and confer was scheduled for the morning of March 29, 2007. At the end of that meet-and-confer teleconference, IPOC's counsel inquired whether Diligence would be changing any of its confidentiality designations, as IPOC had repeatedly request in writing. See Ross Decl. ¶ 7. Diligence's counsel indicated that its positions remained unchanged from that set forth its previous correspondence to IPOC's counsel. See id.

The March 29 meet and confer between IPOC's counsel and undersigned counsel —held almost a month ago—was the last meet and confer between IPOC and Diligence. Since then, there have been no meet-and-confer sessions—whether in person, telephonically, or otherwise—between IPOC's counsel and Diligence's counsel. And, significantly, following the March 29 meet and confer, IPOC has not—in writing or verbally—made *any* request to meet and confer with Diligence about the Hughes Hubbard Principal Production. Rather, following Diligence's March 20 letter, there was nothing but silence from IPOC about the Hughes Hubbard Principal Production until April 13, 2007, when IPOC abruptly filed the instant Motion.[3]

IPOC's motion therefore is untimely. Paragraph 17 of the Protective Order specifies as follows:

> Within five (5) days of the receipt of the designating party's written response to the Written Objection [March 20, 2007], the parties shall meet and confer in an attempt to resolve the dispute concerning the designation. If the parties

---

[2] That written discovery by IPOC was the subject of this Court's Memorandum Opinion of April 24, 2007.

[3] As noted, IPOC misleadingly asserts that "IPOC has been unable to obtain Diligence's agreement to meet and confer despite repeated attempts." Opp. at 4. But conspicuously missing from IPOC's motion papers is any indication of the dates of its alleged "repeated attempts" to meet and confer with Diligence. This hide-the-facts approach by IPOC is necessitated, of course, by IPOC's failure to respond to Diligence's timely offer, made on March 20, to meet and confer on March 23, 26, or 27—all dates within the five-court-day deadline set forth in Paragraph 17 of the Protective Order for the parties to meet and confer over designation disputes.

5

>are unable to resolve such dispute, the objecting party may file a motion with the Court not later than five (5) court days after such conference challenging the propriety of the designation in dispute.

Protective Order ¶ 17.

As detailed above, not only did IPOC ignore Diligence's offer to meet and confer within five court days of its March 20 response to IPOC's Written Objection (specifically, on March 23, 26, or 27), IPOC failed to file its motion within five court days (March 27). Instead, for reasons that remain obscure, IPOC waited until April 13, 2007, to file its motion—more than two weeks late. Having done so, IPOC is barred under the Protective Order from demanding that this Court wade through the almost two hundred pages of documents attached to its motion to determine whether they have been properly designated "Confidential."

### B. IPOC's Motion Also Is Untimely As to Hughes Hubbard's Confidentiality Designations.

Not only did IPOC disregard the Protective Order's five-court-days deadline *vis-a-vis* Diligence's confidentiality designations, it also disregarded it with respect to Hughes Hubbard's own, independent designations made more than two months ago. As detailed in the Declaration of Derek J.T. Adler in Support of Non-Party Hughes Hubbard & Reed LLP's Motion for Extension of Time (Docket #119, "Adler Decl."), Hughes Hubbard's last communication with IPOC's counsel regarding the propriety of their designations was March 23, 2007. Mr. Adler states in his Declaration that "[w]e did not hear anything further from Plaintiff's counsel until April 13, 2007, when they served" Hughes Hubbard with the instant motion. Adler Decl. ¶ 12. Thus, IPOC's motion to de-designate also is untimely as to Hughes Hubbard's designations and should be denied.

II. **EVEN IF IT HAD BEEN TIMELY, IPOC'S MOTION WOULD STILL PROPERLY BE DENIED.**

In an attempt to shift attention away from its clear failure to timely file the instant motion, IPOC makes the odd argument that both Hughes Hubbard and Diligence have "waived" under Rules 33 and 34 (which apply to interrogatories and RFPs, respectfully) their right to oppose de-designation of the Hughes Hubbard Principal Production. Opp. at 9. But as set forth above, and as the correspondence attached to the Ross Declaration proves, this is false. In fact, Diligence timely set forth, in writing, the specific reasons for its refusal to de-designate documents in the Hughes Hubbard Principal Production. In so doing, Diligence timely followed the procedures set forth in the Protective Order.[4] As required by Paragraph 17 of the Protective Order, undersigned counsel's March 20 letter to IPOC's counsel identified two, independent reasons for its refusal to do so: (i) the documents at issue are currently designated "Confidential" in the KPMG FAS Action, which is currently on an appeal (by IPOC) to the U.S. Court of Appeals for the District of Columbia Circuit; (ii) the documents constitute non-public information entitled to protection from public disclosure under the terms of the Protective Order entered in this case. See Ross Decl. Ex. 5. Each is discussed below.

