UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 1:06CV01109 (PLF) (AK) |
| DILIGENCE, LLC, et al., ) ) | |
| Defendants. ) | |

**DECLARATION OF DEREK J.T. ADLER IN OPPOSITION TO
PLAINTIFF'S MOTION PURSUANT TO PROTECTIVE ORDER
TO REMOVE CONFIDENTIALITY DESIGNATIONS**

Derek J.T. Adler declares the following, under penalty of perjury:

1. I am partner at Non-Party Hughes Hubbard & Reed LLP ("HHR"), which has been served with a subpoena (the "Subpoena") by Plaintiff in this proceeding. I submit this Affirmation in opposition to Plaintiff's Motion Pursuant to the Protective Order to Remove Confidentiality Designations.

**BACKGROUND**

2. Malcolm Butterfield and Michael Morrison of KPMG Financial Advisory Services Limited (collectively "KPMG FAS") were appointed in March 2004 by the Bermuda Minister of Finance, in the exercise of her statutory powers, to perform a confidential investigation of IPOC International Growth Fund Limited ("IPOC") and affiliated companies (the "IPOC Investigation"). During the course of the investigation, KPMG FAS gathered and generated many documents pertaining to the investigation. These documents are required under Bermuda law to be kept confidential. (Exhibit A at ¶ 1.)

3.  As referred to in the Complaint in the present proceeding, commercial adversaries of IPOC subsequently hired Defendant Diligence Inc. ("Diligence") to engage in a successful effort to penetrate KPMG FAS and steal confidential information about IPOC and the IPOC Investigation.

4.  When this scheme came to light in late 2005, KPMG FAS brought action against Diligence seeking to recover its materials, prevent further dissemination, and recover damages. HHR represented KPMG FAS in that proceeding. The action, entitled *KPMG Financial Advisory Services Ltd et al. v. Diligence LLC*, was subsequently settled on terms that gave KPMG FAS the relief it was seeking. Shortly after such settlement, IPOC commenced the present action seeking, *inter alia*, its own relief from Diligence.

### THE SUBPOENA AND HHR'S RESPONSE

5.  Plaintiff served a non-party subpoena (the "Subpoena") on HHR on or about July 14, 2006. (Exhibit B.) The Subpoena sought, *inter alia*, documents concerning the action *KPMG Financial Advisory Services Ltd et al v. Diligence LLC*.

6.  By letter to Plaintiff's counsel dated July 21, 2006, I gave written notice of HHR's objections to the Subpoena. (Exhibit C.)

7.  Over the course of the following week I conferred in good faith with Plaintiff's counsel on several occasions. During the course of these discussions I articulated reasons why the confidentiality of the documents HHR might disclose in response to the Subpoena would have to be strictly protected. These reasons included the facts that: (i) the IPOC Investigation was required to be kept confidential under Bermuda law; (ii) the materials contained confidential business information of KPMG FAS; and (iii) the materials contained confidential personal information about KPMG FAS personnel, that had been gathered by Diligence during the course of its illegal activities.

8. My conversations with Plaintiff's counsel led to an agreement on a narrowed scope of production that would address HHR's objections to the Subpoena. This agreement was reflected in an email dated July 27, 2006 that I sent to Plaintiff's counsel. (Exhibit D.) One of the agreed conditions for our production was that the parties to this action would "enter a standard confidentiality order protecting [the] materials from use outside of the proceedings, etc."

9. Discovery in this matter was subsequently stayed, delaying HHR's production.

## HHR'S INITIAL PRODUCTION

10. On or about October 14, 2006, counsel for Plaintiff informed us that the stay had been lifted and urged us to make our production of documents in response to the Subpoena as soon as possible. However, at that time no protective order governing the confidentiality of discovery materials had yet been entered. Nevertheless, as an accommodation, we made an immediate production of the materials Plaintiff considered to be most important. These materials consisted of the transcript of the deposition of Diligence's corporate representative and the exhibits entered at that deposition, which all together provided a fairly detailed survey of what we had learned about Diligence's activities. We only agreed to make this production in consideration of Plaintiff's counsel's written undertaking to handle these materials on an "attorneys' eyes only" basis. This undertaking was confirmed in counsel's letter of October 19, 2006. (Exhibit E.)

## HHR'S FURTHER PRODUCTION

11. On or about February 8, 2007, Plaintiff's counsel informed us that the Protective Order Governing Confidentiality and Inadvertent Disclosure (the "Protective

Order") had been entered by the Court and that we could therefore complete our production.

12.   On or about February 12, 2007, HHR made its production in accordance with the scope agreed with Plaintiff in our previous meet and confer sessions. HHR has produced several thousand pages of material, as well as several disks. At HHR's request, Plaintiff reimbursed a substantial proportion of HHR's fees and costs in relation to the gathering and production of these materials.

### CORRESPONDENCE LEADING TO THE PRESENT MOTION

13.   By letter dated February 20, 2007, Plaintiff's counsel raised various questions about HHR's production. This letter included a blanket request that HHR remove all confidentiality designations from its production. (Exhibit F.)

