UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KPMG FINANCIAL ADVISORY SERVICES LIMITED, MALCOLM BUTTERFIELD, and MICHAEL MORRISON, <br><br> Plaintiffs, <br><br> v. <br><br> DILIGENCE LLC, <br><br> Defendant. | **FILED UNDER SEAL** <br><br> Civil Action No: 05-2204 (PLF) |

### DECLARATION OF DELROY B. DUNCAN

I, Delroy B. Duncan, hereby declare as follows:

#### Confidential Nature Of Companies Act Investigations In Bermuda

I have been asked to provide a summary of the legal requirement for confidentiality in relation to statutory investigations into the affairs of exempted companies registered in Bermuda. I am a barrister and attorney and am duly qualified to practise law in the Islands of Bermuda.

1.  **Statutory Investigations Under The Companies Act 1981 (Bermuda)**

1.1  Under section 132 of the Companies Act 1981 (Bermuda) (the "Bermuda Companies Act") the Minister of Finance may appoint inspectors to investigate, and report on, the affairs of an exempted company. On examining the inspectors' report, the Minister may form a view on

NY 1004046_1

whether the company has done anything in contravention of the Bermuda Companies Act or is carrying on its affairs in a manner detrimental to the interests of its members or creditors[1].

1.2   Section 132(6) of the Bermuda Companies Act states that such an investigation shall be held in private unless the company requests that it be held in public. Section 132(7) further provides that, on completion of the investigation, the inspectors must provide the Minister of Finance and the company under investigation with a copy of their report. No other person shall be informed of the nature or contents of the report save at the request of the company or on the direction of the Minister.

1.3   We consider that these provisions, taken with the case law discussed below, impose confidentiality in relation to:

   (a) A section 132 investigation, which must be carried out in private (unless the company requests that it be held in public);

   (b) Information collated during the course of a section 132 investigation for the duration of the investigation;

   (c) Material created by the inspectors during the course of a section 132 investigation;

   (d) Information obtained from witnesses in interview during the course of a section 132 investigation and transcripts of such interview;

   (e) The inspectors report (save at the request of the company or on the direction of the Minister).

---

[1] Bermuda Companies Act s. 132 (B).

2

NY 1004046_1

1.4     The rationale for this confidentiality is to safeguard the integrity of the statutory process and protect the reputation of those under investigation from the irreparable harm which could result from premature disclosure.

## 2  Bermuda law and precedent

2.1     The principal source of Bermuda law is English Common Law. Although Bermuda is self-governing and passes its own statutes, historically statutory material has drawn heavily on British statutory precedents. This is the case with the Bermuda Companies Act (and specifically s.132) which is derived from the UK Companies Act 1948 ("CA 1948").[2]

2.2     Similarly, although Bermuda has its own well-developed case law, case law from other common law jurisdictions provides persuasive authority for the Bermuda courts, particularly where an issue has not been subject to previous consideration by the Bermuda courts or on questions of statutory interpretation arising from legislation based on models from other jurisdictions. We discuss below the case law pertaining to section 132 investigations.

## 3  Relevant statutory material

3.1     Section 132(6) of the Bermuda Companies Act contains provisions modelled on CA 1948 sections 165-168, which gave to the relevant department of the British Government a discretion to appoint "one or more competent inspectors to investigate the affairs of a company, and to report thereon, if it appears [inter alia] that its business is being conducted with intent to defraud its creditors or otherwise for a fraudulent or unlawful purpose or in a manner oppressive of its members."

---

[2] The 1948 Act has now been revoked and replaced by the Companies Act 1985 ("CA 1985")

3

NY 1004046_1

3.2   Section 168 CA 1948 required that a copy of any report made by the inspectors be forwarded to the registered office of the company. It was also recognised that a report prepared under section 165 CA 1948 "may bring about the winding up of the company, and be used itself as material for the winding up". (In re S.B.A. Properties Ltd.[1967] 1 W.L.R. 799.) This is mirrored by the provisions of the Bermuda Companies Act which gives powers to the Minister of Finance to direct that the company be wound-up or be required to take measures in relation to its affairs to ensure compliance with the Bermuda Companies Act.

4   **Case law**

4.1   Case law provides a line of authority emphasizing the confidentiality of statutory investigations.

4.2   A clear declaration that proceedings of statutory inspectors investigating a company must be carried out in private was given by the House of Lords in *Hearts of Oak Assurance Co Ltd v A-G*.[3]

4.3   The House of Lords made a declaration that *"an inspector appointed for the purpose of examining and reporting on the affairs of the [company] is not entitled to conduct the inspection in public ...[or] make public the information gained by him in the course of such examination or of the exercise of the powers conferred upon him... or otherwise to make use of such information save for the purposes of carrying out his examination and of preparing his report."*[4]

---

[3] [1932] AC 392, [1932] All ER Rep 732. The appeal to the House of Lords concerned whether an inspector appointed under section 17 of the Industrial Assurance Act 1923 was entitled to conduct his investigation in public.
[4] [1932] AC 392 at 398.

