**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 1:06CV01109 (PLF) (AK) |
| DILIGENCE, LLC, et. al | ) ) | |
| Defendants. | ) | |

**IPOC'S REPLY TO DILIGENCE'S OPPOSITION TO IPOC'S MOTION PURSUANT TO PROTECTIVE ORDER TO REMOVE CONFIDENTIALITY DESIGNATIONS**

Plaintiff IPOC International Growth Fund Limited ("IPOC") submits this Reply to Diligence's Opposition to IPOC's Motion Pursuant to Protective Order to Remove Confidentiality Designations ("IPOC's Motion").

**INTRODUCTION**

None of the reasons offered in Diligence Inc.'s ("Diligence") Opposition to IPOC's Motion Pursuant to Protective Order to Remove Confidentiality Designations ("Diligence's Opposition") addresses the issue at hand—whether there is "good cause" for Diligence's 578 confidentiality designations ("Designations"). Diligence urges the Court to side-step Rule 26(c)'s requirement of "good cause" for the Designations and, instead, deny IPOC's Motion as not timely filed or barred by an appeal in a separate lawsuit. Opp. at 7.

Diligence also complains that IPOC seeks to use the documents in "foreign proceedings around the world." Opp. at 7-8. It is crucial to understand that those foreign proceedings are precisely the foreign proceedings that Diligence was hired to clandestinely interfere with, and has interfered with, as is made explicit in the documents at issue here. Now Diligence seeks to prevent IPOC from using those documents to inform the bodies in those other jurisdictions of the

corruption that Diligence has covertly injected into their proceedings.  Certainly, IPOC should not be denied the right to use these documents to defend itself from the schemes to corrupt these foreign proceedings—schemes that Diligence thus far has successfully hidden behind blanket "confidentiality" designations.

This Court should take notice of the schemes, detailed in the documents at issue, that violate the most basic principals of British and American law, including the right to due process, fair administrative and judicial proceedings, and decisions made by independent decision-makers.  This Court should act to remove the Designations that are unsupported by "good cause" and bring to an end Diligence's efforts to conceal its misdeeds.  Failure to lift the Designations would work a terrible injustice to IPOC and also overburden the Court by necessitating the filing under seal of material that does not qualify for protection under Rule 26(c).

Diligence urges the Court to permit the Designations to remain based upon nothing more than vague and conclusory allegations made in an unverified Complaint, filed by a plaintiff in a separate case, that relates to only five of the 578 documents at issue, and that merely alleges that those documents were "Diligence's internal working papers and other confidential documents." But Diligence proffers neither fact, explanation nor any basis whatsoever for this Court to find the "good cause" required by Rule 26(c) to maintain any of the challenged Designations.  Indeed, although "good cause" is the foundation of the Court's authority granted by Rule 26(c) to permit restrictive designations to be placed upon materials produced in a lawsuit, the words "good cause" do not even appear in Diligence's Opposition.  Diligence's arguments should be rejected.

**ARGUMENT**

I.    **Diligence's Opposition Offers No Factual or Legal Basis For A Finding of "Good Cause" As Is Required to Maintain The Challenged Designations.**

   A.    **Diligence Makes No Factual Showing Whatsoever of "Good Cause" As Required to Maintain the Designations.**

Diligence's Opposition does not even attempt to show the "good cause" that is a prerequisite to a confidentiality designation under the Protective Order.  The designation of a document as "Confidential" under the Protective Order "constitutes a representation [ ] that the discovery material has been reviewed by an attorney and that there is a valid basis for such designation pursuant to Federal Rule of Civil Procedure 26(c)."  P.O. ¶ 11.  Rule 26(c) is unequivocal.  It authorizes a court to protect a party from whom discovery is sought only "for good cause shown."  *See Univ. Mass. v. Roslin Inst.*, 437 F. Supp.2d 57, 60 (D.D.C. 2006); *see e.g. Seattle Times v. Rhinehart*, 467 U.S. 20, 37 (1984).  Diligence's Opposition fails to show "good cause" for a single one of the 578 Designations.

It should have been easy for Diligence to explain its claim that there is "good cause" for the Designations, because, in accord with Paragraph 11 of the Protective order, Diligence's Designations constituted representations by an attorney that there was a valid basis for each designation under Federal Rule of Civil Procedure 26(c). P.O. ¶ 11.  The Designations thus should not have been made unless one of Diligence's attorneys had already determined there to be "good cause" for each document designated "Confidential."

