UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 1:06CV01109 (PLF) (AK) |
| DILIGENCE, LLC, et. al | ) ) | |
| Defendants. | ) ) | |

**IPOC'S REPLY TO NON-PARTY HUGHES HUBBARD & REED LLP'S OPPOSITION TO IPOC'S MOTION PURSUANT TO PROTECTIVE ORDER TO REMOVE CONFIDENTIALITY DESIGNATIONS**

Plaintiff, IPOC International Growth Fund Limited ("IPOC"), submits this reply memorandum in response to non-party Hughes Hubbard and Reed LLP's ("HHR") Memorandum of Law in Opposition to IPOC's Motion Pursuant to Protective Order to Remove Confidentiality Designations (the "HHR Opp.") (Docket #124). HHR's Opposition offers no basis to retain the Designations that IPOC's Motion seeks to remove and provides further support for IPOC's Motion.

## INTRODUCTION

HHR's Opposition makes plain that the "Confidential" or "Attorney's Eyes Only" ("AEO") (collectively "Designations") placed by HHR, and especially those placed by Diligence, should be removed. HHR initially placed more than 600 Designations on the approximately 700 documents it produced. HHR has now agreed to remove more than 80% of its original Designations, conceding that the documents contain no information that should be protected from disclosure, contrary to Diligence's position. Importantly, as HHR admits, many of the designated documents relate to plans to "hurt IPOC" that have nothing to do with KPMG FAS's

investigation of IPOC, and HHR has no objection to the disclosure of such information. HHR Opp. at 6.

The remaining 114[1] documents from which HHR refuses to lift Designations should be un-designated entirely, or, in a few instances, redacted in the narrowest way possible to prevent disclosure of information required by Bermuda law to be kept confidential, or highly personal information about KPMG FAS employees. The documents from which HHR refuses to remove Designations, with the exception of morsels of material intermingled here-and-there, do not fall within any of the categories that HHR contends are subject to protection under Rule 26(c). Those discrete pieces of "intermingled," legitimately confidential information can be redacted without subjecting the documents to overbroad, unwarranted, blanket Designations. Even HHR so concedes. HHR Opp. at 6-7. Had HHR articulated these concessions to IPOC in advance, the issues could have been substantially narrowed before IPOC filed its Motion.

In a red-herring attempt to divert from the merit of IPOC's Motion, HHR claims that Winston & Strawn attorneys improperly have disclosed designated materials to the media and to another law firm, and that Winston & Strawn failed to respond to HHR's "demand" about these accusations. The accusations, however, are baseless and inaccurate.

Nor has HHR has been unnecessarily burdened by IPOC's Subpoena. IPOC has never denied that HHR has the right, in principle, to recover its reasonable costs incurred in compliance with the Subpoena. All of the documents that HHR produced, however, had been either produced or filed in the *KPMG v. Diligence* case, Civ. No. 05-2204 (PLF) (AK); they did not require extensive searching or review for responsiveness. HHR nonetheless held its production hostage until IPOC agreed to pay HHR the sum of nearly $30,000. HHR has

---

[1] When copies of documents and email chains related to the same discussion are grouped together, HHR's Designations are reduced to 50. See Exhs. A, B and C hereto (filed under seal).

received more than reasonable compensation for its production. Any additional costs incurred by HHR were entirely self-imposed.

HHR has offered no legitimate reason to deny IPOC's Motion.

## ARGUMENT

I.      **HHR's Designations are Overbroad and Not Supported by Good Cause.**

      A.      **The Documents Designated Contain Information That Is Not Entitled to Protection.**

HHR describes four categories of materials that it argues are entitled to remain under confidentiality designation: 1) documents that reflect the substance of KPMG FAS's confidential investigation of IPOC; 2) documents that contain confidential information about KPMG FAS; 3) documents that contain highly personal information about KPMG FAS employees; and 4) information concerning the methods Diligence used to penetrate KPMG FAS. HHR Opp. at 3. HHR further attaches a chart that purports to set forth the basis for HHR's Designations. Declaration of Derek Adler ("Adler Decl.") Ex. I. Exhibit I to Mr. Adler's Declaration, however, does not assign the fourth category as the basis for any Designation. *Compare* HHR Opp. 3, *with* Adler Decl. Ex. I.

