UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:06CV01109 (PLF) (AK) |
| DILIGENCE, LLC, et. al | ) ) | |
| Defendants. | ) ) | |

### IPOC INTERNATIONAL GROWTH FUND LIMITED'S OPPOSITION TO DILIGENCE LLC'S MOTION TO COMPEL IPOC TO PRODUCE DOCUMENTS

Plaintiff IPOC International Growth Fund Limited ("IPOC"), by counsel, respectfully submits this memorandum in Opposition to Diligence's Motion to Compel IPOC to Produce Documents (Docket #134). Diligence's Motion should be denied.

### INTRODUCTION

At first blush Diligence's Motion appears to address all the requests contained in Diligence's First Request for Production of Documents ("RFP"). The Motion, however, actually fails to make any arguments except with respect to RFP Nos. 12, 13, 14, 21 and 38.[1] Diligence contends that IPOC, which has already produced its documents, should be ordered to produce additional documents in response to these five Requests. Diligence's Motion side-steps and ignores IPOC's objections to these RFPs, and is based upon unfounded conjecture.

Further, Diligence's Motion to Compel is an attempt to blunt the impact of IPOC's earlier-filed, but still pending, Motion to Compel Diligence to produce documents (Docket #125). But there is one important difference between the motion to compel filed by IPOC and the one filed

---

[1] Diligence states that it "reserves the right to challenge the validity of IPOC's objections to Diligence's other Documents Requests." Mem. at 4, n.1.

by Diligence—IPOC has already produced documents responsive to Diligence's document requests, while Diligence has refused to produce a single document in response to IPOC's requests.[2]   Attempting to create a defense to IPOC's Motion to Compel, Diligence here stretches to create the illusion that IPOC has somehow not really produced documents or that IPOC is withholding documents that Diligence claims must exist.

Diligence's Motion to Compel has no legal, factual, or good-faith basis, and instead is but Diligence's latest attempt to shift this Court's attention from Diligence's own blatant and persistent failure to produce its documents.

## **BACKGROUND**

Diligence's crafty attempt to create the impression that it is IPOC, not Diligence, that has failed to produce documents and breached some agreement between the parties is beyond the pale.  IPOC has already dealt with these facts in its Reply to Diligence's Opposition to IPOC's Motion to Compel and will only briefly address it here.  See IPOC's Reply to Diligence's Opposition to IPOC's Motion to Compel (Docket #136-2) at 2-5 (incorporated by reference here).

On April 6, 2007, the Court granted in part and denied in part BGR's Motion to Compel directing IPOC to produce documents responsive to BGR's Document Request Nos. 5, 15, 18 and 24 within 15 days.  On April 23, 2007, IPOC delivered to Diligence and BGR copies of documents in accord with its responses to Diligence's and BGR's document requests and in accord with the Court's Order granting, in part, BGR's motion to compel.  IPOC's production included, for example, documents evidencing communications between IPOC (or its counsel) and KPMG FAS (or its counsel) regarding the investigation and the theft of material from the

---

[2] In its response to IPOC's document requests, Diligence on November 16, 2006 stated that it would produce documents.  Diligence refuses to actually produce its documents, however.

investigation [RFP No. 16]; documents related to the payments by IPOC to KPMG FAS for the investigation [RFP Nos. 17, 19, 24]; documents sufficient to establish the allegations of Paragraph 21 of the Complaint [RFP No. 26]; documents related to the method, means and manner by which IPOC obtained copies of the Diligence invoices to BGR referenced in Paragraph 22 of the Complaint [RFP No. 27].

Neither Diligence nor BGR have produced any documents. IPOC filed its Motion to Compel Diligence to produce documents because Diligence has produced no documents and refuses to do so.[3] Diligence followed suit by filing its Motion to Compel alleging that IPOC has not produced enough documents and specifically asks the Court to order IPOC to produce additional documents in response to Diligence's RFP Nos. 12, 13, 14, 21 and 38. Diligence filed this Motion although IPOC has told Diligence it has produced documents in accordance with IPOC's written responses to Diligence's requests for production. Diligence's statement that "IPOC did not respond to the letter" (asking if IPOC's production was complete or a "subset") is inaccurate because the parties discussed the matter at length at a meet-and-confer on May 2, 2007.

