IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED )))<br>Plaintiff, )<br>)<br>v. )<br>)<br>DILIGENCE LLC, et al. )<br>)<br>Defendants. ) | Civil Action No. 06-1109 (PLF)(AK) |

**REPLY MEMORANDUM IN SUPPORT OF DILIGENCE INC.'S
MOTION TO COMPEL IPOC TO PRODUCE DOCUMENTS**

IPOC's Opposition memorandum ("Opposition") does not dispute that in November, counsel for IPOC and counsel for Diligence reached agreement, in writing, that Diligence would produce its documents three days *after* IPOC produced its documents to Diligence, thus reflecting the sequence in which discovery was served. Nor does IPOC deny the principal factual pillar supporting the instant Motion: *that IPOC has failed to produce any internal IPOC documents.* Instead, IPOC's meager production is limited to just (i) documents between its own counsel (Winston & Strawn LLP) and third parties, and (ii) documents produced by BGR in the KPMG FAS Action.

Strikingly, IPOC does not deny it has produced only a subset of the documents it has already agreed to produce in response to Diligence's Document Requests. Nowhere in its twelve-page Opposition does IPOC affirmatively state that it has searched for, and produced, all documents it has agreed to produce in response to the Document Requests at issue (Nos. 12-14, 21, and 38). At the same time, IPOC repeatedly implies (but is careful not to affirmatively state)

that no such documents exist. Using carefully-crafted language, IPOC states only that "Diligence's assertion [that responsive, internal IPOC documents must exist] is based on speculation and nothing more," and that "there is no reason to believe that any such documents exist." Opposition ("Opp.") at 6. Glaringly, IPOC simply refuses to tell us whether such documents do in fact exist, and whether IPOC has made any attempt to locate all such documents in its possession, custody, or control (including such documents located overseas).

Thus, although IPOC goes to great length to *imply* to this Court that it has produced all documents it agreed to produce in response to Document Requests No. 12-14, 21, and 28, the fact remains that IPOC will not state in writing that it has done so. It was precisely such obstinacy that resulted in the instant Motion. Despite multiple written requests from Diligence, IPOC refused to state whether its 304-page production on April 23 "constitute[d] IPOC's entire production in response to Diligence's First Set of Requests for Production, or whether they are a subset thereof that IPOC has produced pursuant to Judge Kay's Order of April 6, 2007." Diligence's Opening Mem. Ex. C. IPOC still refuses to do so. To cut through IPOC's obstinacy and to ensure compliance by IPOC with the agreement reached between counsel last November, IPOC should be ordered to: (i) produce all non-privileged documents responsive to Diligence's Document Requests No. 12, 13, 14, 21, and 38 within five (5) days; or (ii) certify in writing that IPOC has made a good faith search for all responsive documents (including electronic mail) in its possession, custody or control (regardless of whether located in the U.S. or overseas) but was unable to locate any such documents. Within three business days thereafter, Diligence will make its document production to IPOC in accordance with the parties' written agreement of last November.

2

## ARGUMENT

I. **IPOC'S EXCUSES FOR FAILING TO PRODUCE RESPOSIVE DOCUMENTS ARE UTTERLY UNCONVINCING.**

IPOC has not produced even one internal IPOC document. In an attempt to excuse its grossly inadequate, partial production, IPOC throws up various excuses. None has any merit.

   A. **It Is Not Believable That Not One IPOC Communication Exists That References Diligence, BGR, or this Action.**

IPOC admits that it previously agreed to produce, in response to Document Requests Nos. 12, 13, and 14, all non-privileged communications between IPOC and Michael North (one of IPOC's three Directors), Jeffrey Galmond (whom IPOC has claimed for years is its sole beneficial owner), or Leonid Reiman (the Russian Telecommunications minister) that mention Diligence, BGR, or this lawsuit. See Opp. at 3. Put simply, any non-privileged communications between IPOC and any one of these three individuals that mentions Diligence, BGR, or this lawsuit, must be produced. Yet not a single such communication has been produced—not one letter, email, memorandum, or set of Board minutes.

To attempt to excuse its failure to adhere to its own agreement to produce all such communications, IPOC now seeks to limit *sub silencio* the category of documents it previously agreed to produce. According to IPOC, "it would be surprising if there were any such [responsive communications]" because the "the facts underlying this lawsuit were completely hidden from anyone's view until July 2005." Opp. at 5. This argument is a red herring. Contrary to IPOC's sleight-of-hand, the IPOC communications that IPOC has agreed to produce in response to Document Requests Nos. 12, 13, and 14 are *not* limited to documents generated in the course of the events alleged in the Complaint, which took place in 2005. Rather, in addition to such documents, IPOC is required to produce all communications between July 2005 (the date on which

3

IPOC admits it learned of the alleged events giving rise to this lawsuit) and June 12, 2006 (the date on which IPOC filed this lawsuit). Plainly, whether the acts alleged in the Complaint were meant to remain undiscovered simply has no bearing on whether post-July 2005 communications exist between IPOC and Messrs. North, Galmond, or Reiman that mention Diligence, BGR, or this lawsuit. Indeed, common sense would suggest that during this eleven-month period, there were many such communications, especially given IPOC's repeated claims in its filings with this Court that defendants' alleged conduct has caused IPOC over $8 million in damages and poses a grave and immediate danger to the company.

