IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED,<br><br>    Plaintiff,<br><br>vs.<br><br>DILIGENCE, LLC, et al.<br><br>    Defendants. | Civil No. 06-1109<br>(PLF)/(AK) |

**DEFENDANT BARBOUR GRIFFITH & ROGERS LLC'S OPPOSITION TO IPOC'S MOTION TO COMPEL BARBOUR, GRIFFITH & ROGERS LLC TO PRODUCE UNREDACTED DOCUMENTS**

# EXHIBIT B

Questions about E-Discovery? For the answers, visit Law.com's FREE
**E-DISCOVERY ROAD MAP**

# LAW.COM

Select '**Print**' in your browser menu to print this document.

**Copyright 2007 ALM Properties, Inc. All rights reserved.**

Page printed from: http://www.law.com

Back to Article

---

**Arbitrators Tackle Russian Corruption in Fight Over Cell Phone Operator**

By Michael D. Goldhaber
The American Lawyer
06-20-2007

Both sides got dirty in the tussle over Russian cell phone operator OAO MegaFon. In Switzerland, industrial spies searched an arbitrator's garbage. In Bermuda, a retired British spy turned private eye persuaded a gullible KPMG International accountant to turn over confidential company information via a "dead drop" in the basket of his moped. And those are most likely the tactics of the (relatively) good guys.

The case pits Russian conglomerate Alfa Group Consortium and its allies against a Bermuda investment vehicle called IPOC International Growth Fund Limited. The prize: a stake in MegaFon worth up to $2.5 billion today. IPOC accuses Alfa of directing the dirty tricks in this case. But Swiss arbitrators and judges have found IPOC to be guilty of something much worse than dumpster diving. They have declared IPOC to be a vessel for Russia's minister of telecommunications, Leonid Reiman, to launder money stolen from the Russian people. Reiman, say the Swiss arbitrators and judges, abused his office by issuing a valuable cellular license to a company that he himself controlled, then parked the proceeds in IPOC.





The fiercely fought dispute takes arbitration into new territory. Long after the James Bond sideshow is forgotten, the MegaFon arbitration will be remembered as the first case where arbitrators broadly evaluated a party's criminality. Rather than merely contesting IPOC's interpretation of the contract, Alfa and its allies tried to defeat IPOC's claims by arguing that IPOC violated Swiss, British and Russian criminal laws with a money laundering scheme. Arbitrators often judge whether the underlying contract in a dispute was obtained by bribery -- but the Zurich tribunal in the MegaFon case went further. It ruled that IPOC could not reap the benefit of the disputed agreement because IPOC is a criminal organization and its money was tainted. "We haven't seen any precedent," says Swiss firm Homburger's Balz Gross, who represents an Alfa ally in the case. "It's the first award to uphold a money laundering defense."

In effect, the Zurich panel conducted a private judicial investigation into the crime of money laundering. To some lawyers this is admirable, and to others it is outrageous. "You're at the edge or beyond," says one IPOC lawyer, "of what a private adjudication system can do."

The case grew out of two option agreements that IPOC signed in 2001 with a holding company called LV Finance Group Limited. The agreements gave IPOC the right to buy from LV certain telecom assets that now form a quarter of MegaFon. By 2003, when IPOC decided to exercise its option, the value of the stake had risen considerably. According to IPOC, LV tried to extract a higher price from IPOC; when IPOC refused, LV ignored the agreement and sold the stake for a higher price in a series of deals that transferred control to an Alfa affiliate. The stage was set for a struggle between two Russian potentates: Mikhail Fridman, the oil tycoon who is chairman of Alfa, and Leonid Reiman, the telecom minister with blurry ties to IPOC.

Soon after the sale to Alfa, IPOC filed three arbitrations with the help of Winston & Strawn, two in Switzerland and one in Sweden. In Switzerland, IPOC aims to enforce its option agreements with LV. In Sweden it argues that Alfa violates MegaFon's shareholder agreement by owning a big stake in MegaFon's rival Vimpel-Communications. With a pithiness that would do credit to Tony Soprano, Reiman's lawyer expressed Reiman's position in a message that was secretly captured on videotape (and later presented into evidence in related litigation): "He doesn't want fucking Alfa in MegaFon. That's it."

Alfa and its allies turned to the best Western legal talent that money could buy. In Switzerland, LV hired the local firm Homburger and the London office of Weil, Gotshal & Manges. (Weil was recently replaced by London's SJ Berwin, after Weil's partner on the case withdrew for personal reasons and its senior associate on the matter switched firms.) In Sweden, the Alfa affiliate CT-Mobile retained Freshfields Bruckhaus Deringer.

While Alfa's law firms argued to the arbitrators that IPOC was laundering money -- and IPOC denied it -- other professionals did their work with cloak and dagger. While the subterfuge can't be squarely pinned on Alfa, it seems designed for Alfa's benefit. The fun began in May 2004, when the arbitrator Bernard Meyer-Hauser, chair of the Geneva panel, reported to the police that private investigators were going through his garbage and trying to access his personal bank account. The incident was traced to Kroll Inc., the investigative and security services firm. Although Alfa has retained Kroll for other needs, LV denied any connection to the dumpster dive. Indeed, LV argued that its opponent had hired Kroll in a setup to make LV look bad. LV asked the chair to recuse himself. Meyer-Hauser refused. LV then withdrew from the Geneva arbitration, choosing instead to focus on Zurich. The Geneva panel ruled in IPOC's favor in August 2004, finding that the smaller of the two option agreements was enforceable.

