# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH     )
FUND LIMITED     )
    )
        *Plaintiff,*     )
    )
v.     )     Civil Action No. 06-1109 (PLF) (AK)
    )
DILIGENCE LLC, et al.     )
    )
        *Defendants.*     )
_____ )

## MOTION TO QUASH THIRD-PARTY SUBPOENAS
## TO CITIBANK, F.S.B. AND WACHOVIA BANK, N.A.
## FOR PRODUCTION OF BANK RECORDS

      Defendant Diligence, Inc., by and through undersigned counsel, respectfully moves

for an order pursuant to Federal Rule of Civil Procedure 45(c)(3) for an Order quashing third-party

subpoenas issued by plaintiff IPOC International Growth Fund, Ltd. to Citibank, F.S.B. and

Wachovia Bank, N.A.  A Memorandum in Support and Proposed Order are attached.

      As required by Local Civil Rule 7(m), counsel for Diligence sought IPOC's consent

to the relief requested herein, but such consent was not obtained.

Respectfully submitted,

July 27, 2007                                    AEGIS LAW GROUP LLP

                          By:        _Paul Rauser_____

                                     Paul C. Rauser (D.C. Bar No. 461722)
                                     Michael K. Ross (D.C. Bar No. 458573)
                                     901 F Street, N.W., Suite 500
                                     Washington, D.C. 20004
                                     T: 202-737-3500
                                     F: 202-737-3330

                                     *Attorneys for Defendant Diligence Inc.*

REDACTED VERSION FOR PUBLIC FILING

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED | ) ) ) | |
| *Plaintiff,* | ) ) | |
| | ) | Civil Action No. 06-1109 (PLF)(AK) |
| v. | ) ) | |
| DILIGENCE LLC, et al. | ) ) | |
| *Defendants.* | ) ) ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION TO QUASH THIRD-PARTY SUBPOENAS
## TO CITIBANK, F.S.B. AND WACHOVIA BANK, N.A.
## FOR PRODUCTION OF BANK RECORDS

Defendant Diligence, Inc., by and through undersigned counsel, respectfully moves

pursuant to Federal Rule of Civil Procedure 45(c)(3) for an Order quashing third-party subpoenas

issued by plaintiff IPOC International Growth Fund, Ltd. to Citibank, F.S.B. and Wachovia Bank,

N.A. for banking records relating to Diligence (collectively, the "Bank Subpoenas").[1]  These

subpoenas seek production of fifty-two specified categories of bank records to plaintiff's counsel

on July 30, 2007.

### ARGUMENT

---

[1]  Counsel for defendant Barbour Griffith & Rogers ("BGR") has informed undersigned counsel
that the Bank Subpoenas contain information designated by BGR as Confidential pursuant to
the protective order entered by the Court in this case.  Accordingly, Counsel for Diligence has
supplied copies of the Citibank and Wachovia subpoenas as Sealed Exhibits A & B,
respectively, and filed them concurrently with this Motion.

1

REDACTED VERSION FOR PUBLIC FILING

Diligence regrets that it must, once again, seek the protection of the Court from another attempt by IPOC to circumvent the schedule stipluated by the parties for orderly discovery in this case.  Without waiting for Diligence's production of documents pursuant to IPOC's Requests for Production – a document production which is not yet due – IPOC has issued two third-party subpoenas for Diligence's bank records and those of BGR.[2]  These subpoenas are improper and should be quashed on at least two grounds.

*First,* the Bank Subpoenas seek information which should be sought in the first instance from the defendants in this case.  It is improper and abusive for IPOC to seek information about Diligence's banking transactions from third parties before the time is due for production of such documents by Diligence under the agreed discovery schedule (which, of course, requires a prior production of documents by IPOC, which IPOC has been unwilling to make).

*Second,* independent of IPOC's improper effort to circumvent the agreed discovery schedule between the parties, the third-party Bank Subpoenas collectively contain fifty-two requests seeking a wide swathe of obviously irrelevant material.  These include, for example, documents concerning "any transaction" with

, documents concerning "any transaction" with

documents concerning "any transaction" with any entity with the word                    in its name; and documents concerning "any transaction" with

---

[2]    Defendant Diligence maintains bank accounts at the branch of Citibank, F.S.B. to which IPOC directed its subpoena.  It is Diligence's understanding that defendant Barbour, Griffith & Rogers maintains accounts at the branch of Wachovia Bank, N.A. subpoenaed by IPOC.  Diligence has moved to quash both subpoenas because both seek information pertaining to Diligence's financial transactions and business affairs.  *See, e.g.* Sealed Ex. A at 3 (seeking records "related to any account in the name of, or for the benefit of, Diligence"); Sealed Ex. B at 4 (same).

