# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| DILIGENCE, LLC, et al., | ) ) ) |
| Defendants. | ) |

Civil Action No.
1:06CV01109 (PLF) (AK)

## NON-PARTY HUGHES HUBBARD & REED LLP'S MEMORANDUM OF LAW IN OPPOSITION TO IPOC'S MOTION PURSUANT TO PROTECTIVE ORDER TO REMOVE CONFIDENTIALITY DESIGNATIONS

Plaintiff IPOC International Growth Fund Ltd. ("IPOC") has issued a subpoena (the "Subpoena") to non-party Hughes Hubbard & Reed LLP ("HHR") seeking documents related to a lawsuit entitled *KPMG Financial Advisory Services, Ltd. v. Diligence, LLC,* in which HHR represented KPMG Financial Advisory Services Ltd. ("KPMG FAS"). After the Subpoena was served, HHR and IPOC negotiated in good faith and reached agreement regarding the appropriate scope of HHR's production. HHR has subsequently, with its client's consent, fully satisfied the Subpoena by providing the agreed documents. Thus the sole issue presented in IPOC's motion is whether HHR has been entitled to designate portions of its production as "Confidential" or "Attorneys' Eyes Only" as permitted under the Protective Order Governing Confidentiality and Inadvertent Disclosure of Documents (the "Protective Order") entered by the Court in this proceeding. IPOC is apparently seeking permission to disclose HHR's production to the media and use it in unrelated proceedings pending around the world.

The background of this matter relates to KPMG FAS's appointment by the Bermuda Minister of Finance to perform a statutory inspection (i.e. investigation) of IPOC, which is a Bermuda company (the "IPOC Investigation").  Bermuda law requires that such investigation be conducted under strict confidentiality.  (Declaration of Derek J.T. Adler, executed May 1, 2007 ("Adler Decl.") ¶ 2, Ex. A.)

Commercial adversaries of IPOC hired Defendant Diligence Inc. ("Diligence") to engage in a successful effort to penetrate KPMG FAS and steal confidential information about IPOC and the IPOC Investigation.  When this scheme came to light in late 2005, KPMG FAS brought action against Diligence seeking to recover its materials, prevent further dissemination, and recover damages.  That action was subsequently settled on terms that gave KPMG FAS the relief it was seeking.

In the present action IPOC seeks its own remedies for the theft of information from KPMG FAS.  Neither KPMG FAS nor HHR wish to impede this lawsuit in any way.  However, this proceeding should not be conducted in a manner that sacrifices the very confidentiality protections that Diligence violated and KMPG FAS had worked hard to protect.  The bulk of the material sought by IPOC either comprises or incorporates information that was stolen by Diligence or otherwise gathered during the course of its illicit surveillance.

HHR's position on this motion should not be confused with that of Diligence.  HHR has not sought to impose blanket confidentiality on its entire production, but only on selected materials.  And, after meeting and conferring with IPOC's counsel, HHR has already agreed to de-designate a substantial proportion of the

material it had originally designated as confidential.  In responding to this motion, HHR has once more identified a few additional materials that can be de-designated.[1]

HHR's remaining designations are valid, particularized and well-supported.  HHR has only designated the following categories of materials as confidential:

- Documents that reflect the substance of KPMG FAS's work on the IPOC Investigation, which is required to be kept confidential under Bermuda law.  These include materials which Diligence summarized or referred to information from stolen KPMG FAS work product and the names of persons who were interviewed by KPMG FAS under the cloak of Bermuda confidentiality law.

- Documents that contain confidential information about KPMG FAS's business that Diligence gathered in the course of its surveillance work.  These include materials on how KPMG FAS kept records, confidential security codes, and materials reflecting KPMG FAS's work procedures.

- Documents that contain highly personal information about KPMG FAS employees, gathered by Diligence in the course of its surveillance work.  Such information includes names of family members, birth dates, education and employment information, income information, and health information.

- Information regarding the precise methods by which Diligence succeeded in penetrating KPMG FAS, which should be maintained as confidential so as not to facilitate or encourage any similar operations in the future.

Before the Court addresses IPOC's motion to seek de-designation under the Protective Order, HHR respectfully submits that the Court should examine whether IPOC and its counsel have themselves complied with the Protective Order.  As detailed in Mr. Adler's declaration and accompanying materials, there is strong evidence that

---

1.  (*See* Adler Decl. Ex. I.)

Winston & Strawn attorneys have disclosed materials produced by HHR to the media and others. (Adler Decl. ¶¶ 22-24, Ex. K.) To date, Winston & Strawn has failed to respond to HHR's request that they address this evidence. (Adler Decl. ¶ 26, Ex. J.) If IPOC and its counsel do not have clean hands with respect to the confidentiality provisions under the Protective Order, they should not be entitled to invoke those same provisions to challenge HHR's designations.

