### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:06CV01109 (PLF) (AK) |
| DILIGENCE LLC, et al. | ) ) | |
| Defendants. | ) ) | |

### PLAINTIFF IPOC INTERNATIONAL GROWTH FUND LIMITED'S OPPOSITION TO NON-PARTY HUGHES HUBBARD & REED LLP'S MOTION UNDER RULE 45 FOR REIMBURSEMENT OF COSTS AND ATTORNEYS' FEES

IPOC International Growth Fund Limited ("IPOC") submits this Memorandum of Law in opposition to non-party Hughes Hubbard & Reed LLP's ("HHR") Motion Under Rule 45 for Reimbursement of Costs and Attorneys' Fees (the "Motion").

### INTRODUCTION

HHR seeks to recover attorneys' fees and costs ("Fees") allegedly incurred to comply with a non-party Subpoena served by IPOC in July 2006 (the "Subpoena"). HHR's Motion must be denied because: (1) HHR failed to meet and confer before filing the motion; (2) IPOC paid HHR the sum of $29,745.60, for HHR's expenses incurred to comply with IPOC's Subpoena; (3) there is no legal basis for recovery of the Fees sought in the Motion; and (4) the Fees sought by HHR were unnecessary, not incurred in connection with HHR's compliance with IPOC's Subpoena and are excessive.

The parties to this case have filed a Stipulation and Order of Dismissal. The facts are set forth here solely in connection with IPOC's Opposition to Non-Party HHR's Motion.

## FACTUAL BACKGROUND

IPOC's Complaint alleges that Defendants Diligence and BGR intentionally interfered with a confidential investigation of IPOC that KPMG Financial Advisory Services, Inc. ("KPMG") was conducting for the Government of Bermuda (the "Investigation"). Complaint ¶ 20-21. More than six months before IPOC filed this suit, KPMG sued Diligence in a related case filed under seal in this Court ("KPMG Case"). *KPMG v. Diligence,* Civil Action No. 06-7162. Attorney Derek Adler ("Mr. Adler") represented KPMG in the KPMG Case.

Initially, IPOC indicated to HHR that IPOC would likely move to intervene in the KPMG Case. HHR urged IPOC not to intervene and promised to supply IPOC with the facts concerning Diligence's breach of the Investigation as discovery proceeded. Later, IPOC asked HHR to provide, as promised, copies of documents that Diligence had produced and a deposition HHR had taken in the KPMG Case. HHR offered to produce the material in response to IPOC's Subpoena (the "Subpoena"). Declaration of Kimball R. Anderson ¶2-3 (Hereafter, "Anderson Decl.").

Thereafter, IPOC's counsel emailed the Subpoena to HHR's counsel, noting their understanding that Mr. Adler would accept service. HHR's counsel responded that in accord with firm policy it was necessary "to put [IPOC] through the trouble" to formally serve the Subpoena and he apologized for any inconvenience to IPOC. Anderson Decl. ¶3-4.

The day the Subpoena was formally served, HHR objected and declined to produce documents on various grounds. IPOC quickly reminded HHR that its objections were "inconsistent with [HHR's] repeated representations" upon which IPOC had relied and refrained from intervention in the KPMG Case, and that, in light of HHR's refusal to comply with the Subpoena, IPOC would likely intervene in the KPMG Case. Anderson Decl. ¶5-6.

HHR responded with a proposal under which HHR was "prepared to satisfy the subpoena" (the "Proposal"). Anderson Decl. ¶6. The Proposal also stated that the Protective Order in the KPMG Case ("KPMG Protective Order") required HHR to give Diligence 30 days notice before producing material that Diligence had designated as confidential under the KPMG Protective Order and that HHR had given Diligence the required notice on July 20, 2006. Exhibit E to Anderson Decl. 6. But, before the thirty day notice period expired, discovery in this case was temporarily stayed (the "Stay").

