UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DILIGENCE LLC, et al.<br><br>　　　　　　Defendants. | Civil Action No.<br>1:06CV01109 (PLF) (AK) |

## DECLARATION OF ANNE W. STUKES

I, Anne W. Stukes, declare as follows:

1. I am a member of the bar of the District of Columbia and a partner in the law firm of Winston & Strawn LLP. I make this declaration to provide information referenced in Plaintiff IPOC International Growth Fund Limited's Opposition to Non-Party Hughes Hubbard & Reed LLP's Motion Under Rule 45 for Reimbursement of Costs and Attorney's Fees. I have personal knowledge of the information set forth herein.

2. I am one of the attorneys representing IPOC International Growth Fund Limited. ("IPOC") in *IPOC v. Diligence et al.,* Civil Action No. 1:06CV01109 (PLF) (AK).

3. In my capacity as counsel for IPOC in this lawsuit, I conducted discussions with Derek J.K. Adler, a partner in the law firm Hughes Hubbard & Reed ("HHR"), in connection with a Subpoena issued by IPOC to HHR. The Subpoena sought the production of materials from *KPMG Financial Advisory Services v. Diligence,* Civil Action No. 06-7162, that were relevant to this lawsuit.

4. On October 14, 2006, I informed HHR that the stay of discovery in this case had been lifted and requested that HHR make its production pursuant to the Subpoena.

5. By letter agreement dated October 19, 2006, HHR agreed to produce the transcript and exhibits from the deposition of Diligence's corporate representative, and IPOC agreed to treat those documents as Attorney's Eyes Only materials pending entry of a protective order ("Letter Agreement") (Exhibit F). The Letter Agreement expressly states that it is "without prejudice to IPOC's right to seek a less restrictive designation for those documents in the future under an appropriate protective order." *Id.*

6. On October 20, 2006, HHR produced the deposition and exhibits to IPOC in accordance with the Letter Agreement.

7. In January 2007, I advised Mr. Adler that the parties to this case had executed a Stipulated Protective Order. I requested that HHR produce the remaining documents sought by the Subpoena. Mr. Adler declined to produce any additional documents until the Protective Order had been signed by the Court.

8. In a telephone call on January 30, 2006, Mr. Adler first raised the issue of payment of HHR's production costs and told me that HHR would not produce documents until IPOC had paid those costs. I asked Mr. Adler to provide me with a tally of HHR's costs.

9. On February 7, 2007, HHR provided HHR's invoice showing costs of $22,972 and Mr. Adler advised that he estimated expending another $10,000 to $15,000 to produce the documents. Exhibit G.

10. On February 9, 2007, I provided to Mr. Adler a copy of the Protective Order that had been entered in this case on February 9, 2007, and asked him to make HHR's remaining production. Exhibit H.

2

11.     I also advised Mr. Adler that IPOC had expected HHR's production costs to include copying charges and several hours of review time but that the figures he had provided seemed extremely high for the production of documents that were already in HHR's possession, all of which had previously been reviewed and produced in a related case.

12.     Mr. Adler continued to assert that HHR would not produce the documents until IPOC agreed to pay the HHR costs. Thereafter, Mr. Adler, on behalf of HHR, and I, on behalf of IPOC, agreed that IPOC would pay HHR the sum of $29,745.60 and HHR would produce the documents on February 12, 2006. IPOC paid $29,745.60 to HHR by wire transfer on February 21, 2007. Exhibit I and N.

13.     Many of the documents produced on February 12, 2007 were duplicates of those previously produced under the Letter Agreement. Nearly all were designated by HHR as either "Attorney's Eyes Only" or "Confidential." The materials produced included (a) documents produced by Diligence in *KPMG v. Diligence* and some Diligence documents that had been anonymously delivered to the office of KPMG in Montvale, New Jersey; and (b) the Complaint and two declarations filed under seal in *KPMG FAS v. Diligence*.

14.     Per email dated July 27, 2006, Mr. Adler advised me that HHR had withheld from the production:

> the actual documents that were taken from KPMG, which comprise materials generated in the course of the confidential investigation of IPOC and related companies and are confidential under Bermuda law. We will redact where documents incorporate substantive information taken from the materials that were stolen or otherwise reflect confidential information about the IPOC investigation.

Exhibit O.

