IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IPOC INTERNATIONAL GROWTH FUND LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>DILIGENCE, LLC, et. al,<br><br>Defendants. | Civil Action No.<br>1:06CV01109 (PLF) (AK) |

**REPLY DECLARATION OF DEREK J.T. ADLER
IN FURTHER SUPPORT OF NON-PARTY
<u>HUGHES HUBBARD & REED'S MOTION UNDER RULE 45</u>**

Derek J.T. Adler declares the following, under penalty of perjury:

    1.    I am a partner at Non-Party Hughes Hubbard & Reed LLP ("HHR"), which has been served with a subpoena (the "Subpoena") by Plaintiff IPOC International Growth Fund Ltd.'s ("IPOC") in this proceeding. I submit this Reply Declaration to supplement the information provided in my declaration executed on January 17, 2008 and respond to matters IPOC has raised in its opposition papers.

    2.    Contrary to IPOC's assertion, HHR did confer with IPOC's counsel in advance of making this motion. As stated in Paragraph 12 of my earlier declaration, I spoke with a member of IPOC's attorney team on or about July 30, 2007, and specifically requested payment of the fees that are sought by this motion. The attorney I spoke with was Carol Joffe. I told her the amount of fees and costs we are seeking and specifically requested reimbursement. Ms. Joffe stated that she would discuss this with her client and get back to me. HHR's file includes my note of this communication. Ms. Joffe never responded further.

60205507_2.DOC

3.  Furthermore, HHR's demand for costs was already contained in our opposition to IPOC's Motion to Compel. IPOC has had ample opportunity to make any constructive suggestion for resolving this. It has not done so.

4.  IPOC argues that the Court does not have power to order the payment of HHR's fees. This is incorrect. Read together, Rule 45(c)(1) and (c)(2)(B) give the Court broad discretion to protect non-parties from expenses incurred in connection with a Rule 45 subpoena. The rules require only a showing that the burden imposed upon the non-party was "undue" and that the expenses imposed were "significant." See Fed. R. Civ. P. 45(c)(1) and (c)(2)(B). A showing of bad faith is not required. See generally 10 Moore's Federal Practice 3d § 45.33 (Matthew Bender 3d ed.). The underlying principle is that non-parties, who have no stake in a litigation, should not have to bear the expenses of providing discovery that is sought from them. HHR has met the test for obtaining reimbursement.

5.  The recent revisions to the Federal Rules emphasize the importance of protecting the rights of a non-party. Rule 45 now provides that the party serving a subpoena "must" take reasonable steps to avoid imposing any undue burden, Fed. R. Civ. P. 45 (c)(1), that the Court "must" enforce this duty and impose appropriate sanctions for non-compliance, id., and "must" protect a non-party from significant expense resulting from compliance with a subpoena, id. 45(c)(2)(B)(ii).

6.  IPOC argues that it was unreasonable for HHR to seek to protect the confidentiality of the materials that were disclosed here. IPOC further suggests that HHR was acting in an inappropriate effort to assist IPOC's adversary, Diligence Inc. These assertions are without merit.

7.  The materials IPOC demanded came from the files HHR maintained in the course of a client engagement — its representation of KPMG Financial Advisory Services, Ltd. ("KPMG"). This raised substantial issues with respect to the attorney-client and work product privileges. Indeed there is a considerable body of authority holding that a subpoena served under these circumstances on the attorney, rather than the client, is inherently inappropriate. However, in an effort to be helpful, and with the permission of its client, HHR cooperated with the Subpoena.

8.  The materials sought by the Subpoena pertain to KPMG's appointment to perform a confidential statutory investigation of IPOC itself, in Bermuda. This raised serious issues regarding protecting the overall confidentiality of the materials, and also preventing the disclosure of inappropriate information to the subject of KPMG's investigation — IPOC itself. For this reason, a heightened "Attorneys Eyes Only" designation was required in relation to certain materials.

9.  Furthermore, the Subpoena sought materials that had been obtained in an earlier litigation between KPMG and Diligence. This litigation arose from Diligence's theft of confidential materials and information from KPMG regarding the IPOC investigation. The litigation was commenced to remedy this theft of confidential information and recover such materials and information. Plainly KPMG and HHR were not going to agree to public disclosure of the materials that they had fought so hard to maintain as confidential.

10. IPOC's suggestion that the Subpoena did not call for any trade secrets or other confidential information pertaining to the IPOC investigation is simply incorrect. Although IPOC agreed to exclude some of the actual documents that had been stolen from KPMG, Diligence's internal memoranda, emails and other materials incorporated substantial parts of this

information. Hence it was absolutely necessary and appropriate for HHR to maintain the confidentiality of these materials.

11. IPOC suggests that HHR's designation of materials as confidential must have been unreasonable because HHR ultimately agreed that substantial portions of its original production could be de-designated. This is a perfect example of the way that IPOC has imposed undue burdens on HHR. Going through each page of the 4,000-page production, making an individualized determination of confidentiality, and setting this forth in a detailed log was a huge exercise. HHR sought to avoid this burdensome exercise by designating the entirety of the production as confidential in the first instance. This did not prevent IPOC from using the information to prosecute its action against Diligence. But IPOC wanted to use the material for other purposes, and therefore forced HHR to go through the burden and expense of justifying each individual page of designation. This was unreasonable, and has not served any purpose whatsoever given the eventual result in the action. HHR should not be forced to bear the expenses caused by IPOC's unreasonable and unnecessary conduct.

12. Nor does IPOC attempt to explain how denial of a reasonable request for an extension of time could ever be justified. The substantial expenses imposed by this, as well as by responding to IPOC's misguided and unnecessary motion to compel (now moot), should plainly be recoverable.

13. IPOC argues that HHR's costs and expenses are unreasonable and were not incurred in connection with responding to the Subpoena. The costs HHR seeks to recover were incurred in connection with (i) responding to IPOC's repeated requests to review the production and justify the confidentiality designations on a page by page basis, and (ii) responding to IPOC's motion (directed mainly at Diligence) to de-designate the entire production. It is plain

that HHR would not have incurred these costs if the Subpoena had not been served, and if IPOC had not pursued a needless and unnecessary campaign seeking to use HHR's production for purposes outside the scope of this litigation.

14.   Finally, I can confirm that HHR's work was done in an efficient manner and that the charges are not excessive. HHR is a national law firm whose billing rates and quality standards are (I believe) comparable to those of IPOC's own counsel. Nor is it HHR's fault that the original Diligence document production demanded by IPOC had been produced in a very disorganized manner — including overlapping bates ranges — which we had to address in order to meet IPOC's demand for production.

15.   I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 7, 2008

_____
Derek J.T. Adler