    A.    **The Documents Cannot Be De-Designated for Unfettered Use by IPOC Because They Are Designated Confidential Under the KPMG FAS Protective Order and That Case Is Still On Appeal by IPOC.**

In its Opposition, IPOC readily admits that it seeks de-designation so that it may use documents obtained in discovery in this case in foreign proceedings around the world. According to IPOC, the documents at issue should be de-designated to allow IPOC "to defend

---

[4] Because the procedures at issue are set forth in the Protective Order, the Rule 33 and Rule 34 cases cited by IPOC are utterly irrelevant; they have simply nothing to do with this Motion.

itself in . . . litigation matters pending litigation in the BVI and Bermuda which remain ongoing." Opp. at 13.

As Diligence timely noted in its March 20 response to IPOC's Written Objection to Diligence's confidentiality designations, almost all of the documents subpoenaed from Hughes Hubbard were designated "Confidential" by Diligence under the KPMG FAS Protective Order and remain so designated to this day. See Ross Decl. Ex. 5. There is no dispute on this issue. As IPOC has acknowledged in pleadings previously filed in this case, the "documents subpoenaed from Hughes Hubbard [by IPOC in this case]" are subject to, and governed by, "[t]he protective order entered in the [KPMG FAS Action]." IPOC's Memorandum in Support of Emergency Motion for Order Authorizing Disclosure of Information and Directing the Immediate Delivery of Subpoenaed Materials to IPOC (Docket #60), p. 7.

This point of agreement among the parties—a rare occurrence in this case—is crucial. In August of last year, just days after this Court *sua sponte* stayed all discovery pending rulings on each defendant's motion to stay, IPOC attempted an end-run around that order by filing a motion in the KPMG FAS Action (which, by that time, had been settled and dismissed) styled a "Motion to Intervene, For Access to Court Files, To Modify Protective Orders and to Alter Confidentiality Designations." KPMG FAS Action (Docket #67). On August 23, 2006, Judge Friedman denied that motion. See KPMG FAS Action (Minute Order entered August 23, 2006). IPOC has appealed Judge Friedman's denial of that motion to the U.S. Court of Appeals for the D.C. Circuit, the briefing of which is underway.

It is hornbook law that "[t]he filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'" United States v. DeFries, 129 F.3d 1293, 1302

8

(D.C. Cir. 1997) (*quoting* Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam)). Following the filing of a notice of appeal, "[t]he district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." DeFries, 129 F.3d at 1302.

Here, it cannot reasonably be disputed that IPOC's request in the instant Motion to de-designate documents marked "Confidential" is the very same relief requested in the motion filed by IPOC in the KPMG FAS Action and denied by Judge Friedman on August 23, 2006. The title of IPOC's motion in the KPMG FAS Action alone proves the point. That motion was styled "IPOC International Growth Fund Limited's Motion to Intervene, For Access to Court Files, To Modify Protective Orders and to Alter Confidentiality Designations." KPMG FAS Action (Docket #67). Moreover, in its Memorandum in support of that failed motion, IPOC urged the Court to:

> lift the "Confidential" designation from all discovery material [produced by Diligence in the KPMG FAS Action] except for the Confidential Materials that Diligence [allegedly] stole from KPMG FAS, which are required by Bermuda law to remain confidential. All other discovery materials [including the documents in Hughes Hubbard's possession] including responses to interrogatories and requests for admissions, deposition transcripts and all documents produced by parties and third parties in discovery should no longer be designated "Confidential."

Id. at 19.

In sum, because IPOC elected to appeal Judge Friedman's denial of its requested relief in the KPMG FAS Action,[5] IPOC is barred from now seeking the same relief from this

---

[5] In its Opposition to IPOC's motion in the KPMG FAS Action, Diligence pointed out that there was no reason, *at that time*, why IPOC could not seek from Judge Kay the de-designation relief it requested in that motion. See Mem. of Defendant in Opposition (Docket # 66), at 5. For reasons that remain obscure, IPOC insisted upon filing its motion in the settled and dismissed KPMG FAS Action, and upon appealing Judge Friedman's denial of that motion to the D.C. Circuit. By making these decisions, IPOC extinguished its ability to seek the same relief in this action.