14.   By letter dated March 12, 2007, I responded to Plaintiff's counsel's questions. With respect to the request for blanket de-designation, I noted that we had designated the documents in good faith, and specifically enumerated several applicable grounds enumerated in the Protective Order. (Exhibit G.) I therefore declined to agree to blanket de-designation. However I offered to meet and confer further with respect to any specific documents Plaintiff's counsel might have concerns about.

15.   Plaintiff's counsel next wrote on March 15, 2007. (Exhibit H.) With respect to their request to de-designate, Plaintiffs' counsel did not raise detailed concerns about any particular document. Instead Plaintiff's counsel attached schedules listing every document that that had been designated as "Confidential" or "Attorneys' Eyes Only." Plaintiff's counsel repeated the request to de-designate all of these documents.

16. We gave careful consideration to Plaintiff's objections to HHR's confidentiality designations. Indeed, we undertook a page-by-page re-review of our entire production. A table showing the basis for our designations is attached as Exhibit I.

17. By letter dated March 23, 2007, we informed Plaintiff's counsel that we would agree to remove the confidentiality designation from several hundred pages of our production. (Exhibit J.) We also proposed that the confidentiality designation could be removed from other materials if sensitive information were redacted from them.

18. We did not hear anything further from Plaintiff's counsel until April 13, 2007, when they served us with the present motion.

19. We note that Plaintiff's motion is untimely under the express terms of the Protective Order. Paragraph 17 of the Protective Order requires a motion challenging confidentiality designations to be brought "not later than five (5) court days" after the unsuccessful meet and confer session.

## PLAINTIFF'S REFUSAL TO GRANT A ONE-WEEK EXTENSION

20. On Wednesday, April 18, 2007, I telephoned Plaintiff's counsel Carol Joffe and requested a one-week extension of our time to file our opposition to Plaintiff's motion. I explained that previously scheduled hearings, and a trip to the Far East on a client matter, would make it exceedingly difficult for me to devote the time necessary to respond properly to Plaintiff's motion.

21. On Friday afternoon, April 20, 2007, Ms. Joffe finally let me know that Plaintiff was refusing to consent to *any* extension of time. As a result, we were forced to prepare and file an emergency motion for an extension of time. This motion was promptly granted, and our time to respond to Plaintiff's motion was extended to and including May 1, 2007.

**IPOC'S APPARENT BREACHES OF CONFIDENTIALITY**

22.     There is strong evidence that IPOC or its counsel, Winston & Strawn, have breached the undertaking given in Winston & Strawn's letter of October 19, 2006 (Exhibit E), or have violated the terms of the Protective Order in this case, by showing confidential documents from HHR's production to the media. The details of this have been summarized in the materials filed by Defendants Diligence and Barbour Griffith & Rogers ("BGR") in support of their recent motions. (Exhibit K.)

23.     In addition to the evidence supplied by Defendants, I have received other information indicating that Winston & Strawn has made unauthorized disclosures of confidential information. On or about February 22, 2007, I was contacted by a partner at White & Case, Phillip Schaeffer, who informed me that he had heard that his firm's name was mentioned in papers we held in connection with KPMG FAS's lawsuit against Diligence. When I asked Mr. Schaeffer who had provided this information, he said it had come from someone Winston & Strawn. In a subsequent conversation I asked him for additional details. He told me that someone from someone from Winston & Strawn had disclosed the information to another White & Case partner, George Terwilliger. (Messrs Schaeffer and Terwilliger have subsequently declined my requests that they identify the specific person at Winston & Strawn who contacted Mr. Terwilliger.)

24.     Mr. Schaeffer's inquiry pertains to a hand written note, stamped HHR 00106, which was designated as "Confidential" by both Diligence and HHR.[1] At the beginning of its effort to obtain confidential information from KPMG FAS, Diligence gathered general information about KPMG FAS personnel contacting KPMG FAS based on a fraudulent pretext. Diligence personnel, acting under false names, pretended to be

---

1.     HHR has subsequently agreed to de-designate this document.

conference organizers who were arranging a conference on forensic accounting in Bermuda and wanted KPMG FAS personnel to participate. Diligence's handwritten notes suggest that when planning for this operation Diligence considered stating that an international law firm was also involved in organizing the supposed conference. Thus the name White & Case appears on HHR 00106. (We do not believe that Diligence in fact ever mentioned White & Cases's name to KPMG FAS personnel.)

25. I mentioned my contact with White & Case to one of the Winston & Strawn's lawyers during one of my meet and confer conversations. The lawyer stated that she did not know anything about this contact.

26. In my letter dated March 23, 2007, I expressed our concerns about the apparent breaches of confidentiality. I asked Winston & Strawn investigate these apparent breaches and report to us, as required by Paragraph 30 of the Protective Order. Winston & Strawn has never responded to this request.

\*     \*     \*

27. I declare under penalty of perjury that the foregoing is true and correct. Executed on May 1, 2007.

/s/ Derek J.T. Adler  
Derek J.T. Adler