4

NY 1004046_1

23-NOV-2005 09:58AM   FROM-TROTT & DUNCAN           +4412956600           T-048  P.006/010  F-413

4.4  Lord Thankerton, in his judgment, held that, *"in the absence of any statutory provision providing otherwise, the examination ... ought not to be conducted in public"* reasoning that, *"if the examination were to be held in public, it might well be that unfavourable opinions as to the financial position of the ... company might be prematurely and wrongly formed in the minds of the public... either through reports in the press or as a result of attendance at the examination of some of the persons to be examined on oath."*[5]

4.5  Lord Macmillan considered the matter in the following terms: *"On the one hand it is important to secure that the efficiency of the procedure for the purpose in view is not impaired. On the other hand it is not less important to ensure that fair treatment is accorded to all concerned. I am satisfied that both these ends can best be attained by the holding of such inspections in private. I can well imagine that irreparable harm might unjustly be done to the reputation of a company and much anxiety unnecessarily occasioned to its policy-holders by giving publicity to such preliminary investigations."*

4.6  It is clear from the above passages that the damage that might be caused to the reputation of the company under investigation from holding such an investigation in public was central to the reasoning of the House of Lords in its decision that the investigation must be carried out in private.

4.7  Although *Hearts of Oak* concerned specifically an investigation under the Industrial Assurance Act 1923, the Court extended the scope of its comments to consider the position of investigations under the companies legislation in force at the time: *"It so happens that in providing for the inspection in question Parliament has followed closely the terms in which it*

---

[5] [1932] AC 392 at 397.

5

NY 1004046_1

*has provided for the analogous investigations of the affairs of joint stock companies by inspectors appointed by the Board of Trade. These inspections are now conducted under section 135 of the Companies Act 1929... Previously inspections were provided for under section 56 of the Companies Act 1862. This system of investigation has thus been in existence for some seventy years. Your Lordships have been informed that such inspections under the Companies Acts have from the inception of this legislation been invariably in practice conducted in private.*[6]"

4.8  It is clear, therefore, that the practice under the companies legislation to hold investigations in private was influential in the decision reached by the House of Lords and that their declaration cited above was applicable to investigations under the Companies Acts.

4.9  The principle enunciated in *Hearts of Oak* was restated in *Re Pergamon Press Ltd*[7] in a case concerning an investigation into the affairs of a company by inspectors appointed under section 165 of the CA 1948 (from which section 132 the Bermuda Companies Act is derived, as noted above). In his judgment for the Court of Appeal, Lord Denning M.R. considered the nature of such an investigation as follows:

4.10  *"The inspectors are not a court of law. Their proceedings are not judicial proceedings... They are not even quasi-judicial, for they decide nothing; they determine nothing. They only investigate and report. They sit in private and are not entitled to admit the public to their meetings."*

---

[6] Lord Macmillan [1932] AC 392 at 402.
[7] [1970] 3 All ER 535, [1971] Ch 388.

6

NY 1004046_1

4.11   The continuing applicability of the decision in *Hearts of Oak* to Companies Act investigations was confirmed in *Re an inquiry into Mirror Group Newspapers plc*[8] by Sir Richard Scott V-C in relation to an investigation under the Companies Act 1985 (the "CA 1985") which has replaced the CA 1948.

4.12   In this case, the English Court was asked to consider the confidentiality of material collated by inspectors appointed under section 432 of the CA 1985. The majority of the material in question was obtained from witnesses but the material also included an "information memorandum" which the inspectors had prepared setting out the preliminary findings of their investigation.

4.13   In determining that material obtained by the inspectors in relation to their investigation was confidential, Sir Richard Scott V-C relied on the proposition from *Re Pergamon Press Ltd*, that inspections under the Act *"are essentially private proceedings."* The Vice Chancellor acknowledged that this proposition was in turn derived from *Hearts of Oak*, which he described as *"clear authority that Pt XIV company inspections must be conducted in private and that the inspectors should not make public the information disclosed to them in the course of the investigation."* He described the reasoning behind the decision in *Hearts of Oak* as *"not simply that previous practice had been to hold examinations in private. It was also, perhaps mainly, that otherwise very great damage might be done to individuals and companies."*[9]

4.14   Turning his attention to the "information memorandum", Sir Richard Scott V-C noted that:

---

[8] [2000] Ch. 194, [1999] 2 All E.R. 641.
[9] [1999] 2 All E.R. 641 at 653ff.

7

NY 1004046_1

> "So far I have been concentrating on documents and information which have a confidential character because the inspectors have obtained them from others under compulsion. The information memorandum is slightly different. Partly it records information and documents to which confidentiality attaches. But partly, also... it contains conclusions and expresses preliminary criticisms of individuals. So long as the information memorandum remains preliminary it plainly should not be made public. Publication of criticisms that the inspectors are currently minded to make but may eventually, when all the evidence is in, decide not to make would be unfair to the individuals involved."[10]

4.15   This passage makes it clear that preliminary materials produced by inspectors appointed under section 432 of the Act will be held to be confidential by the Courts of England and Wales. This is especially so where their nature is such that they contain criticisms relating to individuals, and that the Courts will seek to ensure that such confidentiality is preserved.

4.16   We consider that in its material particulars a section 432 CA 1984 investigation is a close parallel to section 132 investigation under the Bermuda Companies Act and that the same reasoning and principles as outlined in the above case would apply to material collated or created during the course of an investigation under the Bermuda Companies Act.

---

[10] [1999] 2 All E.R. 641 at 658.

8

NY 1004046_1

23-NOV-2005 10:03AM   FROM-TROTT & DUNCAN        +4412956600         T-050   P.010/010   F-413

## 5   Conclusion

5.1   Considering the provisions of section 132 itself and the principles derived from the case law, we consider that inspectors appointed under the Bermuda Companies Act owe a duty to preserve the confidentiality of their investigation and the materials collated or created during the course of such investigation.

\*               \*               \*

I declare under penalty of perjury under the laws of the Unite States that the foregoing is true and correct.

Executed On November 23, 2005

_____
Delroy B. Duncan

9

NY 1004046_1