Despite this clear obligation to demonstrate "good cause" for the Designations, nowhere in its papers does Diligence even summarily claim there is "good cause" for the Designations.  Instead, Diligence simply asserts its unsupported conclusion that the documents "constitute 'non-public' and/or 'confidential' information."  Diligence cites no legal authority for its apparent

claim that any document it summarily claims to be "non-public" or "Confidential" is entitled to be designated "Confidential" under a Rule 26 (c) protective order. Likewise, Diligence provides no explanation for these vague claims, which do not comport with Rule 26's "good cause" standard. Under Diligence's standard, any document regardless of subject-matter and regardless of how widely disseminated, would be entitled to a designation of "confidential under protective order" so long as it is an "internal e-mail" or "business record." Opp. at 11. Diligence neither explains what it means by a "non-public," "Confidential" or "business record" nor attempts to demonstrate how documents that were disseminated to third parties, including those documents identified on Exhibit F to IPOC's Motion (filed April 13, 2007), can possibly be deemed "Confidential" under Rule 26(c).

Diligence also provides no factual basis for its 578 Designations. Strangely, Diligence fails to even allege the documents at issue in this Motion belong to Diligence and, instead, merely references (four times) paragraph 15 of KPMG FAS' unverified Complaint in *KPMG Financial Advisory Services v. Diligence,* No. 05-CV-2204 ("KPMG Case") that asserts that certain documents delivered anonymously to KPMG were Diligence's "internal working papers and other confidential documents." Opp. at 11 -12. These references fail to establish "good cause" for any of the 578 Designations at issue.

While Paragraph 15 of KPMG FAS' Complaint explicitly refers to "a bundle of papers [that] was anonymously delivered to the Montvale, New Jersey office of KPMG [ ]," the "bundle of papers" ("Montvale Documents") contained only 11 of the 578 documents on which Diligence placed the challenged Designations in this case.[1]    Declaration of Carol A. Joffe, ¶ 11, ("Joffe

---

[1] The Montvale Documents are attached to the Declaration of an employee of KPMG London (HHR 00078-00338) and include 21 documents. Only 5 of those documents are designated as "Confidential" by HHR, and only 11 are designated "Confidential" by Diligence. *See* Exhibit 1

Decl.") (attached as Exhibit 1 to this brief). Even if the vague and conclusory allegations of an unverified Complaint, from a separate lawsuit, were sufficient to establish "good cause" for the Designations, it could support only a few of the challenged Designations. HHR initially designated only 11 of those documents as "Confidential" and has removed the Designations from all but five (5) of the documents in the "bundle." *See* Exhibit 2.[2] Besides, the unverified allegations of KPMG FAS' Complaint in the KPMG Case are simply insufficient to establish a factual basis for Diligence's Designations, even in relation to the few remaining challenged documents to which they relate.

Nowhere in its papers does Diligence offer any factual basis for the Designations other than the statement that paragraph 15 of KPMG FAS' Complaint in the KPMG Case alleges that the "bundle of documents" are "Diligence's internal working papers and other confidential documents." Aside from this reference to KPMG's allegations in a separate case, Diligence's papers are, oddly, completely silent as to the whether any of the challenged documents belong to Diligence, the contents of the documents, whether any of the documents are "internal" to Diligence, contain competitive or trade secret information, or whether there exists some other fact that constitutes "good cause" entitling them to be designated as "Confidential" under Rule 26(c). Although Diligence's counsel files a Declaration, it similarly contains no assertion about the documents or whether any of the documents are Diligence's documents, contain Diligence's competitive commercial information, Diligence's trade secrets, personal information of an

---

(Joffe Decl. ¶ 11). None of those documents contain any trade secret or competitive commercial information entitled to protection under Rule 26(c). The documents do not contain Diligence Bates numbers and contain no information that indicate them to be "Confidential" and/or "internal" Diligence documents.

[2] The Exhibit shows six documents that remain designated by HHR but one of those is a Declaration, which was not one of the Montvale documents referenced in paragraph 15.

intimate nature, or are otherwise Diligence's confidential "business records."  It seems that Diligence wants at the same time to claim the right to designate these documents as "Confidential" while not even admitting that any of the documents belong to Diligence.[3]

Diligence also makes the curious argument that the documents are "non-public" because the parties to the KPMG Case have been prohibited from disseminating the documents under the Protective Order in that case (Opp. at 11), an argument that begs the question of whether there is "good cause" for the documents to be protected.  It is undisputed that no determination of "good cause" for the Designations was made in the KPMG Case and that IPOC was not a party to that case in any event.[4]