As IPOC informed HHR prior to filing this Motion, IPOC agrees in principle that protection is warranted for documents that reflect the substance of KPMG FAS's work on the IPOC Investigation, and highly personal information about KPMG FAS employees including names of family members and birth dates.[2] As for HHR's category of confidential information about KPMG FAS, HHR has not identified any such information, nor specified how it is entitled

---

[2] However, information contained on public websites including education and employment information does not fall within that category. Further, documents about KPMG FAS that Diligence gathered from public websites and other publicly available materials should not be Designated.

to protection under Rule 26(c). There are documents that contain information about KPMG FAS that Diligence gathered from public websites and other publicly available materials, but these documents, on their face, do not qualify as "Confidential."

HHR describes its fourth category as information concerning how Diligence "succeeded in penetrating KPMG FAS." HHR Opp. at 3. HHR cites no basis for its contention that this information is entitled to the protective cloak of Rule 26(c), and, in any case, HHR does not claim this to be the basis for any of its Designations. See Adler Decl. Ex.I. The facts underlying Diligence's theft of IPOC's confidential information do not qualify to be suppressed behind the shield of a Rule 26(c) protective order. *See* arguments set forth in IPOC's Opening Memorandum (Docket #118) at 4-13; and Reply to Diligence's Opposition (Docket #126) at 3-14. While HHR's posits that the information should be kept "confidential so as not to facilitate or encourage any similar operations in the future," HHR Opp. at 3, such speculation does not form "good cause" to place documents under protective Designation pursuant to Rule 26(c).[3] Further, from a policy standpoint, the devious and dishonest techniques used by Diligence, including masquerading as United States and British government intelligence officers, is a matter of public interest that should not be hidden, especially where there is no "good cause" for such protection. It is also important to remember that, according to a *BusinessWeek* article, Diligence's CEO, Nicholas Day, discussed these very facts in an interview, and Mr. Day was more recently quoted in *The Politico* as stating that "[n]obody posed as American intelligence officials." *See* Exhibits D and E. Certainly, the facts concerning Diligence's methods cannot be both discussed publicly with the media by Diligence while others are restrained from discussing

---

[3] IPOC agrees that if the documents show credit or bank account information of HHR or its employees, that information should be redacted.

the same information because it is under confidential Designation. Diligence's methods of penetrating KPMG FAS's investigation of IPOC simply are not "trade secrets," competitive "commercial information," "research" or "development" information, nor information of an "intimate personal nature."

**B.      HHR's Bases for Designating the Documents Do Not Withstand Scrutiny.**

In the chart attached to its Opposition, HHR provides one or more of three general bases for its refusal to remove Designations from each of the 114 documents in issue:    (1) "[C]onfidential information regarding IPOC Investigation, Protected Under Bermuda Law;" (2) "Confidential KPMG Business Information/Commercially Sensitive Information; and/or (3) Confidential Personal Information about KPMG Personnel.    Adler Decl Exhibit I.    HHR's Designations are not warranted, however.

First, HHR's contention that IPOC seeks to lift Designations from information required by Bermuda law to be kept confidential is without foundation. As explained in IPOC's opening Memorandum in Support of this Motion, IPOC did not request that HHR or Diligence remove any Designations from documents that reveal the substance of information required by Bermuda law to be kept confidential. *See* Adler Decl. Exh. F ¶ 2.[4]

Second, HHR has failed to identify the specific portions the documents that it contends reflect information protected by Bermuda law, nor has it identified "intermingled" information that can or should be redacted from the documents.  This is so notwithstanding that HHR expressly agrees that "many of the documents refer to plans of Diligence to try to hurt IPOC

---

[4] "Please accept this letter as a formal written request that HHR de-designate as "Confidential" all materials produced by Diligence and/or other third parties that do not reveal the substance of information required by Bermuda law to be kept confidential." IPOC never asked either Diligence or HHR to remove the Designations from transcripts of witness interviews that were part of the investigation, and that HHR produced as HHR 02370 – 03494.

through operations that had nothing to do with KPMG FAS or the investigation it conducted," and makes clear that "[n]either HHR nor KPMG FAS objects to the disclosure of such information in any context." HHR Opp. at 6. Unfortunately, HHR's failure to provide proposed redactions of material that it alleges reflects the confidential information that Diligence stole from KPMG FAS's investigation has made it necessary for IPOC to provide the Court sufficient information to demonstrate that the documents should not be protected.[5]

IPOC counsel has reviewed all the documents that HHR contends should be protected under Rule 26(c). Attached hereto as Exhibit A is an addendum to this brief that discusses the reasons HHR's Designations do not meet the requirements of Rule 26(c). Because the addendum discusses the contents of documents that are designated under the Protective Order, IPOC has filed the addendum under seal. For the reasons set forth in the addendum and the chart attached as Exhibit B, the Court should lift all of the Designations that HHR placed on the documents. The documents themselves are attached for the Court's reference at Exhibit C.