Diligence's assertions concerning the parties' agreements related to discovery and IPOC's document production are disingenuous.

## ARGUMENT

**A.    There is No Basis to Compel Regarding RFP Nos. 12, 13 and 14.**

Diligence's RFP Nos. 12, 13, and 14 each seek "[a]ll documents relating to each and every Communication between IPOC" and one of three individuals (Jeffrey Galmond, Mr.

---

[3] BGR promised to produce documents on or before June 1, 2007, but has since stalled for more time and stated that it will not produce its documents until June 5.

Reiman or Michael North) "relating to the IPOC Investigation, this action, Diligence, or BGR."[4] Diligence's RFP makes the words "IPOC Investigation" a defined term that means "the investigation into the affairs of IPOC and its corporate affiliates being <u>conducted by the Minister of Finance of Bermuda</u> as alleged in Paragraph 1 of your Complaint." As Diligence knows, the "IPOC Investigation" was conducted pursuant to the Bermuda Companies Act of 1981, Section 132(6), and the Bermuda statute requires that information related to the investigation be held in strict confidence. Moreover, neither the conduct of the investigation nor the materials examined or generated in the course of the investigation have any relevance to this lawsuit. Indeed, the sole relevance that the IPOC Investigation has to this case is that Diligence infiltrated and stole information from KPMG FAS, the firm conducting the investigation for the Bermuda Minister of Finance. Diligence's defined term the "IPOC Investigation," therefore, extends the reach of each of these requests far beyond any material that can possibly be calculated to lead to evidence relevant to this lawsuit.

Accordingly, IPOC objected to each of these requests on the ground that each is overly broad, vague and unduly burdensome; seeks documents that are not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence; and seeks documents that are protected from disclosure by Bermuda law. IPOC's objections and responses, however, made clear that "subject to and without waiving any objections, and to the extent they are not protected by the attorney-client privilege or work product doctrine," IPOC would "produce documents related to both (1)(a) this action, (b) Diligence or (c) BGR and (2) communications between IPOC" and one of the three individuals "<u>if any such documents exist.</u>" (emphasis added). Diligence's Motion does not appear to challenge IPOC's objections.

---

[4] IPOC's objections and responses to RFP Nos. 12, 13 and 14 are attached at Exhibit A to Diligence's Motion to Compel.

Instead, Diligence feigns amazement that no such documents were produced, stating as to communications between IPOC and Mr. Galmond that, "given IPOC's now-familiar allegation that Defendants have engaged in a calamitous scheme to 'ruin' IPOC, it is simply implausible that not one single IPOC director, officer, or employee has ever had any communication with Jeffrey Galmond [  ] about this lawsuit, Diligence, or BGR."  To the contrary, it would be far more surprising if there were any such documents.  This lawsuit is about a shadowy, covert, top-secret project that Diligence and BGR conducted for their clients.  Diligence's explicit instructions to its employees and agents was to leave no traceable trail.  The facts underlying this lawsuit were completely hidden from anyone's view until July 2005, when material improperly obtained from the KPMG FAS investigation appeared verbatim in legal filings in an arbitration in Zurich, Switzerland.

When KPMG learned of this "leak," it advised Mr. Galmond and Tom Benz of Winston & Strawn London, IPOC's outside counsel, but at that time neither IPOC nor its outside counsel, nor even KPMG, was aware that Diligence or BGR were involved in the "leak." IPOC 000009-IPOC000010, IPOC 000011.  From that time forward, as the documents produced by IPOC show, the matter was handled by IPOC's outside counsel, Winston & Strawn and Wakefield Quinn (Bermuda counsel).    IPOC IPOC000012, IPOC IPOC000017, IPOC000015-IPOC000016, IPOC000039-000040; IPOC000049-000050; IPOC000053-000054; IPOC000039-000040; IPOC000049-000050; IPOC000055-000056.    It was not until November 2005 that IPOC's counsel was informed by KPMG that Diligence was involved. IPOC000055-000056. At that time, KPMG also advised IPOC's counsel that it would conduct an investigation into the facts and inform IPOC's counsel of its conclusions.  KPMG then sued Diligence in this Court but filed its pleadings under seal and did not disclose to IPOC any of Diligence's documents that

reveal its schemes against IPOC.  On May 26, 2006, KPMG FAS provided IPOC's counsel with a summary report about its investigation.    IPOC filed this suit against Diligence and BGR on June 16, 2006.