In sum, IPOC's *sub silencio* attempt to limit the time frame of the documents it has agreed to produce to only pre-July 2005 communications is improper, without basis, and should be rejected.

    **B.**    **IPOC Has No Excuse for Failing to Produce the Arbitration Pleading(s) In Which Material Allegedly Obtained by Defendants Appeared.**

IPOC again obfuscates with respect to Document Request No. 2. Contrary to IPOC's misleading suggestion, and as Diligence's opening memorandum makes clear, Diligence does not seek in the instant Motion "all pleadings and other papers submitted to the [Zurich] arbitral tribunal by any party." Opp. at 7. Rather, Diligence seeks only those arbitration "submissions" that IPOC references in Paragraph 21 of its Complaint, in which IPOC alleges that "a portion of the unlawfully obtained materials appeared almost verbatim in submissions made by LVFG to a Zurich arbitral tribunal," as IPOC alleges in Paragraph 21 of its Complaint. Having made this allegation in its Complaint, IPOC is required to produce copies of those "submissions." Yet IPOC refuses to do so.

IPOC attempts to justify its failure to produce these plainly relevant "submissions" is that it is already produced correspondence *referencing* those submissions. See Opp. at 8. This

4

is obviously inadequate; there is no basis under Rule 26 for a party to limit its production to only those relevant documents it wants to produce. See Fed. R. Civ. P. 26. Rather, 26(b)(1) permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1)). Having hinged various of its claims on its allegation in Paragraph 21 of its Complaint that "submissions" to the arbitral tribunal contained "almost verbatim" quotes from materials allegedly wrongfully obtained by Diligence, IPOC cannot now refuse to produce copies of those "submissions" in discovery. Compl. ¶ 21.

### C.  It Is Implausible—Indeed, Unlawful—For IPOC Not to Have Had Any Document Retention Policies or Procedures.

Document Request No. 38 seeks "[a]ll documents relating to IPOC's policies, procedures, and practices for retention and destruction of documents (including, without limitation, electronic mail and electronically stored documents)." Opening Mem Ex. A at 21. In its Opposition, IPOC acknowledges that it agreed to produce all responsive documents. See Opp. at 9. Yet it has not produced even a single responsive document.

According to IPOC, "it has not located any such documents but is continuing to search for them." Putting aside that Bermuda regulators surely would be alarmed that IPOC—which purported at all times relevant to this lawsuit to be a "mutual fund"—has never had a written document retention policy or procedure—IPOC's dodge highlights the necessity and validity of the instant Motion. While at the same time conceding that it has not completed its own search for documents responsive to Diligence's document requests, IPOC is insisting that Diligence produce its documents to IPOC even though the parties agreed months ago, in writing, that Diligence was not required to produce its documents until three days after IPOC's production. In a transparent attempt to circumvent this agreement, IPOC produced only a narrow subset of responsive documents—all from Winston & Strawn's files, not IPOC's—and then demanded that

Diligence make its full document production immediately. Unless and until IPOC makes a plenary production of documents—including, of course, its own internal documents—IPOC has not in good faith complied with the parties' written agreement on the sequence of document discovery.[1]

IPOC's gamesmanship should not be countenanced. Diligence respectfully suggests that IPOC should be ordered to: (i) produce all non-privileged documents responsive to Diligence's Document Requests No. 12, 13, 14, 21, and 38 within five (5) court days; or (ii) certify in writing that IPOC has made a good faith search for all responsive documents (including electronic mail) in its possession, custody or control (regardless of whether located in the U.S. or overseas) but was unable to locate any such documents. Within three business days thereafter, Diligence will make its document production to IPOC in accordance with the parties' written agreement of last November.

---

[1] IPOC reiterates a now-familiar excuse for failing to comply with discovery propounded by the defendants. According to IPOC, "[i]t is astonishing that Diligence would attempt to use this Court's discovery procedures to try to obtain more of the same type of information it was hired to steal from KPMG FAS." Opp. at 10. This allegation is transparently without merit in the wake of the Court's entry of its Protective Order on February 8, 2007. To the extent IPOC considers its document retention policies and procedures to be confidential or proprietary, then it is perfectly free to (and no doubt will) mark such documents as "Confidential" or, if warranted, "Attorneys' Eyes Only" under the Protective Order. Such designations, of course, prohibit defendants from using such material for any purpose other than this lawsuit.

## **CONCLUSION**

For the reasons set forth above and in Diligence's opening memorandum, Diligence respectfully requests that IPOC be ordered to: (i) produce all non-privileged documents responsive to Diligence's Document Requests No. 12, 13, 14, 21, and 38 within five (5) court days; or (ii) certify in writing that IPOC has made a good faith search for all responsive documents (including electronic mail) in its possession, custody or control (regardless of whether located in the U.S. or overseas) but was unable to locate any such documents. Within three business days thereafter, Diligence will make its document production to IPOC in accordance with the parties' written agreement of last November.

Respectfully submitted,

June 8, 2007

AEGIS LAW GROUP LLP


By:    /s/ Michael K. Ross
       Paul C. Rauser (D.C. Bar No. 461722)
       Michael K. Ross (D.C. Bar No. 458573)
       901 F Street, N.W., Suite 500
       Washington, D.C. 20004
       T: 202-737-3500
       F: 202-737-3330

       *Attorneys for Defendant Diligence Inc.*