Meanwhile, more strange tricks came to light. Before the February 2006 trial in Stockholm, two mysterious individuals tried to get the arbitrators Yves Derains and Werner Melis involved in a conflicting case, and gave them inappropriate information on tactics in the MegaFon arbitration. The arbitrators did not take the bait, but IPOC views the affair as another ham-handed attempt by Alfa to suborn the judges.

Most sensationally, the private investigation firm Diligence Inc., of Washington, D.C., ran a sting operation infiltrating IPOC's auditor, KPMG, for much of 2005. A former British spy working for Diligence claimed to be still active and persuaded a KPMG accountant in Bermuda to turn over confidential IPOC materials, until the detective's cover was blown by an anonymous tip. Diligence was retained by the D.C. lobbyists Barbour Griffith & Rogers. Barbour Griffith refused to say which client it was acting for, but it works for an Alfa affiliate, Alfa Bank, on other matters, and Diligence billed the matter under an entry referring to "A Telecom," according to one IPOC complaint.

IPOC maintains that Alfa entities are responsible for all three episodes of espionage and has used documents obtained in Bermuda as evidence in the arbitrations. IPOC also alleges that Alfa has paid more than $11 million to witnesses, which IPOC characterizes as bribes for perjury. While Alfa and its allies deny any responsibility for the spying, they freely disclose million-dollar payments that, in their view, compensated witnesses for risking their personal safety and ruining their Russian business prospects. There's nothing illegal about such payments, say lawyers for IPOC's opponents -- and, they add, the witnesses have been deemed reliable by the Zurich arbitrators and the Swiss courts.

"Alfa's business practices might perhaps be described as muscular," says one lawyer for an Alfa affiliate, "but there's no comparison between that and massive state corruption." As it turned out, the most persuasive witness against IPOC would be produced by IPOC itself.

Momentum shifted dramatically in Alfa's favor in January 2006, when IPOC changed its story about its ownership. IPOC had long maintained that it was not owned by Reiman, the Russian minister, but by Reiman's lawyer, Jeffrey Galmond, a Danish-born independent practitioner in St. Petersburg. In an affidavit in a related proceeding, IPOC suddenly admitted that Galmond was not the owner. IPOC has never quite acknowledged that it is owned by Reiman -- Reiman vehemently denies it -- nor has it offered any plausible alternative. What seems to have compelled IPOC to change its story was newly disclosed correspondence from Galmond's law office in 2001-02 indicating that Reiman was the owner. IPOC's opponents say that it could no longer hide the obvious.

The new evidence produced dramatic results in the Swiss arbitrations. After a free-ranging inquiry that cost about $5 million, the Zurich tribunal ruled against IPOC. The panel found that "Proposed Witness No. 7" (Leonid Reiman) was IPOC's "sole beneficial owner." They also found that he had violated Russian and Swiss criminal law when, in 2000, he used his office as telecom minister to grant a cellular license to Telecom XXI, a company that he secretly controlled, then flipped the license for $40 million to Russia's OAO Mobile TeleSystems and funneled most of the proceeds into IPOC. The Zurich panel concluded that IPOC's option agreement with LV was illegal and therefore unenforceable. The

Law.com: Arbitrators Tackle Russian Corruption in Fight Over Cell Phone Operator     Page 3 of 3

Swiss national courts affirmed the anti-IPOC Zurich award in August 2006; last February they vacated the pro-IPOC Geneva award and remanded the case.

Elsewhere, the news for IPOC turned from bad to worse. In January, the Bermuda Monetary Authority initiated proceedings to "wind up" IPOC, signaling that Reiman's company may be too tainted even for an offshore financial haven. Bermuda seeks to seize IPOC's remaining assets, including an undisputed 8 percent stake in MegaFon. Finally, on April 30 in Stockholm, the third arbitration panel ruled against IPOC. The tribunal in Sweden chose to rest its decision on traditional contract grounds, finding the portion of the shareholder agreement relied on by IPOC to be invalid under Russian law. On the fraught question of money laundering, the Stockholm panel stayed above the fray.

Skeptics of the Zurich money laundering ruling note that the arbitral system has neither the tools nor the safeguards of a criminal justice system. "Arbitrators are not prosecutors," complains an IPOC lawyer. "They're guys like me sitting around a table in Zurich." Arbitrators lack criminal law expertise, have no investigative staff and have more limited power to enforce subpoenas. At the same time, the accused is deprived of the presumption of innocence and the right to a full appeal.

But objectively, there is much to like in arbitrators tackling criminal law. Arbitrators in high-stakes cases are often more talented and better financed than prosecutors or the judges that, in many jurisdictions, investigate cases themselves. Most crucially, arbitrators are independent; in many nations, prosecutors and investigating judges are not. Two Russian-controlled entities would not be settling their dispute in arbitration if they trusted the Russian justice system. Russia has yet to investigate Reiman, who is a friend of President Vladimir Putin. "Uncle Leonid," as he is sometimes called by associates, is wearing a Russian regulator's badge to this day.

Arbitration may not afford full protections to the investigated party, but neither does it possess the power of incarceration. Civil adjudication can also redress crimes, and where criminal law has failed, civil justice serves as a useful backstop. Surely arbitrators serve the public interest when they out a great secret crime. If the bad guy's enemies are not exactly good guys, that only thickens the plot.