REDACTED VERSION FOR PUBLIC FILING

a host of other entities, regardless of whether those documents have any relevance to the claims in

IPOC's Complaint, all over an excessively long three-and-a-half year period which significantly

post-dates the events giving rise to this case.

      In light of these defects, Diligence respectfully moves for an Order pursuant to

Federal Rule of Civil Procedure 45(c)(3) quashing the Bank Subpoenas.[3]


## ARGUMENT

**I.     THE THIRD-PARTY BANK SUBPOENAS SHOULD BE QUASHED BECAUSE THEY SEEK INFORMATION THAT PROPERLY SHOULD BE SOUGHT FROM THE DEFENDANTS UNDER THE PARTIES' AGREED-TO DISCOVERY SCHEDULE.**

      As the Court is well aware from the motions practice in this case, shortly after the

commencement of discovery, lead counsel for IPOC and undersigned counsel agreed in writing

that Diligence would produce its documents to IPOC three days *after* IPOC produced its

documents to Diligence, thus reflecting the sequence in which discovery was served. *See*

Diligence Opp. to Mot. to Compel Diligence to Produce Documents in Response to Plaintiff's

First Request for Production of Documents (May 17, 2007) (Dkt. #133) (discussing parties'

discovery agreement). Producing documents concerning IPOC and its business operations is, of

course, highly unpalatable to IPOC, and the record in this case is littered with efforts by IPOC –

---

[3]    Under well-settled caselaw, Diligence has standing to move to quash a Rule 45 subpoena *duces tecum* where that subpoena – like the subpoenas IPOC has served on Citibank and Wachovia – seeks production of documents concerning its financial affairs. *See, e.g.,* In re Flag Telecom Holdings, Ltd. Sec. Litigation, 2006 WL 2642192, at *2 (S.D.N.Y. Sept 13, 2006) (party has standing to challenge third-party subpoenas pertaining to its financial affairs); Chemical Bank v. Dana, 149 F.R.D. 11, 13 (D. Conn. 1993) (party has standing to challenge subpoena for records pertaining to its financial or business dealings); *see generally* 9A Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2459 at 41 (2d ed. 1995) (same).

REDACTED VERSION FOR PUBLIC FILING

from so-called "emergency motions," to requests to intervene in settled lawsuits – to obtain

Diligence's documents without responding to Diligence's earlier-served discovery.[4]  IPOC's third-

party subpoenas to Citibank and Wachovia represent the most recent procedural gambit to

circumvent the agreement between the parties and obtain expedited, out-of-order discovery of

Diligence's business documents before IPOC is obligated to make its own production.

　　　　　Under Federal Rule of Civil Procedure 45(c)(3), a third-party subpoena should be

quashed if it imposes an "undue burden."  One oft-applied test to determine whether a subpoena

imposes an "undue burden" is whether the subpoena seeks records from a non-party that could

have been sought from a party to the case.  Courts routinely reject efforts, such as IPOC's here, to

subpoena non-parties for records where the party issuing the subpoena has not first availed itself

of its opportunities to obtain the records from another party.  *See, e.g.,* Haworth, Inc. v. Herman

Miller, Inc., 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming denial of discovery because "the

district court could properly require [the party seeing discovery] to seek discovery from its party

opponent before burdening the nonparty"); Moon v. SCP Pool Corp., 232 F.R.D. 633, 638 (C.D.

Cal. 2005) (quashing subpoena where the "requests all pertain to defendant, who is a party, and,

thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather

than [the] nonparty"); Medical Components, Inc. v. Classic Medical, Inc., 210 F.R.D. 175, 180

---

[4]  It is noteworthy that IPOC has *never* produced its documents responsive to Diligence's First Set of Requests of Production, which was the the very first discovery served in this case.  Rather, IPOC has produced to Diligence and BGR the same narrow subset of responsive documents—totaling just 304 pages—in response to this Court's Order of April 6, 2007 directing IPOC to respond to four Document Requests previously served by BGR (not Diligence).  This meager production, in response to four BGR Document Requests, plainly does not constitute IPOC's full production to Diligence's First Set of Requests for Production, which set forth forty-three (43) Document Requests.

REDACTED VERSION FOR PUBLIC FILING

(M.D.N.C. 2002) ("The currently prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party"); Braxton v. Farmer's Ins. Group, 209 F.R.D. 651, 653 (N.D. Ala. 2002) (quashing subpoena to third party absent showing by issuing party that its opponent's own production would be inadequate).