Finally, this Court should order IPOC to pay HHR's costs in responding to this motion. IPOC has unnecessarily and unreasonably burdened HHR in connection with the Subpoena and this motion. IPOC refused to consent to a one-week extension of time thereby forcing HHR to prepare an emergency motion to the Court. And IPOC has forced HHR to brief the present motion notwithstanding the valid reasons for HHR's designations. As a non-party, HHR is entitled to recover these costs under Rule 45.

## BACKGROUND

The background of the present motion is set forth in the accompanying Declaration of Derek J.T. Adler.

## ARGUMENT

**I.  THE COURT SHOULD NOT DECIDE IPOC's MOTION UNTIL IPOC AND ITS COUNSEL ADDRESS THE EVIDENCE INDICATING THAT THEY HAVE BREACHED THEIR PRIOR CONFIDENTIALITY UNDERTAKINGS AND THE PROTECTIVE ORDER.**

By its motion, IPOC seeks to avail itself of the procedures for seeking to de-designate confidential documents under the Protective Order. But, as detailed in Mr. Adler's declaration, there is substantial evidence that IPOC and its counsel have themselves repeatedly breached the terms of that Order, as well as its counsel's written undertaking, by disclosing HHR's materials to the media and others. (Adler Decl. ¶¶ 22-

4

24 & Ex. K.) HHR has demanded that IPOC's counsel investigate and report on these apparent breaches of confidentiality, as required under paragraph 30 of the Protective Order. (Adler Decl. ¶ 26, Ex. J.) To date, IPOC's counsel has not responded to this demand. (Adler Decl. ¶ 26.)

Fundamental fairness dictates that IPOC should not approach the court to address confidentiality matters unless it has clean hands with respect to such matters. Before proceeding with any further discovery matters, HHR and its client are entitled to be assured that the terms of the Protective Order have been and will be complied with. IPOC's motion should therefore be denied unless IPOC's counsel provides affidavits or declarations specifically addressing apparent breaches of confidentiality. Any breaches that are disclosed should be addressed by the Court appropriately, within the scope of its inherent powers.[2]

## II. THERE IS GOOD CAUSE FOR EACH OF HHR'S DESIGNATIONS.

Paragraphs 12 and 13 of the Protective Order outline the grounds upon which documents may be designated "Confidential" or "Attorneys' Eyes Only." Paragraph 12 provides: "The designation 'Confidential' shall apply only to those Documents which contain non-public, confidential, proprietary or commercially sensitive information, or information of an intimate, personal nature. . . ." Paragraph 13 provides: "The designation 'Attorneys' Eyes Only' shall only apply to documents or things which

---

2. This Court has the inherent power to sanction parties (and counsel) for bad faith violation of applicable protective orders. *See Assassination Archives & Research Center v. Central Intel. Agency*, 48 F. Supp. 2d 1 (D.D.C. 1999) (dismissal under court's inherent power for bad faith violation of nondisclosure agreement by attorney); *see also Greiner v. City of Champlin*, 152 F.3d 787 (8th Cir. 1998) (affirming sanctions against attorney and attorney's firm for filing of complaint that referred to and described document subject to protective order).

contain trade secrets or methods, client lists, or internal proprietary business information that might reasonably be of value to a Supplying Party's competitor, or information that the Supplying Party reasonably believes must be kept confidential under law."

HHR has designated three categories of materials as "Confidential" or "Attorneys' Eyes Only":  (1) information related to the IPOC Investigation that is required to be kept confidential under Bermuda law; (2) information about KPMG personnel of an intimate personal nature; and (3) confidential information about KPMG's business and internal operations.  The Schedule annexed as Exhibit I to Mr. Adler's Declaration provides detailed reasons for the designations of each individual document and which of these grounds is applicable.

IPOC points out that Diligence shared some of the information it stole from KPMG FAS with persons outside Diligence.  IPOC argues this is a waiver of confidentiality.  But obviously Diligence's actions do not represent a waiver by HHR or KPMG FAS of their confidentiality interest in the materials that were taken from it.  To permit this would be to allow Diligence to cause further harm by its actions.

It should also be noted that HHR does not seek to assert the confidentiality of most of the sample documents IPOC has appended to its motion.  Diligence alone is arguing for the confidentiality of most of these materials.  The validity of HHR's designations should not be evaluated by examining these materials.

Finally, IPOC points out that many of the documents refer to plans of Diligence to try to hurt IPOC through operations that had nothing to do with KPMG FAS or the investigation it conducted.  Neither HHR nor KPMG FAS objects to the disclosure of such information in any context.  But, where such information is intermingled with

material that HHR and KPMG FAS are entitled to protect, the documents should be redacted before further disclosure.