When the Stay was lifted in October 2006, HHR agreed to produce a transcript and exhibits from the deposition of Diligence's corporate representative (the "Documents") in exchange for IPOC's agreement to treat the Documents as Attorney's Eyes Only ("AEO") pending entry of a protective order in this case. The Agreement was made "without prejudice to IPOC's right to seek a less restrictive designation for those documents in the future under an appropriate protective order." HHR then produced the Deposition to IPOC. Declaration of Anne W. Stukes ¶5-6 (Hereafter, "Stukes Decl."). ("Agreement")

Although the parties to this case signed a Protective Order ("Protective Order") in January 2007, HHR declined to comply further with the Subpoena until the Protective Order was signed by the Court and until IPOC agreed to pay HHR's Fees in the amount of $22,972 plus an additional "$10,000 to $15,000." Stukes Decl. ¶7-8 On February 9, 2007, IPOC delivered to HHR a copy of the Protective Order that had been entered by the court. HHR insisted that payment be resolved before HHR would produce additional documents. IPOC then agreed to pay the sum of $29,745.60 to HHR for its production costs and fees.[1] Stukes Decl. ¶9-12.

---

[1] This amount included production of the Documents in October 2006 and the amount agreed upon to cover additional work to comply with the subpoena. IPOC paid the agreed upon amount in full.

HHR did not produce to IPOC any documents from KPMG's Investigation of IPOC that HHR was required to keep confidential under Bermuda law.  Additionally, HHR made clear that where the "documents [produced] incorporate[d] substantive information taken from the materials that were stolen [from KPMG] or otherwise reflect confidential information about the IPOC investigation," HHR had redacted the information.  Stukes Decl. ¶14.

The Documents produced in October 2006 and nearly all those produced in February 2007 were documents that Diligence had produced to HHR in the KPMG Case (collectively "Diligence Documents"), and nearly all had been designated as either "AEO" or "Confidential" by Diligence.  HHR added its own restrictive designations to nearly all the Diligence Documents before producing them to IPOC pursuant to the subpoena in this case.  Stukes Decl. ¶13.

After HHR made its productions, IPOC asked HHR to remove the designations from the Diligence Documents and other non-confidential documents, noting that the only confidentiality interests that HHR and its client had in the documents was to protect (i) information generated by KPMG during the course of its Investigation of IPOC and (ii) non-public personal information about KPMG employees.  Stukes Decl. ¶15.  HHR's counsel emailed that he would respond at a "reasonable" time but provided no substantive response to IPOC's request for 20 days.  In the meantime, IPOC let HHR know that "we would like to work this out" and, later, that IPOC would like to resolve these issues "without motions practice." *Id.* ¶16.

HHR thanked IPOC for its "patience" while awaiting HHR's response but the belated response misquoted IPOC, alleging that IPOC had asked HHR to de-designate all documents except those that reveal "the substance of information" Bermuda law requires be kept confidential."  Stukes Decl. ¶17.  As noted above, IPOC stated that HHR also had an interest in protecting non-public personal information about KPMG employees.  Stukes Decl. ¶14.

On March 15, 2007, IPOC again asked HHR to de-designate documents that "disclose Diligence and BGR's tortious actions." IPOC enclosed a chart detailing 585 documents from which IPOC sought to have the HHR remove designations ("Attachment A").[2] Attachment A showed the Bates ranges and restrictive designations placed on those 585 documents by HHR and Diligence, respectively, and identified only 16 documents that contain no Diligence Bates numbers or restrictive designations.[3] IPOC also offered to redact personal information about KPMG employees from eight documents.[4] Stukes Decl. ¶18.

In response to this second request to de-designate, HHR agreed to completely remove its restrictive designations from 196 documents and noted that HHR had designated only portions of 80 other documents. IPOC thereafter filed its motion seeking an order directing that both Diligence and HHR remove restrictive designations from certain documents that did not warrant protection pursuant to Federal Rule of Civil Procedure 26(c). In HHR's opposition to IPOC's motion, HHR sought to maintain its designations on only 122 of 585 documents IPOC had asked HHR to de-designate. Stukes Decl. ¶20.

HHR's itemization of Fees sought in connection by this motion shows that the Fees were accumulated after HHR reviewed, copied and produced all its the documents under the Subpoena and after HHR had been reimbursed its costs and attorneys' fees for its production. The Fees now soughtwere not incurred by HHR to comply with the Subpoena.

---

[2] IPOC also identified four documents that it requested be changed from "AEO" to "confidential" and identified eight documents for which IPOC was open to discussing redaction of home addresses and telephone numbers. Exhibit L at pg. 2.