15.     By letter to Mr. Adler dated February 20, 2007, I advised HHR that certain materials, including items 1, 3 and 4 on the Subpoena, had not been produced. I also requested

3

that HHR remove its restrictive designations from the majority of the documents because "your client's only confidentiality interests in these documents, aside from its confidentiality obligations under Bermuda law, are to protect any non-public information about KPMG FAS' operatives, as well as personal information about certain KPMG FAS' employees." Exhibit M.

16. I did not receive a substantive response to my February 20, 2007 letter until March 12, 2007, although Mr. Adler did email that he was in Europe and would respond at a "reasonable" time. In response, I advised him that "[w]e would like to work this out" and asked him to call me when he returned to his office. I followed up by email on March 8, 2007, advising Mr. Adler that "[w]e would like to resolve this without motions practice. Could you let me know your position on the points in my letter." Exhibit J.

17. On March 8, 2007, Mr. Adler responded by thanking me for my "patience" and promised to respond to my February 20, 2007 letter by the following Friday. On March 12, 2007, Mr. Adler finally provided a substantive response by misquoting my letter and wrongly alleging that "[y]ou are now asking us to de-designate all such material unless they 'reveal the substance of information required by Bermuda law to be kept confidential.'" Exhibit K, 3/12/07 letter from D. Adler to A. Stukes.

18. On March 15, 2007, I again advised Mr. Adler that we were disappointed HHR continued to refuse to de-designate documents in which neither HHR nor its client had a confidentiality interest. I provided a complete chart of the documents from which IPOC sought to have HHR remove designations. Attachment A showed that all but 16 of the 585 documents from which IPOC sought to have HHR remove its restrictive designations had been produced to HHR by Diligence.[9] Thus those sixteen documents are the only documents that were not

---

[9]Attachment A shows all documents except those numbered 1-15 and 585 have both HHR and "Diligence" Bates numbers, indicating that they were produced to HHR in the related case by Diligence, with Diligence Bates stamps

Diligence Documents. The remaining 569 documents were documents from the files of Diligence produced to HHR in the related case. Moreover, only eight documents contained personal information concerning employees of KPMG, and IPOC offered to redact such information.

> We once again ask HHR to remove confidentiality designations from documents that disclose Diligence and BGR's tortious actions but do not contain or reflect any of KPMG FAS' confidential information gathered or generated in the course of its investigation, including the documents that HHR produced this week. To the extent that you have questions about which documents we request confidentiality designations be removed, please see Attachment A to this letter. (Exhibit L).[10]

19. I also asked for production of certain investigative materials that were within the scope of the subpoena or, in the alternative, that HHR produce a privilege log if it claimed the documents were protected by privilege.

20. By letter dated March 23, 2007, HHR identified 196 documents from which it agreed to remove its designations and indicated that designations on 80 documents were partial designations, but refused to remove the remaining designations. Exhibit P.

21. In HHR's Opposition to IPOC's subsequent motion seeking removal of the remaining designations, HHR reduced the number of designations it sought to 122. Exhibit Q.

---

on them, and then were copied and produced to I POC in this case with HHR's Bates stamps. Only the 16 documents identified were not produced by Diligence to HHR.

[10] IPOC also identified four document that it requested be changed from Attorney's Eyes Only to "confidential" and identified eight documents for which IPOC was open to discussing redaction of home addresses and telephone numbers. Exhibit L at pg. 2.

I hereby declare and affirm that the facts contained in this Declaration are true and correct to the best of my knowledge, information and belief.

*Anne W. Stukes*
Anne W. Stukes

6

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2008, I caused the foregoing Declaration of Anne W. Stukes to be served via the Court's electronic filing system on each of the following:

>Paul C. Rauser
>Michael Ross
>Oliver Garcia
>Aegis Law Group LLP
>901 F. Street, N.W., Suite 500
>Washington, DC 20004
>Counsel for Defendant Diligence LLC
>
>Edward B. MacMahon, Jr.
>P.O. Box 903
>107 East Washington Street
>Middleburg, VA 20118
>Counsel for Defendant Barbour Griffith & Rogers LLC
>
>Charles D. Reed
>Scott H. Christensen
>Hughes Hubbard and Reed LLP
>1775 I Street, N.W.
>Washington, D.C. 20006-2401
>Counsel for Non-Party Subpoena Recipient Hughes,
>   Hubbard & Reed LLP

_____/s/_____
Carol A. Joffe