Court during the pendency of IPOC's appeal. See Defries, 129 F.3d at 1302; Leadership Conference on Civil Rights v. Gonzales, 421 F. Supp. 2d 104, 107 (D.D.C. 2006) ("When defendant filed its notice of appeal on February 6, 2006, this Court was divested of jurisdiction over the matters on appeal").[6] Until such time as IPOC's appeal is resolved, the "Confidentiality" designations under the KPMG FAS Protective Order will remain in place on the documents at issue. Because those documents to this day remain designated "Confidential" under the KPMG FAS Protective Order, it was perfectly appropriate—indeed, compulsory—that Diligence similarly designate them in the instant case to avoid dissemination to nonparties, especially given IPOC's stated position that "neither IPOC nor Winston & Strawn" is not bound by the Protective Order (or any other Order) entered by the Court in the KPMG FAS Action (even though Winston & Strawn entered an appearance in that case). See IPOC and Winston & Strawn LLP's Opposition to Diligence's Emergency Motion (Docket #106), p. 11.

    **B.    The Documents Were Properly Designated "Confidential" Under the Terms of the Protective Order in This Case.**

Under Paragraph 12 of the Protective Order entered in this case, a party may designate "Confidential" documents that "contain non-public, confidential, proprietary or commercially sensitive information . . . ." Protective Order ¶ 12 (emphasis added). Here, the documents at issue plainly constitute "non-public" and/or "confidential" information, and thus have been properly designated "Confidential" by Diligence under the express terms of the Protective Order.

---

[6] To be sure, courts have recognized "a few narrow exceptions to this rule, such as where the defendant frivolously appeals, or takes an interlocutory appeal from a non-appealable order." DeFries, 129 F.3d at 1302-03 (internal citations omitted). But neither exception applies here. To the contrary, this case presents the highly unusual scenario in which the party that filed the notice of appeal is the same party seeking relief from this Court on the same issue.

As noted in KPMG FAS's own complaint in the KPMG FAS Action, the documents at issue include "copies of internal [Diligence] emails and other business records of [Diligence], along with internal working papers and other confidential documents." KPMG FAS Complaint ¶ 15. Moreover, KPMG FAS alleged that these "internal" and "confidential" documents had been delivered anonymously to KPMG without authorization by Diligence. See id.[7] Contrary to IPOC's suggestions to the contrary, these documents are "non-public" documents by definition—all parties have been prohibited under the KPMG FAS Protective Order from disseminating them to nonparties.

Nevertheless, IPOC now seeks this Court's permission to divulge these documents to anyone it wants, with no restrictions whatsoever. It is well established, however, that public dissemination of information and materials produced in pretrial discovery is not a proper use of the discovery process. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) (pretrial discovery mechanisms "are not public components of a civil trial . . . . [rather] they are conducted in private as a matter of modern practice"); In re Reporters Committee for Freedom of the Press, 773 F.2d 1325, 1331 (D.C. Cir. 1985) (noting that in Seattle Times Co., the Court "upheld the trial court's imposition of a protective order" rejecting "a claim by one of the parties of the right to *disseminate* information acquired in the course of pretrial discovery") (emphasis in original); see also In re Baycol Prod. Litig., 2003 WL 23145587, at *1 (D. Minn. Dec. 12, 2003) ("while there is a right of public access to judicial proceedings, this right does not necessarily extend to pretrial discovery that has not become a public component of a civil case"). These principles apply with

---

[7] IPOC asserts that many of these documents cannot be deemed "confidential" because they appear to have been stolen and sent (without authorization) to KPMG's Montvale, New Jersey office. See Opp. at 8. Glaringly, however, IPOC cites no authority for this proposition. Moreover, far from rendering these documents public documents, because KPMG was a party to the previous lawsuit, it is bound by the KPMG FAS Protective Order not to further disseminate those documents (all of which were designated "Confidential").

added force where, as here, documents apparently have been stolen from a party or copied and disseminated without its authorization. See KPMG FAS Complaint ¶ 15 (alleging that the internal Diligence documents were "delivered anonymously" to a KPMG office in the U.S.).

In sum, IPOC's request for relief should be rejected. To allow IPOC to file the non-public documents at issue in IPOC's public filings in "the BVI and Bermuda," Opp. at 13 and to otherwise disseminate to whomever it wants free and clear of any restrictions whatsoever, would plainly prejudice Diligence. Without the protections of the Protective Order entered by this Court, IPOC will have *carte blanche* to hand out these documents to anyone they wish— documents that KPMG FAS's own Complaint described as "copies of internal [Diligence] emails and other business records of [Diligence], along with internal working papers and other confidential documents." KPMG FAS Complaint ¶ 15.

## CONCLUSION

For the foregoing reasons, IPOC's motion should be denied.

Respectfully submitted,

April 24, 2007

AEGIS LAW GROUP LLP

By: /s/ Michael K. Ross
Paul C. Rauser (D.C. Bar No. 461722)
Michael K. Ross (D.C. Bar No. 458573)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500
F: 202-737-3330
*Attorneys for Defendant Diligence Inc.*