The 578 documents that Diligence insists are entitled to protection range from cash register receipts from Cingular Wireless for the purchase of wireless phones (for cash payment, showing no credit card or other financial information) to pages printed from the worldwide web (accessible by anyone, anywhere with an Internet connection).   Diligence has simply not demonstrated any basis for these documents to be designated as "confidential."  The blanket Protective Order was entered to permit parties to in good faith designate documents as "Confidential" but only if good cause under Federal Rule 26(c) exists for the Designations.  P.O. ¶ 11.   Diligence has abused the Protective Order by improperly designating virtually all documents produced, including cash register receipts, web pages and documents disseminated to

---

[3] It is not surprising that Diligence wishes to distance itself from documents that spell out devious plans to masquerade as government security agents, infiltrate and influence foreign proceedings and other plots to intentionally harm IPOC.  It would be astonishing if Diligence were to admit that these are trade secrets that it must mask from its competition.

[4] KPMG FAS moved to remove the designations in that case but the case was settled before the motion was ruled upon.

third parties as "confidential pursuant to protective order."   The Court should order the Designations removed.

**B.      The Court Must Make A Finding of "Good Cause" for the Designations Before Allowing the Designations to Stand.**

Diligence argues that the Designations are warranted because the public does not have a right to access to pretrial discovery materials (Opp. at 11), but its arguments are mistaken and duck the issue at hand.   First, Diligence is mistaken because the public right of access to both court records and discovery materials is presumed in the absence of a finding of "good cause" to restrict access under Rule 26(c).   This motion seeks to determine whether Diligence has "good cause" for the Designations sufficient to satisfy Rule 26(c), and it is Diligence's burden to establish "good cause."   Unless the Court finds there is "good cause" under Rule 26(c) to shield the materials, there is no need to entertain the issue of whether the public's right to access overcomes the "good cause" found for the restrictions.

The Court of Appeals for the First Circuit explained:

> A plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order has the burden of showing that  good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection. Any other conclusion effectively would negate the good cause requirement of Rule 26(c): Unless the public has a presumptive right of access to discovery materials, the party seeking to protect the materials would have no need for a judicial order since the public would not be allowed to examine the materials in any event.

*Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 789 (1st Cir. 1988*)* (quoting *In re "Agent Orange" Prod. Liab. Litig.,* 821 F.2d 139, 145-46 (2d Cir. 1987)).

Contrary to Diligence's assertion, in the absence of a finding of "good cause" to restrict access to discovery materials, there <u>is</u> a presumption of public access.  *E.g. Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945-946 (7th Cir. 1999) ("Most cases

endorse a presumption of public access to discovery materials,[5] and therefore require the district court to make a determination of good cause before he may enter the order.[6]  Rule 26(c) would appear to require no less.")  The need for a court to determinate whether the public's right of access to materials produced in discovery should be limited simply does not arise until after a court has determined that there is "good cause" for a restriction as required by  Rule 26(c).  *See also San Jose Mercury News v. United States District Court,*  187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary presumptively public.").

The three cases cited by Diligence involved requests for access made by the press that required the courts to examine whether the public's right to information, including First Amendment rights, trumped or outweighed the "good cause" for confidentiality designations or seals on documents.  IPOC's Motion is based upon Rule 26(c)'s requirement of "good cause," not the First Amendment.

Diligence's citation to *Seattle Times v. Rhinehart,* 467 U.S. 20 (1984) is misplaced. *Seattle Times v. Rhinehart*  held that "[w]here . . . *a protective order is entered on a showing of good cause as required by Rule 26(c)*, is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not

---

[5] Citing *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994); *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir. 1992); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d at 788-90; *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 162-64 (6th Cir. 1987); *In re "Agent Orange" Product Liability Litigation*, 821 F.2d at 145-46.

[6] Citing *EEOC v. National Children's Ctr., Inc.*, 98 F.3d 1406, 1411 (D.C. Cir. 1996); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 484-85 (3d Cir. 1995); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 165-67 (3d Cir. 1993); *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991); *City of Hartford v. Chase*, 942 F.2d 130, 135-37 (2d Cir. 1991); *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

offend the First Amendment." *Id.* at 37 (emphasis added). Here, the issue is whether there is "good cause" for the protective order, not whether the First Amendment is offended by a Protective Order. *See Public Citizen v. Liggett,* 858 F.2d at 788-789 (holding that "[n]othing in *Seattle Times*" precludes the claim that "the public has a presumptive right of access to discovery materials unless good cause for confidentiality is shown, and that no good cause exists here."). Unless "good cause" for the designations pursuant to Rule 26(c) is found, there is no need to analyze First Amendment concerns as were required in *Seattle Times,* where the state court did find "good cause" to protect certain personal and financial information but the press argued that despite the finding of "good cause" the First Amendment precluded the issuance of a protective order. This Court must first make a determination of whether there is "good cause" for the Designations under Rule 26(c). If "good cause" is not found, the Designations must be lifted, leaving no reason to analyze the First Amendment issues.