II.    **IPOC Did Not Fail to Comply With the Procedures Under the Protective Order and Did Not Wait Longer than Five (5) Days After the Last Meet-and-Confer Session to Bring its Motion.**

In arguing that it has not waived its rights to designate documents under the Protective Order, HHR asserts that IPOC failed to comply with the Protective Order. HHR Opp. at 7-8. Notably, HHR does *not* urge the Court to deny IPOC's Motion on this ground, i.e., as untimely. Perhaps this is because the last meet-and-confer between IPOC and HHR was a mere three days before IPOC filed its motion. Indeed, on April 9 and 10, 2007, IPOC contacted HHR requesting that HHR return an executed copy of the Protective Order, which HHR had failed to do despite

---

[5] IPOC also has advised HHR that it is not opposed to the redaction of intimate non-public personal information concerning KPMG employees. HHR has not provided proposed redactions but simply retained its blanket Designations on the documents.

6

having insisted on the Protective Order before producing any documents to IPOC. *See* Declaration of Carol Joffe (Docket #126-2) at ¶ 10. IPOC complied with the Protective Order in bringing this Motion.

## III.    IPOC Should Not be Ordered to Pay Unnecessary Fees and Costs Incurred by HHR.

HHR's request for payment of costs should be denied. IPOC has not unnecessarily or unreasonably burdened HHR in connection with the Subpoena. If anything, it is HHR that has put IPOC to undue burden and expense. HHR refused to provide documents pursuant to the subpoena until agreement on the exact dollar figure IPOC would pay for production of the documents. Exhibit F. IPOC paid HHR $29,745.60 for production of approximately 700 documents consisting *entirely* of items that had already been produced and/or filed with the Court in the *KPMG v. Diligence* case. While HHR calls this its "initial cost for gathering and making its production," it is difficult to understand how fees in an amount approaching $30,000 could be incurred for merely copying documents and pleadings produced in a separate case, particularly when one would expect a sophisticated law firm such as HHR to maintain such documents in readily accessible files.

Moreover, IPOC subpoenaed these documents from HHR in July 2006, and, although discovery was stayed until October, HHR refused to produce the documents without a Protective Order, which was not entered until February 8, 2007. Once HHR finally did make a production, the documents produced were incomplete and grossly over designated as "Confidential" or "Attorneys Eyes Only," as evidenced by HHR's later removal of a large portion of its original Designations. Even now, HHR has maintained Designations on documents that do not fall

within the categories that HHR itself has set forth as deserving confidentiality.[6]  HHR's so-called

burdens in responding to IPOC's Subpoena have been of HHR's own making.

HHR also criticizes what it states to be IPOC's refusal to grant a reasonable request for

one week extension of time to respond to the present motion.  Any expense caused by HHR's

filing of an "emergency motion" resulted from the fault of HHR, not IPOC.  IPOC served its

motion upon HHR by hand delivery on April 13, 2007.  No request for extension of time was

received until 11 days later on the afternoon of April 24, 2007, when HHR counsel called and

asked for an extension.  IPOC has been disadvantaged by the continued Designations on these

documents, and IPOC could not agree to a course of conduct that would delay resolution of these

issues any further.  IPOC should not be made to pay for further delays, particularly given how

much IPOC has already paid HHR.  IPOC has paid HHR more than enough.

**IV.    The Court Should Reject HHR'S Claim That IPOC And Its Counsel Must Address "Evidence" Indicating That A Breach Of Confidentiality Undertakings and Protective Order Occurred.**

HHR refers to what it claims is evidence that IPOC or its counsel have breached the

Protective Order by showing confidential documents from HHR's production to the media.  HHR

bases this accusation on Paragraph 22 of Mr. Adler's Declaration in which he states that the

details have been summarized in materials filed by Diligence and BGR in support of their

respective motions which HHR attaches as Exhibit K.  Those motions however, were withdrawn

by both Diligence and BGR.  Docket entry #123.  HHR cites no independent basis to support an

---

[6] HHR claims that it should receive costs because a "cursory review of the materials" shows the "propriety of HHR's grounds for designation."  HHR Opp. at 8.  To the contrary, a cursory review reveals that these documents do not fall within even the categories laid out by HHR.  *See* Exhibits A, B, and C (under seal).  Furthermore, HHR's Opposition reveals that had HHR more carefully provided IPOC with the specific information it desired to be redacted from the documents rather than designating nearly all of them as Confidential, this Motion might have been avoided.

allegation that IPOC or its counsel disclosed protected information to the media.  Hence, the Court should reject this unsupported contention.