IPOC thus only learned of the breach of the investigation by Diligence in November 2005, and from that time forward all information concerning the leak was provided by KPMG to IPOC's outside counsel.  IPOC's outside counsel communicated with the parties involved and sought additional information that eventually led to this suit.  The documents reflecting these efforts by IPOC's counsel were produced to Diligence on April 23, 2007, along with the other documents produced by IPOC.

Diligence does not contest these facts.    Although Diligence asks for written communications between IPOC and three individuals regarding this suit, Diligence or BGR, there is no reason to believe that any such documents exist.  Diligence and BGR's covert operation was long-hidden from IPOC.    When it came to light, IPOC's outside counsel investigated it.  Indeed, as a result of the restrictive geographic provisions in the protective order insisted upon by Diligence, Winston & Strawn has been unable to communicate many of the facts uncovered during discovery in this case to IPOC personnel, including Mr. North and its other Directors.  As a result, there is just no basis for Diligence to assert that it "strains logic and credulity" that such documents do not exist.  Diligence's assertion is based on speculation and nothing more.  Diligence's request for an order compelling IPOC to produce documents that simply do not exist should be denied.

### B.    There is No Basis to Compel Regarding RFP No. 21.

RFP No. 21 seeks: "All pleadings and other papers submitted to the arbitral tribunal by any party in the Zurich arbitration referenced in Paragraph 21 of your Complaint."  Clearly, this

request seeks to obtain "all pleadings and other papers submitted" in an arbitration proceeding in Zurich to which neither Diligence nor BGR are parties and which does not involve the issues in this case. The Zurich arbitration concerns the ownership of a block of Megafon stock, a subject that is unrelated to this case. This RFP plainly seeks information far beyond what could possibly lead to information relevant to this case.

IPOC objected to this request, explaining that "[a]ll pleadings and other papers submitted to the arbitral tribunal by any party in the Zurich arbitration comprise voluminous material that is not relevant to the Complaint or any defense." IPOC, however, did state in its response that it would "produce documents sufficient to establish the allegations in Paragraph 21 of the Complaint." Paragraph 21 of IPOC's Complaint states:

> 21.     Upon information and belief, when it engaged in this fraudulent activity, Diligence was acting on behalf of Defendant BGR, which was acting on behalf of litigation adversaries of IPOC, and Diligence provided the misappropriated business information to such litigation adversaries of IPOC. Indeed, a portion of the unlawfully obtained materials appeared almost verbatim in submissions made by LVFG to a Zurich arbitral tribunal in the proceedings referenced above. In addition, on information and belief, Diligence and/or IPOC's litigation adversaries LVFG and Alfa leaked portions of the misappropriated Draft Report to the press, which published, as recently as January 31, 2005, articles revealing the contents of the unlawfully obtained materials (which KPMG FAS has not shared with IPOC or its affiliates).

IPOC Complaint ¶ 21.

Diligence's demand that IPOC must produce "all pleadings and other papers submitted to the arbitral tribunal by any party" to establish the allegations in Paragraph 21 of the Complaint is brazenly improper.[5]  Paragraph 21 contains only the following allegation regarding Diligence

---

[5] Diligence also requested documents demonstrating the "inaccura[cy]" of the "portion of the unlawfully obtained material [that] appeared almost verbatim in submissions made by LVFG to a Zurich arbitral tribunal" and the "IPOC Investigation Report." RFP Nos. 6 and 7. Similarly, Diligence improperly sought "all documents relating to the arbitration initiated in Zurich by IPOC against LVFG;" (RFP No. 25) and "rulings, opinions, finding, conclusions and orders

and the Zurich arbitration: "Diligence was acting on behalf of Defendant BGR, which was acting on behalf of litigation adversaries of IPOC, and Diligence provided the misappropriated business information to such litigation adversaries of IPOC. Indeed, a portion of the unlawfully obtained materials appeared almost verbatim in submissions made by LVFG to a Zurich arbitral tribunal in the proceedings referenced above." These allegations do not provide any basis that renders "all pleadings and other papers" submitted to the Zurich tribunal "by any party" relevant to this case.