A glance at the Bank Subpoenas issued by IPOC suffices to reveal that *every document* sought from Citibank and Wachovia could be requested from one or both defendants in this case: the Bank Subpoenas seek "documents related to any account in the name of, or for the benefit of, Diligence" and "documents related to any account in the name of, or for the benefit of, BGR." Sealed Exs. A & B at 3-4. The only reason for IPOC to burden non-parties with a subpoena for these documents instead of requesting them from the defendants themselves is a tactical one – IPOC does not wish to wait to obtain its document discovery from Diligence, nor does IPOC want to produce its own documents, which it must do to obtain Diligence's production three days later. Such gamesmanship is plainly improper under the rule prohibiting "undue burden" to third parties, and provides ample reason to deny enforcement of IPOC's Bank Subpoenas here.

Indeed, it is particularly noteworthy that, as overbroad as the subpoenas are, *every one* of the documents sought in the Bank Subpoenas would *already* be covered by IPOC's (equally overbroad) Requests for Production to the extent that they are related to the claims and defenses in this case. IPOC's Requests for Production to Diligence call, *inter alia,* for "[a]ll documents related to any person with knowledge related to the allegations of the complaint or any defense," "all documents related to the retention of Diligence to perform work of any kind related to IPOC

5

REDACTED VERSION FOR PUBLIC FILING

or KPMG FAS," "[a]ll documents related to any expense or fee for any service related to IPOC," and "[a]ll financial records of any kind, including but not limited to bank statements, deposit slips, wire transfer documentation, general ledger entries,or any notations or entries of any kind in the financial records of Diligence, related to or reflecting payments to Diligence for services related to IPOC or KPMG FAS."  Ex. C (Plaintiff IPOC's First Set of Requests for Production of Documents to Defendant Diligence LLC) at Requests 4, 17, 18, 19.[5]  Where these party-to-party discovery requests have already been made and are pending, it is plainly improper to burden a non-party with a subpoena *duces tecum* to produce immediately the very same documents -- particularly when that subpoena seeks to circumvent sequence-of-discovery agreements which the parties negotiated long ago.

## II.     THE INTERESTS OF JUSTICE WEIGH IN FAVOR OF THIS COURT ENFORCING THE AGREEMENT BETWEEN THE PARTIES AS TO THE SEQUENCE OF EACH PARTY'S DOCUMENT PRODUCTION.

---

[5]    Independent of the overlap between the specific categories of documents sought in the Bank Subpoenas and IPOC's pending omnibus Requests for Production to Diligence, there is considerable duplication between the Bank Subpoena categories and discrete Requests for Production from IPOC to Diligence.  *Compare, e.g.,*

6

REDACTED VERSION FOR PUBLIC FILING

While, for the reasons discussed above, IPOC's non-party Bank Subpoenas are premature and thus inherently burdensome, the categories of documents sought by the subpoenas are also themselves objectionable, providing an independent basis for quashing the subpoenas under Rule 45(c)(3).

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34" of the Federal Rules of Civil Procedure. Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 591 (D. Kan. 2003); see also Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (2d ed. 1995 & 2006 Supp.). Consistent with the permissible scope of discovery, a party must not issue a subpoena that is overbroad, or one that seeks plainly irrelevant documents. See, e.g., Quinby v. WestLB AG, No. 04-Civ-7406(WHP/HBP), 2006 WL 59521, at *1 (S.DN.Y. Jan. 11, 2006) (quashing subpoenas which would yield "a vast amount of irrelevant material"); Zahorik v. Cornell Univ., 98 F.R.D. 27, 31 (N.D.N.Y. 1983) (parties may not "conduct a general 'fishing expedition' into areas unrelated to their claims"); Robin Singh Edu. Servs., Inc. v. Excel Test Prep, No. 03-Civ-5039(JSW/JCS), 2004 WL 2554454, at *2 (N.D. Cal. Nov. 9, 2004) (overbroad requests never justified by a plaintiff's need "to prove its case").

IPOC's overbroad Bank Subpoenas fall well outside of the discovery permitted by the Federal Rules. As an initial matter, the subpoenas are unreasonable as to time, seeking banking records from January 1, 2004 to the present – a period extending more than one year *after* the filing of IPOC's Complaint, when bank records plainly would not be relevant to the claims and defenses raised by the Complaint, which concerns alleged past wrongdoing. See Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2000 Amendments (West 2002) (amended rule provides

7

REDACTED VERSION FOR PUBLIC FILING

the Court with "the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings").