### III. HHR HAS NOT WAIVED THE RIGHT TO PROTECT CONFIDENTIALITY.

Since receiving the Subpoena last summer, HHR has consistently and repeatedly invoked its right to protect the confidentiality of the responsive materials. HHR declined to make its production until an appropriate protective order was entered. During numerous discussions with IPOC's counsel, HHR's counsel has repeatedly and consistently informed IPOC's counsel that the responsive materials, *inter alia*, contained (i) information that was required to be kept confidential under Bermuda law, (ii) confidential personal information about KPMG FAS personnel, and (iii) confidential business information of KPMG FAS. (Adler Decl. ¶¶ 14-16, Exs. G, J.)

With this background IPOC cannot seriously assert that HHR has waived the right to protect the confidentiality of the documents. "A 'waiver' is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Miller v. Holzmann*, 471 F. Supp. 2d 119, 121 (D.D.C. 2007) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).

IPOC also takes HHR to task for purportedly failing to comply with the procedures for responding to a challenge to designations under the Protective Order – provisions that HHR had no part in negotiating. But the record reflects that HHR's counsel has responded in good faith, and at length, to IPOC's counsel's letters, and even agreed to de-designate a large portion of materials. HHR has acted in good faith and has not in any sense relinquished its rights. IPOC has itself failed to comply with the

7

procedures under the Protective Order by waiting longer than five (5) days after the last meet and confer session to bring the present motion. (*See* Protective Order ¶ 17.)

    **IV.    THIS COURT SHOULD ORDER IPOC TO PAY HHR'S FEES AND COSTS IN RESPONDING TO THIS MOTION AND IN MOVING FOR AN EXTENSION OF TIME.**

    Rule 45(c)(1) provides:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

Fed. R. Civ. P. 45(c)(1).

    Further, Rule 45(c)(2)(B) provides that where the Court grants an order compelling production from a non-party, "such an order . . . shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing or sampling commanded." Fed. R. Civ. P. 45(c)(2)(B).

    Although IPOC has reimbursed HHR for the initial costs of gathering and making its production, its conduct in connection with the present motion has imposed unreasonable burdens and expenses on HHR. First, IPOC refused to grant HHR's reasonable request for a one-week extension of time to respond to the present motion. This forced HHR to incur the expenses attendant upon filing an emergency motion for an extension of time. Second, the present motion itself is not well founded, inasmuch as the propriety of HHR's grounds for designation have been clearly articulated to IPOC and are evident from even a cursory review of the materials. HHR therefore respectfully requests that the Court order IPOC to pay the costs HHR has incurred, including

attorneys fees, in responding to the present motion. The courts have broad discretion to indemnify non-parties for costs, including attorneys fees, under Rule 45.[3]

---

[3]. *See*, *e.g.*, *In re Duke Energy Corp.*, No. 3:05-MC-201, 2005 WL 2674938, at *7 (W.D.N.C. Oct. 18, 2005); *In re Propulsid Prods. Liab. Litig.*, No. MDL 1355, 2003 WL 22174137, at *3 (E.D. La. Sept. 9, 2003); *Pacific Gas & Elec. Co. v. Lynch*, No. C-01-3023 VRW, 2002 WL 32812098, at *4 (N.D. Cal. Aug. 19, 2002); *In re Rezulin Prods. Liab. Litig.*, No. CIV.00 CIV.2843 LAK, 2002 WL 24475, at *2 (S.D.N.Y. Jan. 10, 2002); *In re Application of Law Firms of McCourts and McGrigor Donald*, No. M. 19-96 (JSM), 2001 WL 345233, at *3 (S.D.N.Y. Apr. 9, 2001); In re First Am. Corp., 184 F.R.D. 234, 241 (S.D.N.Y. 1998); *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 177 (D.D.C. 1998), *aff'd* 251 F.3d 178 (D.C. Cir. 2001*); In re Letters Rogatory*, 144 F.R.D. at 278-79; *In re Exxon Valdez*, 142 F.R.D. 380, 385 (D.D.C. 1992); *Kahn v. General Motors Corp.*, 1992 WL 208286 (S.D.N.Y. Aug. 14, 1992).

## CONCLUSION

For the foregoing reasons, the Court should deny IPOC's motion, and order IPOC to pay HHR's costs and fees for the present motion.

Dated: District of Columbia  
May 1, 2007

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: /s Charles Reed  
    Charles Reed  
    D.C. Bar No. 490833  
    1775 I Street, N.W.  
    Washington, D.C. 20006-2401  
    202-721-4600

    Attorneys for non-party Hughes Hubbard & Reed LLP

Of Counsel:

Derek J.T. Adler  
Hughes Hubbard & Reed LLP  
One Battery Park Plaza  
New York, NY 10004