[3] Attachment A shows all documents except those numbered 1-15 and 585 have both HHR and "Diligence" Bates numbers, indicating that they were produced to HHR by Diligence in the related case, with Diligence Bates stamps on them, and then were copied and produced to IPOC in this case with HHR's Bates stamps. Only the 16 documents identified were not produced by Diligence to HHR.

[4] IPOC also asked HHR to produce certain investigative materials that were within the scope of the Subpoena or in the alternative, that HHR produce a privilege log if it claimed the documents were protected by privilege. No such log was ever produced by HHR.

### ARGUMENT

**I.     HHR Failed to Meet and Confer as Required Before Filing the Motion**

Although HHR claims to have met and conferred with IPOC before filing its Motion, HHR does not identify the IPOC attorney involved in this alleged conference and none of the attorneys for IPOC were contacted prior to the filing of the Motion.  Indeed, IPOC was astonished to receive the Motion and HHR's invoice seeking payment of Fees in excess of $94,000 in addition to the nearly $30,000 IPOC already paid to HHR for its production under the Subpoena.  The Motion should be denied on this ground alone. *See* LCv 7(m) ("Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone.")

**II.    IPOC Has Already Voluntarily Paid HHR Attorneys' Fees and Costs Resulting From the Inspection and Copying Commanded By the Subpoena.**

As fully set forth above, IPOC already voluntarily paid HHR the full $29,745.60 that HHR demanded in exchange for production of the documents.  This amount was agreed upon by IPOC prior to the production and covered HHR's costs in reviewing, Bates-stamping and producing documents in compliance with the Subpoena costs.  HHR is not entitled to more.

**III.   There is No Legal Basis for Recovery of the Attorneys' Fees and Costs HHR Seeks.**

**A.     Rule 45 Provides No Basis to Order IPOC to Pay HHR's Fees**

HHR seeks an award of Fees in excess of $94,000 under Federal Rule of Civil Procedure 45.  Rule 45, which governs subpoenas to nonparties, provides two bases for recovery of certain expenses incurred by a person subject to a subpoena, but neither basis supports HHR's request.

**1.     Rule 45(c)(1) Does Not Support HHR's Request for Fees.**

Rule 45(c)(1) provides that a court may award fees and costs as a "sanction" for breach of the duty to "take reasonable steps to avoid imposing undue burden or expense on a party subject

6

to a subpoena." Sanctions are not authorized under Rule 45(c)(1) unless the party against whom the sanctions are sought acted in bad faith and without substantial justification. *Alexander v. F.B.I.*, 186 F.R.D. 188 (D.D.C. 1999) (Non-parties' request for fees under Rule 45(c)(1) was denied because the "plaintiffs' motion was substantially justified and not brought in bad faith.").

IPOC's actions vis-à-vis HHR were in good faith and substantially justified. IPOC agreed to pay HHR the sum of nearly $30,000 demanded by HHR in February 2007 for its attorney fees and costs incurred in complying with the Subpoena. ("[W]e simply can't produce until we have agreement to cover past and current costs") ("[I]f we can get the documents immediately, meaning Monday, IPOC will pay the $22,972 specified in your email."). Stukes Decl. ¶12 Ex. N. Indeed, IPOC ultimately paid HHR $29,745.60 for its past and estimated future costs to comply with the subpoena.[5]

All additional work performed by HHR and described on the invoice for which it now seeks payment was performed after HHR's production of documents. Moreover, HHR's claim of a whopping $94,000 resulted from its own deficient work that required it to repeatedly re-review the same documents and from HHR's unnecessary and unjustified defense of restrictive designations placed by Diligence for which HHR had already discharged its duties under the Protective Order in the KPMG case.

HHR's assertion in its Motion that IPOC challenged "HHR's designation of documents from its clients' files as confidential under the applicable protective order" is not true. Virtually none of the documents produced came from the files of KPMG. All the documents were either Diligence's documents, produced by Diligence to HHR in the KPMG Case, or pleadings from *KPMG v. Diligence*.

---

[5] IPOC agreed upon a fixed figure to cover the entire costs to avoid outrageous costs as claimed here. The production of 600 paper documents, a couple of boxes, should not cost $130,000.