Diligence's quotation out of context from *In re The Reporters Committee For Freedom of the Press,* 773 F.2d 1325 (D.C. Cir. 1985) in an attempt to use that case as precedent here is inaccurate. *Reporters Committee* involved a Protective Order that permitted a party to designate a document as "'Confidential" but required that once the designation was challenged, the designating party "would bear the burden of establishing 'good cause' for the document's continued protection." *Id.* at 1326. Once the designations were challenged, the designating party submitted an affidavit from its Vice-President identifying the harm that would result from disclosure of the documents at issue.

The issue raised by the *Reporters Committee,* however, was not whether the designating party's affidavit had shown "good cause" for the designations but solely the constitutional issue: "[d]oes the First Amendment prohibit a trial court from indefinitely postponing public access to

the complete record of civil trials and summary judgment proceedings without a prior judicial determination that temporary sealing of specific documents is the least restrictive means necessary to protect a compelling governmental interest?"  *Id.* at 1331.  Diligence incorrectly suggests in its a parenthetical that *Reporters Committee* concluded that *Seattle Times* upheld a court's authority to restrict dissemination of discovery material by a party in the absence of a finding of "good cause" under Rule 26(c).  *Seattle Times* did nothing of the sort.  As explained *supra, Seattle Times* made clear that a finding of "good cause" under Rule 26(c) is mandatory before any restrictions may be placed upon access to discovery materials.  *Seattle Times*, 467 U.S. at 37.

Nor does *Baycol Prod. Litig.,* 2003 WL 23145587 (D. Minn. Dec. 12, 2003) support Diligence's arguments but, rather, it supports IPOC's Motion.  In *Baycol*, after the defendant improperly "designated documents as 'confidential' in violation of the parties' stipulated protective order," upon motion of a newspaper and a party, the court entered an amended protective Order that narrowed the scope of documents entitled to confidential designation and ordered the defendant to remove the designations from those documents that did not comply with the narrowed definition of "confidential."  The definition of "confidential" was narrowed to include only: "Discovery material containing trade secrets, or other confidential or propriety research, development, manufacturing or commercial or business information," and also limited the information that could be designated as "confidential" to nine narrowly drawn categories.[7]

---

[7] **(a)** Customer names; **(b)** Proprietary licensing, distribution, marketing, design, development, research and manufacturing information regarding products and medicines, whether previously or currently marketed or under development; **(c)** Unpublished clinical studies and related documents; **(d)** Information concerning competitors; **(e)** Production information; **(f)** Personnel records and information; **(g)** Financial information not publicly filed with any federal or state regulatory authorities; **(h)** Private medical information that identifies a person unless such names

Diligence's parenthetical regarding *Baycol* states that the public does not "necessarily" have a right to pretrial discovery is correct but neglects to state that a party has a presumptive right to use discovery materials without restriction unless a protective order is issued upon the showing of "good cause" under Rule 26(c).   Nothing in *Baycol* even remotely suggests the contrary.  Diligence has not shown "good cause" for any of its Designations.

**C.     Diligence's Improper Designation of Nearly All Discovery Materials Has Forced IPOC to File Under Seal Papers That Should Not Be Sealed.**

Although Diligence urges the Court to maintain the Designations despite the lack of "good cause" for them on the ground that they are merely discovery materials not filed in the court record, that argument bypasses another crucial issue.  Because nearly all documents in the case have been designated as "Confidential," IPOC has been forced to file any pleading that discloses any such fact under seal.  This has resulted in the filing of six briefs and two transcripts under seal without any showing of  "good cause" as is required.  Judicial records should not be sealed without the required showing of "good cause," which has not occurred in this case.  *See, e.g., Citizens First Nat'l Bank*, 178 F.3d at 945 (noting that "good cause" is required before the record may be sealed, and a court may not "rubber stamp a stipulation to seal the record").

**D.     Designation of Information that Has Not Been Maintained In Confidence Will Permit Defendants to Continue Their Allegations of Disclosure by IPOC's Counsel and Unfairly Leaves IPOC to Prove that It Did Not Disclose Information Gleaned from Designated Documents.**

Another important issue is that Defendants repeatedly have accused IPOC's counsel of divulging information contained in documents that have been designated "Confidential."  IPOC's counsel has repeatedly advised Defendants that it has not done so.  This issue will continue to

---

can be redacted; and **(i)** Information submitted to any governmental or regulatory agency, which information is exempt from public disclosure.

arise and to consume the time of the Court and counsel until such time as the Court determines whether the Designations are warranted, because much of the information in the challenged documents is just not confidential in any sense of the word and is available from numerous sources. Additionally, the press has shown a particular interest in the facts underlying this case and have even interviewed Diligence's CEO who provided information concerning the facts.