HHR next accuses IPOC and its counsel of disclosing protected information to another law firm.  Paragraphs 23-24 of Mr. Adler's Declaration assert that a partner at White & Case informed him in February 2007 that White & Case was mentioned in papers held in connection with KPMG FAS's lawsuit against Diligence.  Mr. Adler then goes on to explain that the mention of White & Case pertains to a handwritten note Bates-stamped HHR00106, which was designated as "Confidential" by both Diligence and HHR, although "HHR has subsequently agreed to de-designate this document." Adler Decl. ¶ 24, n.1.  To give context, Mr. Adler states:

> Diligence personnel, acting under false names, pretended to be conference organizers who were arranging a conference on forensic accounting in Bermuda and wanted KPMG FAS personnel to participate.  Diligence's handwritten notes suggest that when planning for this operation Diligence considered stating that an international law firm was also involved in organizing the supposed conference. Thus the name White & Case appears on HHR 00106.

Adler Decl. ¶ 24.  Mr. Adler's publicly filed declaration ironically does what HHR accuses IPOC's counsel of doing.  HHR reveals as much, if not more, about HHR 00106—a document that HHR does not even believe should be confidential—in the declaration of Mr. Adler as HHR accuses Winston & Strawn to have improperly disclosed to White & Case.  Winston & Strawn has not discussed or disclosed HHR 00106 to anyone.  HHR's claim that Winston & Strawn has disclosed information in violation of the Protective Order is unsupported and is a red herring designed again to divert attention from the substance of this Motion.

HHR also complains that Winston & Strawn never met HHR's "demand" for an explanation of this alleged event.  Winston & Strawn is a law firm consisting of approximately 900 hundred lawyers.  While Mr. Adler has stated in his declaration the names of the partners at White & Case with whom he had contact and what they allegedly told him, Mr. Adler did not

provide this information to Winston & Strawn so that it could make an investigation, notwithstanding that Winston asked Mr. Adler immediately upon his first claim of the "breach" whom at White & Case he had spoken to, and who at Winston & Strawn who allegedly provided such information. Mr. Adler never provided that information to Winston & Strawn. In any event, because Winston & Strawn did not disclose HHR 00106 or its contents to anyone in violation of the Protective order, IPOC had no obligation under Paragraph 30 of the Protective Order, because such obligations only arise if and when a party learns of a breach of the Protective Order, which did not occur here.

It is absurd for HHR to claim that IPOC's Motion should not be heard by the Court because of a hearsay allegation about a document on which "the name White & Case" appears, a document that HHR agrees should not be designated "Confidential" in the first place, and about which HHR has placed such details in the public record without any objection from Diligence, the party who designated the document.

## CONCLUSION

For all of the foregoing reasons, and those set forth in IPOC's opening brief, its reply to Diligence's opposition brief, and the exhibits filed herewith under seal, IPOC requests that the Court grant its Motion Pursuant to Protective Order to Remove Confidentiality Designations.

Respectfully submitted,

May 11, 2007

IPOC INTERNATIONAL GROWTH FUND
LIMITED

/s/ Carol A. Joffe

OF COUNSEL:
W. Gordon Dobie
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:    (312) 558-5600
Fax:    (312) 558-5700
wdobie@winston.com
kanderson@winston.com

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:    (202) 282-5000
Fax:    (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2007, a copy of the foregoing Reply Brief was served, via the Court's ECF system, on:

Michael Ross
Paul C. Rauser
Oliver Garcia
Aegis Law Group LLP
901 F. Street, N.W., Suite 500
Washington, DC 20004
*Counsel for Defendant Diligence LLC*

Edward B. MacMahon, Jr.
P.O. Box 903
107 East Washington Street
Middleburg, VA  20118
*Counsel for Defendant Barbour Griffith & Rogers LLC*

Charles D. Reed
Scott H. Christensen
Hughes Hubbard and Reed LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
*Counsel for Non-Party Subpoena Recipient Hughes, Hubbard & Reed LLP*

/s/ Carol A. Joffe