Only documents that support the allegation that "a portion of the unlawfully obtained materials [KPMG draft report] appeared almost verbatim in submissions made by LVFG to a Zurich arbitral tribunal" are relevant here. Rather than simply object to Diligence's blatantly overbroad RFP No. 21, IPOC responded that, notwithstanding its legitimate objections, it would produce documents sufficient to establish the allegations of Paragraph 21 of the Complaint. Thus, IPOC produced correspondence by and between KPMG FAS, KPMG's counsel, counsel for the parties to the Zurich Arbitration and the Bermuda KPMG Investigation, law firms for IPOC, and the law firm representing LVFG, all discussing and investigating the appearance of verbatim text from the stolen draft KPMG report in the filings of LVFG in the arbitration.[6]

The other allegations contained in Paragraph 21 address the actions of Diligence and are unrelated to the Zurich arbitration.

---

issued by the arbitral tribunal" (RFP No. 34). The accuracy or inaccuracy of the stolen material is irrelevant, and Diligence propounded these requests for improper purpose. Tellingly, Diligence does not move to compel on these RFPs.

[6] *See e.g.* IPOC000009-000010; IPOC000011; IPOC000012-000014; IPOC000015-000016; IPOC000017; IPOC000018-000019-IPOC000020-000022. *See also* IPOC000009-000010; IPOC000011; IPOC000012-000014; IPOC000015-000016; IPOC000017; IPOC000018-000019-IPOC000020-000022, IPOC000032-000033.

### C.    There is No Basis to Compel Regarding RFP No. 38.

Finally, Diligence seeks to compel production of documents responsive to Request No. 38, which seeks: "All documents relating to IPOC's policies, procedures, and practices for retention and destruction of documents (including, electronic mail and electronically stored documents)." IPOC agreed to produce responsive documents and has informed Diligence that it has not located any such documents but is continuing to search for them. IPOC is not withholding documents.

Although IPOC has agreed to provide any document retention policies, procedures and practices, it should be noted that this case does not involve IPOC's actions. It involves the wrongful actions of Diligence and BGR and their co-conspirators. The only documents likely to be possessed by IPOC with relevance to this case are those that have already been produced, communications to and from IPOC and its outside counsel seeking to uncover the facts related to the "leak" in the KPMG Investigation of IPOC. Diligence's quest to obtain IPOC's document retention policies is really just another side-show being conducted by Diligence to divert attention from discovery of its own actions.[7]

### D.    Diligence's Accusation that IPOC is Withholding Documents is Absurd.

This case is about a conspiracy undertaken by Defendants using covert means to injure IPOC. IPOC was not involved in the conspiracy and knew nothing whatsoever about it until after Diligence had infiltrated the KPMG Investigation, stolen confidential materials and intentionally provided them to IPOC's business and litigation adversaries and the press. Diligence's unsupported accusation that IPOC's document production of 304 pages is "meager" and solely in response to the Court's order on BGR's Motion to Compel is an overblown attempt

---

[7]  IPOC's counsel informed Diligence's counsel that IPOC will continue to search for documents and produce any additional documents that are found.

to put flesh on the bones of its contorted and imaginary version of events. The majority of Diligence's 43 document requests were improper, and Diligence has not moved to compel responses to any of the requests to which IPOC objected.

Many of Diligence's Requests address the beneficial ownership of IPOC and the officers, directors and beneficial ownership of IPOC's affiliates, subsidiaries and other related entities, which this Court previously held is neither relevant nor discoverable.[8] Memorandum Order, Docket #89.

RFP Nos. 36 and 37 also seek information that is both entirely irrelevant and is confidential under Bermuda statute, including the very information that Diligence stole from KPMG FAS, drafts and subsequent versions of the same report and the projected completion date of the stolen draft report. It is astonishing that Diligence would attempt to use this Court's discovery procedures to try to obtain more of the same type of information it was hired to steal from KPMG FAS.

IPOC objected to many other Diligence RFPs because they are overbroad and/or seek material that is irrelevant and not designed to lead to relevant material or are otherwise improper.