       IPOC also makes no effort to limit the Bank Subpoenas to issues relevant to this case, rendering them fatally overbroad:  IPOC seeks "all documents" related to Diligence bank accounts which "reflect any transaction" with a laundry list of individuals and entities for a three-and-a-half year period, with no subject-matter limitation whatsoever.  *See* Ex. A at 3, Ex. B at 4.[6] Such blunderbuss requests, which make no effort to limit the subpoenaed materials to those relevant to the issues in the case, are routinely rejected by courts – and rightfully so.  *See, e.g.,* Premium Servs. Corp. v. Sperry & Hutchinson Co., 225 F.2d 225, 229 (9th Cir. 1975) (quashing "sweeping" subpoena, with no subject-matter limitations, which sought documents "touching on any relationship" between the defendant and subpoenaed party); Franzon v. Massena Memorial Hospital, 189 F.R.D. 220, 222 (N.D.N.Y. 1999) (denying discovery request which sought "'any and all' documents and provide[d] no meaningful limitations" to subject matter relevant to case); Carey v. Berisford Metals Corp., No. 90-Civ-1045(JMC), 1991 WL 44843, at *8 (S.D.N.Y. March 28, 1991) (finding subpoena for bank records overbroad and imposing time and subject-matter limitations on permissible discovery); *see generally* In re Ashworth Sec. Litigation, No. 99-Civ-121, 2002 WL 33009225 (S.D. Cal. May 10, 2002) (quashing subpoenas which lacked appropriate subject matter limitations).

---

[6]  Indeed, Diligence notes that the Bank Supoenas are even more overbroad than IPOC's First Requests for Production, many of which at least purport to limit themselves to documents which are "related to" IPOC, KPMG FAS, or BGR.  *See* Ex. C at 5-11.  IPOC's Bank Subpoenas do not contain even this minimal effort to confine discovery to matter relevant to the claims and defenses in the case.

**REDACTED VERSION FOR PUBLIC FILING**

Independent of IPOC's complete failure to limit the discovery sought in the Bank Subpoenas to the issues *in this case,* specific document requests in the Bank Subpoenas demonstrate how overbroad and abusive they really are.   Among the more egregious examples are the following:

- IPOC demands "all documents" over a three-and-one-half year period pertaining to "any transaction" between Diligence and

- IPOC demands "all documents" over a two-year period pertaining to "any transaction" between Diligence and

- IPOC demands "all documents" over a three-and-one-half year period pertaining to "any transaction" with

- IPOC demands "all documents" over a three-and-one-half year period pertaining to "any transaction" between Diligence and

9

**REDACTED VERSION FOR PUBLIC FILING**

This list is not exhaustive, but merely illustrative of the abusive, overbroad, and burdensome nature of the subpoenas which IPOC has sought to impose on Citibank and Wachovia. The subpoenas should be quashed.

## CONCLUSION

For the foregoing reasons, Diligence respectfully requests that the Court order that the third-party subpoenas directed to Citibank, F.S.B. and Wachovia Bank, N.A. be quashed, and that any further subpoena to those non-parties be prohibited until such time as IPOC has sought discovery of the parties on these matters and demonstrates that additional discovery from non-party banks on the same issues is warranted.

In the event that the Court permits IPOC to proceed with subpoenas to Citibank F.S.B. and Wachovia Bank, N.A. at this time, Diligence respectfully requests that IPOC be directed to revise and re-serve narrowly-tailored subpoenas which address the burdensomeness and overbreadth defects identified above.

10

**REDACTED VERSION FOR PUBLIC FILING**

Respectfully submitted,

July 27, 2007                          AEGIS LAW GROUP LLP

By:     _____/s/_____
        Paul C. Rauser (D.C. Bar No. 461722)
        Michael K. Ross (D.C. Bar No. 458573)
        901 F Street, N.W., Suite 500
        Washington, D.C. 20004
        T: 202-737-3500
        F: 202-737-3330

        *Attorneys for Defendant Diligence Inc.*

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 06-1109 (PLF)(AK) |
| DILIGENCE LLC, et al. | ) ) | |
| *Defendants.* | ) ) ) | |

<u>PROPOSED ORDER</u>

Upon consideration of Defendant Diligence, Inc.'s Motion to Quash Third-Party Subpoenas to

Citibank, F.S.B. and Wachovia Bank, N.A., it is hereby

ORDERED that the motion is granted, and it is further

ORDERED that the subpoenas be and hereby are quashed.