HHR's claim that IPOC moved to remove the designations in order to enable IPOC to use "materials from HHR's files in the media" is similarly specious. It is beyond dispute that IPOC sought de-designation of the documents for use in prosecuting its claims in this case and defending itself in then ongoing proceedings in other jurisdictions. See IPOC's Motion Pursuant to Protective Order to Remove Confidentiality Designations (filed under seal April 13, 2007) at 11-13 (explaining that the confidentiality designations were unjustified under Rule 26(c), unreasonably restricted IPOC's ability to prosecute its case, and unreasonably prevented IPOC from using the documents in its defense of actions in Bermuda and the British Virgin Islands).

In addition, HHR's own actions belie its outrageous claims that IPOC's conduct was unreasonable. HHR stamped approximately 600 documents with its "confidential" or "Attorney's Eyes Only" designation but, when IPOC asked for the designations to be removed, HHR initially declined. After IPOC's second request, HHR removed 196 of the designations and explained that the designations on 80 documents were partial designations. Then, during the course of briefing HHR's opposition to IPOC's motion to remove the designations, HHR removed another 267 of the designations. By the time of the hearing before the court, HHR had removed even more designations, all but 122 of the nearly 600 designations it had originally placed upon the documents it produced. Clearly, IPOC's efforts to have HHR remove the designations was "substantially justified" and was not "unreasonable." It was HHR's foot-dragging and repeated review of the same documents – not any actions on IPOC's part – that caused HHR's fees to spiral to their current unreasonable amount. IPOC should not be expected to pay this tab.

None of the cases cited by HHR in its Memorandum involve an award of fees or costs under Rule 45 (c)(1), and thus they do not support an award under this provision of Rule 45.

### 2.    Rule 45(c)(2)(B) Does Not Support HHR's Request for Fees.

Nor can HHR's costs be reimbursed under Rule 45(c)(2)(B).  That portion of Rule 45 directs that as part of an order compelling production of documents under subpoena, the court must protect a party from "significant expenses resulting from the inspection, copying, testing or sampling commanded."  Fed. R. Civ. Pro. 45(c)(2)(B).  This subsection of Rule 45 provides for an award of expenses <u>only</u> in connection with an order compelling "inspection, copying, testing or sampling."  No such order was requested or entered in this case, predominantly because IPOC paid HHR's costs voluntarily, as HHR admits in its motion.  The cases cited by HHR in its Motion are inapposite, as they involve orders compelling compliance with a Subpoena.[6]

### B.    The Fees Were Not Incurred to Comply With the Subpoena and are Unreasonable.

The Fees sought by HHR were not incurred for copying and inspection necessary for HHR to comply with IPOC's Subpoena.  As discussed above, IPOC already paid HHR nearly $30,000 for those costs.  The Fees HHR now seeks were accumulated after HHR had made its productions pursuant to the Subpoena.  They were incurred, for the most part, in connection with IPOC requests that HHR remove its unnecessary restrictive designations on the Diligence Documents and defense of IPOC's motion seeking an order directing removal of those designations.

HHR had no obligation to make these restrictive designations and no obligation to defend the designations in the face of IPOC's motion to remove them pursuant to Rule 26 (c).  Nearly all of the 585 documents from which IPOC asked HHR (and  Diligence) to remove designations are

---

[6] HHR would not have recovered its attorney fees under Rule 45 (c)(2)(B) even if its request for Fees was made in conjunction with a response to a motion to compel compliance with the Subpoena because although HHR is counsel to a non-party to a party to related litigation and interested in the underlying dispute. *Jackson Jordan, Inc. v. Kyle Railways, Inc.*, 1988 WL 236172 (D.Kan.) (Non-parties subject to subpoena were denied reimbursement for production under Rule 45 where they were involved in litigation arising out of the same facts and had material and relevant information responsive to the subpoena).

Diligence Documents produced by Diligence to HHR in the KPMG Case pursuant to the KPMG Protective Order. When HHR received the Diligence Documents in the KPMG Case, they were stamped with Diligence's Bates numbers and labeled with restrictive designations pursuant to the terms of the KPMG Protective Order. Under the KPMG Protective Order, when HHR was served with IPOC's Subpoena seeking the Diligence Documents, HHR's sole obligation was to provide Diligence thirty days notice before it produced the Diligence Documents under the Subpoena. Anderson Decl. ¶ 5 Ex. E.