### E.    IPOC Needs the Documents to Defend Itself in the Foreign Jurisdictions Where Diligence Has Interfered with Administrative and Judicial Proceedings.

Diligence's public website boasts that Diligence seeks to use the expertise and "network of relationships" of its founders, "a small group of former members of the U.S. Central Intelligence Agency, and Britain's MI5 Intelligence Service," and it "strives to provide every client with the 'information edge'" in business intelligence. The documents Designated in this case reveal some of the techniques that provide Diligence with this "information edge." The "information edge" was gained in this case because Diligence's agents obtained information for private clients by masquerading as members of government intelligence services and continue to use their "networks" despite that they no longer actually work for any government intelligence service. IPOC should not be prevented from seeing these documents and using them for its defense in the foreign proceedings that Diligence has endeavored to corrupt. To allow that to happen would be a grave miscarriage of justice.

### II.    Confidentiality Designations Made Under A Protective Order to Which IPOC Was Not a Party Has No Impact On this Court's Obligation to Determine If There Is "Good Cause" for the Challenged Designations.

### A.    A Protective Order Entered In A Separate Case to Which IPOC Was Not A Party is Irrelevant.

Diligence cites no authority for its suggestion that protective orders entered in the KPMG Case, a separate case, are binding in this case and can foreclose this Court's determination of the

merits of IPOC's Motion.  IPOC was not a party to the KPMG Case.  An order or judgment is

binding only upon those who are themselves parties to the case and their privies.

> In general, "[a] judgment or decree among parties to a lawsuit resolves issues as
> among them, but it does not conclude the rights of strangers to those
> proceedings."  This rule is merely, as the Supreme Court has noted, a necessary
> corollary to the oftstated principle that " 'everyone should have his own day in
> court.' "  Thus, unless one is joined as a party to an action, one is generally not
> bound by the result, no matter whether that result is reached voluntarily by the
> parties or imposed upon them by the court.

*Cleveland County Ass'n for Gov't by the People v. Cleveland County Bd. of Comms'rs,* 142 F.3d

468 (D.C. Cir. 1998) (citing *Martin v. Wilks,* 490 U.S. 755, 762, 765, 768 (1989)).[8]

### B.    The Pendency of An Appeal in the KPMG Case Has No Impact Here.

#### 1.    An Appeal in a Separate Case Does Not Bar IPOC from Seeking to Remove the Designations.

Diligence argues that IPOC's Motion cannot be granted because IPOC is currently

appealing the denial of its motion to intervene in the KPMG Case.  Diligence Opp. at 7.

Diligence, however, ignores a crucial fact: IPOC's appeal from the denial of its motion to

intervene is an appeal of a ruling in a different case, between *KPMG FAS and Diligence*, not this

litigation between IPOC and Diligence.  IPOC sought to intervene in the KPMG Case, but was

denied.  That ruling is currently on appeal.

---

[8]  *See* Fed. R. Civ. P. 65(d) (injunction "binding only upon the parties to the action, their officers,
agents, servants, employees, and attorneys, and upon those persons in active concert or
participation with them."); *Taylor v. FAA, 2005 U.S. Dist. LEXIS 4059* (D.D.C. 2005)*; In Re
Subpoena Issued To Commodity Futures Trading Commission,* 2005 U.S. Dist. LEXIS 9074
(D.D.C. 2005) (non-party could not be bound by order as to which it was not a party and had no
opportunity to make known its position); *Adams v. Bell*, 711 F.2d 161, 203 (D.C. Cir. 1983)
("Neither collateral estoppel nor comity principles bind nonparties or affect the relief available
to them."); *see also NBA Properties, Inc. v. Gold,* 895 F.2d 30, 33 (3d Cir. 1990) ("[T]he
franchisees are not the defendants in this case; and, as Learned Hand pointed out, an injunction
does not forbid 'the act described…, but only that act *when the defendant does it."*) (emphasis in
original) (citing *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 833 (2d Cir. 1930)).

Neither of the cases cited by Diligence supports the proposition that an appeal in one case precludes a trial court's ruling in another case. The cases merely stand for the proposition that once an appeal is lodged, the district court in the case from which the appeal is taken loses jurisdiction until the appeal is resolved. The cases cited by Diligence do not so much as imply, let alone hold, that any other court loses jurisdiction over the issues pending on appeal.