---

[8] These improper RFPs concerning beneficial ownership of IPOC and ownership an officers and directors of related entities include RFP No. 1 ("Documents sufficient to identify each and every person or entity possessing, directly or indirectly, a beneficial or ownership interest in IPOC."); RFP No. 4 ("All documents supporting your contention in the Zurich arbitration referenced in Paragraphs 21, 25, 27, and 28 of your Complaint that Mr. Reiman does not possess a beneficial interest, directly or indirectly, in IPOC."); RFP No. 5 ("All documents supporting your contention in the Zurich arbitration referenced in Paragraphs 21, 25, 27, and 28 of your Complaint that Jeffrey Galmond possesses a substantial beneficial interest in IPOC"); RFP No. 39 ("Documents sufficient to show all persons and entities possessing a beneficial or ownership interest, directly or indirectly, in IPOC Capital Partners Ltd."); RFP No. 40 ("Documents sufficient to show all persons and entities possessing a beneficial or ownership interest, directly or indirectly, in each entity possessing an ownership interest in IPOC or IPOC Capital Partners Ltd."); RFP No. 41 ("Documents sufficient to show each and every entity in which IPOC possesses, directly or indirectly, a beneficial or ownership interest."); RFP No. 42 ("Documents sufficient to show each and every entity in which IPOC Capital Partners Ltd. possesses, directly or indirectly, a beneficial or ownership interest.").

Diligence has not moved to compel production of any of those other RFPs. Diligence's misleading (at best) statement that IPOC's "meager production" in response to Diligence's "forty-three separate Document Requests" should not be countenanced. Diligence has moved to compel production regarding RFPs 12, 13, 14, 21 and 38 only.

Diligence's Motion is based on nothing but its own speculation that IPOC must somehow have failed to meet its document production obligations. Diligence asserts that it is "highlighting" only the requests for which IPOC agreed to produce documents, but still Diligence's motion addresses less than one-eighth of Diligence's RFPs and only one-third of the RFPs to which IPOC stated it would produce documents. Diligence claims that it "expressly reserves" the right to file further motions to compel challenging IPOC's objections "after IPOC makes its full production." Mem. at 4, n.1. A strategy that allows a party to file successive motions to compel every time it decides it is not satisfied with an opponent's production does nothing but waste the time and resources of this Court. The reality of the situation—as much as Diligence pretends to ignore it—is that Diligence has no basis to move to compel on its other 38 document requests and can only barely cobble together arguments concerning the five at issue here, and even these fall short.[9]

Diligence has employed one tactic after another to evade obligations established by the Federal Rules and delay the day when it must produce documents. Diligence's Motion is but another tactic adopted as part of this strategy and should be denied.

---

[9] As Diligence is no doubt aware, well over half of its original requests were improper, either because they address matters wholly irrelevant to this case or because they are drafted in a blatantly broad and burdensome manner—perhaps the most egregious example being its request for "all documents reflecting any and all telephone calls" made by an IPOC employee over a seven year period. RFP No. 30.

## CONCLUSION

For the reasons set forth above, the Court should Deny Diligence's Motion to Compel IPOC to Produce Documents.

June 1, 2007

IPOC INTERNATIONAL GROWTH FUND LIMITED

OF COUNSEL:
W. Gordon Dobie
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:    (312) 558-5600
Fax:    (312) 558-5700
wdobie@winston.com
kanderson@winston.com

/s/ Carol A. Joffe

_____

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:    (202) 282-5000
Fax:    (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2007, I caused the foregoing Opposition to Diligence's Motion to Compel IPOC to Produce Documents to be served electronically, via the Court's electronic filing system, on:

> Michael Ross
> Paul C. Rauser
> Oliver Garcia
> Aegis Law Group LLP
> 901 F. Street, N.W., Suite 500
> Washington, DC 20004
> *Counsel for Defendant Diligence LLC*
>
> Edward B. MacMahon, Jr.
> P.O. Box 903
> 107 East Washington Street
> Middleburg, VA 20118
> *Counsel for Defendant Barbour Griffith & Rogers LLC*
>
> Charles D. Reed
> Scott H. Christensen
> Hughes Hubbard and Reed LLP
> 1775 I Street, N.W.
> Washington, D.C. 20006-2401
> *Counsel for Non-Party Subpoena Recipient Hughes, Hubbard & Reed LLP*

_____/s/_____
Carol A. Joffe