Dated: _____        _____

UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that today, the 27th of July, 2007, I have served a copy of the foregoing Motion to Quash Third Party Subpoenas to Citibank, F.S.B. and Wachovia Bank, N.A. for Production of Bank Records, Memorandum in Support, and Proposed Order by hand on the following:

Carol A. Joffe
Winston & Strawn
1700 K Street, N.W.
Washington, D.C. 20006

and, with the consent of counsel, via electronic mail on the following:

Edward B. MacMahon
107 East Washington Street
Middleburg, VA 20118
ebmjr@verizon.net

_____
Paul C. Rauser

# Exhibit A
# Filed under seal

# Exhibit B
# Filed under seal

Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

IPOC INTERNATIONAL GROWTH FUND
LIMITED,

              Plaintiff,

v.

DILIGENCE, LLC,

   and

BARBOUR GRIFFITH & ROGERS, LLC,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.
1:06CV01109 (PLF)

## PLAINTIFF IPOC INTERNATIONAL GROWTH FUND LIMITED'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT DILIGENCE, LLC

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff IPOC International Growth Fund Limited ("IPOC") requests that Defendant Diligence, LLC ("Diligence") answer each of the requests for production of documents set forth herein, in writing and under oath in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure and serve upon counsel for IPOC written answers and produce all documents requested within thirty (30) days of service or such other time period designated by the Court.

## DEFINITIONS AND INSTRUCTIONS

1.    "Defendant Diligence," "Diligence," "you" and "your" shall mean Diligence, LLC and any of its affiliates, predecessors, successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons acting in concert with, by, through, for, or under it, on its behalf.

2.    "BGR" or "Barbour Griffith & Rogers" shall mean Defendant Barbour Griffiths & Rogers, LLC and any of its affiliates, predecessors, successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons acting in concert with, by, through, for, or under it, or on its behalf.

3.    "Plaintiff" or "IPOC" shall mean IPOC International Growth Fund Limited and any of its predecessor, successors, subsidiaries, parent companies, agents, representatives, partners, employees, former employees, attorneys or persons purporting to act on its behalf.

4.    "KPMG FAS" shall mean KPMG Financial Advisory Services Limited and any of its predecessor, successors, subsidiaries, affiliates, parent companies, agents, representatives, partners, employees, former employees, attorneys or persons purporting to act on its behalf.

5.    "LVFG" shall mean LV Finance Group Ltd and any of its affiliates, predecessors, successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons acting in concert with, by, through, for, or under it, or on its behalf.

6.    "Alfa" shall mean the Alfa Group Consortium and any of its entities, affiliates, predecessors, successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons acting in concert with, by, through, for, or under it, or on its behalf.

7.    "Person(s)" refers to all natural persons and all forms of business organizations, including corporations, partnerships, limited partnerships, unincorporated associations, trusts, governmental bodies, and/or all other identifiable entities.

8.    "Document(s)" shall include all writings and recordings and shall include, without limitation, any kind of material whatsoever whether it is written, typewritten, printed, graphic, encoded, filmed, or reproduced by any other mechanical or electronic process or stored in computer memory or data bank, including, but not limited to, notes, memoranda, letters, reports, telegrams, publications, contracts, drawings, designs, data sheets, laboratory notebooks, specifications, schematics, blueprints, recordings, transcriptions of recordings, computer tapes, diskettes, or other magnetic media, bank checks, vouchers, charge slips, invoices, expense account reports, receipts, freight bills, agreements, corporate resolutions, minutes, books, binders, accounts, photographs, and business records, whether or not in Defendant's possession or under Defendant's control, related or pertaining in any way to the subject matter to which the Requests refer, and shall include without limitation, all originals, all file copies, all other non-identical copies, no matter how prepared, and all drafts prepared in connection with such documents, whether used or not.  This includes email and other documents saved on computers, email in hard-copy form, and any deleted messages which may be retrieved from backup systems or from your Internet service Provider.

9.    "Related to" shall mean anything that constitutes, evidences, contains, embodies, reflects, identifies, states, refers to, deals with, or is, in any manner whatsoever, pertinent to that subject.

10.    The singular as used herein shall include the plural and the masculine gender shall include the feminine and the neuter.

11.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests, the production of any documents that might otherwise be construed to be outside the scope of any Requests.

12.     The term "communication(s)" shall mean and refer to any exchange or transmission of words or ideas to another person or entity, whether accomplished by person to person, by telephone, by writing, by electronic mail or through another medium, and shall include but is not limited to, discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, and statements or questions.