HHR provided Diligence the required notice on July 20, 2006 and thereby fully discharged its duties under the KPMG Protective Order pursuant to which it received the Diligence Documents. Thereafter, HHR, had no duty under the KPMG Protective Order to place its own restrictive designations on the Diligence Documents before it produced them to comply with IPOC's Subpoena. Indeed, Diligence, as a party to this lawsuit made its own restrictive designations on those same documents after HHR produced them pursuant to IPOC's subpoena. Diligence was fully capable of, and did, in fact, vigorously defend those designations. HHR's determination to do so as well was gratuitous. The tens of thousands of dollars in Fees sought by HHR's Motion are for work that was performed by HHR for a gratuitous defense of Diligence's designations, work that was entirely unnecessary. [7]

Lastly, HHR has failed to demonstrate that the Fees are reasonable. The HHR invoice presented with the Motion shows multiple (eight) individuals billing at hourly rates between $650 and $210 per hour. The descriptions of the work performed lack particularity and are insufficient to establish either that the work was necessary to comply with the Subpoena or that the amount of time expended or rates are reasonable. Much of the work described was

---

[7] HHR and its client, KPMG, certainly may have had their own strategic purposes for these actions but they cannot fairly be categorized as "compliance with" the Subpoena so as to require IPOC to reimburse HHR's fees.

undertaken for purposes that HHR does not explain, and was obviously undertaken after HHR had complied with the Subpoena and been paid by IPOC. (See HHR Invoice Exhibit to Adler Declaration) For example, HHR spent time totaling 15 hours with fees of $7,110 for preparation of a motion for extension of time. Multiple billing entries refer to "press releases," media reports" and "new press reports" without any indication of how these could possibly relate to compliance with IPOC's subpoena. Moreover, multiple entries bill for telephone conferences with "Rauser," a clear reference to counsel for Diligence without an indication of how those might relate to compliance with IPOC's Subpoena. There are also entries related to "strategy" discussions between HHR attorneys; these entries presumably reflect work resulting from HHR's need to redo its own prior work because it did not initially produce all documents responsive to the Subpoena.[8] And, of course, multiple entries reflect HHR's active defense of the designations placed on the Diligence Documents, entries showing self-imposed fees to make unnecessary designations on the Diligence Documents and then repeatedly review those documents to remove those designations in a piecemeal fashion. HHR has failed to set forth any basis to establish reasonableness of these fees.

Fees for the services described by HHR simply cannot be reimbursed under the claim that they were incurred either to comply with a Subpoena or were reasonable and necessary. The Motion should be denied because HHR is not entitled to an award of any attorney's fees and costs under Rule 45 or otherwise.

---

[8] As a result, HHR produced two CDs and a few additional documents that had been produced to KPMG by Diligence in the prior lawsuit but had been overlooked by HHR; and HHR later advised IPOC it would make pleadings it had failed to produce to IPOC available for review but would not produce or allow them to be copied.

11

Dated:  January 31, 2008                    WINSTON & STRAWN LLP

                                            By:_____/s/_____
                                                    Timothy M. Broas
                                                    Carol A. Joffe (D.C. Bar No. 351528)
                                                    Anne W. Stukes
                                                    1700 K Street, N.W.
                                                    Washington, D.C. 20006
                                                    Tel (202) 282-5000
                                                    Fax:  (202) 282-5100
                                                    cjoffe@winston.com

                                            *Counsel for IPOC International Growth
                                            Fund Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2008, I caused the foregoing

Memorandum in Opposition to Non-Party Hughes Hubbard &Reed LLP's Motion

Under Rule 45 for Reimbursement of Costs and Attorneys' Fees to be served via

the Court's electronic filing system on each of the following:

> Paul C. Rauser
> Michael Ross
> Oliver Garcia
> Aegis Law Group LLP
> 901 F. Street, N.W., Suite 500
> Washington, DC 20004
> Counsel for Defendant Diligence LLC
>
> Edward B. MacMahon, Jr.
> P.O. Box 903
> 107 East Washington Street
> Middleburg, VA 20118
> Counsel for Defendant Barbour Griffith & Rogers LLC
>
> Charles D. Reed
> Scott H. Christensen
> Hughes Hubbard and Reed LLP
> 1775 I Street, N.W.
> Washington, D.C. 20006-2401
> Counsel for Non-Party Subpoena Recipient Hughes,
>     Hubbard & Reed LLP

                              /s/
                    _____
                    Carol A. Joffe