      **2.**     **Diligence's Argument Contradicts its Position in the KPMG Appeal and Should be Rejected.**

Diligence argues in its Opposition that this Court may not make a determination regarding the validity of the Designations because the matter is on appeal in the KPMG Case.[9] Opp. at 7-8. In the KPMG Case, however, nine days ago Diligence filed its appellate brief arguing that since IPOC's efforts related to discovery of the designated documents in this case are proceeding, it is unnecessary to permit IPOC to intervene in that case. Opening Brief of Appellee at 12. Diligence should not be permitted to argue here that this Court cannot determine the issue because it is on appeal in another case and at the same time argue that IPOC's appeal should be rejected because IPOC's discovery efforts are proceeding before this Court. This Court should not tolerate such dishonest maneuvering.

**III.**    **Diligence's Contention that the Motion Is Untimely Should Be Rejected.**

IPOC's Motion seeking to remove the Designations came as no surprise to Diligence and, despite its protestations that IPOC failed to schedule time to meet and confer regarding Diligence's refusal to remove the Designations, there is no dispute that further meetings would have been futile. Exhibit. 3. IPOC complied with the procedures set forth in the Protective Order and in good faith sought to resolve disputes related to this Motion between the parties and third

---

[9] United States Court of Appeals, District of Columbia Circuit, Case No. 06-7162.

party Hughes Hubbard and Reed LLP ("HHR").  IPOC did not file its Motion until it had determined that further attempts to resolve the matter without seeking relief from the court would be not be fruitful.  IPOC has in good faith refrained from filing its Motion prematurely to ensure that the parties had ample opportunity to confer to the extent it would be productive.  Diligence has taken the position that further discussion will be futile.  *See* Exhibit 3.

Moreover, IPOC's Motion relates to Designations made by both Diligence and non-party Hughes Hubbard and Reed LLP ("HHR").  IPOC's Motion was filed three days after its last contact with HHR that resolved a disputed issue between HHR and IPOC and thus eliminated that as an issue to be resolved in Motion.   Diligence's invitation to deny the Motion as untimely should be declined.

**A.     IPOC's  Motion Was Timely Filed.**

On February 28, 2007, Diligence sent counsel for IPOC a short letter in which Diligence designated as "Confidential" every document that HHR had originally designated under the protective order.  *See* Ex. 1 to M. Ross Decl. (attached to Diligence Opp.).  HHR's initial Designations included 98.7% of its production.  Diligence's February 28, 2007 designation letter did not include a list of each Bates number that Diligence designated. *Id.*

On March 5, 2007, IPOC's counsel sent Diligence a written objection and requested that Diligence remove its Designations, except from those documents that were stolen or reflect information that was stolen from KPMG FAS' confidential investigation.  *See* Ex. 2 to M. Ross Decl. (attached to Diligence Opp.).  In response, however, Diligence failed to adhere to the terms of the protective order.  Paragraph 17 of the protective order requires:  "If the designating party refuses to remove its challenged designation, its written response to the Written Objection shall state the reasons for this refusal."  In addition, Diligence bears the burden under Rule 26(c) for

establishing that "good cause" justifies protection of the documents. Heedless to these requirements, Diligence feigned that it was unable to understand from which documents IPOC requested Diligence to remove the Designations. *See* Ex. 3 to M. Ross Decl. (attached to Diligence Opp.). Diligence's March 12 response to IPOC's objection did not state the reasons for its refusal to remove the Designations.

On March 13, IPOC again wrote to Diligence, noted that Diligence's professed inability to understand IPOC's written objection was not credible, provided a lengthy list of Bates numbers for each and every document from which IPOC requested Diligence remove its Designations, and asked Diligence to participate in a meet-and-confer telephone conference on March 21. *See* Ex. 4 to M. Ross Decl. (attached to Diligence Opp.).

As far as IPOC knew, Diligence never responded to IPOC's March 13, 2007 letter. Moreover, IPOC continued to request meet-and-confers with Diligence regarding the designation issues, to no avail. On March 28, 2007, IPOC objected in writing to Diligence's further designation as "Confidential" of a supplemental HHR production. *See* Exhibit 4. In that letter, IPOC proposed to meet and confer on April 4 about the designation issues. *Id.* Diligence did not respond. Indeed, in a meet-and-confer on March 29, 2007 regarding other discovery issues, counsel for IPOC advised counsel for Diligence that she had still not received a written response to her letter requesting the basis for Diligence's refusal to remove the Designations and a date for a meet-and confer. Counsel for Diligence responded that he thought he had responded but would check into it and get back to counsel. No further response was received, however. *See* Exhibit 1 (Joffe Decl. ¶¶ 5, 8).