13.     The term "correspondence" shall mean any exchange of communications in tangible form, including but not limited to, memoranda and letters, between individuals and/or entities, including inter-company and intra-company correspondence or memoranda.

14.     If Diligence contends that the contents of a full and complete response would be protected from disclosure by virtue of a privilege, with respect to any such response state:

     i.     Each privilege which Diligence contends protects the response from disclosure;

     ii.     Each and every fact upon which Diligence relies to support the claim of privilege;

     iii.     The general subject matter of the response.

15.     These Document Requests are continuing requests for all information and documents that are described below which may hereafter come into Diligence's knowledge, possession, custody or control. Diligence is to provide, by way of supplemental responses, any additional information, most notably that specified under Federal Rule of Civil Procedure 26(e), or documents that may hereinafter be obtained by Diligence or any person acting on Diligence's behalf, which will augment or otherwise modify Diligence's responses.

16.     Answers to these document requests should include all knowledge and information possessed by or in the custody or control of Diligence and any of its predecessors, successors, subsidiaries, parent companies, agents, representatives, partners, employees, attorneys, former employees, or persons purporting to act on its behalf, including, but not limited to Diligence and

4

any of its predecessors, successors, subsidiaries, parent companies, agents, representatives, partners, employees, attorneys, former employees, its affiliates, predecessors, successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons acting in concert with, by, through, for, or under it, or on its behalf.

## DOCUMENT REQUESTS

1.    All documents related to your denial of any allegation of the Complaint.

2.    All documents identified, reviewed, examined, considered, or used in any manner to prepare your answer to the Complaint, to prepare Counter-Claim(s) or Cross-Claim(s), if any, or to prepare your response to any interrogatory propounded in this case.

3.    All documents related to any individual or entity identified in your response to any interrogatory propounded by IPOC in this case.

4.    All documents related to any person with knowledge related to the allegations of the complaint or any defense or who may testify at any proceeding in this case.

5.    All documents related to denial, in whole or in part, of any request for admission served by IPOC in this case.

6.    All documents related to LVFG and also related to IPOC, KPMG FAS or BGR.

7.    All documents related to Alfa and also related to IPOC, KPMG FAS or BGR.

8.    All documents related to BGR also related to IPOC or KPMG FAS.

9.    All documents related to Keith Schuette and also related to IPOC, KPMG FAS, BGR or LVFG.

10.    All documents related to Ed Rogers and/or Richard Burt that are also related to IPOC, BGR, KPMG FAS or the Exxel Group, any of its entities, affiliates, predecessors,

successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons acting in concert with, by, through, for, or under it, or on its behalf, including, but not limited to M. Chao or K. Freiwald.

11.    All documents related to Guy Enright and/or Lee Griffin gathered by BGR, Diligence, or any third-party acting at the request or on behalf of BGR or Diligence, from March 18, 2004 to the present.

12.    All documents related to Guy Enright and/or Lee Griffin and also related to IPOC, KPMG FAS or BGR.

13.    All documents related to Malcolm Butterfield and/or Michael Morrison and also related to IPOC, KPMG FAS or BGR.

14.    All documents related to the Exxel Group, any of its entities, affiliates, predecessors, successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons acting in concert with, by, through, for, or under it, or on its behalf, including, but not limited to, M. Chao and/or K. Freiwald.

15.    All documents related to Andrew Asher and also related to IPOC, KPMG FAS or BGR.

16.    All documents related to any investigation of IPOC conducted by BGR, Diligence, any third party acting on behalf of or at the request of BGR or Diligence, KPMG FAS, or the Minister of Finance of Bermuda.

6

17.    All documents related to the retention of Diligence to perform work of any kind related to IPOC or KPMG FAS, including, but not limited to, all documents related to any individual or entity who retained Diligence to obtain documents or information related to IPOC, its owners, or KPMG FAS, or to influence KPMG FAS.

18.    All documents related to any expense or fee for any service related to IPOC, including, but not limited to, any effort, attempt or action by Diligence to obtain any information from KPMG FAS, or to influence KPMG FAS or the Minister of Finance of Bermuda.

19.    All financial records of any kind, including but not limited to bank statements, deposit slips, wire transfer documentation, general ledger entries, or any notations or entries of any kind in the financial records of Diligence, related to or reflecting payments to Diligence for services related to IPOC or KPMG FAS.

20.    All documents related to any KPMG FAS employee or former employee who was at any time contacted by Diligence or by any third party at the request or on behalf of Diligence.

21.    All documents related to any Diligence employee or individual/entity acting on its behalf who contacted, communicated with, or attempted to contact or communicate with any KPMG FAS employee.