Through this same time period, IPOC was attempting to resolve the issues with HHR. This was difficult because counsel for HHR has a heavy travel schedule and was out of the

country for considerable periods of time. Nevertheless, IPOC agreed to some of HHR's Designations and HHR did agree to remove all but 122 (approximately 75%) of the Designations. On April 9, 2007, when counsel for IPOC realized that IPOC had not received a signed copy of the Protective Order from HHR, she sent HHR a letter requesting the return of the signed page. Initially, HHR responded by asking if IPOC was taking the position that the Protective Order had not been in effect since HHR had not yet signed it. Counsel for IPOC immediately responded that IPOC had acted in the good faith belief that HHR had signed the Protective Order since it had insisted upon receiving it and had made Designations pursuant to its provisions. On April 10, 2007, HHR returned the signed signature page to IPOC. *See* Exhibit 1 (Joffe Decl. ¶ 10). IPOC filed the present motion three days later on April 13, 2007.

On April 26, 2007, when Diligence filed its Opposition to the present Motion, IPOC became aware that Diligence had sent a letter on March 20, 2007 regarding its Designations. When IPOC counsel researched her email, she found that she had received in excess of 75 emails (excluding "spam" and deleted items) on March 20, 2007, including three emails from counsel for Diligence, two from Mr. Ross and one from Mr. Rauser. Two of the emails contained a single line of text, stating simply, "Correspondence attached," and "Please see correspondence attached," respectively. Diligence's March 20, 2007 letter concerning the Designations was in the second email attaching correspondence. When IPOC counsel received it, she apparently confused it with the preceding email from Diligence counsel, and thought it was the same email that she had already read. Therefore, although acting in good faith, IPOC counsel did not see Diligence's March 20, 2007 letter concerning document Designations. Counsel apologizes to the Court for the statement in the Motion that no response was received from Diligence but she, in

good faith, believed that no response had been received and even notified Mr. Ross that she had not received any response. *See* Exhibit 1 (Joffe Decl. ¶¶ 8-9).

Notably, Diligence did not copy any of IPOC's three other counsel of record on the email transmitted to Ms. Joffe on March 20, 2007 attaching Diligence's letter regarding the Designations. Moreover, Diligence did not send the letter via first-class mail, hand-delivery, facsimile or any other means, either to Ms. Joffe or to any of the counsel of record for IPOC. Although the Protective Order does not require that letters sent in accordance with the protective order, for which there are time constraints, be served in compliance with the rules for service of pleadings and other papers under the Federal Rules of Civil Procedure, it is equitable to read those service requirements into the protective order. The Federal Rules of Civil Procedure do not permit service by email upon one of several counsel without hand or mail delivery of the document to counsel to meet service requirements unless the party to whom the document is addressed consents to such service. Documents served by email through the court's electronic system are automatically transmitted to all counsel of record.

Ironically, Diligence's own conduct cannot survive a test of strict adherence to the terms of the protective order. In point of fact, Diligence broadly over designated documents as "Confidential" and failed to timely set forth its reasons for refusing to remove the Designations. HHR removed its Designations from approximately 75% of the production, indicating that the initial designations were vastly overbroad, and yet Diligence still refuses to remove any Designations. Moreover, Diligence did not respond at all to IPOC's request that Diligence remove the Designations contained in HHR's most recent, production as requested in IPOC's letter dated March 28, 2007. *See* Exhibit 1 (Joffe Decl. ¶ 6).

To top it off, Diligence recently confirmed to IPOC's counsel that further meet-and-confer sessions about Diligence's Designations would have been futile. After receiving Diligence's Opposition brief and realizing that Diligence had stated a willingness to meet-and-confer about the Designations, Ms. Joffe contacted Diligence's counsel, both Mr. Ross and Mr. Rauser, and suggested that the parties confer further about Diligence's Designations, in an effort to reach agreement. Diligence counsel flatly refused, stating, "You made your motion after unsuccessful meet-and-confer efforts to resolve the issues. We believe that the motion is untimely and should be withdrawn, but (assuming you do not agree) there is simply nothing further to discuss at this point." *See* Exhibit 3. Diligence thus confirmed that any additional meet-and-confers, whether they had taken place in March or while the present motion is pending before the Court, would have been futile. Diligence has never been willing to review the documents and discuss its justifications for specific Designations. Such refusal is a bad faith abuse of the blanket protective order in this case, and has increased the burden on IPOC and the Court, necessitating this Motion.