22.    All documents related to any individual who participated in any way in any effort by Diligence to obtain documents or information related to IPOC or KPMG FAS' investigation of IPOC.

23.    All documents related to any acquisition by Diligence or any other person or entity of any information or documents related to IPOC or KPMG FAS' investigation of IPOC.

24.    All documents received, acquired or obtained in any manner by Diligence from KPMG FAS or any current or former agent or employee of KPMG FAS.

7

25.     All documents related to any discussion, plan, attempt or action by Diligence to obtain information or documents from KPMG FAS related to IPOC or KPMG FAS' investigation of IPOC.

26.     All documents related to how Diligence obtained information related to IPOC from KPMG FAS.

27.     All documents related to the gathering of information by Diligence about KPMG FAS, its employees or agents.

28.     All documents related to any contact, by Diligence or any person or entity acting on its behalf or at its request, with any KPMG FAS employee or agent or former employee or agent, including, but not limited to all documents related to any and all correspondence, telephone calls, meetings or communications of any type.

29.     All documents related to any money or thing of value paid, given or offered to any KPMG FAS employee or agent or former employee or agent by Diligence or any person or entity acting on its behalf or at its request.

30.     All documents related to any Diligence employee or agent holding himself or herself out to be an agent of the United States and/or the United Kingdom while employed by or entitled to receive compensation from Diligence.

31.     All documents related to names, identification and/or copies of security clearance vetting forms of the government of the United Kingdom or United States possessed and/or used by any agent or employee of Diligence in Bermuda at any time.

32.     All documents related to any plan, attempt or action by Diligence or any individual or entity acting on its behalf to deceive one or more KPMG FAS employees into believing Diligence or any individual/entity acting on its behalf was a member(s) of the secret intelligence services of the United Kingdom and/or the United States of America.

8

33.    All documents related to Diligence's attempts or actions to persuade any KPMG FAS employee or agent that he or she had been selected by the security services of the United Kingdom or the United States to assist in efforts to combat international crime or otherwise.

34.    All documents related to any plan formulated or action taken by Diligence to obtain information by posing as organizers of a professional conference on forensic accounting.

35.    All documents related to information or documents from KPMG FAS related to IPOC or KPMG FAS' investigation of IPOC.

36.    All documents related to any disclosure or dissemination to any individual or entity by Diligence of any information or documents obtained from KPMG FAS related to IPOC or KPMG FAS' investigation of IPOC.

37.    All documents related to any use, dissemination, disclosure or disposition by any individual or entity of any information or documents Diligence obtained from KPMG FAS related to IPOC or KPMG FAS' investigation of IPOC.

38.    All documents related to any conduct engaged in by Diligence or alleged to have been engaged in by Diligence involving efforts to obtain nonpublic information or documents from an individual or entity conducting any investigation of any type.

39.    All documents related to any action taken by KPMG FAS in response to Diligence's acquisition of information or documents from KPMG FAS related to IPOC.

40.    All documents related to or reflecting communications between Diligence and KPMG FAS related to misappropriation or alleged misappropriation by Diligence of information related to IPOC.

41.    All documents related to contracts or agreements between Diligence and KPMG FAS.

42.    All documents provided to or from any one or more experts engaged or hired by you in connection with this action.

43.    All communications between you and any testifying expert engaged or hired by you in this action.

44.    All communications between Diligence and BGR related to this action, including but not limited to any communications by, with, or between attorneys acting on behalf of Diligence or BGR.

45.    All documents related to the retention of Diligence by BGR or any of its clients.

46.    All documents related to any work related by Diligence or BGR to IPOC or KPMG FAS for or on behalf of Alfa or for any third-party at Alfa's request, from August 1, 2003 to the present.

47.    All documents related to any work by Diligence or BGR related to IPOC or KPMG FAS for or on behalf of LVFG from August 1, 2003 to the present.

48.    All correspondence or documents reflecting communications between Diligence and Alfa related to IPOC or KPMG FAS from August 1, 2003 to the present.

49.    All correspondence or documents reflecting communications between Diligence and LVFG related to IPOC or KPMG FAS from August 1, 2003 to the present.

50.    Documents sufficient to identify any and all jurisdictions in which Diligence does business.

51.    All documents related to the organizational or business structure of Diligence, LLC, its affiliates, predecessors, successors, subsidiaries and parent companies.