Moreover, notwithstanding that it is now apparent that Diligence did respond to IPOC on March 20, 2007, Diligence nonetheless failed to ever respond to IPOC's written objection to Diligence's additional designation of documents in HHR's supplemental production.[10] Diligence has not provided an explanation for its failure to timely comply with the dictates of the protective order regarding that subset of documents.

Regardless of how the timing of these interactions is construed, however, paragraph 32 of the Protective Order authorizes the Court to make exceptions and modifications to the Protective

---

[10] The Bates numbers comprising HHR's supplemental production, to which Diligence never responded to IPOC's written request to remove the Designations, are:  HHR 03500 – 03500.01, HHR 620, HHR 01083 – 01126, HHR 03495 – 03499, HHR 3500 – 3502.

Order.  It is equitable for the Court to make any exception and/or modification to the Protective

Order, if any is necessary, so that IPOC's Motion is properly before the Court and adjudicated on

its merits.  It should be clear from the record that Diligence is not now, and has not ever been,

interested in a good-faith review of its Designations with an interest in removing Designations

from documents that do not merit protection under Rule 26(c).  Any failures to hold additional

meet-and-confers would, unfortunately, not have made a difference.

### B.    HHR Does Not Argue that IPOC's Motion Should be Denied as Untimely.

Diligence also argues that the Court should deny IPOC's motion as untimely with respect

to HHR's Designations.  Diligence exercised its option to designate HHR's production as

"Confidential."  It does not have standing to argue anything about the timeliness of IPOC's

challenges to HHR's Designations of the same documents.  Moreover, HHR filed its Opposition

to IPOC's Motion on May 1, 2007 (Docket No. 124).  In its Opposition, HHR does not assert that

the Court should deny IPOC's Motion as untimely.  Because HHR does not press for denial of

IPOC's Motion with respect to HHR's own Designations on such technical grounds, the Court

should disregard Diligence's vicarious complaints about the timeliness of IPOC's challenges to

HHR's Designations.  *See* Diligence Opp. at 6.  Moreover, Diligence's arguments do not have

merit with respect to the timeliness of IPOC's challenges to HHR's Designations.  HHR did not

even sign the Protective Order until April 10, 2007.  IPOC brought the present motion three days

later.  Finally, even if the Court were to find technical non-compliance with the terms of

Paragraph 17 with respect to HHR's Designations, IPOC urges the Court to make an exception

and/or modification pursuant to Paragraph 26 in light of the negotiations between IPOC and

HHR that resulted in a significant narrowing of the issues before the Court concerning HHR's

Designations.

**C.    The Issues Raised by this Motion Will Continue to Arise if Not Resolved.**

Diligence has taken the position that all its documents are "Confidential" and that it need not produce any documents to IPOC because HHR has alleged that IPOC's counsel has disclosed a piece of "Confidential" information contained in one of the documents that are the subject of this Motion to remove the Designations.  As stated above, IPOC has not disclosed information learned from documents designated "Confidential."  Diligence will continue to raise these unjustified charges in search of a way to avoid making discovery so long as documents that contain information that was not kept confidential remains improperly protected under the blanket Protective Order.

## CONCLUSION

For all the reasons set forth in IPOC's Motion, supporting Memorandum, and this Reply, and such others as the Court finds just and equitable, IPOC respectfully requests that IPOC's Motion Pursuant to the Protective Order and Rule 26(c) be granted and that the Designations made by Diligence to the Documents produced by HHR identified on Exhibit A to IPOC's Memorandum be removed.

IPOC also respectfully requests that the Court set a hearing on this Motion.

May 4, 2007

IPOC INTERNATIONAL GROWTH FUND LIMITED

OF COUNSEL:
W. Gordon Dobie
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:    (312) 558-5858
Fax:    (312) 558-5700
kanderson@winston.com

/s/ Carol A. Joffe

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:    (202) 282-5000
Fax:    (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2007, IPOC'S Reply To Diligence's Opposition To IPOC's Motion Pursuant To Protective Order To Remove Confidentiality Designations was served, via the Court's ECF system, on:

Paul C. Rauser
Michael Ross
Oliver Garcia
Aegis Law Group LLP
901 F. Street, N.W., Suite 500
Washington, DC 20004
*Counsel for Defendant Diligence LLC*

Edward B. MacMahon, Jr**.**
P.O. Box 903
107 East Washington Street
Middleburg, VA  20118
*Counsel for Defendant Barbour Griffith & Rogers LLC*

Charles D. Reed
Scott H. Christensen
Hughes Hubbard and Reed LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
*Counsel for Non-Party Subpoena Recipient Hughes, Hubbard and Reed LLP*

/s/ Carol A. Joffe
_____