52.    All documents related to Nick Day (also known as Nick or Nicholas Hamilton), Gretchen King, Snezana Petreska, Michael Redman and/or Denis Trifonov that are also related to IPOC, BGR, KPMG FAS or the Exxel Group, any of its entities, affiliates, predecessors,

successors, subsidiaries, parent companies, attorneys, agents, servants, associates, corporate officers, corporate directors, representatives, sales representatives, contractors, independent contractors, assigns, partners, employees, former employees, or persons acting in concert with, by, through, for, or under it, or on its behalf, including, but not limited to M. Chao and/or K. Freiwald.

53.     Personnel files for Nick Day and any other individual who performed any work related to KPMG FAS, IPOC and/or BGR.

54.     All documents related to Project Yucca

55.     All documents related to Lovells, Weil Gotshal & Manges LLP and/or Freshfields Bruckhause Deringer and also related to IPOC, Diligence or KPMG FAS from August 1, 2003 to the present.

56.     All documents related to the Bermuda Police and also related to Nick Day, Nicholas Hamilton, Diligence, BGR, or any third party acting at the request or on behalf of Diligence or BGR.

OF COUNSEL:

Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tele:   (312) 558-5858
Fax:    (312) 558-5700
kanderson@winston.com

Respectfully submitted,

IPOC INTERNATIONAL GROWTH
FUND LIMITED
By Counsel

*Carol G. Joffe*

Timothy M. Broas, D.C. Bar No. 391145
Carol A. Joffe, D.C. Bar No. 351528
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tele:   (202) 282-5996
Fax:    (202) 282-5100
tbroas@winston.com
cjoffe@winston.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2006, I have caused a true and correct copy of the

foregoing Plaintiff IPOC International Growth Fund Limited's First Set of Requests for

Production of Documents to Defendant Diligence, LLC were hand-delivered to each of the

following:

> Charles J Cooper
> David H. Thompson
> COOPER & KIRK, PLLC
> Suite 750
> 555 Eleventh Street, NW
> Washington, DC  20004
> 202-220-9600
> 202-220-9601 (FAX)
>
> *Attorneys for Barbour Griffith & Rogers LLC*
>
> Paul C. Rauser
> AEGIS LAW GROUP LLP
> Suite 500
> 901 F Street, NW
> Washington, D.C.  20004
> 202-737-3500
> 202-737-3330 (FAX)
>
> *Attorney for Diligence, LLC*

Carol A. Joffe

# Exhibit D

# Diligence Sells $15 Mln Stake to Exxel Partners

04/07/05

**Thursday, 7th April 2005 -** Diligence Inc., the corporate intelligence company headed by former U.S. Ambassador Richard Burt, has raised $15 million by selling a majority stake to the Argentine buyout firm Exxel Partners. Diligence plans to use the funds to grow aggressively, making strategic acquisitions and key hires to add to its existing operations.

'We think there is a huge opportunity for the growth of the investigations and intelligence business worldwide,' said Nicholas Day, a former member of MI-5 who co-founded Diligence in 2000 and brought Mr Burt in as Chairman and a fellow investor one year later. 'We are very much looking forward to working with Exxel. This move marks an exciting turn in the company trajectory.'

The Washington, D.C. company, with offices in London, Miami, Moscow (and soon New York), specializes in obtaining information to aid corporations in their difficult decision making. Clients call on Diligence to investigate areas such as the background of potential acquisition targets, corruption in business and government, accounting and banking practices and predatory business practices by competitors.

In 2003 Diligence opened an office in Baghdad to provide security services and is now targeting Latin America. Mr Day said that Diligence, which has enjoyed a solid track record of success worldwide, hopes to receive business both from North American clients that have concerns about Latin America and Latin American companies that want advice on conducting business in North America.

William Webster, the former director of the Federal Bureau of Investigation and the Central Intelligence Agency, chairs Diligence's senior advisory group. Lord Charles Powell, former advisor to Prime Ministers Margaret Thatcher and John Major, also forms part of the group.

Mr Burt also has government experience, having served as the U.S. Ambassador to Germany during the Reagan Administration and chief negotiator at the Strategic Arms Reduction Talks with Russia. In the corporate arena, Burt was a partner at McKinsey & Co. between 1991 and 1994 and has also held seats on the boards of Weirton Steel Corp., IGT, and Archer Daniels Midland.

Exxel, founded by Argentine financier Juan Navarro in 1991, has invested more than $5 billion in approximately 85 companies, most of which are located in Latin America. The buyout fund makes its investments by raising capital from U.S. and European backers.

For further enquiries please contact Nick Day, COO Diligence Inc +1 202 659 6210 or Alex Blair, Managing Director, London +44 (0)207 935 3234.